I59HStaC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   STATE OF NEW YORK, et al.,

4                   Plaintiffs,

5            v.                              18 Civ. 2921 (JMF)

6

7   UNITED STATES DEPARTMENT OF
    COMMERCE, et al.,
                                            Conference
8

9                   Defendants.

    ------------------------------x
10                                          New York, N.Y.
                                            May 9, 2018
11                                          3:05 p.m.

12  Before:

13                   HON. JESSE M. FURMAN,

14                                          District Judge

15                        APPEARANCES

16  NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
         Attorneys for Plaintiffs
17  BY:  MATTHEW COLANGELO
         AJAY P. SAINI
18       – and –
    LAW OFFICE OF ROLANDO L. RIOS
19  BY:  ROLANDO L. RIOS
         – and –
20  DEPARTMENT OF LABOR
    BY:  ELENA S. GOLDSTEIN
21
    GEOFFREY S. BERMAN
22       United States Attorney for the
         Southern District of New York
23       Attorneys for Defendants
    BY:  DOMINIKA N. TARCZYNSKA
24       Assistant United States Attorney

25

I59HStaC

APPEARANCES (Cont'd)

United States Department of Justice
Civil Division, Federal Programs Branch
     Attorneys for Defendants
BY:  BRETT SHUMATE
     KATE BAILEY
     CAROL FEDERIGHI

I59HStaC

1      (Case called)

2           MR. COLANGELO:  Good afternoon.  Matthew Colangelo,

3      for the state of New York.  I have three cocounsel at

4      plaintiffs' table who will introduce themselves.  I wanted to

5      thank the Court as well for setting up the conference line so

6      that other counsel could attend by telephone.

7           MS. GOLDSTEIN:  Elena Goldstein, also for the

8      plaintiffs.

9           MR. SAINI:  Ajay Saini, also for plaintiffs.

10          MR. RIOS:  Rolando Rios, for Cameron and Hidalgo

11     County.  El Paso couldn't be here, your Honor, but they are on

12     the phone.

13          THE COURT:  All right.  Welcome.

14          MS. TARCZYNSKA:  Good afternoon.  Dominika Tarczynska,

15     from the United States Attorney's Office, on behalf of the

16     defendants.  With me at counsel table from the Department of

17     Justice Civil Division are Deputy Assistant Attorney General

18     Brett Shumate, Kate Bailey, and Carol Federighi.

19          THE COURT:  All right.  Good afternoon to all of you.

20          I understand we are up and running on CourtCall.  So I

21     assume other counsel are listening in, but don't see any reason

22     to take their appearances.

23          I would ask that everybody, the acoustics in here can

24     be a little challenging, because of that and because folks are

25     listening in by phone, just make sure you speak loudly,

I59HStaC

1    clearly, and most importantly, into the microphones.  And then

2    hopefully everyone will be able to hear.

3           All right.  We're here for the initial conference in

4    this matter.  I did get the joint letter of May 3 with

5    plaintiffs' proposed case management plan attached.  We'll get

6    there in one moment, but a few housekeeping preliminary

7    matters.

8           I have the sense that the New York Attorney General is

9    taking the lead on this.  I don't know.  There are, obviously,

10   a number of plaintiffs.  Is there a need to formally appoint

11   lead counsel?  Have you guys sort of informally sorted that

12   out?  What's the status there?

13          MR. COLANGELO:  Yes, your Honor.  We've agreed that

14   the New York Attorney General's Office will lead.

15          THE COURT:  All right.  Very good.  The second

16   question is I gather this is not the only case with respect to

17   the census generally and the citizenship question specifically.

18   Can somebody fill me in?  I think there's one in California.  I

19   know there's a lawsuit in Maryland, although I think it doesn't

20   pertain to the citizenship question, if I'm not mistaken.

21          Is that correct, are there others that I didn't just

22   mention?  What's the status of those?  How do they intersect

23   with this case, and so forth?

24          MR. COLANGELO:  Your Honor, if I may, the United

25   States may have different or better information on the status

I59HStaC

1    of those cases, but in addition to this action in your court,

2    there are three other pending challenges as of now to the

3    Commerce Department's decision to demand citizenship

4    information on the 2020 census.

5         The state of California has filed an action in the

6    Northern District.  They've recently amended the complaint to

7    add parties, and that case is in front of Judge Seeborg.

