June 26, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' letter brief regarding discovery outside of the administrative record, *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

      Defendants take the unsupportable position that Plaintiffs' challenge to the demand for person-by-person citizenship status should not be reviewed on the "whole record" of the agency action, 5 U.S.C. § 706, but rather on a partial – and admittedly incomplete – record.  This approach is inconsistent with the text and purpose of the Administrative Procedure Act, ignores Plaintiffs' well-founded allegations of bad faith, and disregards Plaintiffs' constitutional claim.  Accordingly, Plaintiffs respectfully request that this Court (1) direct Defendants to complete their deficient administrative record and produce a privilege log for any materials withheld on a claim of privilege; (2) authorize extra-record discovery in light of Plaintiffs' allegations of bad faith and the need to explain complex subject matter; (3) permit discovery on Plaintiffs' constitutional claim, which is not subject to the record rule at all; and (4) order that discovery should begin immediately and proceed on an expedited schedule.

      *1. The Court should direct Defendants to complete their administrative record.*  The APA requires this Court to conduct "plenary review of the Secretary's decision, . . . to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. § 706 (in evaluating agency action, "the court shall review the whole record").  This "whole record" requirement is a necessary element of effective judicial review, because the § 706(2) standard requires the Court to determine, *inter alia*, whether the agency "relied on factors which Congress has not intended it to consider," made a decision that "runs counter to the evidence" before it, or failed to offer a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

      The Court cannot properly conduct this inquiry without access to the whole record, as opposed to simply those parts of the record Defendants have selectively presented.  Here, the administrative record is facially deficient in numerous respects.  For example:

- Defendants recently supplemented the administrative record to disclose for the first time that the Secretary began evaluating the citizenship demand in early 2017, and that as part of that evaluation process, the Secretary and his staff "consulted with Federal governmental components," including the Department of Justice (DOJ).  AR 1321 (Docket No. 189).  But apart from background materials, the record includes no documents that pre-date DOJ's December 2017 request or that reflect this outreach to other agencies.
- Defendants acknowledge that the Secretary had numerous conversations about the citizenship demand that are nowhere reflected in the record.  For example, the Secretary testified to

1

- extensive discussions with the Justice Department – "We spent a lot of time talking with Justice about the request."[1] – but the record contains no documents reflecting any communications with DOJ about the citizenship request apart from the single December 2017 letter.[2]
- Although the record includes summaries of conversations between Secretary Ross and some stakeholders, the record omits any information regarding how that limited group was selected, and excludes the briefing materials that a Cabinet Secretary would routinely review before conducting fact-finding on such a consequential decision. *See NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975) (omission of agency head's briefing books from the administrative record was error).
- The Census Bureau's Chief Scientist concluded that adding a citizenship demand "is very costly, harms the quality of the census count, and would use substantially less accurate citizenship status data than are available from administrative sources."  AR 1277.  But the record includes none of the materials that he relied on in reaching this view, which are materials "indirectly considered" by the Secretary and therefore necessary to complete the whole record.  *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989).

The Court should therefore direct Defendants to complete the deficient record in this case.  *See Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) (reversing grant of summary judgment where there was "a strong suggestion that the record before the Court was not complete").

In addition, the Court should direct Defendants to produce a privilege log for all materials withheld from the record on a claim of privilege.  Defendants have represented that the record contains only the "non-privileged" material considered by the Secretary, and Defendants have acknowledged withholding unspecified additional materials on privilege grounds.[3]  To exclude probative material – without even stating the claim of privilege or allowing it to be tested – undermines the Court's obligation to review the "whole record."

Where a litigant asserts that privilege doctrines justify withholding documents germane to the litigation, as Defendants claim here, a court may direct the production of "an adequately detailed privilege log" in order "[t]o facilitate its determination" of that issue.  *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (quotation marks omitted).  This requirement is no less applicable where the litigant is a federal agency, and the legal claims implicated by the document arise under the APA.  Indeed, the Second Circuit has rejected the argument that no privilege log should be produced in an APA challenge, reasoning that withheld

---

[1] *Review of the FY2019 Budget Request for the U.S. Dep't of Commerce: Hearing Before the Subcomm. on Commerce, Justice, Sci., & Related Agencies of the S. Comm. on Appropriations*, 115th Cong. 16 (May 10, 2018) (testimony of Secretary Ross), at 2018 WL 2179074.

