

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

June 26, 2018

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Centre Street
New York, New York 10007

Re:   *State of New York, et al., v. U.S. Dep't of Commerce, et al.*, 18-cv-2921
      *New York Immigration Coalition, et al., v. U.S. Dep't of Commerce, et al.*, 18-cv-5025

Dear Judge Furman:

In accordance with this Court's May 9, 2018 Order, ECF No. 137, Defendants write to respectfully submit that no administrative-record supplementation or discovery is appropriate in this litigation. That position is based on the well-settled presumption against discovery in record-review cases under the Administrative Procedure Act ("APA"), and the purely legal threshold issues that will resolve both cases. In the alternative, Defendants request that the Court stay all discovery pending resolution of Defendants' motions to dismiss. *See In re United States*, 138 S.Ct. 443, 445 (2017) (directing district court to first rule on Government's threshold arguments before it can order supplementation of the administrative record).

At the May 9, 2018 initial conference, when asked about the scope of contemplated discovery, counsel for the State of New York indicated that Plaintiffs wanted "discovery regarding the decision-makers' process" explaining: "we would want interrogatories to identify the right group, but . . . I don't imagine that this would be discovery beyond more than three or four individuals. So a small number of depositions." Tr. 10:9-12. Additionally, Plaintiffs' counsel expressed the belief that "some limited expert discovery may be appropriate." *Id.* at 26:17-25.

During the Parties' meet and confers on June 22 and June 25, however, it became clear that Plaintiffs sought discovery that would be considered excessively broad and sweeping even in normal non-APA civil litigation. Specifically, it appears that Plaintiffs want (1) broad document discovery from not only from the Department of Commerce ("Commerce"), but also from the Department of Justice ("DOJ"), Department of Homeland Security ("DHS") and the State Department, which would include requests for internal privileged deliberations, communications between the agencies, and data; (2) unspecified third party discovery; (3) fact depositions of at least 20 witnesses, including Commerce, DOJ, DHS, and State Department employees, Rule 30(b)(6) depositions of Commerce and other agencies, and third-party witnesses; and (4) expert discovery.[1]  These requests fall into three general categories of impermissible discovery—first,

---

[1] Plaintiffs also indicated that they would not know exactly what discovery they would be seeking until the Defendants submitted initial disclosures. However, actions such as this one "for review

Plaintiffs seek to supplement the administrative record with information protected by the attorney-client and deliberative process privileges; second, Plaintiffs want to take the depositions of at least one cabinet-level official and his subordinate employees to probe the mental processes behind the decision; and third, Plaintiffs seek far-reaching discovery into materials that were never before the Secretary of Commerce either directly or indirectly. Plaintiffs' alternative conception of the proper contents of the record bears no resemblance to any traditional or recognized definition of an administrative record, and the Court should reject it.

## I.   Discovery Is Inappropriate In An Action Challenging An Agency Decision.

Plaintiffs' requests to engage in discovery beyond the administrative record are premised on a fundamental misunderstanding of the nature and scope of judicial review in challenges to agency action under the APA. "The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light v. Lorion*, 470 U.S. 729, 744 (1985). In keeping with the limited scope of such judicial review, challenges to agency decisions, such as this one, must be decided based only on the administrative record compiled by the agency. 5 U.S.C. § 706; *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (the reviewing court in an APA action should consider only the materials that were before the agency when it made its decision, and should not substitute its opinion for that of the agency). If the agency's decision "is not sustainable on the administrative record made, then the . . . decision must be vacated and the matter remanded to [the agency] for further consideration" because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (citation omitted).

It is for this reason that "under the APA, discovery rights are significantly limited. The respondent agency must turn over the whole administrative record as it existed at the time of the challenged agency action, but normally no more." *Sharkey v. Quarantillo*, 541 F.3d 75, 92 n.15 (2d Cir. 2008); *see also Nat'l Audobon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) ("Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision."). To allow wide-ranging discovery and the introduction of evidence that was never before agency decisionmakers is to invite the district court to conduct a prohibited *de novo* review of the issue before the agency. *Sierra Club v. U.S. Army Corps of Eng'rs*, 772 F.2d 1043, 1052 (2d Cir. 1985); *see Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (if "a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision"). Plaintiffs' broad discovery requests ignore these bedrock administrative law principles.

