# EXHIBIT A

I739stao

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

STATE OF NEW YORK, et al.,

                Plaintiffs,

           v.                              18 Civ. 2921 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                                           Argument
                Defendants.

------------------------------x

NEW YORK IMMIGRATION
COALITION,et al.,

                Plaintiffs,

           v.                              18 Civ. 5025 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                                           Argument
                Defendants.

------------------------------x


                                           New York, N.Y.
                                           July 3, 2018
                                           9:30 a.m.
Before:

                    HON. JESSE M. FURMAN,

                                           District Judge
```

APPEARANCES

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
     Attorneys for Plaintiffs
BY:  MATTHEW COLANGELO
     AJAY P. SAINI
     – and –
ARNOLD & PORTER KAYE SCHOLER
BY:  JOHN A. FREEDMAN
     – and –
LAW OFFICE OF ROLANDO L. RIOS
BY:  ROLANDO L. RIOS
     – and –
DEPARTMENT OF LABOR
BY:  ELENA S. GOLDSTEIN

United States Department of Justice
Civil Division, Federal Programs Branch
     Attorneys for Defendants
BY:  BRETT SHUMATE
     KATE BAILEY
     JEANNETTE VARGAS
     STEPHEN EHRLICH

1   full scope of such materials.  Accordingly, plaintiffs' request
2   for an order directing defendants to complete the
3   Administrative Record is well founded.
4           Finally, I agree with the plaintiffs that there is a
5   solid basis to permit discovery of extra-record evidence in
6   this case.  To the extent relevant here, a court may allow
7   discovery beyond the record where "there has been a strong
8   showing in support of a claim of bad faith or improper behavior
9   on the part of agency decision-makers."  National Audubon
10  Society v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997).  Without
11  intimating any view on the ultimate issues in this case, I
12  conclude that plaintiffs have made such a showing here for
13  several reasons.
14          First, Secretary Ross's supplemental memorandum of
15  June 21, which I've already discussed, could be read to suggest
16  that the Secretary had already decided to add the citizenship
17  question before he reached out to the Justice Department; that
18  is, that the decision preceded the stated rationale.  See, for
19  example, Tummino v. von Eschenbach, 427 F.Supp. 2d 212, 233
20  (E.D.N.Y. 2006) authorizing extra-record discovery where there
21  was evidence that the agency decision-makers had made a
22  decision and, only thereafter took steps "to find acceptable
23  rationales for the decision."  Second, the Administrative
24  Record reveals that Secretary Ross overruled senior Census
25  Bureau career staff, who had concluded -- and this is at page

1   1277 of the record -- that reinstating the citizenship question
2   would be "very costly" and "harm the quality of the census
3   count."  Once again, see Tummino, 427 F.Supp. 2d at 231-32,
4   holding that the plaintiffs had made a sufficient showing of
5   bad faith where "senior level personnel overruled the
6   professional staff."  Third, plaintiffs' allegations suggest
7   that defendants deviated significantly from standard operating
8   procedures in adding the citizenship question.  Specifically,
9   plaintiffs allege that, before adopting changes to the
10  questionnaire, the Census Bureau typically spends considerable
11  resources and time -- in some instances up to ten years --
12  testing the proposed changes.  See the amended complaint which
13  is docket no. 85 in the states' case at paragraph 59.  Here, by
14  defendants' own admission -- see the amended complaint at
15  paragraph 62 and page 1313 of the Administrative Record --
16  defendants added an entirely new question after substantially
17  less consideration and without any testing at all.  Yet again
18  Tummino is instructive.  See 427 F.Supp. 2d at 233, citing an
19  "unusual" decision-making process as a basis for extra-record
20  discovery.
21          Finally, plaintiffs have made at least a prima facie
22  showing that Secretary Ross's stated justification for
23  reinstating the citizenship question -- namely, that it is
24  necessary to enforce Section 2 of the Voting Rights Act -- was
25  pretextual.  To my knowledge, the Department of Justice and

1   civil rights groups have never, in 53 years of enforcing
2   Section 2, suggested that citizenship data collected as part of
3   the decennial census, data that is by definition quickly out of
4   date, would be helpful let alone necessary to litigating such
5   claims.  See the states case docket no. 187-1 at 14; see also
6   paragraph 97 of the amended complaint.  On top of that,
7   plaintiffs' allegations that the current Department of Justice
8   has shown little interest in enforcing the Voting Rights Act
9   casts further doubt on the stated rationale.  See paragraph 184
