I739stao

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

STATE OF NEW YORK, et al.,

          Plaintiffs,

     v.                                 18 Civ. 2921 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                             Argument

          Defendants.

------------------------------x

NEW YORK IMMIGRATION
COALITION, et al.,

          Plaintiffs,

     v.                                 18 Civ. 5025 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                             Argument

          Defendants.

------------------------------x

                             New York, N.Y.
                             July 3, 2018
                             9:30 a.m.

Before:

                HON. JESSE M. FURMAN,

                             District Judge

1                         APPEARANCES

2    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
          Attorneys for Plaintiffs
3    BY:  MATTHEW COLANGELO
          AJAY P. SAINI
4         ELENA S. GOLDSTEIN
          - and -
5    ARNOLD & PORTER KAYE SCHOLER
     BY:  JOHN A. FREEDMAN
6         - and -
     LAW OFFICE OF ROLANDO L. RIOS
7    BY:  ROLANDO L. RIOS

8    United States Department of Justice
     Civil Division, Federal Programs Branch
9         Attorneys for Defendants
     BY:  BRETT SHUMATE
10        KATE BAILEY
          JEANNETTE VARGAS
11        STEPHEN EHRLICH

1                (Case called)

2                MR. COLANGELO:  Good morning, your Honor.

3                Matthew Colangelo from New York for the state and
4       local government plaintiffs.

5                One housekeeping matter, your Honor, if I may.  The
6       plaintiffs intended to have two lawyers oppose the Justice
7       Department's motion to dismiss; Mr. Saini argue the standing
8       argue and Ms. Goldstein argue the remaining 12(b)(1) and
9       12(b)(6) arguments; and then I will argue the discovery aspect
10      of today's proceedings.  And I may ask my cocounsel from
11      Hidalgo County, Texas, Mr. Rios, to weigh in briefly on one
12      particular aspect of expert discovery that we intend to
13      proffer.  So with the Court's indulgence, we may swap counsel
14      in and out between those arguments.

15               THE COURT:  Understood.  Thank you.

16               MS. GOLDSTEIN:  Elena Goldstein also from New York for
17      the plaintiffs.

18               MR. SAINI:  Ajay Saini also from New York for the
19      plaintiffs.

20               MR. FREEDMAN:  Good morning, your Honor.

21               John Freedman from Arnold & Porter for the New York
22      Immigration Coalition plaintiffs.

23               MR. RIOS:  Rolando Rios for the Cameron and Hidalgo
24      County plaintiffs, your Honor.

25               MR. SHUMATE:  Good morning, your Honor.

1  full scope of such materials.  Accordingly, plaintiffs' request
2  for an order directing defendants to complete the
3  Administrative Record is well founded.
4      Finally, I agree with the plaintiffs that there is a
5  solid basis to permit discovery of extra-record evidence in
6  this case.  To the extent relevant here, a court may allow
7  discovery beyond the record where "there has been a strong
8  showing in support of a claim of bad faith or improper behavior
9  on the part of agency decision-makers."  <u>National Audubon</u>
10 <u>Society v. Hoffman</u>, 132 F.3d 7, 14 (2d Cir. 1997).  Without
11 intimating any view on the ultimate issues in this case, I
12 conclude that plaintiffs have made such a showing here for
13 several reasons.
14     First, Secretary Ross's supplemental memorandum of
15 June 21, which I've already discussed, could be read to suggest
16 that the Secretary had already decided to add the citizenship
17 question before he reached out to the Justice Department; that
18 is, that the decision preceded the stated rationale.  See, for
19 example, <u>Tummino v. von Eschenbach</u>, 427 F.Supp. 2d 212, 233
20 (E.D.N.Y. 2006) authorizing extra-record discovery where there
21 was evidence that the agency decision-makers had made a
22 decision and, only thereafter took steps "to find acceptable
23 rationales for the decision."  Second, the Administrative
24 Record reveals that Secretary Ross overruled senior Census
25 Bureau career staff, who had concluded -- and this is at page

1    1277 of the record -- that reinstating the citizenship question
2    would be "very costly" and "harm the quality of the census
3    count."  Once again, see Tummino, 427 F.Supp. 2d at 231-32,
4    holding that the plaintiffs had made a sufficient showing of
5    bad faith where "senior level personnel overruled the
6    professional staff."  Third, plaintiffs' allegations suggest
7    that defendants deviated significantly from standard operating
8    procedures in adding the citizenship question.  Specifically,
9    plaintiffs allege that, before adopting changes to the
10   questionnaire, the Census Bureau typically spends considerable
11   resources and time -- in some instances up to ten years --
12   testing the proposed changes.  See the amended complaint which
13   is docket no. 85 in the states' case at paragraph 59.  Here, by
14   defendants' own admission -- see the amended complaint at
15   paragraph 62 and page 1313 of the Administrative Record --
16   defendants added an entirely new question after substantially
17   less consideration and without any testing at all.  Yet again
18   Tummino is instructive.  See 427 F.Supp. 2d at 233, citing an
19   "unusual" decision-making process as a basis for extra-record
20   discovery.
21         Finally, plaintiffs have made at least a prima facie
22   showing that Secretary Ross's stated justification for
23   reinstating the citizenship question -- namely, that it is
24   necessary to enforce Section 2 of the Voting Rights Act -- was
25   pretextual.  To my knowledge, the Department of Justice and

