```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
                                                          :
STATE OF NEW YORK, et al.,                                :
                                                          :
                         Plaintiff,                       :
                                                          :      18-CV-2921 (JMF)
         -v-                                              :
                                                          :
UNITED STATES DEPARTMENT OF COMMERCE, et al.,             :
                                                          :
                         Defendants.                      :
                                                          :
-------------------------------------------------------------------------- :
                                                          :
NEW YORK IMMIGRATION COALITION, et al.,                   :
                                                          :
                         Plaintiff,                       :
                                                          :      18-CV-5025 (JMF)
         -v-                                              :
                                                          :
UNITED STATES DEPARTMENT OF COMMERCE, et al.,             :      OPINION AND ORDER
                                                          :
                         Defendants.                      :
                                                          :
-------------------------------------------------------------------------- X
```

JESSE M. FURMAN, United States District Judge:

In these cases, familiarity with which is assumed, Plaintiffs bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*., and the Due Process Clause of the Fifth Amendment challenging the decision of Secretary of Commerce Wilbur L. Ross, Jr. to reinstate a question concerning citizenship status on the 2020 census questionnaire. *See generally New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766 (S.D.N.Y. 2018). In an oral decision on July 3, 2018, the Court granted Plaintiffs' application for discovery beyond the administrative record, finding — among other things — that Plaintiffs had "made a strong preliminary or *prima facie* showing that they will find material beyond the Administrative

Record indicative of bad faith." (Docket No. 205 ("July 3 Oral Arg. Tr."), at 85).[1] In the two succeeding months, the parties have conducted substantial discovery (*see* Docket No. 305, at 1-2 (summarizing the discovery to date)), and have briefed (or are in the midst of briefing) a slew of discovery disputes, (*see, e.g.*, Docket Nos. 236, 237, 293, 299). One of those disputes concerned Plaintiffs' request to depose Acting Assistant Attorney General for Civil Rights John Gore ("AAG Gore"), who allegedly "ghostwrote" a letter from the Department of Justice ("DOJ") to Secretary Ross requesting the citizenship question that lies at the heart of the parties' disputes. (Docket No. 236, at 1; *see also* Docket No. 255). In an Order entered on August 17, 2018, the Court granted Plaintiffs' request. (Docket No. 261 ("AAG Gore Order")). The deposition of Gore is apparently scheduled for September 12, 2018. (Docket No. 304 ("Pls.' Opp'n"), at 3).

On the eve of Labor Day weekend — Friday, August 31, 2018, at approximately 6 p.m. — Defendants filed a letter motion to stay discovery pending resolution of a "forthcoming petition for a writ of mandamus in the U.S. Court of Appeals for the Second Circuit." (Docket No. 292 ("Defs.' Ltr."), at 1). Defendants seek a stay of *all* discovery, or, at a minimum, "further discovery of the Department of Justice . . . particularly the deposition of Acting Assistant Attorney General . . . John Gore." (*Id.*). In their motion, Defendants also sought an "administrative stay while the Court considers this stay request." (*Id.*). On September 4, 2018, the Court summarily denied the latter request and set an expedited briefing schedule (later modified), with Plaintiffs' opposition due on September 6, 2018, and any reply due today at noon. (Docket Nos. 297, 306). Thereafter, on September 5, 2018, Defendants filed a Petition for a Writ of Mandamus and an Emergency Motion for Immediate Administrative Stay Pending Resolution of the Government's Petition for Writ of Mandamus with the Second Circuit. To the

---

[1] Unless otherwise noted, docket references are to 18-CV-2921.

Court's knowledge, the Second Circuit has not yet acted on that application.

In determining whether to grant a stay pending mandamus, district courts must consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The "'most critical' factors" are whether "the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)); *cf. Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." (internal quotation marks omitted)). Critically, to satisfy the likelihood-of-success requirement here, Defendants must not only demonstrate that this Court erred in its decisions, but also that the Second Circuit is likely to grant mandamus. *See, e.g.*, *Emp'rs Ins. of Wausau v. News Corp.*, No. 06-CV-1602 (SAS), 2008 WL 4560687, at *1 (S.D.N.Y. Oct. 6, 2008) (denying motion to stay pending mandamus where "plaintiffs have made no showing that their mandamus petition has a likely chance of success"). That is a very high burden. Indeed, to succeed in their mandamus petition, Defendants must overcome the "expressed reluctance" of the Second Circuit "to overturn discovery rulings" by demonstrating that the issue here "is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment." *In re the City of New York*, 607 F.3d 923, 939 (2d Cir. 2010). If Defendants meet *those* requirements, they must *also* show that their "right to issuance of the writ is clear and

3

indisputable," *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004) (internal quotation marks omitted); *see also In re the City of New York*, 607 F.3d at 943 ("Because a writ of mandamus is a 'drastic and extraordinary remedy reserved for really extraordinary causes,' we issue the writ only in 'exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion.'" (quoting *Cheney*, 542 U.S. at 380)).

