September 10, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' seventh letter-motion regarding discovery in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF), and *New York Immigration Coalition, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-5025 (JMF)

Dear Judge Furman,

      Plaintiffs write to request an informal discovery conference with the Court or an order: (1) compelling full responses by Defendants to several interrogatories propounded nearly two months ago; and (2) requiring Defendants to produce responsive, relevant materials cited by Dr. John Abowd in his Census Bureau 30(b)(6) deposition.[1]

### A. The Court should compel a full response to the NYIC Plaintiffs' Interrogatory 1

      Plaintiffs' Interrogatory No. 1, served on July 12, posed five questions to ascertain certain individuals and information referenced but not identified in Secretary Ross's June 21, 2018 "Supplemental Memorandum," 18-CV-2921, ECF 189-1, AR 1321:

- **Subpart A** seeks the identity of the unnamed "senior Administration officials" who "previously raised" the issue of adding the citizenship question to the Census, **prior to** when Secretary Ross "began considering" the issue, AR 1321;
- **Subparts D and E** request the **dates** on which those "senior Administration officials" first raised the issue, and **with whom**;
- **Subpart B** seeks the identity of the "other government officials" with whom Secretary Ross and his staff had "various discussions . . . about reinstating a citizenship question to the Census," **around the time and after** Secretary Ross began considering the issue, AR 1321;
- **Subpart C** requests the identity of the "Federal governmental components"—**government agencies and entities**—with whom Secretary Ross and his staff "consulted." AR 1321.

These Interrogatories are relevant to the decisionmaking process, the grounds for the decision, and whether there was political interference with the administrative process. *See, e.g., Tummino v. Torti,* 603 F. Supp. 2d 519, 542, 544 (E.D.N.Y. 2009); *Latecoere Int'l, Inc. v. U.S. Dep't of Navy,* 19 F.3d 1342, 1356 (11th Cir. 1994). Defendants served an initial response on August 13 but failed to respond to subparts A, D, or E. Ex. A. Defendants promised on three occasions to

---

[1] Plaintiffs write pursuant to Local Civil Rule 37.2 and Rule 2(C) of this Court's Individual Rules and Practices. Plaintiffs have been unable to resolve the disputes described in this letter-brief through good faith meet-and-confer discussions with Defendants.

1

supplement but failed to do so, forcing Plaintiffs to file their fifth letter-motion to compel responses. 18-CV-5025, ECF No. 117. After Defendants pledged to provide a complete response, Plaintiffs notified the Court, 18-CV-5025, ECF No. 125, at which time the Court denied the motion without prejudice and subject to renewal in the event the parties did not resolve the dispute, 18-CV-5025, ECF No. 126.

Defendants' Supplemental Response to Interrogatory No. 1 was provided on September 5. Ex. B. It fails to provide a full response to the questions posed. Rather, Defendants provide an aggregated response to subparts A, B, and C, and fail to identify any new individuals that were not identified in the August 13 response. In particular, Defendants have failed to identify the "senior Administration officials" who first raised the issue of adding the question prior to when Secretary Ross "began considering" the issue, and failed to provide the date that they did so. Defendants' explanations for the inadequacy of their response ignore their duties under Rule 33 and defy the case law interpreting that Rule.

*First*, in response to Plaintiffs' meet-and-confer request about the deficient Supplemental Response, Defendants responded that they treated the subparts of Plaintiffs' Interrogatory "interchangeably," and provided a single response to "this interrogatory and subparts as a whole." Ex. C. But as the Interrogatory plainly indicates, and as Plaintiffs clarified, *see* Ex. C, that Interrogatory 1(a) specifically seeks information as to the identity of "senior Administration officials" who "had previously raised" the citizenship question *before* Secretary Ross began considering it, separate and apart from the "other government officials" and "Federal governmental components" with whom Secretary Ross and his staff consulted once Secretary Ross's consideration of the issue began. Secretary Ross's Supplemental Memorandum itself makes this distinction, and the timing here is directly relevant to the issues of: (a) who may have influenced Secretary Ross to pursue the citizenship question to begin with, those individuals' motivations and, ultimately, Secretary Ross's; and (b) whether the decision to add the citizenship question was initiated or made *before* the development of the pretextual rationale offered for it. By providing undifferentiated responses that obscure the very information sought by Plaintiffs in their interrogatories, Defendants' responses remain deficient.

*Second*, other than providing a date range for one conversation (and another "possible . . . additional discussion") between Secretary Ross and Attorney General Sessions that took place *after* Secretary Ross began considering the citizenship question, the response provides no dates or date ranges whatsoever. It omits the very information sought by Plaintiffs: when "senior Administration officials had previously raised" the citizenship question *prior* to Secretary Ross's consideration of the issue.

