September 17, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

RE:     Plaintiffs' reply in support of their motion for leave to depose Secretary Ross in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

The Second Circuit authorizes deposition testimony of high-ranking government officials where "exceptional circumstances" are present, *Lederman v. N.Y. City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), and senior executive branch officials, including Cabinet Secretaries, have been deposed in connection with official decisions.  Defendants argue that Secretary Ross is subject to an "exceptionally high" exceptional circumstances test, Defs.' Opp. 1 (Docket No. 320), because of unique separation-of-powers considerations.  No such extra-exceptional circumstances test exists.  The *Lederman* test appropriately balances the co-equal interests of the executive and judicial branches, and is readily met here.  Indeed, Secretary Ross's extraordinary conduct would warrant a deposition under any standard.

*1. Separation-of-powers principles do not prohibit this deposition.*  Defendants' argument that authorizing Secretary Ross's deposition would "have serious repercussions for the relationship between two coequal branches of government" ignores the key precedents.[1]  Defs.' Opp. 1.  Even the President is subject to court orders in civil litigation where warranted: "Sitting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty."  *Clinton v. Jones*, 520 U.S. 681, 704 (1997); *see also id.* at 703 ("The fact that a federal court's exercise of its traditional Article III jurisdiction may significantly burden the time and attention of the Chief Executive is not sufficient to establish a violation of the Constitution.").

In an APA action, the Supreme Court has explained that the "whole record" standard for review, 5 U.S.C. § 706, requires the court to conduct a "thorough, probing, in-depth review." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971); *see also id.* at 413-14 n.30, 419.  In conducting this review, "[t]he court may require the administrative officials who participated in the decision to give testimony explaining their action."  *Id.* at 420.  And although "inquiry into the mental processes of administrative decisionmakers is usually to be avoided," *id.* (citing *United States v. Morgan*, 313 U.S. 409 (1941)), such inquiry "may be necessary" to

---

[1] The cases Defendants cite did not hold that an order granting discovery would have "serious repercussions," but rather that compelling compliance through a contempt sanction – rather than allowing interlocutory review on mandamus – would have those repercussions.  *In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010) (quoting *In re United States (Kessler)*, 985 F.2d 510, 513 (11th Cir. 1993)).  The 11th Circuit reasoned in *Kessler* that forcing executive officials "to incur a contempt order would be unseemly and would cause an unnecessary confrontation between two coequal branches," and that mandamus should therefore be available.  985 F.2d at 511.

determine "if the Secretary's action was justifiable under the applicable standard." *Id.* Likewise, in describing the factors that provide circumstantial evidence of intentional discrimination, the Supreme Court has noted that statements by decisionmakers may be "highly relevant," and that "[i]n some extraordinary circumstances the [decisionmaker] might be called to the stand at trial to testify concerning the purpose of the official action."[2] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977).

For these reasons, in an APA challenge involving allegations of political interference, the sitting Secretary of Transportation testified at deposition regarding the bases for his decision and the extent of external influences on that decision. *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1238-39 (D.C. Cir. 1972); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 316 F. Supp. 754, 761-62 (D.D.C. 1970) (APA standard of review); *id.* at 772-73 & n.36 (describing the Secretary's deposition testimony). Cabinet Secretaries have been ordered to testify about their decisions in other matters as well. *See, e.g.*, *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 270 n.2, 276-77 (2007) (trial testimony of former Secretary of Veterans Affairs); *McDonnell Douglas Corp. v. United States*, 35 Fed. Cl. 358, 365-66 n.9 (1996) (deposition and trial testimony of Secretary of Defense), *rev'd in part on other grounds*, 182 F.3d 1319 (Fed. Cir. 1999).[3] Separation of powers presents no categorical bar to Cabinet member testimony in APA or equal protection cases where there are exceptional circumstances and intent is a key issue.[4]

*2. The Lederman test is satisfied here.* Both illustrative showings described in *Lederman* weigh in favor of allowing the Secretary's deposition. Pls.' Mem. 1-3 (Docket No. 314). First, regarding the Secretary's first-hand knowledge, Defendants argue only that a deposition would be cumulative, Defs.' Opp. 2, ignoring the dozens of times the Secretary's senior staff testified that he was the *sole* source of information regarding key questions, including (among others) the reasons why the Secretary wanted to add a citizenship question many months *before* he persuaded DOJ to request it. Pls.' Mem. 1-2 & n.2; *see also* Ex. 1.

Second, Defendants contend that Plaintiffs should conduct a Rule 30(b)(6) deposition or further exhaust written discovery. But they fail to explain how a 30(b)(6) deposition of information uniquely within the Secretary's possession would impose a lesser burden on Defendants, who would be required to take the Secretary's time to convey his first-hand

---

[2] Plaintiffs respectfully maintain that their equal protection claim is an independent basis for extra-record discovery.

[3] In light of the unpublished order of the D.C. Circuit granting the United States's mandamus petition in the *Sherrod v. Breitbart* litigation, as cited in Defendants' opposition, Defs.' Opp. Ex. 1, Plaintiffs no longer rely on the district court's discovery order in that case. Plaintiffs note that this case (where Secretary Ross is a named defendant) presents a stronger case to compel a deposition than *Sherrod*, where the United States was a non-party.

