

**U.S. Department of Justice**

Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530

---

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York

      Re:  *State of New York, et al., v. U.S. Department of Commerce, et al.*, 18-cv-2921 (JMF)

Dear Judge Furman:

      Pursuant to the Court's September 14, 2018 order, Defendants submit this letter in support of their argument that this case should be decided on the basis of the administrative record. Defendants request permission to file a summary-judgment motion that will argue that: (1) there is no genuine dispute of material fact that Plaintiffs lack standing, (2) the Secretary's decision was not arbitrary or capricious under the Administrative Procedure Act ("APA"), and (3) there is no genuine dispute of material fact that Plaintiffs cannot prove an equal protection violation. Given the bedrock principles of record review in APA cases, the Court can reach a decision based on the administrative record and the parties' motions.

I.     <u>Plaintiffs' APA claim should be decided on the administrative record.</u>

      Although the Court previously determined that Plaintiffs had made a preliminary showing of bad faith sufficient to warrant extra-record discovery, *see* Tr. at 82, July 3, 2018, No. 18-cv-2921, ECF No. 205, that finding affects neither the procedural mechanism for reviewing this agency action nor the standard of review on the merits. Rather, the Court's preliminary finding simply expanded the scope of the record for review on summary judgment, but the fundamental question remains whether the Secretary's decision to reinstate a citizenship question was arbitrary or capricious. The entire record shows that it was not.

      In its prior order, this Court held that Plaintiffs had made a preliminary showing of bad faith and that this case therefore met one of the limited exceptions for discovery outside of the administrative record in an APA case. ECF No. 205 at 82; *see also National Audubon Society v. Hoffman,* 132 F.2d 7, 14 (2d Cir. 1997). As a result, this Court ordered Defendants to supplement the Administrative Record, *id.* at 81-82, and allowed Plaintiffs to engage in extra-record discovery, including expert discovery, *id.* at 87. In accordance with that order, the parties have been engaged in extensive discovery, including the production of 40,000 pages of documents and multiple depositions.

      Although defendants disagree with the Court's decision to allow extra-record discovery, they recognize that the consequence of that decision is to expand the scope of the administrative record to include the materials produced both to supplement the administrative record and in discovery. But the Court's decision to expand the scope of the record does not, as a legal matter, change the fundamental nature of Plaintiff's challenge arising under the APA. In deciding whether an agency action violates the APA, "the district judge sits as an appellate tribunal," *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001), because "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *City & Cty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (quotation omitted).

Therefore, "[i]n a case involving review of a final agency action under the APA, 5 U.S.C. § 706, … the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.,* 587 F. Supp. 2d 13, 18 (D.D.C. 2008) (citing *North Carolina Fisheries Ass'n v. Gutierrez,* 518 F.Supp.2d 62, 79 (D.D.C. 2007)). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (citing *Occidental Eng'g Co. v. INS,* 753 F.2d 766, 769-70 (9th Cir.1985)). Summary judgment is thus the appropriate stage to rule on an APA claim because "[t]he entire case on review is a question of law, and only a question of law." *Policy & Research, LLC v. United States Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quotation omitted); *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

As courts of this Circuit and elsewhere have recognized, the expansion of the scope of the record to include materials produced in discovery does not change this fundamental legal principle. In *National Audubon Society,* for instance, the Second Circuit upheld the district court's expansion of the administrative record, but, in so doing, emphasized that "[w]hile we allow the consideration of extra-record evidence, review of an agency's action is not *de novo*." *National Audubon Society,* 132 F.2d at 15. Accordingly, despite the expansion of the record, the case was still decided on cross-motions for summary judgment. *Id. See also Tummino v. Hamburg*, 936 F.Supp. 2d 162, 197-98 (E.D.N.Y. 2013) (reversing on summary judgment agency decision after administrative record was expanded based on finding of bad faith); *Latecoere Intern., Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342 (11th Cir. 1994) (finding evidence of bad faith by agency and instructing district court to consider summary judgment against agency on remand); *but see Buffalo Cent. Terminal v. United States*, 886 F.Supp. 1031, 1047-48 (W.D.N.Y. 1995) (denying cross-motions for summary judgment on APA claim and ordering trial).

