

**U.S. Department of Justice**
Civil Division
Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530

---

**By ECF**                                                                                   September 13, 2018
The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *State of New York v. U.S. Dep't of Commerce*, No. 18-cv-2921

Dear Judge Furman:

Defendants oppose the NGO Plaintiffs' letter-motion for a protective order (ECF No. 324[1]) against deposition subpoenas issued to the seven individual members on which the NGO Plaintiffs rely for Article III standing.[2]

Rule 45(d)(3) requires a court to quash a subpoena that "subjects a person to undue burden." Whether a subpoena imposes an undue burden depends on factors like "relevance, the need of the party for the [information sought], the breadth of the [discovery] request, … and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996). The burden of persuasion is on the NGO Plaintiffs, as the ones resisting discovery, to show that the subpoenas should be quashed. *See Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

*Relevance.* The subpoenas seek information relevant to the NGO Plaintiffs' standing to maintain this case. In response to Defendants' motion to dismiss for lack of standing, the NGO Plaintiffs contended that they had associational standing to sue on behalf of their members.[3] The NGO Plaintiffs relied on declarations that certain members would lose political power and funding because they lived in areas likely to be disproportionately undercounted as a result of a citizenship

---

[1] For the Court's convenience, citations to docket entries and legal authorities in the PDF version of this letter brief are hyperlinked to the cited authorities in ECF and Westlaw, respectively.

[2] For five of the subpoenas, this motion was filed in the wrong district. Rule 45(d)(3) requires that a motion to quash a subpoena be filed in the district where compliance is required (called the "compliance court"), not the district where the underlying case is pending (the "issuing court"). Defendants issued subpoenas for three depositions in Washington, DC (ECF No. 324-1 at 1–6, 19–24, 31–36), one on Long Island (*id.* at 13–18), and one in Detroit (*id.* at 7–12). Rule 45(d)(3) thus required any motion to quash those subpoenas to be filed in the District of the District of Columbia, the Eastern District of New York, and the Eastern District of Michigan, respectively.

[3] The NGO Plaintiffs contend they also have standing to sue on their own behalf. Ltr.-Mot. at 2. But Defendants' motion to dismiss challenged that organizational standing, ECF No. 39 at 11–12, No. 18-cv-5025, and the Court did not address that basis of standing. *State of New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 788–90 (S.D.N.Y. 2018).

question on the 2020 census. The Court relied on those declarations in concluding that the NGO Plaintiffs had adequately alleged associational standing at the pleading stage. *State of New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 789 (S.D.N.Y. 2018). The declarations on which the NGO Plaintiffs relied, however, lacked substantial details about which federally funded public services their individual members use. For example, one declaration stated only that an undercount would cause two individual members "to be deprived of political power and funding that will instead go to other areas," with no further information. Javier Valdés Decl. ¶¶ 18–19, ECF No. 49-3, No. 18-cv-5025. Defendants thus issued deposition subpoenas to the identified members to gather more information about exactly which federally funded services they use. Understanding which federally funded services they use will allow Defendants to determine whether those services would likely be affected by any possible undercount. That information is unlikely to be available from the NGO Plaintiffs themselves. Defendants have offered not to depose these members if the NGO Plaintiffs will agree not to rely on their testimony at summary judgment or trial—an offer that the NGO Plaintiffs have rejected.[4]

The NGO Plaintiffs contend that they can establish standing by showing only that their members *live in* areas that will be harmed by an undercount—not that those members *themselves* would be harmed by an undercount.[5] Ltr.-Mot. at 2. But the Supreme Court has held that "the 'injury in fact' test requires more than an injury to a cognizable interest[;] [i]t requires that the party seeking review be himself among the injured." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992). Thus, for example, "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Id.* at 565–66. Likewise, in the context of federally funded public services, a plaintiff must actually use services affected by any possible undercount.

The NGO Plaintiffs' contrary contention relies only on *Carey v. Klutznick*, 637 F.2d 834, 838 (2d Cir. 1980). But *Carey* did not purport to announce a new standing standard for census cases; it applied the standard in *City of Camden v. Plotkin*, 466 F. Supp. 44 (D.N.J. 1978), and *FAIR v. Klutznick*, 486 F. Supp. 564 (D.D.C. 1980). Both of those cases required the plaintiffs to show that they would be directly affected by the lost federal funding, not just that they lived in an area for which federal funding might generally decrease. *See Camden*, 466 F. Supp. at 47–48 ("The individual plaintiffs … presently employed in CETA-funded jobs[] allege that they are threatened with loss of those jobs if funds are cut …. [Another plaintiff is] eligible for CETA but … is not employed because of inadequate funds …."); *FAIR*, 486 F. Supp. at 569 n.9 (rejecting "blunderbuss attack" on general loss of federal

---

[4] The NGO Plaintiffs contend that declarations with specific facts about how their members will be harmed can establish standing at summary judgment. Ltr.-Mot. at 2–3. But as explained above, the declarations that the NGO Plaintiffs have submitted to date lack substantial details about how their members will be harmed—i.e., which federally funded public services they use.

