September 20, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' opposition to Defendants' request to proceed by summary judgment in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman,

     At the status conference on September 14, Defendants represented that they had authority for the point that "disputed facts can still be resolved by [the Court] on the basis of the record that is produced and submitted at summary judgment," even if those disputes of fact require credibility determinations. Tr. of Status Conf. at 34-35 (Sept. 14, 2018). But Defendants' filing contains no such authority; instead, Defendants relitigate the arguments this Court has rejected twice before, namely, that the agency's decision should be subject to a strict "record rule."[1] As it is well-established that trial is the proper vehicle for resolving Administrative Procedure Act (APA) claims that require credibility determinations or involve competing experts, and because Plaintiffs' equal protection claim cannot be resolved on summary judgment, this case should proceed directly to trial.

1. *Trial is necessary to allow credibility determinations and resolve disputes between competing experts*

     While Defendants repeatedly intone that APA claims are regularly resolved solely on the administrative record, this is not a typical APA case. *See* Docket No. 325 at 3 (discussing the Secretary's "astonishing, unprecedented" conduct). Rather, it is well-established that a subset of APA cases require the district court "to resolve factual issues regarding the process the agency used in reaching its decision," an inquiry that may require "independent fact-finding." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). Accordingly, courts have held that APA claims may properly be heard at trial in at least two circumstances. First, trial is appropriate where an APA claim requires the fact finder to make credibility determinations in connection with allegations of bad faith or pretext. *See Buffalo Cent. Terminal v. U.S.*, 886 F. Supp. 1031, 1037, 1047-48 (W.D.N.Y. 1995). Second, disputes involving competing experts are properly resolved at trial, not on summary judgment. *See Cuomo v. Baldrige*, 674 F. Supp. 1089, 1093 (S.D.N.Y. 1987).

---

[1] Defendants repeatedly invoke the number of pages in the Administrative Record as expanded by the Court's July 3 order. But there is nothing about the number of pages in the record that speaks at all to the question here, which is the propriety of resolving disputed facts on the paper record alone, in contravention of Rule 56(a). And even if the size of the written record did have any bearing on whether summary judgment was a more appropriate course than trial (which it does not), the record in this case is not particularly large by the standard of many APA challenges. *See In re Nielsen*, No. 17-3345, slip op. at 3-4 (2d Cir. Dec. 27, 2017) ("Administrative records, particularly those involving an agency action as significant as the repeal of DACA, are often quite voluminous.") (citing case with an administrative record more than a million pages long).

## A. *Credibility determinations regarding bad faith and pretext are properly resolved at trial*

As this Court has previously acknowledged, Plaintiffs have made a strong preliminary showing that Secretary Ross's decision to demand citizenship information on the 2020 Census was made in bad faith, for pretextual reasons. *See* Tr. of Argument on Mot. to Dismiss and Discovery at 82-85 (July 3, 2018). And the materials produced thus far in litigation have confirmed this view; the Secretary radically altered long-established agency policy, disregarded the uniform opposition of his professional staff and outside experts, reached out to a separate and reluctant agency to manufacture a *post hac* rationale, and then repeatedly misrepresented his decision making-process to the public and to Congress. *See, e.g.*, Docket No. 314, 325; Ex. 1 (documents from the Administrative Record).

Especially where, as here, credibility determinations regarding the Secretary's motivations, the timing of the actual decision, and proffered rationale behind the citizenship question are central to Plaintiffs' allegations, trial is necessary. *See Buffalo Cent. Terminal*, 886 F. Supp. at 1037, 1047-48 (setting APA case for trial, holding that "disputed facts raise the issue of bad faith…which must be resolved through an assessment of credibility"); Tr. of Initial Pretrial Conf. at 15 (May 9, 2018) (acknowledging that "if the plaintiffs on APA review can establish that the stated rationale is pretextual, that would be a basis" for relief). While Defendants cite several cases for the proposition that a court may consider summary judgment even where an APA plaintiff alleges bad faith, these cases do not suggest that such determinations *must* be made on summary judgment. To the contrary, the 11th Circuit in *Latecoere* – recognizing that an agency official's statements "strongly support[ed] the inference that his actions manifested bias" – remanded to the district court to determine whether trial or summary judgment was appropriate. *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1359 (11th Cir. 1994), *as amended* (May 27, 1994) (reversing grant of summary judgment to the agency). And in *Tummino*, a case involving the Secretary of Health and Human Services's decision regarding emergency contraception, the court lamented the parties' failure to proffer testimony by the Secretary, as such evidence would have been "the best source of information on her state of mind." *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 170 (E.D.N.Y. 2013). But the court held that even without that testimony, the record of the Secretary's bad faith was sufficiently overwhelming so as to allow summary judgment against the agency. *See id.* at 171, 186.[2] Nothing in *Tummino* suggests that trial would be improper where there are disputed issues of material fact.

This case presents serious factual questions as to the motivation of the Secretary, the presence of improper political interference, and whether the Secretary's ultimate decision was predetermined; trial is necessary to assess the credibility of witnesses and ascertain whether the

---

[2] Other cases relied upon by Defendants do not present issues of credibility or pretext and are, accordingly, inapposite to the question of whether such disputes should be resolved at trial. *City & Cty. of San Francisco v. United States*, 130 F.3d 873, 881 (9th Cir. 1997) (plaintiffs made no allegations of "agency fraud [or] bad faith"); *Policy & Research, LLC v. United States Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (no credibility issues or allegations of pretext); *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008) (challenged decision "turned upon the agency's interpretation of a statute," a legal question that did not involve credibility determinations). And even cases cited by Defendants acknowledge that, in "unusual circumstances," the district court may take testimony in an APA case. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001).

Secretary's decision was arbitrary or capricious.  *See Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (recognizing that some APA cases involve "'genuine' and 'material' dispute of facts that require[] a trial," including questions of what an agency knew, or whether agency relied upon "secret [] information not part of the record"); *see also, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (explaining that "[a]ssessments of credibility and choices between conflicting versions of the events" cannot be resolved on summary judgment) (internal citation omitted).  Credibility determinations are more expeditiously resolved at trial; at a minimum, the court's "inherent power to manage [its] docket[]" belies Defendants' contention that summary judgment is somehow mandatory.  *See Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236 (AJN), 2016 WL 6094114, at \*2 (S.D.N.Y. Oct. 18, 2016); *see also Cobell v. Babbitt*, 91 F. Supp. 2d 1, 4 (D.D.C. 1999), *aff'd and remanded sub nom. Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) (decision on APA claim after six-week bench trial, including testimony from the Secretary of the Interior); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 316 F. Supp. 754, 760 (D.D.C. 1970), *rev'd on other grounds*, 459 F.2d 1231 (D.C. Cir. 1971) (decision after ten-day trial, including testimony from the Secretary of Transportation).  Finally, Defendants' argument that disputed facts can be resolved on summary judgment, Tr. of Status Conf. at 34-35 (Sept. 14, 2018), is contrary to the plain and unambiguous language of Rule 56(a), governing any motion for summary judgment, which expressly requires the movant to demonstrate "that there is no genuine dispute as to any material fact."

> B. *Trial is necessary to resolve disputes between the parties' competing testimony regarding the impact of the citizenship question, which directly implicates Plaintiffs' standing.*

Even apart from issues involving Secretary Ross's intent and concomitant credibility issues, trial is necessary to consider and resolve disputes between the parties' experts.  Among other disagreements, the parties vigorously dispute the impact of adding a citizenship question to the 2020 Census.

Defendants contend that Plaintiffs lack standing because the Census Bureau's non-response follow-up procedures will cure any decline in census self-response rates caused by the demand for citizenship information -- an entirely untested proposition.  And Defendants have promised they will proffer expert testimony to bolster their contention that any differential undercount adversely impacting Latinos and immigrants is speculative.  *See* Docket No. 333 at 5.  Likewise, Plaintiffs will proffer, *inter alia*, fact witnesses and multiple experts, including survey methodologists, demographers, statisticians, experts in federal funding, experts in Census procedures, and political scientists, to establish that the citizenship question will deter households from responding to the census, depress self-response rates, and result in an ultimate undercount with profound impacts on our country and on Plaintiffs.  This is precisely the sort of complex, technical dispute that requires testimony and fact-finding.  *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (live testimony of experts is appropriate to resolve standing issues, so as to "give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction where necessary) (internal quotation omitted).

Indeed, courts routinely use trial, rather than summary judgment, to resolve APA census challenges that entail competing expert testimony.  *See City of New York v. U.S. Dep't of Commerce*, 822 F. Supp. 906, 917 (E.D.N.Y. 1993), *vacated*, 34 F.3d 1114 (2d Cir. 1994), *rev'd*

*sub nom. Wisconsin v. City of New York*, 517 U.S. 1 (1996) (thirteen day trial included "expert testimony in the fields of demographics and statistics"); *Cuomo v. Baldrige*, 674 F. Supp. 1089, 1093 (S.D.N.Y. 1987) (20 day trial involving twenty witnesses, including more than a dozen experts); *Carey v. Klutznick*, 508 F. Supp. 420, 422 (S.D.N.Y. 1980) (trial on the merits). This line of cases resolving APA census challenges at trial cannot be squared with Defendants' puzzling contention that this case "should be decided like every other APA claim: on cross-motions for summary judgment." Docket No. 333 at 2. Simply put, there is a long history of courts in this jurisdiction considering APA challenges to the census at trial; these trials are consistent with the well-settled proposition that expert disputes should not be resolved on summary judgment. *See, e.g.*, *E.E.O.C. v. Mavis Disc. Tire, Inc.,* 129 F. Supp. 3d 90, 115 (S.D.N.Y. 2015) (fact finder should decide between competing expert accounts); *Scanner Techs. Corp. v. Icos Vision Sys. Corp.,* 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is . . . not a matter to be decided on summary judgment.").

2. *Trial and consideration of evidence produced in discovery are necessary for resolution of Plaintiffs' discriminatory intent claims*

Plaintiffs' constitutional claims regarding discriminatory intent and pretext turn on credibility determinations best resolved through factfinding. Because defendants "rarely leave a paper trail—or 'smoking gun'—attesting to a discriminatory intent, … plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations. . . . Such determinations are, generally speaking, most competently and appropriately made by the trier of fact." *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990); *see also Azkour v. Haouzi*, No. 11-CV-5780 (RJS), 2017 WL 3016942, at *9 (S.D.N.Y. July 17, 2017) (denying summary judgment on intentional discrimination claim, and observing that "it is hornbook law that the Court must eschew credibility assessments"). Moreover, as Defendants concede, assessing Plaintiffs' discriminatory intent claim requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including whether the decision "bears more heavily on one race than another." Docket No. 333 at 4 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). As noted, *supra*, the issue of whether the citizenship question "bears more heavily" on Hispanics and immigrants is the subject of competing lay and expert testimony, and is therefore properly resolved through factfinding rather than summary judgment.

Defendants' additional contention that the Plaintiffs' equal protection claim must be resolved solely "on the administrative record already in existence," Docket No. 333 at 4 (citations and quotation marks omitted)—and apparently, without considering evidence adduced through discovery—cannot be squared with decisions permitting discovery where plaintiffs allege intentional discrimination by administrative agencies. *See, e.g.*, *Janfeshan v. U.S. Customs & Border Prot.*, No. 16CV6915ARRLB, 2017 WL 3972461, at *13 (E.D.N.Y. Aug. 21, 2017) (in case where plaintiffs brought APA and Fifth Amendment equal protection claim against federal agency, ordering case to proceed to discovery on intent claim); *Reynolds v. Barrett*, 685 F.3d 193, 198 (2d Cir. 2012) (referencing discovery in intentional discrimination case against state agency). It would hardly make sense to permit discovery in these cases if courts were prohibited from considering the very materials adduced through the discovery

process. In fact, Defendants appear to concede that evidence relevant to Plaintiffs' intentional discrimination claims is contained in the discovery materials produced outside of the Administrative Record. *See* Docket No. 333 at 4 (acknowledging that evidence relevant to the *Arlington Heights* factors may be "found in the nearly 40,000 pages produced in this case.").

The cases on which Defendants rely are inapposite, as they involved equal protection claims subject to rational basis review, rather than intentional discrimination or pretext. For example, in *Nazareth Hospital v. HHS*, the Third Circuit noted that, in that case, "the equal protection argument can be folded into the APA argument, *since no suspect class is involved* and *the only question is whether the . . . treatment of [plaintiffs] was rational* (i.e., not arbitrary and capricious)." 747 F.3d 172, 180 (3d Cir. 2014); *see also Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 955 (9th Cir. 2011) (same); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017) (noting that "[n]o suspect class is alleged regarding the equal protection claim," and that "[t]he information necessary for the Court to determine whether the agency's [action] was rational … will, presumably, be found in the administrative record.").

As Defendants acknowledge, "Plaintiffs' equal protection claim references" discrimination on the basis of "suspect classifications." Docket No. 333 at 4. This is not "a distinction without a difference." *Id.* As noted, Plaintiffs' claims as to pretext require consideration of discovery materials that might not be relevant in an ordinary APA case where bad faith is not alleged. And, as Defendants concede, under *Arlington Heights*, the court must engage in a searching inquiry into "evidence of intent as may be available" regarding factors such as the impact of the citizenship question and the "historical background" of the decision to add it—evidence that, obviously "may be available" from sources outside of the administrative record. *Id.* (quoting *Arlington Heights*, 429 U.S. at 265).

3. *Trial is necessary given the exigencies of this case and need for speedy resolution*

Finally, as this Court has repeatedly recognized, time is of the essence in this litigation. *See* Tr. of Argument on Mot. to Dismiss and Discovery at 77 (July 3, 2018); Tr. of Initial Pretrial Conf. at 20-21 (May 9, 2018). Given the extremely tight timetable for census preparations – as Defendants themselves have acknowledged – it would be prejudicial to delay these proceedings by the weeks or months that could be required to allow for motions practice and argument on cross-motions for summary judgment, particularly given the possibility that after such motion practice, this case would nonetheless require trial. In the interest of resolving this dispute as quickly and efficiently as possible, the Court should not revisit the pretrial and trial schedule it has already set. *See* Fed. R. Civ. P. 1 (the Rules of Civil Procedure should be administered "to secure the just, speedy, and inexpensive determination of every action").

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Elena Goldstein*
Elena Goldstein, *Senior Trial Counsel*
Matthew Colangelo, *Executive Deputy Attorney General*
Ajay Saini, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6201
elena.goldstein@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ Dale Ho*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*\* Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Attorneys for the *NYIC* Plaintiffs