UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STATE OF NEW YORK, et al.,

                     Plaintiffs,

    -v-

UNITED STATES DEPARTMENT OF COMMERCE, et al.,

                     Defendants.
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/21/2018

18-CV-2921 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      In these consolidated cases, familiarity with which is assumed, Plaintiffs bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Due Process Clause of the Fifth Amendment challenging the decision of Secretary of Commerce Wilbur L. Ross, Jr. to reinstate a question concerning citizenship status on the 2020 census questionnaire. *See generally New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766 (S.D.N.Y. 2018). Now pending is a question that has loomed large since July 3, 2018, when the Court authorized extra-record discovery on the ground that Plaintiffs had "made a strong preliminary or *prima facie* showing that they will find material beyond the Administrative Record indicative of bad faith." (Docket No. 205 ("July 3rd Tr."), at 85). That question, which is the subject of competing letter briefs, is whether Secretary Ross himself must sit for a deposition. (*See* Docket No. 314 ("Pls.' Letter"); Docket No. 320 ("Defs.' Letter"); Docket No. 325 ("Pls.' Reply")). Applying well-established principles to the unusual facts of these cases, the Court concludes that the question is not a close one: Secretary Ross must sit for a deposition because, among other things, his intent and credibility are directly at issue in these cases.

The Second Circuit established the standards relevant to the present dispute in *Lederman v. New York City Department of Parks & Recreation*, 731 F.3d 199 (2d Cir. 2013). In that case, the Circuit observed that courts had long held "that a high-ranking government official should not — absent exceptional circumstances — be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his consultation with subordinates.'" *Id.* at 203 (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)). "High-ranking government officials," the Court explained, "are generally shielded from depositions because they have greater duties and time constraints than other witnesses. If courts did not limit these depositions, such officials would spend an inordinate amount of time tending to pending litigation." *Id.* (internal quotation marks and citation omitted). Joining several other courts of appeals, the Circuit thus held that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition." *Id.* The Court then proffered two *alternative* examples of showings that would satisfy the "exceptional circumstances" standard: "that the official has unique first-hand knowledge related to the litigated claims *or* that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id.* (emphasis added).[1]

Those standards compel the conclusion that a deposition of Secretary Ross is appropriate. First, Secretary Ross plainly has "unique first-hand knowledge related to the litigated claims." 731 F.3d at 203. To prevail on their claims under the APA, Plaintiffs must show that Secretary Ross "relied on factors which Congress had not intended [him] to consider, . . . [or] offered an explanation for [his] decision that runs counter to the evidence before the agency." *Nat'l Ass'n*

---

[1] Defendants argue that where, as here, the high-ranking official in question is a member of the President's Cabinet, the "hurdle is exceptionally high." (Defs.' Letter at 1). That argument, however, finds no support in *Lederman*. In any event, even if an "exceptionally high" standard did apply here, the result would be the same given the Court's findings below.

2

*of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  As Defendants themselves have conceded (*see* Docket No. 150, at 15), one way Plaintiffs can do so is by showing that the stated rationale for Secretary Ross's decision was not his *actual* rationale.  Indeed, the Supreme Court has long held that the APA requires an agency decisionmaker to "disclose the basis of its" decision, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (internal quotation marks omitted), a requirement that would be for naught if the agency could conceal the *actual* basis for its decision, *see also FTC v. Sperry & Hutchinson Co*, 405 U.S. 233, 248-49 (1972).  To prevail on their other claim — under the Due Process clause — Plaintiffs must show that an "invidious discriminatory purpose" was a "motivating factor" in Secretary Ross's decision.  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).  That analysis "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including "[t]he specific sequence of events leading up the challenged decision," the "administrative history [including] . . . contemporary statements by members of the decisionmaking body," and even direct testimony from decisionmakers "concerning the purpose of the official action."  *Id.* at 266-68.  If that evidence establishes that the stated reason for Secretary Ross's decision was not the real one, a reasonable factfinder may be able to infer from that and other evidence that he was "dissembling to cover up a discriminatory purpose."  *New York*, 315 F. Supp. 3d at 809 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

   Notably, in litigating earlier discovery disputes, Defendants all but admitted that Plaintiffs' claims turn on the intent of Secretary Ross himself.  For instance, in litigating the propriety of Defendants' invocation of the deliberative process privilege, Defendants contended that Plaintiffs should not receive materials prepared by Secretary Ross's subordinates because

3

such materials would not shed light on Plaintiffs' "claims that the ultimate decisionmaker's decision" — that is, *Secretary Ross's* decision — "was based on pretext." (Docket No. 315, at 3). And in seeking to preclude a deposition of the Acting Assistant Attorney General for Civil Rights — the purported ghostwriter of the DOJ letter — Defendants argued vigorously that "[t]he relevant question" in these cases "is whether *Commerce's* stated reasons for reinstating the citizenship question were pretextual." (Docket No. 255, at 2 (emphasis in original)). As Defendants put it: "*Commerce* was the decision-maker, not DOJ. . . . [T]herefore, *Commerce's* intent is at issue not DOJ's." (*Id.* (emphases added)). In a footnote, Defendants went even further, asserting that "[t]he sole inquiry should be whether *Commerce* actually believed the articulated basis for adopting the policy." (*Id.* at 2 n.1 (emphasis added)). Undoubtedly, Defendants deliberately substituted the word "Commerce" for "Secretary Ross" knowing full well that Plaintiffs' request to depose him was coming down the pike. But given that Secretary Ross himself "was the decision-maker" and that it was he who "articulated" the "basis for adopting the policy," the significance of Defendants' own prior concessions about the centrality of the "decision-maker's" intent cannot be understated.

Indeed, in the unusual circumstances presented here, the concededly relevant inquiry into "Commerce's intent" could not possibly be conducted without the testimony of Secretary Ross himself. Critically, that is not the case merely because Secretary Ross made the decision that Plaintiffs are challenging — indeed, that could justify the deposition of a high-ranking government official in almost every APA case, contrary to the teachings of *Lederman*. Instead, it is the case because Secretary Ross was personally and directly involved in the decision, and the unusual process leading to it, to an unusual degree. *See, e.g.*, *United States v. City of New York*, No. 07-CV-2067 (NGG) (RLM), 2009 WL 2423307, at *2-3 (E.D.N.Y. Aug. 5, 2009) (authorizing the Mayor's deposition where his congressional testimony "suggest[ed] his direct

4

involvement in the events at issue"). By his own admission, Secretary Ross "began considering . . . whether to reinstate a citizenship question" shortly after his appointment in February 2017 and well before December 12, 2017, when the Department of Justice ("DOJ") made a formal request to do so. (Docket No. 189-1). In connection with that early consideration, Secretary Ross consulted with various "other governmental officials" — although precisely with whom and when remains less than crystal clear. (*Id.*; *see also* Docket Nos. 313, 319). Additionally, Secretary Ross manifested an unusually strong personal interest in the matter, demanding to know as early as May 2017 — seven months before the DOJ request — why no action had been taken on his "months old request that we include the citizenship question." (Docket No. 212, at 3699).[2] And he personally lobbied the Attorney General to submit the request that he "then later relied on to justify his decision," *New York v. U.S. Dep't of Commerce*, No. 18-CV-2921 (JMF), 2018 WL 4279467, at *4 (S.D.N.Y. Sept. 7, 2018) (*see also* Docket Nos. 314-4, 314-5), and he did so despite being told that DOJ "did not want to raise the question," (Docket No. 325-1). Finally, as the Court has noted elsewhere, *see New York*, 315 F. Supp. 3d at 808, he did all this — and ultimately mandated the addition of the citizenship question — over the strong and continuing opposition of subject-matter experts at the Census Bureau. (*See* Docket No. 325-2, at 5; Docket No. 173, at 1277-85, 1308-12).[3]

      The foregoing record is enough to justify the relief Plaintiffs seek, but a deposition is also warranted because Defendants — and Secretary Ross himself — have placed the credibility of

---

[2]    Docket No. 212 is Defendants' notice of the filing of supplemental materials. Given the volume of those materials, Defendants did not file them directly on the docket, but made them available at http://www.osec.doc.gov/opog/FOIA/Documents/CensusProd001.zip.

[3]    Docket No. 173 is Defendants' filing of (the first part of) the Administrative Record. Given the volume of those materials, Defendants did not file them directly on the docket, but made them available at http://www.osec.doc.gov/opog/FOIA/Documents/AR%20-%20FINAL%20FILED%20-%20ALL%20DOCS%20[CERTIFICATION-INDEX-DOCUMENTS]%206.8.18.pdf.

Secretary Ross squarely at issue in these cases. In his March 2018 decision memorandum, for example, Secretary Ross stated that he "*set out* to take a hard look" at adding the citizenship question "[*f*]*ollowing receipt*" of the December 2017 request from DOJ. (A.R. 1313 (emphases added)). Additionally, in sworn testimony before the House of Representatives, Secretary Ross claimed that DOJ had "*initiated* the request for inclusion of the citizenship question," *Hearing on Recent Trade Actions, Including Section 232 Determinations on Steel & Aluminum: Hearing Before the H. Ways & Means Comm.*, 115th Cong. 24 (2018), at 2018 WLNR 8951469, and that he was "responding *solely* to the Department of Justice's request," *Hearing on F.Y. 2019 Dep't of Commerce Budget: Hearing Before the Subcomm. on Commerce, Justice, Sci., & Related Agencies of the H. Comm. on Appropriations*, 115th Cong. 9 (2018), at 2018 WLNR 8815056 ("*Mar. 20, 2018 Hearing*") (emphases added). The record developed thus far, however, casts grave doubt on those claims. (*See, e.g.*, Docket No. 189-1 (conceding that Secretary Ross and his staff "inquired whether the Department of Justice . . . would support, *and if so would request*, inclusion of a citizenship question" (emphasis added)); *see* July 3rd Tr. 79-80, 82-83). *See also New York*, 315 F. Supp. 3d at 808-09. Equally significant, Secretary Ross testified under oath that he was "not aware" of any discussions between him and "anyone in the White House" regarding the addition of the citizenship question. *Mar. 20, 2018 Hearing* at 21 ("Q: Has the President or anyone in the White House discussed with you or anyone on your team about adding this citizenship question? A: I'm not aware of any such."). But there is now reason to believe that Steve Bannon, then a senior advisor in the White House, was among the "other government officials" whom Secretary Ross consulted about the citizenship question. (*See* Docket Nos. 314-1, 314-3).

In short, it is indisputable — and in other (perhaps less guarded) moments, Defendants themselves have not disputed — that the intent and credibility of Secretary Ross himself are not

merely relevant, but central, to Plaintiffs claims in this case. It nearly goes without saying that Plaintiffs cannot meaningfully probe or test, and the Court cannot meaningfully evaluate, Secretary Ross's intent and credibility without granting Plaintiffs an opportunity to confront and cross-examine him. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). Indeed, the Supreme Court and the Second Circuit have observed in other contexts that "where motive and intent play leading roles" and "the proof is largely in [Defendants'] hands," as are the case here, it is critical that the relevant witnesses be "present and subject to cross-examination" so "that their credibility and the weight to be given their testimony can be appraised." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *see DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) ("Live testimony is especially important . . . where the factfinder's evaluation of witnesses' credibility is central to the resolution of the issues."); *cf. Goldberg*, 397 U.S. at 269 ("[W]here credibility and veracity are at issue, . . . written submissions are a wholly unsatisfactory basis for decision.").

  Separate and apart from that, Plaintiffs have demonstrated that taking a deposition of Secretary Ross may be the only way to fill in critical blanks in the current record. Notably, Secretary Ross's three closest and most senior advisors who advised on the citizenship question — his Chief of Staff, the Acting Deputy Secretary, and the Policy Director/Deputy Chief of Staff — testified repeatedly that Secretary Ross was the only person who could provide certain information central to Plaintiffs claims. (*See, e.g.*, Pls.' Letter, Ex. 6, at 85 ("You would have to ask [Secretary Ross]."), 101 (same), 209 (same), 210 (same); *id.* Ex. 8, at 111-13 (same)). Among other things, no witness has been able to — or presumably could — testify to the substance and details of Secretary Ross's early conversations regarding the citizenship question with the Attorney General or with interested third parties such as Kansas Secretary of State Kris

Kobach.  (*See* Pls.' Letter, Ex. 6, at 82-86, 119-20, 167-68; *id.* Ex. 7 at 57-58; *id.* Ex. 8 at 205-07).  No witness has been able to identify to whom Secretary Ross was referring when he admitted that "other senior Administration officials . . . raised" the idea of the citizenship question before he began considering it.  (*See* Pls.' Letter, Ex. 6 at 101; *id.* Ex. 7 at 71-73; *id.* Ex. 8 at 111-13).  And despite an allegedly diligent investigation — including "consultation" of an unknown nature and extent with Secretary Ross himself (Sept. 14, 2018 Conf. Tr. 16) — Defendants have not been able to identify precisely to whom Secretary Ross spoke about the citizenship question, let alone when, in the critical months before DOJ's December 2017 letter, (*see id.*).  At a minimum, Plaintiffs are entitled to make good-faith efforts to refresh Secretary Ross's recollections of these critical facts and to test the credibility of any claimed lack of memory in a deposition.  Indeed, there is no other way they could do so.

In sum, for the foregoing reasons, it is plain that "exceptional circumstances" are present here, both because Secretary Ross has "unique first-hand knowledge related to the litigated claims" *and* because "the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman*, 731 F.3d at 203.  In arguing otherwise, Defendants contend that this Court's review of Secretary Ross's decision must be limited to the administrative record.  (Defs.' Letter 2).  But that assertion ignores Plaintiffs' due process claim, in which they plausibly allege that an invidious discriminatory purpose was a motivating factor in the challenged decision.  *See New York*, 315 F. Supp. 3d at 808-11.  Evaluation of that claim requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," including, in appropriate circumstances, "the testimony of decisionmakers." *Id.* at 807, 808 (internal quotation marks omitted).  Defendants' assertion also overlooks that the testimony of decisionmakers can be required even under the APA.  In *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), for example, the Supreme Court made clear

8

that the APA requires a "thorough, probing, in-depth review" of agency action, including a "searching and careful" inquiry into the facts. *Id.* at 415-16. And where there is "a strong showing of bad faith or improper behavior," that permits a court to "require the administrative officials who participated in the decision to give testimony explaining their action." *Id.* As the Court held on July 3rd, that is the case here. (*See* July 3rd Tr. 82-84). "If anything, the basis for that conclusion appears even stronger today." *New York*, 2018 WL 4279467, at *3.

Defendants also contend that the information Plaintiffs seek can be obtained from other sources, such as a Rule 30(b)(6) deposition of the Department of Commerce, interrogatories, or requests for admission. (Defs.' Letter 3). But that contention is unpersuasive for several reasons. First, none of those means are adequate to test or evaluate Secretary Ross's credibility. Second, none allows Plaintiffs the opportunity to try to refresh Secretary Ross's recollection if that proves to be necessary (as seems likely, *see* Sept. 14, 2018 Conf. Tr. 16) or to ask follow-up questions. *See Fish v. Kobach*, 320 F.R.D. 566, 579 (D. Kan. 2017) (authorizing the deposition of a high-ranking official, in lieu of further written discovery, in part because a deposition "has the advantage of allowing for immediate follow-up questions by plaintiffs' counsel"). Third, Plaintiffs have already pursued several of these options, yet gaps in the record remain. (*See* Docket Nos. 313, 319; Sept. 14, 2018 Conf. Tr. 14-16). And finally, to adequately respond to additional interrogatories, prepare a Rule 30(b)(6) witness, or respond to requests for admission, Defendants would have to burden Secretary Ross anyway. "Ordering a deposition at this time is a more efficient means" of resolving Plaintiffs' claims "than burdening the parties and the [Secretary] with further rounds of interrogatories, and, possibly, further court rulings and appeals." *City of New York*, 2009 WL 2423307, at *3.

Two final points warrant emphasis. First, the Court's conclusion that Plaintiffs are entitled to depose Secretary Ross is not quite as unprecedented as Defendants suggest. To be

sure, depositions of agency heads are rare — and for good reasons. But courts have not hesitated to take testimony from federal agency heads (whether voluntarily or, if necessary, by order) where, as here, the circumstances warranted them. *See, e.g.*, *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 6 & n.1 (D.D.C. 1999) (reaching a decision after a trial at which the Secretary of the Interior testified — shortly after being held in civil contempt for violating the Court's discovery order); *D.C. Fed'n of Civic Ass'ns v. Volpe*, 316 F. Supp. 754, 760 nn.12 & 36 (D.D.C. 1970) (deposition and trial testimony required from the Secretary of Transportation), *rev'd on other grounds sub nom. D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231 (D.C. Cir. 1971); *Am. Broad. Cos. v. U.S. Info. Agency*, 599 F. Supp. 765, 768-69 (D.D.C. 1984) (requiring a deposition of the head of the United States Information Agency); *Union Sav. Bank of Patchogue, N.Y. v. Saxon*, 209 F. Supp. 319, 319-20 (D.D.C. 1962) (compelling a deposition of the Comptroller of the Currency); *see also Volpe*, 459 F.2d at 1237-38 (approving of the district court's decision to require the Secretary's testimony).

Courts have also permitted testimony from former agency heads about the reasons for official actions taken while they were still in office. *See, e.g.*, *Starr Int'l Co. v. United States*, 121 Fed. Cl. 428, 431 (2015) (Secretary of the Treasury and Chair of the Federal Reserve), *vacated in part on other grounds*, 856 F.3d 953 (Fed. Cir. 2017); *McDonnell Douglas Corp. v. United States*, 35 Fed. Cl. 358, 372 (1996) (Secretary of Defense). And, contrary to Defendants' suggestion that authorizing a deposition of Secretary Ross "would have serious repercussions for the relationship between two coequal branches of government" (Defs.' Letter 1 (internal quotation marks omitted)), the Supreme Court has made clear that "interactions between the Judicial Branch and the Executive, even quite burdensome interactions," do not "necessarily rise to the level of constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions." *Clinton v. Jones*, 520 U.S. 681, 702 (1997).

If separation-of-powers principles do not call for a federal court to refrain from exercising "its traditional Article III jurisdiction" even where exercising that jurisdiction may "significantly burden the time and attention" of *the President*, *see id.* at 703, they surely do not call for refraining from the exercise of this Court's jurisdiction here.[4]

Second, in the final analysis, there is something surprising, if not unsettling, about Defendants' aggressive efforts to shield Secretary Ross from having to answer questions about his conduct in adding the citizenship question to the census questionnaire. At bottom, limitations on depositions of high-ranking officials are rooted in the notion that it would be contrary to the public interest to allow litigants to interfere too easily with their important duties. *See Lederman*, 731 F.3d at 203. The fair and orderly administration of the census, however, is arguably the Secretary of Commerce's most important duty, and it is critically important that the public have "confidence in the integrity of the process" underlying "this mainstay of our democracy." *Franklin v. Massachusetts*, 505 U.S. 788, 818 (1992) (Stevens, J., concurring in part and concurring in the judgment). In light of that, and the unusual circumstances presented in these cases, the public interest weighs heavily in favor of both transparency and ensuring the development of a comprehensive record to evaluate the propriety of Secretary Ross's decision. In short, the public interest weighs heavily in favor of granting Plaintiffs' application for an order requiring Secretary Ross to sit for a deposition.

---

[4]   It bears mentioning that Secretary Ross has testified several times on the subject of this litigation before Congress — a co-equal branch not only of the Executive, but also of the Judiciary. (*See* Pls.' Reply 3 n.6). Although congressional testimony, and preparation for the same, undoubtedly impose serious burdens on Executive Branch officials, even high-ranking Executive Branch officials must comply with subpoenas to testify before Congress. *See Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 106-07 (D.D.C. 2008). The obligation to give testimony in proceedings pending before an Article III court, where necessary, is of no lesser importance.

That said, mindful of the burdens that a deposition will impose on Secretary Ross and the scope of the existing record (including the fact that Secretary Ross has already testified before Congress about his decision to add the citizenship question), the Court limits the deposition to four hours in length, *see, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (GEL), 2008 WL 1752254, at *1 (S.D.N.Y. Apr. 16, 2008) ("A district court has broad discretion to set the length of depositions appropriate to the circumstances of the case."), and mandates that it be conducted at the Department of Commerce or another location convenient for Secretary Ross. The Court, however, rejects Defendants' contention that the deposition "should be held only after all other discovery is concluded," (Defs.' Letter 3), in no small part because the smaller the window, the harder it will undoubtedly be to schedule the deposition. Finally, the Court declines Defendants' request to "stay its order for 14 days or until Defendants' anticipated mandamus petition is resolved, whichever is later." (*Id.*). Putting aside the fact that Defendants do not even attempt to establish that the circumstances warranting a stay are present, *see New York*, 2018 WL 4279467, at *1 (discussing the standards for a stay pending a mandamus petition), the October 12, 2018 discovery deadline is rapidly approaching and Defendants themselves have acknowledged that time is of the essence, *see id.* at *3. Moreover, the deposition will not take place immediately; instead, Plaintiffs will need to notice it and counsel will presumably need to confer about scheduling and other logistics. In the meantime, Defendants will have ample time to seek mandamus review and a stay pending such review from the Circuit.

The Clerk of Court is directed to terminate Docket No. 314.

SO ORDERED.

Dated: September 21, 2018
New York, New York

JESSE M. FURMAN
United States District Judge