I739stao

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

STATE OF NEW YORK, et al.,

              Plaintiffs,

    v.                            18 Civ. 2921 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                                  Argument

              Defendants.

------------------------------x

NEW YORK IMMIGRATION
COALITION, et al.,

              Plaintiffs,

    v.                            18 Civ. 5025 (JMF)

UNITED STATES DEPARTMENT OF
COMMERCE, et al.,
                                  Argument

              Defendants.

------------------------------x

                                  New York, N.Y.
                                  July 3, 2018
                                  9:30 a.m.

Before:

                  HON. JESSE M. FURMAN,

                                  District Judge

```
 1                            APPEARANCES

 2    NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
           Attorneys for Plaintiffs
 3    BY:  MATTHEW COLANGELO
           AJAY P. SAINI
 4         ELENA S. GOLDSTEIN
           – and –
 5    ARNOLD & PORTER KAYE SCHOLER
      BY:  JOHN A. FREEDMAN
 6         – and –
      LAW OFFICE OF ROLANDO L. RIOS
 7    BY:  ROLANDO L. RIOS

 8    United States Department of Justice
      Civil Division, Federal Programs Branch
 9         Attorneys for Defendants
      BY:  BRETT SHUMATE
10         KATE BAILEY
           JEANNETTE VARGAS
11         STEPHEN EHRLICH

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              (Case called)

2              MR. COLANGELO:  Good morning, your Honor.

3              Matthew Colangelo from New York for the state and
4    local government plaintiffs.

5              One housekeeping matter, your Honor, if I may.  The
6    plaintiffs intended to have two lawyers oppose the Justice
7    Department's motion to dismiss; Mr. Saini argue the standing
8    argue and Ms. Goldstein argue the remaining 12(b)(1) and
9    12(b)(6) arguments; and then I will argue the discovery aspect
10   of today's proceedings.  And I may ask my cocounsel from
11   Hidalgo County, Texas, Mr. Rios, to weigh in briefly on one
12   particular aspect of expert discovery that we intend to
13   proffer.  So with the Court's indulgence, we may swap counsel
14   in and out between those arguments.

15             THE COURT:  Understood.  Thank you.

16             MS. GOLDSTEIN:  Elena Goldstein also from New York for
17   the plaintiffs.

18             MR. SAINI:  Ajay Saini also from New York for the
19   plaintiffs.

20             MR. FREEDMAN:  Good morning, your Honor.

21             John Freedman from Arnold & Porter for the New York
22   Immigration Coalition plaintiffs.

23             MR. RIOS:  Rolando Rios for the Cameron and Hidalgo
24   County plaintiffs, your Honor.

25             MR. SHUMATE:  Good morning, your Honor.

1    full scope of such materials. Accordingly, plaintiffs' request

2    for an order directing defendants to complete the

3    Administrative Record is well founded.

4           Finally, I agree with the plaintiffs that there is a

5    solid basis to permit discovery of extra-record evidence in

6    this case. To the extent relevant here, a court may allow

7    discovery beyond the record where "there has been a strong

8    showing in support of a claim of bad faith or improper behavior

9    on the part of agency decision-makers." National Audubon

10   Society v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). Without

11   intimating any view on the ultimate issues in this case, I

12   conclude that plaintiffs have made such a showing here for

13   several reasons.

14          First, Secretary Ross's supplemental memorandum of

15   June 21, which I've already discussed, could be read to suggest

16   that the Secretary had already decided to add the citizenship

17   question before he reached out to the Justice Department; that

18   is, that the decision preceded the stated rationale. See, for

19   example, Tummino v. von Eschenbach, 427 F.Supp. 2d 212, 233

20   (E.D.N.Y. 2006) authorizing extra-record discovery where there

21   was evidence that the agency decision-makers had made a

22   decision and, only thereafter took steps "to find acceptable

23   rationales for the decision." Second, the Administrative

24   Record reveals that Secretary Ross overruled senior Census

25   Bureau career staff, who had concluded -- and this is at page

1277 of the record -- that reinstating the citizenship question would be "very costly" and "harm the quality of the census count."  Once again, see Tummino, 427 F.Supp. 2d at 231-32, holding that the plaintiffs had made a sufficient showing of bad faith where "senior level personnel overruled the professional staff."  Third, plaintiffs' allegations suggest that defendants deviated significantly from standard operating procedures in adding the citizenship question.  Specifically, plaintiffs allege that, before adopting changes to the questionnaire, the Census Bureau typically spends considerable resources and time -- in some instances up to ten years -- testing the proposed changes.  See the amended complaint which is docket no. 85 in the states' case at paragraph 59.  Here, by defendants' own admission -- see the amended complaint at paragraph 62 and page 1313 of the Administrative Record -- defendants added an entirely new question after substantially less consideration and without any testing at all.  Yet again Tummino is instructive.  See 427 F.Supp. 2d at 233, citing an "unusual" decision-making process as a basis for extra-record discovery.

Finally, plaintiffs have made at least a prima facie showing that Secretary Ross's stated justification for reinstating the citizenship question -- namely, that it is necessary to enforce Section 2 of the Voting Rights Act -- was pretextual.  To my knowledge, the Department of Justice and

1    civil rights groups have never, in 53 years of enforcing
2    Section 2, suggested that citizenship data collected as part of
3    the decennial census, data that is by definition quickly out of
4    date, would be helpful let alone necessary to litigating such
5    claims.  See the states case docket no. 187-1 at 14; see also
6    paragraph 97 of the amended complaint.  On top of that,
7    plaintiffs' allegations that the current Department of Justice
8    has shown little interest in enforcing the Voting Rights Act
9    casts further doubt on the stated rationale.  See paragraph 184
10   of the complaint which is docket no. 1 in the Immigration
11   Coalition case.  Defendants may well be right that those
12   allegations are "meaningless absent a comparison of the
13   frequency with which past actions have been brought or data on
14   the number of investigations currently being undertaken," and
15   that plaintiffs may fail "to recognize the possibility that the
16   DOJ's voting-rights investigations might be hindered by a lack
17   of citizenship data."  That is page 5 of the government's
18   letter which is docket no. 194 in the states case.  But those
19   arguments merely point to and underscore the need to look
20   beyond the Administrative Record.
21           To be clear, I am not today making a finding that
22   Secretary Ross's stated rationale was pretextual -- whether it
23   was or wasn't is a question that I may have to answer if or
24   when I reach the ultimate merits of the issues in these cases.
25   Instead, the question at this stage is merely whether --

assuming the truth of the allegations in their complaints --
plaintiffs have made a strong preliminary or prima facie
showing that they will find material beyond the Administrative
Record indicative of bad faith.  See, for example, Ali v.
Pompeo, 2018 WL 2058152 at page 4 (E.D.N.Y. May 2, 2018).  For
the reasons I've just summarized, I conclude that the
plaintiffs have done so.

That brings me to the question of scope.  On that
score, I am mindful that discovery in an APA action, when
permitted, "should not transform the litigation into one
involving all the liberal discovery available under the federal
rules.  Rather, the Court must permit only that discovery
necessary to effectuate the Court's judicial review; i.e.,
review the decision of the agency under Section 706."  That is
from Ali v. Pompeo at page 4, citing cases.  I recognize, of
course, that plaintiffs argue that they are independently
entitled to discovery in connection with their constitutional
claims.  I'm inclined to disagree given that the APA itself
provides for judicial review of agency action that is "contrary
to" the Constitution.  See, for example, Chang v. USCIS, 254
F.Supp. 3d 160 at 161-62 (D.D.C. 2017).  But, even if
plaintiffs are correct on that score, it is well within my
authority under Rule 26 to limit the scope of discovery.

Mindful of those admonitions, not to mention the
separation of powers principles at stake here, I am not

1   inclined to allows as much or as broad discovery as the
2   plaintiffs seek, at least in the first instance.  First, absent
3   agreement of defendants or leave of Court, of me, I will limit
4   plaintiffs to ten fact depositions.  To the extent that
5   plaintiffs seek to take more than that, they will have to make
6   a detailed showing in the form of a letter motion, after
7   conferring with defendants, that the additional deposition or
8   depositions are necessary.  Second, again absent agreement of
9   the defendants or leave of Court, I will limit discovery to the
10  Departments of Commerce and Justice.  As defendants' own
11  arguments make clear, materials from the Department of Justice
12  are likely to shed light on the motivations for Secretary
13  Ross's decision -- and were arguably constructively considered
14  by him insofar as he has cited the December 2017 letter as the
15  basis for his decision.  At this stage, however, I am not
16  persuaded that discovery from other third parties would be
17  necessary or appropriate; to the extent that third parties may
18  have influenced Secretary Ross's decision, one would assume
19  that that influence would be evidenced in Commerce Department
20  materials and witnesses themselves.  Further, to the extent
21  that plaintiffs would seek discovery from the White House,
22  including from current and former White House officials, it
23  would create "possible separation of powers issues."  That is
24  from page 4 of the slip opinion in the *Nielsen* order.  Third,
25  although I suspect there will be a strong case for allowing a