**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>        Defendants. | 18-CV-2921 (JMF) |

**DECLARATION OF JOHN GORE**

I, John Gore, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am the Acting Assistant Attorney General for Civil Rights. As the Acting Assistant Attorney General, I am the senior management official of the Civil Rights Division. As a part of my official duties, I am responsible for the overall supervision of the Division's enforcement of the federal statutes and regulations that fall within the Division's mission, including the Voting Rights Act of 1965. I report directly to the Acting Associate Attorney General. The following statements are based upon my personal knowledge or on information supplied to me in the course of my professional responsibilities. These statements are provided in support of the Department of Justice's (DOJ) assertion of the deliberative process privilege over certain documents in the above-captioned case.

2. Based upon my review and personal consideration of each document, I hereby formally assert the deliberative process privilege on behalf of DOJ for the following 25 documents, which

are potentially responsive to Plaintiffs' requests for production of documents: DOJ 2722, 2736, 2739, 2786, 2924, 2925, 2926, 2927, 2951, 2967, 3094, 3098, 3101, 3103, 3105, 3365, 3367, 3371, 3374, 3376, 4457, 13556, 14683, 14687, and 14772. (Although Plaintiffs refer to DOJ 3352 and 3356, both of these documents were re-released to Plaintiffs in less redacted form on September 14, 2018. Instead of DOJ 3352, I therefore refer to the updated version at DOJ 14683; and instead of DOJ 3356, I therefore refer to the updated version at DOJ 14687.) I am hereby authorizing release of re-redacted versions of documents 2951, 3367, 3371, 3374, 3376, and 14772 on this list. I have been informed that a 26th document challenged by Plaintiffs, 13555, has previously been released in full to Plaintiffs on September 19. Finally, the 27th document identified by Plaintiffs, 3357, contains deliberative material that is unrelated to this litigation, and I have changed the redaction marks to reflect that fact.

    3. The following four documents identified on DOJ's privilege log and challenged by Plaintiffs are draft, non-final versions of the "Gary Letter": DOJ 2722, 2736, 2739, and 2786. Each of these drafts pre-date the final version of the Gary Letter, and the edits and changes reflect deliberations and the back-and-forth in the development of Department policy. The Gary Letter, transmitted in final form on December 12, 2017 and now publicly available in the Administrative Record, pp. 663-665, constitutes DOJ's request to the Census Bureau for the reinstatement of a citizenship question. To the extent Plaintiffs suggest that the decision to request the reinstatement of the citizenship question from the Census Bureau pre-dated the December 12 Gary Letter, this unsupported view is mistaken. Until the final letter is sent, a decision is always subject to refinement, revision, and reconsideration. These four documents are works-in-progress assembled

for internal consideration and editing by DOJ attorneys, and each pre-dates the final Gary Letter. Each of the four documents also reflects the edits and changes made by DOJ attorneys during the deliberative process developing the final Gary Letter—some directly, through tracked changes, and others by comparison with the text of the final Gary Letter. These edits reflect the opinions and deliberations of those who reviewed the draft Gary Letter. Disclosure of the drafts would reveal preliminary judgments of DOJ attorneys that were later further refined and revised. DOJ is responsible for policymaking in a variety of areas, including law enforcement and, as applicable here, enforcement of the Voting Rights Act. In order to effectively carry out these important responsibilities, DOJ employees must be able to candidly share their opinions and views during the development of policy. Disclosure of these drafts would discourage such open and candid discussion and would chill DOJ's policymaking process. For example, DOJ attorneys would be substantially less likely to propose and consider a full range of ideas if they knew that their intermediate drafts would be subject to public scrutiny. DOJ attorneys might be especially reluctant to engage by offering views that are contrary to the prevailing view within the agency or in broader society, or to participate vigorously in internal disagreements—even though such dissenting views are critical to the formulation of a well-considered policy. These concerns are especially heightened in highly controversial areas where, as this litigation demonstrates, an intense degree of scrutiny by the public would ultimately be aimed at intermediate edits and comments.

    4. The following document identified on DOJ's privilege log is an email chain bearing one redacted portion, reflecting DOJ deliberations concerning pending FOIA requests for

documents related to the letter DOJ sent to the Census Bureau requesting reinstatement of a citizenship question: DOJ 14683.  (Plaintiffs refer to DOJ 3352.  After conferring with Plaintiffs, DOJ determined that it could release additional portions of DOJ 3352, and did so at the new Bates number 14683.  It is therefore DOJ 14683 which requires deliberative process protection.)  As an executive agency, DOJ must respond to such requests in accordance with the Freedom of Information Act.  The redacted portion of DOJ 14683 contains internal DOJ views and deliberations about how to respond to pending FOIA requests—it does not relate to DOJ's views concerning the reinstatement of a citizenship question to the Census at all.  DOJ employees must be able to candidly share their views about pending FOIA requests in order to effectively and accurately resolve those requests.  Disclosure of DOJ employees' preliminary views concerning FOIA requests would discourage the open and candid ventilation of a variety of opinions concerning those requests, and ultimately impact the quality of the agency's FOIA responses.

   5.   The following document identified on DOJ's privilege log is a draft briefing paper provided to the Attorney General: DOJ 2967.  The Attorney General relies on briefings and advice from his subordinates within DOJ in order to remain informed about the many areas in which DOJ operates and in order to make decisions.  DOJ 2967 was transmitted for internal consideration by the Attorney General, and does not reflect the final views of the agency.  The factual content contained in DOJ 2967 is inextricably intertwined with DOJ employees' opinions and recommendations, and was specifically selected by those employees to shed light on those opinions and recommendations.  If DOJ 2967 or similar documents are subject to public scrutiny, it will likely chill the willingness of DOJ employees to participate candidly and openly in

disseminating information through the Department and advising the Attorney General. For example, DOJ employees may be less likely to raise dissenting opinions to the Attorney General or to fully explore controversial areas—especially in controversial topics—if they knew that their internal advice and opinions would be aired to the public.

6. In recent months, DOJ's December 12, 2017 request that a citizenship question be reinstated on the Census to assist DOJ's Voting Rights Act enforcement efforts has been the subject of significant interest to many different entities—including Congress, the media, and others. Because of this interest, DOJ policymakers have been called upon to explain DOJ's request. As discussed in more detail below, certain other documents challenged by Plaintiffs relate to those efforts by DOJ's policymakers to explain that request.

7. The following documents identified on DOJ's privilege log contain deliberative material related to drafting talking points to address the issuance of the Gary Letter: DOJ 2924, 2925, 2926, and 2927. The email messages in DOJ 2924, 2925, 2926, and 2927 are part of one email chain. The entire chain is between General Counsel of DOJ's Justice Management Division, Arthur Gary, and myself and reveals the thinking process that went into drafting the Gary Letter and the two parties' individual interpretations of the letter, prior to it being interpreted by its ultimate recipient, the Department of Commerce.

8. The following documents identified on DOJ's privilege log contain deliberative material relating to DOJ's draft responses to inquiries from the Washington Post Editorial Board concerning the Gary Letter: DOJ 3094, 3098, 3101, 3103, 3105, 3367, 3371, 3374, and 3376. The email messages in DOJ 3098, 3101, 3103, 3105, 3367, 3371, 3374, and 3376 are each part of 3094.

The redacted portions of each of the emails in this chain reveal the thoughts and advice of DOJ attorneys regarding how to respond to specific questions asked by the Washington Post Editorial Board. Documents 3094 and 3098 also contain material revealing the internal concerns about a particular proposal by one component of DOJ.

9. The following documents identified on DOJ's privilege log contain deliberative material relating to DOJ's proposed responses to inquiries from Congress or members of Congress concerning the Gary Letter: DOJ 2951, 3365, 4457, 13556, and 14772. Documents 4457 and 13556, a draft letter to a congressmember, reveal individual impressions or views of the Gary Letter, prior to the Department of Commerce arriving at its own interpretation. The following document identified on DOJ's privilege log contain deliberative material relating to DOJ's proposed response to inquiries from Commissioner Kirsanow of the United States Civil Rights Commission: DOJ 14687 (Plaintiffs refer to DOJ 3356. After conferring with Plaintiffs, DOJ determined that it was able to release some portions of DOJ 3356, and did so at DOJ 14687. It is therefore DOJ 14687 that requires deliberative process protection.)

10. The documents discussed in paragraphs 7, 8 and 9 pre-date the final talking points (if any) and the final responses (if any) to the respective requests, and were circulated within DOJ for internal consideration and editing by DOJ attorneys. The withheld portions of the documents contain deliberations by DOJ attorneys about how DOJ should respond to public inquiries or provide a public statement. Disclosure of this material would reveal preliminary judgments of DOJ attorneys that were later further refined and revised. Disclosure of this material would discourage the open and candid discussion that helps DOJ explain its position in an accurate and

6

efficient way, even though the DOJ employees ultimately responding to various inquires may not be the same DOJ employees who took the action to be explained.

I declare under penalty of perjury that the foregoing is true and correct.

Washington, DC
September 24, 2018

John Gore
Acting Assistant Attorney General
United States Department of Justice