September 24, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Plaintiffs' letter-motion to compel production of documents in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

      Plaintiffs seek disclosure of seventeen documents that Defendants have withheld on privilege grounds: (1) one email exchange, withheld on a claim of attorney-client privilege, reflecting the Commerce Department's alteration of the Census Bureau's description of its protocols to add a question to the census, Ex. 1 (AR 9190); and (2) sixteen documents, each withheld on attorney-client and deliberative process grounds, that include copies of and emails regarding James Uthmeier's August 11, 2017 memo to the Secretary on the citizenship question, Ex. 2.[1]  Plaintiffs have been unable to resolve this dispute through good faith meet-and-confer discussions with Defendants' counsel.  Plaintiffs therefore request, pursuant to Rule 2(C) of this Court's Individual Rules, an informal discovery conference or an order compelling disclosure of the challenged documents.  *See* Ex. 3 (privilege log with challenged documents highlighted).

      *1. The Commerce Department's alteration of the Census Bureau's responses.*  Census Bureau Chief Scientist Dr. John Abowd concluded in a January 19, 2018 memo that adding a citizenship question to the census was "very costly, harms the quality of the census count," and was not the best option to "meet[] DoJ's stated uses."  Ex. 4.  On January 30, Earl Comstock asked the Bureau for responses to 35 separate questions about Dr. Abowd's memo.  Ex. 5.  The resulting Q&A document was placed in Defendants' initial Administrative Record.  Ex. 6.

      Question 31 asked: "What was the process that was used in the past to get questions added to the decennial Census or do we have something similar where a precedent was established?"  *Id.*  The Census Bureau prepared a response that it transmitted to the Commerce Department several days later, and which stated in part:

> The Census Bureau follows a well-established process when adding or changing content on the census or ACS to ensure the data fulfill legal and regulatory requirements established by Congress. Adding a question or making a change to the Decennial Census or the ACS involves extensive testing, review, and evaluation. This process ensures the change is necessary and will produce quality, useful information for the nation.
> - The Census Bureau and the Office of Management and Budget (OMB) have laid

---

[1] The sixteen documents include (a) six copies of the Uthmeier memo and associated emails, *see* AR 11342, AR 11346, AR 11349, AR 11352, AR 11363, AR 12464; and (b) ten emails between Mr. Uthmeier, Mr. Comstock, and Leonard Shambon, *see* AR 11301, AR 11302, AR 11303, AR 11305, AR 11306, AR 11312, AR 11333, AR 11335, AR 11353, AR 11355.  Of these sixteen documents, nine were withheld in full; the seven withheld in part are attached as Ex. 2 to this letter motion.

> out a formal process for making content changes.
> - First, federal agencies evaluate their data needs and propose additions or changes to current questions through OMB.
> - In order to be included, proposals must demonstrate a clear statutory or regulatory need for data at small geographies or for small populations.
> - Final proposed questions result from extensive cognitive and field testing to ensure they result in the proper data, with an integrity that meets the Census Bureau's high standards. . . .
> - The final decision is made in consultation with OMB.

Ex. 7.  This description of the Census Bureau's "well-established" process for adding a question to the census is consistent with other documents in the Administrative Record.  Ex. 8.  Census Bureau witnesses testified Secretary Ross did not follow a number of these well-established steps in adding the question to the census questionnaire.  Ex. 9; Ex. 10.

After the Census Bureau transmitted its response to Question 31 to Commerce, however, Commerce officials substantively revised the Census Bureau's response to read: "Because no new questions have been added to the Decennial Census (for nearly 20 years), *the Census Bureau did not [feel] bound by past precedent* when considering the Department of [Justice's] request."  Ex. 6 (emphasis added).  Census Bureau witnesses have testified they did not know why the response to that question was altered.  Ex. 9; Ex. 10.  The record indicates that Commerce appointee Sahra Park-Su transmitted a revised response to Question 31 to senior Commerce Department and Census Bureau staff on February 23, and that Census Bureau Senior Advisor Christa Jones responded, but Defendants have redacted most of the exchange on a claim of attorney-client privilege.  Ex. 1, Ex. 3.

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance."  *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 207 (2d Cir. 2012).  These requirements are not met here.  Neither Ms. Park-Su nor Ms. Jones was acting as an attorney, and Defendants' privilege log makes no claim that they were.  Ex. 3.  The log states only that the email reflects "[c]ommunications with counsel re draft answer to question."  *Id.*  Defendants later asserted on September 19 during the meet-and-confer process (after the Court's final August 21 deadline for curing deficiencies in the privilege log, *see* Docket No. 241), that because Michael Walsh – a Commerce Department lawyer – assisted in the response, the privilege could attach.  But Mr. Walsh is a passive participant on the exchange, and merely copying a lawyer on an email is insufficient grounds for invoking attorney-client privilege.  *See, e.g.*, *Retail Brand All., Inc. v. Factory Mut. Ins. Co.*, No. 05 Civ. 1031 (RJH) (HBP), 2008 WL 622810, at *2 (S.D.N.Y. May 7, 2008).  Even if Mr. Walsh re-wrote the response to Question 31, attorney-client privilege would not apply because a "communication intended for publication is not intended to be confidential, . . . and therefore is not within the privilege."  *See, e.g.*, *Favors v. Cuomo*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (citation omitted).  Moreover, Defendants have produced many other emails concerning the review of materials prepared for the Administrative Record in which lawyers (including Mr. Walsh) are copied.  Ex. 11.  This selective disclosure constitutes a subject matter waiver of any applicable attorney-client privilege regarding the review or editing of materials disclosed in the Administrative Record, like the challenged document here.  *See, e.g.*, *In re von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987).

Second, nothing about the email exchange gives any indication that it is a request for or involves the communication of legal advice; and again, the privilege log makes no claim that it does. "[T]he privilege attaches only if 'the predominant purpose is to render or solicit legal advice.'" *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 529 (S.D.N.Y. 2015) (quoting *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). Because nothing about this email exchange reflects that *any* part of its purpose was to render or solicit legal advice, the privilege cannot attach and this document should be disclosed.

*2. The August 2017 Uthmeier Memo.* On August 10, 2017, in response to an observation from Secretary Ross that an unnamed person "seem[s] d[u]g in about not [asking] the citizenship question," Mr. Comstock responded "we are preparing a memo and full briefing for you on the citizenship question." Ex. 12. The following day, Mr. Uthmeier sent a memo to Secretary Ross. Ex. 3. Defendants have withheld on attorney-client and deliberative process grounds six copies of this memo, as well as ten related communications between Mr. Uthmeier, Mr. Comstock, and Leonard Shambon, who conducted fact-gathering for the memo. *See infra* 1 n.1; Ex. 3.

As to the attorney-client privilege claims, Defendants themselves have characterized the Uthmeier memo and related correspondence as including non-legal advice. Mr. Uthmeier's communications indicate that Mr. Shambon was gathering historical and factual information for the August 11 memo, which Mr. Shambon referred to as a "chronology" and "timeline." Ex. 2. In addition, Mr. Comstock's September 12, 2018 declaration stated the contents of the memo consisted of "analyzing various issues and history associated with the citizenship question." Docket No. 315-2 (AR 11363). And Mr. Uthmeier's August 15, 2018 declaration regarding a contemporaneous briefing book he prepared reflects it contained substantial factual information. Docket No. 253 ¶¶ 3, 6(d), 6(e). There is substantial reason to believe that the August 11 memo and Mr. Uthmeier's related communications included presentation of historical or other facts, rather than purely legal analysis or advice. To the extent the memo and other communications convey this factual information rather than legal advice, they are not protected: "the communication of factual information is not protected by the attorney-client privilege." *Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160-61 (S.D.N.Y. 2004); *see also Nat'l Hockey League Players' Ass'n v. Bettman*, No. 93-cv-5769-KMW, 1994 WL 38130, at *12 (S.D.N.Y. Feb. 4, 1994).

Defendants have also claimed deliberative process privilege over these documents. Applying the balancing test set out in *Winfield v. City of N.Y.*, 2018 WL 716013 (S.D.N.Y. Feb. 1, 2018), the seriousness of the litigation and the role of the agency weigh heavily in favor of disclosure. *See* Tr. of Sept. 14 Conference, at 9-10. Even if disclosure may inhibit future candid debate among agency actors, *see id.* at 10, the remaining two factors – relevance of the evidence, and availability of other evidence – weigh in favor of disclosure. The Uthmeier memo was presented to the Secretary immediately after, and in apparent response to, his complaint about the "citizenship question," Ex. 12, and may go to central issues in the case, including the Secretary's intent. Although some of this information could be obtained through the Secretary's deposition, *see* Docket No. 345, this factor does not weigh against disclosure where Defendants are planning to seek interlocutory review of the Court's order, *see* Docket No. 320 at 3. The October 12 discovery deadline does not allow for abating document productions while the deposition question is resolved. These documents should be reviewed *in camera* to determine whether they, or any portion thereof, may be produced.

3

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*

| | |
|---|---|
| Dale Ho<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>(212) 549-2693<br>dho@aclu.org | Andrew Bauer<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>(212) 836-7669<br>Andrew.Bauer@arnoldporter.com |
| Sarah Brannon*<br>American Civil Liberties Union Foundation<br>915 15th Street, NW<br>Washington, DC 20005-2313<br>202-675-2337<br>sbrannon@aclu.org<br>*\* Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).* | John A. Freedman<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, N.W.<br>Washington, DC 20001-3743<br>(202) 942-5000<br>John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org


Attorneys for the *NYIC* Plaintiffs



BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Ajay Saini, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005

Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs