IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 1:18-cv-2921 (JMF) |
| NEW YORK IMMIGRATION COALITION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | No. 1:18-cv-5025 (JMF) |

## SECOND DECLARATION OF EARL W. COMSTOCK

I, Earl W. Comstock, make the following Declaration pursuant to 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. I am the Deputy Chief of Staff and Director of Policy at the U.S Department of Commerce ("DOC"). I am responsible for reviewing submissions to the Secretary from the various bureaus for alignment with departmental policy and for overseeing general policy implementation. The following statements are based upon my personal knowledge or on information supplied to me

in the course of my professional responsibilities. These statements are provided in support of the DOC's assertion of the attorney-client and deliberative process privileges for certain documents at issue in the above-captioned case.

2.  After Plaintiffs filed their Letter Motion to Compel (ECF No. 349), DOC released the following documents in full or with only redactions for personal information: Bates Nos. 11301, 11302, 11303, 11305, 11306, 11333, 11335, and 11353. DOC also lifted some but not all of the original redactions in Bates Nos. 9190 and 11312. Bates No. 12464 had already been released in full. The remaining documents at issue in this motion therefore are: (a) five versions of the same memorandum, 11342, 11346, 11349, 11352, and 11363, being withheld in full; (b) two email chains relating to the work being performed to create that memo, 11312 and 11355; and (c) 9190. The currently redacted versions of 11312, 11355, and 9190 are attached to this declaration.

3.  I have reviewed each of the documents listed in paragraphs 2(a)-(c) and affirm that the material withheld from these documents is properly covered by the claimed privileges, for the reasons stated below. DOC has also made redactions to these documents for privacy-related reasons. Plaintiffs do not contest these redactions and this declaration does not address them.

*11342, 11346, 11349, 11352, and 11363*

4.  These documents consist of five versions of a legal analysis memorandum prepared in August 2017 by James Uthmeier, then working as an attorney in the Office of General Counsel, containing advice that was submitted to Secretary Ross (Bates Nos. 11342, 11346, 11349, 11352, and 11363). This memorandum contains a communication between a DOC attorney and his client that was made for the purpose of obtaining legal advice. The memo contains attorney Uthmeier's legal analysis, recommendations, and advice concerning the legal authority for reinstating a citizenship question on the decennial census questionnaire. This memorandum was presented to Secretary Ross, his client, to provide advice to Secretary Ross in his ongoing deliberations on this issue.

Attorney Uthmeier discusses the legal authority and pertinent case law for various courses of action and the legal strengths and weaknesses of these alternatives and makes recommendations from a legal standpoint. As Plaintiffs note in their letter (ECF No. 349), the memorandum contains some factual material, such as the historical use of citizenship questions on the census, but this material is inextricably intertwined with attorney Uthmeier's legal analysis and advice and reflects the attorney's selection of what he viewed to be relevant to his client's request for advice and for his provision of his advice to that client. Hence, it cannot be reasonably segregated and released without releasing confidential attorney-client communications. This material was intended to be and was kept confidential.

5.  These memoranda are also covered by the deliberative process privilege, and that privilege should not be overcome here. These memoranda reflect advice and recommendations provided by a subordinate (attorney Uthmeier) to the decisionmaker (Secretary Ross), prior to the decision being made, reviewing various possible alternatives and analyzing their strengths and weaknesses. Some or all of these versions may have been early drafts of the memorandum, but even the version that eventually was forwarded to Secretary Ross was considered a "draft" by attorney Uthmeier as he intended to revise it upon receiving further feedback. This material is thus both predecisional and deliberative.

6.  Disclosure of these drafts of attorney Uthmeier's memo would discourage open and candid discussion between agency employees responsible for providing this type of advice to higher-level officials within the agency. This is especially true where, as here, the opinions and recommendations are utilized to make complicated and sensitive decisions related to the decennial census. If agency employees are aware that their opinions, deliberations, and recommendations as reflected in draft materials may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and

received with regard to these matters could be adversely affected.  Foreseeably, individual employees could be discouraged from sharing a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, or that may later prove to be erroneous, unpopular, or controversial may no longer be freely offered.  In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making if they believe their drafts could later publicly exposed.  Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations -- often from offices with divergent perspectives and priorities, which, in turn could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

7. For the foregoing reasons, release of these memoranda would harm DOC's deliberative process by revealing preliminary opinions, advice, and recommendations shared with decision makers and between agency employees, discouraging open, candid communications.  These memoranda should therefore be protected from disclosure under the deliberative process privilege.

8. Finally, although I understand that the attorney work-product doctrine was not originally asserted as a basis for withholding these materials, on review of the memoranda and discussions with their author, I believe that that doctrine applies here as well.  As I have been informed, attorney Uthmeier was asked to prepare his memorandum in anticipation that litigation would follow if the Secretary decided to reinstate a citizenship question and because of the recognition of this probability.  Attorney Uthmeier would not have been tasked with preparing such a comprehensive review if not for the threat of litigation.

*11312 and 11355*

9. Also included are two email chains relating to the work being performed to create the memoranda discussed above.  This material relates to communications between a DOC attorney

and his client that was made for the purpose of obtaining legal advice. The redacted information in these chains consists of discussions of interim stages in the process by which attorney Uthmeier and other attorneys at DOC were formulating their advice and communicating it to the client (11312) and information from attorney Uthmeier to another attorney about the nature of the advice sought by his client (11355). This material was intended to be and was kept confidential.

10. The material redacted from these email chains is also covered by the deliberative process privilege, and that privilege should not be overcome here. The material reflects the attorneys' and advisers' interim back-and-forth discussions of how to proceed with formulating their advice and communicating it to the client, prior to the decision being made. This material is thus both predecisional and deliberative. Disclosure of the redacted information in these chains would discourage open and candid discussion between agency employees responsible for providing this type of advice to higher-level officials within the agency, which, in turn could jeopardize thorough discussions of the issues, and ultimately, the desired goal of sound decision making. For these reasons, release of this material would harm DOC's deliberative process and the material should therefore be protected from disclosure.

*9190*

11. Bates No. 9190 is an email chain including an email from Sahra Park-Su forwarding on a draft response to a question that reflected comments from Deputy General Counsel Mike Walsh. That draft response, which is what is redacted, is protected by the attorney-client privilege as it includes language suggested by Deputy General Counsel Walsh which reflected his legal analysis and advice to his clients, such as Ms. Park-Su and other parties copied or included on this email chain. The redacted language is accordingly a communication between a DOC attorney and his client that was made for the purpose of imparting legal advice. This information was intended to be and was kept confidential.

12. The redacted language is also covered by the deliberative process privilege, and that privilege should not be overcome here. This language reflected comments by Deputy General Counsel Walsh. This material is thus both predecisional and deliberative. Disclosure of draft language such as this would discourage open and candid discussion between agency employees responsible for providing this type of advice to higher-level officials within the agency. This is especially true where, as here, the opinions and recommendations are utilized to make complicated and sensitive decisions related to the decennial census. If agency employees are aware that their opinions, deliberations, and recommendations as reflected in draft materials may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and received with regard to these matters could be adversely affected. Foreseeably, individual employees could be discouraged from sharing a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, or that may later prove to be erroneous, unpopular, or controversial may no longer be freely offered. In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making if they believe their drafts could later publicly exposed. Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations -- often from offices with divergent perspectives and priorities, which, in turn could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

13. For the foregoing reasons, release of this language would harm DOC's deliberative process by revealing preliminary opinions, advice, and recommendations shared with decision makers and between agency employees, discouraging open, candid communications. These memoranda should therefore be protected from disclosure.

_[signature]_

Earl W. Comstock
*Deputy Chief of Staff and Director of Policy*
Office of the Secretary
United States Department of Commerce

September 26, 2018

# ATTACHMENT

| | |
|---|---|
| **To:** | Uthmeier, James (Federal) |
| **From:** | Shambon, Leonard (Federal) |
| **Sent:** | Fri 8/11/2017 6:56:17 PM |
| **Importance:** | Normal |
| **Subject:** | RE: Census paper |
| **Received:** | Fri 8/11/2017 6:56:19 PM |

Got it and will shoot you the timeline. Updating it now.


Leonard M. Shambon

Special Legal Advisor

Office of the Chief Counsel for Economic Affairs

U.S. Department of Commerce

---

**From:** Uthmeier, James (Federal)
**Sent:** Friday, August 11, 2017 1:59 PM
**To:** Shambon, Leonard (Federal)
**Subject:** Fwd: Census paper


Hey Lenny,

I just wanted to shoot you a current copy of the census paper. Earl is currently reviewing, ███████████████████████████████████████ Really appreciate all of your help--you've been so great to us.

Also, if you could shoot me a digital copy of your timeline today (wherever you've gotten to, no worries if still early 1900s) that would be awesome. ███████████

Thank you and happy Friday!


James

Begin forwarded message:

> **From:** "Uthmeier, James (Federal)"
> **Date:** August 11, 2017 at 10:18:56 AM EDT
> **To:** "Comstock, Earl (Federal)"
> **Subject: Re: Census paper**
>
> Made a couple small edits for clarity. Also, I have not yet sent this to Peter.

██████████ I think he is heading out pretty early today, and I'm tied up 11-1, but maybe we can walk through with him early next week.

**To:** Shambon, Leonard (Federal)[█████████]
**From:** Uthmeier, James (Federal)
**Sent:** Tue 6/27/2017 12:23:22 PM
**Importance:** Normal
**Subject:** Census
**Received:** Tue 6/27/2017 12:23:23 PM

Hey Lenny,

Hope you're doing well.  As we discussed last week, ███████████████████████████████████████████████████ 'm tied up until around 1030, but perhaps we could chat after that?  Let me know!

Thanks,
James

| | |
|---|---|
| To: | Park-Su, Sahra (Federal) |
| Cc: | Ron S Jarmin (CENSUS/ADEP FED)[Ron.S.Jarmin@census.gov]; Enrique Lamas (CENSUS/ADEP FED)[Enrique.Lamas@census.gov]; Kelley, Karen (Federal) ; Walsh, Michael (Federal) ; Lenihan, Brian (Federal) |
| From: | Christa Jones (CENSUS/ADEP FED) |
| Sent: | Sat 2/24/2018 7:01:41 PM |
| Importance: | Normal |
| Subject: | Re: Draft Response to Question |
| Received: | Sat 2/24/2018 7:01:42 PM |

Sahra, I'm fine with this. (This is not to say there weren't some improvements and presentation changes for the topics between 1990-2000-2010 and planned for 2020. I just want us all to be clear that the questionnaires was not identical from 1990 to now.)

On Feb 23, 2018, at 6:50 PM, Park-Su, Sahra (Federal) <​​​​​​​​​​​​​​​​> wrote:

Ron/Enrique/Christa,

Thank you again for you all your assistance.  Below is a draft response worked with Deputy GC Walsh.  Please let us know if you have any questions, comments, or concerns.  Have a great weekend.

Sahra

**What was the process that was used in the past to get questions added to the decennial Census or do we have something similar where a precedent was established?**

Sahra Park-Su

Senior Policy Advisor

Office of Policy and Strategic Planning

U.S. Department of Commerce

