```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                                                           :
STATE OF NEW YORK, et al.,                                 :
                                                           :
                        Plaintiffs,                        :
                                                           :       18-CV-2921 (JMF)
         -v-                                               :
                                                           :       MEMORANDUM
UNITED STATES DEPARTMENT OF COMMERCE, et al.,              :       OPINION AND ORDER
                                                           :
                        Defendants.                        :
                                                           :
-------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

On September 20, 2018, Plaintiffs filed a letter motion seeking a discovery conference or an order compelling production of certain Department of Justice ("DOJ") documents withheld on the basis of the deliberative process privilege. (Docket No. 343 ("Pls.' Letter")). After Defendants responded (Docket No. 348 ("Defs.' Letter")), the Court directed them to submit the remaining twenty-five disputed documents for in camera review. (Docket No. 357). Upon review of the documents, Plaintiffs' motion is GRANTED in part and DENIED in part.

The deliberative process privilege is designed to protect the "process by which governmental decisions and policies are formulated." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation marks omitted). It does so "by preserving and encouraging candid discussion between officials." *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). Pursuant to the privilege, the Government may withhold "an inter- or intra-agency document . . . if it is: (1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *Nat'l Council of La Raza*, 411 F.3d at 356 (alterations and internal quotations marks omitted). "[W]hile the agency need not show *ex*

*post* that a decision was made" based on the document, "it must be able to demonstrate that, *ex ante,* the document for which [the] privilege is claimed related to a specific decision facing the agency."  *Tigue*, 312 F.3d at 80.

As a threshold matter, the parties dispute whether the privilege can apply to agency communications about "how to explain, interpret, or 'message' an already-decided policy." (Pls.' Letter 2).  Plaintiffs argue that such communications are necessarily *post*-decisional, and they certainly are with respect to the "already-decided policy." (*Id.*).  Defendants wisely concede that point, but contend that such communications are "pre-decisional" with respect to a different decision — namely the decision about what to say to the public, the press, or Congress. (*See* Defs.' Letter 2).  The First and D.C. Circuits have held that deliberations about such "messaging" decisions can be protected by the deliberative process privilege.  *See, e.g.*, *N.H. Right to Life v. U.S. Dep't of Health & Human Servs.*, 778 F.3d 43, 54 (1st Cir. 2015); *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196-97 (D.C. Cir. 1991).  The Second Circuit has not squarely addressed the issue, and district courts within the Circuit have reached different conclusions.  *Compare, e.g.*, *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011), *amended on reconsideration* (Aug. 8, 2011) ("'[M]essaging' is no more than an explanation of an existing policy, which is not protected by the deliberative process privilege."), *and Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 543-45 (S.D.N.Y. 2010) (explaining that "opinions and recommendations regarding press inquiries do not qualify as deliberations about substantive policy decisions" and collecting additional cases from this District), *with Seife v. U.S. Dep't of*

*State*, 298 F. Supp. 3d 592, 616-17 (S.D.N.Y. 2018) (holding that "decisions regarding press strategy may be exempt from disclosure under the deliberative process privilege").[1]

Upon review of the relevant case law, the Court agrees with the Government that "messaging" communications *can* be protected by the deliberative process privilege. After all, an agency's decisions about what and how to communicate with Congress, the press, or the public can, in and of themselves, involve substantive policymaking (or at least substantive policy refinement) of the type that Congress has delegated to the agency, and the purposes of the privilege are served by protecting the deliberations leading to those decisions. By way of example, deliberations within the Federal Reserve about the timing and content of a policy announcement, although post-decisional with respect to the particular policy to be announced, also relate to a future decision (what to say and when to say it) that implicates questions within the scope of the agency's delegated policymaking authority — and are therefore the type of deliberations the privilege is designed to protect.[2]

That said, not all "messaging" decisions are so intimately bound up with an agency's central policy mission. Thus, the Government goes too far in suggesting that *all* deliberations over what to say are protected by the privilege. Indeed, taken to its logical conclusion, that suggestion would render the privilege's restriction to "predecisional" deliberations a nullity because, given that agencies are in constant communication with the public, the press, and Congress, *all* "messaging" deliberations would be "predecisional" with respect to *some* future

---

[1] The *Seife* Court reached that conclusion in part based on its view that the Second Circuit had "previewed its position" on the issue in *ACLU v. Dep't of Justice*, 844 F.3d 126, 133 (2d Cir. 2016). The Court declines to read quite as much into *ACLU* given the Second Circuit's lack of any real analysis of the issue.

[2] Additionally, even (otherwise unprotected) simple "messaging" communications "are properly withheld if their release would reveal the status of internal deliberations" about other, substantive decisions falling within the agency's statutory ambit. *Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 545 (S.D.N.Y. 2010).

messaging "decision" (whether or not the agency ultimately *made* such a decision, as it need not to trigger the privilege, *Tigue*, 312 F.3d at 80). Instead, the privilege protects only those "messaging" communications that are both "predecisional" and "deliberative" with respect to a "messaging" decision of the type that Congress has actually (if perhaps only impliedly) asked the agency to make. Put differently, where "messaging" communications amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with its prior decision, protection would do little to advance the purposes underlying the privilege. "[T]he key inquiry," therefore, is whether the disputed materials "reflect deliberations about what 'message' should be delivered to the public about an *already-decided* policy decision, or whether the communications are of a nature that they would reveal the deliberative process underlying a *not-yet-finalized* policy decision," including the very decision about what "message" to deliver — provided that the particular "messaging" decision is among those that Congress has asked the agency to make. *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 164 (S.D.N.Y. 2017); *see Fox News Network*, 739 F. Supp. 2d at 545 (concluding that "messaging" documents "are properly withheld if their release would reveal the status of internal deliberations on substantive policy matters").

Even if that inquiry favors withholding the disputed materials, however, that does not necessarily end the matter, because a document protected by the deliberative process privilege may still be subject to disclosure. Most relevant here, the privilege may be overcome in certain circumstances where "the litigation involves a question concerning the intent of the governmental decisionmakers or the decisionmaking process itself." *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011) (internal quotation marks omitted). To determine whether that exception applies, a court must weigh "(1) the relevance of the evidence the agency seeks to

protect; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the agency in the litigation; and (5) the possibility that disclosure will inhibit future candid debate among agency decision-makers." *Id.*

Applying the foregoing standards to the remaining documents in dispute, the Court concludes that the drafts of the "Gary Letter" (Bates Nos. 2722, 2736, 2739, and 2786), the e-mail discussing a pending FOIA request (Bates No. 14683), and an e-mail concerning a response to a Commissioner of the U.S. Civil Rights Commission (Bates No. 14687) are protected by the deliberative process privilege and, given DOJ's subordinate role in Secretary Ross's decision to add the citizenship question, need not be disclosed.[3] By contrast, the Court concludes that the briefing paper for the Attorney General (Bates No. 2967), the draft responses to Congress and its members (Bates Nos. 2951, 3365, 4457, 13556, and 14772), the draft responses to the *Washington Post* (Bates Nos. 3094, 3098, 3101, 3103, 3105, 3367, 3371, 3374, and 3376), and the draft talking points (Bates Nos. 2924, 2925, 2926, and 2927) are not protected by the deliberative process privilege because they merely "reflect deliberations about what 'message' should be delivered to the public about an *already-decided* policy decision" and, thus, their disclosure would not "reveal the deliberative process underlying a *not-yet-finalized* policy decision." *Citizens Union*, 269 F. Supp. 3d at 164.[4] There is no basis to conclude that DOJ was exercising its essential policymaking role in those routine messaging decisions, or that they are of the type that Congress has (even impliedly) authorized DOJ to make in the exercise of its

---

[3] Additionally, the document bearing Bates No. 3357 need not be disclosed because it contains no responsive material.

[4] If the foregoing documents were protected by the deliberative process privilege, the Court would still order disclosure of the briefing paper for the Attorney General, the *Washington Post* documents, and two of the documents containing draft responses to Congress and its members (namely, Bates Nos. 4457 and 13556) based on a balancing of the five factors referenced above.

statutory discretion.  On top of that, the briefing paper for the Attorney General is not protected because it is almost entirely factual in nature, and the deliberative process privilege "does not . . . cover purely factual material."  *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks omitted).

For the foregoing reasons, Plaintiffs' letter motion is GRANTED in part and DENIED in part.  In particular, **no later than October 9, 2018 at 12:00 p.m.**, Defendants shall produce to Plaintiffs the documents bearing Bates Nos. 2924, 2925, 2926, 2927, 2951, 2967, 3094, 3098, 3101, 3103, 3105, 3365, 3367, 3371, 3374, 3376, 4457, 13556, and 14772.

The Clerk of Court is directed to file and maintain the remaining documents under seal, and to terminate Docket No. 343.

SO ORDERED.

Dated: October 5, 2018
New York, New York

JESSE M. FURMAN
United States District Judge