October 19, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

   RE:  Plaintiffs' letter-motion for partial exclusion of opinion testimony by Dr. John
        Abowd in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-
        2921 (JMF).

Dear Judge Furman,

   Pursuant to Rule 3(I) of this Court's Individual Rules and Practices, Fed. R. Evid. 702, 703, and 705, and Fed. R. Civ. P. 26 and 37, Plaintiffs move to exclude in part the expected trial testimony of Defendants' expert witness, Dr. John Abowd.[1]  Plaintiffs do not seek to exclude the bulk of Dr. Abowd's opinion testimony.  However, Dr. Abowd should be barred from testifying to (1) opinions not contained in his September 21 expert disclosure, and (2) opinions supported by underlying facts or data that have never been disclosed or produced.  Defendants' nondisclosure in the discrete areas identified below has prejudiced Plaintiffs' ability to examine the bases for, and respond to, Dr. Abowd's potential testimony.

   On September 21, Defendants produced as their sole expert disclosure in this matter a 24-page report by Dr. Abowd, the Census Bureau's Chief Scientist.  On September 22, Plaintiffs advised that the expert disclosure failed to comply with Rule 26 because, *inter alia*, it failed to disclose facts or analysis underlying many of Dr. Abowd's opinions.  Ex. 1.  After Plaintiffs requested immediate production of all documents considered by Dr. Abowd in developing his opinions, Ex. 2, Defendants agreed to "produce the material relied upon or considered by Dr. Abowd in preparing his expert report."  Ex. 3.  On October 5, Defendants produced ten documents and represented that they were the "[d]ocuments considered by Dr. Abowd."  Ex. 4.[2]

   Plaintiffs deposed Dr. Abowd regarding his expert disclosure on October 12.  During that deposition, Dr. Abowd expressed extensive opinions that were not disclosed in his September 21 report, and testified that in forming those opinions he considered materials and evidence (including internal Census Bureau data and analysis) that were not among the ten documents produced the week before and have not otherwise been produced in discovery.

   *1. Dr. Abowd should be precluded from testifying about opinions not disclosed in his September 21 report.*  Dr. Abowd should be barred from testifying at trial regarding his opinions

---

[1] Per Rule 3(A) and Rule 3(I) (Motions to Exclude Testimony of Experts) of this Court's Individual Rules, Plaintiffs are filing this motion by the October 19 deadline for dispositive motions (*see* Docket No. 363).  If the Court prefers to treat this motion as a motion *in limine* under Rule 5(B)(i) of the Court's Individual Rules, Plaintiffs are prepared to refile this request consistent with Rule 5(B)(i) and Rule 3(D) by the October 26 deadline for motions *in limine*.

[2] On October 1, Defendants also produced a revised version of Dr. Abowd's report indicating that it reflected the "materials relied upon by Dr. Abowd in producing his expert report."  Defendants clawed back that report on October 5 on a claim of inadvertent disclosure and work-product privilege.  Ex. 4.  As required by Docket No. 296, Plaintiffs have treated this report in accordance with Rule 26(b)(5)(B).

as to Plaintiffs' experts where those opinions were not disclosed in his September 21 report. Rule 26 requires that an expert must disclose "a complete statement of all opinions the witness will express."  Fed. R. Civ. P. 26(a)(2)(B)(i).  Rule 26(a)(2)(C), under which Defendants offer Dr. Abowd's testimony, similarly requires experts to disclose the "opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C)(ii).

Dr. Abowd's report does not specifically discuss any of plaintiffs' ten experts. Notwithstanding this omission, during his deposition, Dr. Abowd testified that, if asked, he intended to testify about criticisms of five of plaintiffs' experts: Hermann Habermann (3 points of disagreement), John Thompson (4 points), Joseph Salvo (4 points), William O'Hare (15 points), and Matthew Barreto (35 points).  While several of these criticisms are non-substantive or consistent with Dr. Abowd's disclosed analysis of the Census Bureau's "non-response follow up" measures,[3] his material criticisms were not disclosed in his September 21 report or in any supplemental disclosure.

Rule 37(c)(1) provides that if a party fails to disclose information required by Rule 26(a) or (e), "the party is not allowed to use that information" at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  There is no reasonable argument that Defendants' failure to disclose these opinions was substantially justified; Dr. Abowd testified that this was deliberate decision .  Ex. 5 (Abowd 10/12 Tr. at 96) ("I didn't specifically discuss anything about Dr. Barreto's report when I wrote . . . , I hadn't even read it. . . . I didn't feel I needed to comment specifically on his report.").  And the omission of these opinions was not harmless: Plaintiffs had to spend almost half of Dr. Abowd's expert deposition eliciting his views; had no notice to be able to prepare an examination to test those views; and had no opportunity to seek remedial relief given the calendar in this case.[4]  Under these circumstances, Plaintiffs will be prejudiced if Dr. Abowd's undisclosed opinions critiquing Plaintiffs' experts are permitted at trial, and exclusion of these opinions from Dr. Abowd's testimony is warranted under Rule 37(c)(1).  *See, e.g.*, *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001 (NRB), 2004 WL 345551, at *9-*13 (S.D.N.Y. Feb. 23, 2004) (excluding expert testimony regarding previously undisclosed opinions); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06-cv-1352 (JBA), 2009 WL 5873112, *3 (D. Conn. 2009) ("Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness.") (citation omitted).

In addition, Dr. Abowd should be precluded from offering his undisclosed opinion testimony regarding Dr. Barreto's survey methodology.  The Federal Rules of Evidence permit expert testimony where it is "based on sufficient facts or data."  Fed. R. Evid. 702(b).  But Dr. Abowd's deposition testimony about Dr. Barreto's methodology was made without considering the underlying data and materials that Dr. Barreto produced with his report.  Ex. 5 (Abowd 10/12

[3] "Non-response follow up" ("NRFU") refers to the operations the Census Bureau conducts for individuals who do not voluntarily "self-respond" to the census questionnaire.  A central point of disagreement between Dr. Abowd and Plaintiffs' experts is whether the mechanisms that the Census Bureau employs in its effort to obtain a complete count of non-responsive households – including NRFU, the use of administrative records, and imputation – will mitigate or instead exacerbate differential undercounts in a manner that will harm the Plaintiffs.

[4] Defendants agreed to make Dr. Abowd available for his expert deposition on only a single day – the last day of discovery on October 12 – despite Plaintiffs' request that he be made available in September.  *See* Ex. 1.

Tr. at 68-69).  And Dr. Abowd's failure to consider Dr. Barreto's underlying materials resulted in an incorrect understanding of Dr. Barreto's analysis; for example, Dr. Abowd questioned the sufficiency of Dr. Barreto's sample because he mistakenly believed the number of interviews *completed* (over six thousand) was instead the number *attempted*.  Ex. 5 (Abowd 10/12 Tr. at 68-69).  He further mistakenly believed that Dr. Barreto failed to provide margins of error for the data discussed in his report.  Ex. 5 (Abowd 10/12 Tr. at 69).  Criticizing another expert without having reviewed that expert's supporting materials is not a "reliable principle or method" under Fed. R. Evid. 702(c).

 *2. Dr. Abowd should be precluded from offering opinion testimony where the underlying facts or data have not been disclosed.*  Dr. Abowd's testimony regarding three discrete additional issues should be barred for failure to timely or adequately disclose underlying facts or data he considered in forming his opinions.  Defendants initially took the position that "Plaintiffs are not entitled to the materials relied upon by Dr. Abowd because his report was designated under Rule 26(a)(2)(C), not (B)."  Ex. 6.  Defendants subsequently agreed (after Plaintiffs indicated they were prepared to compel disclosure) to provide the "material relied upon or considered by" Dr. Abowd.  Ex. 3.  Courts have routinely compelled such disclosure from Rule 26(a)(2)(C) witnesses because without such disclosure the opposing side "may be unable to test sufficiently the expert's opinion during deposition and suffer unfairly from this handicap at trial."  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 21-mc-102, 2014 WL 5757713, at *5 (S.D.N.Y. Nov. 5, 2014); *Robinson v. Suffolk Cty. Police Dep't*, No. 08-cv-1874, 2011 WL 4916709, at *1 (E.D.N.Y. Oct. 17, 2011).

 *a. Imputation:*  Dr. Abowd's report discusses that at the end of NRFU operations, if the Census Bureau is not able to collect information on an occupied address, it will "impute" the count of the number of people at the address.  Dr. Abowd's report states that "the Census Bureau is not aware of any credible quantitative data suggesting that imputation in the census leads to a greater net undercount or differential net undercount in comparison to self-response or in-person interviews."  Although Plaintiffs propounded discovery seeking all analyses and data regarding undercounted and hard-to-count populations, Defendants did not produce any such materials in discovery.  In conjunction with their October 5 production of materials considered by Dr. Abowd, Defendants produced a single, heavily redacted report evaluating use of imputation during the 2010 census, referred to as "Memo J-12."  On its face, Memo J-12 does not evaluate whether the imputation process mitigates or exacerbates undercount.  At deposition, Dr. Abowd acknowledged that the Census Bureau had done further evaluation of imputation, and that Memo J-12 was one of a series of analyses addressing that topic.  Ex. 5 (Abowd 10/12 Tr. at 269-270, 274-275, 277-283).  Dr. Abowd conceded at deposition that he had reviewed this series of memos, and acknowledged that in order to opine whether the "Census Bureau is . . . aware" whether the imputation process exacerbates or mitigates bias, he had to have considered these memos.

 Defendants have generally asserted that the imputation analysis is confidential and cannot be disclosed pursuant to Title 13 of the U.S. Code.  But having invoked Title 13 as a shield to bar production of imputation materials in this case, Defendants cannot selectively use the imputation analysis as a sword to have Dr. Abowd testify that the Census Bureau's imputation methodology may cure any remaining undercount at the end of the NRFU process.  *See, e.g.*, *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008).  Because Plaintiffs' experts have not been

provided access to the data and analysis the Census Bureau has conducted on imputation, Dr. Abowd should be barred from expressing an opinion regarding the Census Bureau's imputation methodology.

b. *Analysis of the 2018 End-to-End Test:* At several points in his report and during his deposition testimony, Dr. Abowd opined that the Census Bureau's ability to run a successful NRFU operation was demonstrated by the 2018 End-to-End test in Providence, Rhode Island. *See, e.g.*, Ex. 5 (Abowd Tr. at 89-91). Although Plaintiffs requested discovery concerning all End-to-End testing, Defendants produced nothing in discovery, and the materials disclosed with Dr. Abowd's expert report contains nothing on the End-to-End test. From both his report and his testimony, it is clear that Dr. Abowd has access to substantial data and analysis conducted by the Census Bureau concerning the End-to-End test. Ex. 5 (Abowd 10/12 Tr. at 77-78, 89-91, 122, 307-08). Because the Census Bureau's analysis and data regarding the End-to-End test have not been produced, Dr. Abowd should be barred from providing opinions about or based on the 2018 End-to-End test.

c. *1970 Hispanic Origin Question:* Dr. Abowd's report cites the adoption of a question about Hispanic origin on the 1970 long form census as an example why testing was not required. Plaintiffs specifically requested this backup information, Ex. 2 (attach. A), but nothing was produced in discovery. Dr. Abowd's report does not cite any source for this information, and he had considerable difficulty identifying the source during his deposition. Ex. 5 (Abowd 10/12 Tr. at 143-47). Because Dr. Abowd's report failed to adequately disclose the basis for this analysis, and because Plaintiffs' ability to examine Dr. Abowd about this analysis was therefore hampered, he should be barred from providing opinions about or based on the 1970 example.

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo (MC-1746)
  *Executive Deputy Attorney General*
Elena Goldstein (EG-8586), *Senior Trial Counsel*
Ajay Saini (AS-7014), *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921

4

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION


By:  _/s/ John A. Freedman_____ _

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon⁺**
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org


Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com


+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

Exhibit 1

| | |
|---|---|
| **From:** | zzz.External.DHo@aclu.org |
| **Sent:** | Saturday, September 22, 2018 10:37 PM |
| **To:** | Bailey, Kate (CIV); Freedman, John A.; Federighi, Carol (CIV); Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Ehrlich, Stephen (CIV); Wells, Carlotta (CIV) |
| **Cc:** | zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay; Goldstein, Elena |
| **Subject:** | Re: [Not Virus Scanned] [Not Virus Scanned] State of New York v. Department of Commerce, S.D.N.Y 18-CV-2921, outstanding request for focus group materials |

Counsel,

Thank you for the clarification.  We look forward to receiving witness availability for the conclusion of the 30(b)(6) deposition.

Separately, we note that we previously requested that, at the time you serve your expert disclosures, you also provide us with dates of your experts' availability.  Now that you have designated Dr. Abowd as your sole expert, please send us dates for his availability for an expert deposition asap.  Given our expert rebuttal deadline of October 1, we request that you provide dates for this coming week, September 26-28.  If you do not make him available on one of those dates, it will prejudice our ability to meet the expert rebuttal deadline.

Relatedly, we note that Dr. Abowd's report is not in compliance with Rule 26(a)(2)(B) in that it fails, among other things, to identify the information required under 26(a)(2)(B)(iii), (v), or (vi).  If this information is in the report, please identify where it is to be found.  If it is not in his report, please explain why this information has not been disclosed

Regards,

Dale Ho
Director, Voting Rights Project
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org
www.aclu.org

**From:** Bailey, Kate (CIV) <Kate.Bailey@usdoj.gov>
**Sent:** Saturday, September 22, 2018 11:05:56 AM
**To:** Dale Ho; Freedman, John A.; Federighi, Carol (CIV); Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Ehrlich, Stephen (CIV); Wells, Carlotta (CIV)
**Cc:** Sarah Brannon; Perry Grossman; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay; Goldstein, Elena
**Subject:** Re: [Not Virus Scanned] [Not Virus Scanned] State of New York v. Department of Commerce, S.D.N.Y 18-CV-2921, outstanding request for focus group materials

Counsel,

We will provide availability for Dr. Abowd shortly. But my email below states clearly (and in boldface type), that we will make Dr. Abowd available for two hours total, not two hours plus the 27 minutes Plaintiffs chose to reserve after Defendants agreed to leave the deposition open. Dr. Abowd will be made available as a 30(b)(6) witness for two hours--total.

Kate Bailey


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Dale Ho <dho@aclu.org>
Date: 9/21/18 8:49 PM (GMT-05:00)
To: "Bailey, Kate (CIV)" <katbaile@CIV.USDOJ.GOV>, "Freedman, John A." <John.Freedman@arnoldporter.com>, "Federighi, Carol (CIV)" <CFederig@CIV.USDOJ.GOV>, "Coyle, Garrett (CIV)" <gcoyle@CIV.USDOJ.GOV>, "Kopplin, Rebecca M. (CIV)" <rkopplin@CIV.USDOJ.GOV>, "Halainen, Daniel J. (CIV)" <dhalaine@CIV.USDOJ.GOV>, "Tomlinson, Martin M. (CIV)" <mtomlins@CIV.USDOJ.GOV>, "Ehrlich, Stephen (CIV)" <sehrlich@CIV.USDOJ.GOV>, "Wells, Carlotta (CIV)" <CWells@CIV.USDOJ.GOV>
Cc: Sarah Brannon <sbrannon@aclu.org>, Perry Grossman <PGrossman@nyclu.org>, "Colangelo, Matthew" <Matthew.Colangelo@ag.ny.gov>, "Bauer, Andrew" <Andrew.Bauer@arnoldporter.com>, "Gersch, David P." <David.Gersch@arnoldporter.com>, "Grossi, Peter T." <Peter.Grossi@arnoldporter.com>, "Weiner, David J." <David.Weiner@arnoldporter.com>, "Young, Dylan Scot" <Dylan.Young@arnoldporter.com>, "Kelly, Caroline" <Caroline.Kelly@arnoldporter.com>, "Saini, Ajay" <Ajay.Saini@ag.ny.gov>, "Goldstein, Elena" <Elena.Goldstein@ag.ny.gov>
Subject: Re: [Not Virus Scanned] [Not Virus Scanned] State of New York v. Department of Commerce, S.D.N.Y 18-CV-2921, outstanding request for focus group materials

Counsel,

I'm writing back regarding Dr. Abowd's 30(b)(6) deposition; we will be following up separately on the other issues.

As you may recall,  the parties agreed on the record that Dr. Abowd's 30(b)(6) deposition remained open - and thus, this is not his "third" deposition, but rather merely a continuation of his first 30(b)(6) deposition.  In any event, thank you for agreeing that the continuing portion of the 30(b)(6) deposition will not be limited to a single document.

As to the remaining length of time in his 30(b)(6) deposition, as previously noted, we disagree that the time you have offered is sufficient to question Dr. Abowd adequately about a 77-page technical document, as well as approximately 20 other documents that were available a week prior to his deposition but not produced until after close of business on the eve of his deposition, and other documents that have been produced since his deposition.

Nevertheless, in the interests of resolving this dispute, we agree to your limit of 2 additional hours beyond the ordinary 7-hour limit on depositions for the balance of the 30(b)(6) deposition.

Please confirm dates for Dr. Abowd's availability to complete his 30(b)(6) as soon as possible.

Regards,

Dale Ho
Director, Voting Rights Project
American Civil Liberties Union
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2693
dale.ho@aclu.org
www.aclu.org

---

**From:** Bailey, Kate (CIV) <Kate.Bailey@usdoj.gov>
**Sent:** Thursday, September 20, 2018 8:30:25 PM
**To:** Freedman, John A.; Dale Ho; Federighi, Carol (CIV); Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Ehrlich, Stephen (CIV); Wells, Carlotta (CIV)
**Cc:** Sarah Brannon; Perry Grossman; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay; Goldstein, Elena
**Subject:** [Not Virus Scanned] [Not Virus Scanned] State of New York v. Department of Commerce, S.D.N.Y 18-CV-2921, outstanding request for focus group materials

This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.
This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.

Counsel,


We will obtain and provide you dates for Dr. Abowd's third deposition (second deposition in his capacity as a 30(b)(6) witness) as soon as possible. Regarding your request for additional time to depose him on documents other than the white paper, we repeatedly made clear before providing dates for various witnesses (not only Dr. Abowd) that, due to the extremely broad scope of Plaintiffs' document requests, it would not be possible for Defendants to complete production of all documents potentially relevant to these depositions in the timeframe in which Plaintiffs wished to take those depositions. Because of this, we specifically advised that, should the depositions proceed during the timeframe Plaintiffs requested, we would not make witnesses available multiple times simply because Plaintiffs wished to question individuals about documents that later became available.

Although we maintain this position, in an effort to avoid further disputes, **we agree to make Dr. Abowd available for an additional two hours total,** and that the scope of that deposition may relate to other documents recently produced, rather than only the white paper itself**.**

We also have several updates regarding your request for documents related to focus group testing:

- Attached to this email is Part One of Six sets of documents we are producing tonight. Most of these materials were provided to you last week, but now includes Bates stamps. We have located and included two additional emails that were not part of last week's materials.
- Below is a list of focus-group-related materials that were submitted to the DRB for Title XIII review and clearance this Monday, September 17th. Because no DAO has DRB bypass authority for this type of data, the DRB itself will have to clear each document, and they estimate completing this review between Sept 26th – October 1st. We will produce cleared material as promptly as possible.
  - The "audience summaries" listed below each summarize transcripts roughly 1100 pages in length, which would not be producible post-DRB in any useable form. I have been advised that the summaries are an attempt by the DRB and census to release as much data as possible. The Census Bureau has an approved protocol for disclosure avoidance review of summaries of qualitative research produced from activities like focus groups. It does not have, and does not anticipate developing, a protocol for disclosure avoidance review of full transcripts. Full transcripts thus have the same data protection as other micro-data products for which the Census Bureau does not have an approved disclosure avoidance protocol. Review of these summaries will be finished by October 1, if not earlier.
  - Raw data from the focus groups is Title XIII-protected material not subject to release but there is, however, a Public Use Microsample file that is created from the Focus Group Surveys, which will be produced.
    - There is a DRB-approved public-use micro-data file from the 2018 CBAMS survey. Census did not anticipate releasing this file for public use prior to the 2020 Census; therefore, there is only limited documentation which has been cleared by the DRB. We are still waiting for a time estimate on this material.
- We have thoroughly searched for, and consider this a complete response to, your request for focus-group testing material. Collection and production of these materials, including DRB disclosure-avoidance review, takes substantial time and must be completed by individuals with significant responsibilities unrelated to this litigation. Specifically, we will not be searching for, or producing, emails relating to this testing, as such material would be overly burdensome and disproportionate with the needs of this case, consistent with our earlier responses and objections to your RFPs.

Materials undergoing review:

1. **After Action Reports**

   a. T13_2020 CBAMS Focus Group After Action Report - Cayey Spanish Puerto Rico 4-19
   b. T13_2020 CBAMS Focus Group After Action Report - DET BAA April 12 V.20
   c. T13_2020 CBAMS Focus Group After Action Report - DET MENA April 11_v2.0
   d. T13_2020 CBAMS Focus Group After Action Report - Honolulu NHPI April 9

e.  T13_2020 CBAMS Focus Group After Action Report - LA Chinese  <u>April 3</u>
f.  T13_2020 CBAMS Focus Group After Action Report - LA MENA  <u>April 4</u>
g.  T13_2020 CBAMS Focus Group After Action Report - LA NHPI  <u>April 5</u>
h.  T13_2020 CBAMS Focus Group After Action Report - LA Spanish  <u>April 3</u>
i.  T13_2020 CBAMS Focus Group After Action Report - Montgomery BAA  <u>April 16</u>
j.  T13_2020 CBAMS Focus Group After Action Report - NYC Spanish 3.27.18
k.  T13_2020 CBAMS Focus Group After Action Report - San Juan PR - Spanish -  <u>April 18</u>
l.  T13_2020 CBAMS Focus Group After Action Report - Vietnamese 3.19.18
m.  T13_2020 CBAMS Focus Group After Action Report_ABQ AIAN  <u>March 14</u>
n.  T13_2020 CBAMS Focus Group After Action Report_ABQ Low Internet Proficiency  <u>March 15</u>
o.  T13_2020 CBAMS Focus Group After Action Report_ANC AIAN  <u>March 28</u>
p.  T13_2020 CBAMS Focus Group After Action Report_Bristol_Rural_March 22
q.  T13_2020 CBAMS Focus Group After Action Report_CHI Young Mobile April 10_v2.0
r.  T13_2020 CBAMS Focus Group After Action Report_HOU Spanish  <u>April 3</u>
s.  T13_2020 CBAMS Focus Group After Action Report_HOU Vietnamese  <u>April 4</u>
t.  T13_2020 CBAMS Focus Group After Action Report_MEM Low Internet Proficiency  <u>March 20</u>
u.  T13_2020 CBAMS Focus Group After Action Report_NYC Chinese  <u>March 20</u>
v.  T13_2020 CBAMS Focus Group After Action Report_SD AIAN  <u>March 29</u>

## 2.  Audience Summaries

a.  T13_2020 CBAMS Focus Group Audience Summary – AIAN
b.  T13_2020 CBAMS Focus Group Audience Summary – BAA
c.  T13_2020 CBAMS Focus Group Audience Summary – Chinese
d.  T13_2020 CBAMS Focus Group Audience Summary - Low Internet Proficiency
e.  T13_2020 CBAMS Focus Group Audience Summary – MENA
f.  T13_2020 CBAMS Focus Group Audience Summary – NHPI
g.  T13_2020 CBAMS Focus Group Audience Summary – Rural
h.  T13_2020 CBAMS Focus Group Audience Summary - Spanish PR
i.  T13_2020 CBAMS Focus Group Audience Summary - Spanish US Mainland
j.  T13_2020 CBAMS Focus Group Audience Summary – Vietnamese
k.  T13_2020 CBAMS Focus Group Audience Summary - Young & Mobile

Thank you,

**Kate Bailey**

Trial Attorney

United States Department of Justice

Civil Division – Federal Programs Branch

20 Massachusetts Avenue, NW

Room 7214

Washington, D.C. 20530

202.514.9239 | kate.bailey@usdoj.gov

# Exhibit 2

September 25, 2018

**Via Electronic Mail**

Kate Bailey
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7214
Washington, D.C. 20530

      Re:    Outstanding discovery matters that require resolution in *State of New York, et al.*
              *v. United States Department of Commerce, et al.*, 18-cv-2921 (JMF).

Dear Ms. Bailey:

Plaintiffs write to request that Defendants produce the materials identified in Attachment A immediately. Defendants' contention that Dr. Abowd's report is "not deficient," *see* email from Kate Bailey dated 9/24/18, is belied by the facts of this case and the law. Plaintiffs are entitled to the materials set forth in Attachment A pursuant to the Federal Rules; moreover, these materials are responsive to Plaintiffs' existing document requests.

                      Sincerely,

                      /s/Elena S. Goldstein
                      Elena S. Goldstein, Senior Trial Counsel
                      Civil Rights Bureau
                      Office of the New York State
                        Attorney General
                      28 Liberty, 20th Floor
                      New York, New York 10005
                      Elena.Goldstein@ag.ny.gov
                      Tel. (212) 416-6201
                      Fax (212) 416-6030

                      Attorney for the *State of New York* Plaintiffs

      ARNOLD & PORTER KAYE SCHOLER LLP
      AMERICAN CIVIL LIBERTIES UNION

      By: */s/ Dale Ho*

Dale Ho                           Andrew Bauer

American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Attorneys for the *NYIC* Plaintiffs

**ATTACHMENT A**

1. A list identifying all documents and materials, including but not limited to any data, you relied on, used, referenced, consulted or considered in developing your opinions in this case.
   a. To the extent the documents and materials have already been produced in response to Plaintiffs' discovery requests in this matter, the list should identify the Bates range for each item.
   b. To the extent the documents and materials have not already been produced in response to Plaintiffs' discovery requests in this matter, these materials should be produced.
2. All documents analyzing the potential or actual effects of the 1990 census race question;
3. All documents analyzing the potential or actual effects of the addition of the Hispanic origin question to the 1970 census; and
4. All documents analyzing the potential or actual effects of adding a question to collect Social Security Numbers from census respondents.

Exhibit 3

| | |
|---|---|
| **From:** | Bailey, Kate (CIV) <Kate.Bailey@usdoj.gov> |
| **Sent:** | Thursday, September 27, 2018 4:45 PM |
| **To:** | Freedman, John A.; Goldstein, Elena; zzz.External.DHo@aclu.org; Federighi, Carol (CIV); Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Ehrlich, Stephen (CIV); Wells, Carlotta (CIV) |
| **Cc:** | zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay |
| **Subject:** | RE: NY v. Commerce, 18-cv-2921: outstanding discovery issues |

Counsel,

Thank you for promptly considering our proposal. We appreciate your agreement to our first three proposals below, which will allow us to more quickly process and produce the remaining documents responsive to your fifth motion to compel.

Regarding your proposal with respect to the new custodians:

- As for your requests (ii) and (iii) below, to simply search for "Kobach" and "Gore" produces a very large number of documents which appear to be nonresponsive, and we do not think we would be able to review all of them for production by the end of discovery. However, if we modify the search to look for "Kobach" and "Gore" within 50 of the relevance terms ("census" or "apportionment" or "enumerate!" or "districting" or "redistricting" or "counting") within those new custodians, this resulted in a reasonable amount of additional documents that we believe we can process, review, and produce along with the documents identified by the narrowing terms we sent yesterday. So, if agreeable, we will include those in our review.
- As for your request (i), the search as you proposed produces a very large volume of documents that more than doubles the volume for review in the next two weeks. We tried running proximity limits of "/50" and even "/20," but the total volume did not change by more than a couple of hundred documents. This is beyond our capacity to review. We also believe the vast majority of these documents would duplicate material already produced and thus constitutes a burden on  attorney and technological resources out of proportion to the claims in the case.  Because your proposed search (i) remains overly broad and we do not see a feasible way of culling down this volume to a reasonable, proportional number or ensuring that they do not substantially duplicate material already produced, we therefore propose to move forward with (ii) and (iii), but not (i).

In response to your inquiry of earlier today regarding the subpoenas we issued, we do not intend to depose Dr. Handley. Finally, in an effort to avoid further disputes, we have determined to produce the material relied upon or considered by Dr. Abowd in preparing his expert report, as you have requested. We will work to produce these materials as quickly as possible.

Thank you again for your consideration and flexibility.

**Kate Bailey**
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7214

Washington, D.C. 20530
202.514.9239 | kate.bailey@usdoj.gov

---

**From:** Freedman, John A. [mailto:John.Freedman@arnoldporter.com]
**Sent:** Thursday, September 27, 2018 1:43 PM
**To:** Bailey, Kate (CIV) <katbaile@CIV.USDOJ.GOV>; Goldstein, Elena <Elena.Goldstein@ag.ny.gov>; DHo@aclu.org; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Kopplin, Rebecca M. (CIV) <rkopplin@CIV.USDOJ.GOV>; Halainen, Daniel J. (CIV) <dhalaine@CIV.USDOJ.GOV>; Tomlinson, Martin M. (CIV) <mtomlins@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>
**Cc:** SBrannon@aclu.org; PGrossman@nyclu.org; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; Bauer, Andrew <Andrew.Bauer@arnoldporter.com>; Gersch, David P. <David.Gersch@arnoldporter.com>; Grossi, Peter T. <Peter.Grossi@arnoldporter.com>; Weiner, David J. <David.Weiner@arnoldporter.com>; Young, Dylan Scot <Dylan.Young@arnoldporter.com>; Kelly, Caroline <Caroline.Kelly@arnoldporter.com>; Saini, Ajay <Ajay.Saini@ag.ny.gov>
**Subject:** RE: NY v. Commerce, 18-cv-2921: outstanding discovery issues

Counsel --

A few things:

1.  With regard to your proposed search terms, the first three bullets are fine.  With regard to the last bullet regarding the new custodians, while it is fine to concentrate on the new terms, from the original, the following should be run: (i) term "citizenship" within proximity of "question," "topic" or "Census," (ii) Kobach, and (iii) Gore.

2.  We are reviewing the draft protective order and will get back to you tomorrow.

Thanks & best regards,

John

---

**From:** Bailey, Kate (CIV) [mailto:Kate.Bailey@usdoj.gov]
**Sent:** Wednesday, September 26, 2018 9:57 PM
**To:** Goldstein, Elena; zzz.External.DHo@aclu.org; Freedman, John A.; Federighi, Carol (CIV) Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Ehrlich, Stephen (CIV); Wells, Carlotta (CIV)
**Cc:** zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay
**Subject:** RE: NY v. Commerce, 18-cv-2921: outstanding discovery issues

Counsel,

As we discussed on this afternoon's meet and confer, the previously proposed search terms resulted in tens of thousands of documents. Given our limited resources, both technological and human, as well as the technical issues we have experienced, we are unfortunately simply unable to process, review, and produce this volume of materials prior to the close of discovery. In the interests of identifying the documents we believe most likely to be responsive and get those documents to you by the close of discovery, we propose to narrow the search terms you provided for different configurations of custodians as follows:

- On the previously-proposed search for "Bannon" and any of the following terms: "census" or "apportionment" or "enumerate!" or "districting" or "redistricting" or "counting", we propose to keep all of those terms, but use a proximity search that will return all documents in which any of these terms appear within 50 words of "Bannon."
- On the previously-proposed searches for the names "McHenry," "Cutrona," "Hankey," and a number of different misspellings or iterations of Kobach, Neuman, Hamilton, Zadrozny, and Sherk, we plan to narrow this search by using a proximity search that will return all documents that contain any of those names within 50 words of the relevance terms listed above ("census" or "apportionment" or "enumerate!" or "districting" or "redistricting" or "counting")
- On the previously-proposed search for certain subject-matter related terms ("aliens" or "immigrants" or "illegals" or "noncitizen*" or "non-citizen!" or "democrat!") in combination with certain other "relevance terms" ("census" or "apportionment" or "enumerate*" or "districting" or "redistricting" or "counting"), we propose to narrow this search by
    - (a) removing the term "democrat!" from the list, because it produces a very large volume of material, does not seem reasonably calculated to lead to proportional, responsive documents, and was not discussed by the parties until *after* Defendants had agreed to perform searches in response to Plaintiffs' Fifth MTC;
    - and (b) using a proximity search that will return all documents from all custodians that contain any of those remaining subject-matter related terms within 50 words of any of the "relevance terms."
- For the new custodians, the volume of potentially responsive material including the original search terms (from the Cannon declaration) is extremely large and impossible to process given the short time allotted for discovery. The previously produced materials include any responsive documents from the new custodians in which the original custodians, i.e., the higher-level Commerce officials, were included in the communication. Running the original search terms would thus be very duplicative. For these custodians, we propose running the searches listed above—i.e., the "name" and "subject-matter" searches, rather than repeating all of the searches.

As we stated, once we perform these narrowing searches we are certainly willing to prioritize documents from the custodians you have identified.  We look forward to hearing your thoughts.


**Kate Bailey**
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7214
Washington, D.C. 20530
202.514.9239 | kate.bailey@usdoj.gov

---

**From:** Bailey, Kate (CIV)
**Sent:** Wednesday, September 26, 2018 5:23 PM
**To:** 'Goldstein, Elena' <Elena.Goldstein@ag.ny.gov>; 'Dale Ho' <dho@aclu.org>; 'Freedman, John A.' <John.Freedman@arnoldporter.com>; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Kopplin, Rebecca M. (CIV) <rkopplin@CIV.USDOJ.GOV>; Halainen, Daniel J. (CIV) <dhalaine@CIV.USDOJ.GOV>; Tomlinson, Martin M. (CIV) <mtomlins@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>
**Cc:** 'Sarah Brannon' <sbrannon@aclu.org>; 'Perry Grossman <PGrossman@nyclu.org>; 'Colangelo, Matthew' <Matthew.Colangelo@ag.ny.gov>; 'Bauer, Andrew' <Andrew.Bauer@arnoldporter.com>; 'Gersch, David P.' <David.Gersch@arnoldporter.com>; 'Grossi, Peter T.' <Peter.Grossi@arnoldporter.com>; 'Weiner, David J.'

Exhibit 4

| | |
|---|---|
| **From:** | Ehrlich, Stephen (CIV) <Stephen.Ehrlich@usdoj.gov> |
| **Sent:** | Friday, October 05, 2018 5:39 PM |
| **To:** | Goldstein, Elena; Bailey, Kate (CIV); Freedman, John A.; zzz.External.DHo@aclu.org; Federighi, Carol (CIV); Coyle, Garrett (CIV); Kopplin, Rebecca M. (CIV); Halainen, Daniel J. (CIV); Tomlinson, Martin M. (CIV); Wells, Carlotta (CIV) |
| **Cc:** | zzz.External.SBrannon@aclu.org; zzz.External.PGrossman@nyclu.org; Colangelo, Matthew; Bauer, Andrew; Gersch, David P.; Grossi, Peter T.; Weiner, David J.; Young, Dylan Scot; Kelly, Caroline; Saini, Ajay; Wood, Laura |
| **Subject:** | RE: Several outstanding matters |
| **Attachments:** | Abowd Documents Considered.zip |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Counsel,

With respect to our clawback request, the highlighted version of Dr. Abowd's expert disclosure was a draft for DOJ review, and was thus privileged work product. Please destroy the highlighted version of Dr. Abowd's expert disclosure. Documents considered by Dr. Abowd are attached.

Stephen Ehrlich
Trial Attorney
U.S. Department of Justice
Civil Division | Federal Programs Branch
202-305-9803 | stephen.ehrlich@usdoj.gov

---

**From:** Goldstein, Elena [mailto:Elena.Goldstein@ag.ny.gov]
**Sent:** Tuesday, October 02, 2018 10:01 PM
**To:** Bailey, Kate (CIV) <katbaile@CIV.USDOJ.GOV>; Freedman, John A. <John.Freedman@arnoldporter.com>; DHo@aclu.org; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Kopplin, Rebecca M. (CIV) <rkopplin@CIV.USDOJ.GOV>; Halainen, Daniel J. (CIV) <dhalaine@CIV.USDOJ.GOV>; Tomlinson, Martin M. (CIV) <mtomlins@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>
**Cc:** SBrannon@aclu.org; PGrossman@nyclu.org; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; Bauer, Andrew <Andrew.Bauer@arnoldporter.com>; Gersch, David P. <David.Gersch@arnoldporter.com>; Grossi, Peter T. <Peter.Grossi@arnoldporter.com>; Weiner, David J. <David.Weiner@arnoldporter.com>; Young, Dylan Scot <Dylan.Young@arnoldporter.com>; Kelly, Caroline <Caroline.Kelly@arnoldporter.com>; Saini, Ajay <Ajay.Saini@ag.ny.gov>; Wood, Laura <Laura.Wood@ag.ny.gov>
**Subject:** RE: Several outstanding matters

Counsel,

With respect to the supplemental administrative record search terms and custodians, please advise whether you intend to produce these documents by the close of business tomorrow. If not, Plaintiffs will seek relief from the Court. As you are aware, the Court ordered that supplementation of the Administrative Record was to be completed on July 26 and Plaintiffs filed their motion to compel these documents on August 31. Soon after, Defendants advised that they would voluntarily comply, and on September 6, Plaintiffs agreed to ask the Court

to hold that motion in abeyance. By September 10, the parties had substantially agreed on terms and custodians; more than two weeks later, on September 26, Defendants advised for the first time that these terms yielded results that were too large for Defendants to efficiently process. Defendants requested that Plaintiffs further narrow the scope of the search terms, and we agreed to a narrower search on September 28. However, more than a month after Plaintiffs' initial motion to compel, Defendants now indicate only that they are "reviewing and processing" the materials at issue, and will not commit to any date certain for production. While Plaintiffs have been exceedingly flexible with respect to this production, and have repeatedly acceded to Defendants' requests to narrow the scope of the searches at issue, the discovery timeline mandates that these documents be produced forthwith. Accordingly, kindly confirm that Defendants will produce these materials by the close of business tomorrow. As you know, we have met and conferred on this request extensively, including on our August 31, September 5, and September 26 calls.

With respect to your clawback request regarding the highlighted version of Dr. Abowd's expert disclosure that you produced yesterday, we have sequestered the document as required by ECF No. 296 and Rule 26(b)(5)(B). To enable us to determine whether to contest this claim of privilege, as permitted by ECF No. 296 and Rule 26(b)(5)(B), please explain your claim that the report is work product that was produced in error. We note in particular that Defendants' email of 9:04pm yesterday specifically identified this report in your production and noted that it contains "yellow highlights indicating that a new footnote identifies the source of the yellow-highlighted item." Please advise how the identification of Dr. Abowd's sources was not already required by Rule 26. As noted, we have sequestered the document pending resolution of your clawback request, and are aware of our obligations under 26(b)(5)(B) not to use the information until your privilege claim is resolved.

Also -- attached please find a deposition notice for Dr. Abowd's testimony for September 12.

Best,
Elena

**Elena Goldstein | Senior Trial Counsel**
Civil Rights Bureau
New York State Office of the Attorney General
28 Liberty Street, 20th Floor | New York, New York 10005
Tel: (212) 416-6201 | Fax: (212) 416-6030 | elena.goldstein@ag.ny.gov | www.ag.ny.gov

---

**From:** Bailey, Kate (CIV) <Kate.Bailey@usdoj.gov>
**Sent:** Tuesday, October 2, 2018 7:46 PM
**To:** Freedman, John A. <John.Freedman@arnoldporter.com>; Goldstein, Elena <Elena.Goldstein@ag.ny.gov>; DHo@aclu.org; Federighi, Carol (CIV) <Carol.Federighi@usdoj.gov>; Coyle, Garrett (CIV) <Garrett.Coyle@usdoj.gov>; Kopplin, Rebecca M. (CIV) <Rebecca.M.Kopplin@usdoj.gov>; Halainen, Daniel J. (CIV) <Daniel.J.Halainen@usdoj.gov>; Tomlinson, Martin M. (CIV) <Martin.M.Tomlinson@usdoj.gov>; Ehrlich, Stephen (CIV) <Stephen.Ehrlich@usdoj.gov>; Wells, Carlotta (CIV) <Carlotta.Wells@usdoj.gov>
**Cc:** SBrannon@aclu.org; PGrossman@nyclu.org; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; Bauer, Andrew <Andrew.Bauer@arnoldporter.com>; Gersch, David P. <David.Gersch@arnoldporter.com>; Grossi, Peter T. <Peter.Grossi@arnoldporter.com>; Weiner, David J. <David.Weiner@arnoldporter.com>; Young, Dylan Scot <Dylan.Young@arnoldporter.com>; Kelly, Caroline <Caroline.Kelly@arnoldporter.com>; Saini, Ajay

<Ajay.Saini@ag.ny.gov>
**Subject:** Several outstanding matters

Counsel—

I write regarding several outstanding matters:

- We don't believe that we have received a subpoena for Dr. Abowd's expert deposition on the 12th. With apologies if we've somehow overlooked it, please send us his subpoena at your earliest convenience.
- Please provide dates of availability for deposition of the experts on which you rely for rebuttal.
- Secretary Ross will be unavailable during trial as he will be out of the country; accordingly, to the extent his deposition goes forward, we wanted to let you know this as a courtesy.
- Regarding the search terms discussed by the parties last week, we have updated our searches to include the terms proposed by John Freedman on 9/28. We are reviewing and processing potentially responsive documents according to the search terms agreed upon by the parties last week.
- Consistent with our representation on the September 26 meet and confer, we began running the next production of DOJ materials early yesterday morning. Because that production is unusually large—more than 18,000 pages total—it is taking longer to complete than typical, and is still in process with our lab. We anticipate the production will be complete tomorrow morning and will overnight disks to you promptly.
- We also have received focus-group materials cleared for release through the DRB. Our lab is processing/Bates stamping those materials as well and they also should be ready in the morning.
- The highlighted version of Dr. Abowd's expert disclosure sent to you last night is privileged work product and was produced in error. Pursuant to Rule 26 and the parties' clawback agreement, ECF No. 296, please destroy this version of Dr. Abowd's disclosure. We will be in touch soon regarding the documents on which Dr. Abowd relied.

Best,

**Kate Bailey**
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7214
Washington, D.C. 20530
202.514.9239 | kate.bailey@usdoj.gov

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

Exhibit 5

Dr. John M. Abowd , Ph.D.

Page 1

1              UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF NEW YORK

2

- - - - - - - - - - - - - - -x

3     NEW YORK IMMIGRATION            :

      COALITION, et al.,              :

4                                     :

          Plaintiffs,                 :

5                                     :  Case No.

          v.                          :

6                                     :  1:18-CF-05025-JMF

      UNITED STATES DEPARTMENT        :

7     OF COMMERCE, et al.,            :

                                      :

8         Defendants.                 :

- - - - - - - - - - - - - - -x

9                            Friday, October 12,2018

                                    Washington, D.C.

10

11

12   Videotaped Deposition of:

13              JOHN  M. ABOWD, Ph.D.,

14   called for oral examination by counsel for the

15   Plaintiffs, pursuant to notice, at the law offices of

16   Arnold & Porter Kaye Scholer, LLP, 601 Massachusetts

17   Avenue, Northwest, Washington, D.C. 20001-3743,

18   before Christina S. Hotsko, RPR, CRR, of Veritext

19   Legal Solutions, a Notary Public in and for the

20   District of Columbia, beginning at 9:06 a.m., when

21   were present on behalf of the respective parties:

22

Dr. John M. Abowd , Ph.D.

```
 1              A P P E A R A N C E S
 2   On behalf of New York Immigration Coalition, CASA de
     Maryland, American-Arab Anti-Discrimination
 3   Committee, ADC Research Institute and Make the Road
     New York:
 4       JOHN A. FREEDMAN, ESQUIRE
         DAVID GERSCH, ESQUIRE
 5       Arnold & Porter Kaye Scholer, LLP
         601 Massachusetts Avenue, Northwest
 6       Washington, D.C. 20001-3743
         (202) 942-5000
 7       john.freedman@arnoldporter.com
 8       SARAH BRANNON, ESQUIRE
         KELLY HERNANDEZ, ESQUIRE
 9       American Civil Liberties Union Foundation
         915 15th Street, Northwest
10       Washington, D.C. 20005
         (202) 675-2337
11       sbrannon@aclu.org
12
     On behalf of the State of New York:
13       ELENA GOLDSTEIN, ESQUIRE
         DANIELLE FIDLER, ESQUIRE
14       State of New York
         Office of the Attorney General
15       Civil Rights Bureau
         28 Liberty Street
16       New York, New York 10005
         (212) 416-6201
17       elena.goldstein@ag.ny.gov
18
     On behalf of the State of California:
19       R. MATTHEW WISE, ESQUIRE
         California Department of Justice
20       Office of the Attorney General
         1300 I Street
21       P.O. Box 944255
         Sacramento California 94244-2550
22       (916) 210-6046
         matthew.wise@doj.ca.gov
```

Dr. John M. Abowd , Ph.D.

```
 1          A P P E A R A N C E S   C O N T I N U E D
 2    On behalf of Lupe Plaintiffs:
          NIYATI SHAH, ESQUIRE
 3        ERI ANDRIOLA, ESQUIRE
          Asian Americans Advancing Justice
 4        1620 L Street, Northwest, Suite 1050
          Washington, D.C. 20036
 5        (202) 296-2300
          nshah@advancingjustice-aajc.org
 6
 7    On behalf of City of San Jose and Black Alliance for
      Just Immigration:
 8        DORIAN L. SPENCE, ESQUIRE
          EZRA ROSENBERG, ESQUIRE (Via Telephone)
 9        Lawyers Committee for Civil Rights Under Law
          1401 New York Avenue, Northwest, Suite 400
10        Washington, D.C. 20005
          (202) 662-8324
11        dspence@lawyerscommittee.org
          erosenberg@lawyerscommittee.org
12
13    On behalf of Kravitz Plaintiffs:
          KARUN A. TILAK, ESQUIRE
14        Covington & Burling, LLP
          One City Center
15        850 Tenth Street, Northwest
          Washington, D.C. 20001-4956
16        (202) 662-5083
          ktilak@cov.com
17
18    On behalf of Los Angeles Unified School District:
          BRYAN J. PARK, ESQUIRE (Via Telephone)
19        Dannis Woliver Kelley
          115 Pine Avenue, Suite 500
20        Long Beach, California 90802
          (562) 366-8500
21        bpark@dwkesq.com
22
```

Page 4

```
1           A P P E A R A N C E S   C O N T I N U E D
2    On behalf of Defendants:
         CARLOTTA P. WELLS, ESQUIRE
3        U.S. Department of Justice, Civil Division
         20 Massachusetts Avenue, Northwest
4        Washington, D.C. 20530
         (202) 514-4522
5        carlotta.wells@usdoj.gov
6        MILES RYAN, ESQUIRE
         U.S. Department of Commerce
7        U.S. Census Bureau
         Office of the Chief Counsel for Economic
8        Affairs
         Office of the General Counsel
9        4600 Silver Hill Road
         Suitland, Maryland 20746
10       (301) 763-9844
         miles.f.ryan.iii@census.gov
11
12   Also Present:
         Dan Reidy, Video Technician
13
14
15
16
17
18
19
20
21
22
```

Dr. John M. Abowd , Ph.D.

Page 68

1    28 percent, that matters.

2         Q.  Do you know whether Dr. Barreto provided

3    the backup to that calculation?

4         A.  If he did, it wasn't provided to me.

5         Q.  Okay.  Thank you.

6         A.  So paragraph 60 says that this was a

7    national survey of 6,309 respondents.  And

8    paragraph 67 shows the composition of the phone

9    design.  And paragraph 75 reports response rate of

10   28 percent.

11        So I think that the survey was

12   administered to 63,000 -- 6,309 sample units, of

13   whom 28 percent responded.  If it was administered

14   to 6,309 respondents, then the sample plan in

15   paragraph 67 is not a sample plan.

16        I'm marking paragraph 60 as number 16 and

17   the table in paragraph 67 as number 17.

18        At this point, I'd just like to say I

19   don't know enough about the survey design to

20   continue.  It doesn't seem to make sense to

21   speculate.  But it's hard -- it's hard to go from

22   that description of the survey to having

Dr. John M. Abowd , Ph.D.

Page 69

1    confidence in the analysis of it.

2            I had other general analysis criticisms.

3    Some of the numbers reported in the report are not

4    accompanied with margins of error.  Whether those

5    margins of error are properly calculated or not

6    depends upon exactly how the survey design handled

7    non-response.  It had non-response if it had only

8    28 percent respondents.  And I accept that a

9    28 percent response rate is within the range of

10   acceptability for this kind of poll.

11           So I'm not saying that you can't learn

12   anything from a poll this size.  But I am saying

13   that you have to document the methods that you

14   used to generalize to the populations that he

15   tried to generalize to, and the sample plan

16   documentation is inadequate.

17       Q.  Okay.  And I should ask you, were you

18   given any of Dr. Barreto's backup to his survey,

19   either in the plan or backup to these tables?

20       A.  The only things that I have seen are his

21   reports.

22       Q.  Okay.

Dr. John M. Abowd , Ph.D.

Page 77

1    studies that I've put on the record and that in

2    the public record of the Census Bureau show that

3    those operations have succeeded in reducing the

4    net undercount and in reducing differential net

5    undercounts, and that the intercensal research

6    that's done focuses on the deficiencies that are

7    identified in the previous census or the previous

8    several censuses.

9            So it's simply not conjecture.  I'm --

10   I'll leave it at that.

11       Q.   Thank you.  If you could continue.

12       A.   I additionally take issue with the final

13   analysis in the -- in paragraph 10 about the

14   self-response rate in the end-to-end test.  The

15   end-to-end test was not conducted under full

16   census protocol; in particular, it didn't have a

17   communication campaign.  And it was conducted to

18   ensure that the systems were properly integrated

19   and worked properly with each other.  It didn't

20   have a target completed response rate that's

21   comparable to the targeted completed response rate

22   in the 2020 census, so it wasn't extended.  In

Dr. John M. Abowd , Ph.D.

Page 78

1   order to meet the 2020 targets, it was kept in the

2   field long enough to meet its own targets, which

3   were below the 2020 targets.

4        Q.  And just for clarification, when you --

5   we're talking about the communications plan.  You

6   said not under a full communications -- you meant

7   not under a full communications plan under not --

8   under a false communications plan?  I think

9   that's --

10       A.  Did I say false?

11       Q.  It sounded like you said false.

12       A.  I did not intend to say the word "false."

13  I intended to say that the 2018 end-to-end census

14  test was conducted without a full communication

15  campaign.  In fact, it was conducted without the

16  use of the integrated partnership and

17  communication program.

18       Q.  Okay.  Thank you.

19       A.  I disagree with the conclusions in

20  paragraph 11.  I'm marking it number 7.  I believe

21  that Dr. Barreto was unfamiliar with the

22  appropriate use of subnational net undercount

Dr. John M. Abowd , Ph.D.

Page 89

1  visit form from the end-to-end.

2       Q.  I see.  If you could continue.

3       A.  I disagree with paragraph 31.  That's

4  number 17.  The end-to-end test was conducted just

5  as the presence of a citizenship question was

6  being announced.  And we are examining the data

7  entered by the field enumerators regarding

8  people's reactions to the question.  I don't have

9  any conclusions to report from that, but I think

10  it's not correct to conclude that just because it

11  didn't have a citizenship question on it, it

12  couldn't have been affected by the presence of --

13  the discussion about a presence of a citizenship

14  question on the subsequent -- on the actual

15  2020 census.

16       Q.  I'm sorry, I didn't follow that.  You

17  said the enumerator responses to the question, but

18  the question --

19       A.  So there --

20       Q.  - wasn't asked --

21       A.  So there's -- in the follow-up -- so the

22  enumerators don't use the same instrument that you

Dr. John M. Abowd , Ph.D.

Page 90

1    get.  They use an instrument that's customized for

2    the field enumeration and non-response follow-up.

3    And it has a space for them to insert comments

4    regarding things that they think their supervisor

5    would want to know or things that they think the

6    next interviewer who goes there would want to

7    know.  The classic example is the dog, but the --

8    other things like household expressed strong

9    reluctance to answer, household objected to the

10   citizenship -- they would record that.

11        Q.  Even -- so you're not suggesting that the

12   enumerators actually went out and in the field

13   surveys --

14        A.  No, no, no.  There's no design study.

15   I'm not suggesting there was a design study.  What

16   I'm suggesting is that the enumerators have

17   recorded the sensitivity that was already present

18   in Providence, and the news reports recorded it

19   too, so, it's right, there wasn't a citizenship

20   question, and you can't do the kinds of controlled

21   studies that we all prefer, or even the kinds

22   of -- different studies that you can sometimes

Page 91

1   construct.  But I don't think it's a correct

2   conclusion that inferences from the Providence

3   study, which did not include the citizenship

4   question, will likely be inapposite.

5        Q.  I see.

6        A.  It probably says inapposite.

7            I'm now in section C.  Can I just put my

8   objection to the whole of section C?

9        Q.  That's -- that's fine.  If you want to

10  summarize what's your --

11       A.  Yes.  So I'm putting number 18 there.

12           Section C acknowledges that the

13  citizenship question used on the census was not

14  further tested before it was put on the census.

15  It documents that that is consistent with the

16  Census Bureau's stated quality standards because

17  of an explicit exception that predates this census

18  question arising -- i.e., that was already in

19  there -- allowing the use of a question that has

20  been previously tested on another survey without

21  further testing.

22           That exception doesn't require a waiver.

Dr. John M. Abowd , Ph.D.

Page 96

1       A.   It is not.

2       Q.   Putting aside your central criticism,

3   which I take is the misinterpret -- and if you

4   don't like my language, you can use your own

5   language -- but the misinterpretation of a decline

6   in self-response as signifying anything with

7   regard to an undercount, are the other criticisms

8   you have of Dr. Barreto's report discussed in your

9   report?

10      A.   So let's make this easier.  I didn't

11  specifically discuss anything about Dr. Barreto's

12  report when I wrote -- especially the version

13  that's in front of me, September 21st, I hadn't

14  even read it.  I had read it when I wrote the

15  revised one, but I didn't feel that I needed to

16  comment specifically on his report, that I just

17  needed to document where the estimates that I used

18  in my report came from.

19          And I am relying on the analysis I did.

20  And I am not relying on the analysis that

21  Dr. Barreto did.

22          You asked me what I disagreed with, so I

Page 143

1    Q.  Your 1970 and your 1990 examples.

2         Were the Census Bureau's statistical

3    quality standards that govern the Census Bureau

4    today in effect in either 1970 or in 1990?

5    A.  No.

6    Q.  With regard to your 1970 example, which

7    is discussed on page 24 of your report, what is

8    your source of information for this analysis?  And

9    it's fine -- if you want to consult Exhibit 2,

10   that's fine.  We just should make clear on the

11   record that you're doing it.

12   A.  I'm consulting Exhibit 2.

13        Oh, okay.  It's in the footnote in both

14   places.  It's that 1990 census content reinterview

15   survey study cited in footnote 39.  Oh, sorry, no.

16   Q.  Right.  For the 1970 --

17   A.  I think the problem here is you had a

18   summary paragraph, and I actually discuss the 1970

19   example.  I know that I marked the sources, and

20   they're public, unlike the '92 experiment.

21        I can't figure out what happened to the

22   citation for that.  I apologize for having to --

Dr. John M. Abowd , Ph.D.

Page 144

1      Q.   It's quite all right.  We're just --

2      A.   -- dig through my own report.

3           Okay.  The report did make the

4   references, and I apologize for the fact that I

5   didn't cite it properly in text.

6           In the report, I cite a paper by Jacob

7   Siegel and Jeffrey Passel in 1979, Coverage of the

8   Hispanic population of the United States in the

9   1970 census:  A methodological analysis, current

10  population reports:  Special studies P-23, and a

11  URL where you can find it is below.

12          There's a description in there of how

13  that particular question was imported from the

14  current population survey into the 1970 census.

15     Q.   Okay.  Was that the only source you

16  consulted regarding this example?

17     A.   Yes.

18     Q.   Do you know whether that study -- I see

19  that it's -- there's a website here for a 1979 --

20     A.   So I can help you more.  The P series are

21  public reports from the current population survey.

22  And the Library of Congress will have a copy, too.

Dr. John M. Abowd , Ph.D.

Page 145

1   It's just that, where I was sitting, the only copy
2   I could get is the one that happened to have been
3   curated on that particular site.
4       Q.  I see.
5       A.  But that's an official publication of the
6   Census Bureau.
7       Q.  What do the other series of studies
8   issued by the Census Bureau -- what do the
9   prefixes mean, like the G or the J?
10      A.  I'll do the best I can.
11      Q.  Okay.
12      A.  The document curation for most of our
13  information products is not covered by the quality
14  standards.  And most of our practices date from
15  when a paper copy was produced and a copy was
16  automatically deposed with the Library of Congress
17  and other curation libraries that held all
18  government printing documents -- all official
19  publications of the U.S. government.
20          So the P series for the current
21  population survey is demographic reports,
22  population reports.  In the -- in the production

Dr. John M. Abowd , Ph.D.

Page 146

1    of documents related to decennial censuses, the

2    memo series are generally labeled A, B, C, D, E,

3    sequentially in a form that the associate director

4    for the decennial census dictates at the start of

5    the recordkeeping operation, and then the memos

6    are numbered A-1 and B-1.  I don't know all the

7    series.  I don't know even what letter we've

8    gotten up to for 2020 or what letters we got up to

9    for 2010.

10             When they're released to the public, our

11   current practice is also to release a paper copy,

12   if one exists.  But since official government

13   documents had to be in electronic format, we now

14   have a curated electronic copy, and we depose with

15   the Minnesota Population Center and the

16   Inter-University Consortium on Political and

17   Social Research, which are two academic

18   consortia -- we depose copies there, too.

19      Q.  The series label wouldn't necessarily be

20   consistent from census to census?

21      A.  As far as I know, it's not.

22      Q.  Okay.  Do you know whether a copy of the

Dr. John M. Abowd , Ph.D.

Page 147

1    Siegel paper was produced in discovery in this

2    matter?

3         A.   I believe it was.  Yes.

4         Q.   Without having considered the Siegel

5    paper, could you have made the statements in your

6    report about the 1970 example?

7         A.   I believe that one of the population

8    experts at the Census Bureau recalled that this

9    might have happened, but couldn't provide any

10   documentation.  And it took some searching to find

11   a copy of a report that documented it.  So I

12   probably would have known that it was a

13   possibility but had a difficult time tracking down

14   a source for it.

15        Q.   You certainly couldn't have provided the

16   level of detail here without consulting this

17   Siegel --

18        A.   That's correct.

19        Q.   So for the 1970 Hispanic origin question,

20   do you know what the gap of time was between when

21   the question was tested for the CPS and when it

22   was included on the long form?

Dr. John M. Abowd , Ph.D.

Page 269

1          So in order to produce the tables that I

2    actually used, I asked the DRB not to consider

3    those tables, since they didn't have the

4    information.  So they had to redact them because

5    they didn't have the information they would need

6    to begin considering clearing them.

7          I didn't use any of the redacted tables.

8      Q.  But you've seen the document in

9    unredacted form, correct?

10     A.  Yes, I have.

11     Q.  Without considering this document, could

12   you have reached all the conclusions in your

13   report?

14     A.  I'm pretty sure the answer to that is no.

15   I didn't search for alternative sources for

16   these -- for these documents -- for the -- numbers

17   drawn from this document I did not search for

18   alternative sources for.  So if there are any that

19   are not in the public document -- there might have

20   been a summary memo someplace that didn't have the

21   detailed tables that I could have used instead of

22   the memo with the detailed tables, but this is the

Dr. John M. Abowd , Ph.D.

Page 270

1    memo that I had.

2         Q.   Now, this memo describes the 2010

3    imputation process, correct?

4         A.   The count imputation process.

5         Q.   The count imputation process.  It doesn't

6    discuss any kind of post-imputation survey or

7    analysis that is done whether the count

8    imputations were accurate, does it?

9         A.   The entire whole census -- whole-person

10   census imputations are out of the universe for

11   coverage evaluation.  They're not in the

12   data-defined record universe.

13        Q.   So the G series memos that Dr. Mule and

14   his team worked on wouldn't speak to coverage of

15   people in the imputation universe, correct?

16        A.   No, that's not correct.  Net undercount

17   does depend on whole person census imputation, so

18   you can't leave it out of a full coverage

19   analysis.  You can declare the coverage universe

20   to be the data-defined census records, but you're

21   still in the end going to have to make an

22   estimation of how to inflate those up to account

Dr. John M. Abowd , Ph.D.

Page 274

1          Q.   One would hope.

2          A.   I think that's a safe hypothesis.

3          Q.   So the J-12 memo doesn't provide

4    stratification, demographic stratification, does

5    it?

6          A.   I -- I don't remember.  I was waiting for

7    you to direct my attention to the table where it

8    did.  I'm just going to look.

9          Q.   Well, I don't know if it's been

10   redacted --

11         A.   I'm guessing that it doesn't because we

12   know that on the imputations themselves, that we

13   copied all those characteristics from somebody

14   else.  So it doesn't make much sense to talk about

15   whether they're correct or not.  Why we think we

16   can include them in the overall statistics is that

17   a general property of -- I guess we'll call it

18   ignorable -- ignorable missing data models is that

19   they produce reliable statistics when you do the

20   imputation.

21              But whether the ignorability assumption

22   holds or not is another one of those fundamentally

Dr. John M. Abowd , Ph.D.

Page 275

1   untestable things, unless you bring in additional

2   independent information.  And we've already

3   discussed why the post-enumeration survey doesn't

4   do that.

5       Q.  Could the Census Bureau have looked at

6   the demographic characteristics of the source of

7   the imputation to model the demographics of the

8   imputation population?

9       A.  So -- yes is the answer to that question.

10  And what you would want is you would want a much

11  more diverse team in terms of their

12  specializations than coverage measurement teams,

13  which are extremely well versed in doing the dual

14  system estimation and the associated statistics

15  and not as well versed in combining alternative

16  sources of data to make an independent or an

17  approximately independent estimate of the

18  demographic characteristics of the people that you

19  left out.

20          I've done some of that in other research,

21  but not with respect to census counts.

22      Q.  Are the candidate records that are used

Dr. John M. Abowd , Ph.D.

Page 277

1   Hispanics are imputed at a greater or lower rate

2   than non-Hispanic whites, does it?

3        A.   It doesn't seem to, no.  And I don't

4   see -- if you're just looking at the count-imputed

5   households, I don't see how it could.

6        Q.   Is that reflected in Dr. Mule's memo?

7        A.   So the overall coverage assessment was

8   designed to be able to isolate Hispanics as a

9   subpopulation of interest and to produce reliable

10  national statistics related to answering the

11  Hispanic origin question yes on the census.

12       Q.   The -- J-12 also doesn't provide

13  geographical breakdowns.  It doesn't tell you the

14  number of imputations for particular states or

15  jurisdictions, does it?

16       A.   I believe they were in the suppressed

17  cells.

18       Q.   In the redacted information?

19       A.   Yes.  If the title of the -- let me see

20  if the title of the redacted tables is there.

21            I can't tell from the redacted titles --

22  from the titles of the redacted tables exactly

Dr. John M. Abowd , Ph.D.

Page 278

1   what geographic detail might have been in them.

2   It doesn't look like there was any.  And I don't

3   remember.  I didn't look at them, I just had -- I

4   had access to them.

5        Q.  Is the rest of the J series of memos the

6   Census Bureau's analysis of imputation during the

7   2010 census?

8        A.  It's not exclusively imputation.  It's

9   internal technical memos related to the

10   statistical operations in the census.

11       Q.  If you look at page 13 of the memo, the

12   references section --

13       A.  Got it.

14       Q.  -- that cites three other J series memos?

15           Do you see that?

16       A.  Yes.

17       Q.  None of -- none of those memos have been

18   publicly released, correct?

19       A.  As far as I know, that's correct.  Yes.

20       Q.  And to your knowledge, none of them has

21   been produced in this litigation, correct?

22       A.  To the best of my knowledge, that's

Dr. John M. Abowd , Ph.D.

Page 279

1    correct.

2         Q.   You have access to all of these memos,

3    correct?

4         A.   In principle, yes.

5         Q.   You have considered them at some point in

6    your tenure at the Census Bureau, correct?

7         A.   So if you're not working in a particular

8    division of the Census Bureau, you don't

9    automatically have access to its internal document

10   file.  So I had to learn of the existence of the

11   J series in writing my expert report, and only

12   very recently have I learned -- have I acquired

13   copies of the rest of them.

14            There's not a central document

15   repository.  And there's a good reason for that,

16   because the -- your business-related need to know,

17   the confidential information in the redacted

18   tables here, is directly related to whether you're

19   working on the decennial census or not.  And we

20   don't automatically grant even the chief scientist

21   access to all of the confidential memos.

22            I -- there's that.  And then they're not

Dr. John M. Abowd , Ph.D.

Page 280

1   curated in a central repository.  The latter

2   problem we're actually trying to take care of.

3   The former problem of, since I didn't have a

4   business-related need to know until that was

5   established, I wouldn't have been automatically

6   given access to these memos.  I had to ask

7   somebody, where's the writeups, and then they

8   properly pointed me to the public ones.  And I was

9   able to analyze a lot of the public data, and I'm

10  properly allowed to analyze the microdata from the

11  2010 census, including the coverage measurement

12  data.

13          But until I asked, where are the other

14  studies that you did on imputation, I didn't know

15  about the J series.  Maybe somebody who had been

16  in decennial for a lot longer, like Mr. Thompson,

17  would have automatically known.  I don't know if

18  he would have known about the 2010 series, but I'm

19  sure he can still tell you every memo series

20  letter from 2000 and from 1990.

21      Q.  Did you consider the J series memos on

22  imputation in -- in writing your report?

Dr. John M. Abowd , Ph.D.

Page 281

1      A.   The only J series memo that I considered
2   was this one (indicating).
3      Q.   Okay.  I'm wondering, if you had not
4   considered them, how you can say, at page 13 of
5   your report, that "The Census Bureau is not aware
6   of any credible quantitative data suggesting that
7   imputation in the census leads to a greater net
8   undercount or differential net undercount in
9   comparison to self-response or in-person
10  interviews."
11     A.   Because I grilled the author team of
12  these memos and their supervisor with very
13  specific questions in very long sessions to
14  discuss the procedures that were used.
15          And since the metadata database is the
16  memories of those people, I was obligated to rely
17  on their representations, and I'm still relying on
18  it.  I believe when they tell me that there
19  wasn't, there wasn't.
20     Q.   But you haven't gone back to actually
21  check the J series yourself --
22     A.   Now I have the J series because other

Dr. John M. Abowd , Ph.D.

Page 282

1    issues unrelated to the litigation led me to the

2    J series.  And Patrick Cantwell, the chief of the

3    DSSD now, has had access to the J series all

4    along.  He hasn't been trying to hide the J series

5    from me.  He knows there's a limit to what can be

6    read.  He produces the documents that he thinks

7    are most relevant.  And for litigation purposes,

8    those should be public documents so we all share

9    the same information.

10         So I have tried, to the maximum extent

11   possible, to rely on public documents.  Sometimes

12   I just can't.

13         Q.  Do any of the other J series memos

14   concern stratification or breakdowns that are of

15   issue in this case, either by demography or

16   geographic basis?

17         A.  One of the J series memos is the sampling

18   plan for the post-enumeration survey.  So I think

19   the answer to your question is necessarily yes.

20   But I'm just beginning to get familiar with them,

21   so I don't know their contents.

22         Q.  Okay.  I'm also wondering about the J-9

Dr. John M. Abowd , Ph.D.

Page 283

1   memo that's referenced in the redacted document,

2   which is titled, Census count imputation:  Summary

3   of results of the U.S. and the states, whether

4   that might provide a geographic breakdown

5   concerning numbers of imputation -- numbers of

6   count imputation.

7        A.  From the title, that's a fair

8   presumption.

9        Q.  And that breakdown might tell us, for

10  example, what the New York -- number of

11  imputations in New York is relative to Utah?

12       A.  So the public documents for the census

13  tabulate substituted persons.  That's a superset

14  of count imputations because it includes the ones

15  that are substituted in partial household

16  imputation.

17            But these confidential ones -- it's -- I

18  don't want to speculate.

19            From the title, I'd draw the same

20  conclusion you drew.

21       Q.  Okay.

22            MR. FREEDMAN:  I'm going to shift gears,

Dr. John M. Abowd , Ph.D.

Page 307

1    were just speaking about.

2              And in the last full paragraph, the last

3    sentence of that, you state that, "In the 2018

4    end-to-end census, about 9 percent of the NRFU

5    households were resolved when a self-response was

6    received during the NRFU operation."

7              Where does that number come from?

8         A.   I am looking for Exhibit 2.  And I need

9    to find the same paragraph.  And I should have

10   documented it there.  I think I know, but let

11   me --

12        Q.   Thank you.

13        A.   And the page numbers don't agree because

14   there are longer footnotes in this version.

15             I did not document that number.  The

16   source should be the 2020 program management

17   review that -- so the next one is next Friday, so

18   it would have been about three months ago,

19   approximately.  I was there, so it wasn't in

20   Alaska.  So I think it was in August.

21        Q.   And --

22        A.   I can look.  And all of the 2020 --

Dr. John M. Abowd , Ph.D.

Page 308

```
1    they're quarterly.  They're all in a single

2    website.  And there's a complete set of slides,

3    and one of them should have that number on it.

4         Q.  And so it's a slide presentation that you

5    believe is the source of that 9 percent number?

6         A.  Yes.

7         Q.  Did you consider any other documents

8    relating to the end-to-end test in writing your

9    report?

10        A.  I don't think so.  In writing my

11   report -- and I'm sorry I didn't footnote it -- I

12   relied on my memory.  I've seen the presentation

13   of the preliminary results from the end-to-end

14   test twice, so -- once when it was reviewed by the

15   executive steering committee and once when it was

16   presented publicly.  And I knew them to be public,

17   but I should have gone and found the slide.

18        Q.  And other than those slides, you don't

19   recall relying on any other information relating

20   to the 2018 end-to-end test in writing your

21   report?

22        A.  That's right.
```

Exhibit 6

**From:** Bailey, Kate (CIV)
**Sent:** Tuesday, September 25, 2018 9:24 PM
**To:** 'Goldstein, Elena' <Elena.Goldstein@ag.ny.gov>; Dale Ho <dho@aclu.org>; Freedman, John A. <John.Freedman@arnoldporter.com>; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Kopplin, Rebecca M. (CIV) <rkopplin@CIV.USDOJ.GOV>; Halainen, Daniel J. (CIV) <dhalaine@CIV.USDOJ.GOV>; Tomlinson, Martin M. (CIV) <mtomlins@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>
**Cc:** Sarah Brannon <sbrannon@aclu.org>; Perry Grossman <PGrossman@nyclu.org>; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; Bauer, Andrew <Andrew.Bauer@arnoldporter.com>; Gersch, David P. <David.Gersch@arnoldporter.com>; Grossi, Peter T. <Peter.Grossi@arnoldporter.com>; Weiner, David J. <David.Weiner@arnoldporter.com>; Young, Dylan Scot <Dylan.Young@arnoldporter.com>; Kelly, Caroline <Caroline.Kelly@arnoldporter.com>; Saini, Ajay <Ajay.Saini@ag.ny.gov>
**Subject:** RE: NY v. Commerce, 18-cv-2921: outstanding discovery issues

Counsel,

With regard to the supplemental searches we agreed to conduct in response to your fifth motion to compel (Item 3 in your first discovery dispute letter today), please note that your recitation again mischaracterizes the searches we agreed upon, as you still include Velkoff and Raglin as custodains. We have repeatedly made clear in previous correspondence that we agreed to perform searches responsive to your motion and will not expand either the terms or custodians beyond the parties' previous agreement. That said, we look forward to conferring with you regarding the material the parties previously have discussed.

Regarding the focus group materials (Item 5 in your first discovery dispute letter today), they have been delivered to your office as requested. The FedEx tracking number is 8013 9046 6422. The remaining materials are undergoing DRB review, as clearly explained in my September 20 email. They will not be produced until that review is complete, per the timeline set forth in my previous email.

As for Item #6 in your first discovery dispute letter, 23 out of 26 of the briefing memos are attached. A technical glitch prevented production of the remaining three today; we will provide those to you ASAP.

Regarding Item #7 in your first dispute letter today *and* your second discovery dispute letter of the day, received at 7:46 pm, your assertion of entitlement to the items listed in #1 of Attachment A to that letter is incorrect. Plaintiffs are not

4

entitled to the materials relied upon by Dr. Abowd because his report was designated under Rule 26(a)(2)(C), not (B), and we will not be providing them. As for the other items requested in your second discovery dispute letter today, kindly identify the RFPs to which you believe these materials would be responsive.

Regarding your request to meet and confer "no later than tomorrow," we each are unavailable during most of the day, but could make ourselves available at 5:30 pm. Please let us know if that works for you.

**Kate Bailey**
Trial Attorney
United States Department of Justice
Civil Division – Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7214
Washington, D.C. 20530
202.514.9239 | kate.bailey@usdoj.gov

---

**From:** Goldstein, Elena [mailto:Elena.Goldstein@ag.ny.gov]
**Sent:** Tuesday, September 25, 2018 12:03 PM
**To:** Bailey, Kate (CIV) <katbaile@CIV.USDOJ.GOV>; Dale Ho <dho@aclu.org>; Freedman, John A. <John.Freedman@arnoldporter.com>; Federighi, Carol (CIV) <CFederig@CIV.USDOJ.GOV>; Coyle, Garrett (CIV) <gcoyle@CIV.USDOJ.GOV>; Kopplin, Rebecca M. (CIV) <rkopplin@CIV.USDOJ.GOV>; Halainen, Daniel J. (CIV) <dhalaine@CIV.USDOJ.GOV>; Tomlinson, Martin M. (CIV) <mtomlins@CIV.USDOJ.GOV>; Ehrlich, Stephen (CIV) <sehrlich@CIV.USDOJ.GOV>; Wells, Carlotta (CIV) <CWells@CIV.USDOJ.GOV>
**Cc:** Sarah Brannon <sbrannon@aclu.org>; Perry Grossman <PGrossman@nyclu.org>; Colangelo, Matthew <Matthew.Colangelo@ag.ny.gov>; Bauer, Andrew <Andrew.Bauer@arnoldporter.com>; Gersch, David P. <David.Gersch@arnoldporter.com>; Grossi, Peter T. <Peter.Grossi@arnoldporter.com>; Weiner, David J. <David.Weiner@arnoldporter.com>; Young, Dylan Scot <Dylan.Young@arnoldporter.com>; Kelly, Caroline <Caroline.Kelly@arnoldporter.com>; Saini, Ajay <Ajay.Saini@ag.ny.gov>
**Subject:** NY v. Commerce, 18-cv-2921: outstanding discovery issues

Counsel,
Please see attached.

**Elena Goldstein | Senior Trial Counsel**
Civil Rights Bureau
New York State Office of the Attorney General
28 Liberty Street, 20th Floor | New York, New York 10005
Tel: (212) 416-6201 | Fax: (212) 416-6030 | elena.goldstein@ag.ny.gov | www.ag.ny.gov

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.
_____
For more information about Arnold & Porter, click here:
http://www.arnoldporter.com