October 22, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

RE:     Plaintiffs' motion regarding trial testimony from Commerce Department officials
        in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

Three Department of Commerce officials – Earl Comstock, the Deputy Chief of Staff and Policy Director; Karen Dunn Kelley, the Acting Deputy Secretary; and Wendy Teramoto, the former Chief of Staff – were directly involved in key events leading up to Secretary Ross's decision to use the decennial census to demand information on the citizenship status of every resident in the country.[1]  Defendants have indicated they do not intend to call these officials at trial.  (Docket No. 380, at 5.)  Subsequent to the deposition of all three witnesses, Defendants supplemented the administrative record with further probative information regarding their involvement; their deposition testimony alone therefore will not give this Court the opportunity to review the "whole record" of the agency's decision.  5 U.S.C. § 706; *see generally Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1973).

Accordingly, and as permitted by Rule 43(a) and Rule 45(c) of the Federal Rules of Civil Procedure, Plaintiffs seek leave to call Comstock, Kelley, and Teramoto as live witnesses during trial, to testify by contemporaneous video transmission.[2]  In the alternative, Plaintiffs seek leave to conduct *de bene esse* depositions of these three witnesses.  Plaintiffs will be prejudiced without the opportunity to examine these witnesses regarding this newly-available information, and the Court's adjudication of Plaintiffs' claims will benefit from updated, live testimony.

*1. The Court should allow Plaintiffs to take these witnesses' live testimony during the trial by video transmission.*  The most effective and least burdensome way to present trial testimony from Comstock, Kelley, and Teramoto is for the Court to permit Plaintiffs to call these witnesses to testify by contemporaneous video transmission from Washington, D.C., or another location convenient to them.

---

[1] Because Secretary Ross's deposition (if permitted) would occur close in time to the trial, Plaintiffs do not seek video testimony or a separate *de bene esse* deposition of the Secretary.  If the Supreme Court denies Defendants' request for relief from this Court's order authorizing the Secretary's deposition, Plaintiffs will use applicable portions of that deposition at trial as permitted by Fed. R. Civ. P. 32(a).

[2] Defendants state in the parties' joint status letter (Docket No. 380) that Ms. Teramoto is no longer employed by the Department of Commerce.  Plaintiffs are in the process of confirming Ms. Teramoto's place of residence and employment, and believe she may be within the Court's subpoena power under Fed. R. Civ. P. 45(c)(1), in which case we will advise the Court and withdraw this motion as it relates to Ms. Teramoto.  Plaintiffs also intend to call Dr. John Abowd as a witness but do not include him in this motion because Defendants have represented that he can be made available on a number of days during the trial.

The plain language of Rule 43 and Rule 45 permits this Court to subpoena a witness to provide simultaneous video testimony at trial from a remote location.[3]  Rule 43(a) provides that a witness's testimony generally "must be taken in open court," but that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."  Fed. R. Civ. P. 43(a).  The 2013 amendments to Rule 45 contemplate that it may be used in conjunction with Rule 43 to permit trial testimony by video from courthouses close to witnesses.[4]  "When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)."  Advisory Committee Notes on the 2013 Amendment to Rule 45; *see also* 9A Wright & Miller, *Federal Practice & Procedure* § 2461 (3d ed. 2008 & Supp. 2018) (same).

At least two courts have adopted this plain-language reading of Rules 43 and 45.  In *In re Actos (Pioglitazone) Products Liability Litigation*, the court issued subpoenas for the video testimony of witnesses who could not be compelled to appear in person during trial.  No. 12-CV-00064, 2014 WL 107153, at *1 (W.D. La. Jan. 8, 2014).  The court observed that Rules 43 and 45, when read together, "embrace and address the concept of appearance at 'trial' to include contemporaneous live transmission from another location at the location of the Court."  *Id.* at *9.  The court declined to limit video testimony under Rule 43 to remote witnesses who were willing to testify at trial, noting that "[n]o such limitation appears on the face of Rule 43, nor is found within the comments addressing the Rule, and this Court will not impose such an unjustified gloss on the rule by jurisprudential fiat."  *Id.*  Likewise, in *In re Xarelto (Rivarozaban) Products Liability*, the court issued a subpoena requiring a witness to testify at trial remotely from another state.  *See* 2017 WL 2311719, at *4 (E.D. La. May 26, 2017).  The court followed the plain language approach to Rule 45 described in *Actos*, noting that the subpoena did not "seek to compel [the witness] to testify at a location beyond the 100-mile geographical reach contemplated in" Rule 45(c)(1)(A).  *Id.*

Allowing courts to compel remote live testimony furthers the policy goals of Rules 43 and 45.  The preference for in-person testimony in Rule 43(a) reflects "[t]he importance of presenting live testimony in court," including the "ceremony of trial and the presence of the factfinder," as well as "[t]he opportunity to judge the demeanor of a witness face-to-face."  Advisory Committee Notes on 1996 Amendment to Rule 43.  Although in-person testimony would be preferable to simultaneous video testimony for these purposes, live video testimony is undoubtedly closer to live testimony than a pre-recorded or written deposition.  *See, e.g., Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010).  Remote video testimony also serves the purpose of the geographic limitations of Rule 45(c) by minimizing inconvenience to the witness.

---

[3] Plaintiffs are serving subpoenas for these witnesses' trial testimony simultaneous with the filing of this motion.

[4] As amended, Rule 45 provides that a subpoena "must issue from the court where the action is pending," must specify the "time and place" of the required testimony, and may be served anywhere in the United States.  Fed. R. Civ. P. 45(a)(1)(A)(iii), (a)(2), (b)(2).  The subpoena "may command a person to attend a trial, hearing, or deposition" within 100 miles of where the person "resides, is employed, or regularly conducts business."  Fed. R. Civ. P. 45(c)(1)(A).  Rule 45(c) does not limit the location of either deposition or trial testimony to the court where the action is pending, and the Rule is otherwise silent on the place of the witness's attendance at trial.

Although some cases have adopted a narrower interpretation of Rules 43 and 45, these decisions depart from the plain language and policy goals of those rules. *See Roundtree v. Chase Bank USA, N.A.*, No. 13-239, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014) (declining to compel a remote witness to testify via video where moving party "provide[d] no legal authority or compelling reason"); *Ping-Kuo Lin v. Horan Capital Mgmt., LLC*, No. 14 Civ. 5202, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014) (following *Roundtree*). Plaintiffs respectfully suggest that *Actos* and *Xarelto* have the better reading of Rules 43 and 45 than *Roundtree* and *Ping-Kuo Lin*, and that this Court should allow simultaneous video testimony.

    2. *Good cause and compelling circumstances exist to present contemporaneous video testimony at trial.*  Taken together, Rule 43(a) and Rule 45(c) authorize the Court to compel trial testimony by contemporaneous video transmission where the Rule 43(a) prerequisites are otherwise met. Those requirements – "good cause in compelling circumstances and with appropriate safeguards," Fed. R. Civ. P. 43(a) – are met in this case.

    Mr. Comstock, Ms. Kelley, and Ms. Teramoto were deposed on August 30, 28, and 24, respectively. Since those depositions, Defendants have made material productions that supplement the administrative record on September 11, September 17, and October 16, including productions following motions to compel and an order compelling disclosure of previously-withheld documents. For example:

- Defendants' September 17 production included the disclosure of Comstock's unredacted September 8, 2017 memo to Secretary Ross (which he also provided to Teramoto). Ex. 1. This disclosure revealed for the first time that DOJ told Commerce in May 2017 that DOJ did *not* want to request inclusion of a citizenship question "given the difficulties Justice was encountering in the press at the time (the whole Comey matter)." This explanation contradicts Comstock's deposition testimony that McHenry said DOJ was "too busy" and "they weren't inclined to do the work, to ask for it." Ex. 2 (Comstock Dep. Tr. 275-76).

- The September 17 production also revealed that following a call about the census on August 8, 2017, Secretary Ross emailed Comstock to express concern that "[t]hey seem d[u]g in on not [ask]ing the citizenship question and that raises the question of where is the DoJ in their analysis?" Ex. 1. Comstock responded, in part, with an apparent proposal to whitewash the administrative record because of likely judicial review: "Since this issue will go to the Supreme Court we need to be diligent in preparing the administrative record." *Id.*

- Defendants' October 16 production shows previously undisclosed communications between all three witnesses and Mark Neuman, including an April 2017 message from Neuman to Comstock with the subject line "One of the Supreme Court cases that informs planning for 2020 Census....," and a link to a VRA Section 2 decision. Ex. 3. Comstock testified at his deposition that he had "no idea" whether he had discussed the citizenship question with Neuman by April 2017. Ex. 2 (Comstock Dep. Tr. 123-29).

- Defendants' September 11 production included an October 2017 email between Kelley and Aaron Willard regarding the citizenship question, stating: "1) must come from DOJ." Ex. 4; *see also* Docket No. 299-1 (Defs.' privilege log for AR 1403). This email contradicts Kelley's deposition testimony; when asked whether "Secretary Ross was hoping to get the

Department of Justice to support a request for such information," she testified "those are details that I do not know."  Ex. 5 (Kelley Dep. Tr. 127).

- The same production included a previously-withheld May 2017 email to Comstock from David Langdon (subject line: "Counting of illegal immigrants") explaining Langdon's research showing "that the counting of illegal immigrants (or of the larger group of non-citizens) has a solid and fairly long legal history."  Ex. 4.

These and other post-deposition disclosures go directly to these witnesses' role in key events in this litigation, and are highly relevant to Plaintiffs' claims.

That Defendants produced these materials only *after* Plaintiffs took these depositions in late August is not the result of any lack of diligence on Plaintiffs' part.  Plaintiffs have vigorously sought to complete the administrative record throughout this litigation.  (*E.g.*, Docket No. 193, Docket No. 201, Docket No. 220, Docket No. 237, Docket No. 293, Docket No. 299, Docket No. 313, Docket No. 343, Docket No. 349.)  In any event, these materials should all have been produced to Plaintiffs by mid-August without the need for extensive motions practice.  The Court ordered Defendants to complete the administrative record by July 23 (Docket No. 199), and later extended that deadline to July 26 with the admonition that "[n]o further extensions will be granted."  (Docket No. 211.)  And Plaintiffs served discovery requests on July 12 (Docket No. 201), which Defendants were obligated to respond to by August 11.  The records Defendants disclosed after the Comstock, Kelley, and Teramoto depositions were all responsive either to the Court's order to complete the record or to Plaintiffs' July 12 discovery requests, and therefore should all have been available to Plaintiffs by mid-August, *before* the depositions were taken.[5]

Nor would it be reasonable, given the expedited schedule, to suggest that Plaintiffs should have waited until later in the discovery period to depose these witnesses.  Even waiting until the last week of discovery would not have sufficed to allow these depositions to be conducted on a full administrative record: Defendants are *still* producing probative documents, including just a few days ago.  Ex. 6 (production of nearly six thousand pages of Commerce Department records on October 16).  And in light of the compressed discovery period in this case, it would not have been feasible for *all* depositions to be delayed until October; as it is, the parties conducted sixteen fact and expert depositions between October 3 and October 12 (and an additional five depositions that were scheduled to take place in that same time period were suspended following Justice Ginsburg's administrative stay order on October 9).

Good cause and compelling circumstances exist under Rule 43(a) where the witnesses are important to the case and where deposition testimony will not adequately account for current circumstances.[6]  *Xarelto*, 2017 WL 2311719, at *4.  Comstock, Kelley, and Teramoto were

---

[5] Defendants were well aware of the need to compile a complete administrative record as far back as August 2017, when Comstock emailed Secretary Ross that "[s]ince this issue will go to the Supreme Court we need to be diligent in preparing the administrative record."  Ex. 1.  The failure to compile that record even after months of litigation is not because this case was expedited, but because Defendants chose to present the Court with an incomplete administrative record from the start.

[6] The remaining consideration under Rule 43(a) – "appropriate safeguards" – is met where, as here, Defendants will have an opportunity for redirect examination of these witnesses, who can be placed under oath either by video

Secretary Ross's most senior aides working directly on the effort to demand citizenship information from every person in the country; and newly-disclosed documents produced for the first time after these witnesses' depositions – including numerous documents produced within the past week – shed new light on their involvement, or contradict their sworn deposition testimony.  Relying solely on deposition testimony would prejudice Plaintiffs, reward Defendants' discovery delays and overbroad privilege assertions, and hinder the Court's ability to adjudicate this case based on a complete record.  Good cause and compelling circumstances exist to compel these witnesses' appearance at trial by video under Rule 43(a).

     *3.  In the alternative, the Court should grant leave to take* de bene esse *depositions of the Department of Commerce witnesses.*  If the Court determines not to permit live testimony at trial via contemporaneous video transmission, Plaintiffs seek leave to take *de bene esse* depositions of the Commerce witnesses, not to exceed four hours each and to be conducted during the week of October 29.  The Second Circuit has indicated that a *de bene esse* deposition to preserve trial testimony is appropriate "when a witness is simply outside the subpoena power of the court and cannot be compelled to testify at trial."  *E.E.O.C. v. Beauty Enterprises, Inc.*, No. 01-Civ.-378, 2008 WL 3892203, at *2-3 (D. Conn. 2008) (citing *Manley v. AmBase Corp.*, 337 F.3d 237, 247-48 (2d Cir. 2003)).  Courts in the Second Circuit have generally considered the moving party's showing of need to take a trial preservation deposition as well as the "prejudice each side would incur."  *Beauty Enters.*, 2008 WL 38922203, at *2; *see also United States v. Int'l Longshoremen's Ass'n*, No. CV-05-3212, 2007 WL 2782761, at *1-2 (E.D.N.Y. 2007).

     As noted above, Defendants produced a number of critical documents after the Comstock, Kelley, and Teramoto depositions took place.  The availability of these newly-disclosed documents establishes Plaintiffs' need to conduct *de bene esse* depositions, and Plaintiffs' ability to present their case will be prejudiced absent this testimony.  *See Beauty Enters.*, 2008 WL 38922203, at *2 (authorizing *de bene esse* deposition where moving party demonstrated need and prejudice because relevant information only became available after the close of discovery).  By contrast, Defendants will suffer no prejudice from making these officials available for a short deposition, other than a brief interruption of their schedules.  Indeed, were these witnesses within the Court's 100-mile jurisdiction, they would have to appear at trial notwithstanding their earlier deposition.  Any burden is outweighed by Plaintiffs' need to present relevant testimony, and the Court's obligation to review the whole record of agency action.

     Because these *de bene esse* depositions would be for the purpose of preserving and presenting trial testimony, they would not contravene Justice Ginsburg's administrative stay of this Court's July 3 order authorizing discovery.  *See RLS Assocs., LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290 (CSH), 2005 WL 578917, at *6 (S.D.N.Y. Mar. 11, 2005) ("[T]he majority of courts considering this issue have made what can only be described as a federal common law distinction between 'discovery depositions' and 'trial depositions' (or alternatively, 'preservation depositions'), and have held the latter category permissible even after the discovery deadline had passed."); *Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 352-56 (D. Colo. 2001) (collecting cases holding that "'trial depositions' are not discovery").

---

transmission or through an officer authorized to administer oaths in Washington, D.C.  *See Fed. Trade Comm'n v. Swedish Match N. Am., Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000).

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Brian Lusignan, *Assistant Attorney General*
Office of the New York State Attorney General
The Capitol
Albany, NY 12224

Attorneys for the *State of New York* Plaintiffs


ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
* *Not admitted in the District of Columbia;*
*practice limited pursuant to D.C. App. R.*
*49(c)(3).*

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Attorneys for the *NYIC* Plaintiffs

# Exhibit 1

| | |
|---|---|
| **To:** | Teramoto, Wendy (Federal) ███████@doc.gov] |
| **From:** | Comstock, Earl (Federal) |
| **Sent:** | Sat 9/16/2017 11:33:38 AM |
| **Importance:** | Normal |
| **Subject:** | Calls with DoJ |
| **Received:** | Sat 9/16/2017 11:33:38 AM |

Case 1:18-cv-02921-JMF   Document 389-1   Filed 10/22/18   Page 2 of 4

Morning Wendy –

Here is the memo I gave SWLR regarding my discussions with DoJ.

Earl

\*\*\*

September 8, 2017

To:     Secretary Wilbur Ross

Fr:     Earl Comstock

Re:     <u>Census Discussions with DoJ</u>

 In early May Eric Branstad put me in touch with Mary Blanche Hankey as the White House liaison in the Department of Justice.  Mary Blanche worked for AG Sessions in his Senate office, and came with him to the Department of Justice.  We met in person to discuss the citizenship question.  She said she would locate someone at the Department who could address the issue.  A few days later she directed me to James McHenry in the Department of Justice.

 I spoke several times with James McHenry by phone, and after considering the matter further James said that Justice staff did not want to raise the question given the difficulties Justice was encountering in the press at the time (the whole Comey matter).  James directed me to Gene Hamilton at the Department of Homeland Security.

 Gene and I had several phone calls to discuss the matter, and then Gene relayed that after discussion DHS really felt that it was best handled by the Department of Justice.

 At that point the conversation ceased and I asked James Uthmeier, who had by then joined the Department of Commerce Office of General Counsel, to look into the legal issues and how Commerce could add the question to the Census itself.

September 8, 2017

To:     Secretary Wilbur Ross

Fr:     Earl Comstock

Re:     Census Discussions with DoJ

In early May Eric Branstad put me in touch with Mary Blanche Hankey as the White House liaison in the Department of Justice.  Mary Blanche worked for AG Sessions in his Senate office, and came with him to the Department of Justice.  We met in person to discuss the citizenship question.  She said she would locate someone at the Department who could address the issue. A few days later she directed me to James McHenry in the Department of Justice.

I spoke several times with James McHenry by phone, and after considering the matter further James said that Justice staff did not want to raise the question given the difficulties Justice was encountering in the press at the time (the whole Comey matter).  James directed me to Gene Hamilton at the Department of Homeland Security.

Gene and I had several phone calls to discuss the matter, and then Gene relayed that after discussion DHS really felt that it was best handled by the Department of Justice.

At that point the conversation ceased and I asked James Uthmeier, who had by then joined the Department of Commerce Office of General Counsel, to look into the legal issues and how Commerce could add the question to the Census itself.

**From:**      Wilbur Ross PII
**Sent:**      8/10/2017 7:38:25 PM
**To:**        Comstock, Earl (Federal) PII
**Subject:**   Re: Census Matter


I would like to be briefed on Friday by phone. I probably will need an hour or so to study the memo
first.we should be very careful,about everything,whether or not it is likely to end up in the SC. WLR

Sent from my iPad

> On Aug 9, 2017, at 10:24 AM, Comstock, Earl (Federal) PII wrote:
>
> PREDECISIONAL AND ATTORNEY-CLIENT PRIVILEGED
>
> Mr. Secretary – we are preparing a memo and full briefing for you on the citizenship question.  The
memo will be ready by Friday, and we can do the briefing whenever you are back in the office.  Since this
issue will go to the Supreme Court we need to be diligent in preparing the administrative record.
>
> Earl
>
> On 8/8/17, 1:20 PM, "Wilbur Ross" PII wrote:
>
>                              **Not Responsive / Deliberative**
> **Not Responsive / Deliberative** Were you on the call this morning about Census? They seem dig in about not
sling the citizenship question and that raises the question of where is the DoJ in their analysis ? If
they still have not come to a conclusion please let me know your contact person and I will call the AG.
Wilbur Ross
>
>    Sent from my iPhone
>
>> On Aug 8, 2017, at 10:52 AM, Comstock, Earl (Federal) PII wrote:
>>
>> Not Responsive / Deliberative
>
>

# Exhibit 2

Page 1

 1          UNITED STATES DISTRICT COURT

 2          SOUTHERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     NEW YORK IMMIGRATION COALITION, ET AL.,

 4

              Plaintiffs,

 5        vs.        Case No.   1:18-CF-05025-JMF

 6   UNITED STATES DEPARTMENT OF COMMERCE, ET AL.,

 7              Defendants.

     - - - - - - - - - - - - - - - - - - - - - - - - - - - -

 8

 9              Washington, D.C.

10              Thursday, August 30, 2018

11   Deposition of:

12              EARL COMSTOCK

13   called for oral examination by counsel for

14   Plaintiffs, pursuant to notice, at the office of

15   Arnold & Porter, 601 Massachusetts Avenue NW,

16   Washington, D.C., before KAREN LYNN JORGENSON,

17   RPR, CSR, CCR of Capital Reporting Company,

18   beginning at 9:08 a.m., when were present on

19   behalf of the respective parties:

20

21

22

Page 2

1                     CONTENT

                                                    PAGE
2
       EARL COMSTOCK                                9
3      Examination by Mr. Colangelo                 9
       Examination by Mr. Gersch                    241
4      Examination by Mr. Rosenberg                 336
       Examination by Ms. Senteno                   381
5      Examination by Ms. Boutin                    419
6
7              COMSTOCK DEPOSITION EXHIBITS
8    EXHIBIT                                        PAGE
     NUMBER
9      Plaintiffs' Exhibit 1    Email               56
       Plaintiffs' Exhibit 2    Email               62
10     Plaintiffs' Exhibit 3    Email               82
       Plaintiffs' Exhibit 4    Email               87
11     Plaintiffs' Exhibit 5    Memo                93
       Plaintiffs' Exhibit 6    Email               114
12     Plaintiffs' Exhibit 7    Email               120
       Plaintiffs' Exhibit 8    Email               123
13     Plaintiffs' Exhibit 9    Email               137
       Plaintiffs' Exhibit 10   Email               145
14     Plaintiffs' Exhibit 11   Email               147
       Plaintiffs' Exhibit 12   Email               158
15     Plaintiffs' Exhibit 13   Email               164
       Plaintiffs' Exhibit 14   Email               167
16     Plaintiffs' Exhibit 15   Memo                182
       Plaintiffs' Exhibit 16   Memo                189
17     Plaintiffs' Exhibit 17   Meeting             194
                                notification
18     Plaintiffs' Exhibit 18   Email               199
       Plaintiffs' Exhibit 19   Email               212
19     Plaintiffs' Exhibit 20   Email               215
       Plaintiffs' Exhibit 21   Email               218
20     Plaintiffs' Exhibit 22   Email               219
       Plaintiffs' Exhibit 23   Email               221
21     Plaintiffs' Exhibit 24   Email               224
       Plaintiffs' Exhibit 25   Email               226
22     Plaintiffs' Exhibit 26   Email               234
       Plaintiffs' Exhibit 27   Testimony from      293

Page 3

1                              Committee on
                               Oversight and
2                              Government
                               Reform
3    Plaintiffs' Exhibit 28    Memo                309
     Plaintiffs' Exhibit 29    Memo                317
4    Plaintiffs' Exhibit 30    Decisional          326
                               memorandum
5    Plaintiffs' Exhibit 31    Questions on        372
                               draft Census
6                              memo
     Plaintiffs' Exhibit 32    Memo                374
7    Plaintiffs' Exhibit 33    Questions on        376
                               draft Census
8                              memo
     Plaintiffs' Exhibit 34    Email               378
9    Plaintiffs' Exhibit 35    Trump campaign      383
                               email
10
11        (Exhibits attached to transcript.)

12
13
14
15
16
17
18                    Veritext Legal Solutions
                       Mid-Atlantic Region
                  1250 Eye Street NW - Suite 350
19                Washington, D.C.   20005
20
21
22

```
 1              A P P E A R A N C E S
    On behalf of New York Immigration
 2  Coalition, CASA De Maryland, American-Arab
    Anti-Discrimination Committee, ADC Research
 3  Institute and Make the Road New York:
            David Gersch, Esquire
 4          ARNOLD & PORTER
            601 Massachusettes Avenue, NW
 5          Washington, D.C. 20001
            (202) 942-5316
 6          david.gersch@arnoldporter.com
 7          Perry Grossman, Esquire
            New York Civil Liberties Union
 8          125 Broad Street
            New York, New York 1004
 9          (212) 607-3300
            pgrossman@nyclu.org
10
    On behalf of Kravitz Plaintiffs:
11          Daniel Grant, Esquire
            COVINGTON & BURLINGTON
12          850 Tenth Street, NW
            Washington, D.C. 20001
13          (202) 662-5458
            dgrant@cov.com
14
    On behalf of Los Angeles Unified School District:
15          Brian Park, Esquire (Telephonically)
            DANIELS WOLIVER KELLEY
16          115 Pine Avenue
            Suite 500
17          Long Beach, California 90802
            (562) 366-8500
18          bpark@dwkesq.com
19  On behalf of County of Los Angeles:
            David I. Holtzman, Esquire
20          HOLLAND & KNIGHT
            50 California Street, Suite 2800
21          San Francisco, California 94111
            (415) 743-6909
22          david.holtzman@hklaw.com
```

Page 5

```
 1    On behalf of LUPE Plaintiffs:
             Andrea Senteno, Esquire
 2           MALDEF
             1016 16th Street, NW
 3           Suite 100
             Washington, D.C. 20036
 4           (202) 293-2828
             asenteno@maldef.org
 5
             Niyati Shah, Esquire
 6           John C. Yang, Esquire
             ASIAN AMERICANS ADVANCING Justice
 7           1620 L Street, NW
             Suite 1050
 8           Washington, D.C. 20036
             (202) 296-2300
 9           nshah@advancingjustice-aajc.org
             jyang@advancingjustice-aajc.org
10
             Ezra Rosenberg, Esquire
11           Dorian Spence, Esquire
             LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW
12           1401 New York Avenue, NW
             Suite 400
13           Washington, D.C. 20005
             (202) 662-8345
14           erosenberg@lawyerscommittee.org
             dspence@lawyerscommittee.org
15
      On behalf of State of California:
16           Gabrielle Boutin, Esquire
             R. Matthew Wise, Esquire (Telephonically)
17           DEPARTMENT OF JUSTICE
             OFFICE OF THE ATTORNEY GENERAL
18           1300 I Street
             P.O. Box 944255
19           Sacramento, California 94244
             (916) 210-6053
20           gabrielle.boutin@doj.ca.gov
             matthew.wise@doj.ca.gov
21
22
```

Page 6

```
 1    On behalf of State of New York:
            Danielle Fidler, Esquire
 2          Elena Goldstein, Esquire
            Matthew Colangelo, Esquire
 3          Alex Finkelstein, Esquire
            ASSISTANT ATTORNEY GENERAL
 4          ENVIRONMENTAL PROTECTION BUREAU
            28 Liberty Street
 5          New York, New York 10005
            (212) 416-8441
 6          danielle.fidler@ag.ny.gov
            elena.goldstein@ag.ny.gov
 7          matthew.colangelo@ag.ny.gov
            alexfinkelstein@ag.ny.gov
 8
      On behalf of Defendants:
 9          Kate Bailey, Esquire
            Joshua Gardner, Esquire
10          U.S. DEPARTMENT OF JUSTICE
            20 Massachusetts Avenue
11          Washington, D.C. 20530
            (202) 305-9802
12          kate.bailey@usdoj.gov
            joshua.gardner@usdoj.gov
13
            Michael Cannon, Esquire
14          David M.S. Dewhirst,Esquire
            U.S. DEPARTMENT OF COMMERCE, OFFICE OF THE
15          ASSISTANT GENERAL COUNSEL FOR FINANCE &
            LITIGATION
16          1401 Constitution Avenue, NW
            Room 5890
17          Washington, D.C. 20230
            (202) 482-5395
18          mcannon@doc.gov
            ddewhirst@doc.gov
19
            Michael Walsh, Jr., Esquire
20          DEPUTY GENERAL COUNSEL
            1401 Constitution Avenue, NW
21          Washington, D.C. 20230
            (202) 482-4772
22          mwalsh@doc.gov
```

Page 7

1    VIDEOGRAPHER:   Dan Reidy

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 8

```
 1              P R O C E E D I N G S
 2    WHEREUPON,
 3              VIDEOGRAPHER:  Good morning.  We are
 4    going on the record at 9:01 a.m. on Thursday,
 5    August 30, 2018.  Please note that the microphones
 6    are sensitive and may pick up whispering, private
 7    conversations and cellular interference.  Please
 8    turn off all cell phones or place them away from
 9    the microphones, as that can interfere with the
10    deposition audio.  Audio and video recording will
11    continue to take place unless all parties agree to
12    going off the record.
13              This is Media Unit 1 of the video
14    recorded deposition of Earl Comstock to be taken
15    by counsel for the plaintiff in the matter of the
16    New York Immigration Coalition, et al., v. The
17    United States Department of Commerce, et al.  This
18    case is filed in the United States District Court
19    for the Southern District of New York.  This
20    deposition is being held at the law office of
21    Arnold & Porter located a 601 Massachusetts Avenue
22    Northwest, Washington, D.C. 20001.
```

Page 9

1          My name is Dan Reidy from the firm

2     Veritext Legal Solutions, and I am the

3     videographer.   The court reporter is Karen

4     Jorgenson from Veritext Legal Solutions.

5          I am not authorized to administer an

6     oath.   I am not related to any party in this

7     action, nor am I financially interested in the

8     outcome.

9          Also, counsel appearances will be noted

10    on the stenographic report rather than orally at

11    this time.

12         Will the court reporter please swear in

13    the witness?

14                    EARL COMSTOCK,

15    called as a witness, and having been first duly

16    sworn, was examined and testified as follows:

17              THE WITNESS:   I do.

18              EXAMINATION BY MR. COLANGELO:

19        Q    Please state your name and work address.

20        A    Earl Comstock, U.S. Department of

21    Commerce.

22        Q    And we met a minute ago, but for the

Page 123

1    conversations with Steven Bannon, so I wouldn't

2    know who he might have suggested the Secretary

3    talk to.

4    BY MR. COLANGELO:

5        Q    Have you ever spoken to Steven Bannon

6    yourself?

7        A    I have never spoken to Steven Bannon

8    myself.

9            MR. COLANGELO:   Can we have this marked

10   Exhibit 8?

11           (Plaintiffs' Exhibit 8, Email, was

12   marked.)

13   BY MR. COLANGELO:

14       Q    This is document stamped 3709.

15       A    Uh-huh.

16       Q    Do you have Exhibit 8 in front of you?

17       A    Uh-huh.

18       Q    Who's Mark Neuman?

19       A    Mark Neuman is a former -- I think he was

20   formally chair of a census advisory committee, and

21   he was a member of the transition -- I don't know

22   which aspect of transition but, basically,

Page 124

1   advising on census.

2       Q    How long have you known Mark Neuman?

3       A    I think I met Mark Neuman probably in

4   December or January of either December 2016 or

5   January 2017.  I don't recall which.

6       Q    And did you meet him in your capacity as

7   the confirmation Sherpa?

8       A    Yes.

9       Q    Did you discuss any Commerce Department

10  policy matters with him during the transition?

11      A    Not that I recall.

12      Q    Did you discuss any Census Bureau policy

13  matters with him during the transition?

14      A    We discussed -- I mean, he basically

15  briefed the Secretary on the Census operation,

16  some of the challenges they face, the whole issue

17  of hard-to-count populations, the challenges you

18  face hiring temporary workers, concerns about the

19  budget, whether they're properly funded.  Those

20  were the primary discussion points.

21      Q    Where does Mr. Newman work right now?

22      A    He is a senior VP at -- I don't know the

Page 125

1    name of the organization, but I know they own

2    Victoria's Secret.

3        Q    He's not a government employee right now?

4        A    No.

5        Q    Okay.   How often do you speak with him?

6        A    I last saw him several months ago when we

7    ran into each other at a party.

8        Q    And over the course of your time at the

9    Commerce Department, how often have you spoken

10·  with him?

11       A    Maybe a dozen times.

12       Q    By telephone?

13       A    Yep.

14       Q    Have you ever met with him in person?

15       A    I have met with him in person.

16       Q    How many times?

17       A    I think he briefed the Secretary maybe

18   two times, three times that I can recall, and he

19   had me over for dinner one time at his house to

20   meet a potential chief of staff of the

21   Census Bureau.

22       Q    What did he brief the Secretary on?

Page 126

1      A     Again, the whole operation of the Census,

2   background on it.   It's an area I was not familiar

3   with, and he was one of the folks on the

4   transition who was familiar with the Census.

5      Q     Have you been present for briefings he

6   gave the Secretary on the citizenship question?

7      A     I've been present -- did we cover

8   citizenship?   He covered citizenship at one of the

9   briefings.

10     Q     When was that?

11     A     I couldn't tell you the date.

12     Q     What did he say about citizenship in the

13  briefing that you attended with him?

14     A     We talked about how citizenship could

15  be -- what would it be useful for and in terms of

16  a government agency.   So the Voting Rights Act

17  enforcement, that's what the ACS data has provided

18  to the Justice Department.

19     Q     When was that briefing?

20     A     Again, sometime -- sometime in the

21  spring.   I can't -- couldn't tell you exactly

22  when.

Page 127

1    Q   Is Mr. Neuman a lawyer?

2    A   Good question. I don't know.

3    Q   Does Mr. Neuman have a voting rights

4 background?

5    A   I couldn't tell you.

6    Q   Take a look at Exhibit 8, which is an

7 email from you to Mr. Neuman at the bottom of the

8 page dated April 13, 2017. Do you see that?

9    A   Uh-huh.

10    Q   And the email says, "Hi, Mark. Quick

11 question. When does Census need to notify

12 Congress regarding the questions that will be on,

13 A, the ACS and, B, the decennial census?"

14    A   Correct.

15    Q   Why were you asking Mark this question?

16    A   Likely because Mark would know the

17 answer.

18    Q   Why didn't you ask the Office of General

19 Counsel?

20    A   Because at the time, there was nobody in

21 the Office of General Counsel that I

22 would -- would have been familiar with.

Page 128

1      Q    I'm not sure I understand what you mean

2    by nobody in the Office of General Counsel that

3    you would have been familiar with.

4      A    Well, there was nobody in the Office of

5    General Counsel that I was -- had easy access to

6    that works on census issues.

7      Q    You're the director of the office policy

8    in the Office of the Secretary?

9      A    Correct.

10     Q    Okay.  But you didn't think you could ask

11   the General Counsel's office this question at the

12   time?

13     A    Well, if you note the date, the time of

14   this email, it's 9:58 p.m.

15     Q    Uh-huh.

16     A    I'm trying to get an answer.  And I'm

17   pretty certain there's going to be nobody in the

18   Office of General Counsel at 9:58 p.m.

19     Q    Did you need an answer that night?

20     A    I usually try to get answers as quickly

21   as I can, yes.

22     Q    Why were you asking this question?

Page 129

1     A    Probably because it was on my list of

2   things to do, and I was working, trying to get

3   those things done.

4     Q    And how did it come to be on your list of

5   things to do?

6     A    Well, I may have been -- again, the

7   Secretary might have asked me about when do we

8   need to get questions, when do we need to notify

9   the Congress?

10    Q    Okay.  So you asked Mr. Neuman this

11  question in order to respond to a question from

12  the Secretary?

13    A    I don't know the genesis because I didn't

14  say in the email why I need the information.

15    Q    Why didn't you ask the Census Bureau this

16  question?

17    A    Because in April, I probably had no

18  contracts over at the Census Bureau.

19    Q    By April 13th of 2017, had you already

20  discussed the citizenship question with

21  Mr. Neuman?

22    A    I have no idea.

Page 275

1  them.  But if they don't give a reason, sir, don't

2  you say to them, why do you want it?

3          MR. GARDNER:  Objection.  Calls for a

4  hypothetical.

5          THE WITNESS:  Again, I already provided

6  the reason for Department of Justice.  I said,

7  would it be useful for you to have more granular

8  voting data at the census lock level?  He said he

9  would inquire.  That answers your question.  I'd

10  already provided the answer.

11  BY MR. GERSCH:

12      Q    Mr. McHenry comes back at some point and

13  he says he's not interested, right, in words or

14  substance?

15      A    He suggested that I contact the

16  Department of Homeland Security.

17      Q    But I take it he makes it clear to you in

18  some fashion -- withdrawn.

19          Let's start with this.  What did he say

20  to you?

21      A    He suggested I talk to the Department of

22  Homeland Security.

Page 276

1      Q   Did he also say, listen, I don't really

2   need that information, or my guys don't need that

3   information, or my department doesn't need that

4   information or something like that?

5          MR. GARDNER:  Objection to form.

6          THE WITNESS:  Again, no, he did not

7   indicate that they did not need the information.

8   He simply suggested that they were rather busy and

9   why don't I talk to the Department of

10  Homeland Security.

11  BY MR. GERSCH:

12     Q   It's your testimony that he said they

13  were too busy to do it?

14     A   Unfortunately, that's not an uncommon

15  response from other agencies.  They don't

16  necessarily look for extra work.

17     Q   Okay.  So they were too busy to ask for

18  it, that's what you understood them to say?

19     A   Yeah.  Their inclination was they weren't

20  inclined to do the work, to ask for it, yeah.

21     Q   Okay.  Okay.  So Mr. McHenry let's you

22  know he's not inclined or the department is not

Page 437

```
 1                      * * * * *

 2               CERTIFICATE OF REPORTER

 3         I, KAREN LYNN JORGENSON, RPR, CSR, CCR the

 4     officer before whom the foregoing deposition was

 5     taken, do hereby certify that the witness whose

 6     testimony appears in the foregoing deposition was

 7     duly sworn by me; that the testimony of said

 8     witness was taken by me in stenotype and

 9     thereafter reduced to typewriting under my

10     direction; that the said deposition is a true

11     record of the testimony given by said witness;

12     that I am neither counsel for, related to, nor

13     employed by any of the parties to the action in

14     which this deposition was taken; and further, that

15     I am not a relative or employee of any counsel or

16     attorney employed by the parties hereto, nor

17     financially or otherwise interested in the outcome

18     of this action.

19     _____

20               KAREN LYNN JORGENSON, RPR, CCR, CSR

21     Dated this 3rd   day

22     of      September  , 2018.
```

# Exhibit 3

**To:**     Wilbur Ross [PII]
**From:**   [PII]
**Sent:**    Tue 5/2/2017 2:24:57 PM
**Importance:**    Normal
**Subject:**   Re: Census
**Received:**      Tue 5/2/2017 2:24:58 PM

Ok. Let me talk to him and see how he could do it. W

Sent from my iPhone

On May 2, 2017, at 7:23 AM, Wilbur Ross [PII] wrote:

> Let's try to stick him in there for a few days to fact find. W
>
> Sent from my iPhone
>
> On May 2, 2017, at 7:17 AM, Teramoto, Wendy (Federal) < [PII] @doc.gov> wrote:
>
>> I continue to talk frequently with Marc Neumann and we often have dinner together. He will not leave les but is in love with the census and talks about it non stop. I know he would help you as much as he can. Do you want me to set up another meeting?  I think you could task him with putting together an immediate action plan. Also. He may be in NYC this weekend. I think you are to. Let me know if you want to have a drink or get together with him over the weekend. Wendy
>>
>> Sent from my iPhone
>>
>> Begin forwarded message:
>>
>>> **From:** "Alexander, Brooke (Federal)" < [PII] @doc.gov>
>>> **Date:** May 2, 2017 at 7:10:21 AM PDT
>>> **To:** "Teramoto, Wendy (Federal)" < [PII] @doc.gov>
>>> **Subject:** FW: Census
>>>
>>> -----Original Message-----
>>> From: Wilbur Ross [mailto: [PII] ]
>>> Sent: Tuesday, May 02, 2017 10:04 AM
>>> To: Comstock, Earl (Federal) < [PII] @doc.gov>; Herbst, Ellen (Federal) <EHerbst@doc.gov>
>>> Subject: Census

# Not Responsive

COM_DIS00016118

# Not Responsive

Not Responsive Worst of all they emphasize that they have settled with congress on the questions to be asked.  I am mystified why nothing have been done in response to my months old request that we include the citizenship question. Why not? Not Responsive

# Not Responsive

COM_DIS00016119

**To:**      Herbst, Ellen (Federal ⌐ ‾‾‾‾ PII ‾‾‾‾ ¬
**From:**    Comstock, Earl (Federal)
**Sent:**     Tue 3/14/2017 12:10:33 PM
**Importance:**    Normal
**Subject:**  Re: 17-053169
**Received:**      Tue 3/14/2017 12:10:35 PM

He had a meeting with Mark Newman on Census in NYC this weekend and has another scheduled for Thursday I believe.

Will ask him about the Census response. Earl

Sent from my iPhone

> On Mar 14, 2017, at 7:59 AM, Herbst, Ellen (Federal) [ PII ]
>
> I don't know if he got through all the material that was in his weekend book
>
> Sent from my iPhone
>
>> On Mar 14, 2017, at 7:50 AM, "Comstock, Earl (Federal)" < [ PII ] > wrote:
>>
>> Let's discuss.  Has the Secretary reviewed the Census Bureau action plan?  Thanks.  Earl
>>
>> From: "Owens, Derrick (Federal)" [ PII ]
>> Date: Monday, March 13, 2017 at 6:25 PM
>> To: "Comstock, Earl (Federal)" [ PII ], "Langdon, David (Federal)" [ PII ], Carter Hartman [ PII ]
>> Cc: "Alvord, Dennis (Federal)" [ PII ]
>> Subject: 17-053169
>>
>> Good evening,
>>
>> Please clear on this assignment by COB on Tuesday.
>>
>> Thank you.
>> <17-053169 Clearance Package.pdf>

COM_DIS00016561

**To:**  Comstock, Earl (Federal)    **PII**
**From:** A M Neuman
**Sent:**  Tue 4/11/2017 6:31:13 PM
**Importance:**  Normal
**Subject:** One of the Supreme Court cases that informs planning for 2020 Census....
**Received:**   Tue 4/11/2017 6:31:20 PM
index.pdf

https://supreme.justia.com/cases/federal/us/548/05-204/index.pdf

A. Mark Neuman

COM_DIS00018615

**To:**    Teramoto, Wendy (Federal)        PII
**From:**    PII
**Sent:**    Mon 6/19/2017 3:02:45 AM
**Importance:**    Normal
**Subject:**    Re: When are kdk murder boards?
**Received:**    Mon 6/19/2017 3:02:46 AM

You mentioned him last week. I will email him now.


- BJL


**Brian J. Lenihan**

Acting Assistant Secretary || OLIA

U.S. Department of Commerce

D PII || C: PII

On Jun 18, 2017, at 10:57 PM, Teramoto, Wendy (Federal) < PII wrote:

> Is mark Neuman involved?  He needs to be. She will be all about the census. PII
>
> Sent from my iPhone
>
> On Jun 18, 2017, at 10:55 PM, Lenihan, Brian (Federal) < PII wrote:
>
>> First on Wednesday @ 9:30am in HCHB. #2 on Monday afternoon 6/26
>>
>>
>> - BJL
>>
>>
>> **Brian J. Lenihan**
>>
>>
>> C: 202.394.0993
>>
>>
>> On Jun 18, 2017, at 10:22 PM, Teramoto, Wendy (Federal) PII wrote:
>>
>>
>>> Sent from my iPhone

**To:** Willard, Aaron (Federal)  PII
**Cc:** Park-Su, Sahra  PII  Hernandez, Israel (Federal)  PII  Lindsey,
Cameron  PII
**From:** Kelley, Karen (Federal)
**Sent:** Tue 8/29/2017 12:29:59 AM
**Importance:** Normal
**Subject:** Re: Mark Neuman mtg. req
**Received:** Tue 8/29/2017 12:30:00 AM

Hi

Can we please do this by phone tomorrow or in person on Wednesday am before we leave for census

Thanks

Kdk
Sent from my iPhone

On Aug 28, 2017, at 6:20 PM, Willard, Aaron (Federal) < PII > wrote:

> Karen,
>
> Mark is the guy that does tea. Up to you, but this might be able to wait.
>
> -Aaron
>
> Sent from my iPhone
>
> On Aug 28, 2017, at 6:06 PM, Park-Su, Sahra < PII > wrote:
>
>> Karen,
>>
>> Mark would like to come in and meet with you tomorrow before your Census meeting.
>>
>> Would you like to schedule a meeting with him for tomorrow?
>>
>> Sahra

# Exhibit 4

**To:** Kelley, Karen (Federal) PII
**From:** Willard, Aaron (Federal)
**Sent:** Mon 10/9/2017 9:03:50 PM
**Importance:** Normal
**Subject:** Notes from drive
**Received:** Mon 10/9/2017 9:03:52 PM

1) must come from DOJ
2) court cases you can hang your hat on
3) every Census since 1880, except 2000

Sent from my iPhone

**To:**      Comstock, Earl (Federal)[     **PII**     ] Herbst, Ellen (Federal)[EHerbst@doc.gov]
**From:**    Langdon, David (Federal)
**Sent:**     Wed 5/24/2017 9:38:29 PM
**Importance:**      High
**Subject:**   Counting of illegal immigrants
**Received:**       Wed 5/24/2017 9:38:30 PM
Crawford Letter & DOJ Memo.pdf

Earl and Ellen,

Long story short is that the counting of illegal immigrants (or of the larger group of non-citizens) has a solid and fairly long legal history.

The most recent case was Louisiana v. Bryson.  In a lawsuit filed directly in the Supreme Court, without prior action in lower courts, the state contended that it has been denied one potential seat in the House because illegal immigrants are counted in census totals, putting Louisiana at a disadvantage in House apportionment.  The motion for leave to file was denied.

A second piece of interest in a Bush 41 era DOJ opinion that proposed legislation to exclude illegal aliens from the decennial census was illegal.

Let me know if you need additional background on the legal arguments.

Dave

Exhibit 5

Page 1

```
 1          UNITED STATES DISTRICT COURT
 2          SOUTHERN DISTRICT OF NEW YORK
 3   ----------------------------------------
     NEW YORK IMMIGRATION COALITION, ET AL.,
 4
                    Plaintiffs,
 5          vs.          Case No.  1:18-CF-05025-JMF
 6   UNITED STATES DEPARTMENT OF COMMERCE, ET AL.,
 7                    Defendants.
     ----------------------------------------
 8
 9                    Washington, D.C.
10                    Tuesday, August 28, 2018
11   Deposition of:
12               KAREN DUNN KELLEY
13   called for oral examination by counsel for
14   Plaintiffs, pursuant to notice, at the office of
15   Arnold & Porter, 601 Massachusetts Avenue NW,
16   Washington, D.C., before KAREN LYNN JORGENSON,
17   RPR, CSR, CCR of Capital Reporting Company,
18   beginning at 9:04 a.m., when were present on
19   behalf of the respective parties:
20               Veritext Legal Solutions
                    Mid-Atlantic Region
                    1250 Eye Street NW - Suite 350
21               Washington, D.C.  20005
22
```

Page 2

```
 1                      CONTENT

                                              PAGE
 2
      KAREN DUNN KELLEY                         9
 3    Examination by Mr. Grossi                 9
      Examination by Ms. Goldstein            269
 4    Examination by Ms. Boutin               323
      Examination by Ms. Shah                 339
 5    Examination by Mr. Adams                349
 6
 7        KAREN DUNN KELLEY DEPOSITION EXHIBITS
 8    EXHIBIT                                   PAGE
      NUMBER
 9    Plaintiffs' Exhibit 1    Statement       33
      Plaintiffs' Exhibit 2    Email chain     47
10    Plaintiffs' Exhibit 3    Email chain     52
      Plaintiffs' Exhibit 4    Supplemental    65
11                             memorandum
      Plaintiffs' Exhibit 5    Defendants'     65
12                             objections
      Plaintiffs' Exhibit 6    Email train     78
13    Plaintiffs' Exhibit 7    Emails          84
      Plaintiffs' Exhibit 8    Email           90
14    Plaintiffs' Exhibit 9    Email          105
      Plaintiffs' Exhibit 10   Email          107
15    Plaintiffs' Exhibit 11   Email          119
      Plaintiffs' Exhibit 12   Declaration    119
16    Plaintiffs' Exhibit 13   Email          135
      Plaintiffs' Exhibit 14   Email          145
17    Plaintiffs' Exhibit 15   Email          156
      Plaintiffs' Exhibit 16   January 3, 2018 159
18                             memorandum
      Plaintiffs' Exhibit 17   Email          183
19    Plaintiffs' Exhibit 18   Email          186
      Plaintiffs' Exhibit 19   Email          194
20    Plaintiffs' Exhibit 20   Email          195
      Plaintiffs' Exhibit 21   January 9, 2018 203
21                             memorandum
      Plaintiffs' Exhibit 22   Email          219
      Plaintiffs' Exhibit 23   Email          235
22    Plaintiffs' Exhibit 24   Email          242
```

1    Plaintiffs' Exhibit 25   Email            243

     Plaintiffs' Exhibit 26   Questions        249

2    Plaintiffs' Exhibit 27   March 1, 2018    252

                              memorandum

3    Plaintiffs' Exhibit 28   Final decision   258

     Plaintiffs' Exhibit 29   September 20,    355

4                             2017 memorandum

5            (Exhibits attached to transcript.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

A P P E A R A N C E S

On behalf of New York Immigration Coalition, CASA De Maryland, American-Arab Anti-Discrimination Committee, ADC Research Institute and Make the Road New York:

David Gersch, Esquire
Peter Grossi, Esquire
John Freedman, Esquire
Caroline Kelly, Esquire
ARNOLD & PORTER
601 Massachusettes Avenue, NW
Washington, D.C. 20001
(202) 942-5316
david.gersch@arnoldporter.com
peter.grossi@arnoldporter.com
john.freedman@arnoldporter.com
caroline.kelly@arnoldporter.com

Perry Grossman, Esquire
New York Civil Liberties Union
125 Broad Street
New York, New York 1004
(202) 607-3300
pgrossman@nyclu.org

On behalf of Kravitz Plaintiffs:

Daniel Grant, Esquire
COVINGTON & BURLINGTON
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-5458
dgrant@cov.com

On behalf of Los Angeles Unified School District:

Keith Yeomans, Esquire (Telephonically)
DANIELS WOLIVER KELLEY
115 Pine Avenue
Suite 500
Long Beach, California 90802
(562) 366-8500
kyeomans@dwkesq.com

Page 5

```
 1    On behalf of County of Los Angeles:
           David I. Holtzman, Esquire
 2         HOLLAND & KNIGHT
           50 California Street
 3         Suite 2800
           San Francisco, California 94111
 4         (415) 743-6909
           david.holtzman@hklaw.com
 5
      On behalf of Lupe Plaintiffs:
 6         Andrea Senteno, Esquire (Telephonically)
           MALDEF
 7         1016 16th Street, NW
           Suite 100
 8         Washington, D.C. 20036
           (202) 293-2828
 9         asenteno@maldef.org
10         Niyati Shah, Esquire
           ASIAN AMERICANS ADVANCING JUSTICE
11         1620 L Street, NW
           Suite 1050
12         Washington, D.C. 20036
           (202) 296-2300
13         nshah@advancingjustice-aajc.org
14    On behalf of City of San Jose & Black Alliance for
      Just Immigration:
15         Rory Adams, Esquire
           MANATT, PHELPS & PHILLIPS
16         7 Times Square
           New York, New York 10036
17         (212) 790-4501
           radams@manatt.com
18
           Ezra Rosenberg, Esquire
19         Dorian Spence, Esquire
           LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW
20         1401 New York Avenue, NW
           Suite 400
21         Washington, D.C. 20005
           (202) 662-8345
22         erosenberg@lawyerscommittee.org
           dspence@lawyerscommittee.org
```

Page 6

1

On behalf of State of California:
        Gabrielle Boutin, Esquire
2
        R. Matthew Wise, Esquire (Telephonically)
3       DEPARTMENT OF JUSTICE OFFICE OF THE ATTORNEY
        GENERAL
4       1300 I Street
        P.O. Box 944255
5       Sacramento, California 94244
        (916) 210-6053
6       gabrielle.boutin@doj.ca.gov
        matthew.wise@doj.ca.gov
7

On behalf of State of New York:
8       Elena Goldstein, Esquire
        Matthew Colangelo, Esquire
9       Alex Finkelstein, Esquire
        ASSISTANT ATTORNEY GENERAL, ENVIRONMENTAL
10      PROTECTION BUREAU
        28 Liberty Street
11      New York, New York 10005
        (212) 416-8441
12      elena.goldstein@ag.ny.gov
        matthew.colangelo@ag.ny.gov
13      alex.finkelstein@ag.ny.gov
14  On behalf of Defendants:
        Kate Bailey, Esquire
15      Joshua Gardner, Esquire
        U.S. DEPARTMENT OF JUSTICE
16      20 Massachusetts Avenue
        Washington, D.C. 20530
17      (202) 305-9802
        kate.bailey@usdoj.gov
18      joshua.gardner@usdoj.gov
19
20
21
22

Page 7

1      Michael Cannon, Esquire
       David M.S. Dewhirst, Esquire
2      U.S. DEPARTMENT OF COMMERCE, OFFICE OF THE
       ASSISTANT GENERAL COUNSEL FOR FINANCE &
3      LITIGATION
       1401 Constitution Avenue, NW
4      Room 5890
       Washington, D.C. 20230
5      (202) 482-5395
       mcannon@doc.gov
6      ddewhirst@doc.gov
7      Michael Walsh, Jr., Esquire
       DEPUTY GENERAL COUNSEL
8      1401 Constitution Avenue, NW
       Washington, D.C. 20230
9      (202) 482-4772
       mwalsh@doc.gov
10
       VIDEOGRAPHER:  Dan Reidy
11
12
13
14
15
16
17
18
19
20
21
22

Page 8

1                P R O C E E D I N G S

2    WHEREUPON,

3              VIDEOGRAPHER:  Good morning.  We are

4    going on the record at 9:04 a.m. on Tuesday,

5    August 28, 2018.  Please note that the microphones

6    are sensitive and may pick up whispering, private

7    conversations and cellular interference.  Please

8    turn off all cell phones and place them away from

9    the microphones, as they can interfere with the

10   deposition audio.  Audio and video recording will

11   continue to take place unless all parties agree to

12   go off the record.

13              This is Media Unit 1 of the deposition of

14   Karen Dunn Kelley taken by counsel for the

15   plaintiff in the matter of New York Immigration

16   Coalition, et al., versus U.S. Department of

17   Commerce, et al.  This case is filed in the U.S.

18   District Court for Southern District of New York.

19   This deposition is held at the law offices of

20   Arnold & Porter located at 601 Massachusetts

21   Avenue Northwest, Washington, D.C. 20001.

22              My name is Dan Reidy from the firm

Page 9

1     Veritext Legal Solutions, and I'm the

2     videographer.   The court reporter is

3     Karen Jorgenson from the firm Veritext Legal

4     Solutions.

5              I am not authorized to administer an

6     oath.  I am not related to any party in this

7     action, nor am I financially interested in the

8     outcome.  Also, counsels' appearances will be

9     noted on the stenographic record rather than

10    orally at this time.

11             Will the court reporter please swear in

12    the witness?

13                  KAREN DUNN KELLEY,

14    called as a witness, and having been first duly

15    sworn, was examined and testified as follows:

16             THE WITNESS:  Yes, I do.

17             EXAMINATION BY MR. GROSSI:

18    Q     Good morning, Secretary Kelley.  We met

19    briefly in the hall.  But for the record, my name

20    is Peter Grossi, and I'm an attorney here with

21    Arnold & Porter.  And I'm going to be leading off

22    this morning.  We represent the plaintiffs, the

1    though, is, simply, he's saying he's going to drop

2    off some review materials, conveying that they

3    were physical.  Do you remember him doing that?

4        A    No.  I do not.

5        Q    Can't help us, at all, about whether you

6    ever saw a legal memorandum from him?

7        A    I cannot help you, at all.

8        Q    Now, before the break, we were talking

9    about some documents that showed that Mr. Comstock

10   was working with Mr. Ross to determine if the

11   Department of Justice had any interest in adding a

12   citizenship question.  And what I'd like to

13   determine is whether, in fact, you knew anything

14   about that effort prior to the time that the

15   letter came over from Justice in December of 2017.

16            MR. GARDNER:  Objection.  Form.

17   BY MR. GROSSI:

18       Q    So my question is:  Did you know anything

19   about an effort to get the Department of Justice

20   to send such a letter?

21       A    I knew there were conversations between

22   Commerce and Justice.

Page 127

1      Q   And did you know the substance of those

2   conversations, even in summary form?

3      A   That it was about the citizenship

4   question, yes.

5      Q   Okay.  And that Secretary Ross was hoping

6   to get the Department of Justice to support a

7   request for such information, correct?

8      A   And that's where you're taking it to I --

9   those are details that I do not know.

10      Q   You just know he was discussing it with

11   the Department of Justice?

12      A   Yes.

13      Q   And you didn't have anything to do with

14   any of those discussions; is that right?

15          MR. GARDNER:  Objection.  Form.

16          THE WITNESS:  No.

17          Are you asking me if I participated in

18   any of those discussions?  The answer is:

19   Absolutely not.

20   BY MR. GROSSI:

21      Q   And he didn't brief you of any of those

22   discussions in the fall of 2017?

Page 363

1                        * * * * *

2              CERTIFICATE OF REPORTER

3        I, KAREN LYNN JORGENSON, RPR, CSR, CCR the

4   officer before whom the foregoing deposition was

5   taken, do hereby certify that the witness whose

6   testimony appears in the foregoing deposition was

7   duly sworn by me; that the testimony of said

8   witness was taken by me in stenotype and

9   thereafter reduced to typewriting under my

10  direction; that the said deposition is a true

11  record of the testimony given by said witness;

12  that I am neither counsel for, related to, nor

13  employed by any of the parties to the action in

14  which this deposition was taken; and further, that

15  I am not a relative or employee of any counsel or

16  attorney employed by the parties hereto, nor

17  financially or otherwise interested in the outcome

18  of this action.                _Karen Lynn Jorgenson_

19            _____

20            KAREN LYNN JORGENSON, RPR, CCR, CSR

21  Dated this  31st    day

22  of  August , 2018.

Exhibit 6



**U.S. Department of Justice**

Civil Division

Federal Programs Branch

| **Mailing Address** | Federal Programs Branch |
| Department of Justice | 950 Pennsylvania Ave, NW |
| Civil Division | Washington, DC  20530 |

October 16, 2018

**DELIVERED VIA ELECTRONIC MAIL**

John Arak Freedman
Arnold & Porter Kaye Scholer LLP (DC)
601 Massachusetts Avenue NW
Washington, DC 20001
john_freedman@aporter.com

Re: *New York Immigration Coalition, et al. v. U.S. Department of Commerce, et al.* (18-cv-2921)

Dear Counsel:

Defendants' Productions 9 and 10 in the above-captioned matter, which consist of documents produced in relation to Plaintiffs' fifth motion to compel, have been sent to you by FedEx overnight.  The discs are encrypted, and the password is ███████████   The documents are bates-stamped COM_DIS00015451 – COM_DIS00021400.

Please note that Production 10 also includes bates-stamped versions of calendars previously produced to you in response to the State of New York's second request for production of documents.  A separate privilege log for calendar-related documents will follow. Production 10 also includes focus-group materials previously produced to you without bates stamps.

If you have any questions or concerns regarding this matter, as always, please feel free to contact me at any time.

Best regards,
/s/ *Kate Bailey*
Trial Attorney