Cite as: 586 U. S. ____ (2018) 1

Opinion of GORSUCH, J.

# SUPREME COURT OF THE UNITED STATES

IN RE DEPARTMENT OF COMMERCE, ET AL.

ON APPLICATION FOR STAY

No. 18A375. Decided October 22, 2018

The application for stay presented to JUSTICE GINSBURG and by her referred to the Court is granted in part and denied in part. The application is granted as to the order of the United States District Court for the Southern District of New York dated September 21, 2018, which is stayed through October 29, 2018 at 4 p.m. The application is denied as to the orders of the United States District Court for the Southern District of New York dated July 3, 2018 and August 17, 2018.

If the applicants file a petition for a writ of certiorari or a petition for a writ of mandamus with respect to the stayed order by or before October 29, 2018 at 4 p.m., the stay will remain in effect until disposition of such petition by this Court. Should the petition be denied, this stay shall terminate automatically. In the event the petition is granted, the stay shall terminate upon the sending down of the judgment of this Court. The denial of the stay with respect to the remaining orders does not preclude the applicants from making arguments with respect to those orders.

JUSTICE GORSUCH, with whom JUSTICE THOMAS joins, concurring in part and dissenting in part.

To implement the constitutional requirement for an "actual Enumeration" of the people every 10 years, Art. I, §2, cl. 3, Congress has instructed the Secretary of Commerce to "take a decennial census . . . in such form and content as he may determine." 13 U. S. C. §141(a). Most censuses in our history have asked about citizenship, and Commerce Secretary Wilbur Ross recently decided to

CERTIFIED COPY ISSUED ON 10/23/2018

reinstate a citizenship question in the 2020 census, citing a statement from the Department of Justice indicating that citizenship data would help it enforce the Voting Rights Act of 1965. Normally, judicial review of an agency action like this is limited to the record the agency has compiled to support its decision. But in the case before us the district court held that the plaintiffs—assorted States and interest groups—had made a "strong showing" that Secretary Ross acted in "bad faith" and were thus entitled to explore his subjective motivations through "extra-record discovery," including depositions of the Secretary, an Acting Assistant Attorney General, and other senior officials. In two weeks, the district court plans to hold a trial to probe the Secretary's mental processes.

This is all highly unusual, to say the least. Leveling an extraordinary claim of bad faith against a coordinate branch of government requires an extraordinary justification. As evidence of bad faith here, the district court cited evidence that Secretary Ross was predisposed to reinstate the citizenship question when he took office; that the Justice Department hadn't expressed a desire for more detailed citizenship data until the Secretary solicited its views; that he overruled the objections of his agency's career staff; and that he declined to order more testing of the question given its long history. But there's nothing unusual about a new cabinet secretary coming to office inclined to favor a different policy direction, soliciting support from other agencies to bolster his views, disagreeing with staff, or cutting through red tape. Of course, some people may disagree with the policy and process. But until now, at least, this much has never been thought enough to justify a claim of bad faith and launch an inquisition into a cabinet secretary's motives.

Unsurprisingly, the government tells us that it intends to file a petition seeking review of the district court's bad faith determination and its orders allowing extra-record

Opinion of GORSUCH, J.

discovery. Toward that end, it has asked us to stay temporarily all extra-record discovery until we may consider its petition for review.

 Today, the Court signals that it is likely to grant the government's petition. It stays Secretary Ross's deposition after weighing, among other things, the likelihood of review and the injury that could occur without a stay. And it expressly invites the government to seek review of all of the district court's orders allowing extra-record discovery, including those authorizing the depositions of other senior officials.

 Respectfully, I would take the next logical step and simply stay all extra-record discovery pending our review. When it comes to the likelihood of success, there's no reason to distinguish between Secretary Ross's deposition and those of other senior executive officials: each stems from the same doubtful bad faith ruling, and each seeks to explore his motives. As to the hardships, the Court apparently thinks the deposition of a cabinet secretary especially burdensome. But the other extra-record discovery also burdens a coordinate branch in most unusual ways. Meanwhile and by comparison, the plaintiffs would suffer no hardship from being temporarily denied that which they very likely have no right to at all.

 There is another factor here, too, weighing in favor of a more complete stay: the need to protect the very review we invite. One would expect that the Court's order today would prompt the district court to postpone the scheduled trial and await further guidance. After all, that is what normally happens when we grant certiorari or indicate that we are likely to do so in a case where trial is imminent. But because today's order technically leaves the plaintiffs able to pursue much of the extra-record discovery they seek, it's conceivable they might withdraw their request to depose Secretary Ross, try to persuade the trial court to proceed quickly to trial on the basis of the remain-

| | |
|---|---|
| 4 | IN RE DEPARTMENT OF COMMERCE |

Opinion of GORSUCH, J.

ing extra-record evidence they can assemble, and then oppose certiorari on the ground that their discovery dispute has become "moot." To ensure that the Court's offer of prompt review is not made meaningless by such maneuvers, I would have thought it simplest to grant the requested extra-record discovery stay in full. Of course, other, if more involved, means exist to ensure that this Court's review of the district court's bad faith finding is not frustrated. I only hope they are not required.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit