

**U.S. Department of Justice**
Civil Division
Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005

---

**By ECF**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York

      Re:  *State of New York, et al., v. U.S. Department of Commerce, et al.*, 18-cv-2921 (JMF)

Dear Judge Furman:

      Pursuant to the Court's October 22, 2018 order, ECF 388, Defendants submit this letter in opposition to Plaintiffs' motion to exclude certain testimony of Defendants' expert, Dr. John Abowd. For the reasons set forth below, Dr. Abowd should be permitted to testify on all topics contained in Defendants' disclosure under Fed. R. Civ. P. 26(a)(2)(C).

      On September 21, 2018, Defendants disclosed the expert opinions of Dr. John Abowd, Chief Scientist and Associate Director for Research and Methodology at the U.S. Census Bureau, pursuant to Rule 26(a)(2)(C). Defendants' disclosure covered three areas. First, Defendants' disclosure outlined the Census Bureau's prior analyses regarding the citizenship question's possible impact on self-response rates, and it explained Dr. Abowd's opinions regarding the conclusions and limitations of those analyses. Second, Defendants' disclosure detailed the entire 2020 Census-taking process, from initial mailings, through Nonresponse Followup ("NRFU") operations—including in-person visits by enumerators and data obtained from proxies—through imputation, and it set forth Dr. Abowd's opinions concerning the Census Bureau's ability to ameliorate any decline in self-response rate due to the citizenship question. Third, Defendants' disclosure addressed the use of the citizenship question from the American Community Survey ("ACS") on the 2020 Census, and it explained Dr. Abowd's opinions regarding compliance with Census Bureau Quality Standards and Office of Management and Budget ("OMB") Statistical Policy Directives. Using these robust analyses, Dr. Abowd expressed three key conclusions:

1. The Census Bureau produced credible quantitative evidence that the inclusion of a citizenship question in the 2020 Census could be expected to lower the self-response rate in an identifiable and large sub-population—households that may contain non-citizens. The lower self-response rate can be expected to increase NRFU costs and lower the quality of census data other than the count itself. Therefore, the Census Bureau can and will make appropriate adjustments to various components of the 2020 Census, including NRFU and the Integrated Partnership and Communications Program, to mitigate these effects.

2. Neither the Census Bureau nor any external expert has produced credible quantitative evidence that the addition of a citizenship question to the 2020 Census would increase the net undercount or increase differential net undercounts for identifiable sub-populations. Therefore, there is no credible quantitative evidence that the inclusion of the citizenship question would affect the accuracy of the count.

      3. The citizenship question on the American Community Survey was thoroughly tested, most recently in 2006. Neither the Census Bureau's Quality Standards nor the OMB's Statistical Policy Directives require further testing of this question before it can be used on the 2020 Census. If the OMB believes that further testing is necessary, it may request and provide clearance for such testing before issuing the clearance for the 2020 Census.

I.     <u>Dr. Abowd Should Be Permitted to Testify on His Opinions of Plaintiffs' Experts.</u>

    It cannot be disputed that Defendants' 25-page, single-spaced expert disclosure went far beyond the requirements of Rule 26(a)(2)(C). In contrast to Rule 26(a)(2)(B)—which requires retained or specially employed experts to provide detailed disclosures—Rule 26(a)(2)(C) requires a disclosure stating only "(i) the subject matter on which the witness is expected to present evidence;" and "(ii) a *summary* of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added); *see Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn. 2013) ("The Rule 26(a)(2)(C) summary is considerably less extensive than the written expert report required by Rule 26(a)(2)(B)." (quotation marks and alterations omitted)). In the context of Rule 26(a)(2)(C), "[a] summary is defined as a brief account that states the main points of a larger body of information." *A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 2013 WL 5462277, at *3 (D. Colo. Sept. 30, 2013) (quoting *Nicastle v. Adams Cty. Sheriff's Office*, 2011 WL 1674954, at *1 (D. Colo. May 3, 2011). The idea is simply to "obviate the danger of unfair surprise regarding the factual and opinion testimony of the non-retained expert." *Chambers v. Fike*, 2014 WL 3565481, at *7 (D. Kan. July 18, 2014). For this reason, Rule 26(a)(2)(C) disclosures need not "outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," because "[i]mposing these types of requirements would make the Rule 26(a)(2)(C) disclosures more onerous than Rule 26(a)(2)(B)'s requirement of a formal expert report." *Id.*

    Despite Defendants' comprehensive Rule 26(a)(2)(C) disclosure, Plaintiffs argue that Dr. Abowd's critiques of certain Plaintiffs' experts should be excluded because Defendants' disclosure did not reference those experts by name. But Plaintiffs do not even attempt to explain, as they must, how the *substance* of their experts' opinions falls outside the scope of Defendants' expert disclosure.[1] *Safe Auto Ins. Co. v. State Auto. Mut. Ins. Co.*, 2009 WL 10679570, at *2 (S.D. Ohio Mar. 4, 2009) ("[A] rebuttal report need not mention the primary expert by name."); *Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc.*, 2004 WL 5499504, at *2 (N.D. Ind. Apr. 7, 2004). For example, Plaintiffs' experts Hermann Habermann and John Thompson opined on the need for pretesting a citizenship question, which is contradicted by Dr. Abowd's opinion that "[n]either the Census Bureau's Quality Standards nor the OMB's Statistical Policy Directives require further testing of [the citizenship] question before it can be used on the 2020 Census." Plaintiffs' expert Matthew Barreto used social science research and his own (deeply flawed) survey to speculate on the possible decline in self-response rates and the effectiveness of NRFU in light of the citizenship question, both of which contradict Dr. Abowd's opinions regarding the same. And Dr. Barreto, along with Plaintiffs' experts Joseph Salvo and William O'Hare, all submitted *rebuttal* reports explicitly responding to *Dr. Abowd's* opinions regarding the

---

[1] Plaintiffs argue that Dr. Abowd's "material criticisms [of Plaintiffs' experts] were not disclosed." ECF 387 at 2. But not only was the substance of those "material criticisms" omitted from Plaintiffs' letter, Plaintiffs actually concede that at least some portion of Dr. Abowd's criticisms "are non-substantive or consistent with Dr. Abowd's disclosed analysis of the Census Bureau's [NRFU] measures." *Id.*

2

impact of a decline in self-response rates on the ultimate differential net undercount, necessarily indicating that Drs. Abowd, Barreto, O'Hare, and Salvo were addressing the same subject matter.

Nonetheless, pursuant to Rule 37(c)(1), Plaintiffs urge the Court to exclude Dr. Abowd's testimony regarding the flaws in their experts' analyses. Even if Defendants' disclosure were insufficient (it is not), "[t]he Second Circuit has cautioned that before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Sprayregen v. A. Gugliotta Dev., Inc.*, 166 F. Supp. 3d 291, 295 (E.D.N.Y. 2016) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir.1988)); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."). Plaintiffs could hardly be surprised that Dr. Abowd disagreed with their experts, given their near-complete overlap in subject matter and given that several experts submitted rebuttal reports unambiguously responding to Dr. Abowd's opinions. *See Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) ("The purpose of [Rule 37(c)(1)] is to prevent the practice of 'sandbagging' an adversary with new evidence."). Defendants' Rule 26(a)(2)(C) disclosure properly set forth "a brief account that states the main points of a larger body of information," *A.R. by Pacetti*, 2013 WL 5462277, at *3, and Plaintiffs cannot now claim, after deposing Dr. Abowd for 23 total hours and soliciting his criticisms of their experts on the same topics, that they are prejudiced in any way by Defendants' purported failure to catalogue Dr. Abowd's criticisms by specific reference to each of Plaintiffs' experts.

II.  <u>Dr. Abowd Should Be Permitted to Testify on his Critiques of Matthew Barreto's Survey Methodology.</u>

Plaintiffs advance an additional argument for excluding Dr. Abowd's critiques of Dr. Barreto's unsound survey methodology. Citing no case law, Plaintiffs claim that Dr. Abowd failed to consider Dr. Barreto's underlying materials and therefore Dr. Abowd's testimony should be excluded under Fed. R. Evid. 702(c) because "[c]riticizing another expert without having reviewed that expert's supporting materials is not a 'reliable principle or method.'" ECF 387 at 3. This standard—that an expert cannot critique the facially deficient methodology of another expert without reviewing materials outside that experts' report—is nonsensical because rebuttal experts need not even read the *reports* they seek to rebut. *See Biomet Orthopedics*, 2004 WL 5499504, at *2; *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008) (rejecting plaintiff's argument that the expert is an improper rebuttal expert because he did not review the two expert reports he allegedly rebuts).[2]

Illogical standards aside, Plaintiffs essentially ask the Court to "gate-keep expert testimony from [it]self." *Joseph S. v. Hogan*, 2011 WL 2848330, at *2–3 (E.D.N.Y. July 15, 2011). In a bench trial, however, "expert testimony should be admitted so that the Court could have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions." *Id.* Indeed, "particularly in a bench trial, vigorous cross-examination, presentation of contrary evidence, and careful attention to the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,

---

[2] Plaintiffs also point out Dr. Abowd's two purported "incorrect understanding[s]" of Dr. Barreto's report, without any indication of why those technical "incorrect understanding[s]" cast doubt on Dr. Abowd's substantive criticisms and without any discussion of the other 33 points of disagreement between Dr. Abowd and Dr. Barreto. *See* ECF 387 at 2 (noting 35 points of disagreement).

3

920 F. Supp. 2d 475, 502 (S.D.N.Y. 2013) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)) (quotations and alterations omitted); *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *8 n.6 (S.D.N.Y. Apr. 8, 2009) ("In the context of a bench trial [ ] there is no possibility of prejudice, and no need to protect the factfinder from being overawed by 'expert' analysis."). The Court should thus permit Dr. Abowd's testimony regarding Dr. Barreto's survey methodology, and accord that testimony its due weight.

III.   <u>Dr. Abowd Should Be Permitted to Testify on Imputation, the 2018 End-To-End Test, and the 1970 Hispanic Origin Question.</u>

Plaintiffs also argue that "Dr. Abowd's testimony regarding three discrete additional issues should be barred for failure to timely or adequately disclose underlying facts or data he considered in forming his opinions." ECF 387 at 3. But Rule 26(a)(2)(C) contains no such requirement. *Compare* Fed. R. Civ. P. 26(a)(2)(B) (requiring retained or specially employed experts to disclose, *inter alia*, "the facts or data considered by the witness in forming [his or her opinions]"), *with* Fed. R. Civ. P. 26(a)(2)(C) (requiring non-retained experts to disclose only "(i) the subject matter on which the witness is expected to present evidence;" and "(ii) a summary of the facts and opinions to which the witness is expected to testify").[3] Even if there were such a requirement, however, Plaintiffs' own deposition excerpts render their contentions meritless.

After the self-response phase, and after NRFU operations, the Census Bureau uses a well-accepted statistical method called imputation to supply missing data for occupied addresses. *See Utah v. Evans*, 536 U.S. 452, 457 (2002). Plaintiffs argue that, in conjunction with Defendants' expert disclosure, "Defendants produced a single, heavily redacted report evaluating use of imputation during the 2010 census, referred to as 'Memo J-12,'" and that "Dr. Abowd conceded at deposition that he had reviewed [a] series of [these] memos." ECF 387 at 3. But Dr. Abowd said nothing of the sort. As Plaintiffs' own deposition excerpts make clear, not only did Dr. Abowd testify that he only considered the unredacted portions of Memo J-12, ECF 387-5 (Abowd 10/12 Tr. at 269, 277–78), but he further testified that it was the only such memo he considered, *id.* (Abowd 10/12 Tr. at 280–81). Because Defendants' produced Memo J-12, Plaintiffs' have all documents underlying Dr. Abowd's imputation opinions.

---

[3] Plaintiffs cite two cases for the proposition that "[c]ourts have routinely compelled [ ] disclosure [of materials considered] from Rule 26(a)(2)(C) witnesses," both of which concern treating physicians and neither of which say anything relevant to the instant dispute. In *In re World Trade Center*, the court simply noted that "[w]here the medical records provide the primary basis for a treating physician's opinion at trial, an abbreviated disclosure pursuant to FRCP 26(a)(2)(C) is likely adequate because it is supplemented by such records." 2014 WL 5757713, at *5 (S.D.N.Y. Nov. 5, 2014). But the court went on to say that "where the doctor seeks to render an opinion based upon facts, experiences, or observations not apparent from, or adequately disclosed in, the medical records, the abbreviated disclosure may fail to fully develop the expert's opinion and the scientific basis upon which the opinion rests," and thus "an opposing party may be unable to test sufficiently the expert's opinion during depositions and suffer unfairly from this handicap at trial." *Id.* The *World Trade Center* court said nothing about disclosure of materials where there is a lengthy, detailed Rule 26(a)(2)(C) disclosure. And Plaintiffs' cite to *Robinson* is wholly irrelevant, as it concerned the adequacy of a treating physician's disclosure under Rule 26(a)(2)(B), not (a)(2)(C). 2011 WL 4916709, at *2 (E.D.N.Y. Oct. 17, 2011).

4

Plaintiffs also advance the peculiar argument that Dr. Abowd should be "barred from expressing an opinion regarding the Census Bureau's imputation methodology" because, "having invoked Title 13 as a shield to bar production of imputation materials in this case, Defendants cannot selectively use the imputation analysis as a sword to have Dr. Abowd testify that the Census Bureau's imputation methodology may cure any remaining undercount at the end of the NRFU process." ECF 387 at 3–4. Plaintiffs nowhere explain the "imputation materials" they are referencing; presumably they mean Memo J-12. But while redactions in Memo J-12—not considered by Dr. Abowd—cover detailed data that is subject to Title 13's confidentiality restrictions, neither Defendants nor Dr. Abowd ever asserted that imputation *methodology* or imputation *procedures* were subject to Title 13. Indeed, Dr. Abowd is prepared to testify on every aspect of imputation. And as the Court well knows, Title 13 data underlies numerous Census Bureau statistics, so if Title 13 protections for underlying data precluded operational testimony, then nobody from the Census Bureau could testify about any aspect of the 2020 Census. That clearly would be absurd. Accordingly, Plaintiffs' attempt to preclude testimony on a critical aspect of the 2020 Census—simply because it is harmful to their case—should be rejected.

Plaintiffs also claim that "Dr. Abowd has access to substantial data and analysis conducted by the Census Bureau concerning the End-to-End test," and argue that, "[b]ecause the Census Bureau's analysis and data regarding the End-to-End test have not been produced, Dr. Abowd should be barred from providing opinions about or based on the 2018 End-to-End test." ECF 387 at 4. Again, this position is contrary to Plaintiffs' proffered evidence. Dr. Abowd specifically testified that he considered only one slide presentation in forming his End-to-End test opinions, and he even provided a roadmap for finding that publicly-available document on the internet. ECF 387-5 (Abowd 10/12 Tr. at 307–08). It is available here: https://www2.census.gov/programs-surveys/decennial/2020/program-management/pmr-materials/08-03-2018/pmr-update-testing-08-03-2018.pdf?#. Plaintiffs' complaints in this regard are baseless.

Lastly, Plaintiffs argue that Dr. Abowd should be barred from providing any opinions regarding a Hispanic origin question on the 1970 long-form questionnaire. ECF 387 at 4. Dr. Abowd referenced this question in Defendants' expert disclosure as an example of a question on a household survey (the Current Population Survey) that was imported onto the census questionnaire without further testing. Once again, Dr. Abowd specifically testified that he considered only one document to support his opinion in this regard: a 1979 paper by Jacob Siegel and Jeffrey Passel that was cited in the reference section of Defendants' expert disclosure, along with a publicly-available link. ECF 387-5 (Abowd 10/12 Tr. at 144). Plaintiffs contention that "Dr. Abowd's report does not cite any source for this information," ECF 387 at 4, is frivolous.

For the reasons set forth above, Defendants' Rule 26(a)(2)(C) disclosure, along with Defendants' subsequent (and unrequired) production of documents considered by Dr. Abowd, provided Plaintiffs more than sufficient notice of Dr. Abowd's anticipated testimony. The Court should therefore reject Plaintiffs' attempt to preclude any aspect of Dr. Abowd's testimony at trial.

Dated: October 26, 2018                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

JOSHUA E. GARDNER
CARLOTTA P. WELLS
Assistant Directors, Federal Programs Branch

/s/   Stephen Ehrlich
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
DANIEL HALAINEN
MARTIN TOMLINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

CC:    All Counsel of Record (by ECF)