October 29, 2018

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

   RE: Plaintiffs' reply in support of partial exclusion of opinion testimony by Dr. John Abowd in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

  Pursuant to the Court's October 22 Order (Docket No. 388), Plaintiffs submit this reply in support of the motion to partially preclude the expert testimony of Dr. John Abowd (Docket No. 387). Defendants' opposition (Docket No. 404) mischaracterizes the points of dispute and confirms Defendants' fundamental misunderstanding of its obligations to disclose prior to trial both the opinions of its expert and the facts and data he relied on under Rule 26(a)(2), as well as their obligation to timely supplement expert disclosures under Rule 26(e).

  1. *Scope of Dispute*: Plaintiffs are seeking a partial exclusion order regarding points Dr. Abowd did not disclose in his September 21 report and has never disclosed in any supplement under Rule 26(e)(2) – specifically, opinions he has regarding five of Plaintiffs' experts and three discrete points in his analysis (imputation, the 2018 end-to-end, and the 1970 example) where the disclosure failed to adequately disclose the facts and data Dr. Abowd relied upon.

  Plaintiffs are not seeking to preclude Dr. Abowd from testifying in this case, only to exclude certain of his opinions which were not adequately disclosed.[1] Dr. Abowd had no specific criticism at all of five other experts (Drs. Hillygus, van Hook, Handley, Reamer, or Warshaw), and he testified at deposition he has no reason to question the qualifications of Mr. Thompson, Dr. Habermann, Dr. Salvo, or Dr. O'Hare. No do Plaintiffs challenge Dr. Abowd's testimony regarding his conclusion that "the Census Bureau produced credible quantitative evidence that the addition of a citizenship question to the 2020 Census could be expected to lower the self-response rate in an identifiable and large sub-population – households that contain non-citizens" citing record evidence (AR 1277 & 1308, finding a 5.1 percent decrease) and non-record evidence (COM_DIS0000009833, estimating a 5.8 percent decrease).[2]

  2. *Dr. Abowd Did Not Satisfy the Rule 26(a)(2) or Rule 26(e) Disclosure Requirements Regarding His Opinions of Plaintiffs' Experts*: An "expert's report operates to limit the scope of

---

[1] Accordingly, the cases which Defendants cite on page 3 of their letter that preclusion is an "extreme sanction" all concern total exclusion of witnesses and are inapposite here. Because of the unfair prejudice to the opposing party, courts "routinely preclude an expert from testifying about matters that exceed those topics addressed in his Rule 26 report." *Tomaselli v. Zimmer Inc.*, No. 14 Civ. 04474(RA)(SN), 2017 WL 2820065, at *8 (S.D.N.Y. Jan. 1, 2017).

[2] In their Pretrial Memorandum of Law (Docket No. 412), Defendants dispute Dr. Abowd's own findings on this point and assert that the Court cannot consider the extra-record evidence cited by their own expert (without acknowledging that similar findings are in the record at AR 1277). Docket No. 412 at 8-11 & n.3.

the testimony that can be elicited from the expert."[3] Defendants emphasize that Dr. Abowd's report is "25-pages, single-spaced." Opp. 2. But the standard of sufficiency of disclosure is not length – it is whether the expert has disclosed the "opinions to which they intend to testify." To meet this standard under Rule 26(a), a "report must be complete such that opposing counsel is not forced to depose an expert to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Whalen v. CSX Transp., Inc.*, 13-cv-3784, 2016 WL 5660381, at *3 (S.D.N.Y. Sept. 29, 2016) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998); *accord Harkabi v. SanDisk Corp.*, 08-cv-8203, 2012 WL 2574717, at *3 (S.D.N.Y. June 20, 2012) ("The purpose of expert disclosure rules is 'to avoid surprise or trial by ambush'") (quoting *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002)).

Dr. Abowd's report fails this standard. His report does not disclose his opinions regarding Plaintiffs' experts, and Dr. Abowd testified he was not planning to directly express any opinions about Drs. Habermann or Baretto. Ex. 1 at 43-44, 54. When challenged to identify where he outlined *any* of his thirty-five points of disagreement with Dr. Barreto in his report, he was unable to do so. Ex. 1 at 95-96 ("Q: "You had a range, though, of criticisms of Dr. Barreto, for example in his main report about his survey methodology and survey design. Is any of that in your report? A: It is not. Q: Putting aside your central criticism . . . the misinterpretation of a decline in self-response as signifying anything with regard to an undercount, are there any other criticisms you have of Dr. Barreto's report discussed in your report? A: So let's make this easier. I didn't specifically discuss anything about Dr. Barreto's report when I wrote it – especially the version that's in front of me – especially the version that's in front of me, September 21st, I hadn't even read it. I had read it when I wrote the revised one,[4] but I didn't feel that I needed to comment specifically on his report, that I just needed to document where the estimates that I used in my report came from."). This falls well short of the standard.

It is no answer that Dr. Abowd has sat for lengthy depositions, Opp. 3 – most of these occurred prior to his September 21 expert disclosure, including his depositions on August 15 in his personal capacity and on August 29 as the sole designee by the Census Bureau to address a 30(b)(6) notice. The fact that Plaintiffs had to spend almost half of Dr. Abowd's expert deposition eliciting previously undisclosed opinions about Plaintiffs' experts demonstrates the insufficiency of the disclosure – opposing counsel was forced here to depose Dr. Abowd to avoid a complete ambush at trial. *Whalen*, 2016 WL 5660381, at *3. Given that Plaintiffs had prepared and needed to examine Dr. Abowd on his full report, there simply was no time either to prepare or to probe him about these previously undisclosed issues at deposition. This was not harmless.

It is also no answer that Defendants purport to have designated Dr. Abowd under Rule

---

[3] *See, e.g., LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426(WHP)(HBP), 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012); *Fund Comm. Serv. II, Inc. v. Westpac Banking Co*., 93 Civ. 8298(KTD)(RLE), 1996 WL 469660 at *3 (S.D.N.Y. Aug. 16, 1996).

[4] As noted in ECF 388 n.2, on October 1, Defendants produced a different version of Dr. Abowd's report. Defendants clawed back that report on a claim of inadvertent disclosure and work-product privilege. ECF 388-4. Plaintiffs believe Dr. Abowd may also have produced a separate expert report for one of the other lawsuits; but the only expert disclosure from Dr. Abowd that was disclosed to Plaintiffs and is in the record of this litigation is the report Defendants served on September 21.

26(a)(2)(C). Opp. 2-3. Rule 26(a)(2)(C) disclosures have traditionally been limited to treating physicians and all reported in-Circuit cases (including all cases cited by the Defendants) concern physicians. Moreover, given the extent the Dr. Abowd's opinions, this designation was improper. *See, e.g., Pierce v. City of New York*, 16-cv-5703, 2017 WL 2623857, at *3 (E.D.N.Y. June 16, 2017) (expert testimony that "relies upon scientific, technical, or other specialized knowledge . . . is governed by Federal Rule of Evidence 702, requiring expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(B)"); *Israeli v. Ruiz*, 14-cv-9244, 2015 WL 4618055, at *2 (S.D.N.Y. July 27, 2015) (Rule 26(a)(2)(C) testimony is limited to where expert testifies based "on whatever he observed. . . . He may not testify, however, as to matters derived from information acquired from outside sources."). In any event, Defendants agreed to comply with the Rule 26(a)(2)(B) requirements. Docket No. 388-3.

Finally, it is no answer that Drs. Baretto, Salvo, and O'Hare submitted rebuttal reports. Opp. 2. Dr. Abowd testified he had 17 points of criticism about Dr. Baretto's September 7 report, none of which he addressed. *See, e.g.*, *Liddle v. Cirrus Design Corp.*, No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) (precluding an expert's belatedly-disclosed opinions where they do "not rely on any information that was previously unknown or unavailable to him"). And with regard to the rebuttal reports, if Dr. Abowd formulated new opinions after his initial report that he considered "material," he and Defendants were under a "duty to supplement" the disclosure under Rule 26(e)(1). The duty to supplement extends to all Rule 26(a) disclosures, including expert disclosures under Rule 26(a)(2). Dr. Abowd indisputably failed to do so.

3. *Defendants fail to justify the failure to disclose facts or data considered by Dr. Abowd*: Defendants' contention that their failure to produce the facts or data considered by Dr. Abowd should be excused because he was designated under Rule 26(a)(2)(C) both ignores that this designation was improper, and that Defendants committed to produce "the materials relied upon or considered by Dr. Abowd" and represented they had done so. Docket No. 387-3, 387-4.

Dr. Abowd draws broad conclusions about two topics – he opines repeatedly about the "success" of the End-to-End test in demonstrating NRFU operations, and he states unequivocally that the "Census Bureau is not aware" of evidence suggesting there is bias in its imputation that would exacerbate the undercount. During his testimony, he cited a single document as directly tied to each proposition, but testified he had access to and was aware of extensive other materials and analysis from the Census Bureau that speaks to these issues – all withheld from production notwithstanding Plaintiffs' discovery requests. Both of these are classic sword and shield issues – Defendants would like Dr. Abowd to make points about imputation and the 2018 End-to-End, but have withheld the materials that would allow Plaintiffs to probe and cross-examine him on these points. The inadequacy of Dr. Abowd's disclosure regarding the 1970 example is clear from his inability to identify the source without consulting other materials. Ex. 1at 143.

Should the Court decide to permit Dr. Abowd to testify about imputation beyond what is specified in his September 21 report, to the extent that such testimony includes opinions and reliance upon materials that were not disclosed in that report and only disclosed after the October 1, 2018 deadline for Plaintiffs' rebuttal reports, Plaintiffs reserve the right to object and respond to his untimely opinions, and will provide any supplemental opinions to be offered in connection with that response within two days of the Court's ruling on this motion.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION


By:   /s/ John A. Freedman

| | |
|---|---|
| Dale Ho<br>American Civil Liberties Union Foundation<br>125 Broad St.<br>New York, NY 10004<br>(212) 549-2693<br>dho@aclu.org | Andrew Bauer<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>(212) 836-7669<br>Andrew.Bauer@arnoldporter.com |
| Sarah Brannon[+][**]<br>American Civil Liberties Union Foundation<br>915 15th Street, NW<br>Washington, DC 20005-2313<br>202-675-2337<br>sbrannon@aclu.org | John A. Freedman<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, N.W.<br>Washington, DC 20001-3743<br>(202) 942-5000<br>John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025


BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Elena Goldstein*
Elena Goldstein, *Senior Trial Counsel*
Matthew Colangelo

4

*Executive Deputy Attorney General*
Elizabeth Morgan, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Elena.Goldstein@ag.ny.gov

Attorneys for *State of New York* Plaintiffs, 18-CV-2921

5

Dr. John M. Abowd , Ph.D.

Page 1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - - -x
 3    NEW YORK IMMIGRATION         :
      COALITION, et al.,           :
 4                                 :
         Plaintiffs,               :
 5                                 : Case No.
           v.                      :
 6                                 : 1:18-CF-05025-JMF
      UNITED STATES DEPARTMENT     :
 7    OF COMMERCE, et al.,         :
                                   :
 8       Defendants.               :
    - - - - - - - - - - - - - - -x
 9                                   Friday, October 12,2018
                                           Washington, D.C.
10
11
12  Videotaped Deposition of:
13              JOHN  M. ABOWD, Ph.D.,
14  called for oral examination by counsel for the
15  Plaintiffs, pursuant to notice, at the law offices of
16  Arnold & Porter Kaye Scholer, LLP, 601 Massachusetts
17  Avenue, Northwest, Washington, D.C. 20001-3743,
18  before Christina S. Hotsko, RPR, CRR, of Veritext
19  Legal Solutions, a Notary Public in and for the
20  District of Columbia, beginning at 9:06 a.m., when
21  were present on behalf of the respective parties:
22
```

1     A.  Yes.

2     Q.  Do you know Dr. Habermann?

3     A.  Yes.

4     Q.  How long have you known him?

5     A.  We first met in the early 2000s.  He was
6  not the deputy director when I first started
7  working for the Census Bureau, but shortly
8  thereafter when he became the deputy director we
9  met.

10    Q.  And are you familiar with Dr. Habermann's
11 professional qualifications?

12    A.  Yes.

13    Q.  Do you have question about his
14 qualifications to provide the opinions in his
15 report?

16    A.  No.

17    Q.  Now, you don't discuss Dr. Habermann's
18 report in your report, correct?

19    A.  That's correct.

20    Q.  Are you planning to express any opinions
21 about Dr. Habermann's report at trial?

22    A.  It's the same general answer:  To the

Dr. John M. Abowd , Ph.D.

Page 44

1  extent that my general opinions are comments on
2  the opinions that he offered, I would -- I would
3  be expressing them at trial.
4      Q.  Do you remember anything specific beyond
5  that about his report that you intend to opine on
6  at trial?
7      A.  I would -- I would be happy to do the
8  same thing for Dr. Habermann's report that I just
9  did for Mr. Thompson's if you would to do that.
10     Q.  Sure.  Let me get his report.
11     A.  Sure.
12         MR. FREEDMAN:  Let's mark this 4.
13         (Abowd Deposition Exhibit 4 marked for
14         identification and attached to the
15         transcript.)
16 BY MR. FREEDMAN:
17     Q.  Before you dive too far in, can you
18 identify this for the record?
19     A.  This is the September 7th expert report
20 of Dr. Hermann Habermann.
21     Q.  Okay.  And if you could go through the
22 report and identify, as you did with

Dr. John M. Abowd , Ph.D.

Page 54

1      A.  Yes.
2      Q.  You don't discuss Dr. Barreto's reports
3  in your report, do you?
4      A.  Only in the same indirect way.
5      Q.  Okay.  Are you planning to express any
6  opinions about Dr. Barreto's report at trial?
7      A.  Only in the same indirect way.
8      Q.  Okay.  Is there anything specific in his
9  report that you intend to -- intend to opine about
10 at trial?
11     A.  I believe he misconcludes from his
12 analysis of the survey that he ran, and I will
13 opine on that if asked at trial.
14     Q.  Okay.  In what respect does he misopine
15 on the results?
16     A.  He's basically measuring self-response
17 rates with an opinion poll methodology that I'm
18 not going to criticize for the purposes in which
19 they're generally used, but for the purposes of
20 producing population estimates of complete
21 non-response to the census, it's wholly
22 inappropriate.  At best, it produces another

Dr. John M. Abowd , Ph.D.

Page 95

1        These are distinct quality measures that
2   we have -- I have consistently, both in fact and
3   in expert testimony, identified and quantified.
4   The fact that they can't be used directly to
5   produce a net undercount estimate hasn't affected
6   my opinion about whether the question should be on
7   the census.  It hasn't affected the Census
8   Bureau's recommendation about the question.
9        It seems to me to be something that is
10  undocumented by the plaintiffs' experts and that I
11  specifically call out as undocumented in my expert
12  report.
13     Q.   So I -- I understand that.  And we'll
14  spend some time going through that language and --
15  just to make sure we understand exactly what your
16  view is.
17       You had a range, though, of criticisms of
18  Dr. Barreto, for example, in his main report about
19  his survey methodology and --
20     A.   Right.
21     Q.   -- survey design.  Is any of that in your
22  report?

1      A.   It is not.

2      Q.   Putting aside your central criticism,
3   which I take is the misinterpret -- and if you
4   don't like my language, you can use your own
5   language -- but the misinterpretation of a decline
6   in self-response as signifying anything with
7   regard to an undercount, are the other criticisms
8   you have of Dr. Barreto's report discussed in your
9   report?

10     A.   So let's make this easier.  I didn't
11  specifically discuss anything about Dr. Barreto's
12  report when I wrote -- especially the version
13  that's in front of me, September 21st, I hadn't
14  even read it.  I had read it when I wrote the
15  revised one, but I didn't feel that I needed to
16  comment specifically on his report, that I just
17  needed to document where the estimates that I used
18  in my report came from.

19          And I am relying on the analysis I did.
20  And I am not relying on the analysis that
21  Dr. Barreto did.

22          You asked me what I disagreed with, so I

Dr. John M. Abowd , Ph.D.

Page 143

1    Q.  Your 1970 and your 1990 examples.
2        Were the Census Bureau's statistical
3   quality standards that govern the Census Bureau
4   today in effect in either 1970 or in 1990?
5    A.  No.
6    Q.  With regard to your 1970 example, which
7   is discussed on page 24 of your report, what is
8   your source of information for this analysis?  And
9   it's fine -- if you want to consult Exhibit 2,
10  that's fine.  We just should make clear on the
11  record that you're doing it.
12   A.  I'm consulting Exhibit 2.
13       Oh, okay.  It's in the footnote in both
14  places.  It's that 1990 census content reinterview
15  survey study cited in footnote 39.  Oh, sorry, no.
16   Q.  Right.  For the 1970 --
17   A.  I think the problem here is you had a
18  summary paragraph, and I actually discuss the 1970
19  example.  I know that I marked the sources, and
20  they're public, unlike the '92 experiment.
21       I can't figure out what happened to the
22  citation for that.  I apologize for having to --