Dr. John M. Abowd, Ph.D.

Page 1

```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK
 2
    - - - - - - - - - - - - - - -x
 3   NEW YORK IMMIGRATION         :
     COALITION, et al.,           :
 4                                :
         Plaintiffs,              :
 5                                : Case No.
         v.                       :
 6                                : 1:18-CF-05025-JMF
     UNITED STATES DEPARTMENT     :
 7   OF COMMERCE, et al.,         :
                                  :
 8       Defendants.              :
    - - - - - - - - - - - - - - -x
 9                        Friday, October 12,2018
                                  Washington, D.C.
10

11

12  Videotaped Deposition of:
13              JOHN  M. ABOWD, Ph.D.,
14  called for oral examination by counsel for the
15  Plaintiffs, pursuant to notice, at the law offices of
16  Arnold & Porter Kaye Scholer, LLP, 601 Massachusetts
17  Avenue, Northwest, Washington, D.C. 20001-3743,
18  before Christina S. Hotsko, RPR, CRR, of Veritext
19  Legal Solutions, a Notary Public in and for the
20  District of Columbia, beginning at 9:06 a.m., when
21  were present on behalf of the respective parties:
22
```

1      A.   Yes.

2      Q.   Do you know Dr. Habermann?

3      A.   Yes.

4      Q.   How long have you known him?

5      A.   We first met in the early 2000s.  He was

6 not the deputy director when I first started

7 working for the Census Bureau, but shortly

8 thereafter when he became the deputy director we

9 met.

10     Q.   And are you familiar with Dr. Habermann's

11 professional qualifications?

12     A.   Yes.

13     Q.   Do you have question about his

14 qualifications to provide the opinions in his

15 report?

16     A.   No.

17     Q.   Now, you don't discuss Dr. Habermann's

18 report in your report, correct?

19     A.   That's correct.

20     Q.   Are you planning to express any opinions

21 about Dr. Habermann's report at trial?

22     A.   It's the same general answer:  To the

Dr. John M. Abowd , Ph.D.

Page 44

1  extent that my general opinions are comments on
2  the opinions that he offered, I would -- I would
3  be expressing them at trial.
4     Q.  Do you remember anything specific beyond
5  that about his report that you intend to opine on
6  at trial?
7     A.  I would -- I would be happy to do the
8  same thing for Dr. Habermann's report that I just
9  did for Mr. Thompson's if you would to do that.
10    Q.  Sure.  Let me get his report.
11    A.  Sure.
12        MR. FREEDMAN:  Let's mark this 4.
13        (Abowd Deposition Exhibit 4 marked for
14         identification and attached to the
15         transcript.)
16 BY MR. FREEDMAN:
17    Q.  Before you dive too far in, can you
18 identify this for the record?
19    A.  This is the September 7th expert report
20 of Dr. Hermann Habermann.
21    Q.  Okay.  And if you could go through the
22 report and identify, as you did with

1      A.  Yes.

2      Q.  You don't discuss Dr. Barreto's reports

3  in your report, do you?

4      A.  Only in the same indirect way.

5      Q.  Okay.  Are you planning to express any

6  opinions about Dr. Barreto's report at trial?

7      A.  Only in the same indirect way.

8      Q.  Okay.  Is there anything specific in his

9  report that you intend to -- intend to opine about

10 at trial?

11     A.  I believe he misconcludes from his

12 analysis of the survey that he ran, and I will

13 opine on that if asked at trial.

14     Q.  Okay.  In what respect does he misopine

15 on the results?

16     A.  He's basically measuring self-response

17 rates with an opinion poll methodology that I'm

18 not going to criticize for the purposes in which

19 they're generally used, but for the purposes of

20 producing population estimates of complete

21 non-response to the census, it's wholly

22 inappropriate.  At best, it produces another

Dr. John M. Abowd , Ph.D.

Page 95

1            These are distinct quality measures that
2    we have -- I have consistently, both in fact and
3    in expert testimony, identified and quantified.
4    The fact that they can't be used directly to
5    produce a net undercount estimate hasn't affected
6    my opinion about whether the question should be on
7    the census.  It hasn't affected the Census
8    Bureau's recommendation about the question.
9            It seems to me to be something that is
10   undocumented by the plaintiffs' experts and that I
11   specifically call out as undocumented in my expert
12   report.
13       Q.  So I -- I understand that.  And we'll
14   spend some time going through that language and --
15   just to make sure we understand exactly what your
16   view is.
17            You had a range, though, of criticisms of
18   Dr. Barreto, for example, in his main report about
19   his survey methodology and --
20       A.  Right.
21       Q.  -- survey design.  Is any of that in your
22   report?

Dr. John M. Abowd , Ph.D.

Page 96

1     A.   It is not.
2     Q.   Putting aside your central criticism,
3  which I take is the misinterpret -- and if you
4  don't like my language, you can use your own
5  language -- but the misinterpretation of a decline
6  in self-response as signifying anything with
7  regard to an undercount, are the other criticisms
8  you have of Dr. Barreto's report discussed in your
9  report?
10    A.   So let's make this easier.  I didn't
11 specifically discuss anything about Dr. Barreto's
12 report when I wrote -- especially the version
13 that's in front of me, September 21st, I hadn't
14 even read it.  I had read it when I wrote the
15 revised one, but I didn't feel that I needed to
16 comment specifically on his report, that I just
17 needed to document where the estimates that I used
18 in my report came from.
19         And I am relying on the analysis I did.
20 And I am not relying on the analysis that
21 Dr. Barreto did.
22         You asked me what I disagreed with, so I

1      Q.   Your 1970 and your 1990 examples.
2           Were the Census Bureau's statistical
3  quality standards that govern the Census Bureau
4  today in effect in either 1970 or in 1990?
5      A.   No.
6      Q.   With regard to your 1970 example, which
7  is discussed on page 24 of your report, what is
8  your source of information for this analysis?  And
9  it's fine -- if you want to consult Exhibit 2,
10 that's fine.  We just should make clear on the
11 record that you're doing it.
12     A.   I'm consulting Exhibit 2.
13          Oh, okay.  It's in the footnote in both
14 places.  It's that 1990 census content reinterview
15 survey study cited in footnote 39.  Oh, sorry, no.
16     Q.   Right.  For the 1970 --
17     A.   I think the problem here is you had a
18 summary paragraph, and I actually discuss the 1970
19 example.  I know that I marked the sources, and
20 they're public, unlike the '92 experiment.
21          I can't figure out what happened to the
22 citation for that.  I apologize for having to --