# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | No. 1:18-cv-2921 (JMF) |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants. | |
| NEW YORK IMMIGRATION COALITION, *et al.*, | No. 1:18-cv-5025 (JMF) |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants. | |

## DECLARATION OF JAMES W. UTHMEIER

I, James W. Uthmeier, make the following Declaration pursuant to 28 U.S.C. 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.      I serve as a Senior Advisor and counsel to the Office of the Secretary at the U.S Department of Commerce ("DOC" or "Department"). I am also the Department's Regulatory Reform Officer. In these capacities I am responsible for assisting with key Department initiatives including regulatory reform, space commercialization, infrastructure permitting and environmental

review, and economic development, among others. Before my current role, I served as Senior

Counsel to the General Counsel within DOC and as a member of the Presidential Transition Team

for Commerce. The following statements are based upon my personal knowledge or on information

supplied to me in the course of my professional responsibilities.  These statements are provided in

support of the DOC's assertion of the deliberative process privilege in the above-captioned case.

2.      I have reviewed the following documents, of which all or portions have been

provided to A. Mark Neuman: AR 2021, AR 3731, AR 10249, AR 10285, AR 10296, and COM_DIS

20920.  All six of these documents were withheld in full.  AR 2021 is a draft iteration of a legal

memo from the Office of General Counsel (OGC).  AR 3731 is an initial draft of a legal memo from

Census' Chief Counsel's office.  AR 10249 is an initial draft of a legal memo from the Office of

General Counsel to Under Secretary for Economic Affairs Karen Dunn Kelley.  AR 10285 and AR

10296 are draft lists of documents to be included in the Secretary's decision making process

concerning the possibility of reinstating a citizenship question on the 2020 census.  COM_DIS

20920 is a draft list of questions raised by the Secretary and various Commerce advisors for further

clarification after reviewing the Census Bureau's January 19 memo.

### MR. NEUMAN'S ROLE AT THE DEPARTMENT

3.      Mr. Neuman has extensive experience working on Census matters. He advised

previous Secretaries of Commerce on Census issues, including Secretary Mosbacher, Secretary

Daley, and Secretary Evans.  Mr. Neuman also worked on the Census Executive Staff during the

1990 Decennial Census and worked closely with seven different directors of the Census.  Mr.

Neuman has worked with most of the stakeholders in the Decennial Census: the Bureau, the

Department of Commerce, Congressional Oversight and Appropriations Committees, GAO, NAS,

the Census Advisory Committees, and numerous other stakeholders including NALEO, MALDEF,

and the Leadership Conference on Civil Rights.

4.      As such, Mr. Neuman was chosen by the Administration to be the Department of Commerce Presidential Transition team member assigned to the Census, beginning December 21, 2016.  In this role Mr. Neuman was responsible for briefing the Secretary on the wide number of Census priorities and be the initial liaison between the Office of the Secretary and the Census Bureau.  Mr. Neuman created briefing materials and provided background information to the Secretary.

5.      The Secretary of Commerce consulted Mr. Neuman as an expert advisor on several Census Bureau matters after Mr. Neuman proved himself to be a knowledgeable and trustworthy Census expert.  Mr. Neuman's significant institutional knowledge and established relationship with the Secretary made him one of the Secretary's most senior advisors on Census topics.  Following the transition, he was frequently solicited by the Secretary and DOC officials to answer questions regarding Census policy, programmatic, and budget considerations.  He also met with Secretary Ross and DOC officials on multiple occasions to discuss the black-white undercount and related DOC efforts to achieve a more complete and accurate 2020 Census.  As such, Mr. Neuman was solicited for advice on predecisional matters with the mutual understanding that the conversations were confidential and in furtherance of the agency's deliberative process.

6.      Further, Mr. Neuman was affirmatively consulted due to his extensive experience in the Census Bureau working on the 1990, 2000, and 2010 Decennial Censuses; as a former member of a Census Bureau advisory committee; and his lengthy government policy experience.

7.      In fulfilling this advisory role, the Department understood that Mr. Neuman did not provide advice stemming from his own or any client's interest, but rather as a resource for the Secretary of Commerce on Census issues.  Mr. Neuman's advisory capacity was modeled on the previous advisory role performed by John Thompson (former Census Bureau Director) for Secretary Carlos Gutierrez during President George W. Bush's second term.

8.      As such, Mr. Neuman was consulted during the Secretary's deliberations in response to the Department of Justice's request. During this process, Mr. Neuman was made aware of the possibility of litigation following the Secretary's decision.

**DELIBERATIVE PROCESS PRIVILEGE**

9.      DOC formally asserts the deliberative process privilege over the following six documents: AR 3731, AR 10249, AR 10285, AR 10296, and COM_DIS 20920.

10.     I have personally reviewed each of these documents. The documents withheld pursuant to the deliberative process privilege contain predecisional deliberative discussions among DOC personnel that predate a final decision on whether to reinstate a citizenship question on the 2020 decennial census.

11.     AR 3731 is a memo from the Census Chief Counsel's office and was created to communicate legal advice and discuss the legal authority for the Secretary to conduct the Decennial Census and consider the Department of Justice's request. It contains draft analysis, recommendations, and advice concerning the legal authority for the Department of Justice's request for block level CVAP data. This memo was created to assist in the Secretary's decision-making process as it provided legal analysis of potential actions the Secretary could take in response to the DOJ request.

12.     AR 10249 is a draft OGC memo to Under Secretary Karen Dunn Kelley (AR 10249). It conveys legal advice to her regarding censuses conducted around the world. It contains draft legal analysis and some factual material regarding census practices in other countries. However, the material is inextricably intertwined with the legal analysis and reflects the attorney's selection of what she viewed to be relevant to her client's request for advice and for her provision of her advice to that client. This memo was created to assist in the Secretary's decision-making process

4

as it provided legal analysis of potential actions the Secretary could take in response to the DOJ request.

13.     AR 10285 is a predecisional draft list of administrative record documents considerations. This draft list is a product of a legal analysis of the Administrative Procedure Act and lists the documents the Secretary had reviewed in his decision-making process thus far. The document was explicitly created as part of the deliberative process to track the views and information collected for the Secretary's decision.

14.     AR 10296 is another predecisional draft list of administrative record documents and considerations and is withheld as deliberative. This draft list begins with a description of the Secretary's deliberative process and lists the documents the Secretary had reviewed in his decision-making process thus far. The document is explicitly created as part of the deliberative process to track the views and information collected for the Secretary's decision.

15.     COM_DIS 20920 is a draft list of questions raised by various Commerce advisors for further clarification after reading the January 19 Census Memo. These questions are indisputably part of the deliberative process as the Secretary considered both the questions and the answers the Census Bureau was able to provide in response during his decision-making process.

16.     These documents would have been discussed during DOC senior leadership deliberative meetings at which Mr. Neuman was an occasional participant and provided consultation in his role as a trusted adviser. Mr. Neuman was invited to attend these meetings based on his role as a trusted advisor to the Commerce Department, and the Commerce Department solicited his opinions in its deliberations regarding the reinstate of a citizenship question on the 2020 census. Mr. Neuman received the six challenged documents from the Department of Commerce in his capacity as a trusted advisor and for the purposes of facilitating the Department's deliberative process concerning the citizenship question.

17.     Disclosure of the views and comments contained in the five deliberative documents, which include draft legal memos and other draft documents, would unquestionably discourage open and candid discussion by individuals responsible for making agency decisions. Free and frank exchanges of ideas, opinions, and impressions among DOC personnel and trusted consultants are critical to the agency's function, and release of these materials could chill the frank inter- and intra-agency exchanges of ideas pertaining to complex and sensitive agency decisions, which would harm agency decision-making. If agency employees are aware that their opinions, deliberations, and views may be subject to public disclosure, as well as the scrutiny, second guessing, and criticism that would foreseeably follow, the quality and volume of input offered and received could be adversely affected. Foreseeably, individual employees could be discouraged from sharing a full range of ideas or opinions -- for example, thoughts or opinions that are part of a brainstorming process, that are not necessarily fully formed, which may later prove erroneous, be unpopular or controversial may no longer be freely offered. In addition, employees could become reluctant to engage in internal debates and disagreements that are critical to healthy decision making, if they believe those details could later publicly exposed. Public disclosure would further chill the agency's willingness to seek outside advice from trusted advisers for fear that such predecisional consultations and deliberations would be subject to premature public scrutiny. This in turn would degrade the quality of the decision-making process. Decision-making officials would thus be hindered in their ability to solicit and receive honest, unfiltered opinions and recommendations- often from offices with divergent perspectives and priorities, which, in turn could jeopardize fulsome discussions of the issues, and ultimately, the desired goal of sound decision making.

18.     For the foregoing reasons, release of these previously withheld documents and drafts prepared by DOC and the Census Bureau and provided to Mr. Neuman would harm DOC's deliberative process by revealing preliminary views and opinions, discouraging open, candid

deliberation on the issues  Mr. Neuman received these documents from the Department to facilitate the deliberative process and it was the Department's understanding and expectation that by providing these documents to Mr. Neuman, the documents would retain their confidential nature.

### ATTORNEY-CLIENT PRIVILEGE

19.     DOC has asserted—and continues to assert—the attorney-client privilege over the following of the six documents: AR 2021, AR 10249, AR 10285, and AR 3731.  These documents were shared with Mr. Neuman by DOC in recognition of the common interest he shared with DOC in developing and improving the 2020 Census.  DOC disclosed these documents to Mr. Neuman to facilitate DOC's Office of General Counsel's legal advice to the Secretary concerning the possible reinstate of a citizenship question, and the documents were provided to Mr. Neuman with DOC's understanding and expectation that these documents would maintain their confidential nature.

20.     AR 2021 is an OGC memo that contains draft analysis, recommendations, and advice concerning the legal considerations in Administrative Procedure Act cases and communicates legal advice.  It was created to advise clients and is properly withheld under the attorney-client privilege.

### ATTORNEY WORK-PRODUCT DOCTRINE

21.     DOC has asserted—and continues to assert—the attorney-work product doctrine over the following of the six documents: AR 10249, AR 10285, and AR 3731.  These documents were prepared in anticipation of litigation concerning the citizenship question, and DOC shared these documents with Mr. Neuman in his role as a consultant working with DOC toward a common aim, and with the understanding that these documents would maintain their confidential nature.

22.     I am also familiar with a handwritten note, referred to in this litigation as DOJ 15197, that I authored and provided to Acting Assistant Attorney General John Gore shortly after September 22, 2017.

23.     I wrote and provided the note to AAG Gore for the purpose of obtaining his legal review and assessment, enabling me to provide legal advice to Secretary of Commerce Ross.  I understood AAG Gore and I to be engaged in a common enterprise regarding the 2020 decennial census.

24.     This note includes my mental impressions written in anticipation of litigation concerning the possible future reinstatement of a citizenship question to the Census.

Washington, DC
October 30, 2018

_____
James W. Uthmeier
Senior Advisor
Office of the Secretary
United States Department of Commerce

8