IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>      Defendants. | No. 1:18-cv-2921 (JMF)<br>Hon. Jesse M. Furman |
| NEW YORK IMMIGRATION COALITION, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>      Defendants. | No. 1:18-cv-5025<br>(Consolidated Case) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS *IN LIMINE*__**

**INTRODUCTION**

Plaintiffs' motions *in limine* are uniformly groundless. Their first and fourth motions seek to bar evidence that Defendants have no intent to proffer and thus are pointless. Plaintiffs' second and third motions press the novel—albeit baseless—argument that Defendants should be prohibited from arguing at trial that Plaintiffs lack sufficient evidence to prove their claims. Specifically, Plaintiffs' second motion *in limine* asks this Court to bar Defendants from arguing that Plaintiffs have not proven that Secretary Ross's decision was discriminatory or pretextual, while their third motion requests a ruling preventing Defendants from effectively challenging Plaintiffs' standing. In effect, these motions seek a discovery sanction in the absence of any finding that Defendants have improperly withheld discoverable information. These legally unsupported motions constitute an improper attempt to shift their burden of proof and should be denied in their entirety.

**ARGUMENT**

I. THE COURT NEED NOT CONSIDER PLAINTIFFS' FIRST MIL BECAUSE DEFENDANTS DO NOT INTEND TO OFFER POST-HOC JUSTIFICATIONS FOR SECRETARY ROSS'S DECISION.

Plaintiffs' assertion that "Defendants have … sought to buttress Secretary Ross's memorandum with additional, after-the-fact rationalizations" is baseless. *See* ECF No. 411, Pls.' Mot. at 2. On the contrary, Defendants consistently have taken the position that review of agency action, including the decision of Secretary Ross at issue here, must be upheld if rationally based on the grounds set forth in the decision. *See Sec. and Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943). Plaintiffs claim that, during this litigation, "senior Commerce officials testified about new rationales and justifications for asking the citizenship question, unrelated to the Voting Rights Act." Pls.' Mot. at 2. But their sole purported example consists of irrelevant testimony by Earl Comstock answering questions regarding the reasons *he* thought reinstatement of a citizenship question "could be warranted" *before* he performed extensive research on the issue. *Id.* (citing Comstock Tr. 107-110, 261-

2

62). At no point have Defendants offered post-hoc rationalizations for Secretary Ross's decision—nor will they at trial—rendering needless any motion *in limine* to preclude such testimony.[1]

> II. THIS COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO AVOID BEING HELD TO THEIR BURDEN OF PROOF.

Plaintiffs' second motion *in limine* is nothing more than a specious attempt to obscure their inability to prove that the Secretary's decision was motivated by discriminatory intent or based upon a pretext, and a not-so-veiled attempt to shift the burden of proof. Plaintiffs contend that because Defendants have invoked the deliberative-process privilege, which the Court has upheld on numerous occasions, Defendants "should therefore be precluded from introducing evidence or argument at trial as a sword to challenge Plaintiffs' evidence and arguments about Defendants' discriminatory intent." Pls' Mot. at 7. Plaintiffs' novel argument should be rejected.

As an initial matter, the government has not proffered any trial exhibits or witness testimony, and thus does not intend to offer evidence at trial, to show that the Secretary's decision was neither pretextual nor discriminatory. Not only should review of the decision be confined to the administrative record, *see* ECF No. 408, Defs.' Mot. in Limine, but the government certainly has no obligation to *disprove* Plaintiffs' allegations.

Moreover, the sword/shield doctrine Plaintiffs invoke simply is not applicable here because Defendants do not seek to "*affirmatively rely* on privileged communications to support a claim or defense and then shield those communications from discovery by [their] adversary," *United States v. Ghailani*, 751 F. Supp. 2d 498, 501 (S.D.N.Y. 2010) (emphasis added). Indeed, Plaintiffs' cited

---

[1] Plaintiffs' contention that "Secretary Ross[] and Defendants[] have insisted that the Voting Rights Act rationale was the *only* basis for the decision," Pls.' MIL 2 (emphasis added), is inaccurate; the government repeatedly has explained that, "[e]ven if the Secretary had *additional* reasons for reinstating a citizenship question or expressed interest in adding a question before hearing from DOJ, the analysis under the APA would remain unchanged." *E.g.*, ECF No. 412, Defs.' Pretrial Mem. of Law 30. Whether Secretary Ross had additional reasons for making the decision is irrelevant because the decision must be reviewed on the stated basis.

3

authorities do not support their warped interpretation of the doctrine. *See id.* (holding that challenging party "must make 'some showing … that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense'") (internal citation omitted); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that courts "look to see whether the privilege holder took 'affirmative steps to inject privileged materials into the litigation'" to determine whether selective disclosure of materials waives privilege) (internal quotation omitted); *U.S. v. Wells Fargo Bank*, No. 12-cv-7527 (JMF), 2015 WL 6395917, at *2 (S.D.N.Y. Oct. 22, 2015) (rejecting "blanket waiver of the deliberative process privilege"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 898 F. Supp. 2d 603, 610 (S.D.N.Y. 2012) (applying doctrine where plaintiff's cause of action placed its decisionmaking process at issue). Contrary to Plaintiffs' assertions, because Defendants do not seek to "weaponize … withheld deliberations as evidence … at trial," Pls.' Mot. 5, the sword/shield doctrine has no relevance.

Even more spurious is Plaintiffs' request that the Court bar Defendants from *arguing* "that the inclusion of the citizenship question is not pretextual" or that "Plaintiffs' evidence of discriminatory intent is lacking." Pls.' Mot. at 5. Plaintiffs' insistence that this Court should bar Defendants from "raising" "a lack of intent defense or lack of pretext defense," Pls.' Mot. at 6, is illogical for the simple reason that Plaintiffs' failure to meet their burden of proof is not an affirmative defense Defendants need raise.

In essence, Plaintiffs' second motion *in limine* is a brazen attempt to avoid being held to their burden to prove that the Secretary acted on prohibited grounds or did not believe his stated rationale—and, thus, constitutes an implicit acknowledgement of Plaintiffs' inability to do so. Unsurprisingly, Plaintiffs cite *no* authority for the novel proposition that the government's proper assertion of deliberative-process privilege (indeed, assertions repeatedly upheld by this Court, *e.g.,* ECF Nos. 241, 323, 369, preclude it from presenting a defense. For this reason, Plaintiffs' portrayal of

4

*United States v. Bilzerian* is particularly misleading, as the Second Circuit there actually *emphasized* that, notwithstanding assertions of privilege, "Defendant was free to deny … intent" or to "argue his … defense by means of defense counsel's opening and closing statements and by his examination of witnesses." 926 F.2d 1285, 1293 (2d Cir. 1991).

Plaintiffs' unwarranted insistence that "withheld documents *may* shed light" on the Secretary's motives, Pls.' Mot. at 5, when they themselves concede that this Court has granted them myriad opportunities to challenge Defendants' privilege assertions, only underscores the fact that, despite the production of tens of thousands of pages of internal documents, Plaintiffs have uncovered no evidence to support their allegations that the Secretary's motives were discriminatory. At bottom, Plaintiffs seek to relitigate an issue this Court already has decided against them. *See* ECF No. 83, No. 18-cv-5025 (denying ECF No. 73, Plaintiffs' "challenge[] [to] Defendants' invocation of the [deliberative process] privilege on the ground that it is *categorically* unavailable in these cases," but permitting challenges to specific assertions of privilege). And for good reason: Plaintiffs' argument, taken to its logical extension, would have the untenable result of creating an adverse inference of discriminatory motive (by nullifying the requirement that intent be proven) any time the government successfully asserts deliberative-process privilege. That is not the law, and Plaintiffs' argument should be rejected.[2]

---

[2] Plaintiffs' insistence that "Defendants cannot assert a lack of intent defense or lack of pretext defense without also asserting the withheld documents do not contain evidence of their discriminatory intent or pretextual justification" because the government "would put at issue lack of intent by seeking to rebut Plaintiffs' claims with evidence to which Plaintiffs do not have access," Pls.' Mot. 6, is both circular and nonsensical. Defendants need not rely on any evidence, much less withheld documents, to demonstrate that Plaintiffs have not met their burden.

III.  THIS COURT SHOULD DISMISS THIS CASE AS NON-JUSTICIABLE BECAUSE PLAINTIFFS IMPLICITLY CONCEDE THAT THEY LACK EVIDENCE SUFFICIENT TO DEMONSTRATE STANDING.

Astonishingly, Plaintiffs' third motion *in limine* argues that this Court should bar the government from contending at trial that Plaintiffs lack constitutional standing. Pls.' Mot. at 6-9. Although their brief blithely omits any reference to "standing," the ruling Plaintiffs seek—preventing Defendants from arguing that Plaintiffs have failed to prove any harmful impact will result from a citizenship question—would have the untenable result of blocking the government from raising issues central to whether Plaintiffs can demonstrate injury in fact, as they must to maintain this litigation. Plaintiffs cite no caselaw to support the contention that this Court *can* issue such a ruling. Indeed, the issue of whether a Plaintiff has standing is fundamental and, thus, an "objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

There can be no doubt that the ruling Plaintiffs seek is intended to thwart Defendants' ability to hold Plaintiffs to their burden to prove standing. Plaintiffs' theory of standing relies, *inter alia*, on allegations that "the citizenship demand will deter census participation," and that "the reduction in responses to the 2020 census will translate into an undercount of certain populations … resulting in a loss of federal resources and political representation." Pls.' Pretrial Memo. 6. Defendants intend to show at trial that the Census Bureau's comprehensive nonresponse follow-up operations will ameliorate any impact on self-response and ensure a complete, accurate enumeration. Defs.' Pretrial Memo. 12-16. Plaintiffs' request that this Court nevertheless "prevent Defendants from offering any *argument*, testimony or other evidence at trial" relating to an alleged "decrease in the response rate" or a purported "undercount for certain communities" is nothing more than a desperate attempt to avoid Plaintiffs' burden to *prove* injury in fact. Pls.' Mot. at 7.

Moreover, disclosure of the raw survey data from the Census Bureau and Numident data from the Social Security Administration that Plaintiffs sought through discovery was not withheld on a claim of common-law privilege, as Plaintiffs imply, *id.* 6-7, but rather pursuant to Congress's statutory mandates that such data be protected.[3] *See* 13 U.S.C. §§ 6, 9; 5 U.S.C. § 552a; 42 U.S.C. § 1306. By seeking a determination that "Defendants should not be able to argue at trial … about the adequacy of Plaintiffs['] proof or any purported failure … to prove undercount" because Defendants "had exclusive possession of the data *necessary* to measure," Pls.' Mot. at 9, Plaintiffs implicitly concede their failure to prove at trial that reinstatement of a citizenship question will result in a differential undercount. If data Congress has protected by statute is "necessary to measure" any harm to Plaintiffs, Pls.' Mot. at 9, the result should not be a ruling barring Defendants from arguing that Plaintiffs lack standing—but rather a ruling dismissing this case as nonjusticiable. Plaintiffs' argument in essence boils down to the following untenable proposition:  When Congress determines that certain information is not subject to public disclosure, a Court must ignore Article III's case-or-controversy requirement.  Plaintiffs' lack of legal support for this argument is telling.

Finally, Plaintiffs' continued reliance on the sword/shield doctrine is deeply disingenuous here. Plaintiffs' pretrial memorandum argues a theory of harm to "privacy interests" that is explicitly premised on the fact that "[f]ederal law *requires* Defendants to maintain the confidentiality of responses to the Census questionnaire. *See* 13 U.S.C. § 9(a)(2)." Pls.' Pretrial Memo., ECF No, 410, at 12. Plaintiffs should not be heard to complain about Defendants' statutory obligation not to disclose raw census data in one context, while relying on those same statutory protections for the data to press a novel theory of harm. Their argument also fails for the simple reason that Defendants do not *rely* on

---

[3] The Census Bureau obtains Numident data from the Social Security Administration through memoranda of understanding between the agencies, which themselves prohibit the Census Bureau from sharing that data.

Title XIII or Numident data to support any element of a claim or defense. *See Ghailani*, 751 F. Supp. 2d at 501.

IV.  THIS COURT NEED NOT RULE ON PLAINTIFFS' FOURTH MOTION *IN LIMINE*.

There is no basis for the Court to grant Plaintiffs' fourth motion *in limine* because, as reflected in the parties' pretrial order, Defendants do not seek to proffer the testimony of any fact witnesses at trial.

## CONCLUSION

For the foregoing reasons, Defendants respectfully urge this Court to deny Plaintiffs' four motions *in limine* in their entirety.

    Respectfully submitted,

    JOSEPH H. HUNT
    Assistant Attorney General

    BRETT A. SHUMATE
    Deputy Assistant Attorney General

    JOHN R. GRIFFITHS
    Director, Federal Programs Branch

    CARLOTTA P. WELLS
    Assistant Branch Director

    */s/  Kate Bailey*
    KATE BAILEY
    GARRETT COYLE
    STEPHEN EHRLICH
    CAROL FEDERIGHI
    Trial Attorneys
    United States Department of Justice
    Civil Division, Federal Programs Branch
    1100 L St, N.W.
    Washington, DC  20005
    Tel.:  (202) 514-9239
    Fax:  (202) 616-8470
    Email:  kate.bailey@usdoj.gov

    *Counsel for Defendants*