# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

             Plaintiffs,

     v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

             Defendants.

18-CV-2921 (JMF)

NEW YORK IMMIGRATION
COALITION, et al.,

             Plaintiffs,

     v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

             Defendants.

18-CV-5025 (JMF) (Consolidated Case)

## PLAINTIFFS' PRETRIAL REPLY MEMORANDUM

# TABLE OF CONTENTS

**Page**

I.   Defendants tacitly concede several aspects of Plaintiffs' standing, while distorting or ignoring the caselaw and facts concerning the remaining aspects. ...............................1

II.  Defendants violated the Administrative Procedure Act.........................................................4

    A.   Judicial review under the APA is to be probing and thorough. ..............................4

    B.   Defendants' decision is arbitrary and capricious. ....................................................5

    C.   Defendants' decision is contrary to law. ...................................................................7

III. Defendants' equal protection arguments misapprehend and ignore relevant caselaw and disregard the totality of the evidence pointing to discriminatory intent. ..........................................................................................................................8

Conclusion ....................................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ave. 6E Investments, LLC v. City of Yuma, Ariz.*,
 818 F.3d 493 (9th Cir. 2016) ................................................................................................9

*Batalla Vidal v. Nielsen*,
 291 F. Supp. 3d 260 (E.D.N.Y. 2018) ............................................................................9, 10

*Burlington Truck Lines, Inc. v. United States*,
 371 U.S. 156 (1962)................................................................................................................7

*California v. Bureau of Land Mgmt.*,
 286 F. Supp. 3d 1054 (N.D. Cal. 2018) ................................................................................6

*Carey v. Klutznick*,
 637 F.2d 834 (2d Cir. 1980)....................................................................................................1

*Citizens to Pres. Overton Park v. Volpe*,
 401 U.S. 402 (1971)................................................................................................................4

*FCC v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009)................................................................................................................4

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)................................................................................................................1

*Innovative Health Sys., Inc. v. City of White Plains*,
 117 F.3d 37 (2d Cir. 1997)......................................................................................................8

*Jagers v. Fed. Crop Ins. Corp.*,
 758 F.3d 1179 (10th Cir. 2014) ..............................................................................................7

*Lands Council v. Powell*,
 395 F.3d 1019 (9th Cir. 2005) ................................................................................................5

*Luciano v. Olsten Corp.*,
 110 F.3d 210 (2d Cir. 1997)..................................................................................................10

*Mhany Mgmt., Inc. v. Cty. of Nassau*,
 819 F.3d 581 (2d Cir. 2016)....................................................................................................8

*Nat'l Audubon Soc'y v. Hoffman*,
 132 F.3d 7 (2d Cir. 1997) ........................................................................................................4

*Nat'l Nutritional Foods Ass'n v. FDA*,
 491 F.2d 1141 (2d Cir. 1974)..................................................................................................4

**Cases**                                                                **Page(s)**

*New York v. U.S. Dep't of Commerce*,
   No. 18-CV-2921 (JMF), 2018 WL 4539659 (S.D.N.Y. Sept. 21, 2018)..................................7

*NRDC v. Nat'l Highway Traffic Safety Admin.*,
   894 F.3d 95 (2d Cir. 2018).................................................................................................8

*U.S. Dep't of Commerce v. U.S. House of Representatives*,
   525 U.S. 316 (1999)....................................................................................................2, 5

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ............................................................................................9

*Wisconsin v. City of New York*,
   517 U.S. 1 (1996).........................................................................................................10

*Wong Yang Sung v. McGrath*,
   339 U.S. 33 (1950).........................................................................................................4

Defendants' decision to add a citizenship question to the census should be vacated under the Administrative Procedure Act and the equal protection guarantee of the Fifth Amendment.[1]

## I.  Defendants tacitly concede several aspects of Plaintiffs' standing, while distorting or ignoring the caselaw and facts concerning the remaining aspects.

Defendants' analysis of standing misstates critical legal principles, Plaintiffs' proof of standing, and the evidentiary record – including critical points admitted by their 30(b)(6) witness, their sole expert, and in their Rule 36 discovery responses – regarding the expected decline in response and undercount affecting noncitizen and Hispanic populations.  This is evident in four aspects of the Defendants' brief.

First, Defendants fail to acknowledge that standing is satisfied so long as a single plaintiff establishes standing.  Pl. Br. 5 (Docket No. 410).

Second, Defendants fail to acknowledge or address numerous aspects of the Plaintiffs' proof of standing, including the NGO plaintiffs' organizational standing from the diversion of resources and impact on their missions under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), *see* Pl. Br. 6-7; governmental plaintiffs' standing from the impact on state and local districting, and from additional expenditures in response to the citizenship question, *see* Pl. Br. 8-10; and loss of privacy from the granular publication of citizenship status, *see* Pl. Br. 11-13.

Third, with regard to the impact on congressional representation and federal funding, Defendants cite no case law and misstate the applicable standards.  Def. Br. 16-20 (Docket No. 412).  For example, Defendants suggest that Plaintiffs must show a "material" effect on federal funding, *id.* at 2, without addressing that *Carey v. Klutznick*, 637 F.2d 834 (2d Cir. 1980) and other cases cited in Plaintiffs' opening brief impose no such requirement.  Pl. Br. 8 & n.3.  Nor

---

[1] Defendants' suggestion that the Court may construe their pretrial brief as a motion for summary judgment, Def. Br. 1 n.1, is an unserious proposal.  Defendants declined to move for summary judgment before the court-ordered deadline (Docket No. 405, at 1), and their pretrial brief does not comply with Local Rule 56.1.

do Defendants acknowledge that Dr. Reamer has projected that many of the Plaintiff states, and states in which NGO plaintiffs have members, will lose funding under even modest undercount scenarios, including those comparable to the undercounts that occurred in 2010, 2000, and 1990. Pl. Br. 10-11.  Similarly, Defendants' contention that none of the NGOs' individual members will be injured by reduction in finding, Def. Br. 19, ignores both that the NGOs have over 130,000 members who reside in every state in the country (with significant populations in jurisdictions Dr. Warshaw notes will be particularly hard hit such as New York City and Prince George's County, Maryland), and that *Carey* held individuals can establish harm by showing "decreased federal funds flowing to their city and state"[2] – something Dr. Reamer will establish.

Similarly, Defendants' assertion that no Plaintiff has standing to assert diminished political representation, Def. Br. 16-20, ignores that *U.S. Department of Commerce v. U.S. House of Representatives* ("*DOC*"), 525 U.S. 316, 330-32 (1999) – nowhere discussed in Defendants' brief – holds that where expert testimony establishes a state would likely lose a seat, a resident plaintiff is injured because "with one fewer Representative, [that state's] residents' votes will be diluted."  Similarly, Defendants' assertion, Def. Br. 17, that the fact that neither California nor Texas – the states Dr. Warshaw projects are most likely to lose a congressional seat even under minimal undercount scenarios – is a plaintiff here, ignores (i) various California and Texas municipalities are plaintiffs, (ii) plaintiff ADC has members in both jurisdictions, (iii) Dr. Warshaw also projects that New York and Illinois (both plaintiffs) may lose seats, as may Arizona (which will impact a municipal plaintiff), (iv) plaintiff jurisdictions will lose political power in intrastate redistricting, as also supported by *DOC*, and (v) governmental plaintiffs' interests in drawing accurate legislative districts will be compromised.

---

[2] Although Defendants deposed six of NGO plaintiffs' members, they have not designated this testimony because it establishes these individuals rely on programs that will lose funding due to the undercounts of their communities.

Finally, Defendants dedicate most of their standing argument to arguing about the magnitude of decline in self-response and the effectiveness of NRFU operations.  Def. Br. 6, 8-16.  With regard to decline in self-response, Defendants nowhere acknowledge that the Census Bureau's own analysis in the Administrative Record conservatively estimates the citizenship question will cause a 5.1 percentage point decline in self-response of noncitizen households relative to all-citizen households, and also shows similarly heightened sensitivity for Hispanic respondents.  AR 1277.  Nor do Defendants acknowledge that Dr. John Abowd, the Census Bureau's 30(b)(6) witness, testified, relying on DX-2, that this estimate had been upwardly revised to 5.8 percentage points, and that it remains a conservative estimate.

With regard to the effectiveness of NRFU to "counteract any projected decline in self-response rates," Defendants' brief is more hope than experience.  In the past three censuses, the Census Bureau found that Hispanics were undercounted relative to non-Hispanic whites by 2.38, 1.84, and 4.31 percent respectively.  PX-263, 267, 292, 294.  There is no reason to think – in light of the Census Bureau's conservative estimate that millions of more members of noncitizen households will go into NRFU because they refused to self-respond – that NRFU will do any better in 2020.  As Plaintiffs' experts will testify, there is considerable evidence they will do worse.  For example, the Census Bureau plans to hire a fraction of the staff to run 2020 NRFU as it did in 2010; and in contrast to the 2010 census, Defendants banned hiring noncitizens for the 2020 effort, depriving the Census Bureau of individuals with language skills and community familiarity to reach critical hard-to-count populations.  The evidence at trial will also show that NRFU processes – including using in-person enumerators, obtaining information through proxies (usually neighbors of non-responding households), or using administrative records – are less likely to succeed for the very populations deterred from responding to the census due to the

3

citizenship question.  And in response to Plaintiffs' Requests for Admissions, Defendants have

admitted that "if the NRFU procedures are unable to cure the increased non-response rate, there

will be an increased differential undercount among Hispanics and non-Hispanic blacks."  In light

of this, it is hardly surprising that Defendants' expert concedes that NRFU cannot eliminate the

undercount of Hispanics relative to non-Hispanic whites, and at best may "mitigate" some of the

effects.

## II.    Defendants violated the Administrative Procedure Act.

### A.    Judicial review under the APA is to be probing and thorough.

Defendants' crabbed reading of the APA standard for review, *see* Def. Br. 21-22,

misstates that standard in the interest of insulating Defendants' decision from judicial inquiry.

The Supreme Court has made clear that this Court's review is to be "thorough, probing, [and] in-

depth."  *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971); *see id.* at 416

("searching and careful" review).  Rigorous judicial review under the APA was intended to

maintain the balance of power between the branches of government: "[I]t would be a disservice

to our form of government and to the administrative process itself if the courts should fail, so far

as the terms of the [APA] warrant, to give effect to its remedial purposes."  *Wong Yang Sung v.*

*McGrath*, 339 U.S. 33, 41 (1950); *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502,

537 (2009) (Kennedy, J., concurring in the judgment) (in passing the APA, "Congress confined

agencies' discretion and subjected their decisions to judicial review").

Although judicial review of agency action ordinarily proceeds on the administrative

record alone, *see Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997), this "record

rule" is subject to exceptions.  Extra-record investigation is warranted where there is a showing

of bad faith by agency decisionmakers.  *Citizens to Pres. Overton Park*, 401 U.S. at 420; *see*

*Nat'l Nutritional Foods Ass'n v. FDA*, 491 F.2d 1141, 1145 (2d Cir. 1974).  And courts allow

extra-record evidence to permit explanation of complex subject matter or to determine whether the agency has considered all relevant factors.  Here, Plaintiffs' experts will explain that Defendants ignored or mischaracterized numerous factors relevant to the decision to demand citizenship information.  *See, e.g.*, *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).  Defendants' assertion that expert testimony is improper in APA cases, Def. Br. 23, ignores the many APA cases that have considered expert testimony, including litigation involving the census.  *E.g.*, *DOC*, 525 U.S. at 331.

Defendants also erroneously argue that courts may not resolve factual issues in APA litigation.  Def. Br. at 22-23.  But it is well-established that APA disputes involving credibility determinations or competing experts properly entail fact-finding.  *See*, *e.g.*, Docket No. 341 (Pl. opp. to Def. request to proceed by summary judgment).  Defendants themselves concede the presence of disputed facts, including whether the citizenship question will deter participation in the census and whether NRFU will fully remedy the decline in self-response.  *See* Def. Br. 8-18.

### B.      Defendants' decision is arbitrary and capricious.

Defendants contend that "[w]hat matters for APA review" is that the Secretary engaged in a "process and deliberately considered the options." Def. Br. at 26.  But parroting the touchstones of non-arbitrary decisionmaking is no substitute for an actual, reasoned process.  The evidence shows Defendants' process to be a sham designed to simulate compliance with the APA's requirements, while in fact having been rigged to reach a pre-ordained result.  The Secretary's decision bears no reasonable relationship to the evidence before him; declaring that Alternative D provides "the most complete and accurate CVAP data," Def. Br. at 27, does not make it so – every expert and the Administrative Record (AR 1277, AR 1308) comes to the opposite conclusion.  The Secretary's claim to rely on "empirical evidence about the impact of sensitive questions" from Nielsen, AR 1318, is in fact entirely made-up – there is no such

5

evidence in the record, because Defendants neither requested nor received such evidence from Nielsen, as Plaintiffs' witness will testify at trial. *See California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1065-68 (N.D. Cal. 2018) (granting motion to preliminarily enjoin rule where particular agency findings were supported by "no analysis or factual data"). Nor did Defendants genuinely consider alternatives, Def. Br. at 26, where Defendants both refused to even engage in the iterative interagency process whose purpose it is to identify those alternatives, *see* Pl. Br. 19-20, and disregarded the overwhelming evidence those alternatives were preferable, *see id*.

Defendants' attempt to paint Secretary Ross's decision-making process as reasoned and considered – or even rational – is belied by the evidence. Defendants concede that they uncritically "accepted the DOJ's determination" that CVAP data at the census block level would "permit more effective enforcement" of the VRA. Def. Br. 25. Defendants' failure to conduct *any* independent analysis of this determination is alone arbitrary and capricious: Defendants themselves manufactured that rationale for DOJ; DOJ has now expressly disavowed any belief that census-derived CVAP data will be more precise than DOJ's current CVAP data, *see* Oct. 26 Gore Dep. Tr. 214; and the uncontroverted scientific evidence in the record establishes that placing the citizenship question on the census will, in fact, result in *worse* quality data.

Nor does Defendants' reliance on purported historical practice support their decision. The fact that the census included a citizenship question in 1950, but was relegated to meaningfully different long-form sample surveys thereafter, *see, e.g.*, Pl. Br. 23-24, does not justify Defendants' decision; to the contrary, the historical practice since 1950 – repeatedly affirmed across both Republican and Democratic administrations – vigorously opposes including citizenship on the short form census. *See* Pl. Br. 32-33; *see also* Amicus Br. of Former Census

Directors 3, 8-9 (Docket No. 423-1).  An otherwise arbitrary decision does not become lawful because it mirrors something the federal government did seventy years ago.

And the decision is arbitrary and capricious because it is pretext.  The "APA requires an agency decisionmaker to 'disclose the basis of its' decision, a requirement that would be for naught if the agency could conceal the *actual* basis for its decision."  *New York v. U.S. Dep't of Commerce*, No. 18-CV-2921 (JMF), 2018 WL 4539659, at *2 (S.D.N.Y. Sept. 21, 2018) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).[3]  *See* Pl. Mem. 25-28.  Defendants' attempts to reconcile Secretary Ross's shifting explanations of the genesis and purpose of his decision defy credulity.  *See* AR 1321; Def. Renewed Appl. for Stay 37 (S. Ct. No. 18A375, Oct. 9, 2018) (conceding that the Secretary's testimony to Congress was "admittedly imprecise").  There is a far simpler explanation, bolstered by the whitewashed, incomplete record originally put forth by Defendants, the total disregard of the Census Bureau's expert opinions, the abandonment of the well-established process for changing the decennial questionnaire, and the absence of any evidence that the citizenship question will promote Defendants' stated rationale: Defendants affirmatively sought to conceal their reasons for adding the citizenship question to the census, instead shopping the question to multiple agencies, manufacturing a reason to support it, and constructing a record designed to frustrate judicial review of the actual basis of its decision.  Such conduct should not be countenanced.

## C.   Defendants' decision is contrary to law.

Defendants' brief contains no argument at all regarding Plaintiffs' distinct claim for relief that the Secretary's decision should be set aside under the APA because it is "not in accordance

---

[3] Defendants' reliance on *Jagers v. Federal Crop Insurance Corp.*, 758 F.3d 1179 (10th Cir. 2014), *see* Def. Br. 30, is unavailing.  In *Jagers*, unlike this case, the agency's rationale was supported by undisputed "objective, scientific" evidence, and plaintiffs failed to demonstrate that the agency had acted in bad faith.  758 F.3d at 1185.

with law" or "in excess of statutory . . . authority."  Docket No. 214 (Second Am. Compl.); No.

18-cv-5025, Docket No. 1 (Compl.).  Even apart from Defendants' failure to comply with the

statutory and regulatory framework that governs data collection by the government, Pl. Br. 29,

Defendants' disregard for the time limits in the Census Act renders their decision invalid.  *See*

*NRDC v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108-13 (2d Cir. 2018) (vacating the

agency's decision for failure to comply with unambiguous statutory deadlines).

### III.    Defendants' equal protection arguments misapprehend and ignore relevant caselaw and disregard the totality of the evidence pointing to discriminatory intent.

Defendants' brief incorrectly summarizes the standard for demonstrating intentional

discrimination – omitting significant parts of the *Arlington Heights* standard – and then asserts

that there is "no evidence" of intentional discrimination. Def. Br. 32.  But "discriminatory intent

is rarely susceptible to direct proof."  *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 606

(2d Cir. 2016).  Plaintiffs' brief laid out the Census Bureau's acknowledgment of disparate

impact, AR 1277, the evidence of discriminatory intent in the "historical background" of the

early consideration of the question, AR 2510, 763-64, the irregular process, AR 1321, including

the failure to follow the Census Bureau's "well-established" process for testing, AR 9687,

disregard of the recommendations of Census Bureau professionals, AR 1277, the contemporary

statements of decisionmakers, AR 2521 & PX-479, and pretext.  There is more than sufficient

evidence that discriminatory intent was a motivating factor in adding the citizenship question.

Defendants urge the Court to consider Secretary Ross's decision in a bubble, asserting

erroneously that persons other than the Secretary "cannot shed light on" Secretary Ross's motive.

A decision becomes "tainted with discriminatory intent even if the decisionmakers personally

have no strong views on the matter."  *Innovative Health Sys., Inc. v. City of White Plains*, 117

F.3d 37, 49 (2d Cir. 1997).[4]  Steve Bannon, who decried the growth of immigrants of color in this country, not only discussed the citizenship question with Secretary Ross, AR 2510, but had him talk with Kris Kobach, who proudly claimed responsibility for the decision and told Secretary Ross the question was important because it would diminish the political power of immigrants and communities of color.  AR 763.  That Secretary Ross added the question in a slightly different form than that requested by Kobach does not erase his influence.  And Secretary Ross publicly endorsed some of the most virulent components of the Administration's immigration policy shortly before adopting the question.  PX-298 RFA 29.

Defendants also assert Plaintiffs cannot show Defendants sought to add the citizenship question for reasons other than VRA enforcement.  Far from it.  The Administrative Record lacks any mention of VRA enforcement until the end of 2017 – many months after Secretary Ross demanded to know why his "months old" request to add the question had not been acted on. AR 3701.  Defendants solicited sponsorship for the citizenship question from the Department of Homeland Security and an individual at DOJ with an immigration portfolio.  AR 12756.  The evidence will demonstrate (i) the absence of a citizenship question on the decennial census has never hampered VRA enforcement; (ii) there is no evidence that such data will be more precise than existing citizenship data or would otherwise enhance VRA enforcement efforts; and (iii) DOJ refused to meet to discuss the Census Bureau's recommendation for a different method that would produce higher-quality citizenship data at lower burden.  Defendants' denials cannot sweep away the evidence of pretext.  *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 240-41 (5th Cir.

---

[4] *See also Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir. 2016) ("community animus can support a finding of discriminatory motives by government officials, even if the officials do not personally hold such views."); *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 279 (E.D.N.Y. 2018) ("[L]iability for discrimination will lie when a biased individual manipulates a non-biased decision-maker into taking discriminatory action.").

2016) (shifting rationales probative of discriminatory intent); *Luciano v. Olsten Corp.*, 110 F.3d

210, 216 (2d Cir. 1997) ("showing of pretext was probative of intentional discrimination").

 As to disparate impact, Defendants contend that any disparate impact would occur

because of individuals choosing not to respond to the census, and thus is "not evidence of

discrimination."  Def. Br. at 33.  They cite no authority for this novel interpretation, while

ignoring the conclusions and admissions of the Census Bureau that link the question to increased

non-response by noncitizen households.  AR 1277.

 Finally, Defendants downplay the significant procedural and substantive departures from

past practice in adding the citizenship question, as summarized in Plaintiffs' pretrial brief.  Pl.

Br. 23-24, 31-33.  Although Defendants cite language from *Wisconsin v. City of New York*, 517

U.S. 1, 23 (1996), for the proposition that Secretary Ross overruling the Census Bureau is "of no

moment," *Wisconsin* did not involve a Fifth Amendment claim.  And Defendants are silent on

the myriad other irregularities that plague this "decisionmaking process."  *E.g.*, AR 1321.

 The evidence will support a finding of intentional discrimination under every *Arlington*

*Heights* factor. And the Administrative Record reveals that the only motivations expressed

during the period when Secretary Ross decided to add the question were those of individuals like

Messrs. Kobach and Bannon, who have made no secret of their intentions. There is no reason the

Court "must or should bury its head in the sand when faced with overt expressions of prejudice."

*Batalla Vidal*, 291 F. Supp. 3d at 278.

## CONCLUSION

 The Court should vacate Defendants' unlawful, arbitrary, and discriminatory decision

under the Administrative Procedure Act and the Fifth Amendment.

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
  *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs


ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).*

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Attorneys for the *NYIC* Plaintiffs

11