IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | No. 1:18-cv-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFFS' PRETRIAL MEMORANDUM**

Plaintiffs' pretrial memorandum demonstrates that they will be unable to meet their burden of proof as to any of the issues that will be addressed at trial: (1) whether they have standing; (2) whether the Secretary's decision was arbitrary or capricious; and (3) whether the Secretary's decision violates the Equal Protection Clause. As their principal basis for standing, Plaintiffs now focus on the additional funds and efforts they will allegedly expend to address the citizenship question, relegating their claims of representational or funding injuries to second place. Those latter allegations are adequately rebutted in Defendants' Pretrial Memorandum (ECF No. 412). As to their assertions of additional expenditures, Plaintiffs are already heavily invested in community efforts to encourage census responses; it is not apparent that Plaintiffs can establish that they will be *increasing* such efforts in the future. And Plaintiffs ignore that the Census Bureau itself plans to increase its efforts to address even the worst-case scenarios of lower self-response, thereby obviating any additional expenditures by Plaintiffs. Plaintiffs also assert a new basis for standing, loss of privacy, which they have never before raised. This purported injury, however, must be rejected because it is based on a misunderstanding of how citizenship data will be released.

As to the merits, Defendants will show that the Secretary's decision to reinstate a citizenship question in the census was reasonable in light of the historical context, the usefulness of the data that will be obtained, and the Census Bureau's ability to address any decrease in self-response, if any. Plaintiffs' attempts to establish the contrary rely on out-of-context statements from the record and intentionally misread agency statements or processes, all while ignoring the practical realities of Voting Rights Act litigation. Finally, Plaintiffs will not present any evidence linking Secretary Ross's actions to discriminatory statements made by others, and no other evidence will be probative of discrimination. Accordingly, Defendants will be entitled to judgment after trial.

## ARGUMENT

### I. Plaintiffs Cannot Meet Their Burden To Establish Standing

Now placing significantly less emphasis on their original conception of representational and funding injuries, Plaintiffs implicitly concede that they do not have enough evidence to establish standing under this theory. Moreover, in discussing these alleged injuries, Plaintiffs continue to assume, counterfactually, that there will be *no* (or very limited) mitigation of any initial decline in self-response rates through the Census Bureau's nonresponse follow-up efforts. *See* Pls.' Pretrial Mem. 8 (ECF No. 410). In their pretrial memorandum, Defendants previewed the evidence that will establish the error of this assumption, in addition to the evidence demonstrating that Plaintiffs will be unable to prove the entire chain of causation necessary to support their entirely-speculative injuries. For all these reasons, Plaintiffs will fail to establish their standing based on purported representational and funding injuries.

In place of exclusive reliance on the foregoing theory, Plaintiffs' Pretrial Memorandum emphasizes instead the alleged injury the Plaintiffs expect to suffer through their asserted

expenditure of additional resources to counteract their communities' anticipated reaction to the citizenship question at the expense of other priorities. Pls.' Pretrial Mem. at 6. But Plaintiffs have not pointed to detailed, specific evidence that could show concrete plans to *increase* such efforts in the future and that such increased efforts, separate and apart from their work on this, or other, litigation, *see Mental Hygiene Legal Serv. v. Cuomo*, 13 F. Supp. 3d 289, 300 (S.D.N.Y. 2014), *aff'd*, 609 F. App'x 693 (2d Cir. 2015), will produce a "perceptible impairment" of their organizational activities. On the other hand, Defendants will present considerable evidence of the efforts and resources that the *Census Bureau* will be devoting to ensure a full and complete enumeration, including the additional efforts and resources the Census Bureau is prepared to expend, if needed, due to the reinstatement of a citizenship question. *See* Defs.' Pretrial Memo. at 15-16. Plaintiffs' assertion that *they* will somehow have to fill in the gaps to ensure an adequate response in their communities fails to take into account the focus and efforts that the *Census Bureau* will be exerting in these same communities. Put simply, the Census Bureau's efforts—including community outreach and communications—will be increased such that partners, such as governmental and organizational entities, need not invest more resources than they otherwise would. As the Supreme Court has made clear, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

As a last-ditch effort, Plaintiffs now assert a brand-new theory of standing based on a purported loss of privacy leading to emotional injury on the part of individual members of the non-governmental organizations. Pls.' Pretrial Mem. at 11-13. This claim is based on the remarkable assertion that the Census Bureau's eventual publication of citizen voting-age population ("CVAP") data obtained from the 2020 census will violate the statutory

requirement that the Census Bureau maintain the confidentiality of census responses, because such data will be at so granular a level that the citizenship status of individuals can be deduced. But Defendants will show that this fear is entirely speculative, baseless, and unfounded; the Census Bureau is committed to fulfilling its obligations to preserve the confidentiality of the census responses and is currently analyzing how best to process citizenship data to ensure this confidentiality.  Moreover, Plaintiffs' alleged fears are particularly paradoxical in view of Plaintiffs' constant discovery requests for Title 13-protected data and their impatience with the process for clearing such data for public release.  Indeed, Plaintiffs' concerns about confidentiality come as welcome, if tardy, news to Defendants.

As to the non-governmental plaintiffs' original assertions that their members would experience harm from the reduction in federal funding granted to the areas in which they live, Plaintiffs appear to have largely abandoned this claim, downplaying its importance by asserting that, although they will present evidence on this theory, "it is unnecessary for standing purposes." Pls.' Pretrial Mem. at 10.  However, that statement ignores Plaintiffs' burden to establish standing to pursue their equal protection claim; that claim is based on an associational-standing theory for which Plaintiffs must show that their individual members have standing.  In its memorandum opinion addressing Defendants' Motion to Dismiss, the Court found that plaintiff Make the Road New York had standing to bring an equal protection claim on behalf of its members because it had identified one member, Perla Lopez, who alleged sufficient facts to establish her standing.  ECF No. 70, at 30-32.  But it does not appear that Plaintiffs intend to rely on evidence from Ms. Lopez, or any other Make the Road New York member, at trial to establish that member's individual standing.  Defendants will therefore renew their arguments that Plaintiffs lack third-party standing to bring their equal-protection claim.

**II. The Secretary's Decision Was Reasonable And Comports With The Administrative Procedure Act**

Plaintiffs indicate that they will attempt to show how the Secretary's decision to reinstate a citizenship question was arbitrary and capricious through the following dubious techniques: cherry-picking out-of-context statements from the record, intentionally misreading agency statements or processes, and ignoring the practical realities of Voting Rights Act litigation. It is Plaintiffs' burden to show that the Secretary's decision was not reasonable. *See City of Olmsted Falls v. FAA*, 292 F.3d 261, 271 (D.C. Cir. 2002) ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof . . . . Indeed, even assuming the [agency] made missteps . . . the burden is on petitioners to demonstrate that the [agency's] ultimate conclusions are unreasonable." (internal punctuation and citations omitted)). Plaintiffs cannot meet this burden because "the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Waterkeeper All., Inc. v. U.S. EPA*, 399 F.3d 486, 498 (2d Cir. 2005) (citation omitted). As explained in Defendants' Pretrial Memorandum, under the arbitrary and capricious standard, that is all the law requires—a court need not determine whether the decision "is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016).

a. Plaintiffs argue that the Secretary's decision was unreasonable because the Secretary failed to adhere to a "well-established" process for adding a question to the census questionnaire. Pls.' Pretrial Mem. at 26, 27-28, 31. This assertion is incorrect. Because the addition of questions on the decennial census questionnaire has not been a regular occurrence in recent decades, there is no established process for doing so. The process that Plaintiffs claim was not followed was developed for the American Community Survey ("ACS"), a different instrument with different considerations and goals, and Defendants reasonably

5

determined that the ACS process did not apply to the decennial census here. Accordingly, the Secretary did not act arbitrarily by following a more informal process. Similarly, the Secretary did not violate 13 U.S.C. § 141(f)(3). Rather, the decision to reinstate a citizenship question underwent thorough review and deliberations, including, significantly, the consideration of alternatives. *See* Defs.' Pretrial Mem. at 25 (describing the Secretary's decisionmaking process). As to the pretesting requirement much belabored by Plaintiffs (Pls.' Pretrial Mem. at 23-25), it is accepted practice for one survey to use another survey's thoroughly-tested question without requiring additional testing. Defs.' Pretrial Mem. at 25-26, 27; Defs.' Response to Request for Admission 42. Plaintiffs' suggestion that more testing was somehow required should be rejected.

      b.      Plaintiffs question the Secretary's rationale for the decision—to provide better data for enforcement of the Voting Rights Act—arguing that the data obtained from a citizenship question on the decennial census will not be better. Specifically, Plaintiffs allege that "[t]he citizenship question will lead to lower quality citizenship data" because noncitizens do not always accurately report their status, Pls.' Pretrial Mem. at 17-18, and that "there is no evidence that census responses will result in better block-level data for VRA enforcement" because of the confidentiality concerns that will affect the granularity of the data that can be published. *Id.* at 18-19. But, as Secretary Ross's decision shows, the agency was more than aware of research indicating that noncitizens may not always accurately report their lack of citizenship. Administrative Record ("AR") at 1317. It was for this reason that Secretary Ross opted for what he termed "Option D," which combines reinstating the citizenship question with the use of administrative data to evaluate the accuracy of reported citizenship. *Id.* Thus, rather than ignoring this problem, the Secretary explicitly took this factor into account. The Census Bureau is also evaluating how to process the data that will be obtained from the census

6

to make it as accurate as possible, consistent with its confidentiality requirements. The Secretary reasonably relied on the ability of the Bureau to address these issues successfully, and Plaintiffs' cynical conclusions are unwarranted.

c.     Relatedly, Plaintiffs argue that the Secretary arbitrarily rejected the alternative of relying solely on administrative records to obtain citizenship data and did not meet with DOJ to assess whether that solution would satisfy their needs. Pls.' Pretrial Mem. at 19-20. However, the record reflects that the Secretary fully considered this alternative; the Secretary decided it was not the best choice because the Census Bureau's ability to use such records was "still evolving" and it did not yet have sufficient administrative records to provide complete coverage. AR 1316. The Secretary therefore fully examined this alternative, which is all the Administrative Procedure Act ("APA") requires. *See FERC*, 136 S. Ct. at 782 ("[T]he court must uphold a rule if the agency has 'examine [d] the relevant considerations] and articulate[d] a satisfactory explanation for its action[.]'"). Further, the decision not to meet with DOJ was made by DOJ, not the Department of Commerce or the Census Bureau. Secretary Ross cannot be held accountable for another agency's determination regarding the necessity of a meeting.

d.     Plaintiffs go beyond questioning the fit between the Secretary's decision and its stated purpose and suggest that block-level CVAP data are never necessary to enforce the Voting Rights Act ("VRA"). Pls.' Pretrial Mem. at 20-22. This is manifestly untrue, as Plaintiffs themselves acknowledge (*id.* at 22) that CVAP block-level data is often necessary in such cases. *See Rodriguez v. Harris Cty.*, 964 F. Supp. 2d 686, 731 & n.6 (S.D. Tex. 2013), *jdgmt aff'd*, 601 F. App'x 255 (5th Cir. 2015); *Fabela v. City of Farmers Branch*, No. 3:10-CV-1425-D, 2012 WL 3135545, *5 (N.D. Tex. Aug. 2, 2012). To date, as Plaintiffs recognize, this need has been fulfilled by estimating block-group ACS data down to the block level. *See Fabela*, 2012

7

WL 3135545, at *5 (expert's "calculation resulted in a CVAP estimate for each block"). But the Secretary's decision was to provide more granular data that would not require the same process of estimation to produce this necessary information. Plaintiffs cannot show that such data would not be useful in VRA cases.

   e. Plaintiffs also assert that the Secretary underestimated the effects of the question on the self-response rate or the eventual undercount or even ignored "empirical data" on that subject. Pls.' Pretrial Mem. at 22-23. However, the "empirical data" to which Plaintiffs apparently refer (AR 1277, 1308, 8614, 11634) are the Census Bureau's analyses conducted as part of the Secretary's decisionmaking process, which the Secretary clearly considered. AR 1315-1319. After full examination of these studies, the Secretary decided, in the exercise of his discretion, that these analyses were less probative than the Census Bureau believed because they were not based on a controlled, empirical study of the citizenship question's impact on response rates. *Id.* at 1315-1316. The Secretary's determination was reasonable, particularly in light of the Census Bureau's plans for comprehensive nonresponse follow-up.

   f. Finally, Plaintiffs' allegations that the Secretary prejudged the issue in early 2017 and that the Department of Commerce then concealed this fact and "engaged in a concerted effort to bowdlerize the administrative record" constitutes blatant cherry-picking of isolated statements. Pls.' Pretrial Mem. at 25-27. The Secretary's at-times emphatic language merely reflected a concern that the issue be resolved by March 2018, not a desire that it be resolved in a particular way. Similarly, his pre-decisional statement regarding the administrative record reflects a concern, as he stated, that the process be "diligent[ly]" documented, AR 12476, not that a false record be created.

### III. The Secretary's Decision Was Not Motivated by Discriminatory Purpose

Plaintiffs ask the Court to infer discriminatory intent because they do not have any direct evidence that Secretary Ross was motivated by any such purpose. But there is no basis to draw such an extraordinary inference in this case. Plaintiffs' argument that the reinstatement of the citizenship question violates the Equal Protection Clause hinges on their attempt to link Secretary Ross to other people—*i.e.*, Kris Kobach, Steve Bannon, the Attorney General, and the President—who supposedly acted with discriminatory purpose. Pls.' Pretrial Mem. 30-31, 33-34. At trial, however, Plaintiffs will introduce no evidence that these individuals acted for with an illicit motive, nor any evidence that the Secretary's decision was influenced by the same. Plaintiffs' equal protection argument amounts to no more than a clever reframing of their APA argument that the Secretary's decisionmaking process was flawed. According to Plaintiffs, discriminatory decisions are arbitrary and irregular; the Secretary's decision was arbitrary or irregular; therefore, the Secretary's decision must reflect discriminatory bias. The Court should reject this faulty reasoning.

### CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Pretrial Memorandum, the Court should dismiss this case as nonjusticiable, or, alternatively, enter judgment in Defendants' favor.

Dated: October 31, 2018	Respectfully submitted,

                                            JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

*/s/   Stephen Ehrlich*
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC  20044
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*