**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | 18-CV-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

| | |
|---|---|
| NEW YORK IMMIGRATION COALITION, et al., | |
| Plaintiffs, | |
| v. | 18-CV-5025 (JMF) (Consolidated Case) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE**

**TABLE OF CONTENTS**

**Page**

I.      THE FULL ADMINISTRATIVE RECORD SHOULD BE ADMITTED........................1

II.     THE MOTION TO EXCLUDE EXTRA-RECORD EVIDENCE AS TO THE MERITS
        SHOULD BE DENIED ...................................................................................4

III.    THE COURT SHOULD DENY DEFENDANTS' LATE MOTION TO DISQUALIFY
        DR. HANDLEY BECAUSE THE DISQUALIFICATION STANDARD DOES NOT
        APPLY HERE, AND IF IT DID, DEFENDANTS COULD NOT SATISFY IT ..............6

        A.      The Standard for Expert Exclusion Does Not Apply Here, Because Dr.
                Handley Did Not Provide Prior Services to These Defendants. .................7

        B.      Defendants Have Not Shown Dr. Handley Received Confidential
                Information the Rule Protects Against and Their Cross-Examination
                Argument Rings Hollow .............................................................................9

        C.      Both the Public Interest and Unfair Prejudice to Plaintiffs Also Provide a
                Sufficient Basis to Reject Defendants' Motion........................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
  143 F. Supp. 2d 7 (D.D.C. 2001) ......................................................................................1

*Auto-Kaps, LLC v. Clorox Co.*,
  15 CIV. 1737 (BMC), 2016 WL 1122037 (E.D.N.Y. Mar. 22, 2016)...................................8

*Buffalo Cent. Terminal v. United States*,
  886 F. Supp. 1031 (W.D.N.Y. 1995) ................................................................................6

*Capitol Records, Inc. v. MP3tunes, LLC*,
  No. 07 CIV. 9931 (WHP), 2010 WL 11590131 (S.D.N.Y. Apr. 15, 2010)..........................11

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1977) ......................................................................................................1

*City of New York v. U.S. Dep't of Commerce*,
  822 F. Supp. 906 (E.D.N.Y. 1993).................................................................................5

*Cuomo v. Baldrige*,
  674 F. Supp. 1089 (S.D.N.Y. 1987)................................................................................5

*Eastman Kodak Co. v. Kyocera Corp.*,
  10-CV-6334CJS, 2012 WL 4103811 (W.D.N.Y. Sept. 17, 2012)......................... 6, 8, 9, 10

*English Feedlot, Inc. v. Norden Laboratories, Inc.*,
  833 F. Supp. 1498 (D. Colo. 1993) .......................................................................... 12, 13

*Envtl. Def. Fund, Inc. v. Blum*,
  458 F. Supp. 650 (D.D.C. 1978) .....................................................................................3

*Gordon v. Kaleida Health*,
  08-CV-378S F, 2013 WL 2250506 (W.D.N.Y. May 21, 2013) ...........................................8

*Grioli v. Delta Intern. Mach. Corp.*,
  395 F. Supp. 2d 11 (E.D.N.Y. 2005)........................................................................ 6, 7, 8

*Hewlett-Packard Co. v. EMC Corp.*,
  330 F. Supp. 2d 1087 (N.D. Cal. 2004)..................................................................... 10, 12

*Hinterberger v. Catholic Health System, Inc.*,
  08-CV-380S F, 2013 WL 2250591 (W.D.N.Y. May 21, 2013) ...........................................8

ii

*Koch Refining Co. v. Jennifer L. Boudreau M/V*,
    85 F.3d 1178 (5th Cir. 1996) ......................................................................................6, 8

*Marvin Lumber & Cedar Co. v. Norton Co.*,
    113 F.R.D. 588 (D. Minn. 1986)......................................................................................8

*N.Y. Immigration Coal. v. U.S. Dep't of Commerce*,
    18-cv-5025 (JMF), 2018 WL 4292673 (S.D.N.Y. Sept. 7, 2018) ...........................................8

*In re Namenda Direct Purchaser Antitrust Litig.*,
    15 CIV. 7488 (CM), 2017 WL 3613663 (S.D.N.Y. Aug. 21, 2017) .......................................8

*New York v. Salazar*,
    701 F. Supp. 2d 224 (N.D.N.Y. 2010) ..............................................................................5

*Nikkal Industries, Ltd. v. Salton, Inc.*,
    689 F. Supp. 187 (S.D.N.Y. 1988)...................................................................................10

*Novomoskovsk Jt. Stock Co. "Azot" v. Revson*,
    95 CIV. 5399 (JSR), 1998 WL 804712 (S.D.N.Y. Nov. 12, 1998) ........................................6

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1998) .......................................................................................3

*Stencel v. Fairchild Corp.*,
    174 F. Supp. 2d 1080 (C.D. Cal. 2001)..............................................................................9

*Tummino v. Torti*,
    603 F. Supp. 2d 519 (E.D.N.Y. 2009)...............................................................................6

*Tummino v. Von Eschenbach*,
    427 F. Supp. 2d 212 (E.D.N.Y. 2006)............................................................................5, 6

*Walter O. Boswell Mem. Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984) .......................................................................................1

*Zarda v. Altitude Express, Inc.*,
    No. 15-3775 (2d Cir. June 23, 2017)................................................................................9

**Statutes**

5 U.S.C. § 702..............................................................................................................9

5 U.S.C. § 706..............................................................................................................3

Defendants' Motion In Limine, Docket No. 408, is in the main an attack on the Court's

July 3 (and subsequent) decision(s) to allow extra-record evidence combined with an untimely

and ill-conceived motion to exclude one of Plaintiffs' witnesses.  For the reasons set forth in

greater detail below, Plaintiffs respond to Defendants' Motion as follows: (1) Plaintiffs agree that

the *full* Administrative Record should be admitted in evidence but note that there is a dispute

over what constitutes the Administrative Record; (2) Defendants' motion to exclude all

testimony and exhibits beyond the Administrative Record should be denied; and (3) Defendants'

untimely and ill-conceived motion to exclude Plaintiffs' expert  Dr. Lisa Handley should be

denied.[1]

## I.   THE FULL ADMINISTRATIVE RECORD SHOULD BE ADMITTED

The parties agree that the administrative record should be admitted in evidence.  But the

parties dispute the scope of that administrative record.  Defendants appear to take the outlandish

position that only the first 1321 pages produced by Defendants constitute the record.  *See* Docket

No. 419–1 at n.1 (explaining that subsequent materials produced were "a broader set of materials

than would normally be considered appropriate for an administrative record").   This is not the

law.  Under the APA, judicial review is required to be conducted based on the "whole record."

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1977).  Agencies are required

to submit the "whole record" including all of the materials before the agency, not merely a subset

actually considered by a decision-maker, and not merely the subset that purportedly support the

ultimate decision. *See Walter O. Boswell Mem. Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir.

---

[1] With regard to Plaintiffs' motions in limine (Dkt. No. 411 & 413), consistent with this Court's Individual Rule and Practice 2.D, if the court permits oral argument, Plaintiffs would intend to have junior attorneys on the team argue these motions, and would request that argument be heard on November 5.  Plaintiffs believe the Defendants' motions can be resolved at that time, with the exception of the motion concerning Dr. Handley—Plaintiffs request that motion be resolved at or before the October 31 pre-trial conference.

1984) ("To review less than the full administrative record might allow a party to withhold

evidence unfavorable to its case."). And where subordinates conducted "work and [made]

recommendations of subordinates, those materials should be included as well." *Amfac Resorts,*

*L.L.C. v. U.S. Dep't of the Interior,*143 F. Supp. 2d 7, 12 (D.D.C. 2001) (citing *Bar MK Ranches*

*v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993)).

Defendants' original record omitted vast swaths of documents before the agency, including

materials created during the many months that the Secretary sought to add the citizenship

question prior to receiving the DOJ's formal request. *See* Tr. of Oral Argument at 79–82 (July 3,

2018) (finding it "inconceivable . . . that there aren't additional documents from earlier in 2017"

in the record). Moreover, Defendants' originally produced, incomplete record was "nearly

devoid of materials from key personnel," including the subordinates upon whom the Secretary

directly or indirectly relied. *Id.* at 81–2. It was precisely because of such omissions that the

Court ordered that "by July 23, 2018, Defendants shall produce the complete record . . . ." July 5

Order, Docket No. 199; July 3 Tr. at 82 ("plaintiffs' request for an order directing defendants to

complete the Administrative Record is well founded.").

Pursuant to that Order, the Defendants made two subsequent productions on July 23 and

(with a Court-authorized extension) July 26. In addition to these supplements to the

Administrative Record, Defendants have also produced materials that they designated as extra-

record discovery, which were all labelled with the Bates-prefix "COM_DIS."

Notwithstanding this course of conduct and the Court's Order, Defendants now apparently

take the view that the "whole record" should not include the Secretary's May 2, 2017 exchange

with Earl Comstock in which the Secretary asked "why nothing have been done in response to

my months old request that we include the citizenship question," to which Comstock replied,

2

"[o]n the citizenship question we will get that in place," and "we need to work with Justice to get them to request that the citizenship be added back as a census question." A1 [PX-088 (AR 0003710)]. Similarly, Defendants would exclude Comstock's September 8, 2017 email to the Secretary reporting his unsuccessful efforts to recruit DOJ and DHS to ask the citizenship question, and having failed on that score, that he was investigating "how Commerce could add the question to the Census itself." A2 [PX-537 (AR 0012756)]. For the reasons stated in the Court's July 3, 2018 Order, the materials that Defendants produced to complete the administrative record—principally, AR 001322–0013099 (as well as subsequently produced unredacted versions of these documents produced pursuant to motions to compel)—are properly considered the complete administrative record.

Presenting a *complete* administrative record is necessary to permit the Court's effective judicial review under 5 U.S.C. § 706; anything less would permit Defendants to "skew the 'record' for review in [their] favor by excluding from that 'record' information in [their] own files which has great pertinence to the proceeding in question." *Envtl. Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978); *see also Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1538 (9th Cir. 1998) ("An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'") (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 54 (D.C. Cir. 1977)).

In addition to the records noted above, Defendants designated various other documents in and after their October 16 productions that should be part of the Administrative Record as extra-record materials. Some of the materials designated as extra-record discovery involve the same issues and are part of the same email chains as portions of the Administrative Record.

For example, Defendants have designated certain of the Commerce Department's interactions with Mark Neuman about the citizenship question as extra-record discovery, while treating others as Administrative Record. *Compare* A3-1 [PX-185 (COM_DIS00016561), PX-186 (COM_DIS00018614), PX-188 (COM_DIS00018615)] *with* A3-2 [PX-087 (AR 003709), PX-083 (AR 003699), PX-145 (AR 0011329), PX-052 (AR 002482)]. Defendants have similarly designated certain of the communications surrounding James Uthmeier's August 11 memo as extra-record discovery, while treating others as Administrative Record. *Compare* A4-1 [COM_DIS00017126, COM_DIS00017127] *with* A4-2 [PX-050 (AR 002461), AR 0011312, AR 0011332, AR 0011343]. And Defendants have designated certain interactions between the Commerce Department and the White House about the citizenship question as extra-record discovery, while designating others as part of the Administrative Record. *Compare* A5-1 [COM_DIS00015698] *with* A5-2 [PX-058 (AR 2561), PX-019 (AR 000763)]. In addition, per the Court's guidance at the October 24 hearing regarding a procedure for agreed-upon additions to the Administrative Record (Oct. 24 Tr. at 24–30), Plaintiffs requested on October 30 that Defendants agree to add certain exhibits to the Administrative Record. *See* A6. If the parties are unable to agree, Plaintiffs will move to supplement the Administrative Record to include these exhibits (reserving the right to identify additional materials for Defendants and, if necessary, the Court, for inclusion in the "whole record" for review as properly considered).

## II.   THE MOTION TO EXCLUDE EXTRA-RECORD EVIDENCE AS TO THE MERITS SHOULD BE DENIED

Defendants' argument that extra-record evidence should be excluded as irrelevant under FRE 402 is both wrong and directly contrary to the Court's October 26 order, Docket No. 405. Defendants had asked for a stay pending Supreme Court review of, *inter alia,* the trial on grounds that as to the merits of the case, the adjudication should be confined to the

4

Administrative Record.  *See* Dkt. No. 397.  In denying Defendants' requested stay, the Court

made clear that it would hear extra-record evidence.  To be sure,  the Court expressly stated that

Defendants "remain free to argue at trial that the Court should disregard all evidence outside the

administrative record, "  Dkt. No. 405 at 3, but it made plain that is an issue to be resolved at the

end of the trial and not before it starts.  The Court  expressly directed the "the parties to

differentiate in their pre- and post-trial briefing between arguments based solely on the

administrative record and arguments based on materials outside the record. The Court anticipates

differentiating along similar lines in any findings of fact and conclusions of law that it enters."

*Id.* (citing Oct. 24th Tr. 16).  The Court also proceeded to reaffirm its July 5, 2018 Order, Dkt.

No. 199, authorizing extra-record evidence.  October 26 Order at 9 ("Finally, the Court's

decision to authorize extra-record discovery was, and remains, well founded.").

In short, while Defendants have preserved their argument that in the end the Court should

look only to the administrative record in making its decision, the Court has made clear that the

best and most efficient way to proceed now is to allow both the administrative record and extra-

record evidence to be admitted and for the Court to decide at the conclusion of trial the proper

evidentiary basis for its decision.

Finally, much of the contested evidence, while not in the Administrative Record, is

relevant to issues where courts frequently consider extra-record discovery in Administrative

Procedure Act cases.  These include issues of standing, where Dr. Hillygus' testimony is directly

relevant because it concerns the expected impact of the citizenship question on self-response and

undercount of certain populations.  This evidence also includes expert testimony about technical

Census issues, including whether the Census Bureau followed its well-established procedures for

changing the content to the Decennial Census questionnaire—about which both Dr. Habermann

and Mr. Thompson will testify.  *E.g.*, *City of New York v. U.S. Dep't of Commerce*, 822 F. Supp. 906, 917 (E.D.N.Y. 1993); *Cuomo v. Baldrige*, 674 F. Supp. 1089, 1093 (S.D.N.Y. 1987); *New York v. Salazar*, 701 F. Supp. 2d 224, 241 (N.D.N.Y. 2010) ("deviated from its customary practices and procedures"); *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 231-34 (E.D.N.Y. 2006) (officials "needed to find acceptable rationales" and the "agency deviated from its traditional practices").  And it includes fact and expert testimony relevant to Administrative Procedure Act questions where extra-record discovery is permitted, including (i) whether the agency failed to consider an important aspect of the problem (Dr. Hillygus, Dr. Abowd, Dr. Jarmin), and (ii) whether the stated reason for the question is the actual reason or a pretext because the Department of Justice has no need for block level citizenship data and the Census Bureau is barred from publishing such data (Dr. Handley, Dr. Habermann, Mr. Comstock, Ms. Dunn Kelley and Ms. Teramoto). *See Tummino v. Torti*, 603 F. Supp. 2d 519, 543-34 (E.D.N.Y. 2009); *Tummino*, 427 F. Supp. 2d at 231-34; *Buffalo Cent. Terminal v. United States*, 886 F. Supp. 1031, 1045-46 (W.D.N.Y. 1995).

## III. THE COURT SHOULD DENY DEFENDANTS' LATE MOTION TO DISQUALIFY DR. HANDLEY BECAUSE THE DISQUALIFICATION STANDARD DOES NOT APPLY HERE, AND IF IT DID, DEFENDANTS COULD NOT SATISFY IT

Disqualifying an expert "is a drastic remedy, . . . resorted to rarely." *Eastman Kodak Co. v. Kyocera Corp.*, 10-CV-6334CJS, 2012 WL 4103811, at *7 (W.D.N.Y. Sept. 17, 2012); *see also Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996) ("cases that grant disqualification are rare"); *Grioli v. Delta Intern. Mach. Corp.*, 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005) (same).  Yet Defendants heighten the already-extreme nature of their request having laid in wait and springing it on the eve of trial.  This timing smacks of gamesmanship and the type of "trial by ambush" courts routinely reject. *Novomoskovsk Jt. Stock Co. "Azot" v. Revson*, 95 CIV. 5399 (JSR), 1998 WL 804712, at *1 (S.D.N.Y. Nov. 12, 1998).  Despite

Plaintiffs disclosing Dr. Handley as an expert almost two months ago, Defendants did not inform Plaintiffs or the Court of their position until this motion or even depose Dr. Handley to determine whether she in fact relied on any confidential information (knowing she had not). Instead, they filed this motion a week before trial, also failing to comply with section 3.I of this Court's Individual Rules of Practice in Civil Cases for "motions to exclude testimony of experts" to be filed "by the deadline for dispositive motions" and not as "as motions *in limine*."

Even if the Court considers the merits of their untimely argument, it fails on several grounds. First, the standard urged by Defendants does not apply in situations where, like here, the entity that previously retained the expert is a distinct entity from the current adverse party. Second, even applying that standard, Defendants have not shown that Dr. Handley received the type of confidential information this standard seeks to protect, or that Defendants would be harmed by not cross-examining her about such confidential information. Third, the equities and public interest support allowing Dr. Handley to testify, particularly given the late hour of Defendants' motion.

For all these reasons, the Court should deny Defendants' motion. In the alternative, if the court were to grant Defendant's motion, it should still permit Dr. Handley to testify while precluding only those portions of her testimony describing the details of her analyses in particular cases while serving as an expert for DOJ, *see* Defs.' Br. at 9-10 (describing Dr. Handley's analyses in the *Eastpointe*, *Texas*, and *Perez* cases), and also grant Plaintiffs leave to identify and retain a new expert witness on the same topics before the close of evidence.

### A. The Standard for Expert Exclusion Does Not Apply Here, Because Dr. Handley Did Not Provide Prior Services to These Defendants.

The standard for expert exclusion on grounds of conflict does not even apply here, because neither the Commerce Department nor the Census Bureau nor Secretary Ross nor Dr.

Jarmin—the only Defendants here—has ever retained Dr. Handley for any purpose.  The

standard cited by Defendants for expert qualification asks if all of the following elements are

present when considering "the issue of an expert who formerly had a relationship with an

adverse party . . . . : (1) was it objectively reasonable for the first party who retained the expert to

conclude that a confidential relationship existed; (2) was any confidential or privileged

information disclosed by the first party to the expert; and (3) does the public have an interest in

allowing or not allowing the expert to testify." *Grioli*, 395 F. Supp. 2d at 13–14.  The standard

itself reveals the first weakness of Defendants' argument: Dr. Handley never "had a relationship

with an adverse party," and thus the first prong of a confidential relationship with "the first party

who retained the expert" does not come into play. Not a single case cited by Defendants involves

a situation where the presently adverse party and the party with whom the expert had a prior

formal relationship were distinct; all involve identical parties.[2]

Here, as Mr. Mellett's declaration states, "the Department [of Justice] has hired Dr. Lisa

Handley as its external expert," and she testified on behalf of the United States in those cases.

Dkt. No. 408–5 ¶ 3.  Unlike all the cases cited by Defendants and the standard they propose,

neither the Department of Justice ("DOJ") nor the United States are parties here,[3] and

---

[2] *See id.* at 14 (expert previously represented defendant as an attorney); *Koch Refining*, 85 F.3d at 1181 (party that retained expert switched sides in litigation); *In re Namenda Direct Purchaser Antitrust Litig.,* 15 CIV. 7488 (CM), 2017 WL 3613663, at *1 (S.D.N.Y. Aug. 21, 2017) (plaintiffs' expert was a former executive for the defendant); *Auto-Kaps, LLC v. Clorox Co.*, 15 CIV. 1737 (BMC), 2016 WL 1122037, at *3 (E.D.N.Y. Mar. 22, 2016) (plaintiff's expert consulted with defendant for approximately two years); *Hinterberger v. Catholic Health System, Inc.*, 08-CV-380S F, 2013 WL 2250591, at *7 (W.D.N.Y. May 21, 2013) (company retained as expert by defendants previously provided services to plaintiffs in connection with litigation); *Gordon v. Kaleida Health*, 08-CV-378S F, 2013 WL 2250506, at *6 (W.D.N.Y. May 21, 2013) (same); *Eastman Kodak Co.*, 2012 WL 4103811, at *6 (defendants' expert was previously plaintiffs' expert in another case); *Marvin Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 590 (D. Minn. 1986) (defendants' expert was a "consulting engineer with plaintiff").

[3] It is a particularly noteworthy overreach to seek to disqualify Dr. Handley on this basis where the Defendants vigorously—and successfully—opposed the *NYIC* Plaintiffs' motion to amend the complaint to add DOJ as a defendant.  *See N.Y. Immigration Coal. v. U.S. Dep't of Commerce*, 18-cv-5025 (JMF), 2018 WL 4292673 (S.D.N.Y. Sept. 7, 2018) (order denying leave to amend complaint).

Defendants do not contend that Dr. Handley ever consulted for the Commerce Department, Census Bureau, Secretary Ross or Dr. Jarmin.  To the extent that Defendants blur this distinction by arguing that they are coextensive with the United States as a party, Plaintiffs could have sued the United States as allowed by 5 U.S.C. § 702, but they did not.  Where the APA itself makes a distinction between federal agencies and the United States as defendants, it is nonsensical to argue that the Commerce Department, Justice Department and United States are effectively coextensive.[4]

Disqualifying an expert who a non-party previously retained would also run counter to the rule's limited purpose.  Typically, disqualification is appropriate "where a party seeks to retain as an expert an adversary's former employee who learned confidential information during the course of his employment, or where an expert switches sides during the course of litigation." *Eastman Kodak Co.*, 2012 WL 4103811, at *7.  Allowing one federal agency to disqualify an adverse expert because they have previously been retained by another federal agency would turn a rule that is "a drastic remedy," *id.*, into everyday practice.

**B.      Defendants Have Not Shown Dr. Handley Received Confidential Information the Rule Protects Against and Their Cross-Examination Argument Rings Hollow**

Unlike "attorney-client communications, discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged." *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001).  Thus, the "burden is on the party seeking to disqualify the expert" to cite "specific and unambiguous disclosures that if revealed

---

[4] Just last year, DOJ even filed an amicus brief in the Second Circuit on behalf of the United States that knowingly took a directly adverse position to another federal agency, the Equal Opportunity Employment Commission (EEOC).  *Compare* En Banc Br. of Amicus Curiae E.E.O.C in Support of Plaintiffs/Appellants and in Favor of Reversal, Dkt. No. 296, *Zarda v. Altitude Express, Inc.*, No. 15-3775 (2d Cir. June 23, 2017), *with* Br. for the United States as Amicus Curiae at 1, Dkt. No. 417, *Zarda v. Altitude Express, Inc.*, No. 15-3775 (2d Cir. July 26, 2017) (advocating for the opposite position and stating that "the EEOC is not speaking for the United States and its position about the scope of Title VII").

would prejudice the party." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094

(N.D. Cal. 2004); *see also Eastman Kodak*, 2012 WL 4103811, at *8.  Defendants have not met

this burden.

For one, Defendants cite confidentiality agreements, but never argue that Dr. Handley

violated their provisions, which expressly allow use of "materials which are matters of public

record." Dkt. No. 408–5 at 15, 19, 23.  Indeed, Dr. Handley's report relies generally on her

experience as an expert for several decades and publicly-available documents to demonstrate

general principles of Voting Rights Act (VRA) analysis, but she offers no opinions about

specific cases in which she was retained by DOJ, or details about those cases beyond what is

contained in her publicly-available reports. *See* Decl. of Lisa Handley (attached at A7).[5]

Defendants cannot show prejudice from her discussion of these public reports.  *See Hewlett-*

*Packard*, 330 F. Supp. 2d at 1094; *see also Eastman Kodak*, 2012 WL 4103811, at *8.

Defendants have also failed to show that Dr. Handley received the type of confidential or

privileged information the rule protects.  Mr. Mellett asserts in conclusory fashion that "Dr.

Handley has received numerous confidential communications and voluminous confidential

information from Department of Justice attorneys and staff regarding CVAP data," for example.

Dkt. 408–5 ¶ 16.  This statement does not identify any "specific and unambiguous" privileged

information provided to Dr. Handley. *Hewlett-Packard Co.*, 330 F. Supp. 2d at 1094.  Rather, his

vague reference to CVAP data implies that such information was *not* privileged: in the expert

disqualification content, "[c]ommunication based upon technical information as opposed to legal

advice is not considered privileged." *Nikkal Industries, Ltd. v. Salton, Inc.*, 689 F. Supp. 187,

---

[5] *See* Dkt. No. 408-4 at 12–13, 15 n.18, 16–17 (citing only publicly available materials to demonstrate general principles using as examples *United States v. Village of Port Chester*, *United States v. City of Eastpointe*, and *Texas v. United States*, and not even discussing the remaining three DOJ cases cited by Defendants).

191–92 (S.D.N.Y. 1988); *see also Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 CIV. 9931 (WHP), 2010 WL 11590131, at *1 (S.D.N.Y. Apr. 15, 2010) (describing confidential information "in the context of expert disqualification" as including discussions about litigation strategy, and explaining that purely "'technical information is not confidential'" (quoting *Koch*, 85 F.3d at 1182)).

Defendants' contention that they will be unable to fully cross-examine Dr. Handley because doing so would supposedly reveal confidential communications also rings hollow. Dr. Handley's report does not offer any substantive conclusions about the merits of the cases on which she worked with DOJ. She merely cites three of these cases to explain the mechanics of how she went about using existing CVAP data to establish the first *Gingles* precondition for Section 2 VRA liability—*i.e.*, that a minority group was sufficiently large and geographically compact to constitute a majority in a single-member district. Defendants offer no explanation as to how cross-examining Dr. Handley about this data and mapping exercise would somehow require the disclosure of confidential information.[6] Moreover, for other cases Dr. Handley discusses in which she was not retained by DOJ, such as *Lopez v. Abbott*, there can be no argument that cross-examining her about her work in those cases would require disclosure of confidential information. The Court should reject their attempt to use confidentiality as both a shield and a sword to disqualify Dr. Handley.

> **C.     Both the Public Interest and Unfair Prejudice to Plaintiffs Also Provide a Sufficient Basis to Reject Defendants' Motion.**

Courts consider not only the public interest of disqualification under the final factor, but also "issues of fundamental fairness, and whether any prejudice might occur if an expert is or is

---

[6] To the extent Defendants assert that doing so would itself require disclosure of confidential information, they could have identified such information for the court without public disclosure through a declaration of affidavit filed under seal; it is telling that they have failed to identify such information with any sort of specificity.

not disqualified," the latter of which "is especially appropriate at late stages in the litigation, at which time disqualification is more likely to disrupt the judicial proceedings." *Hewlett-Packard*, 330 F. Supp. 2d at 1094–95.  Additionally, a court may find that a party waived their right to disqualify an expert by delaying in making their challenge.  In *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F. Supp. 1498, 1504 (D. Colo. 1993), for example, the court found waiver in part because the party who had previously retained an expert waited several months after finding their adversary had retained the expert to challenge his testimony.  Both the public interest and unfair prejudice to Plaintiffs support denying the motion.

First, allowing Defendants to disqualify an expert who was previously retained by a different branch of the federal government would run contrary to the public interest by allowing the government to disqualify experts at their whim when there is no risk of conflict.  That is precisely what Defendants attempt here.  Having failed to identify their own VRA expert even from within the division that purportedly needs this enhanced citizenship data, they instead seek to manufacture a false conflict as a litigation tactic.

Second, Defendants contend that "Plaintiffs can easily retain a new expert in the field, one who did not work for a company that is a key witness in this case," and suggest that Plaintiffs could retain other VRA expert witnesses such as Professor Pamela Karlan.  Def. Br. at 12 (quoting *In re Namenda*, 2017 WL 3613663, at *8); Docket No. 408–6 (Karlan expert disclosure).  Professor Karlan recently served as Deputy Assistant Attorney General for Civil Rights with oversight of the Voting Section,[7] the same role that John Gore served in before he temporarily became Acting AAG for Civil Rights.  Defendants' apparent willingness to permit

---

[7] *See* Stanford Law School, Pamela S. Karlan Biography, *available at* https://law.stanford.edu/directory/pamela-s-karlan/ (noting that Professor Karlan formerly served as "a Deputy Assistant Attorney General in the Civil Rights Division of the U.S. Department of Justice (where she received the Attorney General's Award for Exceptional Service – the department's highest award for employee performance…)"

Plaintiffs to retain Professor Karlan as an expert witness—who, like Dr. Handley has "work[ed] for a company that is a key witness in this case"—smacks of gamesmanship.  Indeed, Defendants know that by waiting until a week before trial to announce their position, they have hamstrung efforts to retain a new expert.  Because of this pretrial ambush, Plaintiffs would be prejudiced by losing the opportunity to identify a new expert in the few days remaining before trial.  By waiting many weeks to announce their position and seek disqualification, Defendants have waived their right to do so. *See English Feedlot*, 833 F. Supp. at 1504.

While the law does not support exclusion of any aspect of Dr. Handley's testimony, should the Court disagree, it should nonetheless not disqualify Dr. Handley completely.  Because her opinions are based on a lifetime of VRA work and are not tied to specific DOJ cases, she could provide the same opinions without discussing the details of analysis on DOJ cases.  This would address any possible concerns raised by Defendants.  If the Court were to do so, then, consistent with Defendants' position that Plaintiffs "may retain a new expert in the field," it should also grant Plaintiffs leave to identify and retain a new expert witness on the same topics before the close of evidence.

Such a ruling should not prove necessary, however.  Defendants seek to impose a rule that does not apply here, given that Dr. Handley has never served as an expert for the Census Bureau or the Commerce Department.  And even if she could properly be characterized as having served as a witness for Defendants, they have not identified "specific and unambiguous disclosures" that would harm them; instead, they cite to technical data that lacks privileged status under this test.  Nor have they offered anything more than a conclusory assertion that they cannot cross-examine her.  Their gamesmanship in springing this motion at the last minute also militates

13

against disqualification, not to mention the dangerous precedent it would set.  The Court should

deny the motion outright.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*


Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
* *Not admitted in the District of Columbia;*
*practice limited pursuant to D.C. App. R.*
*49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com


Attorneys for the *NYIC* Plaintiffs


BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By:   /s/ Matthew Colangelo

Matthew Colangelo
*Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Laura Wood, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street

New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs