## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | 18-CV-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

**Plaintiffs' Responses to Defendants' Evidentiary Objections to Trial Affidavits**

Pursuant to the Court's direction at the final pretrial conference in this action, Plaintiffs submit the following responses to Defendants' evidentiary objections to Plaintiffs' trial affidavits (Docket No. 463).

## 1.  DANIEL ALTSCHULER

Defendants' Objection to ¶ 5: Lack of foundation; Hearsay.

Plaintiffs' Response: For foundation, *see* Altschuler Supp. Dec. ¶ 6; *see generally id.* at ¶¶ 1-5.  The statement made by Mr. Altschuler is founded on personal knowledge acquired through in his long-held capacity as a staff member (and current Director of Civic Engagement and Research) for Make the Road New York ("MRNY").  "'[A] witness's conclusion based on personal observations over time may constitute personal knowledge.'"  *New York v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (quoting *SEC v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992)).  In both his Declaration, at ¶ 1, and Supplemental Declaration, at ¶¶ 1-5, 6, Mr. Altschuler details his work with MRNY and regular engagement with its members

1

for over seven years, and his work in developing civic engagement communications and program around the 2020 Decennial Census for MRNY.  The information in Mr. Altschuler's statement is within the purview of Mr. Altschuler's personal knowledge gained during his tenure at MRNY and is not based on hearsay.  *See M.B.A.F B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

With respect to hearsay, Plaintiffs have not identified any "out of court statement," and thus there is no hearsay issue present.  *See* Fed. R. Evid. 801(a).

Defendants' Objection to ¶ 8: Lacks foundation.

Plaintiffs' Response: The statement is grounded on Mr. Altschuler's personal experience and involvement with MRNY's Census outreach, as described in the declaration and supplemental declaration.  *See* Altschuler Decl. ¶ 8; Altschuler Supp. Decl. ¶¶ 1-5, 7.  "Personal knowledge may be inferred from [an] affidavit itself," and Mr. Altschuler's position as Director of Civic Engagement and Research at MRNY qualifies him "to attest to the factual allegations" regarding MRNY's responsibilities, production of material, and operations contained in the

declaration. *See also* Response to Objection ¶ 5 (citing cases on foundation through professional experience).

      <u>Defendants' Objection to the following statement in  ¶ 11 as lacks foundation, hearsay</u>: "Now, New York immigrant communities' heightened fear of interacting with government workers has increased even further due to the decision to add the citizenship question."

      <u>Plaintiffs' Response</u>:  For foundation, *see* Altschuler Supp. Decl. ¶¶ 1-5, 8.  This statement is within the scope of Mr. Altschuler's well-founded personal knowledge as Director at MRNY, gained from extensive conversations and engagement in the field with New York immigrant communities.  *See* Altschuler Decl. ¶¶ 11, 13-18; Altschuler Supp. Decl. ¶¶ 5, 8, 10, 24-29.  Such "[k]nowledge acquired through others may . . . be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is repetition of a statement made by someone else—a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness."  *U.S. Info. Sys., Inc. v. IBEW Local Union No. 3*, No. 00-cv-4763, 2006 WL 2136249, at *11 (S.D.N.Y. Aug. 1, 2006) (quoting *Afga-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989)).  As such, Defendants' hearsay objection is without merit; *see also* Response to Objection ¶ 5 (citing cases on foundation through professional experience).

      For hearsay, Mr. Altschuler's statement is probative of his state of mind surrounding the decision to expend time and resources on Census-related work as a part of his work at MRNY. *See* Altschuler Decl. ¶¶ 22-24; Altschuler Supp. Decl. ¶ 8.  Thus, Defendants' objection also fails because the statement is not offered for the truth of the asserted matter.  *See United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) ("When statements by an out-of-court declarant are admitted as background, they are properly so admitted . . . to show the circumstances

surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed."); *see also Tuccio v. Papstein*, 307 F. App'x 545, 546 (2d Cir. 2009) (district court did not err admitting affidavit not offered for truth of the matters asserted but "to show the information [defendant] had").  Instead, these statements are offered to show support for the reasons that MRNY has diverted resources to encourage participation in the Decennial Census, as a result of Defendants' efforts to add a citizenship question.

Additionally, as to any hearsay issues relating to his understanding of fear in the community, Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a). Moreover, even if Defendants intend to assert that this relies on inadmissible hearsay, they are incorrect. Any assertions Mr. Altschuler relied upon about community members' fear due to the citizenship question were either not hearsay, as a statement that "is offered as circumstantial evidence of what the declarant knew or believed," does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05-CV-3195 (FB) (RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming"). Community members' expressions of fear therefore either are not hearsay, or fall under Rule

803(3) because they are offered not to establish whether or not their responses will actually be used incorrectly, but to show their state of mind concerning the addition of the question.

<u>Defendants' Objection to the following statement in ¶ 11 as speculation</u>:  Defendants object to the assertion: "By adding a citizenship question to the Decennial Census, the Trump Administration has taken advantage of a unique opportunity to bring their campaign to intimidate and marginalize immigrants into the home of every immigrant."

<u>Plaintiffs' Response</u>: Mr. Altschuler has clarified in his Supplemental Declaration, that his statement reflects an assertion regarding the citizenship question's perception among the communities MRNY serves.  *See* Altschuler Supp. Decl. ¶ 9.  Any statements Defendants challenge are properly grounded on Mr. Altschuler's experience and reflect permissible inferences he can make as an affiant.  *See Visser*, 924 F.2d at 659 ("'Personal knowledge' includes inferences" so long as they are "grounded in observation or other first-hand personal experience" not "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience").

<u>Defendants Objection to the following statement in ¶ 12 as lacks foundation, hearsay</u>: Defendants object to Mr. Altschuler's assertion that "MRNY is already facing a much more challenging environment for conducting outreach and encouraging immigrants of color to respond to the 2020 Census than the 2010 Census because of our members and constituents' heightened fear of interacting with government workers as a result of the Trump Administration's persistently hostile and discriminatory actions and attitudes towards immigrants of color."

<u>Plaintiffs' Response</u>: For foundation, *see* Altschuler Supp. Decl. ¶ 10.  From his role at MRNY overseeing civic engagement, research and participating in community organizing, as

well as developing MRNY's 2020 Census education and outreach programs, Mr. Altschuler has

substantial and well-grounded personal knowledge to form an understanding on the environment

MRNY faces regarding outreach to immigrant communities on the 2020 Census.  *See* Altschuler

Supp. Aff. ¶¶ 1-5, 10.  *See, e.g.*, *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461

(S.D.N.Y. 2000) ("An affiant's conclusions based on personal observations over time . . . may

constitute personal knowledge . . . ."); *see also Saint Francis Hosp.*, 94 F. Supp. 2d at 428

(affiant "could reasonably be expected to have first-hand knowledge of [] business" "in light of

his position . . . and his twenty-five years of service").  Mr. Altschuler is also familiar with

MRNY's experience in both the run-up to and wake of the 2010 Census, based on his role in

developing MRNY's 2020 Census education, outreach,  communications; including the process

of determining MRNY's budgeting and hiring.  *See* Altschuler Decl. ¶¶ 7,[1] 8, 10; Altschuler

Supp. Decl. ¶ 5*; see also* Response to Objection ¶ 5 (citing cases on foundation through

professional experience).

    With regard to hearsay, no part of the statement contains an "out-of-court statement," nor

is any statement being made for the truth of the matter asserted.  *See* Fed. R. Evid. 801(a).  These

statements are offered to show support for the reasons that MRNY has diverted resources to

encourage participation in the Decennial Census, as a result of Defendants' efforts to add a

citizenship question.  In any event, to the extent Mr. Altschuler refers to the heightened fear of

MRNY's members and constituents resulting from the Trump Administration's actions, that is a

permissible inference Mr. Altschuler has personal knowledge to form based on regular

interactions with both groups and the immigrant community at large over the course of years.

---

[1]    Defendants do not object to or dispute Paragraph No. 7 of Mr. Altschuler's Declaration,
which describes the work MRNY did in anticipation of the 2010 Census.

*See Boyd*, 2012 WL 4718723, at *4 ("In the Second Circuit, the test for determining a witness's personal knowledge is 'whether a reasonable trier of fact could believe the witness had personal knowledge.'" (quoting *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991)).  Whether or not the fears Mr. Altschuler has perceived in his work with the immigrant community are "realistic or based on an actual policy of which [he] had personal knowledge is irrelevant."  *In re Air Crash Disaster Near Warsaw, Poland*, Nos. MDL-787, 1995 WL 605247, at *4 (E.D.N.Y. Oct. 5, 1995). *See also* Response to Objection ¶ 11 (addressing hearsay).

Defendants Objection to ¶ 13: Hearsay

Plaintiffs' Response: Mr. Altschuler's assertions concerning his understanding of a heightened fear among MRNY, its members, and the communities with which it interacts are rooted on his personal and professional experience—including discussions and first-hand observations.  *See* Altschuler Decl. ¶¶ 5, 10, 24-29; Altschuler Supp. Decl. ¶ 11.  Moreover, observations based on specific—but numerous—conversations or interactions with individuals in the community do not purport to introduce statements for the truth of the matter asserted.  Rather, they shed light on Mr. Altschuler's state of mind, which has informed his actions and focused his and MRNY's attention on remedying the community's observable fear by diverting MRNY's resources into increasing education and outreach around the 2020 Census.  "[T]he mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay."  *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005). *See also* Response to Objection ¶ 11 (addressing hearsay).

Defendants Objection to ¶ 14: Hearsay

Plaintiffs' Response: The referenced statements are not offered for the truth of their asserted matter.  Rather, they shed light on Mr. Altschuler's state of mind and how his

interactions with members in the community have informed decisions to refocus efforts and divert resources to addressing the impact the citizenship question has had on the communities MRNY serves.  *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (internal quotation marks omitted)); *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay."); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("'[W]here a statement is offered as circumstantial evidence of the declarant's state of mind rather than for the truth of the matter asserted, it is not hearsay.'" (quoting Fed. R. Evid. 801(c)). *See also* Response to Objection ¶ 11 (addressing hearsay).

Defendants Objection to ¶ 15: Hearsay

Plaintiffs' Response: Plaintiffs incorporate by reference their response to ¶14.

Defendants Objection to ¶ 16: Hearsay

Plaintiffs' Response: Plaintiffs incorporate by reference their response to ¶14.

Defendants Objection to ¶ 17: Hearsay

Plaintiffs' Response: Plaintiffs incorporate by reference their response to ¶14.

Defendants Objection to ¶ 18: Hearsay

Plaintiffs' Response: Plaintiffs incorporate by reference their response to ¶14.

Defendants' Objection to ¶ 22:  Relevance

Plaintiffs Response: Defendants' objection as to the relevance of this paragraph—which bears directly on the injury MRNY has suffered and its standing to sue—has no merit.  MRNY has asserted it has suffered injury that is redressable by the relief it seeks in litigation.

8

Specifically, MRNY has diverted limited organizational resources to mitigate the effects of Defendants' conduct.  "[E]ven the slight diversion of resources to remedy some harm or to fight some harmful conduct or policy can constitute injury-in-fact sufficient to confer standing if the injury is perceptible, concrete, and demonstrable." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 120-21 (2d Cir. 2017).  As a high-ranking member of MRNY with management, supervisory, and mission-defining duties, the relevance of Mr. Altschuler's statements here is both manifest.

<u>Defendants' Objections to Paragraph ¶ 23: Foundation. Hearsay</u>.

<u>Plaintiffs Response</u>:  For foundation, *see* Altschuler Supp. Dec. ¶ 1-5, 13.  All assertions contained in this paragraph are firmly grounded in Mr. Altschuler's extensive, first-hand work in with the immigrant community and MRNY members and his considerable experience with the Census as the organization's director of research.  *See* Altschuler Supp. Decl. ¶ 13.  "'[A] witness's conclusion based on personal observations over time may constitute personal knowledge.'"  *Saint Francis Hosp.*, 94 F. Supp. at 425 (quoting *Singer*, 786 F. Supp. at 1167).  *See also* Response to Objection to ¶ 6 on foundation; Response to Objection to ¶ 11 on hearsay.

<u>Defendants' Objections to Paragraph ¶ 24: Foundation.</u>

<u>Plaintiffs Response:</u> For foundation, *see* Altschuler Supp. Dec.  ¶ 1-5, 14.   There is ample foundation to establish Mr. Altschuler works for MRNY, has met with its members, and has deep knowledge of their needs and concerns identified during those meetings.  Both, Mr. Altschuler's initial declaration and subsequent supplemental declaration detail Mr. Altschuler's role during his tenure at MRNY and his work with its members and the communities it serves.  *See* Altschuler Decl. ¶¶ 1, 5, 11, 14-18; Altschuler Supp. Decl. ¶ 14.  *See also* Response to Objection to ¶ 6 on foundation; Response to Objection to ¶ 11 on hearsay.

Defendants' Objections to Paragraph ¶ 25: Foundation, Hearsay.

Plaintiffs Response:  For foundation, *see* Altschuler Supp. Dec. ¶¶ 1-5, 15.   For hearsay, Defendants have not identified any out-of-court statements made by Ms. Bisono, let alone for the truth of any particular matter. *See* Fed. R. Evid. 801.   In his Supplemental Declaration, Mr. Altschuler further affirms sufficient information based on his personal knowledge to establish a firm foundation for his statements—i.e., that he knows Ms. Bisono and her children personally and has worked directly and extensively worked with Ms. Bisono in preparing a report that addressed overcrowding in the public schools that serve her children in Queens County, New York.  *See* Altschuler Supp. Decl. ¶¶ 15.  *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

Defendants' Objections to Paragraph ¶ 26: Foundation, Hearsay.

Plaintiffs Response: For foundation, *see* Altschuler Supp. Dec. ¶¶ 1-5, 16.  For hearsay, Defendants have not identified any out-of-court statements made by Ms. Zarumeno, let alone for the truth of any particular matter.  *See* Fed. R. Evid. 801.  In his Supplemental Declaration, Mr. Altschuler further affirms sufficient information based on his personal knowledge to establish a firm foundation for his statements—i.e., that he knows Ms. Zarumeno personally and has worked directly and extensively worked with Ms. Zarumeno in preparing a report that addressed overcrowding in the public schools that serve her children in Queens County, New York.  *See* Altschuler Supp. Decl. ¶¶ 16. *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

Defendants' Objections to Paragraph ¶ 27: Foundation, Hearsay.

Plaintiffs Response: For foundation, *see* Altschuler Supp. Dec. ¶¶ 1-5, 17.  For hearsay, Defendants have not identified any out-of-court statements made by Ms. Hernandez, let alone for

the truth of any particular matter.  *See* Fed. R. Evid. 801.  In his Supplemental Declaration, Mr. Altschuler further affirms sufficient information based on his personal knowledge to establish foundation for his statements—i.e., he is aware of Ms. Hernandez's membership status, residence, and the schools her children attend as a result of her participation in MRNY's parent and education organizing—a program with which he regularly interacts.  *See* Altschuler Supp. Decl. ¶¶ 15. *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

       <u>Defendants' Objections to Paragraph ¶ 28: Foundation, Hearsay.</u>

       <u>Plaintiffs Respons</u>e: For foundation, *see* Altschuler Supp. Dec. ¶¶ 1-5, 18.   For hearsay, Defendants have not identified any out-of-court statements made by Ms. Mendez, let alone for the truth of any particular matter.  *See* Fed. R. Evid. 801.  In his Supplemental Declaration, Mr. Altschuler further affirms sufficient information based on his personal knowledge to establish foundation for his statements—i.e., he is aware of Ms. Mendez's membership status, residence, and the schools her children attend as a result of her participation in MRNY's parent and education organizing—a program with which he regularly interacts .  *See* Altschuler Supp. Decl. ¶¶ 15. *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

       <u>Defendants' Objections to Paragraph ¶ 29: Foundation, Hearsay, Speculation.</u>

       <u>Plaintiffs Response</u>: For foundation, *see* Altschuler Supp. Dec. ¶ 1-5, 19.   For hearsay, Defendants have not identified any out-of-court statements made by Ms. Lopez, let alone for the truth of any particular matter. *See* Fed. R. Evid. 801.  Moreover, in his Supplemental Declaration, Mr. Altschuler has clarified that he knows personally and has worked regularly with Ms. Lopez for several years and through that longstanding relationship knows that she is an

MRNY member and lives in Queens County, which is sufficient information to lay a foundation. *See In re Bridge Constr. Servs. of Fla., Inc.*, 39 F. Supp. at 383 ("'[P]ersonal knowledge' includes basic, commonsensical inferences, so long as they are 'grounded in observation or other first-hand experience . . . .'" (quoting *Visser v. Packing Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)). Mr. Altschuler has also declared that he has knowledge of New York City's demographics as well as the role and impact of Census data in political apportionment and allocation of government funding through his work at MRNY on developing Census education and outreach, as well as on political redistricting matters. *See* Altschuler Decl. ¶ 1; Altschuler Supp. Decl. ¶¶ 19-20. Any statements Defendants challenge as speculative are properly grounded on Mr. Altschuler's experience and reflect permissible inferences he can make as an affiant. *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

       <u>Defendants' Objections to Paragraph ¶ 30: Foundation, Hearsay, Speculation.</u>

       <u>Plaintiffs Response:</u> For foundation, *see* Altschuler Supp. Dec. ¶¶ 1-5, 20. For hearsay, Defendants have not identified any out-of-court statements made by Ms. Tovar, let alone for the truth of any particular matter.. *See* Fed. R. Evid. 801. Moreover, in his Supplemental Declaration, Mr. Altschuler has clarified that he knows personally and has worked regularly with Ms. Lopez for several years and through that longstanding relationship knows that she is an MRNY member and lives in Queens County, which is sufficient information to lay a foundation. Mr. Altschuler has also declared that he has knowledge of New York City's demographics as well as the role and impact of Census data in political apportionment and allocation of government funding through his work at MRNY on developing Census education and outreach, as well as on political redistricting matters. *See* Altschuler Decl. ¶ 1; Altschuler Supp. Decl.

¶¶ 19-20.  Any statements Defendants challenge as speculative are properly grounded on Mr. Altschuler's experience and reflect permissible inferences he can make as an affiant. *See also* Response to Objection to ¶ 5 on foundation; Response to Objection to ¶ 11 on hearsay.

## 2.  TODD A. BREITBART

Defendants' Objection to ¶¶ 2-12:  Lack of personal knowledge.  Untimely disclosed expert testimony.

Plaintiffs' Response:  Mr. Breitbart's October 25 Affidavit is not "untimely disclosed expert testimony."  As noted in Mr. Breitbart's Supplemental Affidavit dated November 3, 2018, his testimony about the functioning of the redistricting process in New York State is based in part on publicly available data published by the Census Bureau, the accuracy of which cannot reasonably be questioned, and of which the Court may therefore take judicial notice under Fed. R. Evid. 201.  *See Skolnick v. Bd. of Comm'rs of Cook County*, 435 F.2d 361, 363 & n.8 (7th Cir. 1970) ("federal courts frequently have judicially noticed" census population figures) (citing cases).  Those opinions are further based on his personal knowledge of the redistricting process derived from his professional experience, as described in ¶ 2 of his October 25 Affvidat.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702. Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008—a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of his October 25 Affidavit reflects testimony as to his opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being derived through a process of ordinary reasoning from the facts he is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

**3.  SUSAN BROWER**

Defendants' Objection to ¶ 4:  Speculation.

Plaintiffs' Response:  Ms. Brower's testimony in this paragraph is straightforwardly based on her extensive personal knowledge of how redistricting in Minnesota has worked in past decades, as set forth in ¶ 3 of her October 25 Affidavit, and her reasonable opinion that the process, and her role as the State Demographer for the state of Minnesota will probably be similar in the future.  Lay opinion is admissible under Fed. R. Evid. 701 where it is rationally based on the facts a witness is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

Defendants' Objection to ¶ 5:  Hearsay.

Plaintiffs' Response:  Ms. Brower's testimony in this paragraph, as clarified by ¶ 2 of her supplemental affidavit sworn to on November 3, 2018 (the "Supplemental Brower Aff.") is not hearsay, as it is based on her direct personal observation of residents of Minnesota asking questions about the impact of the citizenship question.  "An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." *U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 146 (S.D.N.Y. 2015) (citing *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir 1990)).

Defendants' Objection to ¶¶ 6, 7:  Lack of personal knowledge. Untimely disclosed expert testimony.

Plaintiffs' Response:  Ms. Brower's testimony in this paragraph, as clarified by ¶ 3 of the Supplemental Brower Aff.,  relies on publicly available data published by the Census Bureau, the accuracy of which cannot reasonably be questioned, and of which the Court may therefore take judicial notice under Fed. R. Evid. 201.  *See Skolnick v. Bd. of Comm'rs of Cook County*, 435 F.2d 361, 363 & n.8 (7th Cir. 1970) ("federal courts frequently have judicially noticed" census population figures) (citing cases); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of "documents retrieved from official government websites" such as those of the Illinois Secretary of State, and the Westchester County Clerk); *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Service*, 777 F.Supp.2d 424, 432 n.6 (E.D.N.Y. 2011) (noting that "the Court may take judicial notice of the [Brooklyn Bridge Park] website, which is a government publication"); *Cali v. East Coast Aviation Services, Ltd.*, 178 F.Supp.2d 276, 286 n.6 (E.D.N.Y. 2001) (taking judicial notice of "online database pages from certain government agencies, including the Pennsylvania Department of State, Bureau of Corporations").

Her testimony is not an "untimely disclosed expert opinion." Her statements about the distribution of population in Minnesota are based on her personal knowledge, derived, as stated above from publicly available Census Bureau data. *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702. Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008—a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of these paragraphs contains her opinion, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of. *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

Defendants' Objection to ¶ 8:  "At a meeting with U.S. Census Bureau officials the week of July 30, 2018, in Los Angeles, I conveyed that Minnesota does not want to receive citizenship status at the block level."  Hearsay.

Plaintiffs' Response:  This testimony is not hearsay.  Ms. Brower in this paragraph is relating statements that she herself made at a meeting.  As she is herself testifying, her own statements are not hearsay.  To the extent that Defendants are suggesting that a statement was

made out-of-court by the state of Minnesota and was repeated by Ms. Brower at that meeting, and are objecting to such a statement as hearsay, it is clear from the language of Ms. Brower's testimony that she does not purport to be quoting the state of Minnesota.

Defendants' Objection to ¶ 9:  Hearsay.

Plaintiffs' Response:  The statement related in this paragraph, identified further in ¶ 4 the Supplemental Brower Affirmation as having been made by James Whitehorne, the Chief of the Census Bureau's Redistricting Data Program, is admissible as having been made by an agent of a party to this litigation, on a subject on which he was authorized to speak.  Fed. R. Evid. 801(d)(2).  A "statement that is offered against an opposing party" is not hearsay if the statement satisfies at least one of five criteria: the statement "(A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2).  *See, e.g.*, *Walsh v. N.Y.C. Hous. Auth.,* 828 F.3d 70, 79 (2d Cir. 2016) (finding an employee's "lack of decisionmaking authority" within an agency to be irrelevant to the question of admissibility under this rule, and finding that a statement by an employee in the HR Department to a candidate was admissible because it was made "within the scope of his relationship" with his employer).

## 4.  STEVEN K. CHOI

Defendants' Objection to ¶ 4:  Hearsay, lack of foundation.

Plaintiffs' Response: For foundation, see Choi Decl ¶ 1; Choi Supp. Decl. ¶¶1-5. The information in Mr. Choi's declaration statement is within the purview of Mr. Choi's personal knowledge gained during his tenure as Executive Director NYIC.  *See M.B.A.F B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

For personal knowledge, Mr. Choi has attested to his role as NYIC Executive Director, a role he has held for over five years.  Choi Decl. ¶ 1.  Mr. Choi's statements relate directly to NYIC's operations and mission statement, as well as those of its constituent member organizations.  It is reasonable to assume that a trier of fact could believe that as Executive Director, Mr. Choi would have personal knowledge of these matters.  *See Folio Impressions, Inc. v. Byer CA*, 937 F.2d 759, 764 (2d Cir. 1991) ("The test is whether a reasonable trier of fact could believe the witness had personal knowledge."); *see also United States v. Williams*, 205 F.3d 23, 34-35 (2d Cir. 2000) (proper foundation where bank employee was sufficiently familiar with bank's practice and testified that relevant document was created as part of that practice);

*Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 334 (E.D.N.Y. 2014) ("Although [affiant] did not give a detailed professional history, the Court can infer that she is knowledgeable about the relevant by-laws and policies based on her position as Assistant to the Provost, her responsibility for maintaining files and records . . . and her more than forty years of experience at SUNY(F).").

For hearsay, Plaintiffs have not identified any out-of-court statement asserted for the truth of matter in paragraph 4.

Defendants' Objection to ¶ 6:  Lack of foundation, lack of personal knowledge, hearsay.

Plaintiffs' Response:  For foundation, Choi Supp. Decl. ¶¶ 1-6.  Plaintiffs also incorporate by reference their response to objections to ¶ 4 regarding foundation, personal knowledge, and hearsay.

Defendants' Objections to ¶ 7:  Lacks foundation, speculation, untimely disclosed expert testimony, improper expert testimony.

Plaintiffs' Response:  For foundation, *see* Choi Decl. ¶ 1, Choi Supp. Decl. ¶¶ 1-5, 7.

Mr. Choi's affirmations are not untimely or improper expert testimony.  Rather, his statements about the likely effect of the Decennial Census on NYIC's members are grounded on his personal knowledge of NYIC as well as its members' experiences, access to political representation, and general circumstances.  *See United States v. Khafizov*, 604 F. App'x 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony . . . . Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008—a fact directly relevant to Khafizov's fraudulent misrepresentation to the contrary."); *United States v. Ahmed*, No. 14-cr-277, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp.

19

3d 148, 172 (S.D.N.Y. 2014).  Mr. Choi's Supplemental Declaration also makes clear that his

knowledge of the Census and the participation of immigrant communities is based on his work

with immigrant communities in three Census cycles, as well as his five years of experience as

Executive Director of NYIC, which includes extensive involvement with the organization's

Census work.  To the extent any part of Mr. Choi's statement reflects testimony as to his

opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the

facts he is personally aware of.  *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013)

(holding lay witness may testify to opinions derived from direct perceptions by means of "a

process of reasoning familiar to everyday life"); *see also United States v. Rigas*, 490 F.3d 208,

224 (2d Cir. 2007) (accountant's opinions admissible lay opinion as being derived from personal

knowledge through ordinary reasoning).

     Defendants' Objections to ¶ 9:  Lack of foundation, lack of personal knowledge, hearsay.

     Plaintiffs' Response:  For foundation and personal knowledge, *see* Choi Supp. Decl. ¶¶1-

5, 9. With respect to hearsay, Defendants have not identified any "out of court statement," and

thus there is no hearsay issue present.  *See* Fed. R. Evid. 801(a).  In any event, Mr. Choi's

testimony regarding NYIC's education efforts is grounded on his personal knowledge of NYIC's

prior Census work in the course of developing NYIC's 2020 Census work, as well as its

members' experiences and objectives.  *See Ava Acupuncture P.C. v. State Farm. Mut. Auto. Ins.

Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance

company manager about the amount of denied claims was not inadmissible hearsay as it was

based on her personal knowledge, formed "after a review of the records").  See Plaintiffs'

response to Objection to ¶ 4.

For Hearsay, Defendants have not identified any out-of-statement asserted for the truth of the matter asserted.  Instead, they are offered to show Mr. Choi's state of mind in the course of making decisions related to planning and executing NYIC's 2020 Census education and outreach efforts.  *See United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) ("When statements by an out-of-court declarant are admitted as background, they are properly so admitted . . . to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed."); *see also Tuccio v. Papstein*, 307 F. App'x 545, 546 (2d Cir. 2009) (district court did not err admitting affidavit not offered for truth of the matters asserted but "to show the information [defendant] had").

Defendants' Objections to ¶ 14:  Lacks foundation, speculation, hearsay.

Plaintiffs' Response:  As to lack of foundation, *see* Choi Supp. Decl. ¶¶ 1-5, 9. *See* Responses to Objections to ¶ 4 on foundation.

Regarding speculation, Mr. Choi's affirmations concerning immigrant communities' perception of the 2020 Decennial Census are based on his personal knowledge of immigrant communities gained, *inter alia*, as Executive Director of NYIC and a leader in the immigrant community who maintains regular contacts with NYIC's member organizaitons and the communities of color they serve.  *See* Choi Decl. ¶ 1; Choi Supp. Decl. ¶¶ 1-5, 9.

Regarding hearsay, Mr. Choi's statements are "offered as circumstantial evidence of what the declarant knew or believed" and therefore do not "fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted."  *Woods v. Computer Horizons Corp.*, No. 05-cv-3195, 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008).  Statements regarding the perceived threat of the Decennial Census on immigrant communities are based on Mr. Choi's personal knowledge and present understanding of the communities NYIC serves and

are not speculation.  In addition, Mr. Choi's statements are also evidence of his state of mind in the course of making decisions related to planning and executing NYIC's 2020 Census education and outreach efforts.  *See* Responses to Objections to ¶ 9 on hearsay.

Defendants' Objections to ¶ 15:  Lacks foundation, hearsay.

Plaintiffs' Response:  For foundation, *see* Choi Decl. ¶ 1; Choi Supp. Decl. ¶¶ 1-5, 10. See Response to Objection ¶ 4 on foundation.  See Response to Objections ¶¶ 9, 14 on hearsay.

Defendants' Objections to ¶ 22:  Speculation, lack of personal knowledge, hearsay, hearsay within hearsay.

Plaintiffs' Response:  For personal knowledge and speculation, *see* Choi Decl. ¶ 1; Choi Supp. Decl. ¶¶ 1-5, 11.  Mr. Choi's statements are well-grounded in his personal knowledge and express his understanding of the concerns of the immigrant communities that NYIC serves and how those concerns influence his decision-making as Executive Director as NYIC.

For hearsay, these statements not offered for the truth of the asserted matter.  *See United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984) ("When statements by an out-of-court declarant are admitted as background, they are properly so admitted . . . to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed."); *see also Tuccio v. Papstein*, 307 F. App'x 545, 546 (2d Cir. 2009) (district court did not err admitting affidavit not offered for truth of the matters asserted but "to show the information [defendant] had").  Instead, these statements are offered to show support for the reasons that Mr. Choi, as Executive Director of NYIC, made the decision to diverter organizational resources to encourage participation in the Decennial Census, as a result of Defendants' efforts to add a citizenship question.

<u>Defendants' Objections to ¶ 23:</u>  Lack of foundation, speculation, untimely disclosed expert testimony, improper expert testimony.

<u>Plaintiffs' Response:</u>  For foundation, and speculation see Choi Decl. ¶ 1; Choi Supp. Decl. ¶¶ 1-5, 13.  Mr. Choi's statements are well-grounded in his extensive experience working with immigrant communities on Census-related issues for three Census cycles and his five years of experience as Executive Director of NYIC with responsibility for that organization's Census education and outreach efforts.

The statement above presents proper lay opinion testimony allowed under Federal Rule of Evidence 701 because courts permit "lay witnesses to offer opinions based on particularized knowledge acquired in their professional experience." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543(JMF), 2016 WL 4410008, at *8 (S.D.N.Y. Aug. 18, 2016).  Mr. Choi bases his statements on his observations acquired from his experience as the Executive Direct of NYIC and a leader in New York's immigrant community, as well as his extensive experience with immigrant participation in the Decennial Census. *See See, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (holding that company president could provide opinions about expected lost profits based on his experience and evidence of decreased sales); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 90 (2d Cir. 2006) (holding that lay opinion testimony about pain was proper when based on personal observations). His testimony will be helpful to the Court because he offers a unique perspective based on his extensive interactions with and knowledge of the New York immigrant community, particularly in the context of the Census, about an important factual issue-the citizenship question's effect on this community. *See* Choi Supplemental Decl. ¶¶ 12. Because any opinion expressed here is lay opinion testimony, it does not fall under the scope of Federal Rule of Civil Procedure 26(a)(2) requiring an expert

report or disclosure, and Mr. Choi was properly disclosed as a potential witness under Rule

26(a)(1).  Moreover, Mr. Choi's Supplemental Declaration expressly clarifies that he "do[es] not

intend to offer any specific predictions about non-response rate or percentage undercount, but

only [his] observations based on [his] knowledge as a community leader and my work as NYIC

Executive Director, and my participation and supervision of our extensive education and

outreach efforts for the 2020 Decennial Census."  Choi Supp. Decl. ¶ 12.


**5.  SARA CULLINANE**

Defendants' Objection to ¶¶ 1-23: Relevance.  Not timely identified in Rule 26(a)(1)

initial disclosures.

Plaintiffs' Response: Ms. Cullinane's October 23 Affidavit consists of 11 paragraphs, not

23.  As to ¶¶ 1-11 of Ms. Cullnane's affidavit, her testimony regarding the impact of the

citizenship question on immigrant communities in New Jersey is relevant to both Plaintiffs'

standing and the merits of Plaintiffs' claims in this action.

Defendants' objection that Ms. Cullinane was "not timely identified" is incorrect.  Ms.

Cullinane is identified by name in Plaintiffs' initial disclosures of July 20, 2018.  *See* Docket No.

463-1, at p.95.

Defendants' Objection to Statement in ¶ 3:  "Our clients experienced extreme fear and

anxiety.  Many did not leave their homes because they were afraid of being apprehended by

immigration authorities.  Others pulled their children out of school and stopped attended medical

appointments and social service appointments for their children."  Foundation.  Hearsay.

Plaintiffs' Response:  Ms. Cullinane's testimony in ¶ 5 of her Oct. 23 Affidavit

establishes sufficient foundation.  That testimony describes Ms. Cullinane's participation in a

survey of 59 legal service providers across fourteen counties in New Jersey on the impact of Immigration and Customs Enforcement's actions. Her Oct. 23 Affidavit also discusses her responses to inquiries from community members on the citizenship question (¶ 8), and her observations of community members when discussing this issue (¶9). All of the knowledge gained from these experiences are foundation for her knowledge in ¶ 3.  Ms. Cullinane's Supplemental Affidavit, dated November 3, 2018, further establishes her foundation for this testimony.  *See* Cullinane Supp. Aff. ¶¶ 2-3.

Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).

Defendants' Objection to Statement in ¶ 4: Lack of Personal Knowledge. Foundation. Hearsay.

Plaintiffs' Response:  Foundation is established as described in Plaintiffs' response to ¶ 4. Defendants have also not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).

Defendants' Objection to Statement in ¶ 5: Hearsay. Hearsay Within Hearsay.

Plaintiffs' Response:  The statements in ¶ 5 are within the purview of Ms. Cullinane's personal knowledge as director of Make the Road New Jersey, as well as her fourteen years of experience working on immigrant rights' issues, and based on her experience and knowledge gained over the course of the last number of months. *See* Cullinane Supp. Aff.; *see also M.B.A.F. B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (statements

by an insurance company manager about the amount of denied claims was not inadmissible

hearsay as it was based on her personal knowledge, formed "after a review of the records");

*Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4

(E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as

he was "competent to speak to the account records based on his experience, position within the

company, access to account records, and personal knowledge based on the review he initiated of

[ ] account data").

      The assertions Ms. Cullinane relied upon about community members' fear due to the

citizenship question – namely, the fear of attending court proceedings – were not hearsay, as a

"statement is offered as circumstantial evidence of what the declarant knew or believed," does

"not fall within the definition [of hearsay] because it was not offered to prove the truth of the

matter asserted," *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252,

at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir.

1988)), or fall under the Rule 803(3) exception which "allows statements, otherwise excluded as

hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too,

Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v.

Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed

fear that gang members were coming for him was not "offered to show that gang members

were *actually* coming, but rather to show that Smith believed they were coming"). Community

members' expressions of fear therefore either are not hearsay, or fall under Rule 803(3) because

they are offered not to establish whether or not their responses will actually be used incorrectly,

but to show their state of mind concerning the addition of the question.

Further, any references to the survey Ms. Cullinane conducted, in her capacity as director of Make the Road New Jersey, are offered to establish the "confusion" around answering the citizenship question, and are admissible under FRE 803(3). *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 227 (2d Cir. 1999) ("The great majority of surveys admitted in this Circuit, including those used in Lanham Act cases to establish actual confusion or secondary meaning, fall [under Rule 803(3)]:they poll individuals about their presently existing states of mind to establish facts about the group's mental impressions.").

Defendants' Objection to ¶6: Lack of Personal Knowledge. Foundation.

Plaintiffs' Response: Foundation is established as described in Plaintiffs' response to ¶ 4. Ms. Cullinane's Supplemental Affidavit describes the basis for her personal knowledge. *See* Cullinane Supp. Aff. ¶¶ 2-3.

Defendants' Objection to ¶7: Hearsay.

Plaintiffs' Response: Any assertion based on statements about an individual's intent to answer or not answer the citizenship question is not inadmissible hearsay as "statements of future intent are not excludable as hearsay." *United States v. Badalamenti*, 794 F.2d 821, 826 (2d Cir. 1986). Moreover, any assertions Ms. Cullinane relied upon about community members' fear due to the citizenship question are not hearsay as they are submitted to evidence the declarants' states of mind under Fed R. Evid. 803(3) and are admissible for the reasons given in Plaintiffs' Response to Defendants Objection to ¶ 5 above.

Defendants' Objection to ¶8: Hearsay.

Plaintiffs' Response: Community member statements in paragraph 8 are not hearsay because they are not statements – they are inquiries. *See Inc. Pub. Corp. v. Manhattan Magazine, Inc., Inc.*, 616 F. Supp. 370, 388 (S.D.N.Y. 1985) ("An inquiry is not an 'assertion,' and

accordingly is not and cannot be a hearsay statement"), *aff'd*, 788 F.2d 3 (2d Cir. 1986). The lack of identity of the declarant, moreover, does not render the question inadmissible. *U.S. v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) (unidentified caller's question "Have the apples arrived there?" was non-hearsay circumstantial evidence of defendant's drug dealing).

Moreover, if the questions in ¶ 8 had been statements, they would still not be hearsay as they are submitted to evidence the declarants' states of mind under Fed R. Evid. 803(3) and are admissible for the reasons given in Plaintiffs' Response To Defendants Objection to ¶ 5 above.

Defendants' Objection to ¶9: Hearsay.

Plaintiffs' Response: Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).

Defendants' Objection to ¶10: Lack of Personal Knowledge. Foundation. Speculation. Untimely Disclosed Expert Opinion.

Plaintiffs' Response: Ms. Cullinane's testimony regarding the effect of the citizenship question on New Jersey residents is based on her personal knowledge and observations, as described in her Supplemental Affidavit.  See Cullinane Supp. Aff. ¶¶ 1-4.

Ms. Cullinane's testimony is not speculative.  Her statements about the likely effect of the citizenship question on the immigrant community in New Jersey are based on her personal knowledge of that community.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014)

To the extent any part of this paragraph reflects her opinion, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of. *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir 2013) (lay witnesses may testify to opinions

derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

Defendants' Objection to ¶ 11:  Hearsay.

Plaintiffs' Response: Any assertions Ms. Cullinane relied upon in this paragraph from city officials and community groups expressing concerns about the citizenship question are not hearsay as they are submitted to evidence the declarants' states of mind under Fed. R. Evid. 803(3), and are admissible for the reasons given in Plaintiffs' Response to Defendants Objection to ¶ 5 above.


6.  **GEORGE ESCOBAR**

¶ 2: Defendants Object to the italicized portion of the following statement as untimely disclosed expert opinion: "*Based on my nearly 20 years of professional experience working for Latino and immigrant serving organizations in both the public and private sectors, the current outreach to immigrant communities I oversee in my current capacity at CASA, and my conversations with individual CASA members, I believe the addition of a citizenship question to the 2020 Decennial Census short-form questionnaire will deter participation of many individuals in the Latino and immigrant communities and result in a disproportionate undercount of Latinos.* As a result of the decision to add this question, CASA has diverted and will continue to be required to divert resources from core organizational priorities to additional remedial outreach to counteract the citizenship question's negative affect on Census response rates in our community."

<u>Plaintiffs' Response</u>:  The statement above presents proper lay opinion testimony allowed under Federal Rule of Evidence 701 because courts permit "lay witnesses to offer opinions based on particularized knowledge acquired in their professional experience." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543(JMF), 2016 WL 4410008, at *8 (S.D.N.Y. Aug. 18, 2016).  Mr. Escobar bases his statements on his observations acquired from his experience as the Chief of Programs and Services at CASA and a leader in the Latino immigrant community. *See, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (holding that company president could provide opinions about expected lost profits based on his experience and evidence of decreased sales); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 90 (2d Cir. 2006) (holding that lay opinion testimony about pain was proper when based on personal observations). His testimony will be helpful to the Court because he offers a unique perspective based on his extensive interactions with and knowledge of the Latino immigrant community about an important factual issue-the citizenship question's effect on this community. *See* Escobar Supplemental Decl. ¶¶ 5–6; Escobar Decl. ¶¶ 20–24. Because any opinion expressed here is lay opinion testimony, it does not fall under the scope of Federal Rule of Civil Procedure 26(a)(2) requiring an expert report or disclosure, and Mr. Escobar was properly disclosed as a potential witness under Rule 26(a)(1).

<u>¶ 3: Defendants object based on lack of foundation and speculation:</u> "This undercount will also injure many CASA members, many of whom live in areas of the United States in which immigrants of color and other communities of color exceed national and state averages."

<u>Plaintiffs' Response</u>:  Mr. Escobar makes this statement on the basis of his personal knowledge of "CASA's records and membership, including where our members live and basic demographic information regarding the areas where they live."  *See* Escobar Suppl. Decl. ¶ 2.

To the extent these can be considered opinions rather than observations, this is proper lay opinion testimony, Plaintiffs incorporate their response to Defendants' objection to ¶ 2 as it concerns lay opinion testimony.

¶ 3: Defendants object based on lack of foundation, speculation, untimely disclosed expert testimony, improper expert testimony: "Specifically, they will be harmed because the disproportionate undercount that will result from the citizenship question among immigrants of color will diminish their political power relative to other parts of their states.  In addition, this undercount will diminish the amount of Census-related funding those areas receive for key programs, services, and facilities that our members and their families rely on to succeed in the communities in which they live."

Plaintiffs' Response: Mr. Escobar has explained the basis for the observations made in the above statement.  *See also* Escobar Supp. Decl. ¶¶ 8–9, which explains the basis for Mr. Escobar's personal knowledge for his observations in this paragraph.  Further, Mr. Escobar has affirmed that as Chief of Programs and Services at CASA he oversees CASA's services, including, among other things, CASA's work screening and enrolling members for public benefits for which they are eligible, and therefore has personal knowledge of the public benefits made available to CASA members on the basis of population, and the public benefits on which CASA members rely.  *See* Escobar Decl. ¶¶ 10-15.  The opinions expressed herein are lay testimony, and are not offered as expert testimony, therefore Mr. Escobar's testimony does not fall under the scope of Federal Rule of Civil Procedure 26(a)(2) requiring an expert report or disclosure, and Mr. Escobar was properly disclosed as a potential witness under Rule 26(a)(1).

¶ 15: Defendants object to the following italicized portion of Mr. Escobar's statement based on hearsay, lack of foundation, speculation, and relevance: "As described below, *the*

addition of a citizenship question to the Decennial Census harms CASA members, as well as the organization itself.  The increased fear among immigrants, caused by the Trump Administration's anti-immigrant policies and rhetoric, has led to decreased engagement with the government generally, and specific fear of participating in the Decennial Census.  This fear and decreased participation harms CASA as an organization, because we are now diverting our limited resources in an effort to encourage participation in the Decennial Census."

Plaintiffs' Response: As to lack of foundation and speculation, Mr. Escobar's statements are based on his personal knowledge gained, *inter alia*, as Chief of CASA's Programs and Services, and through CASA's work encouraging participation in the 2010 Census.  *See* Escobar Decl. 7-9, 10-14; Escobar Supp. Decl. 2-6.

As to hearsay, Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).  Moreover, even if Defendants intend to assert that this relies on inadmissible hearsay, they are incorrect. These statements are within the purview of Mr. Escobar's personal knowledge as Chief of Programs and Services at CASA, and based on the experience and knowledge he has gained over the course of the last years.  *See* Escobar Decl. ¶¶ 16-24; Escobar Supp. Decl. ¶¶ 3-5; *see also M.B.A.F B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24,

2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

 Further, any assertion based on statements about an individual's intent to answer or not answer the citizenship question are not inadmissible hearsay as "statements of future intent are not excludable as hearsay." *United States v. Badalamenti*, 794 F.2d 821, 826 (2d Cir. 1986).

Moreover, any assertions Mr. Escobar relied upon about community members' fear due to the citizenship question were not hearsay, because those statements are "offered as circumstantial evidence of what the declarant knew or believed," and therefore does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming"). Here, in addition Mr. Escobar's knowledge of community fears regarding the Decennial Census are offered as, among other things, support for the fact that CASA has diverted resources to encourage participation in the Decennial Census, as a result of Defendants' efforts to add a citizenship question.

Finally, the above statements are relevant to various issues to be tried, including CASA's organizational and associational standing, to CASA's injuries as a result of Defendants' efforts to add a citizenship question.

¶¶ 16-18: Defendants object on the basis of hearsay, lacks foundation, speculation and relevance

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns hearsay, lack of foundation, speculation, and relevance.

¶ 19: Defendants object to the following statement on the basis of lack of foundation, hearsay, and relevance:  "CASA and its partner providers have begun to track a decrease in the number of individuals applying for certain public benefits.  Most troubling has been a decrease in the number of enrollments into benefits completely unrelated to the policies that have been announced, such as a decrease in the number of immigrants applying for health insurance made available through the Affordable Care Act or a decrease in the number of Legal Permanent Residents applying for citizenship."

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns hearsay, lack of foundation, and relevance.

¶ 19: Defendants object to the following statements as speculation, untimely disclosed expert testimony, improper expert testimony, and relevance:  "To those of us at CASA this decreased participation indicates that the Trump Administration's policies are not only affecting those individuals and communities who are directly targeted by these policies, but are increasing fear among the immigrant population more broadly."

<u>Plaintiffs' Response</u>:  Plaintiffs incorporate their response to Defendants' objection to ¶ 3 as it concerns speculation, untimely disclosed expert testimony, and improper expert testimony. Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns relevance.

<u>¶ 20: Defendants object to the following statements as hearsay</u>:  "Under the current environment, CASA members have expressed fear of even a knock on their door by a stranger given the high number of arbitrary immigration enforcement actions that have resulted in the deportation of immigrants with little or no criminal background in the communities CASA serves."

<u>Plaintiffs' Response</u>:  Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns hearsay.

<u>¶ 20: Defendants object to the following statements as speculation and lacking foundation</u>:  "This fear of even speaking to someone approaching their door will certainly be compounded by a request by a government official, such as a census enumerator, regarding an individual's immigration status, or the citizenship status of others in their household."

<u>Plaintiffs' Response</u>:  Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns hearsay.

<u>¶ 21: Defendants object to the following statement as hearsay</u>: "Many CASA members have expressed doubts and fears to me about how information within the government is shared, and whether an answer to a question on a particular document or application may lead to their family being harmed or separated.  Under these circumstances, many have expressed a feeling that participation in the Census presents too high a risk to the safety and security of themselves and their families to justify participating."

    <u>Plaintiffs' Response</u>: Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns hearsay

    <u>¶ 22: Defendants object to the statement at 22 as hearsay within hearsay</u>:  "The fear of participating in the census has been shared with multiple CASA staff and volunteers who routinely conduct field outreach in the community, such as CASA Health Promoters and Community Organizers.  Shortly after information about the addition of the citizenship question became public and was reported on by the Spanish language media, these outreach workers reported the reaction of fear in the community was widespread.  Many CASA staff members and volunteers reported an increase in general suspicion and fear among the community members in completing any type of application or document associated with any government entity."

    <u>Plaintiffs' Response</u>:  Hearsay within hearsay is admissible if each part falls within an exception to hearsay rule.  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995). Here, any statements that may be interpreted as out of court declarations are either not hearsay, or qualify as exceptions to the hearsay rule.

    Any statements made by declarants regarding community members' fear due to the citizenship question were not hearsay, because those statements are "offered as circumstantial evidence of what the declarant knew or believed," and therefore does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340,

347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming").

Further, Mr. Escobar's statements regarding reports made to him by CASA staff and volunteers are offered not for the truth of declarant's statements, but for the fact that those conversations occurred.  Mr. Escobar has testified that as a result of the fact that these conversation occurred, CASA has diverted resources to encourage participation in the Decennial Census, as a result of Defendants' efforts to add a citizenship question.

Likewise new reports regarding the addition of the citizenship question are not hearsay, because they are presented as evidence that there was public discussion of the addition of the citizenship question within the Latino, Spanish-speaking community, that would have caused a reaction in the community.

¶ 23: Defendants object to the statement at 23 as hearsay within hearsay within hearsay and speculation:  "Recently, a CASA Health Promoter shared an interaction with me that she had with a CASA member who told her a story about a family member that he believed was placed in deportation proceedings shortly after applying for a Driver's License.  "If those two things are linked," the member reportedly said, "then why on earth would I answer a question about immigration status on a form from the federal government? It's not worth the risk."  That reaction is typical of what we have experienced in the community."

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 22 as it concerns hearsay within hearsay.

¶ 24: Defendants object to the following statements as hearsay, lacking foundation and lacking personal knowledge: "Through this litigation, I have learned that block-level data can identify the characteristics of a population within a very small geographic area."

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 15 as it concerns lack of foundation, speculation, hearsay and relevance.  In addition, Mr. Escobar has explained the basis for the observations made in the above statement.

¶ 24: Defendants object to the following statements as speculation, untimely disclosed expert testimony, and improper expert testimony: "By identifying the citizenship status of individuals in such a small area, I am concerned that this could lead to immigration enforcement targeting these particular areas and communities, thus harming the privacy of CASA members.  I believe this concern is [sic] particular will discourage CASA members from participating in the Decennial Census."

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 3 as to untimely disclosed expert testimony and improper expert testimony.  As to speculation, Mr. Escobar discusses the basis for the observations made in the above statement, namely his personal knowledge "as a leader in the Latino immigrant community, that there is an increased fear of immigration enforcement in the areas where CASA members live."  Escobar Supp. Decl. ¶ 9.

## 7.  MARCHELLE FRANKLIN

Defendants' Objections to ¶¶ 6-10: Relevance, absent evidence of how an undercount of Phoenix's population would affect Phoenix's funding, Fed. R. Evid. 104(b).

<u>Plaintiffs' Response</u>: Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be admitted later."

As detailed in Ms. Franklin's Oct. 25 Affidavit and in her Nov. 3 Supplemental Affidavit, an undercount of Phoenix's population will impact the federal funding streams described in those Affidavits.  Ms. Franklin has personal knowledge of Phoenix's eligibility for and allotment of the federal grant funds described in her testimony, and has personal knowledge that a decrease in Phoenix's population count will lead to a decrease in Phoenix's share of the federal funding for the programs she described.  *See* Oct. 25 Aff. ¶¶ 6-10; Nov. 3 Supp. Aff. ¶¶ 1-6.  The relevance of this testimony does not depend on other facts not present in Ms. Franklin's testimony.  A reduction in funding would harm Phoenix, which is sufficient to establish Article III standing, a relevant consideration in this action.

Moreover, to the extent necessary to establish relevance, testimony from Plaintiffs' experts witnesses will further support the facts set forth in Ms. Frankin's Affidavits.  For example, Professor Christopher Warshaw will testify as to the population of Phoenix and the likely impact if the citizenship question is added to the census; Professor Andrew Reamer will testify in detail to how a differential undercount will impact funding streams in Arizona and Phoenix and describe for several programs the expected magnitude of those impacts.  These facts are relevant to show that Plaintiffs will be harmed by Defendants' demand for citizenship information on the decennial census.  *See United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) (recognizing that Rule 104(b) permits admissibility when the factfinder could reasonably find the conditional fact "by a preponderance of the evidence").

## 8.  EMILY FREEDMAN

<u>Defendants' Objections to ¶¶ 7-14</u>: "Untimely disclosed expert testimony."

<u>Plaintiffs' Response</u>: Ms. Freedman's testimony is not "untimely disclosed expert testimony."  Her statements about the functioning of federal funding programs in Providence are based on her personal knowledge of those funding programs, as described in her Oct. 24 Affidavit and her Nov. 3 Supplemental Affidavit.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of Ms. Freedman's October 24 Affidavit reflects testimony as to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

<u>Defendants' Objections to ¶¶ 9, 11, 12</u>: Relevance, absent evidence of how an undercount of Providence's population would affect Providence's funding, Fed. R. Evid. 104(b).

<u>Plaintiffs' Response</u>: Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be admitted later."

As detailed in Ms. Freedman's Oct. 24 Affidavit and in her Nov. 3 Supplemental Affidavit, an undercount of Providence's population will impact the federal funding streams described in those Affidavits.  Ms. Freedman has personal knowledge of Providence's eligibility for and allotment of the federal grant funds described in her testimony, and has personal knowledge that a decrease in Providence's population count will lead to a decrease in Providence's share of the federal funding for the programs she described.  *See* Oct. 24 Aff. ¶¶ 1-14; Nov. 3 Supp. Aff. ¶¶ 1-6.  The relevance of this testimony does not depend on other facts not present in Ms. Freedman's testimony.  A reduction in funding would harm Providence, which is sufficient to establish Article III standing, a relevant consideration in this action.

Moreover, to the extent necessary to establish relevance, testimony from Plaintiffs' other experts will further support the facts set forth in Ms. Freedman's Affidavits.  For example, Professor Christopher Warshaw will testify as to the population of Providence and the likely impact if the citizenship question is added to the census; Professor Andrew Reamer will testify in detail to how a differential undercount will impact funding streams in Rhode Island and Providence and describe for several programs the expected magnitude of those impacts.  These facts are relevant to show that Plaintiffs will be harmed by Defendants' demand for citizenship information on the decennial census.  *See United States v. Coplan*, 703 F.3d 46, 84 (2d Cir.

2012) (recognizing that Rule 104(b) permits admissibility when the factfinder could reasonably find the conditional fact "by a preponderance of the evidence").

## 9. JESÚS GARCÍA

Defendants' Objection to ¶ 8:  Hearsay.

Plaintiffs' Response:  Under the presumption that Defendants' hearsay objection is directed to the surveys quoted from and summarized in ¶ 8 of Commissioner García's October 24 Affidavit, such surveys are admissible under Fed. R. Evid 803(3), in that they are statements of the then-existing states of mind of the survey respondents with respect to the proposed citizenship question, put forth to demonstrate community sentiment about the citizenship question rather than for the truth of any incidental factual statements contained therein.  *See Friesland Brands, B.V. v Vietnam Nat'l Milk Co.,* 221 F. Supp. 2d 457, 459 (S.D.N.Y. 2002) (holding that survey showing customers' impressions of various cans of condensed milk was admissible under Fed R. Evid. 803(3) in trademark confusion case), *citing Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 227-28 (2d Cir. 1999) (holding that survey evidence was admissible under Fed. R. Evid. 803(3) to show impression left in doctors' minds by statements of agents of drug company).

The statistics given in ¶ 8 about the survey results are a summary of the content of the survey responses, admissible under Fed. R. Evid. 1006.  *See Republican Natl. Comm. v. FEC,* No. 78 Civ. 2783, 1979 U.S. Dist. LEXIS 9174, at *55 n. 23 (S.D.N.Y Oct. 15, 1979) (admitting summary of survey responses into evidence over hearsay objection under Fed. R. Evid. 1006). The full set of survey responses has been produced to Defendants in discovery, at PL024519-PL024751.

<u>Defendants' Objection to ¶ 8</u>:  "I plan to continue distributing the survey to build a better picture of how the community I represent feels about this issue and determine the best strategies to work with constituents and partners on outreach for the 2020 Census. As of October 22, 2018, total costs for my office associated with this effort, which include printing costs, transportation to events, and staff time, are approximated to be $442.61 and a total of 17.5 staff hours."  Relevance.

Commissioner García's testimony quoted above establishes that his office, as part of the government of Cook County, and representing constituents that are residents of both plaintiff the City of Chicago and plaintiff the State of Illinois, determined that it was necessary to expend government funds in an effort to mitigate the effects of the proposed citizenship question.  This is relevant to establishing an injury-in-fact to the above plaintiffs due to the proposed citizenship question.

<u>Defendants' Objection to ¶¶ 9-10</u>:  Hearsay.

<u>Plaintiffs' Response</u>:  Commissioner García's testimony on expressions of concern about the proposed citizenship question by leaders of non-profit organizations and attendees at community events are admissible under Fed. R. Evid 803(3), to demonstrate the mental and emotional states of the declarants.  This testimony is not introduced for the truth of any incidental statements of belief made in the course of those expressions of concern.  *See Gran v TD Bank, NA*, 204 F. Supp. 3d 446, 449 (D. Conn. 2016) (out-of-court statements by bank employee, that the bank made a practice of honoring checks on particular customer's overdrawn account because the bank knew those checks were "good," were admissible over hearsay objection to show state of mind of bank employee, rather for the truth of her expressed beliefs); *Browne v CNN Am., Inc.*, 98 Civ. 1768 (JSM), 1999 U.S. Dist. LEXIS 17699, at *9 n.3

(S.D.N.Y. Nov. 16, 1999) (admitting supervisor's out-of-court statements about employee's poor work performance in employment discrimination case over hearsay objection, to demonstrate supervisor's state of mind, rather than for the truth of the assertions about employee's work performance).

Defendants' Objection to ¶¶ 11, 12:  "Such incidents lead to heightened fear and mistrust throughout the immigration community."  Speculation.  Lack of foundation.

Plaintiffs' Response:  Commissioner García has testified in ¶ 4 of his October 24 Affidavit and has expanded upon in ¶ 2 of his supplemental affidavit, sworn to November 3, 2018 (the "Supplemental García Aff."), that his duties as a Cook County Commissioner include monitoring constituent opinions on matters of public concern, and has set forth the means he uses to do so.  This process of monitoring public opinion provides the foundation for his lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of, that community concerns about the citizenship question are related to current administration policies on immigration.  *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

Defendants' Objection to ¶¶ 13-15:  Speculation, relevance.

Plaintiffs' Response:  Commissioner García's testimony with respect to the ongoing process of appropriating funds to mitigate the effects on the people of his district of the potential citizenship question is not speculative: he has testified in these paragraphs about the current status of four resolutions addressing the proposed citizenship question or appropriating funds to

ameliorate its effects.  Cook County Board of Commissioners resolution 18-6056 (Trial Exhibits PX-244 and PX 245) requires that adequate funding be appropriated to allow the Cook County Complete Count Committee to address a disparate impact on immigrant communities of the proposed citizenship question. Testimony on the passage of this resolution therefore tends to establish that the Cook County Board of Commissioners, an entity that provides services to the residents of plaintiff Chicago and of plaintiff Illinois, has found it necessary to expend limited resources on addressing the citizenship question, and that plaintiff Chicago and plaintiff Illinois are thereby injured.  Testimony on the Cook County Board of Commissioners proposed resolution 18-6420 tends to establish the same injury (PX-243).  And testimony on Chicago City Council proposed resolution R2018-1074 (PX-246), appropriating an emergency fund to respond to the proposed citizenship question tends to establish a direct injury to the finances of plaintiff City of Chicago.

Defendants' Objection to ¶ 17:  Hearsay.

Plaintiffs' Response:  Commissioner García's testimony in this paragraph, as clarified by ¶ 3 of the Supplemental García Aff.,  relies on publicly available data published by the Census Bureau, the accuracy of which cannot reasonably be questioned, and of which the Court may therefore take judicial notice under Fed. R. Evid. 201.  *See Skolnick v. Bd. of Comm'rs of Cook County*, 435 F.2d 361, 363 & n.8 (7th Cir. 1970) ("federal courts frequently have judicially noticed" census population figures) (citing cases); *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of "documents retrieved from official government websites"); *Cali v. East Coast Aviation Services, Ltd.*, 178 F.Supp.2d 276, 286 n.6 (E.D.N.Y. 2001) (taking judicial notice of "online database

pages from certain government agencies, including the Pennsylvania Department of State, Bureau of Corporations").

Defendants' Objection to ¶ 19:  Hearsay.

Plaintiffs' Response:  Commissioner García's testimony in this paragraph, as clarified by ¶ 3 of the Supplemental García Aff., relies on publicly available data published by the Census Bureau, the accuracy of which cannot reasonably be questioned, and of which the Court may therefore take judicial notice under Fed. R. Evid. 201.  *Skolnick v. Bd. of Comm'rs of Cook County*, 435 F.2d 361, 363 & n.8 (7th Cir. 1970).  It further relies on an audit report, attached to the Supplemental García Aff., as Exhibit A, that is admissible as a business record under Fed R. Evid. 803(6): it was prepared by an accounting firm for the Cook County Board of Commissioners in the regular course of business, and Commissioner García has authenticated it as a record maintained in his office files. Supplemental García Aff. ¶ 4; *see Mason Tenders Dist. Council v. Aurash Constr. Corp.*, 2005 U.S. Dist. LEXIS 26298, at *8-9 (S.D.N.Y. Oct. 31, 2005) (holding that an audit report may be admissible as a business record even when it is offered by a witness not himself responsible for preparing the report.).

Defendants' Objection to ¶ 20:  Speculative. Lack of foundation. Relevance, absent evidence of how an undercount of Cook County's population would affect funding amount received for any specific program.

Plaintiffs' Response:  Commissioner García has testified in ¶¶ 19-20 of his October 24 Affidavit that Cook County received fourteen grants in Fiscal Year 2017 that depended on U.S. Census population data, and testifies in ¶ 21 that two such specific programs are the WIC Special Supplemental Nutrition Program and Community Development Block Grants.  This is a sufficient foundation to establish that an undercount, reducing Cook County's enumerated

population, would tend to reduce federal funding to Cook County, which is relevant to establishing that the residents of Cook County, all of whom are residents of plaintiff Illinois and many of whom are residents of plaintiff Chicago, will suffer an injury-in-fact as a result of a census undercount.

Defendants' Objection to ¶ 21:  Lack of foundation. Untimely disclosed expert testimony.

Plaintiffs' Response:  Commissioner García has laid a foundation for this testimony by testifying in ¶¶ 17 and 19 that he has personal knowledge that these programs allocate funding on the basis of U.S. Census data.  His testimony in this paragraph is therefore not an "untimely disclosed expert opinion."  It is based on his previously stated personal knowledge. *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).  To the extent ¶ 21 reflects opinion testimony, it is allowable opinion testimony under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See Cuti*, 720 F.3d at 460; *Rigas*, 490 F3d at 224.

Defendants' Objection to ¶ 24:  "Furthermore, I am concerned that an undercount in the next Census could deprive communities in suburban areas and the collar counties of the Chicago region from creating districts where Latinos can become a supermajority, given that there has been significant growth of the Latino population in suburban areas." Lack of foundation. Untimely disclosed expert testimony.

Plaintiffs' Response:  Commissioner García has testified that he has personal knowledge of all facts set forth in this affidavit, including, therefore, that he has personal knowledge "that there has been significant growth of the Latino population in suburban areas."  To the extent that the remainder of the quoted language reflects opinion testimony, it is allowable opinion

testimony under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See Cuti*, 720 F.3d at 460; *Rigas*, 490 F.3d at 224.

<u>Defendants' Objection to ¶ 24</u>:  "I have direct knowledge of concern on this matter from partners at the Mexican American Legal Defense and Education Fund and the Latino Policy Forum. Similarly, the NAACP and the Chicago Urban League have expressed concern to me that an undercount would impact the ability to draw districts in historically African American communities in the Chicago area, which have experienced dramatic population decline." Hearsay. Lack of foundation.

<u>Plaintiffs' Response</u>:  Commissioner García has laid a foundation for this testimony in ¶ 4 of his October 24 Affidavit and ¶ 2 of the Supplemental García Aff. by testifying that he makes a practice of communicating with community groups and non-profits to monitor public opinion.  His testimony on expressions of concern about the proposed citizenship question by leaders of non-profit organizations either not hearsay, as a "statement is offered as circumstantial evidence of what the declarant knew or believed," does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming"). Community members' expressions of fear

therefore either are not hearsay, or fall under Rule 803(3) because they are offered not to establish whether or not their responses will actually be used incorrectly, but to show their state of mind concerning the addition of the question.

Defendants' Objection to ¶ 25:  Hearsay.

Plaintiffs' Response:  Commissioner García's testimony in this paragraph, as clarified by ¶ 5 of the Supplemental García Aff., relies on publically available data published by the Census Bureau, the accuracy of which cannot reasonably be questioned, and of which the Court may therefore take judicial notice under Fed. R. Evid. 201, and on information on Board of Commissioners district boundaries that is maintained in his office in the regular course of business and is therefore admissible under Fed. R. Evid. 803(6).

Defendants' Objection to ¶ 26:  "Data with respect to voting age population and population counts of African Americans/Blacks and of Hispanics/Latinos, including those who indicate that they are one race or of several races, are used to determine whether districts do not overly pack or dilute the capacity of these minority groups from electing candidates of their choice. Other factors, such as known community boundaries, boundaries of other units of government, known boundaries of other election districts and visible or physical barriers are secondary considerations."  Untimely disclosed expert testimony.

Plaintiffs' Response:  Commissioner García's testimony in this paragraph is not an untimely disclosed expert opinion, it is based on his previously stated personal knowledge of the redistricting process. *See Khafizov*, 604 Fed. Appx., at 89.  To the extent ¶ 26 reflects opinion testimony, it is allowable opinion testimony under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See Cuti*, 720 F.3d at 460; *Rigas*, 490 F.3d at 224.

Defendants' Objection to ¶¶ 27-28:  Untimely disclosed expert testimony

Plaintiffs' Response:  Commissioner García's testimony in this paragraph is not an untimely disclosed expert opinion, it is based on his previously stated personal knowledge of the redistricting process. *See Khafizov*, 604 Fed. Appx., at 89.  To the extent ¶¶ 27-28 reflects opinion testimony, it is allowable opinion testimony under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See Cuti*, 720 F.3d at 460; *Rigas*, 490 F.3d at 224.

## 10.  DR. HERMANN HABERMANN

Because Defendants have indicated that they intend to cross-examine Dr. Habermann, Plaintiffs will address Defendants' evidentiary objections to Dr. Habermann's direct testimony when Dr. Habermann is called at trial and his testimony is offered into evidence.

## 11.  KATHERINE HARVELL HANEY

Defendants' Objections to ¶¶ 4-9: Undisclosed expert testimony.

Plaintiffs' Response:  Ms. Harvell Haney's testimony is not "undisclosed expert testimony."  Her statements about the functioning of federal funding programs in Massachusetts are based on her personal knowledge of those funding programs, as described in her Oct. 24 Affidavit and her Nov. 3 Supplemental Affidavit.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL

3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of her affidavit reflects testimony as to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of. *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

<u>Defendants' Objections to ¶¶ 5-8</u>: relevance, absent evidence of how a differential undercount will impact federal funding for various grant programs, Fed. R. Evid. 104(b).

<u>Plaintiffs' Response</u>: Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.  The court may admit the proposed evidence on the condition that the proof be admitted later."

As detailed in Ms. Harvell Haney's Oct. 24 Affidavit and in her Nov. 3 Supplemental Affidavit, a differential undercount within Massachusetts will impact the federal funding streams described in those Affidavits.  A decline in the number of people counted will reduce funding received by Massachusetts.  The relevance of this testimony does not depend on other facts not present in Ms. Harvell Haney's testimony.  A reduction in funding would harm Massachusetts, which is sufficient to establish Article III standing, a relevant consideration in this action.

Moreover, to the extent necessary to establish relevance, testimony from Plaintiffs' expert witnesses will further support the facts set forth in Ms. Harvell Haney's Affidavits.  For

example, Professor Christopher Warshaw will testify as to the concentration of immigrants and

Hispanics in Massachusetts; Professor Andrew Reamer will testify in detail to how a differential

undercount will impact funding streams in Massachusetts and describe for several programs the

expected magnitude of those impacts.  These facts are relevant to show that Plaintiffs will be

harmed by Defendants' demand for citizenship information on the decennial census.  *See United*

*States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) (recognizing that Rule 104(b) permits

admissibility when the factfinder could reasonably find the conditional fact "by a preponderance

of the evidence").


**12.  JASON HARMON**

      <u>Defendants' Objections to ¶¶ 4-6, 10-13, 15-17</u>: Undisclosed expert testimony.

      <u>Plaintiffs' Response:</u> Mr. Harmon's testimony is not "undisclosed expert testimony."  His

statements about the functioning of federal funding programs in New York are based on his

personal knowledge of those funding programs, as described in his Oct. 23 Affidavit and his

Nov. 3 Supplemental Affidavit.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015)

(summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either

Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal

knowledge that she was not aware of any mortgage modification programs in the Economic

Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the

contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1,

2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

      To the extent any part of Mr. Harmon's October 23 Affidavit reflects testimony as to his

opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the

facts she is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay

witnesses may testify to opinions derived from their direct perceptions by means of "a process of

reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir.

2007) (accountant's opinions derived from his review of a company's books were admissible lay

opinion as being derived from his personal knowledge through ordinary reasoning).

> Defendants' Objections to ¶¶ 9, 13:  Speculative.  Relevance, absent evidence of how the
State would choose to allocate money to LEAs in the event of a reduction in federal funding,
Fed. R. Evid. 104(b).

> Plaintiffs' Response: Rule 104(b) of the Federal Rules of Evidence provides that "[w]hen
the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient
to support a finding that the fact does exist.  The court may admit the proposed evidence on the
condition that the proof be admitted later."

As detailed in Mr. Harmon's Oct. 23 Affidavit and in his Nov. 3 Supplemental Affidavit,

a differential undercount within New York State will impact the federal funding streams

described in those Affidavits.  This testimony is not speculative; a decline in the number of

people counted will reduce funding received by New York.  As Mr. Harmon further testified in

his Nov. 3 Supplemental Affidavit, he is aware from personal knowledge that a decrease in New

York's population count will lead to a corresponding decrease in the amount allocated to nearly

all local education agencies ("LEAs") across the state.  Harmon Supp. Aff. ¶¶ 1-6.  Mr. Harmon

also stated that New York State does not exercise discretion in determining the amount of these

federal dollars allocated to LEAs. Harmon Supp. Aff. ¶ 5.  The relevance of this testimony does

not depend on other facts not present in Mr. Harmon's testimony.  A reduction in funding would

harm New York, which is sufficient to establish Article III standing, a relevant consideration in this action.

Moreover, to the extent necessary to establish relevance, testimony from Plaintiffs' expert witnesses will further support the facts set forth in Mr. Harmon's Affidavits. For example, Professor Christopher Warshaw will testify as to the concentration of immigrants and Hispanics in New York State; Professor Andrew Reamer will testify in detail as to how a differential undercount will impact funding streams in New York and describe for several programs the expected magnitude of those impacts. These facts are relevant to show that Plaintiffs will be harmed by Defendants' demand for citizenship information on the decennial census. *See United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) (recognizing that Rule 104(b) permits admissibility when the factfinder could reasonably find the conditional fact "by a preponderance of the evidence").

### 13. SAMER KHALAF

¶ 2: Defendants Object to the following statement as untimely disclosed expert opinion: "Based on my knowledge as a leader in the Arab-American community, ADC and ADCRI's community outreach work, and my interactions with individual ADC members, I believe the addition of a citizenship question to the 2020 Decennial Census short-form questionnaire will deter participation of many individuals in the Arab-American community and result in a disproportionate undercount of Arab Americans."

Plaintiffs' Response: The statement above presents proper lay opinion testimony allowed under Federal Rule of Evidence 701 because courts permit "lay witnesses to offer opinions based on particularized knowledge acquired in their professional experience." *In re Gen. Motors LLC*

*Ignition Switch Litig.*, No. 14-MC-2543(JMF), 2016 WL 4410008, at *8 (S.D.N.Y. Aug. 18, 2016). Mr. Khalaf bases his statements on his observations acquired from his experience as ADC President and a leader in the Arab-American community. *See, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (holding that company president could provide opinions about expected lost profits based on his experience and evidence of decreased sales); *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 90 (2d Cir. 2006) (holding that lay opinion testimony about pain was proper when based on personal observations). His testimony will be helpful to the Court because he offers a unique perspective based on his extensive knowledge of and interactions with the Arab-American communities about an important factual issue of the citizenship question's effect on this community. *See* Khalaf Supplemental Decl. ¶¶ 2–4; Khalaf Decl. ¶¶ 19–22. Because any opinion expressed here is lay opinion testimony, it does not fall under the scope of Federal Rule of Civil Procedure 26(a)(2) requiring an expert report or disclosure, and Mr. Khalaf was properly disclosed as a potential witness under Rule 26(a)(1).

¶ 3: Defendants Object as untimely disclosed expert opinion

Plaintiffs' Response:  *See* Khalaf Suppl. Decl. ¶ 5–6, which explains the basis for Mr. Khalaf's personal knowledge of his observations in this paragraph. To the extent these can be considered opinions at all rather than observations, this is proper lay opinion testimony as explained in the previous response.

¶ 16: Defendants Object to the following statement based on hearsay, untimely disclosed expert opinion, personal knowledge: "As described below, the decision stoked and continues to stoke tremendous fear in the Arab-American community and threatens to lower response rates and increase the undercount of our community."

<u>Plaintiffs' Response</u>:  Concerning the untimely expert opinion objection, this is not a statement of opinion at all but one of observation: given the reaction of the Arab-American community to the addition of the question and the expressed intent of individuals not to respond, Mr. Khalaf's statement is an observation based on his personal knowledge. And as to the personal knowledge objection, Plaintiffs refer the Court to ¶¶ 2–4 of the Khalaf Supplemental Declaration as well as ¶¶ 2, 19–22 of the original Khalaf Declaration, all of which explain the basis for Mr. Khalaf's personal knowledge of the fear in the Arab-American community and likelihood of fewer community members responding to the Census.

As to hearsay, Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a). Moreover, even if Defendants intend to assert that this relies on inadmissible hearsay, they are incorrect. These statements are within the purview of Mr. Khalaf's personal knowledge as President of ADC based on his experience and knowledge gained over the course of the last number of months and thus is not based on hearsay. *See* Khalaf Suppl. Decl.; *see also M.B.A.F B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account

records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

Further, any assertion based on statements about an individual's intent to answer or not answer the citizenship question are not inadmissible hearsay as "statements of future intent are not excludable as hearsay." *United States v. Badalamenti*, 794 F.2d 821, 826 (2d Cir. 1986).

Moreover, any assertions Mr. Khalaf relied upon about community members' fear due to the citizenship question were either not hearsay, as a statement that "is offered as circumstantial evidence of what the declarant knew or believed," does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming"). Community members' expressions of fear therefore either are not hearsay, or fall under Rule 803(3) because they are offered not to establish whether or not their responses will actually be used incorrectly, but to show their state of mind concerning the addition of the question

¶ 18: Defendants Object based on lack of personal knowledge, foundation, hearsay

Plaintiffs' Response:  Plaintiffs incorporate their response to the previous objection as it concerns personal knowledge and hearsay. As for foundation, Mr. Khalaf explains the basis for

his knowledge in ¶ 2 of his original Declaration, and elaborates on that basis in ¶¶ 2–4 of his Supplemental Declaration as well as ¶¶ 19–22 of his original Khalaf Declaration.

¶ 19: Defendants Object to the Following Statements as Hearsay:  "I learned from those sessions that many community members fear the addition of a citizenship question and are unwilling to participate in the 2020 Census out of the fear deriving from the citizenship question"; and "I learned from those sessions that many community members fear the addition of a citizenship question and are unwilling to participate in the 2020 Census out of the fear deriving from the citizenship question."

Plaintiffs' Response:  Plaintiffs incorporate their hearsay response to Defendants' objection to ¶ 16.

¶ 20: Defendants Object as hearsay

Plaintiffs' Response:  Plaintiffs incorporate their hearsay response to Defendants' objection to ¶ 16. Additionally, the portion of this paragraph that describes ADC events is based entirely on Mr. Khalaf's personal, organizational knowledge and does not rely on any outside sources.

¶ 21: Defendants Object based on hearsay, lack of personal knowledge, foundation

Plaintiffs' Response:  Plaintiffs incorporate their response to Defendants' objection to ¶ 16 as it concerns personal knowledge and hearsay and as to ¶ 18 as it concerns foundation.

¶ 22: Defendants Object as hearsay

Plaintiffs' Response:  Plaintiffs incorporate their hearsay response to Defendants' objection to ¶ 16.

PX-251 in ¶ 23: Defendants Object as hearsay

Plaintiffs' Response:  PX-251 is not referenced in this paragraph. To the extent Defendants intend to lodge a more general objection to the exhibit, Plaintiffs address such objections below in their response to this exhibit as well as through the Khalaf Supplemental Declaration ¶¶ 7–8.

¶ 26: Defendants Object to the Following Statement as hearsay: "In addition to offering their own thoughts about the citizenship question, the three panelists fielded questions from ADC members in the audience that reflected fears and concerns about the role of this question on the census."

Plaintiffs' Response:  Defendants have not identified any out of court statement, meaning that the preceding sentence is not hearsay. Instead, the sentence generally describes the format of the census panel from Mr. Khalaf's personal knowledge. Additionally, the description of questions from audience members does not constitute hearsay, because a question or an "inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement." *Inc. Pub. Corp. v. Manhattan Mag., Inc.*, 616 F. Supp. 370, 388 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 3 (2d Cir. 1986); *see also United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) (explaining that because "a question cannot be used to show the truth of the matter asserted, the dangers necessitating the hearsay rule are not present").

PX-252 and 253 in ¶ 31: Defendants Object as hearsay

Plaintiffs' Response:  Defendants refer the Court to Khalaf Supplemental Declaration ¶¶ 7–8, in which Mr. Khalaf lays the foundation for these exhibits as business records of ADC. Because they are business records, they fall under the hearsay exception recognized in Federal Rule of Evidence 803(6).

PX-251 in ¶ 33: Defendants Object as hearsay

<u>Plaintiffs' Response</u>:  Defendants refer the Court to Khalaf Supplemental Declaration ¶¶ 7–8, in which Mr. Khalaf lays the foundation for these exhibits as business records of ADC. Because they are business records, they fall under the hearsay exception recognized in Federal Rule of Evidence 803(6).

<u>¶ 35: Defendants Object based on lack of personal knowledge and foundation</u>

<u>Plaintiffs' Response</u>:  Defendants refer the Court to Khalaf Supplemental Declaration ¶¶ 5–6, which explains the basis of Mr. Khalaf's personal knowledge of the facts in this paragraph and lays a foundation for their admission.

## 14.  GREGORY LUCYK

<u>Defendants' Objection to ¶¶ 1-10</u>:  Untimely disclosed expert opinion.

<u>Plaintiffs' Response</u>:  Mr. Lucyk's testimony is not an "untimely disclosed expert opinion." His statements about the functioning of the redistricting process in Virginia are based on his personal knowledge of that process, as described in ¶¶ 2-3 of his October 23 Affidavit. *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of his affidavit reflects testimony as to his opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts he is

personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses

may testify to opinions derived from their direct perceptions by means of "a process of reasoning

familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007)

(accountant's opinions derived from his review of a company's books were admissible lay

opinion as being derived from his personal knowledge through ordinary reasoning).


**15.  DR. WILLIAM P. O'HARE**

Because Defendants have indicated that they intend to cross-examine Dr. O'Hare,

Plaintiffs will address Defendants' evidentiary objections to Dr. O'Hare's direct testimony when

Dr. O'Hare is called at trial and his testimony is offered into evidence.


**16.  CHRISTINE PIERCE**

Defendants' Objection: "Untimely disclosed fact witness."

Plaintiffs' Response:  Plaintiffs properly identified Christine Pierce, the Senior Vice

President of Data Science for The Nielsen Company (US) LLC, in their initial disclosures.  On

July 23, 2018, Plaintiff State of New York identified "[i]ndividuals with whom Secretary Ross

'personally had specific conversations on the citizenship question,' as referenced in the March

26, 2018 decision memo."  *See* Docket 463-1 at 88 (Plaintiffs' Initial Disclosures dated July 23,

2018).  Plaintiff State of New York explained that such witnesses had "knowledge of the

accuracy of representations made in the decision memo about their conversations with Secretary

Ross, and their positions on the citizenship question, including its potential impact on response

rates, and the importance of testing a citizenship question before adding it to the census

questionnaire."  *Id.*

This disclosure is more than adequate.  It plainly encompasses Ms. Pierce and the testimony that she seeks to offer at trial.  Defendants cannot claim prejudice or surprise. Defendants cannot contend that the universe of people included within Plaintiffs' initial disclosures is particularly broad; Secretary Ross personally spoke to only 24 people in the course of his review.  *See* AR 1314.  And Defendants themselves identified the small group of two dozen individuals with whom they wanted Secretary Ross to discuss the citizenship question in March 2018.  The record contains notes of the Secretary's conversation with Ms. Pierce, *see* AR 1246, and his decision memo specifically references Ms. Pierce, *see* AR 1315.  And Defendants were aware that Plaintiffs believed that the Secretary's conversations with Ms. Pierce were relevant to this case; indeed, Plaintiffs deposed Defendants' witnesses regarding the Secretary's discussions with Ms. Pierce.  *See* Dunn Kelley dep. tr. 292-93 (Aug. 28, 2018); *see, e.g.*, *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 324 (S.D.N.Y. 2013).

Even if Plaintiffs' disclosure was insufficient, which it clearly was not, this Court should exercise its discretion to allow Ms. Pierce's testimony.  *See Nosal v. Granite Park LLC*, 269 F.R.D. 284, 289 (S.D.N.Y. 2010) (recognizing that the "harsh sanction" of preclusion should be "imposed with caution" and acknowledging that courts have discretion to deny preclusion even where failure to disclose is not harmless or justified).

<u>Defendants' Objection to ¶ 5</u>: Hearsay.

<u>Plaintiffs' Response</u>:  To the extent Defendants object to the statement by Brian Lenihan, this statement is a party admission pursuant to Fed. R. Evid. 801(d)(2)(D).  Mr. Lenihan is employed by the Department of Commerce, *see, e.g.*, AR 1638, and was communicating with Ms. Nielsen in furtherance of his duties.  To the extent Defendants object to Ms. Pierce's reply, as she is herself testifying, her own statements are not hearsay.  In addition, this testimony is

non-hearsay because her descriptions of her own biography and how Nielsen uses public data are not offered for the truth of the matter.  Accordingly, this paragraph does "not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05-CV-3195 (FB) (RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)).  Even if hearsay, this testimony shows Ms. Pierce's state of mind with respect to the upcoming call; as detailed in her Affidavit, Ms. Pierce was unaware that the Secretary intended to discuss the citizenship question.  *See* Pierce Aff. ¶ ¶6, 8.  *See* Fed. R. Evid. 803(3); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997) (Rule 803(3) exception "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind").

Defendants' Objection to ¶ 9:  Hearsay.

Plaintiffs' Response:  Ms. Pierce's testimony describing her conversation with Secretary Ross is not offered for the truth of the matter, but rather, is offered to show that such statements were made.  Accordingly, these statements are not hearsay. *See* Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (same).  Likewise, such statements are offered to show their effect on the listener – here, Defendants' knowing mischaracterization of Ms. Pierce's words – and are therefore not hearsay.  *See, e.g.*, *id.*; *Davis v. City of New York*, 959 F. Supp. 2d 427, 436 (S.D.N.Y. 2013).

Defendants' Objection to ¶¶ 10-13, 17-18:  Hearsay.

Plaintiffs' Response:  *See* Response to ¶ 9.[2]


## 17.  ELIZABETH PLUM

Defendants' Objections to ¶ 6: Lack of foundation; hearsay.

Plaintiffs' Response:  For foundation, *see* Plum Supp. Decl. at ¶¶ 1-6.

Ms. Plum's testimony is based on her personal knowledge that she has acquired over her five years as Vice-President of Policy for NYIC.  She is responsible for NYIC's budgeting, fundraising, and policy priorities and has worked closely and familiarized herself with NYIC member organizations, and the ways in which NYIC members serve their communities. *See* Plum Decl. ¶ 2, 4, 5, Plum Supp. Decl. ¶¶ 2-3, 6.  In the course of her  work she gathered information regarding NYIC's member organizations, and their sources of funding.  "'[A] witness's conclusion based on personal observations over time may constitute personal knowledge.'"  *New York v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (quoting *SEC v. Singer*, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992)); *M.B.A.F B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to").

Ms. Plum's statement is not hearsay.  *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as

---

[2] Defendants appear to challenge Ms. Pierce's testimony only to the extent that she relates her own half of the conversation.  To the extent that Ms. Pierce relates statements made by Secretary Ross or his employees, those statements are admissible as opposing party statements pursuant to Fed. R. Evid. 801(d)(2).

it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

There is no out of court statement listed in these paragraphs, so the issue of hearsay is not implicated. *See* Fed. R. Evid. 801(a).

Moreover, Ms. Plum's statements are not offered for the truth of the matter asserted. Instead, they are offered to show her state of mind and how her interactions with MRNY's member organizations have informed decisions to refocus efforts and divert resources to addressing the impact the citizenship question has had on the communities MRNY serves.  *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (internal quotation marks omitted)); *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay."); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("'[W]here a statement is offered as circumstantial evidence of the declarant's state of mind rather than for the truth of the matter asserted, it is not hearsay.'" (quoting Fed. R. Evid. 801(c)).  See also Response to Objection ¶ 8 (addressing hearsay).

<u>Defendants' Objections to ¶ 7</u>: Lack of foundation; hearsay.

<u>Plaintiffs' Response</u>: Plaintiffs incorporate by reference their Response to Objections to ¶6.

<u>Defendants' Objections to ¶ 8</u>: Lack of foundation; hearsay.

<u>Plaintiffs' Response</u>: Plaintiffs incorporate by reference their Response to Objections to ¶6.

<u>Defendants' Objections to ¶¶ 13</u>: Hearsay.

<u>Plaintiffs' Response</u>: First, as to hearsay, Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).

Second, any assertions Ms. Plum relied upon about community members' fear due to the citizenship question were not hearsay, because those statements are "offered as circumstantial evidence of what the declarant knew or believed," and therefore does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming").

Third, Ms. Plum's statements are not hearsay because they are not offered for the truth of the matter asserted.  Instead, they are offered to show her state of mind and how her interactions with NYIC member organizations have informed decisions to refocus efforts and divert

resources to addressing the impact the citizenship question has had on the communities NYIC

serves.  *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[I]f the significance of

an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of

anything asserted, and the statement is not hearsay." (internal quotation marks omitted)); *Smith v.

Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without

regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not

hearsay."); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("'[W]here a

statement is offered as circumstantial evidence of the declarant's state of mind rather than for the

truth of the matter asserted, it is not hearsay.'" (quoting Fed. R. Evid. 801(c)).

<u>Defendants' Objections to ¶¶ 14</u>: Hearsay, undisclosed expert opinion.

<u>Plaintiffs' Response</u>: Defendants' objection on hearsay grounds has no merit. Again,

there is no out of court statement listed in this paragraph, meaning there is no hearsay issue

implicated. *See* Fed. R. Evid. 801(a).

Additionally, Ms. Plum's testimony does not constitute "undisclosed expert opinion." As

Vice-President of Policy for NYIC, part of Ms. Plum's responsibilities is managing the

organization's budgeting and policy priorities. *See* Plum Decl. ¶ 1, Plum Supp. Decl. ¶ 1. In her

position, Ms. Plum has worked extensively in researching, developing, and implementing

NYIC's Census education and outreach programs—part of which involves NYIC's previous

Census outreach efforts and their budgetary impact. Ms. Plum's statements here are clearly

gleaned from her "managerial position, supervisory authority, and familiarity with the regularly

maintained business records of [her] firm." *See Boyd*, 2012 WL 4718723, at *4 n.6.

Accordingly, Ms. Plum's statements about the budgetary impact of NYIC's Census work

are based on her personal knowledge, as NYIC's Vice President of Policy. *See U.S. v. Khafizov*,

604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not

'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather,

Maggiano testified based on her personal knowledge that she was not aware of any mortgage

modification programs in the Economic Stimulus Act of 2008"); *United States v. Ahmed*, 14-cr-

277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F.

Supp. 3d 148, 172 (S.D.N.Y. 2014). To the extent any part of her affidavit reflects testimony as

to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on

the facts she is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013)

(holding that a lay witness may testify to opinions derived from their direct perceptions by means

of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d

208, 224 (2d Cir. 2007) (holding that accountant's opinions derived from his review of a

company's books were admissible lay opinion as being derived from his personal knowledge

through ordinary reasoning).

      Defendants' Objections to ¶¶ 15: Lack of foundation; hearsay.

      Plaintiffs' Response: For foundation, *see* Plum Supp. Decl. ¶ 9.  Ms. Plum's testimony in

para. 15 is based on, among other things, reports that she has personally received and observed in

her role NYIC Vice President, and which have informed her work making decisions for NYIC

about policy, programming, and communications around the 2020 Census.

      The referenced statements are not hearsay because they are not offered for the truth of the

matter  asserted.  Rather, they shed light on Ms. Plum's state of mind and how her interactions

with members in immigrant communities of color have informed NYIC's decisions to refocus

their efforts and resources to addressing the impact the citizenship question has had on these

communities. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[I]f the

significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." (internal quotation marks omitted)); *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay."); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("'[W]here a statement is offered as circumstantial evidence of the declarant's state of mind rather than for the truth of the matter asserted, it is not hearsay.'" (quoting Fed. R. Evid. 801(c)).

To the extent Ms. Plum's statements are based on statements made by declarants regarding community members' fear due to the citizenship question, those statements are not hearsay, because those statements are "offered as circumstantial evidence of what the declarant knew or believed," and therefore does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)), or falls under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003–04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming").

Defendants' Objections to ¶¶ 16-21: Lack of foundation; hearsay.

Plaintiffs' Response: For foundation, *see* Plum Supp. Decl. ¶ 10.  Any assertion upon about community members' fear due to the citizenship question were either not hearsay, as a

"statement is offered as circumstantial evidence of what the declarant knew or believed," does

"'not fall within the definition [of hearsay] because it was not offered to prove the truth of the

matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252,

at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir.

1988)), or fall under the Rule 803(3) exception, *see* Responses to ¶15 above.

> Defendants' Objections to ¶¶ 22: Lack of foundation; hearsay.

> Plaintiffs' Response: For foundation, *see* Plum Supp. Decl. ¶ 11.

Again, for one, there is no out of court statement listed in these paragraphs, so the issue

of hearsay is not implicated. *See* Fed. R. Evid. 801(a).

Second, Ms. Plum's statements about the potential loss of privacy for immigrant

communities of color from answering the citizenship question is based on extensive research Ms.

Plum has conducted in her professional capacity in anticipation of the 2020 Census. *See Saint

Francis*, 94 F. Supp. 2d at 425 (""[A] witness's conclusion based on personal observations over

time may constitute personal knowledge.'") (quoting *Singer*, 786 F. Supp. at 1167).  The

information in these statements is well within the purview of Ms. Plum's personal knowledge

gained during her tenure at NYIC.

> Defendants' Objections to ¶¶ 23: Lack of foundation; hearsay.

> Plaintiffs' Response: For foundation, *see* Plum Supp. Decl. ¶ 12. Defendants' hearsay

objections are meritless. Again, for one, there is no out of court statement listed in these

paragraphs, so the issue of hearsay is not implicated. *See* Fed. R. Evid. 801(a). Second, Ms.

Plum's statements are based on personal knowledge of NYIC and its member organizations from

her extensive work on these issues. *See* Responses to ¶¶ 6-8, 22. Ms. Plum is testifying to basic

organizational information about NYIC budgeting and policy priorities, over which she has

significant responsibilities. *See* Response to ¶1. Third, to the extent that defendants object to the increased fear in immigrant communities of color, those are either non-hearsay statements because they are not offered for their truth or fall into Rule 803(3)'s state of mind exception. *See* Responses to ¶¶ 15, 16-21.

## 18.  EVELYN RODRIGUEZ

Defendants' Objection to ¶ 4: Lack of foundation; undisclosed expert opinion.

Plaintiffs' Response:  Ms. Rodriguez has laid a foundation for this testimony by testifying in ¶¶ 1-2 & 13 of her October 23 Affidavit, and in ¶¶ 1-11 of her November 3 Supplemental Affidavit, regarding her personal knowledge of census operations in the City of Chicago and the City's planning process for the 2020 census, based on her extensive personal involvement with city and state planning bodies as well as community outreach.

Ms. Rodriguez's testimony is not an undisclosed expert opinion.  Her testimony about census operations in the City of Chicago, and the effect of the 2010 census on Chicago and the state of Illinois, is based on her personal knowledge derived through *inter alia* participation in the Complete Count Commission, the "Chicago is With You" task force, the Chicago Office of Public Engagement, as described in ¶¶ 1-2 of her October 23 Affidavit, and in ¶¶ 1-11 of her November 3 Supplemental Affidavit.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the

contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

 To the extent any part of Ms. Rodriguez's affidavit reflects testimony as to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

 <u>Defendants' Objection to ¶ 6</u>: lack of foundation; hearsay.

 <u>Plaintiffs' Response</u>:  Ms. Rodriguez has laid a proper foundation for this testimony as described in response to ¶ 4, above.

 With respect to hearsay, her testimony in ¶ 6 of her October 23 Affidavit is within the purview of Ms. Rodriguez's personal knowledge as an advisor for neighborhood development and community engagement within the Mayor's Office of the City of Chicago; this testimony is based on Ms. Rodriguez's experience and knowledge and thus is not based on hearsay. *See* Suppl. Rodriguez Aff.; *see also M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*,

1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

Further, any assertion upon about community members' fear due to the citizenship question were either not hearsay, as a "statement is offered as circumstantial evidence of what the declarant knew or believed," does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05CV3195(FB)(RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)); or fall under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming").

In addition, community expressions of distrust and fear are not offered for the truth of the matter (for example, that Homeland Security will in fact identify and deport community members' families) but to show the effect on the City of Chicago; namely, Chicago's need to expend additional resources to address perceived fears surrounding the citizenship question, as Ms. Rodrigruez testifies in ¶¶ 12-13 of her October 23 Affidavit.  Such statements are offered to show their effect on the listener – here, that Chicago reasonably believes that its residents are fearful of responding to a census that includes the citizenship question and must expend

resources to encourage participation – and are therefore not hearsay. *See, e.g.*, *Davis v. City of New York*, 959 F. Supp. 2d 427, 436 (S.D.N.Y. 2013).

Defendants' Objection to ¶¶ 8-9: lack of foundation; hearsay.

Plaintiffs' Response:  For foundation, see response to ¶ 4.  For hearsay, see response to ¶ 6.  The statements described by Ms. Rodriguez are not offered for the truth of the matter; rather, they are offered to as evidence that Plaintiff City of Chicago perceived a need to remediate the expected impacts of the citizenship question.

To the extent Defendants argue that communications from Erie Neighborhood House participants to the Executive Director of Erie House are hearsay within hearsay, Ms. Rodriguez's October 23 Affidavit describes questions from those participants; questions are not hearsay.  *See, e.g.*, *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) ("Because a question cannot be used to show the truth of the matter asserted, the dangers necessitating the hearsay rule are not present.").  Moreover, such inquiries are not offered for the truth, but to show state of mind.  *See* Response to ¶ 6.  Statements made by the Executive Director to Ms. Rodriguez (relating to the organization's struggle to answer participant questions) are likewise not hearsay because they are not offered for the truth of the matter; these statements are evidence that Plaintiff City of Chicago perceived the need to remediate the expected impacts of the citizenship question.

## 19.  MONICA SARMIENTO

Defendants' Objection to Statement in ¶ 4:  "Untimely disclosed expert testimony."

Plaintiffs' Response: Ms. Sarmineto's testimony in this paragraph about the diversity of the Virginia immigrant community is rationally based on her experience and observations as the executive director of VACIR, a coalition of immigrant and refugee rights organizations. Through

this work she regularly encounters immigrant families of varying statuses and ethnicities. Ms. Sarmineto's testimony is not based on scientific, technical or specialized knowledge and is therefore not "Untimely Disclosed Expert Testimony." *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).  To the extent this paragraph reflects testimony as to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of. *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

  Defendants' Objection to Statement in ¶ 4:  Hearsay

  Plaintiffs Response: Defendants have not identified any "out of court statement," and thus there is no hearsay issue. *See* Fed. R. Evid. 801(a).

  Defendants Objection to Statements in ¶¶ 6-9: Hearsay

  Plaintiff's Response: Any assertions Ms. Sarmiento relied upon about community members' fear due to the citizenship question were not hearsay, because a statement "offered as circumstantial evidence of what the declarant knew or believed" does "'not fall within the definition [of hearsay] because it was not offered to prove the truth of the matter asserted,'" *Woods v. Computer Horizons Corp.*, 05-CV-3195 (FB) (RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)).  In the alternative, these assertions fall under the Rule 803(3) exception which "allows statements,

otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming").

Defendants' Objection to Statement in ¶ 10: Hearsay

Plaintiffs' Response:  This testimony is admissible for the reasons stated in Plaintiffs' response to ¶¶ 6-9.  Moreover, Ms. Sarmiento learned of this information through an informal survey of reactions to the citizenship question; such surveys are generally admissible under Fed. R. Evid. 803(3) to show the state of mind of respondents. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 227 (2d Cir. 1999) ("The great majority of surveys admitted in this Circuit, including those used in Lanham Act cases to establish actual confusion or secondary meaning, fall [under Rule 803(3)]:they poll individuals about their presently existing states of mind to establish facts about the group's mental impressions."); *see also Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 298-99 (S.D.N.Y. 2001) (employee testimony concerning statements made by anonymous customers "that they were confused" was admissible "to show the customers' state of mind" in trademark action); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003 (2d Cir. 1997) (sales manager could testify that retail customers complained that they thought a company was selling at a lower price to others, because not offered for the truth but rather as evidence customer confusion).

## 20.  JOHN THOMPSON

Plaintiffs are submitting an amended declaration for John Thompson which deletes the opinion regarding the ultimate issue to which Defendants objected.  In all other respects, because Defendants have indicated that they intend to cross-examine Mr. Thompson, Plaintiffs will address Defendants' evidentiary objections to Mr. Thompson's direct testimony when Mr. Thompson is called at trial and his testimony is offered into evidence.

## 21.  JACQUELINE TIEMA-MASSIE

Defendants' Objections to ¶¶ 6, 13-15, 17-20: "Untimely disclosed expert testimony."

Plaintiffs' Response:  Ms. Tiema-Massie's testimony is not "untimely disclosed expert testimony."  Her statements about the functioning of federal funding programs in Chicago are based on her personal knowledge of those funding programs, as described in her Oct. 23 Affidavit and her Nov. 3 Supplemental Affidavit.  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) ("Maggiano's testimony was not 'opinion' testimony within the scope of either Federal Rule of Evidence 701 or 702.  Rather, Maggiano testified based on her personal knowledge that she was not aware of any mortgage modification programs in the Economic Stimulus Act of 2008 – a fact directly relevant to Khafizov's fraudulent misrepresentations to the contrary."); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

To the extent any part of her October 23 Affidavit reflects testimony as to her opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts she is personally aware of.  *See United States v Cuti*, 720 F.3d 453, 460 (2d Cir. 2013) (lay witnesses

may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

       <u>Defendants' Objections to ¶18</u>:  Hearsay (as to the testimony that "Many seniors utilize center resources for life enrichment activities, computer learning classes, internet access, fitness programming, congregate dining, caregiver services, and much more.").

       <u>Plaintiffs' Response</u>:  With respect to hearsay, Defendants have not identified any "out of court statement," and thus there is no hearsay issue.  *See* Fed. R. Evid. 801(a).  Moreover, even if Defendants intend to assert that this portion of Ms. Tiema-Massie's Affidavit relies on hearsay, which it does not, they are incorrect. This paragraph is within the purview of Ms. Tiema-Massie's personal knowledge as Director of Planning, Research and Development for the Chicago Department of Family and Support Services.  Defendants have not challenged Ms. Tiema-Massie's Affidavit on the grounds that she lacks personal knowledge.

       Since this testimony is based on Ms. Tiema-Massie's experience and knowledge, it is not based on hearsay. *See* Suppl. Tiema-Massie Aff.; *see also M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based on personal knowledge only if the "witness could not have actually perceived or observed that which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager about the amount of denied claims was not inadmissible hearsay as it was based on her personal knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453 OWW GSA, 2009 WL 464465, at *4

(E.D. Cal. Feb. 24, 2009) (holding that the company manager's declaration was not hearsay, as he was "competent to speak to the account records based on his experience, position within the company, access to account records, and personal knowledge based on the review he initiated of [ ] account data").

## 22. DR. JENNIFER VAN HOOK

Because Defendants have indicated that they intend to cross-examine Dr. Van Hook, Plaintiffs will address Defendants' evidentiary objections to Dr. Van Hook's direct testimony when Dr. Van Hook is called at trial and her testimony is offered into evidence.

## 23. ARTURO VARGAS

Defendants' Objection to Statements in ¶¶ 5-8:  Lacks personal knowledge. Lacks foundation.

Plaintiffs' Response:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the National Advisory Committee, and its predecessor committees, and his familiarity with the NAC charter. See PX-227.  Mr. Vargas has submitted a supplemental affidavit that explains in greater detail the basis for his personal knowledge.  See Vargas Supp. Aff. ¶¶ 1-5.

Defendants' Objection to Statements in ¶¶ 10-11:  Lacks personal knowledge. Lacks foundation.

Plaintiffs' Response:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, and his familiarity with the

NAC's charter and its standard operating procedures. *See* PX-227, PX-229; Vargas Supp. Aff. ¶¶ 1-5.

    <u>Defendants' Objection to Statement in ¶¶ 12-13</u>:  Lacks personal knowledge. Lacks foundation. "Untimely disclosed expert testimony."

    <u>Plaintiffs' Response</u>:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, his personal knowledge of the NAC's standard operating procedures, and personal knowledge gained through frequent interaction with Census Bureau officials. *See* PX-229; Vargas Supp. Aff. ¶¶ 1-5.  They are therefore not "untimely disclosed expert testimony."  *See U.S. v. Khafizov*, 604 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order); *United States v. Ahmed*, 14-cr-277-DLI, 2016 WL 3647686, at *12 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 172 (S.D.N.Y. 2014).

    To the extent any part of Mr. Vargas's testimony at ¶¶ 12-13 of his October 23 Affidavit reflects testimony as to his opinions, it is lay opinion, admissible under Fed. R. Evid. 701 as being rationally based on the facts he is personally aware of.  *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir 2013) (lay witnesses may testify to opinions derived from their direct perceptions by means of "a process of reasoning familiar in everyday life"); *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (accountant's opinions derived from his review of a company's books were admissible lay opinion as being derived from his personal knowledge through ordinary reasoning).

    <u>Defendants' Objection to Statement in ¶ 16</u>: Speculation. Lacks foundation.

    <u>Plaintiffs' Response</u>:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, his personal knowledge of

the NAC's standard operating procedures, and personal knowledge gained through frequent interaction with Census Bureau officials. *See* PX-227, PX-229; Vargas Supp. Aff. ¶¶ 1-5.

Defendants' Objection to Statement in ¶ 22: Lacks foundation. Untimely disclosed expert testimony.

Plaintiffs' Response:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, his personal knowledge of the NAC's standard operating procedures, and personal knowledge gained through frequent interaction with Census Bureau officials. *See* PX-227, PX-229; Vargas Supp. Aff. ¶¶ 1-5.  For the reasons given in Plaintiffs' Response to Defendants' Objections to ¶¶ 12-13, these statements are, if they are regarded as opinion at all, lay opinion admissible under Fed. R. Evid. 701.

Defendants' Objection to Statement in ¶ 23: Lacks foundation.

Plaintiffs' Response:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, his personal knowledge of the NAC's standard operating procedures, and personal knowledge gained through frequent interaction with Census Bureau officials. *See* PX-227, Vargas Supp. Aff. ¶¶ 1-5.  Also, Mr. Vargas described his familiarity with the NAC's procedures of consultation with the Census Bureau in paragraph 11 of his original affidavit.

Defendants' Objection to Statement in ¶¶ 24: Lacks foundation. Untimely disclosed expert testimony.

Plaintiffs' Response:  These statements are within the purview of Mr. Vargas' personal knowledge as a member of the NAC, and its predecessor committees, his personal knowledge of the NAC's standard operating procedures, and personal knowledge gained through frequent interaction with Census Bureau officials. *See* PX-227, PX-229; Vargas Supp. Aff. ¶¶ 1-5.  For

the reasons given in Plaintiffs' Response to Defendants' Objections to ¶¶ 12-13, these statements

are, if they are regarded as opinion at all, lay opinion admissible under Fed. R. Evid. 701

Defendants' Objection to Statement in ¶ 25: Hearsay

Plaintiffs' Response:  ¶ 25 is within the purview of Mr. Vargas' personal knowledge as

CEO of NALEO Educational Fund, and his personal knowledge as a trusted messenger for the

Census Bureau, as well as his experience and knowledge gained over the course of the last

number of months studying attitudes and attending community events about the 2020 Census.

*See* Vargas Suppl. Decl.; *see also M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681

F.2d 930, 932 (4th Cir. 1982) (explaining that statement about observations would not be based

on personal knowledge only if the "witness could not have actually perceived or observed that

which he testifies to"); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d

522, 529 & n.49 (S.D.N.Y. 2008) (holding that statements by an insurance company manager

about the amount of denied claims was not inadmissible hearsay as it was based on her personal

knowledge, formed "after a review of the records"); *Mora v. Harley-Davidson Credit Corp.*,

1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 (E.D. Cal. Feb. 24, 2009) (holding that the

company manager's declaration was not hearsay, as he was "competent to speak to the account

records based on his experience, position within the company, access to account records, and

personal knowledge based on the review he initiated of [ ] account data.").

Defendants have not identified any "out of court statement," and thus there is no hearsay

issue. *See* Fed. R. Evid. 801(a). Further, any assertion based on statements about an individual's

intent to answer or not answer the citizenship question are not inadmissible hearsay as

"statements of future intent are not excludable as hearsay." *United States v. Badalamenti*, 794

F.2d 821, 826 (2d Cir. 1986).

Even if Defendants contend that ¶ 25 implicitly relies on out-of-court statements from individuals evidencing fear, such statements would "not fall within the definition [of hearsay] because [they are] not offered to prove the truth of the matter asserted." *Woods v. Computer Horizons Corp.*, 05-CV-3195 (FB) (RER), 2008 WL 762252, at *4 (E.D.N.Y. Mar. 20, 2008) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)). Under the Rule 803(3) exception which "allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind," *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997); *see also Smith v. Duncan*, 411 F.3d 340, 347 n.4 (2d Cir. 2005) (holding that tape in which individual expressed fear that gang members were coming for him was not "offered to show that gang members were *actually* coming, but rather to show that Smith believed they were coming"). Community members' expressions of fear about answering the question or that citizenship information will be disclosed to another government agency therefore either are not hearsay, or fall under Rule 803(3) because they are offered not to establish whether or not a particular person will respond to the Census or if their responses will actually be used incorrectly, but to show their state of mind concerning the addition of the question.

Also, this is an appropriate use of survey data. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 227 (2d Cir. 1999) ("The great majority of surveys admitted in this Circuit, including those used in Lanham Act cases to establish actual confusion or secondary meaning, fall [under Rule 803(3)]: they poll individuals about their presently existing states of mind to establish facts about the group's mental impressions.").

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo
   *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Sania Khan, *Assistant Attorney General*
Elizabeth Morgan, *Assistant Attorney General*
Max Shterngel, *Assistant Attorney General*
Laura Wood, *Special Counsel*
Alex Finkelstein, *Volunteer Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs

AMERICAN CIVIL LIBERTIES UNION
ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ John A. Freedman*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Attorneys for the *NYIC* Plaintiffs