# Exhibit 1

Summary: Karen Dunn Kelley (August 28, 2018)

Karen Dunn Kelley testified regarding her background and history working with Secretary Ross. Tr. 13-14, 16-17. In her role at the Commerce Department she supervises the Census Bureau. Tr. 25-26. In spring or summer 2017, she learned that one of the Secretary's priorities was adding the citizenship question to the 2020 Census. Tr. 38-42. As of late July 2017, she had a specific interest in how a question would be added to the census. Tr. 29. Ms. Dunn Kelley was aware that Commerce and DOJ were having discussions about the citizenship question, but that she was not involved. Tr. 126-127.

After receiving DOJ's request, she made a plan for how the Census Bureau would review it. Tr. 99-101, 103. She understood that when a new question was being considered, there was a need to determine if the question was statutorily mandated or appropriate. She testified that a technical review by the Census Bureau was being conducted. Tr. 136, 138, 140, 144-145. This review normally included a meeting with DOJ to discuss the requested information. Tr. 187. In this case, the Bureau identified an alternative way of satisfying DOJ's request, but DOJ refused to meet regarding the citizenship question. Tr. 187, 189-193.

Ms. Dunn Kelley is not aware of anything that Commerce or Census did to validate the DOJ's stated rationale, that the current data collected under the ACS are insufficient to meet its purpose under the VRA. Tr. 285. To her knowledge, DOJ never identified any number of cases that they would have litigated, but for the absence of block-level citizenship data. Tr. 287. Ms. Dunn Kelley is unaware of any research about how the citizenship question will perform in the decennial census environment. Tr. 283. To her knowledge, no one at Commerce saw the results of the testing that had been performed on the citizenship question in the context of the ACS. Tr. 284.

Ms. Dunn Kelley confirmed that the Census Bureau experts never changed their views that adding the citizenship question would involve additional cost. Tr. 167-168. The Bureau concluded that Alternative B (the citizenship question) would result in lower quality enumeration data and fewer correct enumerations. To her knowledge, Census Bureau has not changed their assessment of Alternatives A, B, and C. Tr. 172-179. The Census Bureau has not changed its view as to the downsides of asking the citizenship question or their recommendation as to how to respond to the DOJ request. Tr. 203-204, 206-213. Ms. Dunn Kelley testified about the process of analyzing Alternative D and acknowledged it was not preferable to C and had all of the problems of B as set forth in the Abowd memo. Tr. 251-258.

Many stakeholders were opposed to adding the question, so Acting Director Ron Jarmin sought to find someone to speak in favor of the citizenship question. Tr. 233-246.

Ms. Dunn Kelley acknowledged that testing the citizenship question could determine whether response rates would decline materially; an end-to-end test could show how effective non-response follow up (NRFU) is in the context of the citizenship question. Tr. 293. She has not seen any data contradicting the Census Bureau's analysis regarding the decline in self-response rates or any scientific studies or data contradicting the Abowd memo. Tr. 300-303. Commerce did not ask the Census Bureau to test the citizenship question or study how it might perform in the current political climate. Tr. 313-317.