IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>NEW YORK IMMIGRATION COALITION, et al.,<br><br>Consolidated Plaintiffs<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, et al.,<br><br> Defendants. | Civil Action No. 1:18-cv-2921-JMF |

**SUPPLEMENTAL DECLARATION OF GEORGE ESCOBAR**

I, George Escobar, pursuant to the provisions of 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1. As explained in my October 26 Declaration, I am the Chief of Programs and Services at CASA ("CASA"). In this capacity, I oversee CASA's services departments, including legal services, health services, workforce development, employment, education, and our immigrant integration programs.

2. All of the statements made in my October 26 Declaration and in this Declaration are made based on my personal knowledge, acquired in the course of my work with CASA and with the Latino immigrant community more broadly. In my role as the Chief of Programs and Services, I have become familiar with CASA's records and membership, including where our members live and basic demographic information regarding the areas where they live.

1

3. In my role overseeing all CASA services programs, I have daily access to and conversations with CASA members, in addition to frontline staff and managers. As part of my job, I am constantly analyzing performance data as well as customer satisfaction metrics and regularly check back in with staff and members to determine the cause of certain trends that I observe in the data. A recent decrease in the number of members applying for or renewing certain public benefits precipitated me to interview key frontline staff as well as members who had declined to renew their benefits to learn why this was happening. During these interactions, I often heard that these decisions were driven by fear of interacting with the government, which arose from President Trump's anti-immigrant policies and rhetoric.

4. The statements I have made regarding CASA members' decreased engagement with federal programs as a result of the Trump Administration's anti-immigrant policies and rhetoric is therefore based on my personal observations as the Chief of Programs and Services at CASA. This knowledge is not based on the restatement of a particular individual's views. This knowledge is based on my own review of CASA's records regarding member participation in federal government programs and regular engagement with CASA members.

5. Through my regular conversations with CASA members, I have gained personal knowledge regarding the fear among Latino immigrants that has arisen as a result of President Trump's statements and policies that target the Latino immigrant community. In particular, I have gained personal knowledge of the concern in the Latino immigrant community surrounding the addition of a citizenship question to the Decennial Census and fear about potential uses of the data gathered based on this question.

6. The statements I have made regarding the fear in the Latino immigrant community regarding the citizenship question and its effects on CASA members' willingness to participate in the Decennial Census is therefore based on my personal knowledge as a leader within CASA. This knowledge is not based on the restatement of a particular individual's views. The statements I have made regarding the effect of the citizenship question on the Latino immigrant community are not based on potential non-response rates or percentage undercount, but are my own observations based on my personal knowledge as a leader in CASA.

7. My statement regarding the potential diminished political power of the Latino immigrant community as a result of the citizenship question was not based on any specific estimated undercount, but on the common-sense principle that if members of the Latino immigrant community are not counted as part of the Decennial Census process, they will lose political power they otherwise would have had if they had been properly counted.

8. Similarly, my statement regarding a potential decrease in Census-related funding for these communities is not based on a specific estimated undercount, but on the common-sense principle that if members of the Latino immigrant community are not counted as part of the Decennial Census process, these communities will receive less federal funding from programs that rely on Census data.

9. My statement regarding concerns surround the collection of citizenship data at the census-block level is based on my personal knowledge of the current climate of fear in the Latino immigrant community. I know, based on my role as a leader in the Latino immigrant community, that there is an increased fear of immigration enforcement in the areas where CASA members live. If Census data is collected at such a granular level that

is possible to identify where non-citizens live, it is common sense that this will exacerbate fears among a community that already fears being targeted by immigration enforcement agencies.

10. My statements regarding decreased participation in the Decennial Census are also based on my role as a leader within CASA. I have worked with other leaders within CASA to determine how to best allocate our resources in preparation for the Decennial Census. There is general consensus among the leadership at CASA, based on our experience and engagement with CASA members, that diverting resources to increase funding for Decennial Census outreach will be necessary to combat the increased fear in the Latino immigrant community of participating in the Decennial Census.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed:   November 3, 2018

Washington, DC

*George Escobar*

George Escobar