UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF COMMERCE, et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:18-cv-2921 (JMF)<br><br>**AFFIDAVIT OF<br>EMILY FREEDMAN** |

Pursuant to 28 U.S.C. § 1746(2), I, Emily Freedman, hereby declare as follows:

1. My name is Emily Freedman. I am over the age of eighteen and have personal knowledge of all the facts stated herein.

2. I am Director of Community Development for the City of Providence, Rhode Island. I oversee the administration, coordination, and preparation of all work required to complete and fulfill the City's obligations under its community development and housing programs, including but not limited to all HUD-funded programs. I have been employed by the City of Providence since 2016.

3. As the City's Community Development Director, I develop strategic goals, solicit and evaluate project proposals annually, develop program budgets and spending plans, issue and evaluate federally-funded contracts, and report to HUD and other relevant funding entities. Part of my work entails working with federal grant programs, including Community Development Block Grant funds, Emergency Solution Grant funds, and HOME Investment Partnership Program Funds.

4. The City of Providence receives millions of dollars in federal funding from the U.S. Department of Housing and Urban Development (HUD) on both an annual and competitive basis.

5. Annual entitlement funding from the U.S. Department of Housing and Urban Development is allocated by funding formulas that include weighted population, poverty, housing counts and other data points.

6. In Federal Fiscal Year 2018, the City of Providence will receive $5,034,413 in Community Development Block Grant funding; $421,403 in Emergency Solutions Grant funding, and $1,700,757 in HOME Investment Partnerships Program funding.

7. The CDBG statute identifies poverty, deteriorated housing, economic distress, decline, and suitability of one's living environment as important components of community development need. The City's annual allocation of CDBG funds is calculated by HUD through Formula A or Formula B, as defined under 42 U.S.C. §5306. Formula A calculates funds to a jurisdiction based on its metropolitan area's share of 3 factors across all US metropolitan areas: 1) population, weighted at 25 percent; 2) people in poverty, weighted at 50 percent; and 3) overcrowded housing units, weighted at 25 percent. Formula B also calculates funds to a jurisdiction based on its metropolitan area's share of 3 factors across all US metropolitan areas, but the Formula B factors are: 1) population growth lag since 1960, weighted at 20 percent; 2) people in poverty, weighted at 30 percent; and 3) pre-1940 housing units, weighted at 50 percent. After HUD runs the calculations using the two formulas, it allocates the City the larger amount of the two. In recent years, the City of Providence has been awarded funds under Formula B. A differential undercount on the 2020 Census that impacts the Providence metropolitan area more heavily than other metropolitan areas will result in underreporting of the population and population growth lag as those formula factors are based on last Decennial Census counts.

8. Further, to utilize CDBG funds on neighborhood facilities or improvements, neighborhood Census Block populations must be 51% or greater low/moderate income. Any undercounting of residents, particularly in neighborhoods with high poverty rates and large minority and immigrant populations, would result in fewer neighborhoods being eligible for these critical neighborhood-based investments.

9. Reduced CDBG funding will result in a reduction in critical social services (such as homeless and domestic violence case management, food pantry operations, and job training programs) as well as reduced investment in local infrastructure and affordable housing. If a 1% funding reduction were to occur, over $50,000 in critical services and programming would need to be cut from the City's annual CDBG budget. Activities eliminated from a reduced City CDBG budget to absorb such a cut would be free daycare and after-school programs for hundreds of low-income families, and street and sidewalk improvements.

10. The Emergency Solutions Grant (ESG) is an annual entitlement grant program whereby funds are allocated under a 24 C.F.R. § 576.3-defined formula. Allocations are a function of the prior year's CDBG allocation; therefore, if CDBG funds decrease, ESG funds will be reduced as well. ESG funds are used to provide rental assistance to persons experiencing homelessness, as well as street outreach and case management services.

11. A reduction in City ESG funding would result in higher rates of homelessness, displacement of at-risk populations from assisted housing, and a decline in case management and shelter services. Even a modest 1% reduction in funding ($4,000) would mean cutting hundreds of hours for local case workers—hours that would have been spent finding housing for homeless living and dying on Providence streets.

12. Eligibility of a local government to receive HOME Investment Partnerships Program (HOME) is also a factor of the amount of CDBG received by the municipality. The HOME formula is then further determined by the following factors: 1) local and national vacancy rates (sourced by the Decennial Census), 2) prevalence of rental housing with substandard conditions, 3) number of pre-1950 rental units (sourced by the Decennial Census), 4) RS Means cost index and substandard rental units, 5) number of families in poverty, and 6) low net per capita income and population (population figures from the Decennial Census). If a differential undercount on the 2020 Census results in more homes being identified vacant than actually are, the formula would be negatively impacted as local market tightness (a proxy for local need for more affordable rental housing units) would be understated.

13. A reduction in City HOME funding will result in a decrease in the production of new affordable housing and a reduction in local down-payment and closing cost assistance programs to aid first-time homebuyers with limited means. A reduction of $170,000 (1%) in HOME funds would result in approximately 22 low-income families not receiving down-payment and closing cost assistance and realizing the dream of homeownership.

14. Finally, it is important to note that all formula factors for the programs above are derived from either the Decennial Census or US Census Bureau American Community Surveys.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this 24th day of October, 2018

/s/ Emily Freedman
EMILY FREEDMAN
Director of Community Development
for the City of Providence