UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>UNITED STATES DEPARTMENT<br>OF COMMERCE, et al.,<br><br>    Defendants. | 18-CV-2921 (JMF) |

**NOTICE OF FILING OF TRIAL AFFIDAVITS**

Plaintiffs hereby file with the Court the following trial affidavits:

1. Oct. 23, 2018 Affidavit of Jacqueline Tiema-Massie (Ex. 1).

2. Nov. 3, 2018 Supplemental Affidavit of Jacqueline Tiema-Massie (Ex. 2).

    Respectfully submitted,

    BARBARA D. UNDERWOOD
    *Attorney General of the State of New York*

    By: */s/ Matthew Colangelo*
    Matthew Colangelo, *Executive Deputy Attorney General*
    Elena Goldstein, *Senior Trial Counsel*
    Sania Khan, *Assistant Attorney General*
    Elizabeth Morgan, *Assistant Attorney General*
    Laura Wood, *Assistant Attorney General*
    Office of the New York State Attorney General
    28 Liberty Street
    New York, NY 10005
    Phone: (212) 416-6057
    matthew.colangelo@ag.ny.gov

    Attorneys for the *State of New York* Plaintiffs

    AMERICAN CIVIL LIBERTIES UNION

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Dale Ho*

| | |
|---|---|
| Dale Ho | Andrew Bauer |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 125 Broad St. | 250 West 55th Street |
| New York, NY 10004 | New York, NY 10019-9710 |
| (212) 549-2693 | (212) 836-7669 |
| dho@aclu.org | Andrew.Bauer@arnoldporter.com |
| | |
| Sarah Brannon* | John A. Freedman |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 915 15th Street, NW | 601 Massachusetts Avenue, N.W. |
| Washington, DC 20005-2313 | Washington, DC 20001-3743 |
| 202-675-2337 | (202) 942-5000 |
| sbrannon@aclu.org | John.Freedman@arnoldporter.com |

* *Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Attorneys for the *NYIC* Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF COMMERCE, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:18-cv-2921 (JMF) <br><br> **AFFIDAVIT OF JACQUELINE TIEMA-MASSIE** |

Pursuant to 28 U.S.C. § 1746(2), I, Jacqueline Tiema-Massie, hereby declare as follows:

1. My name is Jacqueline Tiema-Massie. I am over the age of eighteen and have personal knowledge of all the facts stated herein. I make this Declaration in connection with *State of New York, et al., v. United States Department of Commerce, et al.*

2. I am the Director of Planning, Research and Development as well as the Director of Grants Management for the Chicago Department of Family and Support Services ("DFSS"). I have served in this position since December 2013. I direct the preparation of complex federal, state, local, and private human service grants worth over $315 million annually, which represents more than 80% of DFSS's budget. Additionally, I supervise a team of grant project managers and planners that are responsible for the development and submission of the Department's 30 reoccurring grants; for identifying new funding sources to support DFSS programs and new initiatives; preparing key reports, plans, and assessments associated with DFSS grants; and for the project management of the Community Services Block Grant ("CSBG") program ($11.1 million).

3. Prior to DFSS, I served as the Director of Planning, Research and Development for the Chicago Department of Public Health, Bureau of Public Health Preparedness and

Emergency Response, where I was responsible for the development and submission of the Public Health Emergency Preparedness Grant ($10 million) and the Hospital Preparedness Program Grant ($3 million) programs. I was also responsible for emergency preparedness planning, performance management, and planning activities during an emergency preparedness response.

4. In regards to the City of Chicago budget, I am involved with the Department's preparation and submission of the annual appropriation ordinance, specifically the 925 – Grant Funds table, which includes all anticipated DFSS grants for the upcoming fiscal year, including carryover funds. For 2018, the total DFSS 2018 anticipated funds ($309,419,194) and carryover funds ($6,862,000) totaled $316,281,194. My team is responsible for securing these funds to support both the Department's direct services, performed through the City's Community Service Centers and Senior Regional and Satellite Centers, and contracted delegate agency services that support citywide human service delivery across multiple DFSS program models and service areas, including childcare, youth development, workforce, homeless, human, domestic violence, and senior services.

5. DFSS receives multiple federal and federal-state pass-through grants to support the City of Chicago's human services delivery system. The following formula-driven grants are determined, in whole or at least in part, by population information collected by the Census: *Federal grants* – Community Development Block Grant; Emergency Solutions Grant; *Federal-state pass-through grants* – Area Plan on Aging Grants (federal and state); and the Community Services Block Grant.

6. For the programs identified above, information gathered during the decennial census is used by federal funding agencies to determine funding levels to states and local jurisdictions. These federally originated grants support communities based on census derived

2

data that enumerates the total population counts and data about poverty, income, sex, and race/ethnicity.

7.      Approximate grant amounts are as follows: Community Development Block Grant ("CDBG") - $25,000,000 (this is DFSS's portion; the total for the City of Chicago is $72,100,000); Emergency Solutions Grant ("ESG") - $6,500,000; Area Plan on Aging Grant (Federal) - $13,000,000; Area Plan on Aging Grant (State) - $8,000,000; and the Community Services Block Grant ("CSBG") - $11,050,000.  CDBG, ESG, and CSBG provide support for all age groups, and the Area Plan on Aging (federal and state) funding supports individuals aged 60 and over.

8.      The CDBG program works to address a wide range of community needs.  The City of Chicago receives annual allocations from CDBG on a formula basis, and this formula takes into account the current population of the City of Chicago as well as the number of Chicagoans in poverty.  In 2017, these programs provided services for over 696,000 families citywide.

9.      DFSS CDBG funds are used to operate homeless shelters and supportive service programs for people and families who are experiencing homelessness or are at imminent risk of homelessness so that they attain or maintain safe and secure housing; to provide emergency food supplies to at-risk populations; to conduct Intensive Case Advocacy for seniors which includes in-home assessments, case advocacy and support, and on-going monitoring to vulnerable and socially isolated seniors and to provide home-delivered meals to seniors; to provide job readiness services, career counseling, vocational skills training, job placement assistance, and other workforce services; and to provide assistance and advocacy to those who have been victims of

domestic violence, including counseling, case management, legal services, and supervised visitation and safe exchange.

10. The ESG program provides services to people and families experiencing homelessness. In 2017, ESG funding provided services for over 17,800 families throughout the City of Chicago. Locally, ESG funds are used to engage people and families experiencing homelessness; improve the number and quality of emergency shelters; support shelter operations; provide essential services to shelter residents; rapidly re-house people and families experiencing homelessness; and prevent families and individuals from becoming homeless.

11. The CSBG provides funds to alleviate the causes and conditions of poverty within communities. Locally, the Chicago Department of Family Support Services (DFSS) leads the charge to reduce poverty, in part, by providing CSBG services and supports to Chicago's most vulnerable citizens. This is accomplished by delivering social services to residents through partnerships with a network of contracted/community-based (delegate) agencies and directly through DFSS. Through the CSBG contracted/community-based delegate agency network, DFSS provides the following services: *Homeless Services*, which provide support services for homeless persons, homeless street outreach, assessment, and counseling; and *Workforce Services*, which provide economic opportunities for low-income persons who are unemployed, job readiness services, career counseling, vocational skills training, job placement assistance, re-entry assistance, and other workforce services. Through directly administered programs DFSS provides the following services: *DFSS Community Service Center (CSC) services*, which provide client intervention and stabilization services, case work, case management, information and referral, emergency food referrals, transportation assistance, financial assistance program referrals and multiple co-located services (including veteran services, public benefits

assessments, educational workshops, etc.); and *The Scholarship Program*, which provides post-secondary educational scholarships to CSBG eligible clients in an effort to achieve economic security and stability. In addition, the DFSS Community Service Centers provide emergency response to victims of disasters, such as people experiencing weather related problems. In instances of extreme (heat/cold) weather conditions, the facilities also serve as Warming and Cooling Centers to those in need. When the State of Illinois receives CSBG funds from the federal government, the state distributes 90% of these funds to the Community Action Agency ("CAA") Network, which includes local governments such as the City of Chicago. The distribution of these funds to the Illinois CAA Network is based solely upon a formula utilizing a proportion of the state's poverty rate, which is derived from the Census. In 2017, the DFSS CSBG programs, through DFSS direct and delegate agencies, provided services to over 26,600 families throughout Chicago.

12. The Area Plan on Aging grants (federal and state) provide funding to maximize the quality of life of people aged 60 years and over and support a wide range of senior services including multipurpose senior centers, nutritional aid (home delivered meals and congregate dining), and caregiver and ombudsman services. The City of Chicago has been designated as an Area Agency on Aging by the State of Illinois Department on Aging ("IDOA") and is responsible for coordinating these community-based services to help those age 60 years and older stay as independent as possible in their homes and communities and avoid hospitalization or nursing home care.

13. The Area Agencies on Aging, including the City of Chicago, receive funding from IDOA based on a formula which takes into consideration the number of older citizens and elderly minorities in the area, as well as the number of seniors living in poverty, in rural areas,

and alone. In order for a particular factor to be included in the funding formula, it must, among other things, be based on data which is derivable from the Census. Specifically, the funding formula factors are weighted as follows: the number of the state's population age 60 years and older comprises 41% of the total; the number of the state's population age 60 years and older, at or below the poverty threshold constitutes 25% of the total; the number of the state's population age 60 years and older residing in rural areas comprises 9% of the total; and the final 25% is based on the state's elderly population evidencing indicators of greatest social need. This final 25% is amalgamated as follows: those who are at least 60 years of age and a member of a minority group make up 10%; those at least 60 years of age and who live alone constitute 7.5%; and the number of the state's population age 75 years and over comprise 7.5%. In 2017, the DFSS Area Plan on Aging grants served over 230,000 seniors citywide.

14. An accurate count of the populations served through the aforementioned programs is extremely important to serving the basic human needs of these populations, including housing, food, education, employment and income, and other needs. Many of these populations are extremely vulnerable and are from some of Chicago's poorest neighborhoods.

15. Reducing funding to any of these programs puts these populations at greater risk to a wide range of vulnerabilities such as increased poverty, homelessness, substandard housing, hunger/food insecurity, unemployment, underemployment, lack of job skills training, social isolation, lack of access to higher education, exposure to intimate partner violence, and exposure to extreme weather. Reduced funding will also negatively impact DFSS's contracted/community-based delegate agencies and their staff that provide these services and rely on this funding to successfully operate and manage their community programs. Based on similar analyses I have

conducted in the past to address state budget concerns, these outcomes are very likely to occur as a result of reduced funding.

16. DFSS receives multiple federal, federal-state pass-through, state, and local funding to support its human services delivery in the City of Chicago. Some of DFSS's largest federal and federal-state pass-through grants, including CDBG, ESG, CSBG, and Area Plan on Aging funding would significantly be impacted as a result of a reduction in funding due to a census miscount.

17. In addition to the service population being affected, DFSS administrative and program staff associated with this funding would be impacted. Delegate agencies which heavily rely on government support to operate programs, including their staff and operations, and the communities in which these organizations are located would all be negatively impacted.

18. Additionally, DFSS's direct services would be impacted. For example, a reduction in funding to the CSBG would significantly impact low-income families. CSBG supports, among many other things, the operation of six DFSS Community Service Centers to assist individuals and families in need to access a wide range of resources, from shelter, food, and clothing to domestic violence assistance, drug rehabilitation, job training, and prison re-entry services. The Area Plan on Aging grants support the operations of six DFSS Regional and 15 Satellite Senior Centers. DFSS Senior Centers offer a variety of social, educational, cultural, and recreational activities for seniors and their informal caregivers. Many seniors utilize center resources for life enrichment activities, computer learning classes, internet access, fitness programming, congregate dining, caregiver services, and much more. Any reduction in funding could negatively impact these DFSS Centers that are integral to many Chicago neighborhoods, persons and families.

19. Chicago is a very diverse and multi-ethnic city, with 560,000 foreign-born residents from over 140 countries and more than 100 languages spoken. A strong and accurate census count is extremely important to ensuring that the populations served by federal and federal-state pass-through funding that the City receives will continue to receive support for the vital services that meet their basic human needs, such as food, shelter, quality child care, employment and training, safety planning, and other services as described above. A Census miscount would directly reduce and negatively impact the grant funding that the City receives.

20. The formula-driven grants that DFSS receives are vital and instrumental in providing direct and contracted services to hundreds of community organizations that provide a wide range of services to all Chicago residents, especially the most vulnerable, including immigrants. With such a substantial amount of federal dollars determined by Census data, multiple levels of the local safety net would be impacted. This could extend to other areas such as access to critical medical care, cash and nutrition assistance programs provided by state agencies through federal formula funding, as well as local housing assistance programs. This could further intensify Chicago residents' need for local services in response to crises, while a reduction in funding would directly impact DFSS and its contracted partners' ability to provide assistance to all Chicago residents. Any reduction in funding would be devastating to the local human services infrastructure – to clients, non-profit and community-based organizations, and most importantly to the at-risk populations that are served.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this **23** day of October, 2018

Jacqueline Tiema-Massie
Director of Planning, Research and Development
Director of Grants Management
Chicago Department of Family & Support Services

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., <br><br> Plaintiffs, <br><br> NEW YORK IMMIGRATION COALITION, et al., <br><br> Consolidated Plaintiffs <br><br> v. <br><br> UNITED STATES DEPARTMENT OF COMMERCE, et al., <br><br> Defendants. | Civil Action No. 1:18-cv-2921-JMF |

**SUPPLEMENTAL AFFIDAVIT OF JACQUELINE TIEMA-MASSIE**

I, Jacqueline Tiema-Massie, pursuant to the provisions of 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1. As explained in my October 23 Affidavit, I am the Director of Planning, Research and Development as well as the Director of Grants Management for the Chicago Department of Family and Support Services ("DFSS"), and my responsibilities include directing the preparation of complex state, local, and private human service grants worth over $315 million annually. As part of my employment, I also supervise a team of grant project managers and planners that are responsible for the development and submission of DFSS's 30 recurring grants; for identifying new funding sources to support DFSS programs and new initiatives; preparing key reports, plans, and assessments associated with DFSS grants; and for the project management of the Community Services Block Grant ("CSBG") program.

1

2.      All of the statements made in my October 23 Affidavit and in this Supplemental Affidavit are made based on my personal knowledge, acquired after nearly five years as Director of Planning, Research, and Development as well as Director of Grants Management for Chicago's DFSS. DFSS receives multiple federal and federal-state pass-through grants to support the City of Chicago's human services delivery system, and my team – and ultimately myself – are responsible for securing this funding.

3.      Because of my professional position and experience, I have factual knowledge of how these formulas work in the City of Chicago as well as grants management expertise. During the last seven years of working in grants management capacities in City of Chicago agencies, I have observed how grant funding for these and other programs are administered from year to year. Based on my understanding and experience with the programs that allocate these grant funds and from observing how these federal and federal-pass through grants are administered, I understand that the programs described in this and my October 23 affidavit rely in part on population figures derived from census data.

4.      In my grant management role with DFSS, my staff and I interact with delegate agencies that receive funding from federal and federal-state pass-through grants. Part of my job is understanding the services that delegate agencies provide to Chicago residents so we can develop human service grant proposals. I therefore am aware that delegate agencies rely heavily on government support to operate their programs, including their staff and operations, and that the communities in which these agencies are located would all be negatively impacted by a reduction in funding.

5.      While I have been employed with DFSS, I have become familiar with the grant programs through which DFSS receives money, with the City of Chicago budget, and with the

DFSS programs that benefit from federal and state grant money. I am also familiar with the Chicago residents that benefit from DFSS services due to my job responsibilities which include supervision of grant development staff members that are responsible for needs assessments, preparing funder-required reports on service usage, and working with delegate agencies to deliver human service programming. Based on this personal knowledge from overseeing the development of these funding streams and working in this field for years, I am aware that the formula-driven grants that DFSS receives are vital and instrumental in providing direct and contracted services to hundreds of community organizations that provide a wide-range of services to all Chicago residents, especially the most vulnerable, including immigrants as described in paragraphs 13, 14, 15-20 of my October 23 Affidavit.

6. Because my team and I prepare, develop, and submit the grants that DFSS receives, I have also relied on publicly available materials regarding this funding. It is my understanding, based on knowledge I have obtained as part of my job, that information gathered during the decennial census is used by federal funding agencies to determine funding levels to states and cities, and that these federally-originated grants support communities based on the total population count and poverty, income, sex, and race/ethnicity data from the decennial census as set forth in paragraph 6 of my October 23 Affidavit. This knowledge, combined with my understanding of how these funds are used on the ground, means that I am aware of how funding cuts would impact Chicagoans as set forth in my October 23 Affidavit.

6. For example, in my role managing the grants that DFSS receives, I know that the City of Chicago has been designated as an Area Agency on Aging. This information is also publicly available on the State of Illinois, Illinois Department on Aging website and on the DFSS website, located at https://www2.illinois.gov/aging/PartnersProviders/Pages/aaa_list.aspx#aaa12;

https://www.cityofchicago.org/city/en/depts/fss/provdrs/senior.html;

https://www2.illinois.gov/aging/Resources/Documents/StatePlanOnAging.pdf. The amount of money the City of Chicago receives through the Area Plan on Aging grants are based on "a formula which takes into consideration the number of older citizens and elderly minorities in the area, as well as the number of seniors living in poverty, in rural areas, and alone" as set forth in paragraph 13 of my October 23 Affidavit. Details about this formula are also available in public records that are maintained by the State of Illinois on publicly-available websites.

7. Based on my experience with serving low-income, minority and elderly populations in the City of Chicago, I have personal knowledge that many of these populations are extremely vulnerable and are from some of Chicago's poorest neighborhoods as set forth in my October 23 Affidavit.

8. In addition, during the State of Illinois Fiscal Year 2016 (July 1, 2016 – June 30, 2017), staff that I manage, who are responsible for the grant oversight of CSBG, conducted budget impact analyses on how the lack of access to both federal and state funds would impact DFSS, and the programs that it oversees, as a result of State of Illinois budget concerns.

9. Based on my position within DFSS, I am familiar with the DFSS services that receive funding from these grants and the help these services provide to City of Chicago residents. In particular, as part of my job, I work with the management and fiscal staff responsible for the program management and operations of the 6 DFSS Community Service Centers ("CSCs") and the 21 Senior Centers (6 Regional and 15 Satellite). The DFSS CSCs provide through the Community Services Block Grant assistance to individuals and families in need to access a wide range of resources, from shelter, food, and clothing to domestic violence assistance, drug rehabilitation, job training, and prison re-entry services. The senior centers

through the Area Plan on Aging grants provide access to social, economic, and educational resources that enhance the quality of the lives of seniors including, among many things, a variety of life enrichment activities, computer learning classes, internet access, fitness programming, congregate dining, and access to programs that provide caregiver services, as described in paragraph 18 of my October 23 Affidavit. I am likewise familiar with how a reduction in funding would harm Chicagoans as described in paragraphs 14, 15, and 17-20 of my October 23 Affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:         November 3, 2018

                                                   Jacqueline Tiema-Massie