**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | 18-CV-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

**NOTICE OF FILING OF TRIAL AFFIDAVIT OF GREGORY LUCYK**

Plaintiffs hereby file with the Court the following trial affidavit:

1. Oct. 23, 2018 Affidavit of Gregory Lucyk (Ex. 1).

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Elizabeth Morgan, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs

AMERICAN CIVIL LIBERTIES UNION
ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Dale Ho*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Attorneys for the *NYIC* Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

          Plaintiffs,

      v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

          Defendants.

CIVIL ACTION NO. 1:18-cv-2921 (JMF)

**AFFIDAVIT OF GREGORY E.
LUCYK**

Pursuant to 28 U.S.C. § 1746(2), I, Gregory E. Lucyk  hereby declare as follows:

1.      I am over the age of eighteen and have personal knowledge of all the facts stated herein.

2.      I am a licensed attorney and an active member of the Virginia State Bar.  I am currently engaged as a volunteer member of the Board of Directors for One Virginia 2021: Virginians for Fair Redistricting.  I oversee the organization's litigation efforts and assist with our legislative and administrative advocacy program.  I have been working with One Virginia 2021 since 2014. Prior to this position, I retired from the Commonwealth in March 2013 after 37 years of public service.  I worked as Chief Staff Attorney for the Supreme Court of Virginia from 2002 to 2013, where I supervised a staff of 12 attorneys assisting the Justices in processing some 2,500 cases and appeals filed annually.  I also served as a trainer for the Supreme Court's judicial education services section, and participated on numerous advisory councils and commissions, including the Supreme Court's Appellate Rules Advisory Committee and the Chief Justice's Commission on Mental Health Law Reform.  Before joining the Supreme Court, I worked for 18 years in the Office of the Attorney General of Virginia, including 8 years as the Trial Section

Chief. I handled an extensive trial and appellate caseload, and served as lead counsel and trial team leader for the Commonwealth in all of the state legislative redistricting cases filed in the state and federal courts in Virginia during the 1990 and 2000 rounds of redistricting.

3.      One Virginia 2021: Virginians for Fair Redistricting, is a nonprofit corporation formed under the laws of the Commonwealth of Virginia and granted exempt status under Sections 501(c)(3) and 501(c)(4) of the Internal Revenue Code. It was organized to initiate a comprehensive effort to eliminate gerrymandering and reform the redistricting process in Virginia through public education, participation in meaningful litigation, and by seeking an amendment to the Constitution of Virginia establishing an impartial Redistricting Commission – independent of the Virginia General Assembly – to draw legislative and congressional district lines.

4.      The attainment of a fair and accurate census count is an element of critical importance in fair redistricting, and every effort should be made to achieve the goals of the decennial census without further complicating the process. The federal constitution uses the terms "numbers" or "persons" to describe who should be counted in the decennial census. It does not limit the count to "citizens" or "legal residents." An inquiry into the status of a person's citizenship is not relevant or necessary to achieve a fair and accurate census count. Such an inquiry will complicate the process, depress response rates, increase costs and diminish the likelihood of an accurate count in the 2020 census.

5.      Article II, § 6 of the *Constitution of Virginia* requires the use of decennial census data for redrawing the boundaries of congressional, state Senate and House of Delegates electoral districts. This section mandates that redistricting shall occur after each decennial census. The *Code of Virginia* at § 30-265 further requires that the General Assembly "shall use"

2

the decennial census as the source of data for redistricting. This statute requires use of the "actual enumeration" conducted by the United States Census Bureau. The Commonwealth of Virginia relies exclusively on tabulations of the population produced by the Census Bureau from the decennial census to establish legislative districts. No other source for population data is authorized for use in redistricting in Virginia. Anything that would inhibit actual enumeration, especially including an undercount, would undermine Virginia's public policy of equal representation through redistricting.

6.     The Virginia Constitution requires that electoral districts "shall be . . . established by the General Assembly." Virginia is one of the few states in the country that has odd year legislative elections. As a result, the Virginia General Assembly has a very short window of time after receipt of Census Bureau population tabulations to redraw legislative districts following the decennial census. Filing deadlines for candidates in Virginia legislative elections typically fall in mid-March in an election year, with primary elections held in June. However, in 2011, when the General Assembly was required to draw new district lines following the 2010 decennial census, the population tabulations were not received until February 3, 2011. As a result, filing deadlines had to be extended to June, with primary elections postponed until August before the November general election. There is simply no leeway in these timelines to accommodate any additional delay in receipt of the census data. In addition, in late February 2011, the Census Bureau announced further adjusted population counts for Virginia. An error had placed 19,279 sailors stationed at the Norfolk Naval Station in West Ghent, a neighborhood of Norfolk. The mistake could have significantly affected state-level redistricting since the Norfolk Naval Station and West Ghent resided in different state legislative districts. Aside from these issues, this declarant understands the Census Bureau has indicated (at the recent NCSL

3

meeting in Los Angeles) that the population tabulations in 2021 will be even further delayed, and may not be available until mid or late-February. For all these reasons, the inclusion of any unnecessary or irrelevant inquiries in gathering census population data, such as might delay or jeopardize the accuracy of the population information would be extremely problematic. Any delay or inaccuracy in the data resulting in an undercount or requiring corrective action would negatively impact the ability of the General Assembly to redraw districts in a timely fashion, and result in irreparable harm to the citizens and government of the Commonwealth of Virginia.

7.     At the time of the 1990, 2000, and 2010 decennial censuses, Virginia was required to obtain preclearance from the Department of Justice, under §5 of the Voting Rights Act, for any redistricting plan, to ensure that any such plan would not reduce the electoral power of minority groups in the state. To the best of my knowledge, Virginia's submissions in support of its applications for preclearance after those three decennial censuses offered no block-level CVAP data in support of its applications for preclearance, and the Department of Justice did not request such data before granting administrative preclearance of any of the statewide redistricting plans. The Department denied preclearance to one of Virginia's statewide plans in this time period – the 1991 redistricting plan for the Virginia House of Delegates – based on the apparent minimization of black voting strength in Charles City County and not for any reason related to block-level CVAP data. The Department subsequently precleared a replacement redistricting plan for the Virignia House of Delegates in 1991 without, to my knowledge, receiving or requesting block-level CVAP data.

8.     The data delivered following the 2010 census placed total population in Virginia at 8.01 million people. Of that number, 870,084 are foreign born - over 11% of the population. The Migration Policy Institute in Washington, D.C. has determined that as of 2016, the total

4

foreign born population in Virginia has grown to 1.031 million people, or over 12% of the population. Additional data shows that of this number, only about 45% statewide are naturalized citizens. Thus, the majority of Virginia's foreign born are Legal Permanent Residents, Refugees or Asylum Seekers, Non-Immigrants seeking temporary legal entry, or undocumented immigrants. These are the classes of vulnerable persons who are most likely to avoid contact with the authorities – who will feel suspicion and hostility toward any citizenship inquiry out of fear that the information will be used against them and thus decline to cooperate with the census.

9.      The fastest rate of growth and the highest concentrations of foreign born populations are found in the urban areas comprising the "Golden Crescent" of Virginia. For instance, the Northern Virginia region planning district, looking at 2010 census data, has 561,718 foreign born persons, or roughly 64% of the entire immigrant population. The Richmond region planning district has 77,951 foreign born, or 9% of the total, while the Tidewater region planning district has 71,130, or 8% of the total. By contrast, the very rural Southside region and Southwest region planning districts have 1/10th to ½ of one percent of the total immigrant population, while the also rural Upper Shenandoah Valley and Roanoke Valley region planning districts are home to 7/10th to 1.5% of the foreign born population.

10.     As a result of extensive growth, especially in the Hispanic and Asian communities, Northern Virginia grew almost twice as fast from 2000 to 2010 than the rest of the state. Fairfax County is now home to more than 1 million residents. Hispanic and Asian residents are most likely to be affected by the proposed citizenship question, all of which would result in a significant undercount – the product of a depressed response arising from an intimidating process. Accordingly, due to significantly high numbers of noncitizens residing especially in the Northern Virginia region, as well as the Richmond and Tidewater regions, an

5

undercount means that these regions will likely lose representation in the Virginia General Assembly, while other, more rural parts of the Commonwealth with fewer noncitizen residents would have greater representation in the General Assembly.   This potential impact on representational interests is harmful and likely unlawful.  Residents of undercounted areas have less voice in their state and local governments, and the one person, one vote standard is violated.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on this ___23___ day of October, 2018

Gregory E. Lucyk, Esquire