# Exhibit 1

<u>Summary: Ron Jarmin (August 20, 2018)</u>

Questions on the census need to show a statutory or regulatory need, Tr. 17, as all questions on the decennial census are an imposition. Tr. 406-507.  Accordingly, the Census is obligated to use administrative records in lieu of direct data collection if possible. Tr. 59-60. Dr. Jarmin described alternatives that are less burdensome than the citizenship question to get data to meet DOJ's stated need. Tr. 27-28, 48-49, 66-69. Technical meetings between the Census Bureau and the requesting agency are important to identify how best to meet the data need; in this case, there was no meeting with DOJ. Tr. 32-38, 58-62, 64-69, 88, 101, 105, 107-108, 37-3.

In October 2017, Dr. Jarmin believed the process for adding questions to the 2020 census was closed. Tr. 378-379. Dr. Jarmin learned of the possibility of a citizenship question shortly before the Gary letter dated December 12, 2017. Tr. 21, 24-25, 377.  Dr. Jarmin was involved in finding stakeholders for Secretary Ross to speak with; since most stakeholders opposed the citizenship question, Jarmin sought out supporters for the record. Tr. 149, 153, 155, 408-409.

There is a well-established process of adding questions to the census, which was not followed here. Tr. 44-46, 44-46, 47-48, 50-52, 54-56, 138-139.  There is typically a multi-year testing process for the census. Tr. 259-261. Testing is important and could have been done for citizenship question. Tr. 178-185, 223-224, 234-235.  Many factors can impact how a question performs on the census and its sensitivity, including the political climate and order of questions. Tr. 194, 197, 289-292. It is not fair to assume a question will perform the same on different surveys. Tr. 220-221. The Bureau has not analyzed whether citizenship question will perform the same on the decennial census as on ACS. Tr. 221-222.  In addition, there was an unusual absence of outside experts and census advisory committee input when deciding whether to add the citizenship question; the census advisory committees opposed adding it. Tr. 83-87, 236-257.

The Census Bureau believed that Alternative D would result in poorer quality citizenship data. Tr. 143-145.  Dr. Jarmin agreed with the Census Bureau's recommendations. Tr. 117-118, 127-128, 405-406.  The Census Bureau found that administrative data is more accurate than self-response data for citizenship data. Tr. 399.  The Bureau provided Commerce with evidence of populations that would have responded to census without the citizenship question, but would not with a citizenship question. Tr. 308-309. Dr. Jarmin explained that the citizenship question adds burden to the census and is very likely to lead to decline in self-response. Tr. 274, 278-280, 306-307. Dr. Jarmin testified that he does not think the Census Bureau has analyzed the efficacy of its NRFU procedures for noncitizen households in comparison to other segments of the population. Tr. 280-284, 286-287.

Secretary Ross was the genesis of Alternative D. Tr. 122, 124. Census Bureau staff never had substantive conversations with Commerce officials about Alternative D. Tr. 167-168, 169. The Census Bureau did not have substantive input into the Ross decision memo. Tr. 171, 173.