November 12, 2018

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

>        RE:    Plaintiffs' letter-motion to designate materials for inclusion in the Administrative
>               Record in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921
>               (JMF).

Dear Judge Furman,

As part of the Census Bureau's integrated communication campaign for the 2020 census, the Bureau's Center for Survey Measurement conducted a series of 42 focus groups in March and April 2018 as part of the Census Barriers, Attitudes, and Motivators Study. *See* Ex. 1 (Rule 30(b)(6) dep. tr. 201-03); PX-161 at 10. Twelve of these focus groups occurred before the Secretary's decision to add a citizenship question was announced, and the summaries of those focus groups are contained at PX-15. Because the information from those focus groups was before the agency at the time the decision was made, that material is properly considered part of the Administrative Record. Plaintiffs therefore move to designate those portions of PX-15 as part of the Administrative Record in this action. *See* PX-15 at 1-2, 6-8, 9-11, 18-20, 26-28, 45-48, 50, 53-54, 58).

*1.  The scope of the Administrative Record.* The Administrative Procedure Act requires the Court to conduct "plenary review of the Secretary's decision, . . . to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. § 706 (in evaluating agency action, "the court shall review the whole record"). The "whole record" requirement is necessary to enable effective judicial review, because the § 706(2) standard requires the Court to determine, among other factors, whether the agency made a decision that "runs counter to the evidence" before it, or failed to offer a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

The "whole record" includes all of the materials before the agency at the time of the decision, not merely the subset directly reviewed by the final decisionmaker, and not merely the subset of materials that purportedly support the ultimate decision. *See Walter O. Boswell Mem. Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case."); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) ("The complete administrative record consists of all documents directly or indirectly considered by the agency."); *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,143 F. Supp. 2d 7, 12 (D.D.C. 2001) (the administrative record includes work, recommendations, and other materials considered by subordinates).

    *2. Summaries of the March 2018 CBAMS focus groups should be considered part of the Administrative Record.* The Center for Survey Measurement within the Census Bureau conducts questionnaire testing and qualitative research, including content recognition, questionnaire layout, focus groups, and related behavioral science research. Ex. 1 (Rule 30(b)(6) dep. tr. at 29-30). As part of the Census Bureau's integrated communication campaign for the 2020 census, CSM conducted a series of 42 focus groups in the spring of 2018 through the "Census Barriers, Attitudes, and Motivators Study," or CBAMS. *See id.* (Rule 30(b)(6) dep. tr. 201-03); PX-161 at 10. Twelve of those 42 focus groups were conducted before the Secretary's decision to add a citizenship question to the census was announced on March 26, 2018. *Id.* (Rule 30(b)(6) dep. tr. at 203); PX-161 at 5; PX-1 at AR 1313.

    The original transcripts of the CBAMS focus groups were not discoverable in this litigation because of the Title 13 prohibition on disclosing individually identifiable census information, *see* Docket No. 398 at 2; *see also* Tr. of 10/24 Hearing at 22-23, and the "audience summary reports" and "after action reports" that appear at PX-15 were produced instead. Defendants represented that these reports were based on "an approved protocol for disclosure avoidance review of summaries of qualitative research produced from activities like focus groups," and that the summaries "are an attempt by the [Disclosure Review Board] and census to release as much data as possible." Docket No. 398-1. In other words, by Defendants' own representation, the summaries contained at PX-15 are the most accurate memorialization available of the substance of the CBAMS focus groups.

    Defendants assert that the information from these twelve focus groups – although conducted *before* the Secretary announced his decision on March 26 – was not available to the agency until after that decision; and that this material should therefore be excluded from the Administrative Record. But Dr. Abowd testified to the exact opposite, stating on behalf of the Census Bureau that the focus group results were in fact relayed to and considered by the Census Bureau in real time: "So far, the results from the CBAMS focus groups have been directly fed back to decennial, and the new training materials are being developed and those are an input to them. So although we have to work fast, we're not so bureaucratic that we can't process new information when we get it." Ex. 1 (Rule 30(b)(6) dep. tr. at 207). And the "after action reports" contained at PX-15 themselves make clear that although the focus groups were principally implemented by the Census Bureau's contractor, Young & Rubicam, Census Bureau employees attended each focus group either in person or by remote video feed. *See, e.g.*, PX-15 at 32 ("We were also able to stream this feed to remote participants, though some Census participants were not able to access behind the firewalls of their government computers."); *id.* at 39 (noting feedback to moderators from on-site census staff). The Census Bureau was therefore well aware of the focus group observations as they were occurring, and the information in PX-15 relating to the focus groups conducted before the Secretary's decision is properly considered to have been before the agency at the time the decision was made.[1]

---

[1] Even absent this evidence of real-time feedback to – and direct participation by – Census Bureau employees, the information learned by the Young & Rubicam contractors should be considered information possessed by the agency under the "consultant corollary." *Cf. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001) (when an outside consultant acts analogously to an agency employee, "the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done").

Nor are these summaries excludable from the Administrative Record simply because the memorializations themselves post-date the Secretary's decision.  Defendants themselves included several dozen memos in their original Administrative Record compilation that reflect post-call summaries (prepared after the Secretary's March 26 announcement) of conversations the Secretary had during his pre-announcement stakeholder outreach.  *E.g.*, AR 1194, 1198-1209, 1213-1216, 1221, 1256-1261, 1274-1276.  And Defendants have represented that the CBAMS focus groups summaries contained at PX-15 are an accurate characterization of the substance of the information that was before the agency regarding the CBAMS focus groups, and that the summaries were prepared based on an "approved protocol" for "summaries of qualitiative research."  Docket No. 398-1.  That the summaries were themselves compiled only after the focus groups took place does nothing to undercut Plaintiffs' showing that the substance of the information contained in those summaries was known to and considered by the agency in March 2018.

The pages from PX-15 that consist of audience summary reports and after action reports of the twelve focus groups conducted before the Secretary's decision should therefore be included in the Administrative Record.  *See* PX-15 at 1-2, 6-8 (as related to Location 1), 9-11, 18-20, 26-28 (as related to Location 1), 45-48, 50, 53-54, 58.

Respectfully submitted,

BARBARA D. UNDERWOOD
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Executive Deputy Attorney General*
Elena Goldstein, *Senior Trial Counsel*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs


ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: */s/ John A. Freedman*

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Attorneys for the *NYIC* Plaintiffs

# Exhibit 1

1              UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF NEW YORK

3    ---------------------------------------

     NEW YORK IMMIGRATION COALITION, ET AL.,

4

                         Plaintiffs,

5          vs.          Case No.  1:18-CF-05025-JMF

6    UNITED STATES DEPARTMENT OF COMMERCE, ET AL.,

7                         Defendants.

     ---------------------------------------

8

9                      Washington, D.C.

10                     Wednesday, August 29, 2018

11   Deposition of:

12              DR. JOHN ABOWD

13   called for oral examination by counsel for

14   Plaintiffs, pursuant to notice, at the office of

15   Arnold & Porter, 601 Massachusetts Avenue NW,

16   Washington, D.C., before KAREN LYNN JORGENSON,

17   RPR, CSR, CCR of Capital Reporting Company,

18   beginning at 9:06 a.m., when were present on

19   behalf of the respective parties:

20              Veritext Legal Solutions

                   Mid-Atlantic Region

                1250 Eye Street NW - Suite 350

21              Washington, D.C.  20005

22

Page 2

1                      CONTENT

                                              PAGE
2

   DR. JOHN ABOWD                             9
3  Examination by Mr. Ho                      9
   Examination by Ms. Shah                    144
4  Examination by Mr. Talik                   187
   Examination by Mr. Adams                   264
5  Examination by Mr. Ehrlich                 333
   Examination by Ms. Goldstein               334
6
                ABOWD DEPOSITION EXHIBITS
7  EXHIBIT                                    PAGE
   NUMBER
8    Plaintiffs' Exhibit 1    Questionnaire   16
                              for the
9                             American
                              Community
10                            Survey
     Plaintiffs' Exhibit 2    Census 2000     19
11                            questionnaire
     Plaintiffs' Exhibit 3    1950 census     21
12                            questionnaire
     Plaintiffs' Exhibit 4    Federal         56
13                            Register notice
     Plaintiffs' Exhibit 5    Map             64
14   Plaintiffs' Exhibit 6    Email thread    71
     Plaintiffs' Exhibit 7    January 19,     74
15                            2018 memo
     Plaintiffs' Exhibit 8    Email           79
16   Plaintiffs' Exhibit 9    Email           82
     Plaintiffs' Exhibit 10   Email           96
17   Plaintiffs' Exhibit 11   Analysis        111
     Plaintiffs' Exhibit 12   Tables          127
18   Plaintiffs' Exhibit 13   PowerPoint      144
     Plaintiffs' Exhibit 14   Census Bureau   157
19                            statistical
                              quality
20                            standards
     Plaintiffs' Exhibit 15   Census 2000     182
21                            brief
     Plaintiffs' Exhibit 16   2005            185
22                            National
                              Content Test

Page 3

1       Plaintiffs' Exhibit 17   G series          254
                                 documents
2       Plaintiffs' Exhibit 18   2020 CBAMS        267
                                 survey
3       Plaintiffs' Exhibit 19   2020 CBAMS        278
                                 brief update
4       Plaintiffs' Exhibit 20   Question 28       290
        Plaintiffs' Exhibit 21   2020 census       304
5                                integrated
                                 communication
6                                plan
        Plaintiffs' Exhibit 22   OMB standards     320
7                                and guidelines
                                 for statistical
8                                surveys
        Plaintiffs' Exhibit 23   Secretary Ross    325
9                                decision memo
10
            (Exhibits attached to transcript.)
11
12
13
14
15
16
17
18
19
20
21
22

Page 4

```
 1              A P P E A R A N C E S
    On behalf of New York Immigration
 2  Coalition, CASA De Maryland, American-Arab
    Anti-Discrimination Committee, ADC Research
 3  Institute and Make the Road New York:
            John Freedman, Esquire
 4          Caroline Kelley, Esquire
            ARNOLD & PORTER
 5          601 Massachusettes Avenue, NW
            Washington, D.C. 20001
 6          (202) 942-5316
            jon.freedman@arnoldporter.com
 7          caroline.kelly@arnoldporter.com
 8  On behalf of New York Immigration Coalition:
            Dale Ho, Esquire
 9          Sarah Brannon, Esquire
            AMERICAN CIVIL LIBERTIES UNION
10          915 15th Street, NW
            Washington, D.C. 20005
11          (202) 675-2337
            sbrannon@aclu.org
12          dho@aclu.org
13  On behalf of Kravitz Plaintiffs:
            Karun Tilak, Esquire
14          COVINGTON & BURLINGTON
            850 Tenth Street, NW
15          Washington, D.C. 20001
            (202) 662-5458
16          ktilak@cov.com
17  On behalf of Los Angeles Unified School District:
            Keith Yeomans, Esquire (Telephonically)
18          DANIELS WOLIVER KELLEY
            115 Pine Avenue
19          Suite 500
            Long Beach, California 90802
20          (562) 366-8500
            kyeomans@dwkesq.com
21
22
```

Page 5

1    On behalf of LUPE Plaintiffs:
          Denise Hulett, Esquire (Telephonically)
2         MALDEF
          1016 16th Street NW
3         Suite 100
          Washington, D.C. 20036
4         (202) 293-2828
          dhuelett@maldef.org
5
          Niyati Shah, Esquire
6         ASIAN AMERICANS ADVANCING JUSTICE
          1620 L Street, NW
7         Suite 1050
          Washington, D.C. 20036
8         (202) 296-2300
          nshah@advancingjustice-aajc.org
9
     On behalf of City of San Jose & Black Alliance for
10   Just Immigration:
          Rory Adams, Esquire
11        MANATT, PHELPS & PHILLIPS
          7 Times Square
12        New York, New York 10036
          (212) 790-4501
13        radams@manatt.com
14        Ezra Rosenberg, Esquire
          Dorian Spence, Esquire
15        LAWYERS COMMITTEE FOR CIVIL RIGHTS UNDER LAW
          1401 New York Avenue, NW
16        Suite 400
          Washington, D.C. 20005
17        (202) 662-8345
          erosenberg@lawyerscommittee.org
18        dspence@lawyerscommittee.org
19
20
21
22

Page 6

```
 1   On behalf of State of California:
          Gabrielle Boutin, Esquire
 2        R. Matthew Wise
          DEPARTMENT OF JUSTICE OFFICE OF THE ATTORNEY
 3        GENERAL
          1300 I Street
 4        P.O. Box 944255
          Sacramento, California 94244
 5        (916) 210-6053
          gabrielle.boutin@doj.ca.gov
 6        matthew.wise@doj.ca.gov
 7   On behalf of State of New York:
          Danielle Fidler, Esquire
 8        Elena Goldstein, Esquire
          Matthew Colangelo, Esquire
 9        Alex Finkelstein, Esquire
          ASSISTANT ATTORNEY GENERAL, ENVIRONMENTAL
10        PROTECTION BUREAU
          28 Liberty Street
11        New York, New York 10005
          (212) 416-8441
12        danielle.fidler@ag.ny.gov
          elena.goldstein@ag.ny.gov
13        matthew.colangelo@ag.ny.gov
          alex.finkelstein@ag.ny.gov
14
     On behalf of Defendants:
15        Stephen Ehrlich, Esquire
          Carlotta Wells, Esquire
16        U.S. DEPARTMENT OF JUSTICE
          20 Massachusetts Avenue
17        Washington, D.C. 20530
          (202) 305-9802
18        stephen.ehrlich@usdoj.gov
          carlotta.wells@usdoj.gov
19
20
21
22
```

Page 7

1        Michael Cannon, Esquire

         U.S. DEPARTMENT OF COMMERCE, OFFICE OF THE

2        ASSISTANT GENERAL COUNSEL FOR FINANCE &

         LITIGATION

3        1401 Constitution Avenue, NW

         Room 5890

4        Washington, D.C. 20230

         (202) 482-5395

5        mcannon@doc.gov

6

         VIDEOGRAPHER:  Dan Reidy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 8

1                P R O C E E D I N G S

2     WHEREUPON,

3

4          VIDEOGRAPHER:  Good morning.  We're going

5     on the record at 9:06 a.m. on Wednesday August 29,

6     2018.  Please note that the microphones are

7     sensitive and may pick up whispering and private

8     conversations.  Please turn off all cell phones

9     and place them away from the microphones, as they

10    can interfere with the deposition audio.  Audio

11    and video recording will continue to take place

12    unless all parties agree to go off the record.

13          This is Media Unit 1 of the video

14    recorded deposition of Dr. John Abowd taken by

15    counsel for the plaintiff in the matter of the

16    New York Immigration Coalition, et al., v.

17    United States Department of Commerce, et al.  This

18    case is filed in the U.S. District Court of the

19    Southern District of New York.  This deposition is

20    being held at the law offices of Arnold & Porter

21    located at 601 Massachusetts Avenue Northwest,

22    Washington, D.C. 20001.

Page 9

1          My name is Dan Reidy from the firm

2     Veritext Legal Solutions, and I'm the

3     videographer.  The court reporter is

4     Karen Jorgenson from the firm Veritext Legal

5     Solutions.

6          I am not authorized to administer an

7     oath.  I am not related to any party in this

8     action, nor am I financially interested in the

9     outcome.

10          Also, counsels' appearances will be noted

11     on the stenographic record rather than orally at

12     this time.

13          Will the court reporter please swear in

14     the witness?

15               DR. JOHN ABOWD,

16     called as a witness, and having been first duly

17     sworn, was examined and testified as follows:

18          THE WITNESS:  I do.

19               EXAMINATION BY MR. HO:

20     Q   Dr. Abowd, before we get started, I just

21     want to confirm something on the record with your

22     counsel.

Page 29

1   opinion of the Census Bureau professionals, the

2   citizenship question, even without a nativity

3   lead-in, has been adequately tested.

4       Q   I believe you said that it was in May of

5   2016 --

6       A   I said -- I may have said '19, but I

7   meant May of 2018.  It was after the

8   Secretary -- sorry.  Thank you for correcting me.

9   It was after the Secretary instructed us to add

10  the question.  It was in May of this year.

11      Q   Thank you for clarifying.

12          Dr. Abowd, what is the Center For Survey

13  Measurement within the Census Bureau?

14      A   The Center For Survey Measurement is a

15  group of, primarily, behavioral scientists and

16  survey methodologists led by Paul Beatty who is

17  the chief.

18      Q   And what does -- I'll call it CSM for

19  short -- what does CSM do?

20      A   CSM does a variety of questionnaire

21  testing and qualitative research, leading content

22  recognition questionnaire layout, ISR -- Internet

Page 30

1    self-response instrument design, focus groups,

2    related behavioral science research.

3        Q    Fair to say that they are involved in

4    testing Census Bureau questionnaires?

5        A    Yes.

6        Q    Fair to say that they assess whether or

7    not a particular questionnaire has been tested

8    adequately?

9        A    They assess survey development at all

10   stages of the survey lifecycle, including the one

11   that you referenced.

12       Q    And were the professionals in CSM asked

13   their opinion as to whether there had been

14   adequate testing of the ACS citizenship question

15   to add it to the decennial enumeration

16   questionnaire?

17       A    In the course of developing our technical

18   response to the Department of Justice request, the

19   first group interviewed by the technical response

20   team was a group from the Center For Survey

21   Measurement, and they were asked about the quality

22   of the citizenship question on the

Page 201

1    those protocols, they would not have accounted for

2    the citizenship question, correct?

3        A    That's correct.

4        Q    And the same question with respect to the

5    census questionnaire assistance.   To the extent

6    the testing was used to develop a projection about

7    call loads for peak operations, those projections

8    would not account for the citizenship question,

9    correct?

10       A    That's correct.

11       Q    In light of the Secretary's decision to

12   add the citizenship question, will the

13   Census Bureau conduct any testing on the impact of

14   that question on staffing levels?

15           MR. EHRLICH:   Objection.   Form.

16           THE WITNESS:   It's hard to imagine what

17   kind of testing we might do, other than on a

18   relatively small scale.   However, we are working

19   closely with the integrated communication

20   campaign, which the Secretary has recommended

21   increasing the budget to 500 million.   They are

22   developing messaging and other tools that we fully

Page 202

1    expect to use, both with the general population

2    and with specialized groups, like enumerators.

3    BY MR. TALIK:

4        Q    But there has been no testing on the need

5    for -- let me rephrase that.

6             There has been no testing on whether the

7    citizenship question will require -- require the

8    Census Bureau to increase staffing levels for

9    2020?

10       A    I think I've already said there hasn't

11   been in direct testing.

12       Q    Sure.

13       A    We have the time, from now going forward,

14   to accumulate additional information.  If the only

15   testing that you mean is randomized controlled

16   trials, I don't believe there will be one of

17   those.

18            If you mean the kind of testing that

19   modern advertising firms do in developing a media

20   campaign, that's just rolling out, and there's

21   going to be a lot of that conducted between now

22   and the start of the media campaign, and we're

Page 203

1    already using that forum to collect additional

2    information.

3        Q    And what kinds of tests are you referring

4    to with respect to developing a media campaign?

5        A    So in the development phase of that

6    contract, we conducted the Census Barriers,

7    Attitudes and Motivators Study, CBAMS, which had

8    both the survey and the focus group component.

9    The survey was -- instrument was closed before the

10   Secretary's decision, so it was not modified.  But

11   the focus group's were not closed.  They were in

12   process when the Secretary made his decision.  So

13   we conducted 42 focus groups and 30 of them were

14   conducted after the citizenship question was added

15   to the 2020 census.  And the focus group protocols

16   were modified in a manner that kept them

17   comparable to the focus group protocols from the

18   ten that were conducted before that -- to gather

19   specific information about the effects of the

20   citizenship question.

21       Q    Besides the CBAMS focus groups, are there

22   other tests that the Census is already doing or

Page 207

1    immediately, but I am aware of the conversations

2    that happened and the oversight that occurs with

3    those conversations.  So when people propose that,

4    then their plan gets rush vetted.  So I expect to

5    see modifications to the testing procedures so

6    that we can make sure that the -- the things that

7    are under our control get more testing.

8        Q   But, so far, there has been no outcome of

9    that consultation in terms of a specific testing

10   plan for the citizenship question?

11       A   So far, the results from the CBAMS focus

12   groups have been directly fed back to decennial,

13   and the new training materials are being developed

14   and those are an input to them.

15           So although we have to work fast, we're

16   not so bureaucratic that we can't process new

17   information when we get it.  We have to have the

18   opportunity to get it.  The CBAMS focus groups

19   were the opportunity -- the first opportunity to

20   get some fresh information.

21       Q   Now, independent of testing, does the

22   Census Bureau intend to increase staffing levels

Page 336

1                    *  *  *  *  *

2                CERTIFICATE OF REPORTER

3        I, KAREN LYNN JORGENSON, RPR, CSR, CCR the

4    officer before whom the foregoing deposition was

5    taken, do hereby certify that the witness whose

6    testimony appears in the foregoing deposition was

7    duly sworn by me; that the testimony of said

8    witness was taken by me in stenotype and

9    thereafter reduced to typewriting under my

10   direction; that the said deposition is a true

11   record of the testimony given by said witness;

12   that I am neither counsel for, related to, nor

13   employed by any of the parties to the action in

14   which this deposition was taken; and further, that

15   I am not a relative or employee of any counsel or

16   attorney employed by the parties hereto, nor

17   financially or otherwise interested in the outcome

18   of this action.        *Karen Lynn Jorgenson*

19                    _____

20                KAREN LYNN JORGENSON, RPR, CCR, CSR

21   Dated this  1st         day

22   of    September    , 2018.