IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>    Defendants. | No. 1:18-cv-2921 (JMF) |

**DEFENDANTS' POST-TRIAL REPLY IN FURTHER SUPPORT OF
DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**INTRODUCTION**

Pursuant to the Court's November 27, 2018 invitation for additional post-trial briefing, Defendants submit this reply in further support of their Proposed Findings of Fact and Conclusions of Law. Specifically, Defendants assert that: (1) the Court cannot review the Secretary's compliance with 13 U.S.C. § 141(f), and the Secretary has nonetheless complied with that statute, (2) the prudential ripeness doctrine is the appropriate framework for analyzing the Office of Management and Budget's ("OMB") clearance of the 2020 Census questionnaire, and (3) one of Defendants' arguments regarding the "fairly traceable" prong of standing is purely legal; the other is mixed law and fact. For the reasons set forth below, the Court should adopt Defendants' Proposed Findings of Fact and Conclusions of Law.

**I.    The Court Cannot Review the Secretary's Compliance with 13 U.S.C. § 141(f), and the Secretary has Nonetheless Complied with that Statute.**

Plaintiffs contend the Secretary's decision was "not in accordance with law" under the Administrative Procedure Act ("APA") because the Secretary violated 13 U.S.C. § 141(f) by not identifying "citizenship" as a subject for the 2020 Census in his March 2017 report to Congress, and "there are no 'new circumstances . . . which necessitate' the inclusion of the citizenship question on the census." Pls.' Pretrial Mem. at 28–29. But the Secretary's compliance with § 141(f)'s reporting requirement is not judicially reviewable. And even if it were, the Secretary's determination of "new circumstances" under § 141(f)(3) is nonetheless unreviewable under the APA, 5 U.S.C. § 701(a)(1). Both of those judicial bars aside, the Secretary has fully satisfied § 141(f).

   A.    <u>The Court Lacks Jurisdiction to Review Plaintiffs' Claim that the Secretary Violated § 141(f)'s reporting requirement.</u>

For the reasons set forth in Defendants' Proposed Conclusions of Law, it is well established that congressional reporting requirements—like § 141(f)—are beyond the Court's jurisdiction to

review. ECF 546 at 78–79 (¶¶ 61–63). Although not relevant here,[1] this is true regardless of whether a court is asked to review the adequacy of a report or the failure to submit a report. *Guerrero v. Clinton*, 157 F.3d 1190, 1196–97 (9th Cir. 1998) (noting that the Director's failure to submit annual reports to Congress between 1989 and 1996 "cannot be redressed in any event"). In both instances, this is "a judgment peculiarly for Congress to make in carrying on its own functions in our constitutional system, not for non-congressional parties to carry on as an ersatz proxy for Congress itself." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988).

Plaintiffs' protestation that § 141(f) is a substantive constraint on the Secretary rather than a "ministerial" reporting requirement is belied by both the statutory language and common sense. As the Court has acknowledged, *New York v. United States Dep't of Commerce*, 315 F. Supp. 3d 766, 775, 794–95 (S.D.N.Y. 2018), the Secretary's authority to determine the census questionnaire's content derives from Census Act provisions wholly apart from § 141(f). 13 U.S.C. § 5 ("The Secretary shall prepare questionnaires, and shall determine the inquiries, and the number, form, and subdivisions thereof, for the statistics, surveys, and censuses provided for in this title."); *id.* § 141(a) ("The Secretary shall . . . take a decennial census of population . . . in such form and content as he may determine.").

If Congress wanted to condition the census questionnaire's content on the Secretary's reports to Congress, it could have easily used the 1976 amendments to do so, rather than using such amendments to create the separate reporting requirements of § 141(f). *See Hodel*, 865 F.2d at 317 ("If Congress had wanted to link [the congressional reporting requirements of] section 111 to the OCSLA process, it could readily have amended OCSLA to achieve that linkage. But amendatory language is conspicuously absent from section 111."). In stark contrast to the Census Act, Congress has explicitly

---

[1] Contrary to the Court's suggestion, Tr. 1529–30, this case does not present the question whether a court may review the Secretary's failure to submit a § 141(f)(3) report. As discussed below and in Defendants' Proposed Conclusions of Law, ECF 546 at 80 (¶¶ 65–67), the Secretary submitted a § 141(f)(2) report that fully satisfies § 141(f)(3).

done this in other contexts, mandating a congressional report *before* statutory authority may be exercised. *See, e.g.*, 10 U.S.C. § 2687 ("no action may be taken to effect or implement [*inter alia*] the closure of any military installation . . . unless and until [*inter alia*] the Secretary of Defense . . . notifies the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives . . ."); 25 U.S.C. § 1631(b)(1) ("no Service hospital or outpatient health care facility of the Service . . . may be closed if the Secretary has not submitted to the Congress at least 1 year prior . . . an evaluation of the impact of such proposed closure"); 50 U.S.C. § 1703(a) ("The President, in every possible instance, shall consult with the Congress before exercising any of the authorities granted by this chapter."). The Census Act imposes no such constraint.

Even Plaintiffs' cited legislative history cuts against the reviewability of § 141(f). As both the House and Senate Reports make clear, § 141(f) was enacted to give Congress the opportunity to "review and [provide] recommendations." S. Rep. No. 94-1256, at 5 (1976); H. Rep. No. 94-944, at 5-6 (1976); Plaintiffs' Proposed Conclusions of Law, ECF 545-1 at ¶¶ 395–96. Nothing in the legislative history supports the novel theory that § 141(f) was meant to constrain the extraordinarily broad discretion delegated to the Secretary elsewhere in the Census Act.

Conspicuously, none of Plaintiffs' cited cases even remotely relate to congressional reporting requirements. Plaintiffs' Proposed Conclusions of Law, ECF 545-1 at ¶ 410. Each cited case pertains to an agency's compliance with statutory provisions that regulate private parties, not reports submitted to Congress. *See Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 109 (2d Cir. 2018) (deciding whether an agency violated statutory deadlines for adjusting civil penalties applicable to private parties); *ACEMLA v. Copyright Royalty Tribunal*, 763 F.2d 101, 104 (2d Cir. 1985) (deciding whether the Copyright Royalty Tribunal provided a sufficient explanation for its distribution of jukebox royalty funds among claimants); *E. Bay Sanctuary Covenant v. Trump*, 2018 WL 6053140 (N.D. Cal. Nov. 19, 2018) (deciding whether to enjoin a rule that would bar asylum for immigrants entering

3

between ports of entry). Unlike congressional reporting requirements, courts routinely review such cases. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, --- S.Ct. ---, 2018 WL 6174253, at *9, (U.S. Nov. 27, 2018) (noting that federal courts regularly review agency orders affecting the rights of private parties).

Well-settled law, plain statutory text, and the Census Act's legislative history all establish the same conclusion: § 141(f) is a reporting requirement reviewable by Congress, not the Court.

      B.      <u>Even if 13 U.S.C. § 141(f) imposes a substantive constraint on the Secretary, it is not judicially reviewable.</u>

Even if § 141(f) was more than a reporting requirement (it is not), the Secretary's determination under § 141(f)(3) is barred from judicial review under the APA, 5 U.S.C. § 701(a)(1), because "Congress expressed an intent to prohibit judicial review" in two ways.[2] *Webster v. Doe*, 486 U.S. 592, 599 (1988); *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 164 (2d Cir. 2004).

First, § 141(f)(3) explicitly delegates the determination of "new circumstances" to the Secretary alone. In codifying § 141(f)(3), Congress made clear that a report was only required "if *the Secretary finds* new circumstances exist which necessitate" a modification of § 141(f)(1) or § 141(f)(2) reports. The Census Act does not say, for example, that "the Secretary shall submit a report under § 141(f)(3) if new circumstances exist." It specifically uses the phrase "if the Secretary finds," in conjunction with

---

[2] At the motion-to-dismiss stage, this Court held that the Secretary's content determinations are not "committed to agency discretion by law." *New York*, 315 F. Supp. 3d at 794–99. That ruling has no applicability here for two reasons. First, the Court's analysis focused on 13 U.S.C. § 141(a), a different provision of the Census Act with different statutory text, different legislative history, different case law, and a substantive grant of authority to the Secretary. An analysis of that provision does not, and could not, speak to whether courts may review the Secretary's reporting obligations under § 141(f). Second, the Court analyzed § 141(a) under the framework of 5 U.S.C. § 701(a)(2), not § 701(a)(1). Those inquiries are entirely separate: while § 701(a)(2) focuses on whether a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *New York*, 315 F. Supp. 3d at 794 (citations omitted), the inquiry under § 701(a)(1) looks at the statute's "express language," the "structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved," *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984), to determine whether "Congress expressed an intent to prohibit judicial review," *Webster v. Doe*, 486 U.S. 592, 599 (1988).

"new circumstances," to denote the exclusive use of discretion by the Secretary. This phrasing is unique in the Census Act, even among congressional reporting requirements. *Compare* 13 U.S.C. § 4 ("The Secretary shall perform the functions and duties imposed upon him by this title.") *and* § 131 ("The Secretary shall take, compile, and publish censuses of manufactures, of mineral industries, and of other businesses . . . in the year 1964, then in the year 1968, and every fifth year thereafter.") *and* § 141(b) ("The tabulation of total population . . . shall be completed within 9 months after the census date and reported by the Secretary to the President of the United States.") *and* § 181(b) (noting that "a report shall be submitted by the Secretary to the President of the Senate and to the Speaker of the House of Representatives" if "the Secretary is unable to produce and publish current data during any fiscal year on total population for any county and local unit of general purpose government") *with* § 141(f)(3) (calling for a congressional report "if *the Secretary finds* new circumstances exist" (emphasis added)).

Second, contrary to Plaintiffs' contention, ECF 545-1 at ¶ 405, § 141(f)(3) requires only that the Secretary inform Congress of his *modifications* to subjects, types of information, or questions, not the "new circumstances" forming the basis thereof. *See* § 141(f)(3) (requiring the Secretary to submit "a report containing the Secretary's determination of the subjects, types of information, or questions as proposed to be modified"). Congress, let alone the courts, would therefore have little basis to review the Secretary's exclusive determination of "new circumstances."

Accordingly, the Court may not review the Secretary's § 141(f)(3) determinations because "Congress expressed an intent to prohibit judicial review." *Riverkeeper*, 359 F.3d at 164.

    C.    <u>The Secretary's Submission of § 141(f) Reports Was Entirely Proper.</u>

For the reasons set forth in Defendants' Proposed Conclusions of Law, even if judicial review were permitted, the Secretary has satisfied § 141(f)(3). ECF 546 at 80 (¶¶ 65–67). The Secretary informed Congress of both the subjects (as modified) and questions for the 2020 decennial census—

5

including citizenship—through his § 141(f)(2) report, *see* PX-501.[3]  And, as explained above, there is no mandate that the Secretary inform Congress of the new circumstances triggering modifications to § 141(f)(1) subjects.  *See*, *supra*, Section I.B.  Consequently, both the letter and spirit of § 141(f)(3)—notice to Congress—are fully satisfied through the Secretary's § 141(f)(2) report.  Indeed, the House Committee on Oversight and Government Reform has held several hearings addressing the reinstatement of the citizenship question.

Defendants' interpretation does not render § 141(f)(1) superfluous.  *See* Tr. 1531.  Between the submission of a § 141(f)(1) report of census subjects and a § 141(f)(2) report of census questions, the Secretary may submit a §141(f)(3) report if he finds that new circumstances necessitate a modification of the subjects.  It is true that the § 141(f)(2) report will supersede the § 141(f)(1) report, as the census questions will necessarily fall within, or modify, the census subjects.  And after both § 141(f)(1) and § 141(f)(2) reports are submitted, *every* modification of census subjects will concomitantly result in the modification of census questions.[4]  But such was the intent of Congress when it established the submission of "subjects proposed to be included, and the types of information to be compiled" three years prior to the census and the submission of specific "questions proposed to be included" two years prior to the census.  Once the latter is submitted as part of a § 141(f)(2) report, it is entirely compatible with the purposes of § 141(f) for that more-specific information to take precedence.

---

[3] Although the Secretary was not constitutionally or statutorily required to consider DOJ's request, Tr. 1534–35, this is irrelevant for § 141(f)(3) purposes.  If only constitutional or statutory mandate could establish "new circumstances" that "necessitate" modifications to § 141(f) reports, then § 141(f)(3) would be entirely superfluous: Congress would not need the Secretary's § 141(f)(3) report to know about constitutional or statutory changes.

[4] However, after the § 141(f)(2) report, adding or subtracting census questions within an existing subject would not require modification of the subjects set forth in the § 141(f)(1) report.

6

Even if § 141(f)(3) reports are judicially reviewable, the Secretary has acted in full accordance with this statute for the reasons set forth above and in Defendants' Proposed Conclusions of Law, ECF 546 at 80 (¶¶ 65–67).

## II. Prudential Ripeness Doctrine is the Appropriate Framework for Analyzing OMB's Clearance of the 2020 Census Questionnaire.

Defendants explained in their post-trial brief that, because the OMB has yet to approve the 2020 census questionnaire, "any judgment in this case would inherently rest on speculation and would thus be premature." Defs.' Proposed Conclusions of Law, ECF 546 at 72, ¶ 32 (capitalization altered). Review of agency action may be unripe for judicial resolution where review may prove "to have been unnecessary" because the challenged administrative action has not been finalized and is subject to modification. *Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 736 (1998).

This case is not yet fit for review under the prudential ripeness doctrine, which considers "whether the alleged policy *at this stage* is sufficiently definite and clear to permit sound review." *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008). Prudential ripeness counsels withholding review where "the issues sought to be adjudicated are contingent on future events or may never occur," and considers the possibility of hardship to a plaintiff in the absence of immediate review. *Id.* at 132 (internal quotation omitted). Here, there is a possibility of hardship to Plaintiffs were this Court to delay review pending OMB's approval because the census questionnaires are scheduled to be printed in June 2019. But "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003). And the D.C. Circuit has, in analogous circumstances, held a challenge to agency action in abeyance pending OMB review under the Paperwork Reduction Act. *See CTIA v. Fed. Comm. Comm'n*, 530 F.3d 984, 986-89 (D.C. Cir. 2008) (explaining that lack of finality due to pending OMB clearance "weigh[s] heavily in favor of holding the case in abeyance").

7

### III. One of Defendants' Arguments Regarding the "Fairly Traceable" Prong of Standing is Purely Legal; the Other is Mixed Law and Fact.

Defendants have raised two traceability arguments with respect to Plaintiffs' standing to sue. First, as reflected in Defendants' motion to dismiss, Plaintiffs' allegations of harm rely upon the intervening acts of third parties violating a clear legal duty to participate in the decennial census. *See* ECF 155 at 29 (citing 13 U.S.C. § 221). Defendants also argued in their motion to dismiss that Plaintiffs cannot premise standing on injuries allegedly produced by state-level redistricting actions following the census, as states are not required to use unadjusted census figures in such actions. *Id.* (citing *Evenwel v. Abbott*, 136 S. Ct. 1120, 1124 & n.3 (2016)). In support of these arguments, Defendants cited to cases that dismissed claims on motions to dismiss as a matter of law. *Id.* (citing *Himber v. Intuit, Inc.*, 2012 WL 4442796, at *9 (E.D.N.Y. Sept. 25, 2012) (dismissing claims as a matter of law because, "[n]o standing exists for this type of hypothetical, speculative harm that was preventable only by the discretionary decisions of third parties")). The Court specifically addressed and rejected these arguments in its motion-to-dismiss opinion. *New York v. United States Dep't of Commerce*, 315 F. Supp. 3d 766, 784–788 (S.D.N.Y. 2018).

Defendants reiterated their traceability arguments in their pretrial brief, and noted that "[b]ecause the Court has already addressed this purely legal argument, MTD Order at 28, Defendants do not reiterate it here. At trial, however, Plaintiffs will also fail to prove that their speculative injuries are *specifically attributable* to a citizenship question, thus also failing the fairly-traceable prong of standing as a factual mater." ECF 412 at 6, n.2 (emphasis in original). Consistent with that statement, Defendants explained in their post-trial brief that the evidence presented at trial demonstrated that Plaintiffs' alleged harm due to the general macro environment cannot be fairly traced to the Secretary's decision to include a citizenship question on the 2020 decennial census. ECF 546 at 41 (¶¶ 275–86) & 70 (¶¶ 22–23). Unlike the traceability arguments made in Defendants' motion to dismiss—which were pure questions of law—the traceability argument presented at the close of the evidence is a mixed

8

question of law and fact; Plaintiffs have not proved that their purported future injuries can be fairly ascribed to a citizenship question on the 2020 Census.

## CONCLUSION

For the foregoing reasons, the Court should adopt Defendants' Proposed Findings of Fact and Conclusions of Law.

Dated: December 4, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

CARLOTTA P. WELLS
Assistant Director, Federal Programs Branch

/s/   Stephen Ehrlich
KATE BAILEY
GARRETT COYLE
STEPHEN EHRLICH
CAROL FEDERIGHI
DANIEL HALAINEN
MARTIN TOMLINSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel.:  (202) 305-9803
Email:  stephen.ehrlich@usdoj.gov

*Counsel for Defendants*

CC:   All Counsel of Record (by ECF)