May 30, 2019

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    NYIC Plaintiffs' motion for an order to show cause in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman:

      Pursuant to Rule 3(A) of this Court's Individual Rules and Practices, NYIC Plaintiffs request an order to show cause whether sanctions or other appropriate relief are warranted in light of new evidence that contradicts sworn testimony of Secretary Ross's expert advisor A. Mark Neuman and senior DOJ official John Gore, as well as other representations by Defendants to this Court, on the central issues in this case. The new evidence, concealed by Defendants here, strongly underscores the pretextual basis for Defendants' decision to add a citizenship question to the 2020 Decennial Census. Although the appeal of this Court's judgment is pending, this Court retains jurisdiction over "collateral matters related to the case," such as "sanctions" and "contempt-related matters." *Aviv v. Brainard*, 2018 WL 5668623, at *3 (S.D.N.Y. Nov. 1, 2018).

      The new evidence reveals that Dr. Thomas Hofeller, the longtime Republican redistricting specialist, played a significant role in orchestrating the addition of the citizenship question to the 2020 Decennial Census in order to create a structural electoral advantage for, in his own words, "Republicans and Non-Hispanic Whites," and that Defendants obscured his role through affirmative misrepresentations. Specifically, new evidence shows that: (1) Dr. Hofeller concluded in a 2015 study that adding a citizenship question to the 2020 Census "would clearly be a disadvantage to the Democrats" and "advantageous to Republicans and Non-Hispanic Whites" in redistricting; (2) in August 2017, Dr. Hofeller helped ghostwrite a draft DOJ letter to Commerce requesting a citizenship question and providing the Voting Rights Act enforcement rationale for doing so; (3) Neuman gave this ghostwritten draft DOJ letter to Gore in October 2017; and (4) the letter that DOJ eventually sent to Commerce in December 2017 adopted the same VRA rationale and bears striking similarities to Dr. Hofeller's 2015 study stating that a citizenship question on the Census was essential to advantaging Republicans and white voters.

      Based on this new evidence, it appears that both Neuman and Gore falsely testified about the genesis of DOJ's request to Commerce in ways that obscured the pretextual character of the request. Neuman falsely testified that he played *no* role in developing the DOJ letter and that he did *not* meet with Gore about such a letter in October 2017. Gore repeatedly testified that he prepared the initial draft of the DOJ letter, failing to disclose that Neuman gave him a draft of the DOJ letter in October 2017. Both Neuman and Gore concealed Dr. Hofeller's role in crafting the October 2017 draft letter and the VRA enforcement rationale it advanced.

      1. Mark Neuman, whom Defendants characterized as Ross's "trusted" "expert adviser" on census matters, ECF 451, admitted that Dr. Hofeller was the "first person" who suggested adding a citizenship question to the 2020 Census to the transition. Ex. B at 51:15-16. According to Neuman, Dr. Hofeller advised that adding the question would "maximize[]" representation for

1

the "Latino community." *Id.* at 142:3-18, *see id.* at 56:15-20. But new evidence obtained in discovery in a state court lawsuit, *Common Cause v. Lewis*, No. 18-CVS-14001 (N.C. Super.), shows that Dr. Hofeller instead knew that adding a citizenship question would have exactly the *opposite* effect—it would *disadvantage* Latinos and benefit "Non-Hispanic Whites."

In August 2015, Dr. Hofeller was commissioned by the "principal" of the Washington Free Beacon, a conservative website, to study the "practicality" and "political and demographic effects" of using citizen voting age population ("CVAP") in lieu of total population ("TPOP") to achieve equal population in redistricting. Exs. C, D. Dr. Hofeller wrote that use of CVAP in redistricting was infeasible "[w]ithout a question on citizenship being included on the 2020 Decennial Census questionnaire." Ex. D at 8. He explained that "[e]ven if a majority on the U.S. Supreme Court was sympathetic to the use of CVAP" in "redistricting or reapportionment," the Court was unlikely to permit such usage based on citizenship data from the ACS, and would instead require "an actual full enumeration" on the 2020 Decennial Census. *Id.* at 3.

Dr. Hofeller also advised that *if* a citizenship question were added to the 2020 Census to facilitate use of CVAP in redistricting, the results "***would be advantageous to Republicans and Non-Hispanic Whites***," "***would clearly be a disadvantage for the Democrats***," and would "***provoke a high degree of resistance from Democrats and the major minority groups in the nation***." *Id.* at 7, 9 (emphases added). Using the Texas State House of Representatives as a case study, Dr. Hofeller detailed how a switch from TPOP to CVAP would cause districts with large Latino populations and/or Democratic incumbents to disproportionately lose population, with the largest effects in South Texas, El Paso, and the Rio Grande Valley. *Id.* at 6-8, Tables 4-8. Hence, Dr. Hofeller wrote, a switch to CVAP would reduce the number of districts in these regions and enable Republican mapmakers to pack more Democrats and Latinos into each remaining district. Dr. Hofeller explained: "***Democratic districts could geographically expand to absorb additional high Democrat precincts from adjacent Republican districts, strengthening the adjoining GOP districts***." *Id.* at 8 (emphasis added). This strategy could be employed to particularly great effect in heavily Latino areas, because "considerable population would have to be added to a majority of the Latino districts to bring their populations up to acceptable levels." *Id.* at 6.

2. Neuman testified at deposition that he "wasn't part of the drafting process of the [DOJ] letter," and he denied that his October 2017 meeting with Gore was about a "letter from DOJ regarding the citizenship question." Ex. B at 114:15-21, 273:10-21. Neuman also testified that he did not rely on Dr. Hofeller for "expertise on the Voting Rights Act," and that Dr. Hofeller "did not appear to me to be an adviser to the ... administration at all." *Id.* at 136:9-10, 143:25-144:6. When asked about the "substance" of his conversations with Dr. Hofeller "about the citizenship question" in 2017, he testified that Dr. Hofeller just said, "Mark, you need to make sure that we take a good census, that the administration doesn't skimp on the budget." *Id.* at 138:3-15. Gore, meanwhile, testified that he "drafted the initial draft of the letter to request the citizenship question sometime around the end of October or early November of 2017," and he did not name Neuman or Dr. Hofeller as people who provided "input" on the initial draft. Ex. E at 150:9-151:20; *see id.* at 127:12-17, 343:19-21. All of this testimony appears to be misleading or false.

In a congressional interview *after* the final judgment in this case, Gore disclosed for the first time that, in or around October 2017, Neuman gave Gore "a draft letter that would request reinstatement of the citizenship question on the census questionnaire" (the "Neuman DOJ Letter"). Ex. F at 2-4. Gore said that Neuman gave him this draft letter, which is framed as a

2

request from DOJ to Commerce, after Commerce General Counsel Peter Davidson asked Neuman and Gore to meet. *Id.* While Neuman produced this draft letter in discovery here, Ex. G, neither Neuman nor Gore disclosed that Neuman gave this draft to Gore; Neuman testified that his October 2017 meeting with Gore was *not* about a "letter from DOJ regarding the citizenship question," and that he gave Gore only a different document. Ex. B at 123:20-124:24, 273:10-21.

Nor did Neuman or Gore disclose that Dr. Hofeller ghostwrote a substantial part of the Neuman DOJ Letter setting forth the VRA rationale. *Cf.* Ex. B at 143:25-144:6. Dr. Hofeller's files produced in discovery in the North Carolina case include a Word document containing a paragraph that sets forth the purported VRA enforcement rationale for adding a citizenship question to the 2020 Census. Ex. H. That paragraph was incorporated *verbatim* in the Neuman DOJ Letter that Neuman then delivered to Gore. *Compare* Ex. G, *with* Ex. H. Metadata from the Word file indicates that Dr. Hofeller created this file on August 30, 2017. Thus, we now know that there is a direct line from Dr. Hofeller's advice that adding a citizenship question would advantage Republicans and non-Hispanic whites to the ultimate DOJ letter and its VRA rationale on which Secretary Ross relied: When Commerce officials began scrambling to develop a VRA rationale in August 2017, Dr. Hofeller helped craft the rationale, which was adopted wholesale in the Neuman DOJ Letter. Neuman then gave that draft letter to Gore in October 2017 after Commerce's General Counsel asked them to meet, and Gore ultimately sent his version of the DOJ letter, also incorporating Hofeller's VRA rationale, back to Commerce in December 2017.

3. Gore's testimony that he initially drafted the DOJ letter to Commerce requesting the citizenship question was materially misleading given that the December 2017 DOJ letter was adapted from the Neuman DOJ Letter, including, in particular, Dr. Hofeller's VRA rationale.

But there is more. The content, language, and structure of DOJ's December 2017 letter bears striking similarities to Dr. Hofeller's *2015 study* on the feasibility and impact of using CVAP in redistricting. The two documents contain similar descriptions of the history of a citizenship question on the census and the ACS, and they make the exact same arguments that (a) the "5-year rolling sample" of the ACS does not align in "time" with decennial census data; (b) ACS data is inaccurate for small units of geography, and (c) the smallest unit of geography on the ACS is Census Block Groups, which are larger than the "fundamental" or "basic" "building blocks" for a redistricting plan and therefore "require" jurisdictions to "compute" or "perform" estimates to impute the CVAP of legislative districts. The two documents present these substantially similar descriptions and arguments in the exact same order. The chart attached as Exhibit I shows the similarities in the content, language, and structure of the two documents.

The new evidence demonstrates a direct through-line from Dr. Hofeller's conclusion that adding a citizenship question would advantage Republican and non-Hispanic whites to DOJ's ultimate letter. The new evidence thus not only contradicts testimony in this case, but it shows that those who constructed the VRA rationale knew that adding a citizenship question would not benefit Latino voters, but rather would facilitate significantly reducing their political power.

Exhibit A hereto lists testimony and others representations that the new evidence contradicts. This new evidence merits sanctions or other appropriate relief. Plaintiffs are filing today a separate letter seeking permission to redact certain deposition testimony in this letter and an exhibit because Defendants asserted deliberative-process privilege over that testimony. Plaintiffs will move to lift these redactions because the public has a right to see this testimony.

3

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By:   /s/ John A. Freedman

| | |
|---|---|
| Dale Ho | Andrew Bauer |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 125 Broad St. | 250 West 55th Street |
| New York, NY 10004 | New York, NY 10019-9710 |
| (212) 549-2693 | (212) 836-7669 |
| dho@aclu.org | andrew.bauer@arnoldporter.com |
| | |
| Sarah Brannon[+][**] | John A. Freedman |
| American Civil Liberties Union Foundation | R. Stanton Jones++ |
| 915 15th Street NW | David P. Gersch |
| Washington, DC 20005-2313 | Elisabeth S. Theodore++ |
| 202-675-2337 | Daniel F. Jacobson+ |
| sbrannon@aclu.org | Arnold & Porter Kaye Scholer LLP |
| | 601 Massachusetts Avenue NW |
| Perry M. Grossman | Washington, DC 20001-3743 |
| New York Civil Liberties Union Foundation | (202) 942-5000 |
| 125 Broad St. | john.freedman@arnoldporter.co |
| New York, NY 10004 | |
| (212) 607-3300 601 | |
| pgrossman@nyclu.org | |

+ admitted pro hac vice
++ pro hac vice application forthcoming
** Not admitted in D.C.; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025

4