8    There's a separate action also filed in the Northern District

9    of California.  The plaintiffs include the city of San Jose and

10   a number of other parties.  That is currently in front of a

11   different judge, also in the Northern District of California.

12   As I understand it, a motion to consolidate those cases -- to

13   assign them as related cases, I should say, is pending.

14        And then there is a fourth case that is pending in the

15   District of Maryland, that's the Kravitz action, filed on

16   behalf of a number of individual residents of a number of

17   different states, including Florida, Maryland, Arizona, and

18   Nevada.  That case has been assigned to Judge Hazel in the DMD.

19        There's a separate challenge to the census that is

20   also pending in front of the District of Maryland filed by the

21   NAACP, but that challenge does not include any arguments

22   regarding the addition of the citizenship question.  I should

23   defer to the United States on any information they have on the

24   status of any case management conferences in those actions.

25        THE COURT:  All right.

I59HStaC

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | MS. TARCZYNSKA:  Your Honor, that is my understanding                     |
| 2  | of the pending actions.  The counsel who are handling those              |
| 3  | cases from the Civil Division Federal Programs Branch are here,          |
| 4  | so they may have something to add in terms of the status.  I'll          |
| 5  | turn it over to them.                                                    |
| 6  | Is there anything to add?                                                |
| 7  | MS. BAILEY:  Your Honor, that was an accurate list of                    |
| 8  | the cases that are currently pending.                                    |
| 9  | THE COURT:  All right.  Where do they stand in terms                     |
| 10 | of have any of them been conferenced?  Are any of them further          |
| 11 | along than this?  Is the administrative record being prepared           |
| 12 | sooner in connection with any of those cases?  What impact do           |
| 13 | those cases have here, if any?                                           |
| 14 | MS. BAILEY:  None of those cases have proceeded faster                   |
| 15 | than this case, your Honor.  The administrative record is being         |
| 16 | prepared for all of the cases.  There are status conferences or         |
| 17 | initial conferences scheduled in those cases, but not until             |
| 18 | further out in June.  So there have not been any filings or             |
| 19 | relevant hearings in those cases.                                        |
| 20 | THE COURT:  All right.                                                   |
| 21 | MS. BAILEY:  Except for the noncitizenship case had a                    |
| 22 | hearing yesterday on an initial letter filed by plaintiffs, not         |
| 23 | related to this case.                                                    |
| 24 | THE COURT:  That's the NAACP case?                                       |
| 25 | MS. BAILEY:  Yes, your Honor.                                            |

I59HStaC

1          THE COURT:  I assume that -- well, maybe I shouldn't

2    assume, but there's no application to join any of these or for

3    me to coordinate with any of the judges.  Obviously, there may

4    be consistent rulings, inconsistent rulings, but that's just

5    the nature of the beast, I take it.  Or does anyone have a

6    different view on that?

7          MS. BAILEY:  That is our understanding, your Honor, is

8    that there's nothing at this time.

9          THE COURT:  All right.

10          MR. COLANGELO:  We don't have a different view, your

11    Honor.

12          THE COURT:  All right.  Very good.  Thank you on that.

13          So the big question here, obviously, I would like to

14    set a schedule and figure out how to proceed.  It seems like

15    the big issue or dispute is whether and to what extent to

16    proceed with discovery.  I did get a sense of your arguments

17    from the joint letter.  Let me give you my immediate reactions

18    and then give you an opportunity to be heard further.

19          Based on the allegations in the complaint, it does

20    strike me that there is a colorable basis for some discovery in

21    this case, perhaps a more colorable basis than in other APA

22    actions, but my inclination is to think or say that that

23    decision should be deferred until the administrative record is

24    actually filed, that is to say, put together.  There's law for

25    the proposition that the agency is supposed to be granted

I59HStaC

1    deference even in connection with the presentation or

2    compilation of the record, but bottom line is I think it's hard

3    to evaluate whether the record is satisfactory, what is or

4    isn't in the record, until we have the record.

5           So in that regard, my inclination is to think it's

6    premature and that we should await the actual record before

7    adjudicating and litigating the question of whether discovery

8    outside of the record is appropriate here.

9           Having said that, I'm concerned about the timetable.

10   I think everybody's in agreement that there's some urgency

11   here, which is why I scheduled this conference a little bit

12   earlier than I might have otherwise, sort of having an

13   understanding and sense that there might be some time

14   sensitivity.  I also recognize that whatever I decide on this

15   case, whatever my counterparts in these other districts decide,

16   in all likelihood, I am not the final word here, and I want to

17   leave enough time for you to seek appropriate review from

18   higher authorities, all of which is to say I do think that

19   there is some urgency to move this forward.

20          Before I give you some further thoughts on how that

21   might be done, let me just ask the plaintiffs to articulate, if

22   you were to be granted discovery, do you have a sense at this

23   point of what it would entail, or is that something that we're

24   better off deferring until the record is before us?

25          MR. COLANGELO:  Thank you, Judge.

1          I think there's a narrow category of discovery that we

2     think could be begun now, even before seeing the administrative

3     record.  In APA record review cases, it's not uncommon to allow

4     discovery outside the record where there are colorable

5     allegations of improper motive or bad faith.  We think that

6     there are strong arguments on that ground here.  And in the

7     *Tummino* case, which we cited in the joint letter -- this is the

8     Eastern District challenge to the FDA's refusal to act on an

9     application for approval of the Plan B over-the-counter

10    contraceptive medication -- in the *Tummino* case, the Court

11    authorized discovery regarding the mental processes and

12    decisional process of administrative decision-makers.  We think

13    the same factors that arose in the *Tummino* case have analogues

14    here and would warrant discovery of agency decision-makers in

15    this challenge.

16         And although in general there's nothing objectionable

17    about the idea of waiting until we see the administrative

18    record to decide whether we need more evidence, I think it's

19    fair to say that we won't get an exploration of the

20    decision-makers' mental state in the paper record that is

21    produced.

22         So we think that discovery that is prefatory to and

23    that includes deposition discovery regarding the

24    decision-makers' process is appropriate to begin sooner rather

25    than later, including before the record is produced.

I59HStaC

1          In the alternative, we do think there is a strong

2    basis for advancing the deadline to produce the administrative

3    record earlier than the June 8 deadline that the United States

4    has proposed.

5          THE COURT:  When you say "exploring the mental

6    processes of the decision-makers," are we talking in

7    deposition? interrogatories?  How many decision-makers are you

8    talking about?

9          MR. COLANGELO:  I think we would want interrogatories

10   to identify the right group, but I think, beyond that, I don't

11   imagine this would be discovery beyond more than three or four

12   individuals.  So a small number of depositions, your Honor.

13         THE COURT:  Presumably, that group would be

14   identifiable from the record as well, which would obviate the

15   need for interrogatories if we were to wait.  Is that --

16         MR. COLANGELO:  Well, without seeing the record, we

17   can't answer that question, but it's likely that many of the

18   relevant decision-makers would be identified in the record,

19   perhaps not all.

20         THE COURT:  All right.  Defense counsel, anything you

21   want to say on that beyond what you've already said in the

22   letter?

23         MS. TARCZYNSKA:  Your Honor, we believe that it is

24   premature to make any ruling on whether discovery is

25   appropriate or necessary until the administrative record has

1    been produced.  Although there is a narrow category of APA

2    cases in which extra-record evidence may be appropriate, that

3    is the exception and not the rule, and the plaintiffs need to

4    make a strong showing in support of their claim of bad faith or

5    improper behavior.  Mere allegations are not sufficient.  That

6    is set forth even in the cases they themselves cite.

7          We believe they have not made that showing.  An

8    argument that the agency -- the Court may disagree with the

9    agency on the merits or even that there was some sort of error,

10   procedural or substantive, by the decision-maker.  That's not

11   the type of bad faith that establishes an entitlement to

12   discovery.  It needs to be something more, and the cases make

13   clear that the burden is on the plaintiffs to make that

14   showing.  We believe that the allegations in their complaint

15   are insufficient to make such a showing.

16         THE COURT:  Because they're merely allegations or

17   because, even assuming them to be true, they're not sufficient?

18         MS. TARCZYNSKA:  Both, your Honor.  They are merely

19   allegations, and there's no evidence to support them.  The only

20   thing that they have pointed to are two emails sent by the

21   president's reelection campaign several days before the

22   decision is announced.  They have pointed to nothing -- I have

23   not seen those emails.  It is merely referenced, I believe, in

24   an article that they cite in their complaint.  But they offer

25   nothing to support the inference that these isolated

I59HStaC

1    communications from the political campaign had any impact on

2    the secretary's decision.  And until they have seen the record,

3    we believe that that decision is inappropriate to make with

4    respect to discovery.

5          THE COURT:  I think, as I understand it, it's

6    paragraphs 93 to 102, or thereabouts, and it's the conjunction

7    of the argument that the stated rationale is essentially not

8    believable and therefore it's pretextual, combined with the

9    communications that you referenced in paragraph 101, one of

10   which is quite explicit that the president "officially

11   mandated" that the citizenship question be added.

12         How much more concrete evidence could they produce in

13   order to get beyond the administrative record?

14         MS. TARCZYNSKA:  Well, there's no evidence that that

15   email, that email sent by the reelection campaign, had any

16   impact on the secretary's decision.  The fact that the -- I

17   cannot speculate how that email came about, but --

18         THE COURT:  Right, but we're talking about some

19   demonstrable basis, some *prima facie* basis, to proceed beyond

20   the record.  And, again, it may be premature because the record

21   hasn't been produced, and for all we know, there will be

22   communications concerning what the president did or didn't do

23   in the administrative record.  But assuming for the moment that

24   there isn't, you have a statement from the president's own

25   reelection campaign saying that he officially mandated that

I59HStaC

1    this question be added and then agency action consistent with

2    that official mandate.  Does that not entitle them to go beyond

3    the administrative record and to figure out what, if any,

4    communications were made and what impact that had on the

5    decision?  It's hard for me to imagine a scenario in which

6    there's a better basis to imagine that there might be things

7    beyond the record than that.

8           MS. TARCZYNSKA:  Your Honor, I think what's necessary

9    would be the link to show that that communication -- that there

10   was, in fact, a mandate from the president that impacted the

11   secretary.

12          THE COURT:  Surely the communication from the

13   president's campaign -- and I'll assume for the moment that

14   that is an accurate description of the communication -- is

15   attributable to the president or at least agents of the

16   president.  Is that a fair assumption?

17          Then you have the communication that he officially

18   directed it and the action consistent with that direction.

19   That's a pretty good circumstantial case.  Now, it may not be

20   borne out by discovery, which is the point of discovery, but

21   the question on my plate is whether to authorize that

22   discovery.

23          MS. TARCZYNSKA:  Your Honor, our position is there's

24   no evidence that that communication impacted the secretary, who

25   was the decision-maker.  The decision-maker in this case was

I59HStaC

1    not the president; it was the secretary.  What's relevant in

2    evaluating his decision-making are the documents and materials

3    that were before him, directly or indirectly.

4            THE COURT:  All right.  What's the harm in authorizing

5    limited discovery to probe the mental processes of the agency

6    decision-makers?  I don't know if that includes the secretary

7    or not.  But to the extent that that would ultimately be the

8    issue, counsel made the argument that whatever is in the

9    record, the record isn't going to reveal what the internal

10   mental processes were.

11           MS. TARCZYNSKA:  Your Honor, the scope of the review

12   under the APA, as is set forth in the APA, is the record before

13   the agency.  And the evaluation of that record is based on --

14   the review standard is whether that decision was arbitrary and

15   capricious, whether it was unsupported by the record.  It is

16   not a *de novo* review of the agency's decision.  And to the

17   extent that the record does not support the decision, the Court

18   could rule based on the record before it and make a ruling and

19   remand back to the agency.

20           This is a very standard APA case where a distinct

21   agency decision is being challenged, and the mandate of the APA

22   is that it is decided based on the -- that it is decided based

23   on the record before the agency; that there isn't a look-behind

24   to the thinking processes of the decision-makers.

25           THE COURT:  Is it your view -- I'm sure that you're

I59HStaC

1    not going to agree with the following statement of the facts,

2    but I'm going to ask you to assume as a hypothetical -- is it

3    your view that if the stated rationale of the secretary was

4    not, in fact, the rationale, that that is a pretextual

5    rationale and that the real rationale is not consistent with

6    that as either a put up one or something else, that that would

7    not be a basis to reverse the decision and grant relief?

8        MR. SHUMATE:  Your Honor, I'd be happy to answer that

9    question.  I'm Brett Shumate from the Civil Division.

10       I think we would agree if the plaintiffs on APA review

11   can establish that the stated rationale is pretextual, that

12   would be a basis for the Court to remand to the agency.  But as

13   a threshold matter, when we're deciding whether to authorize

14   discovery, we think that it's premature to prejudge that

15   question.  That's really the merits question.

16       THE COURT:  All right.  I'm not prejudging the

17   question.  The question is just what record is needed to decide

18   that question.  So it really is a threshold question concerning

19   discovery.

20       MR. SHUMATE:  Sure, your Honor.  And our position is

21   that the decision-maker here was Secretary Ross, and it is his

22   obligation to prove to the Court that he made a decision that

23   was based on an adequate record.  So whether or not the

24   president had any involvement in that decision or not is really

25   irrelevant to the question.  The Court has to decide whether

1    his decision, Secretary Ross' decision, was arbitrary and

2    capricious or not.  And the fact that the president's

3    reelection campaign may have sent out an email taking credit

4    for what his administration did I don't think in any way goes

5    to the question of pretext.

6         I think your Honor hit the nail on the head at the

7    beginning to allow the government to produce the administrative

8    record.  If the plaintiffs believe that is inadequate, they can

9    file a motion to supplement the record or to expand the record.

10   But, really, at this point there's no basis to probe the mental

11   processes of the decision-maker.  We have case law from the

12   Supreme Court, the *Morgan* case, for example, that says we don't

13   probe the mental processes of the decision-maker.  The only

14   role of the court is to evaluate whether the agency gave a

15   rational explanation under the APA.

16        So we think the course the government has proposed is

17   really appropriate here.

18        THE COURT:  That argument seems a little bit in

19   tension with the opening concession, which is that if I were to

20   conclude the rationale, the stated rationale, were pretextual,

21   then that would be a basis for granting relief.  If you grant

22   that, and I think one has to grant that, and there is a

23   colorable *prima facie* basis to believe that it might be

24   pretextual, I would think that that might entitle the

25   plaintiffs to go beyond the record.

I59HStaC

1          But having said that, I am inclined to think that we

2     should wait until the record is produced and then have a more

3     concrete discussion about what's in the record, what's not in

4     the record, what plaintiffs need, and so forth.

5          That gives rise to two thoughts, and I'm thinking a

6     little bit out loud here, but let me get your reactions to

7     this.

8          One is plaintiffs have suggested that the

9     administrative record could be and should be filed sooner than

10    June 8 and cite, in support of that, a letter.  It's from

11    members of Congress and restates representations, I guess, or

12    suggests that the defendant had represented that they

13    anticipated the record could be and would be prepared by

14    Memorial Day, which is a couple weeks earlier than the June 8

15    deadline.  So that's one possibility.

16         The second possibility is it strikes me that one way

17    of moving this forward and making the most use of our time is

18    to stagger the motion practice that defendants indicate that

19    they anticipate and plan on bringing.  In the letter, the

20    defendants articulate four bases for moving to dismiss or for

21    summary judgment:

22             First, that the plaintiffs lack standing;

23             Second, that there is a lack of jurisdiction over the

24    APA claim because the secretary's decision is committed to

25    agency discretion by law;

I59HStaC

1          Third, that the Enumeration Clause of the Constitution

2     mandates only an actual enumeration and does not essentially

3     speak to the form of the questionnaire itself; and

4          Fourth, that even if the decision is reviewable, it's

5     not arbitrary and capricious or otherwise contrary to law.

6          It strikes me that the first two of those arguments,

7     at a minimum, and maybe even the third but certainly the first

8     two, are pure issues of law and could be briefed even without

9     the record being filed, which leads -- one of them, in

10    particular, is a threshold -- maybe both of them are threshold

11    arguments that I think I would need to address in the first

12    instance regardless.

13         I guess the second thought out loud is maybe it's

14    appropriate to split the briefing, stagger the briefing, and

15    have defendants make a 12(b)(1) and/or 12(b)(6) motion sooner

16    than the filing of the administrative record and then allow

17    them to file a motion for summary judgment in connection with

18    the record whenever it's filed.

19         Thoughts.

20         MR. COLANGELO:  So, Judge, we're not at all opposed to

21    the proposal to stagger the briefing, and we largely agree with

22    how you characterize the defenses that the United States set

23    out.  I think I'd have a couple of suggestions in the

24    alternative to what you proposed.

25         We agree that it's fair to say that the first two

I59HStaC

1    grounds for defense the United States outlined are proper bases

2    of a 12(b)(1) motion.

3            THE COURT:  You've got to slow down a little bit to

4    make sure the court reporter can keep up.

5            MR. COLANGELO:  Thank you, your Honor.

6            We agree that the first two grounds identified in the

7    joint letter are the proper and most likely the proper subjects

8    of a 12(b)(1) motion, and we agree that those can likely be

9    briefed without the administrative record.

10           We think the third and fourth are, especially because

11   the United States has characterized those as being potentially

12   the subject of motions to dismiss or, in the alternative, for

13   summary judgment.  And in particular, in connection with the

14   third basis, the third stated defense, they refer specifically

15   to what the secretary makes clear in his decision.  So we would

16   propose disaggregating one and two from three and four.

17           The separate request that the plaintiffs would make is

18   that we don't know how big the administrative record is going

19   to be, and as the discussion that we've just had illustrates,

20   the plaintiffs at least believe there are going to be strong

21   grounds for going outside the administrative record, whether on

22   fact discovery or on expert discovery, which we haven't

23   discussed yet.  And what I think would be worth avoiding, in

24   the interest of efficiency for the parties and for the Court,

25   is getting an extensive administrative record and a motion for

I59HStaC

summary judgment with a short response time without also

building in time to confer with counsel and bring any issues to

the Court regarding where and how to expand that record.

So what we would propose is briefing on the first two

stated grounds for defense; production of the administrative

record; and then after a reasonable period to resolve this

question of whether and how to expand that record, then to have

summary judgment briefing on grounds three and four.

THE COURT:  I didn't mean to suggest -- or I think my

suggestion wasn't meant to be inconsistent with that.  I guess

I was contemplating that the defendants would file a motion for

summary judgment in conjunction with the administrative record

on the theory that you might take the view that expansion of

the record might be needed and propose either a period of time

for you to meet and confer after the filing of the record on

that question, followed by either a deadline for you to file a

motion to expand the record, or to simply schedule a conference

to have you back to discuss this issue further.

But all of which is to say I was contemplating that

the defendant would file a motion for summary judgment, but we

would still have that conversation.  But maybe, again thinking

out loud, maybe you're right, and maybe it makes sense to defer

the summary judgment motion deadline until after that

discussion as well.  I'm just concerned, again, by the fact

that time is a little bit of the essence here and definitely

I59HStaC

1    want to make the most of our time.

2            Now, let me hear from defense counsel.

3            MS. TARCZYNSKA:  Your Honor, the reason we proposed

4    aggregating the briefing all together on June 8 was to help

5    expedite this case, but we would certainly be prepared to make

6    the motion to dismiss arguments one through three of the ones

7    that you -- that are articulated in our letter because we

8    believe that those are questions of law that can be decided

9    without the administrative record.

10           THE COURT:  Two questions:  One is point three, is

11   that indeed a question of law?  It makes reference to the

12   secretary's decision and what he says in connection with his

13   decision, which presumably is outside the confines of the

14   complaint, although maybe it's incorporated by reference into

15   the complaint and therefore cognizable under 12(b)(6).

16           MS. TARCZYNSKA:  Your Honor, the third question turns

17   on what the Enumeration Clause requires, and the Enumeration

18   Clause requires only that an actual enumeration be conducted,

19   without any specific forms -- restrictions as to the form of

20   the census questionnaire.  And so that is the legal issue that

21   we would be briefing, whether that is indeed the appropriate --

22   if that is the case, then there is no action to evaluate the

23   questions under the Enumeration Clause.

24           THE COURT:  All right.  Then the next question is if

25   we did it that way and essentially you had a deadline to file a

I59HStaC

1    motion under 12(b)(1) and 12(b)(6), how soon could you file

2    that motion?  Or let me put it differently.  Could you file it

3    by May 25, two weeks from tomorrow -- from Friday?

4               MS. TARCZYNSKA:  Can I confer with my team?

5               THE COURT:  Yes.

6               (Counsel conferred)

7               MS. TARCZYNSKA:  That is possible.  We could do that.

8    The preference -- provided that we're not also producing the

9    administrative record at the same time.

10              The preference is, as I understand it, to address all

11   four arguments at the same time along with the administrative

12   record, which we would not be prepared to do in the next two

13   weeks.  But delaying that briefing even until June 8 and

14   getting everything in at once, including the administrative

15   record, would, we believe, lead to a more expeditious

16   resolution.

17              But, yes, we would be -- if that's what the Court

18   desires, we can do the first three arguments in the next two

19   weeks.

20              THE COURT:  I missed what you said about as long as we

21   don't something with respect to the administrative record.

22              MS. TARCZYNSKA:  As long as we aren't also required to

23   produce the administrative record on that date.  So the

24   administrative record --

25              THE COURT:  You would still be prepared to produce by

I59HStaC

1   June 8, though?

2          MS. TARCZYNSKA:  Yes, but no discovery with respect to

3   any -- the resolution of the issues regarding discovery should

4   occur after June 8.

5          THE COURT:  All right.  Here's what I would propose.

6   Let me throw it out, and then you can tell me your thoughts.

7          I would propose that defendants file a motion under

8   12(b)(1) and 12(b)(6), certainly with respect to the first two

9   issues, and if you think that it can be decided under those

10  rules with respect to the third issue as well by May 25, with

11  opposition due by June 8, and reply by June 15.

12         Then I would propose that we schedule oral argument

13  for a week or two thereafter.  And at the same time, on the

14  theory that the administrative record will have been prepared

15  and filed by June 8, between that date and oral argument, you

16  can meet and confer with respect to the contents of the record

17  and figure out your respective positions on whether additional

18  discovery is warranted and file something in advance of oral

19  argument.  And at that oral argument, we would address that

20  issue as well, discuss.

21         MR. COLANGELO:  Your Honor, we're comfortable with

22  that with one request.  Given the nature of the defenses that

23  the United States is proposing, given that these are important

24  constitutional claims on a significant issue, we think 14 days

25  may not be sufficient time to respond, and we would ask for 21

1   days in the alternative.  Just push your proposal back by a

2   week while leaving the record production date no later than

3   June 8.

4           THE COURT:  All right.  I'm trying to move things

5   forward.

6           MR. COLANGELO:  I appreciate that.  We share that

7   interest but don't want to be prejudiced in the meantime.

8           THE COURT:  All right.  I will reluctantly grant that

9   request, recognizing also that there are any number of

10  plaintiffs here.  And while you might be taking the lead, I'm

11  sure some coordination of your arguments is necessary.  So

12  defendants will file their motion by May 25.

13          Yes.

14          MS. TARCZYNSKA:  Your Honor, because the plaintiffs

15  are getting three weeks on their opposition, we'd request more

16  than just one week on the reply.

17          THE COURT:  My, my, you're all very greedy.

18          I'll give plaintiffs until -- how about this:  How

19  about I give plaintiffs until June 13, which is not quite 21

20  days but 19, and then defendants until June 22, which is nine

21  days, for their reply?  Is that OK for everyone?

22          MR. COLANGELO:  Yes, Judge.

23          THE COURT:  All right.  In the meantime, again, the

24  administrative record deadline I'll keep in place, June 8, but

25  defer the filing of summary judgment motion until some later

I59HStaC

1    date after we reconvene to discuss the status of the record and

2    the arguments that you'll be briefing in connection with the

3    motions that we just discussed.

4              Give me one moment.

5              Would I be ruining anyone's vacation plans if I were

6    to schedule oral argument on the morning of July 3?

7              MR. COLANGELO:  No, your Honor.

8              MR. SHUMATE:  I don't think so, your Honor.

9              THE COURT:  All right.  Sorry to hear that for all

10   your sakes.

11             MS. TARCZYNSKA:  Unfortunately, I believe I may be out

12   of the office, but I think we can figure that out on our end.

13   But because I will be away for two weeks, I don't want to delay

14   everyone's resolution of this case by my vacation schedule.

15             THE COURT:  All right.  That's gracious of you.  I

16   appreciate it.

17             I will make sure that this schedule makes sense after

18   I have a moment to reflect on it, but for now at least schedule

19   oral argument for the morning of July 3 beginning at 9:30.  And

20   after I receive your briefing, if I have an opportunity, I may

21   issue orders just addressing the structure of the oral

22   argument, as well as any issues that I think you should focus

23   on in connection with argument.  At the same time, I will want

24   to address the discovery-related issues that we began

25   discussing today but with the benefit of at least your having

I59HStaC

1    seen the record.

2           So between June 8 and that date, you should meet and

3    confer with respect to the record and any discovery that

4    plaintiffs think is warranted.  I would think that it would

5    make sense for you to file, perhaps, separate letters in

6    advance of the conference just addressing that issue as well so

7    that I have some opportunity to think it through before that

8    conference or argument.

9           So why don't we say about the -- if I said a week

10   before, so I guess that's June 26, you would each file letters,

11   let's say, not to exceed five pages, single spaced, does that

12   seem appropriate?

13           MR. COLANGELO:  Yes, Judge.

14           MS. TARCZYNSKA:  Yes, your Honor.

15           THE COURT:  All right.  Anything else that you think

16   we should discuss today?

17           MR. COLANGELO:  Your Honor, I mentioned a minute ago

18   that, in addition to the fact discovery we discussed, we did

19   also want to make the Court aware that we think this is a case

20   where some limited expert discovery may be appropriate.  We

21   will aim to include that as a subject of conversation when we

22   meet and confer with counsel after seeing the administrative

23   record, and we'll include that in what we file with the Court

24   on June 26.  But wanted to make sure that the Court was aware

25   that we would raise that issue as well.

1          THE COURT:  All right.  Just to give me a preview,

2    what's the nature of that that you would anticipate?

3          MR. COLANGELO:  One of the exceptions to the record

4    rule is where there are issues that are either particularly

5    complicated or where the evaluation of the facts would benefit

6    from expert testimony.  In this case, we think there are at

7    least two issues where the administrative record is likely to

8    be understood more easily with the assistance of experts to

9    help explain some of the issues.

10         The first has to do with how the federal statistical

11   system operates.  The federal statistical system is its own

12   creature.  Statistical agencies like the Census Bureau are

13   constrained, as we set out in our complaint, by a wide range of

14   both statutory and regulatory requirements in addition to

15   statistical directives from the Office of Management and

16   Budget.  And we think that in evaluating the administrative

17   record, it will be useful for the Court and the parties to hear

18   expert testimony on how and to what extent the Commerce

19   Department deviated from those statistical norms and procedures

20   in reaching its decision.

21         The second issue, at least initially, that we believe

22   would benefit from some expert testimony has to do with

23   establishing a vote dilution claim under the Section 2 of the

24   Voting Rights Act.  The United States' purported reason for

25   adding this question to the census questionnaire is so that the

I59HStaC

| | |
|---|---|
| 1 | Justice Department can better enforce the vote dilution |
| 2 | standard under Section 2. |
| 3 | Nearly all vote dilution litigation is conducted with |
| 4 | the assistance of expert witnesses who explain concepts like |
| 5 | racially polarized voting.  And we believe that, especially |
| 6 | because the stated reason for the decision here is to produce |
| 7 | better citizen voting-age population data in order to better |
| 8 | litigate Section 2 cases, we think that expert testimony on how |
| 9 | the vote dilution test is met in Section 2 cases would be |
| 10 | useful to the Court.  So that's a preview of the issues that we |
| 11 | intend to raise. |
| 12 | THE COURT:  All right.  I'm inclined to say that |
| 13 | there's no reason to discuss it further, now that you started |
| 14 | by saying that it's something you would raise in connection |
| 15 | with the record, and I'm not sure that we need to say anything |
| 16 | further.  But I will say that to the extent that you need to |
| 17 | identify experts, I mean, without intimating a view on whether |
| 18 | or not I would authorize that sort of discovery, I would |
| 19 | certainly think you should be in a position on July 3 to move |
| 20 | forward expeditiously so that if I did authorize it, you had |
| 21 | them identified and could proceed with all deliberate speed, to |
| 22 | use a loaded term. |
| 23 | So anything else to be discussed? |
| 24 | MS. TARCZYNSKA:  Not for the government. |
| 25 | MR. COLANGELO:  No, your Honor.  Thank you. |

I59HStaC

1                THE COURT:  I think they're our government, too, just

2      to be fair.

3                All right.  I'll issue a scheduling order consistent

4      with what we did today.

5                I thank the court reporter who did me a solid by

6      showing up despite a late request on my part, and thank you all

7      for being here.

8                We are adjourned.

9                (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25