[2] The Assistant Attorney General for Civil Rights is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. § 0.50(a), and the Voting Section of the Civil Rights Division employs dozens of attorneys, analysts, statisticians, and others responsible for carrying out this function.  It is difficult to imagine that the Secretary could "spen[d] a lot of time talking with Justice" about the request for data to better enforce the vote-dilution prohibition in Section 2 of the Voting Rights Act, yet the record could plausibly contain no information from the staff responsible for enforcing that Act.

[3] During the parties' meet-and-confer, Defendants acknowledged that materials were withheld from the administrative record on privilege grounds; declined to identify even the categories of those materials; and refused to specify any bases for the claim of privilege except to state that various governmental privileges may apply.

materials may have been improperly excluded and that "without a privilege log, the District Court would be unable to evaluate the Government's assertion of privilege." *In re Nielsen*, No. 17-3345, slip op. at 3 (2d Cir. Dec. 27, 2017) (order denying mandamus petition) (Ex. 1); *see also Gill v. Dep't of Justice*, No. 14-cv-120, 2015 WL 9258075, at *6-7 (N.D. Cal. Dec. 18, 2015); *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, No. 10-cv-2008, 2011 WL 1102868, at *3 (D. Kan. Mar. 23, 2011); *New York v. Salazar*, 701 F. Supp. 2d 224, 235 (N.D.N.Y. 2010) (magistrate's order), *aff'd*, 2011 WL 1938232 (N.D.N.Y. Mar. 8, 2011).

The ordinary practice of various federal agencies – including the Commerce Department itself – refutes any contention that producing a privilege log is unwarranted in APA litigation. A 2012 guidance document issued by a component of the Commerce Department recognizes that "[w]hen the Custodian . . . determines to withhold a directly or indirectly considered document under claims or privilege or protection, the Custodian must produce a Privilege Log," including "written justification for the withholding of documents," to allow resolution of "any disputes about whether such documents must be made available." U.S. Dep't of Commerce, Nat'l Oceanic & Atmospheric Admin., *Guidelines for Compiling an Administrative Record* 14 (Dec. 21, 2012), www.gc.noaa.gov/documents/2012/AR_Guidelines_122112-Final.pdf. The Court should therefore direct Defendants to produce a privilege log that identifies any materials withheld from the record and states the basis for asserting any privilege.[4]

*2. The Court should authorize extra-record discovery in this case.* Although judicial review of agency action ordinarily proceeds on the basis of the administrative record alone, *see Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997), this "record rule" is subject to several exceptions that apply here.

First, the Supreme Court has authorized extra-record investigation where there is a showing of bad faith on the part of agency decisionmakers. *Citizens to Pres. Overton Park*, 401 U.S. at 420. Plaintiffs are required to make a "strong preliminary showing" of bad faith to expand the scope of review, *see Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974), and this case more than amply clears that bar.

Most notably, the public record demonstrates tremendous political pressure on the Census Bureau from the President and senior White House staff to add the citizenship question. *See* AR 764 (White House Chief Strategist Steve Bannon directed Kansas Secretary of State and Presidential Adviser[5] Kris Kobach to contact the Secretary in 2017 regarding the citizenship question); Am. Compl. ¶¶ 101-02 (Docket No. 85) (citing campaign statement that the President "officially mandated" the citizenship question). This evidence alone would warrant a conclusion of bad faith that justifies expanding the record. *See Sokaogon Chippewa Cmty. v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997) ("If there are adequate grounds to suspect that an agency decision was tainted by improper political pressure, courts have a responsibility to bring out the

---

[4] To the extent Defendants seek to assert the deliberative process privilege, that privilege cannot be invoked where, as here, Plaintiffs have made a "showing of bad faith." *Tummino v. Von Eschenbach,* 427 F. Supp. 2d 212, 234 (E.D.N.Y. 2006); *see also Salazar*, 701 F. Supp. 2d at 237 ("[W]hen the decision-making process itself is the subject of the litigation," the "overwhelming consensus" is that the deliberative process privilege does not apply).

[5] At the time of Kobach's communications with Secretary Ross, Kobach was serving as Vice Chair of the Presidential Advisory Commission on Election Integrity. Exec. Order 13,799, 82 Fed. Reg. 22,389 (May 16, 2017).

truth of the matter."); *see also Tummino v. Torti*, 603 F. Supp. 2d 519, 544-45 (E.D.N.Y. 2009) (noting that "the mere existence of 'extraneous pressure' from the White House or other political quarters would render [the agency's] decision invalid" under the APA) (quoting *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1248-49) (D.C. Cir. 1971).

Defendants' shifting chronology further undermines their stated rationale. The Secretary's March 2018 decision memo states that the Secretary "set out to take a hard look" at the citizenship question "[f]ollowing receipt of the DOJ request" in December 2017, *see* AR 1313; and the Secretary has provided sworn testimony to Congress that "[t]he Department of Justice . . . initiated the request for inclusion of the citizenship question."[6] But Defendants now acknowledge that the Secretary actually began looking into the citizenship demand nearly a year before receiving the DOJ request, and that the Secretary in fact solicited that December 2017 request from DOJ. AR 1321 (Docket No. 189). *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233 (E.D.N.Y. 2006) ("[A] plausible interpretation . . . is that senior management . . . had long since decided" how to proceed, "but needed to find acceptable rationales for the decision").

In addition, the record shows an extremely unusual decisionmaking process. The Census Bureau typically takes years to test the census design and validate new questions, Am. Compl. ¶¶ 58-62, but here Defendants decided to add the citizenship demand in a matter of months and with no testing. *See Tummino*, 427 F. Supp. 2d at 233-34 ("[T]hat the FDA's decisionmaking processes were unusual in four significant respects satisfies the court that the necessary showing of bad faith . . . has been made."). And the Secretary overruled the uniform view of his experienced professional staff and advisory committees, *see* AR 1277-85, which further supports a conclusion of bad faith. *Tummino*, 427 F. Supp. 2d at 231-33 (evidence that senior personnel overruled professional staff supports a "strong preliminary showing of bad faith").

Moreover, the record already includes strong evidence that the stated reason – to better enforce the vote-dilution prohibition – is pretext. The claim that Section 2 enforcement requires person-by-person citizenship information collected through the census is not credible given that those data have never been available since the Voting Rights Act was enacted in 1965. *See* Br. of the Leadership Conference on Civil & Human Rights et al. as Amici Curiae, at 12-17 (Docket No. 187). Indeed, the White House-directed briefing from Kobach to Secretary Ross identified the need to collect citizenship data for a different purpose: to address the claimed problem that "aliens" are "counted for congressional apportionment purposes." AR 764. The Court should therefore authorize extra-record discovery in light of this showing of bad faith.

Second, courts have authorized extra-record evidence to permit explanation of complex subject matter or to determine whether the agency has considered all relevant factors. *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). Indeed, courts regularly consider expert testimony in APA litigation involving the census. *E.g.*, *City of New York v. U.S. Dep't of Commerce*, 822 F. Supp. 906, 917 (E.D.N.Y. 1993) (describing expert testimony of statisticians and demographers in census challenge); *Cuomo v. Baldrige*, 674 F. Supp. 1089, 1093 (S.D.N.Y.

---

[6] *Hearing on Recent Trade Actions, Including Section 232 Determinations on Steel & Aluminum: Hearing Before the H. Ways & Means Comm.*, 115th Cong. 24 (Mar. 22, 2018) (testimony of Secretary Ross), at 2018 WLNR 8951469.

1987) (same). If permitted, Plaintiffs intend to proffer expert testimony regarding (a) the operation of the federal statistical system and principles for designing valid statistical instruments[7]; (b) the standards for demonstrating racially polarized voting in Section 2 vote-dilution claims; (c) the harms that would attend a disproportionate population undercount; and (d) the deterrent effect on census participation of the citizenship demand.

     *3. The Court should permit Plaintiffs to take discovery to support their constitutional claim.* Plaintiffs have pled a constitutional claim in addition to their APA claims – namely, that Defendants' demand for citizenship status will deter participation in the census and impede the "actual Enumeration" required by the Constitution. Am. Compl. ¶¶ 1, 7, 176-80. The "Supreme Court has held that a plaintiff who is entitled to judicial review of its constitutional claims under the APA is entitled to discovery in connection with those claims." *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev.*, 59 F. Supp. 2d 310, 328 (D. P.R. 1999) (citing *Webster v. Doe*, 486 U.S. 592, 604 (1988)); *see also Rydeen v. Quigg*, 748 F. Supp. 900, 905-06 (D.D.C. 1990) (considering extra-record affidavits because "[w]hen reviewing constitutional challenges to agency decisionmaking, courts make an independent assessment of the facts and the law"). Plaintiffs are therefore entitled to take discovery regarding their constitutional claim.

     *4. The Court should direct that discovery may proceed immediately.* Defendants take the indefensible position – already rejected by the Second Circuit – that "in evaluating agency action, a court may only consider materials that the Government unilaterally decides to present to the court." *In re Nielsen*, slip op. at 2 (Ex. 1). Because there are strong grounds to compel Defendants to complete the record and to authorize Plaintiffs' tailored requests for extra-record discovery, Plaintiffs propose the following schedule:

- Defendants should complete the record and produce a privilege log by July 13;
- The parties should provide initial disclosures by July 13;
- Plaintiffs' expert reports should be disclosed by September 12;
- Defendants' expert reports (if any) should be disclosed by September 26;
- Plaintiffs' rebuttal reports (if any) should be disclosed by October 5;
- Fact and expert discovery should close by October 12; and
- The parties should be trial ready by October 31.

Plaintiffs in 18-CV-2921 have conferred with the plaintiffs in 18-CV-5025 and have jointly advised Defendants that we currently anticipate seeking twenty fact depositions total between the two cases, as permitted by Fed. R. Civ. P. 30(a)(2)(A)(i).[8]

---

[7] On this point, Plaintiffs intend to proffer the testimony of Dr. Hermann Habermann, who, among other roles, has served as Chief Statistician of the United States and Deputy Director of the Census Bureau. Plaintiffs have sought, but not received, Defendants' assurance that they will not seek to preclude Dr. Habermann's testimony by reliance on the Commerce Department's *Touhy* regulations at 15 C.F.R. Part 15, subpart B. Plaintiffs will seek appropriate relief from the Court if the Department seeks to apply those regulations to Dr. Habermann's expected testimony. *See* Letter to Peter B. Davidson, General Counsel, U.S. Dep't of Commerce (June 22, 2018) (Ex. 2).

[8] At the May 9 case conference in this action, Plaintiffs' counsel advised the Court that three or four depositions may be warranted, subject to a review of the administrative record. *See* Tr. of Initial Pretrial Conf. at 10 (May 9, 2018) (Docket No. 151). The administrative record that was subsequently produced identifies a number of additional witnesses with pertinent information whose identity could not have been known to counsel at the time.

Dated: June 26, 2018		Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo (MC-1746)
   *Executive Deputy Attorney General*
Lourdes M. Rosado (LR-8143), *Bureau Chief*
Elena Goldstein (EG-8586), *Senior Trial Counsel*
Ajay Saini (AS-7014), *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov


MAURA HEALY
*Attorney General of the Commonwealth of Massachusetts*
Miranda Cover, *Assistant Attorney General*
Ann E. Lynch, *Assistant Attorney General*
Public Protection & Advocacy Bureau
Massachusetts Attorney General's Office
One Ashburton Place
Boston, MA 02108

Attorneys for Plaintiffs