### A.   Plaintiffs Cannot Demonstrate That The Administrative Record Is Inadequate

Here, Defendants have certified and lodged a 1,300+ page administrative record that includes all of the non-privileged documents that were directly or indirectly considered by the Secretary in deciding whether to reinstate a citizenship question on the decennial census. *See* AR 1-1,321. Defendants have also supplemented that record with an additional memorandum "to provide further background and context … concerning the reinstatement of a citizenship question to the decennial census." *See* Notice of Filing Supp. Mem., ECF No. 189-1. This record amply

---

on an administrative record" are expressly exempt from the Rule 26(a) initial disclosure requirements. *See* Fed. R. Civ. P. 26(a)(1)(B).

explains the Secretary's decision and serves as the proper basis—and is entirely sufficient—to decide this case should it survive Defendants' motions to dismiss.

"[D]eference is due to the agency's judgment as to what constitutes the whole administrative record." *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012). It is insufficient for Plaintiffs to suggest that the record is incomplete because its contents fall short of Plaintiffs' capacious imagining of what materials they think *ought* to be found in an administrative record. Plaintiff cannot identify any nonprivileged document directly or indirectly considered by the decisionmaker that was not included in the administrative record. Nor have Plaintiffs shown that the administrative record produced by the agency reflects "such [a] failure to explain administrative action as to frustrate effective judicial review." *Camp*, 411 U.S. at 142-43. To the contrary, the Secretary's decision memo, and the documents on which he based that decision, set forth his reasoning in sufficient detail. Plaintiffs may disagree with the Secretary's rationale, but they cannot credibly claim that additional information is needed to *understand* it. If Plaintiffs believe that the record is inadequate to support the agency's decision, then the next step is not to expand the basis for this Court's review to include documents never even considered by the decisionmaker or to take testimony probing the minds of agency officials—it is instead for Plaintiffs to file a merits brief asking that the decision be set aside. *See id.* at 143.

Thus, Plaintiffs' attempt to obtain discovery of documents in the possession of federal agencies other than Commerce, which were never transmitted or communicated to agency decisionmakers, is entirely inappropriate. Courts have consistently held that the administrative record before the court will include only those documents that "the agency decision-makers directly or indirectly considered." *Comprehensive Cmty.*, 890 F. Supp. 2d at 308 (collecting cases); *State of N.Y. v. Shalala,* No. 93 Civ. 1330 (JFK), 1996 WL 87240, at *6 (S.D.N.Y. Feb. 29, 1996). Documents that were not actually in the possession of any agency employee cannot have been directly or indirectly before the agency, and therefore do not form part of the administrative record. *See, e.g.*, *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 457 (D.C. Cir. 1994) (documents that "were neither prepared for nor provided to the [agency] or its staff" "were never part of the record in the first place."); *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1456 (1st Cir. 1992) (affirming decision to exclude from administrative record documents that "were never seen" by agency whose decision was challenged, but were instead in possession of separate government agency). Expert discovery is similarly prohibited in APA cases for the same reason. *Sierra Club*, 772 F.2d at 1052.

That privileged materials such as deliberative memoranda and emails or attorney-client communications were not included in the record is also insufficient to establish a gap or omission, as such documents do not form part of an administrative record in the first instance. *See Nat'l Nutritional Foods Ass'sn v. Mathews*, 557 F.2d 325, 333 (2d Cir. 1977) (affirming refusal to order production of deliberative intra-agency memoranda in record-review case); *see also In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998); *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45 (D.C. Cir. 1986) (refusing to supplement the record to consider transcripts of agency proceedings protected by the deliberative-process privilege); *Town of Norfolk*, 968 F.2d at 1455-58 (upholding exclusion of documents from administrative record on privilege grounds); *Comprehensive Cmty*, 890 F. Supp. 2d at 312-13 ("[C]ourts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."). "[E]xcluding deliberative materials from the administrative record[] has two distinct purposes.

First, … it reflects that it is the agency's articulated justification for its decision that is at issue; the private motives of agency officials are immaterial….Second, [it] advances the functional goal of encouraging the free flow of ideas within agencies, with agency employees not inhibited by the prospect of judicial review of their notes and internal communications." *Id.* at 312.

Moreover, Defendants are not required to produce a privilege log of materials that were not included in the administrative record on this basis. Requiring a privilege log would upend the presumption of regularity that applies to the question whether an administrative record has been designated properly. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-CV-01290-LJO-GSA, 2016 WL 3543203, at *19 (E.D. Cal. June 23, 2016) ("To require a privilege log as a matter of course in any administrative record case where a privilege appears to have been invoked would undermine the presumption of correctness."). Practical considerations further warrant denial of any request for a privilege log, as requiring such a log would invite tangential discovery disputes about the adequacy of *that* document and likely lead to unnecessary and distracting motions practice incompatible with the purposes and goals of limited APA review of agency decisions. A contrary ruling would also pose substantial burdens on agencies, requiring them to collect and catalogue the privileged materials, and then create delay as "[t]he privilege question would have to be resolved before judicial review of the administrative decision could even begin." *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 & n.4 (D.D.C. 2007). Such burdens and delays would frustrate the scheme for orderly and limited judicial review set forth in the APA. Plaintiffs' request that Defendants be ordered to provide a privilege log should be rejected.

## B.  Plaintiffs' Assertions of Bad Faith Cannot Justify Discovery

Plaintiffs have failed to make the "strong showing" of bad faith or improper behavior required to establish an exception to the general prohibition on extra-record discovery. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Hoffman*, 132 F.3d at 14; *see also Citizens Against Casino Gambling in Erie Cty. v. Stevens*, 814 F. Supp. 2d 261, 265 (W.D.N.Y. 2011) ("To warrant extra-record discovery in an APA case, the plaintiff must make a sufficiently strong factual showing of impropriety; naked assertions of bad faith will not suffice."). To overcome the presumption of good faith and regularity that is accorded to government officials, *Comprehensive Cmty.*, 890 F. Supp. 2d at 309, it is not enough merely to cast aspersions at the agency's motives. Rather, a "[p]laintiff must present 'well-nigh irrefragable proof' of bad faith or bias on the part of government officials." *Adair v. England*, 183 F. Supp. 2d 31, 60 (D.D.C. 2002) (citations omitted).

Plaintiffs have not met that burden here. Although Defendants do not have the benefit of Plaintiffs' submissions and therefore cannot expressly respond to Plaintiffs' arguments, it appears based on Plaintiffs' complaints and statements made during the meet and confers that Plaintiffs' "bad faith" arguments will be three-fold—none of which warrant discovery outside the administrative record, and certainly not discovery into materials beyond those that were before decisionmaker either directly or indirectly. *First*, it appears that Plaintiffs intend to argue that the stated rationale for the decision to add the citizenship question was pretextual because it is not supported by the articulated rationale of enforcing the Voting Rights Act ("VRA"), *see, e.g.* 18-cv-5025, ECF No. 1 ("*NYIC* Compl.") ¶¶ 166-70, 184, 187, that the question was insufficiently tested, *id.* ¶ 191, or that the decision ignored the advice of lower level staff, *id.* ¶ 7. Yet such allegations go to the *merits* inquiry, not to whether discovery is warranted. *See Comprehensive Cmty*, 890 F. Supp.at 315 ("[Plaintiff's] argument as to bad faith consist of merits arguments. . . However, to establish bad faith requires a strong showing; this showing is not made out by the

mere fact that a court may disagree with the agency on the merits or find error, procedural or substantive, by the agency decision-maker."); *Ali v. Pompeo*, 16-cv-3691-KAM-SJB, 2018 WL 2058152, at *6 (E.D.N.Y. May 2, 2018) ("[Plaintiff] is arguing about the merits of his APA claim; that the ultimate resolution of his case may be in his favor does not mean that the Court should order discovery."). To the extent Plaintiffs cast aspersions on Acting Assistant Attorney General John Gore and his prior experience in private practice, *id.* ¶¶ 166-70, 187, Gore *now* heads DOJ's Civil Rights Division and his actions are afforded the "presumption of regularity" that attaches to all federal officials. *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926). Plaintiffs' assertions regarding the number of lawsuits initiated by the current administration under the VRA, *NYIC* Compl. ¶ 184, are likewise meaningless absent a comparison of the frequency with which past actions have been brought or data on the number of *investigations* currently being undertaken. Indeed, during the eight years of the prior administration, DOJ brought just five Section 2 enforcement actions, only one of which challenged a statewide redistricting plan. *See* DOJ Voting Section Litigation, *available at* https://www.justice.gov/crt/voting-section-litigation (last visited June 21, 2018). Plaintiffs also fail to recognize the possibility that the DOJ's voting-rights investigations might be hindered by a lack of citizenship data, or that such actions are cyclical in nature and tied temporally to redistricting that takes place after each decennial census, such as the 2010 census that occurred during the past Administration.

*Second,* it appears that Plaintiffs intend to point to statements from individuals outside Commerce expressing support for a citizenship question on the basis that apportionment should be restricted to U.S. citizens, *see, e.g., NYIC* Compl. ¶¶ 98-103, 179.  However, such views of third parties are irrelevant and cannot possibly be imputed to the Secretary—particularly when there is no indication that he was even aware of such comments, much less relied on them. To the extent that Plaintiffs point to a document in the record showing an isolated, unsolicited communication from Kris Kobach transmitting his views regarding apportionment to the Secretary, *see* A.R. 764, there is nothing in the record to suggest that the Secretary shared Mr. Kobach's view. Moreover, the Secretary's "actual subjective motivation … is *immaterial* as a matter of law—unless there is a showing of bad faith or improper behavior." *In re Subpoena Duces Tecum*, 156 F.3d at 1279-80 (emphasis added). To the extent that Plaintiffs want to make such *merits* arguments, communications between the Secretary and third-parties outside the government are included in the administrative record.

*Third*, it appears that Plaintiffs intend to make claims about the subjective motivations of the President of the United States, *NYIC* Compl. ¶¶ 105-09. As an initial matter, the Secretary of Commerce, not the President, made the decision challenged here, so any subjective motivations of the President are irrelevant. And the "presumption of regularity," *Chem. Found., Inc.*, 272 U.S. at 14-15, applies with the utmost force to the President himself. "[J]udicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977). Courts should not lightly endeavor to divine the subjective motivations of senior government officials in reviewing facially legitimate government action, *see Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 616-17 (2007) (Kennedy, J., concurring); *cf. Trump v. Hawaii*, 17-965, 2018 WL 3116337 (June 26, 2018). "[B]are allegations of malice should not suffice to subject government officials … to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).[2] And there is nothing untoward about an agency

_____

[2] Moreover, "[t]he authority of the President to control and supervise executive policymaking is

decisionmaker then exercising independent judgment to make a decision on the stated basis—*even if* additional motivations may be present—as long as the decision may be sustained on the articulated rationale. *See id.* at 407 (explaining that record review does not require disclosure of White House communications in informal rulemaking setting because any decision "must have the requisite factual support in the rulemaking record"). Similarly, Plaintiffs' reliance on the President's campaign emails, *see* 18-cv-2921, ECF No. 85 ("*NY* Compl.") ¶ 101, falls short of establishing bad faith, as the contents of these emails cannot be imputed to the Secretary. There is no evidence that any person sending such email had any knowledge of why the citizenship question was added, or any contact with the Secretary. The fact that a political fundraising email purporting to support the decision did not reference the VRA does not shed any light on the reasons why or how the actual decision was reached.

Finally, the Defendants note that the discovery sought in this case goes far beyond the stated purpose of probing the good faith of the agency decisionmaker. "When permitted, the discovery should not transform the litigation into one involving all the liberal discovery available under the Federal Rules. . . . Rather, the Court must permit only that discovery necessary to effectuate the Court's judicial review, *i.e.* review the decision of the agency under Section 706." *Ali*, 2018 WL 2058152, at \*4; *see also Milanes v. Chertoff*, 08-cv-2354 (LMM), 2008 WL 2073420, at \*2 (S.D.N.Y. May 13, 2008) (discovery beyond the administrative record permitted only to the limited extent necessary to fill the identified gap in the record).

### C.  Plaintiffs' Constitutional Claims Are Not A Basis For Discovery

Contrary to Plaintiffs' assertions, the presence of an overlapping constitutional claim does not entitle them to take discovery probing the minds of agency decisionmakers because the APA and its strictures on judicial review govern all claims in this case. Any attempt by Plaintiffs to portray their constitutional claims as distinct from, and not subject to, the limitations imposed by the APA on judicial review should be rejected. This is because Congress did not carve out constitutional claims from the APA's strictures governing challenges to agency decisions. Indeed, the APA specifically provides for review of agency action that is "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(B), and the APA provides the waiver of sovereign immunity for Plaintiffs' constitutional claims. All of Plaintiffs' claims challenge the same discrete, final agency action; reframing those claims to rely on subtly distinct theories "cannot so transform the case that it ceases to be primarily a case involving judicial review of agency action." *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993); *see also Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 & n.9 (6th Cir. 2017), *cert. denied sub nom. Harkness v. Spencer*, No. 17-955, 2018 WL 3013822 (June 18, 2018) (rejecting argument that constitutional claim warranted extra-record discovery and explaining that constitutional claim "is properly reviewed on the administrative record" absent showing of bad faith).

Extra-record discovery would be particularly inappropriate here because Plaintiffs' constitutional claims fundamentally overlap with their APA claims. *See, e.g.*, *Chang v. U.S. Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017); *Alabama-Tombigbee*

---

derived from the Constitution . . . . Our form of government simply could not function effectively or rationally if key executive policymakers were isolated from each other and from the Chief Executive." *Sierra Club v. Costle*, 657 F.2d 298, 406-07 (D.C. Cir. 1981) (recognizing that "courts [must] tread with extraordinary caution in mandating disclosure" of Presidential communications with Executive officials).

*Rivers Coal. v. North*, No. CIV.A.CV-01-S-0194-S, 2002 WL 227032, at *3-6 (N.D. Ala. Jan. 29, 2012). Indeed, Plaintiffs' constitutional challenges duplicate their APA claims: Under both theories, Plaintiffs allege that the Secretary's decision to reinstate a citizenship question will diminish census response rates, resulting in an undercount of the population, *see NY* Compl. at 54-57; *NYIC* Compl. at 64-66, or an undercount that will have disproportionate effect on minority and immigrant communities, *id.* at 61-64.

Permitting discovery for overlapping constitutional and APA challenges would "incentivize every unsuccessful party to agency action to allege . . . constitutional violations to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1238. (D.N.M. 2014).

## II.  Depositions Of Senior Cabinet Level Officials Are Improper

Finally, to protect longstanding, important, well-established institutional interests, even if discovery is authorized (which it should not be), the Court should preclude any deposition discovery targeted at senior cabinet officials. Such depositions would clearly be improper. It is black-letter administrative law that where, as here, there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding." *Camp*, 411 U.S. at 143. Discovery probing the mental processes of decisionmakers is not permitted. *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (criticizing a district court's decision to allow "the deposition of the Secretary," because "it was not the function of the court to probe the mental processes of the Secretary" in a record-review case); *Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974) ("It is hardly necessary to say that when a decision has been made by the Secretary … courts will not entertain an inquiry as to the extent of his investigation and knowledge of the points decided, or as to the methods by which he reached his determination."); *In re United States of America*, No. 14-5146 (D.C. Cir. July 24, 2014) (granting a petition for a writ of mandamus to quash deposition of cabinet secretary). Moreover, as a pragmatic case management matter, the government will vigorously oppose any such discovery, and resolving the resulting disputes could significantly disrupt these proceedings (including, potentially, through the appellate process if necessary).

The same is true—even more so—of any discovery directed to the White House, which raises "special considerations" regarding "the Executive Branch's interests in maintaining the autonomy of its office" and "the high respect that is owed to the office of the Chief Executive." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385 (2004). In addition to other privileges that may apply, discovery directed to the White House likely implicates material subject to a strong claim of executive privilege. As the Supreme Court has held, "[o]nce executive privilege is asserted, coequal branches of the Government are set on a collision course" and "[t]he Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Id.* at 389. Should this Court disagree with Defendants' broader position on discovery, Defendants respectfully request that the Court appropriately limit discovery to avoid these weighty concerns.

Attached as Exhibit A is a proposed schedule in the event that the Court orders the type of limited discovery described by counsel during the May 9 conference.

Defendants thank the Court for consideration of the issues raised in this letter.

Respectfully submitted,

CHAD A. READLER                          GEOFFREY S. BERMAN
Acting Assistant Attorney General        United States Attorney

BRETT A. SHUMATE                         By: /s/ Dominika Tarczynska
Deputy Assistant Attorney General        JEANNETTE VARGAS
                                         DOMINIKA TARCZYNSKA
JOHN R. GRIFFITHS                        Assistant United States Attorney
Director, Federal Programs Branch        86 Chambers Street, 3rd Floor
                                         New York, NY 10007
CARLOTTA P. WELLS                        Tel. (212) 637-2748
Assistant Branch Director                Fax (212) 637-2686
                                         dominika.tarczynska@usdoj.gov
KATE BAILEY
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel.:  (202) 514-9239
Fax:  (202) 616-8470


*Counsel for Defendants*

CC:

All Counsel of Record (by ECF)