10  of the complaint which is docket no. 1 in the Immigration
11  Coalition case.  Defendants may well be right that those
12  allegations are "meaningless absent a comparison of the
13  frequency with which past actions have been brought or data on
14  the number of investigations currently being undertaken," and
15  that plaintiffs may fail "to recognize the possibility that the
16  DOJ's voting-rights investigations might be hindered by a lack
17  of citizenship data."  That is page 5 of the government's
18  letter which is docket no. 194 in the states case.  But those
19  arguments merely point to and underscore the need to look
20  beyond the Administrative Record.
21          To be clear, I am not today making a finding that
22  Secretary Ross's stated rationale was pretextual -- whether it
23  was or wasn't is a question that I may have to answer if or
24  when I reach the ultimate merits of the issues in these cases.
25  Instead, the question at this stage is merely whether --

1     assuming the truth of the allegations in their complaints --
2     plaintiffs have made a strong preliminary or prima facie
3     showing that they will find material beyond the Administrative
4     Record indicative of bad faith.  See, for example, Ali v.
5     Pompeo, 2018 WL 2058152 at page 4 (E.D.N.Y. May 2, 2018).  For
6     the reasons I've just summarized, I conclude that the
7     plaintiffs have done so.
8         That brings me to the question of scope.  On that
9     score, I am mindful that discovery in an APA action, when
10    permitted, "should not transform the litigation into one
11    involving all the liberal discovery available under the federal
12    rules.  Rather, the Court must permit only that discovery
13    necessary to effectuate the Court's judicial review; i.e.,
14    review the decision of the agency under Section 706."  That is
15    from Ali v. Pompeo at page 4, citing cases.  I recognize, of
16    course, that plaintiffs argue that they are independently
17    entitled to discovery in connection with their constitutional
18    claims.  I'm inclined to disagree given that the APA itself
19    provides for judicial review of agency action that is "contrary
20    to" the Constitution.  See, for example, Chang v. USCIS, 254
21    F.Supp. 3d 160 at 161-62 (D.D.C. 2017).  But, even if
22    plaintiffs are correct on that score, it is well within my
23    authority under Rule 26 to limit the scope of discovery.
24        Mindful of those admonitions, not to mention the
25    separation of powers principles at stake here, I am not

1    inclined to allows as much or as broad discovery as the
2    plaintiffs seek, at least in the first instance.  First, absent
3    agreement of defendants or leave of Court, of me, I will limit
4    plaintiffs to ten fact depositions.  To the extent that
5    plaintiffs seek to take more than that, they will have to make
6    a detailed showing in the form of a letter motion, after
7    conferring with defendants, that the additional deposition or
8    depositions are necessary.  Second, again absent agreement of
9    the defendants or leave of Court, I will limit discovery to the
10   Departments of Commerce and Justice.  As defendants' own
11   arguments make clear, materials from the Department of Justice
12   are likely to shed light on the motivations for Secretary
13   Ross's decision -- and were arguably constructively considered
14   by him insofar as he has cited the December 2017 letter as the
15   basis for his decision.  At this stage, however, I am not
16   persuaded that discovery from other third parties would be
17   necessary or appropriate; to the extent that third parties may
18   have influenced Secretary Ross's decision, one would assume
19   that that influence would be evidenced in Commerce Department
20   materials and witnesses themselves.  Further, to the extent
21   that plaintiffs would seek discovery from the White House,
22   including from current and former White House officials, it
23   would create "possible separation of powers issues."  That is
24   from page 4 of the slip opinion in the Nielsen order.  Third,
25   although I suspect there will be a strong case for allowing a

1    deposition of Secretary Ross himself, I will defer that
2    question to another day.  For one thing, I think it should be
3    the subject of briefing in and of itself.  It raises a number
4    of thorny issues.  For another, I'm inclined to think that
5    plaintiffs should take other depositions before deciding
6    whether they need or want to go down that road and bite off
7    that issue recognizing, among other things, that defendants
8    have raised the specter of appellate review in the event that I
9    did allow it.  At the same time, I want to make sure that I
10   have enough time to decide the issue and to allow for the
11   possibility of appellate review without interfering with an
12   expeditious schedule.  So on that issue I'd like you to meet
13   and confer with one another and discuss a timeline and a way of
14   raising the issue, that is to say, when it is both ripe but
15   also timely and would allow for an orderly resolution.
16            So with those limitations, I will allow plaintiffs to
17   engage in discovery beyond the record.  Further, I will allow
18   for expert discovery.  Expert testimony would seem to be
19   commonplace in cases of this sort.  See, for example, Cuomo v.
20   Baldrige, 674 F.Supp. 1089 (S.D.N.Y. 1987).  And as I indicated
21   in my colloquy with Ms. Vargas, I do not read Sierra v. United
22   States Army Corps of Engineers, 772 F.2d 1043 (2d Cir. 1985),
23   to "prohibit" expert discovery as defendants suggestion.  That
24   case, in my view, speaks the deference that a court ultimately
25   owes the agency's own expert analyses, but it does not speak to

1    the propriety of expert discovery, let alone clearly prohibit
2    such discovery, let alone do so in a case where, as I have just
3    done so, a finding of bad faith and a rebuttal of the
4    presumption of regularity are at issue.
5             That leaves only the question of timing.  I recognize
6    that you proposed schedules without knowing the scope of
7    discovery that I would permit.  I would like to set a schedule
8    today.  In that regard, would briefly hear from both sides with
9    respect to the schedule.  Alternatively, I could allow you to
10   meet and confer and propose a schedule in writing if you think
11   that that would be more helpful.  Let me facilitate the
12   discussion by throwing out a proposed schedule which is based
13   in part on your letters and modifications that I've made to the
14   scope of discovery.
15            First, by July 16, I think defendants should produce
16   the complete record as well as a privilege log and initial
17   disclosures.  I recognize that Rule 26(a)(1)(B)(i) exempts from
18   initial disclosure "an action for review on an administrative
19   record" but in light of my decision allowing extra-record
20   discovery I do not read that exception to apply.
21            Then I would propose that by September 7, plaintiffs
22   will disclose their expert reports.
23            By September 21, defendants will disclose their expert
24   reports, if any.
25            By October 1, plaintiffs will disclose any rebuttal

1   expert reports.

2            And fact an expert discovery would close by
3   October 12, 2018.

4            Plaintiffs also propose that the parties would then be
5   ready for trial on October 31.  My view is it's premature to
6   talk about having a trial.  For one thing, it may well end up
7   making sense to proceed by way of summary judgment rather than
8   trial.  For another thing, I don't know if we need to build in
9   time for Daubert motions or other pretrial motions that would
10  require more than 19 days to brief and for me to decide.  I
11  would be inclined, instead, to schedule a status conference for
12  sometime in September to check in on where things stand, making
13  sure that things are proceeding apace and get a sense of what
14  is coming down the pike and decide how best to proceed.  Having
15  said that, I think it would make sense for you guys to block
16  time in late October and November in the event that I do decide
17  a trial is warranted.  Again, I am mindful that my word is not
18  likely to be the final one here and I want to make sure that
19  all sides have an adequate opportunity to seek whatever review
20  they would need to seek after a final decision.

21           So that's my ruling.  You can respond to my proposed
22  schedule.  I'd be inclined to set it today but if you think you
23  need additional time.

24           MR. FREEDMAN:  Your Honor, John Freedman.  Just one
25  clarification.  I think it was clear from what you said but in

| | |
|---|---|
| 1 | terms of the number of depositions you meant ten collectively |
| 2 | between the two cases, not ten per case? |
| 3 | THE COURT:  Correct.  And they would be |
| 4 | cross-designated or cross-referenced in both cases.  Correct. |
| 5 | MR. FREEDMAN:  Understood, your Honor. |
| 6 | THE COURT:  And, again, I don't mean to suggest that |
| 7 | you will get more, but that's not -- I did invite you to make a |
| 8 | showing with specificity for why additional depositions would |
| 9 | be needed.  If it turns out that it is warranted, I'm prepared |
| 10 | to allow it but, mindful of the various principles at stake and |
| 11 | the limited scope of review under the APA, I think that it |
| 12 | makes sense to rein discovery in in a way that it wouldn't be a |
| 13 | standard civil action. |
| 14 | So, thoughts? |
| 15 | MR. COLANGELO:  Your Honor, for the state and local |
| 16 | government plaintiffs, we have no concerns at all. |
| 17 | THE COURT:  Microphone, please. |
| 18 | MR. COLANGELO:  For the state and local government |
| 19 | plaintiffs, we have no concerns at all with the various |
| 20 | deadlines that the Court has set out.  Thank you. |
| 21 | MR. FREEDMAN:  Your Honor, for the NYIC plaintiffs we |
| 22 | concur.  We think that it sets an appropriately expedited |
| 23 | schedule that will resolve the issues in time and we appreciate |
| 24 | the expedited consideration. |
| 25 | THE COURT:  All right.  Defendants. |