|     |                                                                                     |
| --- | ----------------------------------------------------------------------------------- |
| 1   | civil rights groups have never, in 53 years of enforcing                            |
| 2   | Section 2, suggested that citizenship data collected as part of                     |
| 3   | the decennial census, data that is by definition quickly out of                     |
| 4   | date, would be helpful let alone necessary to litigating such                       |
| 5   | claims.  See the states case docket no. 187-1 at 14; see also                       |
| 6   | paragraph 97 of the amended complaint.  On top of that,                             |
| 7   | plaintiffs' allegations that the current Department of Justice                      |
| 8   | has shown little interest in enforcing the Voting Rights Act                        |
| 9   | casts further doubt on the stated rationale.  See paragraph 184                     |
| 10  | of the complaint which is docket no. 1 in the Immigration                           |
| 11  | Coalition case.  Defendants may well be right that those                            |
| 12  | allegations are "meaningless absent a comparison of the                             |
| 13  | frequency with which past actions have been brought or data on                      |
| 14  | the number of investigations currently being undertaken," and                       |
| 15  | that plaintiffs may fail "to recognize the possibility that the                     |
| 16  | DOJ's voting-rights investigations might be hindered by a lack                      |
| 17  | of citizenship data."  That is page 5 of the government's                           |
| 18  | letter which is docket no. 194 in the states case.  But those                       |
| 19  | arguments merely point to and underscore the need to look                           |
| 20  | beyond the Administrative Record.                                                   |
| 21  |         To be clear, I am not today making a finding that                           |
| 22  | Secretary Ross's stated rationale was pretextual -- whether it                      |
| 23  | was or wasn't is a question that I may have to answer if or                         |
| 24  | when I reach the ultimate merits of the issues in these cases.                      |
| 25  | Instead, the question at this stage is merely whether --                            |

assuming the truth of the allegations in their complaints --
plaintiffs have made a strong preliminary or prima facie
showing that they will find material beyond the Administrative
Record indicative of bad faith.  See, for example, Ali v.
Pompeo, 2018 WL 2058152 at page 4 (E.D.N.Y. May 2, 2018).  For
the reasons I've just summarized, I conclude that the
plaintiffs have done so.

That brings me to the question of scope.  On that
score, I am mindful that discovery in an APA action, when
permitted, "should not transform the litigation into one
involving all the liberal discovery available under the federal
rules.  Rather, the Court must permit only that discovery
necessary to effectuate the Court's judicial review; i.e.,
review the decision of the agency under Section 706."  That is
from Ali v. Pompeo at page 4, citing cases.  I recognize, of
course, that plaintiffs argue that they are independently
entitled to discovery in connection with their constitutional
claims.  I'm inclined to disagree given that the APA itself
provides for judicial review of agency action that is "contrary
to" the Constitution.  See, for example, Chang v. USCIS, 254
F.Supp. 3d 160 at 161-62 (D.D.C. 2017).  But, even if
plaintiffs are correct on that score, it is well within my
authority under Rule 26 to limit the scope of discovery.

Mindful of those admonitions, not to mention the
separation of powers principles at stake here, I am not

inclined to allows as much or as broad discovery as the plaintiffs seek, at least in the first instance.  First, absent agreement of defendants or leave of Court, of me, I will limit plaintiffs to ten fact depositions.  To the extent that plaintiffs seek to take more than that, they will have to make a detailed showing in the form of a letter motion, after conferring with defendants, that the additional deposition or depositions are necessary.  Second, again absent agreement of the defendants or leave of Court, I will limit discovery to the Departments of Commerce and Justice.  As defendants' own arguments make clear, materials from the Department of Justice are likely to shed light on the motivations for Secretary Ross's decision -- and were arguably constructively considered by him insofar as he has cited the December 2017 letter as the basis for his decision.  At this stage, however, I am not persuaded that discovery from other third parties would be necessary or appropriate; to the extent that third parties may have influenced Secretary Ross's decision, one would assume that that influence would be evidenced in Commerce Department materials and witnesses themselves.  Further, to the extent that plaintiffs would seek discovery from the White House, including from current and former White House officials, it would create "possible separation of powers issues."  That is from page 4 of the slip opinion in the Nielsen order.  Third, although I suspect there will be a strong case for allowing a