The Court turns, first, to Defendants' request for a stay of discovery altogether and, then, to their request for a stay of the AAG Gore deposition scheduled for September 12th.

## STAY OF DISCOVERY ALTOGETHER

In light of the standards above, Defendants' motion to stay discovery altogether is frivolous. First, a court "must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief." *Ingber v. N.Y.C. Dep't of Educ.*, No. 14-CV-3942 (JMF), 2014 WL 2575780, at *2 (S.D.N.Y. June 9, 2014) (citing *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995)). That is because "inexcusable delay in filing" a motion to stay "severely undermines the . . . argument that absent a stay irreparable harm would result." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993); *see, e.g.*, *S.E.C. v. WorldCom, Inc.*, 452 F. Supp. 2d 531, 531-32 (S.D.N.Y. 2006) (denying a stay on the ground that the defendant's delay in requesting it was "dilatory in the extreme but also patently prejudicial"); *cf., e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (holding that "significant delay in applying for injunctive relief . . . alone may justify denial" of preliminary relief). Here, the Court authorized extra-record discovery on July 3, 2018, and set a tight discovery schedule in light of the parties' agreement that Plaintiffs' claims in these cases should be resolved quickly to allow Defendants to prepare for the 2020 census. (July 3 Oral Arg. Tr. 87-89, 91). Nevertheless, Defendants waited *nearly two full*

4

*months* to seek a stay of the Court's ruling (and even then filed their motion at 6 p.m. on the eve of a three-day weekend) — during which time the parties conducted substantial discovery. That delay, in itself, belies Defendants' conclusory assertions of irreparable harm.

That is enough to defeat Defendants' claim of irreparable harm, but their claim — that, "[w]ithout a stay, Defendants will be required to expend significant time and resources to collect, review, and produce additional discovery materials," (Defs.' Ltr. 3) — does not withstand scrutiny for two independent reasons. First, "[t]he prospect of burdensome or expensive discovery alone is not sufficient to demonstrate 'irreparable injury.'" *M.D. v. Perry*, No. C-11-84 (JGJ), 2011 WL 7047039, at *2 (S.D. Tex. July 21, 2011); *see, e.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *see also, e.g.*, *Linden v. X2 Biosystems, Inc.*, No. C17-966 (RSM), 2018 WL 1603387, at *3 (W.D. Wash. Apr. 3, 2018); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 WL 3620590, at *4 (S.D. Tex. Aug. 23, 2017); *In re: BP P.L.C. Sec. Litig.*, No. 4:10-CV-4214, 2016 WL 164109, at *2 (S.D. Tex. Jan. 14, 2016); *DL v. District of Columbia*, 6 F. Supp. 3d 133, 135 (D.D.C. 2014). Second, and in any event, Secretary Ross's decision to add the citizenship question is the subject of parallel litigation in the Northern District of California and the District of Maryland. (*See* Docket Nos. 221, 224, 287). The judges presiding over those cases have also — and independently — allowed extra-record discovery, and to date Defendants have not sought a stay of either of those rulings. Thus, granting a stay here would not even provide Defendants with the relief they seek. *Cf., e.g.*, *V.S. v. Muhammad*, No. 07-CV-1281 (DLI) (JO), 2009 WL 936711, at *1 (E.D.N.Y. Apr. 3, 2009) (finding a claim of irreparable harm suspect because the party claiming harm "will be subject to discovery, including giving deposition testimony and providing documents"

5

regardless of the relief sought).

The Court could deny Defendants' motion for a stay of discovery altogether on that basis alone, but the other factors to be considered compel the same conclusion. First, Defendants do not come close to demonstrating a likelihood of success on the merits. They contend that the Court failed to apply the correct legal standard and erred in inferring bad faith "primarily from" the timing of Secretary Ross's decision relative to the DOJ letter (*see* Defs.' Ltr. 2), but Defendants are wrong on both counts. First, in its July 3rd oral decision, the Court indisputably articulated and applied the correct legal standard, to wit that "a court may allow discovery beyond the record where 'there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decision-makers.'" (July 3 Oral Arg. Tr. 82 (quoting *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997))). In fact, it is Defendants who get the legal standard wrong, insisting that the Court could not authorize extra-record discovery without "a strong demonstration that Secretary Ross did not actually believe his stated rationale for reinstating a citizenship question." (Defs.' Ltr. 2). Notably, however, the only authority Defendants cite for that proposition is *National Security Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014) — a non-binding decision regarding the Freedom of Information Act and the deliberative-process privilege that has literally nothing to do with the issue here.[2]

Second and in any event, Defendants badly mischaracterize the basis for the Court's finding of potential bad faith. The Court did not rely "primarily" on the relationship in time between Secretary Ross's decision and the DOJ letter. Instead, the Court relied on several considerations that, taken together, provided a "strong showing . . . of bad faith." (July 3 Oral

---

[2]     Defendants implicitly concede the inaptness of the D.C. Circuit's decision by citing it using the "*cf.*" signal, but even that understates the case's irrelevance to the matter at hand.

Arg. Tr. 82 (quoting *Nat'l Audubon Soc'y*, 132 F.3d at 14)).  Those considerations included: (1) Secretary Ross's June 21, 2018 supplemental memorandum (Docket No. 189-1), in which he suggested that he had "already decided to add the citizenship question before he reached out to the Justice Department"; (2) allegations that Secretary Ross "overruled senior Census Bureau career staff, who had concluded . . . that reinstating the citizenship question would be very costly and harm the quality of the census count"; (3) claims that the Census Bureau "deviated significantly from standard operating procedures in adding the citizenship question"; and (4) Plaintiffs' *prima facie* showing that Secretary Ross's stated justification was pre-textual.  (July 3 Oral Arg. Tr. 82-83 (internal quotation marks and brackets omitted)).  Taken together, those considerations provided the Court with a solid basis to conclude that Plaintiffs had made a sufficient showing of bad faith to warrant extra-record discovery.  *See, e.g.*, *Tummino v. von Eschenbach*, 427 F. Supp. 2d 212, 231, 233 (E.D.N.Y. 2006) (authorizing extra-record discovery where there was evidence that the agency decisionmakers had made a decision and, only then, took steps "to find acceptable rationales for the decision"; where "senior level personnel . . . overruled the professional staff"; and where the decisionmaking process was "unusual" in various respects).  If anything, the basis for that conclusion appears even stronger today.  (*See* Pls.' Opp'n 2 n.1).

Finally, given the importance of the census and the need for a timely resolution of Plaintiffs' claims, staying discovery altogether will substantially injure both Plaintiffs and the public interest.  As noted, Defendants themselves agree that there is a strong interest in resolving Plaintiffs' claims quickly given the need to prepare for the 2020 census.  (*See* Docket No. 103, at 4-5 (noting that "the Census Bureau has indicated in its public planning documents that it intends to start printing the physical 2020 Census questionnaire by May 2019" and that Ron Jarmin,

7

Acting Director of the Census Bureau and a Defendant here, "testified under oath before Congress . . . that the Census Bureau would like to 'have everything settled for the questionnaire this fall'" and "wants to resolve this issue 'very quickly'")). Staying discovery altogether would plainly make it difficult, if not impossible, to meet that goal. More broadly, there is a strong interest in ensuring that the census proceeds in an orderly, transparent, and fair manner — and, relatedly, that it is conducted in a manner that "bolsters public confidence in the integrity of the process and helps strengthen this mainstay of our democracy." *Franklin v. Massachusetts*, 505 U.S. 788, 818 (1992) (Stevens, J., concurring in part and concurring in the judgment); *see id.* ("The open nature of the census enterprise and the public dissemination of the information collected are closely connected with our commitment to a democratic form of government."). Those interests weigh heavily against any delay and in favor of discovery to ensure an adequate record for the Court to review Defendants' decision to add the citizenship question.

## STAY OF THE AAG GORE ORDER

Although Defendants' motion for a stay of the AAG Gore Order arguably presents a closer question, it too falls short. First, for the reasons discussed above, Plaintiffs and the public have a strong interest in ensuring that this case proceeds without unnecessary delay and that there is an adequate record for the Court to evaluate the lawfulness of Defendants' decision to add the citizenship question to the census questionnaire. Second, once again, Defendants inexplicably delayed in seeking relief. The Court entered the Order compelling the deposition of AAG Gore on August 17, 2018, yet Defendants waited two full weeks, until August 31, 2018, to file their motion for a stay. Even then, they filed their motion at 6 p.m. on the eve of a three-day weekend, with only six business days — two of which are religious holidays during which the Court is unavailable — before the AAG Gore deposition. To the extent that Defendants claim

8

allowing the deposition to proceed would result in irreparable harm, therefore, "the irreparability is a product of [their] own delay. This is a delaying tactic that is inequitable to the [Plaintiffs] and to the courts as well." *Hirschfeld*, 984 F.2d at 39 (internal quotation marks omitted). On top of all that, Defendants' claim that a deposition of AAG Gore would be uniquely and irreparably burdensome is belied by the fact that, as Defendants themselves point out, "Plaintiffs have [already] deposed six high-ranking Commerce and Census Bureau officials." (Defs.' Ltr. 3). More broadly, the burdens of discovery, including depositions of government officials, are not inherently irreparable — particularly where, as here, the Court has taken various steps to limit the scope of discovery and to protect any relevant privileges. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. Cheney*, 580 F. Supp. 2d 168, 180-81 (D.D.C. 2008).

Finally, and in any event, Defendants fail to show a likelihood of success on the merits of their mandamus petition. Quoting *Lederman v. New York City Department of Parks and Recreation*, 731 F.3d 199 (2d Cir. 2013), for the proposition that "judicial orders compelling testimony of high-ranking officials are highly disfavored and are justified only under 'exceptional circumstances,'" Defendants contend that the Court erred in concluding that there was a need to compel AAG Gore's testimony. (Defs.' Ltr. 3). Significantly, however, in opposing Plaintiffs' motion to compel AAG Gore's testimony, Defendants did not make that argument, let alone cite *Lederman*; instead, they relied exclusively on the standard set forth in Rule 45 of the Federal Rules of Civil Procedure. (*See* Docket No. 255). That may well constitute a formal waiver, but it *certainly* weighs against the likelihood of mandamus. *See, e.g.*, *In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1135 (4th Cir. 1992) ("[F]ailure to raise [an] issue . . . in the face of the [petitioner's] admitted knowledge of the importance of the question to its case, can only weigh against its present petition for the extraordinary writ of mandamus.").

9

And in any event, the Court's decision was consistent with, if not compelled by, *Lederman*. Notably, the *Lederman* Court provided two *alternative* examples of showings that would satisfy that standard: "that the official has unique first-hand knowledge related to the litigated claims *or* that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id.* (emphasis added). Consistent with those examples, the Court found that a deposition of AAG was appropriate. "Given the combination of AAG Gore's apparent role in drafting the Department of Justice's December 12, 2017 letter requesting that a citizenship question be added to the decennial census and the Court's prior rulings," the Court explained, "his testimony is plainly 'relevant,' within the broad definition of that term for purposes of discovery." (Gore Order 1). And "given Plaintiffs' claim that AAG Gore 'ghostwrote DOJ's December 12, 2017 letter requesting addition of the citizenship question,'" — a claim that Defendants have conspicuously not disputed — he "possesses relevant information that cannot be obtained from another source." (*Id.* at 1 (citing *Marisol A. v. Giuliani,* No. 95-CV-10533 (RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998)).

In challenging the Court's decision, Defendants suggest that the Court was required to consider whether there were "less burdensome means" to obtain the information in AAG Gore's possession. (Defs.' Ltr. 3). As *Lederman* makes clear, however, where a court finds that the relevant government official "has unique first-hand knowledge related to the litigated claims," it need not make a separate finding "that the necessary information cannot be obtained through other, less burdensome or intrusive means." 731 F.3d at 202. In any event, the Court did make the latter finding here, as it expressly concluded that "AAG Gore possesses relevant information *that cannot be obtained from another source*." (Gore Order 2 (emphasis added)). More broadly, although Defendants are correct that "[t]he decision Plaintiffs challenge" in these cases "was

made by the Secretary of Commerce, not the Department of Justice," it does not follow — as Defendants contend — that the information possessed by AAG Gore is "irrelevant to assessing the Commerce Secretary's reasons for adopting a citizenship question." (Defs.' Ltr. 3). Among other things, AAG Gore's testimony is plainly relevant to whether Secretary Ross "made a decision and, only thereafter took steps 'to find acceptable rationales for the decision.'" (July 3 Oral Arg. Tr. 82 (quoting *Tummino*, 427 F. Supp. 2d at 233)). It is also relevant to whether Secretary Ross's stated rationale — that reinstating the citizenship question was necessary to enforce the Voting Rights Act — was pre-textual. After all, Defendants themselves concede that "any requests for citizenship data with a Voting Rights Act enforcement rationale would naturally come from the head of the Civil Rights Division," (Docket No. 236, Ex. 5, at 50), and Secretary Ross has disclosed that it was he who "inquired whether the Department of Justice . . . would support, and if so would request, inclusion of a citizenship question as consistent with and useful for enforcement of the Voting Rights Act," (Docket No. 189). Put simply, a deposition of the person who apparently wrote the memorandum that Secretary Ross himself requested and then later relied on to justify his decision to add the citizenship question is highly relevant "to assessing the Commerce Secretary's reasons." (Defs.' Ltr. 3).

## CONCLUSION

For the foregoing reasons, Defendants' motion for a stay of discovery is DENIED in its entirety. The Clerk of Court is directed to terminate 18-CV-2921, Docket No. 292 and 18-CV-5025, Docket No. 116.

SO ORDERED.

Dated: September 7, 2018
      New York, New York

JESSE M. FURMAN
United States District Judge

11