The deficiencies here are likely due in part to the fact that the individual who certified the interrogatory responses, Earl Comstock, testified at his deposition (just one week prior to the certification) that he did not know the identities of the "senior Administration officials" referenced in Secretary Ross's Supplemental Memorandum; and further advised that, if Plaintiffs sought that information, they would need to ask the Secretary himself. Comstock Dep. Tr. at 111–12. Ex. D. Regardless of the personal knowledge of the official, however, when interrogatories are interposed to a corporate party or government agency, the official must provide the information in the possession of the party as a whole and "also the information within its control or otherwise obtainable by it." *In re Auction Houses Antitrust Litig.*, 196

F.R.D. 444, 445 (S.D.N.Y. 2000); *see also Tyler v. Suffolk County*, 256 F.R.D. 34, 37–38 (D. Mass. 2009) (applying principle to governmental party). Given Secretary Ross's statements in the Supplemental Memorandum, it is clear that he—at a minimum—is aware of who "previously raised" the citizenship question, and with whom he subsequently spoke about it.  Regardless of who responds, Defendants must provide complete responses to Interrogatory 1, which they have not yet done.

Plaintiffs served this Interrogatory nearly two months ago.  It seeks simple information referenced but not identified in Secretary Ross's Supplemental Memorandum, a document that is at the heart of the case.  Despite extensive efforts to meet and confer, Defendants have yet to provide a complete response.  The Court should compel them to do so.

### B. The Court should Compel Defendants to Produce Responsive & Relevant Documents in their Possession Regarding Randomized Control Testing (RCT) Proposals and Attitudinal Research Conducted by Census Bureau Contractors.

In his deposition as a representative of the Census Bureau, Census Bureau Chief Scientist John Abowd testified that senior Census Bureau staff proposed to conduct randomized control testing (RCT) of the effect of adding a citizenship question after Secretary Ross's decision to do so, and that this proposal was rejected by individuals including Commerce Undersecretary Karen Dunn Kelley and Defendant Ron Jarmin. Ex. E.  Aug. 29 Abowd Dep. at 26–29, 101–05, 141–43, 334–35.  Dr. Abowd also acknowledged that the Bureau has contracted with private firms Young and Rubicam and Reingold to conduct research about public attitudes regarding answering the citizenship question.  *Id.* at 137–40, 267–71, 288–89, 317–19, 331–32. Defendants have thus far failed to produce any materials relating to (1) the Census Bureau's rejected RCT proposal or (2) contracts with those communications firms, or their research planned or conducted.  The RCT information is plainly relevant to the effect of adding the citizenship question, and the motivations of senior Census and Commerce officials in declining to research it.  The communication firms' research into the citizenship question is similarly relevant to the effect of the citizenship question and the knowledge of the Census Bureau about that effect.  All of this material is plainly responsive to Requests for Production Nos. 1, 2, 9, 10, 11, and 15, Ex. F.  Yet Defendants have not produced this information despite multiple requests and meet-and-confer sessions.

Plaintiffs first raised the failure to produce these materials during Dr. Abowd's 30(b)(6) deposition on August 29 and in an email to Defendants on the same date. Ex. G.  Defendants did not respond to that request.  Again on September 4, in a meet-and-confer agenda, Plaintiffs cited the need to produce these documents. Ex. H.  Defendants did not dispute the relevance or responsiveness of these documents, but only provided vague assurances of a response in the near future.  On September 7, still lacking these documents or an update from Defendants, Plaintiffs again inquired as to the status of the documents, but in an email response, Defendants addressed only other requests in the email and ignored this category of documents entirely.  Ex. I.

Because of the relevance and responsiveness of these documents, the looming discovery deadline, and Defendants' failure to provide any meaningful response despite several attempts, Plaintiffs request that the Court compel Defendants promptly to produce these documents.

3

Respectfully submitted,

By:  /s/ Dale E. Ho

| | |
|---|---|
| Dale Ho<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>(212) 549-2693<br>dho@aclu.org | Andrew Bauer<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>(212) 836-7669<br>Andrew.Bauer@arnoldporter.com |
| Sarah Brannon[+][**]<br>American Civil Liberties Union Foundation<br>915 15th Street, NW<br>Washington, DC 20005-2313<br>202-675-2337<br>sbrannon@aclu.org | John A. Freedman<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, N.W.<br>Washington, DC 20001-3743<br>(202) 942-5000<br>John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo (MC-1746)
  *Executive Deputy Attorney General*
Elena Goldstein (EG-8586), *Senior Trial Counsel*
Ajay Saini (AS-7014), *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057

Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921

CC: All Counsel of Record (by ECF)