[4] Defendants dismiss as inapposite caselaw that does not involve a sitting Cabinet Secretary. Defs.' Opp. 1-2. Defendants' time and burden arguments are not unique to Cabinet officials. The New York City Mayor, for example, manages a workforce more than seven times larger than the U.S. Department of Commerce, and administers an annual budget more than nine times the size. *See About Commerce*, https://www.commerce.gov/page/about-commerce (approximately 46,600 employees); *Budget of the United States Government, Fiscal Year 2019*, at 144 & tbl. S-8 (Feb. 2018) ($9.3 billion discretionary budget for the Commerce Department in FY18); Council of the City of New York, *Fiscal 2018-2022 Financial Plan Overview* 1, 7-8 (Mar. 5, 2018) ($87.44 billion budget in FY18, and more than 330,000 employees). The order compelling Mayor Bloomberg's deposition in *United States v. City of New York*, No. 07-cv-2067 (NGG) (RLM), 2009 WL 2423307 (E.D.N.Y. Aug. 5, 2009), is apt authority for determining whether Secretary Ross should be deposed here.

knowledge to some other designee(s), who would then have to sit separately for deposition.  And in a case where the Secretary's credibility is directly at issue, *see* May 9 Initial Conf. Tr. at 15 (Defendants' concession that evidence of pretext may prove a violation of the APA), producing a different individual to testify about the Secretary's knowledge serves no purpose at all.

Defendants' alternate argument that the parties should pursue further written discovery ignores Defendants' failure after two months to identify basic facts within the Secretary's possession – which makes clear that written discovery will not substitute for live testimony.  *See* Docket Nos. 293, 313.  There are twenty-five days until the close of all discovery, leaving limited time to address insufficient discovery responses, much less to litigate interlocutory appeals if a deposition is later authorized.

*3.  The Secretary's extraordinary personal involvement warrants his deposition.*  The Secretary's involvement here is extraordinary and perhaps *sui generis*.  Secretary Ross compelled the addition of a citizenship question over the strong and continuing opposition of the subject-matter experts at the Census Bureau.[5]  He gave an initial public account of his decision in his March 26 decision memo, and in multiple congressional hearings,[6] that was untrue.  He apparently agreed with a key aide to whitewash the record in anticipation of likely judicial review.  Ex. 3; *cf. Overton Park*, 401 U.S. at 420.  He personally lobbied the Attorney General to submit the memorandum that the Secretary "then later relied on to justify his decision," Docket No. 308 at 11, *after* DOJ had already concluded they "did not want to raise the question." Ex. 1; *see also* Docket Nos. 314-4, 314-5.  And he concealed the involvement of the White House, telling Congress in March that he was "not aware"[7] of any discussions with the White House on the citizenship question before conceding in this litigation that White House Senior Counselor Steve Bannon was among the "government officials" with whom the Secretary and his staff had "various discussions" about the citizenship question.  Docket Nos. 314-1, 314-3.

This is astonishing, unprecedented conduct from a Cabinet member.  It has consequences not for some minor or ministerial matter, but for the accuracy of the decennial census – which the Secretary agrees will affect "foundational elements of our democracy."  AR 1313.  The details of Secretary Ross's personal involvement are not available through any other source.  The Secretary's deposition should be compelled.

---

[5] *See, e.g.*, AR 1277, AR 1308; Ex. 2, Census Bureau 30(b)(6) Dep. Tr. at 331 (Dr. Abowd) ("Q: [D]o you agree that reinstatement of a citizenship question on the 2020 decennial census is necessary to provide complete and accurate data in response to the DOJ request?  A: No.  Q: And that is the position of the Census Bureau, correct?  A: Yes.").

[6] *Hearing on Recent Trade Actions, Including Section 232 Determinations on Steel & Aluminum: Hearing Before the H. Ways & Means Comm.*, 115th Cong. 24 (Mar. 22, 2018), 2018 WLNR 8951469 ("The Department of Justice . . . initiated the request for inclusion of the citizenship question."); *Hearing on F.Y. 2019 Dep't of Commerce Budget: Hearing Before the Subcomm. on Commerce, Justice, Sci., & Related Agencies of the H. Comm. on Appropriations*, 115th Cong. 9 (Mar. 20, 2018), 2018 WLNR 8815056 ("We are responding solely to the Department of Justice's request."); *Hearing on the F.Y. 2019 Funding Request for the Commerce Department: Hearing Before the Subcomm. on Commerce, Justice, Sci., & Related Agencies of the S. Comm. on Appropriations*, 115th Cong. 27 (May 10, 2018), 2018 WL 2179074 ("[T]he Justice Department is the one who made the request.").

[7] March 20, 2018 hearing, supra n.6, at 21 ("Q: Has the President or anyone in the White House discussed with you or anyone on your team about adding this citizenship question?  A: I'm not aware of any such.").

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Ajay Saini, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs


ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
* *Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

4

(212) 607-3300 601
pgrossman@nyclu.org

Attorneys for the *NYIC* Plaintiffs