Deciding this case by bench trial, rather than cross-motions for summary judgment, not only distorts this Court's defined role as a court of review rather than a finder of fact, it also risks improperly altering the focus of this Court's review on the merits. The focus of this Court's legal analysis must remain on the rationality of the Secretary's underlying decision and the reasons given for that decision. As part of this analysis, evidence relating to the decisionmaker's subjective intent is insufficient to demonstrate that the decision is arbitrary or capricious. *See Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1186 (10th Cir. 2014) (rejecting the argument that "the agency's subjective desire to reach a particular result must necessarily invalidate the result, regardless of the objective evidence supporting the agency's conclusion"); *Alsaidi v. United States Dep't of State*, 292 F. Supp. 3d 320, 328 (D.D.C. 2018) (explaining that plaintiff's allegation of a discriminatory, pretextual decision "misconstrues judicial review under the APA"). Put differently, "any substantive impact of the bad faith—*i.e.,* whether a good-faith decision on the merits would have come out in the [plaintiffs'] favor—can be rectified at the merits stage of the proceedings," *Jarita Mesa*, 305 F.R.D. at 292 n.14, by applying the usual arbitrary-or-capricious standard to the expanded administrative record developed through discovery on summary judgment.

Clearly, then, the APA claim in this case should be decided like every other APA claim: on cross-motions for summary judgment. *Lannett Co., Inc. v. United States Food & Drug Admin.*, 300 F. Supp. 3d 34, 41 (D.D.C. 2017) ("[S]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review."). To date, Defendants have produced almost 40,000 pages of materials "directly or indirectly considered by" Secretary Ross—his original decision memo, his supplemental memo, the original administrative record, and the supplemental information produced in accordance with the Court's July 3

order [1]—plus the materials produced in discovery, which present a complete picture of the decisionmaking process. Using this material, the Court will have all the information it needs to determine on summary judgment whether the Secretary's decision to reinstate a citizenship question on the census questionnaire was arbitrary or capricious.

II.   Plaintiffs' equal protection claim should be decided on the administrative record.

Plaintiffs' equal protection claim should also be decided on the "the administrative record already in existence," *Camp*, 411 U.S. at 142, because Congress did not carve out constitutional claims from the record-review procedures of the APA. Even if the Court disagrees, Defendants should be permitted to file a summary-judgment motion explaining that Plaintiffs failed to prove an equal protection violation.

The APA and its strictures on judicial review govern all claims in this case. Section 706 of the APA commands that, "the reviewing court shall … interpret constitutional [ ] provisions," and shall "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706. Unambiguously, § 706 states that, "[i]n making the foregoing determination[], the court shall review the whole record or those parts of it cited by a party." *Id.* Hence, multiple courts across the country have held that § 706, by its plain language, restricts the review of constitutional claims to the administrative record. *See Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017). *See also Harkness v. Sec'y of Navy*, 858 F.3d 437, 451 n.9 (6th Cir. 2017) (explaining that a constitutional claim "is properly reviewed on the administrative record"), *cert. denied*, 2018 WL 3013822 (June 18, 2018); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1232–33 (D.N.M. 2014); *Evans v. Salazar*, 2010 WL 11565108, at *2 (W.D. Wash. July 7, 2010); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004); *Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. 50, 51 (D. Mass. 1993). To conclude otherwise would "incentivize every unsuccessful party to agency action to allege … constitutional violations in order to trade in the APA's restrictive procedures for the more even-handed ones of the Federal Rules of Civil Procedure." *Jarita Mesa Livestock*, 58 F. Supp. 3d at 1238.

Nothing in the APA exempts *particular* constitutional claims from this record-review rule.[2] 5 U.S.C. § 706. Indeed, courts have routinely decided equal protection claims based on the administrative record. *See Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Human Servs.*, 747 F.3d 172, 180 (3d Cir. 2014) ("Review of an equal protection claim in the context of agency action is similar to that under the APA."); *Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011) (noting that "the equal

---

[1] The discovery materials that post-date the Secretary's decision, including testimony (both fact and expert) regarding the merits of the decision, "cannot be deemed properly part of the administrative record" for APA review because they "did not exist until after the agency decision had been made." *In re United States*, 138 S. Ct. at 373 (Breyer, J., dissenting).

[2] Defendants note that the Court authorized extra-record discovery because, *inter alia*, "plaintiffs have made at least a *prima facie* showing that Secretary Ross's stated justification for reinstating the citizenship question . . . was pretextual." Tr. at 83, July 3, 2018, No. 18-cv-2921, ECF No. 205. But as the Court subsequently noted, "evidence that Secretary Ross's rationale was pretextual does not necessarily mean that it was a pretext for discrimination." *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 809 (S.D.N.Y. 2018). So, while the Court's preliminary finding of potential bad faith may implicate the trustworthiness of the administrative record, the authorized discovery should have been narrowly tailored to that trustworthiness inquiry, *see*, *supra*, Note 1, and, thus, should not be construed to permit the Court to consider every aspect of the Secretary's decision that *may* be relevant to Plaintiffs' equal protection claim.

protection argument can be folded into the APA argument"); *Chang*, 254 F. Supp. 3d at 162 ("The information necessary for the Court to determine whether the agency's [decision] was rational—or with respect to their APA claims, arbitrary and capricious—will, presumably, be found in the administrative record."); *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *2 (D. Wyo. Mar. 29, 2016) ("To distinguish between a 'stand-alone constitutional challenge' and an 'APA challenge[]' … would run afoul of Congress's intent."). *See also Charlton Mem'l Hosp. v. Sullivan*, 816 F. Supp. at 51. It is true that these cases did not involve suspect classifications such that strict scrutiny may apply under the Equal Protection Clause. *See Chang*, 254 F. Supp. 3d at 162. And it is true that Plaintiffs' equal protection claim references groups that could be considered suspect classifications. *See NYIC v. Department of Commerce*, Dkt. No. 18-cv-5025 (S.D.N.Y.), ECF. No. 1 at ¶¶ 195–96. But this is a distinction without a difference for purposes of record review.

Where, as here, Plaintiffs challenge a facially neutral policy on the grounds of discriminatory purpose and disparate effect, the Court must make "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Factors of this "sensitive inquiry" include: whether the decision "bears more heavily on one race than another," the "historical background of the decision," departures "from the normal procedural sequence," substantive policy departures, and "[t]he legislative or administrative history." *Id.* (quoting *Arlington Heights*, 429 U.S. at 265). All this information is easily found in the nearly 40,000 pages produced in this case. And even in the unlikely event strict scrutiny is trigged by this inquiry, the Court has all the information it needs in the record to determine if a citizenship question is narrowly tailored to a compelling government interest. *See, e.g.*, AR 1313–20 (Secretary Ross's decision memo); AR 663–65 (DOJ letter requesting a citizenship question); AR 1286–97, 1304–12 (Census Bureau analyses regarding alternatives).

Even if the Court disagrees that Plaintiffs' equal protection claim should be decided on the "whole record," 5 U.S.C. § 706, it does not follow that the Court should bypass summary judgment and proceed to trial. After the production of nearly 40,000 pages, depositions of two high-ranking Census Bureau officials, depositions of three high-ranking Commerce Department officials, a Rule 30(b)(6) deposition of the Census Bureau, six interrogatories, and 347 requests for admission, Plaintiffs cannot point to evidence remotely implicating a discriminatory motive by the Secretary. Defendants should therefore be permitted to file a motion demonstrating that Plaintiffs' equal protection claim is based on nothing but "conjecture and speculation" insufficient to withstand summary judgment. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999); *Adler v. Kent Vill. Hous. Co.*, 123 F. Supp. 2d 91, 98 (E.D.N.Y. 2000) ("[S]ummary judgment is appropriate in cases alleging equal protection violations where plaintiff's claims are premised upon 'conjecture and speculation.'").

If the Court were to conclude that Defendants were not entitled to summary judgment on Plaintiffs' APA claim, the result should not be a trial on the merits of the equal protection claim. Instead, consistent with bedrock APA principles, the Court should remand to the agency for further proceedings. And, of course, under constitutional avoidance principles, there would be no need to address Plaintiffs' equal protection claim if the Court were to remand the APA claim.

III.   <u>Cross-motions for summary judgment should resolve this case.</u>

Cross-motions for summary judgment are the proper vehicle to resolve this case.[3] In accordance with the Court's September 14, 2018 order, Defendants therefore request permission to file a summary-judgment motion that will demonstrate: (1) there is no genuine dispute of material fact that Plaintiffs lack standing, (2) the Secretary's decision was not arbitrary or capricious under the APA, and (3) there is no genuine dispute of material fact that Plaintiffs cannot prove an equal protection violation.

First, Defendants will show that Plaintiffs lack standing without the need for trial. Specifically, Defendants intend to proffer documents and expert evidence showing that even if the citizenship question causes a decline in the self-response rate, the Census Bureau's extensive non-response follow-up operations will mitigate the impact of any such decline and that the count will be no less complete or accurate than it has been in past decennial censuses. Defendants also intend to depose members of NGO Plaintiffs and provide testimony confirming the speculativeness of these members'—and therefore NGO Plaintiffs'—alleged injuries. Given this evidence, Defendants' motion will demonstrate the lack of any factual dispute that Plaintiffs cannot meet their burden of establishing certainly impending injuries, and that Defendants are entitled to judgment as a matter of law.

Second, Defendants will show that the Secretary's decision was not arbitrary or capricious under the APA. As this Court recognized, "'the wide discretion bestowed by the Constitution upon Congress, and by Congress upon the Secretary' demands a high degree of 'judicial deference' to the Secretary's decisions concerning the conduct of the census." *New York v. United States DOC*, 315 F. Supp. 3d 766, 799 (S.D.N.Y. 2018) (quoting *Wisconsin v. City of New York*, 517 U.S. 1, 22-23 (1996). In this case, Secretary Ross took a hard look at DOJ's request for citizenship data, recognized DOJ's need for citizenship information to enforce the Voting Rights Act, and, considering relevant facts and data, made an informed decision about whether to reinstate the citizenship question to the 2020 decennial census. The Secretary also examined the lack of empirical evidence regarding response rates and the pros and cons of possible alternatives, including the possible increased cost of any non-response follow-up procedures. Ultimately, Secretary Ross exercised "the wide discretion bestowed by the Constitution upon Congress, and by Congress upon the Secretary" and chose to reinstate the citizenship question to provide block-level citizenship data to aid DOJ's mission. *Karpova v. Snow*, 497 F. 3d 262, 268 (2d Cir. 2007). Following broad discovery that led to the production of over 40,000 pages of documents and six day-long depositions of senior officials, there is no evidence that the Secretary acted for any improper reason. Even if the Court concludes that the Secretary may have held a preexisting policy preference before making his decision and that he consulted with other agencies before making a final decision, that is not evidence of bad faith. The Secretary's decision was not arbitrary or capricious.

Finally, as noted above, Defendants intend to demonstrate that despite all the evidence produced in this case, none of it remotely indicates the discriminatory motive necessary for Plaintiffs to prove their equal protection claim. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Fixed Income Shares: Series M v. Citibank, N.A.*, 314 F. Supp. 3d 552, 556 (S.D.N.Y. 2018) (Furman, J.) (quotation omitted).

For these reasons, Defendants respectfully request permission to file a summary-judgment motion that can, and should, resolve this case.

---

[3] As Plaintiffs previously acknowledged, *see* Pls.' Opp'n, ECF 182 at 35, census cases are routinely decided on summary judgment. *See, e.g.*, *Utah v. Evans*, 536 U.S. 452 (2002); *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999); *Franklin v. Massachusetts*, 505 U.S. 788 (1992).

Dated: September 18, 2018　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　JOSEPH H. HUNT
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　BRETT A. SHUMATE
　　　　　　　　　　　　　　　　　　　　Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　JOHN R. GRIFFITHS
　　　　　　　　　　　　　　　　　　　　Director, Federal Programs Branch

　　　　　　　　　　　　　　　　　　　　JOSHUA E. GARDNER
　　　　　　　　　　　　　　　　　　　　CARLOTTA P. WELLS
　　　　　　　　　　　　　　　　　　　　Assistant Directors, Federal Programs Branch

　　　　　　　　　　　　　　　　　　　　/s/   Kate Bailey
　　　　　　　　　　　　　　　　　　　　KATE BAILEY
　　　　　　　　　　　　　　　　　　　　GARRETT COYLE
　　　　　　　　　　　　　　　　　　　　STEPHEN EHRLICH
　　　　　　　　　　　　　　　　　　　　CAROL FEDERIGHI
　　　　　　　　　　　　　　　　　　　　DANIEL HALAINEN
　　　　　　　　　　　　　　　　　　　　MARTIN TOMLINSON
　　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　　20 Massachusetts Ave., N.W.
　　　　　　　　　　　　　　　　　　　　Washington, DC  20530
　　　　　　　　　　　　　　　　　　　　Tel.:  (202) 514-9239
　　　　　　　　　　　　　　　　　　　　Email:  kate.bailey@usdoj.gov

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*

CC:　　All Counsel of Record (by ECF)