[5] To be sure, a person can establish a *representational* injury by showing that she lives in an area likely to lose a congressional representative, because the vote of every area resident is thereby diluted. *See, e.g.*, *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 331–34 (1999). But not every disproportionate undercount translates to a lost representative. The NGO Plaintiffs do not dispute that, below certain levels, a disproportionate undercount would not affect the number of congresspeople representing an area. *See, e.g.*, *Sharrow v. Brown*, 447 F.2d 94, 97 (2d Cir. 1971) (no standing because, even absent challenged census practice, "it might well be that … New York's representation would not be increased as [plaintiff] claims").

2

funds and requiring plaintiffs to show standing "in the context of a particular [federal funding] statute").

*Undue Burden.* The NGO Plaintiffs also contend that the subpoenas impose an undue burden on the witnesses.[6] They contend that the depositions are inconveniently scheduled during business hours, when many people work. Ltr.-Mot. at 3. But the cover letters accompanying the subpoenas offered alternative arrangements if the witness could not testify at the designated time. *See* ECF No. 324-1 at 1. Notably, the NGO Plaintiffs do not contend that any of the witnesses have an actual conflict with the designated times.

The NGO Plaintiffs contend that the depositions are noticed late in the discovery period, when Plaintiffs' counsel are occupied with expert discovery. Ltr.-Mot. at 3. But the NGO Plaintiffs caused that delay by refusing to provide the members' contact information as required by Rule 26(a)(1)(A), ultimately requiring Defendants to seek that relief from the Court. *See* ECF No. 119, No. 18-cv-5025.

Finally, the NGO Plaintiffs contend that the subpoenas might chill the individual members' freedom of association. Ltr.-Mot. at 3. Notably, however, the NGO Plaintiffs provide no declarations or other evidence that any individual member has any particular fears about testifying at a deposition in this case. Indeed, the declarations relied on by the NGO Plaintiffs at the motion-to-dismiss stage used the full names of several individual members, belying any claimed fear of participation in this lawsuit. *E.g.*, Valdés Decl. ¶¶ 18–23, ECF No. 49-3, No. 18-cv-5025. In any event, at the meet-and-confer, Defendants offered to refer to these individuals by their initials in public filings to minimize any burden on them.

Against these burdens on the individuals, the burden on *Defendants* from *quashing* the subpoenas would be significant. Defendants must defend themselves in this litigation, and the NGO Plaintiffs identified these individuals as the basis for their standing. Having been sued and now facing the prospect of having these individuals testify against them as the basis for the NGO Plaintiffs' standing, Defendants should not be denied the opportunity to gather evidence relevant to their defenses. *See Dove*, 963 F.2d at 19 (holding that defendant's discovery requests to third party were proper because defendant "did not institute this litigation" and merely sought information from third party that was relevant to its defenses).

---

[6] The NGO Plaintiffs contend that Defendants did not confer about the witnesses' availability before issuing the subpoenas. Ltr.-Mot. at 3. But Defendants did not do so because Plaintiffs' counsel would not confirm whether they represented the witnesses, despite multiple inquiries from defense counsel. *See* Ex. 1.

Dated: September 19, 2018　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　JOSEPH H. HUNT
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　BRETT A. SHUMATE
　　　　　　　　　　　　　　　　　　　　Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　JOHN R. GRIFFITHS
　　　　　　　　　　　　　　　　　　　　Director, Federal Programs Branch

　　　　　　　　　　　　　　　　　　　　CARLOTTA P. WELLS
　　　　　　　　　　　　　　　　　　　　JOSHUA E. GARDNER
　　　　　　　　　　　　　　　　　　　　Assistant Branch Directors

　　　　　　　　　　　　　　　　　　　　*/s/   Garrett Coyle*
　　　　　　　　　　　　　　　　　　　　KATE BAILEY
　　　　　　　　　　　　　　　　　　　　GARRETT COYLE
　　　　　　　　　　　　　　　　　　　　STEPHEN EHRLICH
　　　　　　　　　　　　　　　　　　　　CAROL FEDERIGHI
　　　　　　　　　　　　　　　　　　　　DANIEL HALAINEN
　　　　　　　　　　　　　　　　　　　　MARTIN TOMLINSON
　　　　　　　　　　　　　　　　　　　　Trial Attorneys
　　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　　20 Massachusetts Ave. NW
　　　　　　　　　　　　　　　　　　　　Washington, DC  20530
　　　　　　　　　　　　　　　　　　　　Tel.: (202) 616-8016
　　　　　　　　　　　　　　　　　　　　Fax: (202) 616-8470
　　　　　　　　　　　　　　　　　　　　Email: garrett.coyle@usdoj.gov

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants*