July 3, 2019

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Notice of filing of transcript in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF).

Dear Judge Furman,

      Plaintiffs write pursuant to this Court's Rule 1.A to provide the Court with the transcript of today's 3:30 p.m. status conference in *Kravitz v. U.S. Dep't of Commerce*, 18-cv-1041 (D. Md.). Ex. 1.

          Respectfully submitted,

          LETITIA JAMES
          *Attorney General of the State of New York*

          By: */s/ Matthew Colangelo*
          Matthew Colangelo, *Chief Counsel for Federal Initiatives*
          Elena Goldstein, *Acting Bureau Chief, Civil Rights Bureau*
          Office of the New York State Attorney General
          28 Liberty Street
          New York, NY 10005
          Phone: (212) 416-6057
          matthew.colangelo@ag.ny.gov

          Attorneys for the *State of New York* Plaintiffs

          ARNOLD & PORTER KAYE SCHOLER LLP
          AMERICAN CIVIL LIBERTIES UNION

          By: */s/ John A. Freedman*

Dale Ho                     Andrew Bauer
American Civil Liberties Union Foundation    Arnold & Porter Kaye Scholer LLP
125 Broad St.                250 West 55th Street
New York, NY 10004          New York, NY 10019-9710
(212) 549-2693              (212) 836-7669
dho@aclu.org              Andrew.Bauer@arnoldporter.com

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

Attorneys for the *NYIC* Plaintiffs

# Exhibit 1

1           UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF MARYLAND

3

ROBYN KRAVITZ, et al.,        )
4                             )
            Plaintiffs,       )
5                             )
        vs.                   )  Case Number:  8:18-cv-01041-GJH
6                             )
UNITED STATES DEPARTMENT      )
7  OF COMMERCE, et al.,       )
                              )
8           Defendants.       )
_____)
9                             )
LA UNION DEL PUEBLO           )
10  ENTERO, et al.,           )
                              )
11          Plaintiffs,       )
                              )
12      vs.                   )  Case Number:  8:18-cv-01570-GJH
                              )
13  UNITED STATES DEPARTMENT  )
OF COMMERCE, et al.,          )
14                            )
            Defendants.       )
15  _____)

16

17      TRANSCRIPT OF PROCEEDINGS - TELEPHONE CONFERENCE
         BEFORE THE HONORABLE GEORGE JARROD HAZEL
18          WEDNESDAY, JULY 3, 2019; 3:30 P.M.
                  GREENBELT, MARYLAND

19

20

21  Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription
22  _____

23

                  CINDY S. DAVIS, RPR
24          FEDERAL OFFICIAL COURT REPORTER
           6500 CHERRYWOOD LANE, SUITE 200
25              GREENBELT, MD  20770

 1  FOR THE KRAVITZ PLAINTIFFS:

 2          Shankar Duraiswamy, Esquire
            Benjamin Duke, Esquire
 3          COVINGTON & BURLING, LLP
            1 City Center
 4          850 Tenth Street, N.W.
            Washington, D.C.  20001
 5

 6  FOR THE LUPE PLAINTIFFS:

 7          Denise Hulett, Esquire
            MALDEF
 8          1016 16th Street, N.W., Suite 100
            Washington, D.C.  20036
 9

10  FOR THE DEFENDANTS:

            Joshua Gardner, Special Counsel
11          Stephen Ehrlich, Special Counsel
            UNITED STATES DEPARTMENT OF JUSTICE
12          Civil Division, Federal Programs Branch
            1100 L Street, N.W.
13          Washington, D.C.  20005

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon.  Who do I have for the

3    LUPE plaintiffs?

4              MS. HULETT:  Denise Hulett.

5              THE COURT:  For the Kravitz plaintiffs?

6              MR. DURAISWAMY:  Shankar Duraiswamy.

7              THE COURT:  And for the Government?

8              MR. DUKE:  And Ben Duke.

9              MR. GARDNER:  For the Government, Josh Gardner and

10   Jody Hunt, Assistant Attorney General for the Civil Division.

11             THE COURT:  Mr. Gardner, I know you're on vacation,

12   and so I hated to interrupt that.

13        Couple things.  One, we do have a court reporter here.

14   It's Ms. Davis, who knows each of your voices well at this

15   point.  She does ask that Mr. Duraiswamy speak slowly, and so

16   I'm sure you all will accommodate that.  She does know each of

17   your voices at this point, so it's probably not necessary to

18   identify yourselves every time you speak.

19        So I guess the reason I wanted to have this call,

20   obviously, we had our call -- I guess it was yesterday; feels

21   like a while ago, but I think it was yesterday -- and then this

22   morning I saw a tweet that got my attention.  I don't know how

23   many federal judges have Twitter accounts, but I happen to be

24   one of them, and I follow the President, and so I saw a tweet

25   that directly contradicted the position that Mr. Gardner had
```

1  shared with me yesterday.

2       I'll say in that regard I had felt somewhat bad about not

3  just immediately accepting Mr. Gardner's representation and

4  sort of taking some measures to try to pin it down.  I think I

5  even indicated yesterday, and I'll indicate again today, that

6  Mr. Gardner and every government attorney who has appeared in

7  this case has been nothing but professional and candid with the

8  Court.  And so my attempts to pin him down yesterday were not

9  sort of any reflection on him or what I think of his candor.

10 But then the tweet that I saw, which I suspect we all know the

11 tweet I'm referring to, then caused me to think I hadn't gone

12 far enough in terms of pinning the Government down on where

13 things stand.

14      So now we have a court reporter here.  I'm going to ask,

15 frankly, the same question I asked yesterday to Mr. Gardner.

16 Is the Government going to continue efforts to place a

17 citizenship question on the 2020 census?

18           MR. GARDNER:  Your Honor, this is Mr. Gardner.  I

19 want to back up just a step and say that I've been with the

20 United States Department of Justice for 16 years, through

21 multiple Administrations, and I've always endeavored to be as

22 candid as possible with the Court.  What I told the Court

23 yesterday was absolutely my best understanding of the state of

24 affairs and, apparently, also the Commerce Department's state

25 of affairs, because you probably saw Secretary Ross issued a

1   statement very similar to what I told the Court.

2        The tweet this morning was the first I had heard of the

3   President's position on this issue, just like the plaintiffs

4   and Your Honor.  I do not have a deeper understanding of what

5   that means at this juncture other than what the President has

6   tweeted.  But, obviously, as you can imagine, I am doing my

7   absolute best to figure out what's going on.

8        I can tell you that I have confirmed that the Census

9   Bureau is continuing with the process of printing the

10   questionnaire without a citizenship question, and that process

11   has not stopped.

12        THE COURT:  All right.  I'll hear from either

13   plaintiffs' counsel.  Mr. Duraiswamy, I'll start with you if

14   you have any comments.

15        MR. DURAISWAMY:  Your Honor, I think it underscores,

16   obviously, the need for a stipulated order, as we talked about

17   yesterday, that makes clear not only that the Government is

18   printing the questionnaire for the 2020 census without a

19   citizenship question but that there will be no further effort

20   to inquire about citizenship status as part of the 2020 census

21   in any manner.  We prepared a draft stipulated order that we're

22   prepared to send to the Government along those lines.

23        I think it also suggests that we may need a further

24   provision of that order that makes clear that the defendants

25   will not communicate to the public anything to the contrary

1  suggesting that the 2020 census is inquiring about citizenship

2  status.  And, further, that they will counter, publicly counter

3  any such misinformation that comes from government officials.

4  So we are working on a stipulated order to that effect.

5      Given Mr. Gardner's own uncertainty, it's not clear to me

6  if the Government is saying we will continue with the process

7  of working out the stipulated order, that they're prepared to

8  move forward with that, or if they're saying that they need to

9  revisit this.

10      THE COURT:  Let me ask before I get Ms. Hulett's

11  perspective.  As to your second point that there should be some

12  requirement that they not say anything to the contrary, what

13  would be the authority, what would be the basis for me to issue

14  that order?  Obviously, if they're willing to stipulate to that

15  in an order they agree to.  But let's assume for the sake of

16  argument that they're not.  What would be the basis for me to

17  order them not to -- and I assume you're including the

18  President of the United States in what you're suggesting -- not

19  to make any statements contrary to the order that they're not

20  going to include the question?

21      MR. DURAISWAMY:  Well, we have included in our

22  complaint, I think both in the Kravitz complaint and in the

23  LUPE complaint, as part of our request for relief not just an

24  injunction but any such relief as is necessary in the interest

25  of justice.  Given the way in which this has developed and

1   given the inconsistent statements that we're hearing from the

2   Justice Department and the Commerce Department, on the one

3   hand, and from the President on the other hand, we think that

4   to effectuate the relief that we've sought, which is an

5   injunction barring the inquiring of citizenship status on the

6   2020 census, this is the kind of relief that's necessary.  And

7   it's appropriate and within the power of the Court.

8           MS. HULETT:  Your Honor, if I may add something.

9   This is Denise Hulett.

10          THE COURT:  Sure.

11          MS. HULETT:  The President's tweet has some of the

12   same effects that the addition of the question would in the

13   first place and some of the same effects on the 18-month battle

14   that was just waged over the citizenship question.  It leaves

15   the immigrant communities to believe that the Government is

16   still after information that could endanger them.  If you add

17   that to the interview that the President did, sharing that his

18   reason for wanting the citizenship question on the form was so

19   that the Government could distinguish between citizens and

20   illegal aliens and how nonsensical that is, it has the effect

21   of leading the public to believe that the Census is not only

22   after that information but is willing to violate some of the

23   provinces of protection that our plaintiff organizations have

24   been trying to reassure communities about.

25         So we strongly believe that we're going to need some

1  affirmative commitment, whether it's through a stipulation or

2  by order of this Court, an affirmative commitment from the

3  Government to counter misinformation wherever in the Government

4  that it comes from, a commitment that they will respond quickly

5  and comprehensively to that kind of misinformation.

6      Today is a good example.  There was no response from the

7  Commerce Department, that I know of, to counteract the position

8  that was expressed either in a tweet or in an interview, and

9  that's going to cause the same kinds of harm and injury and --

10      THE COURT:  Let me -- I'm sorry.  I didn't mean to

11  cut you off.  I apologize.  Go ahead.

12      MS. HULETT:  I was just going to add that if the

13  Government is not prepared at this point to say that they will

14  be negotiating quickly over this, we think that we would have

15  to make a request to reinstate our preliminary injunction

16  motion and to move forward with a scheduling order on discovery

17  because the injury at this point is ongoing.

18      THE COURT:  Let me make a couple of comments, and

19  then I'll turn back to Mr. Gardner to get his thoughts.

20      I assume, although maybe I'm wrong about this, that the

21  parties aren't suggesting I can enjoin the President of the

22  United States from tweeting things.  Maybe you are suggesting

23  that.  But I will say my initial reaction to that is to have

24  some concern.

25      But what I perhaps am taking you to suggest is that there

1    could be an order -- and I'm not saying I agree to this; I'm

2    just trying to tee up the issue for Mr. Gardner to respond --

3    that there could be a mechanism by which I order -- and, again,

4    I'm not saying I'm inclined to do this -- the Census Bureau or

5    the Department of Commerce to take whatever steps are necessary

6    to counteract any such message, which, again, I this is an odd

7    place for the judiciary to be.

8         But I'll at least hear what Mr. Gardner's initial take

9    is, understanding you're still unclear yourself, it seems, on

10   the primary question as to whether or not any of this is going

11   to end up being necessary.  I am at least curious as to your

12   initial response to those secondary suggestions from

13   plaintiffs.

14        MR. GARDNER:  Sure, Your Honor.  To back up, this is

15   a very fluid situation which we are trying to get our arms

16   around and, obviously, once we get more information, we will

17   communicate that immediately to the Court and the parties.

18        I do want to address a preliminary issue though, and that

19   is that the current status quo is that plaintiffs are fully

20   protected.  The Supreme Court vacated the March decision which

21   was the basis for the inclusion of the citizenship question.

22   So that final-agency action has been enjoined, and there is no

23   current additional final-agency action out there to enjoin or

24   to even challenge.

25        I recognize this is a fluid situation and perhaps that

1  might change, but we're just not there yet, and I can't

2  possibly predict at this juncture what exactly is going to

3  happen.  I think the process by which we have been sort of

4  operating for the past week, while it may be inconvenient for

5  the Court, and I apologize about that, is to maintain

6  consistent contact so we can keep updating the Court and the

7  parties as to the state of affairs.

8        But as of now, the basis for the citizenship question is

9  firmly enjoined, vacated, and does not exist.  If there is a

10  different decision in the future, plaintiffs obviously would

11  have every opportunity to file an amended complaint, file a PI

12  or whatever other processes they think are appropriate.  But I

13  think the current fluidity of the state of play suggests the

14  status quo is we need to see how these things develop.

15        And at that juncture, Your Honor, if you have additional

16  questions, I can turn it over to AAG Hunt.

17        MR. HUNT:  Your Honor, this is Joseph Hunt, Assistant

18  Attorney General for the Civil Division.  If I might just add

19  my thoughts to what Mr. Gardner just said.

20        THE COURT:  Sure.

21        MR. HUNT:  We at the Department of Justice have been

22  instructed to examine whether there is a path forward,

23  consistent with the Supreme Court's decision, that would allow

24  us to include the citizenship question on the census.  We think

25  there may be a legally available path under the Supreme Court's

1  decision.  We're examining that, looking at near-term options

2  to see whether that's viable and possible.

3      And so to the extent we can identify an option for that

4  to work, if we continue to examine the decision and believe

5  that we have a viable path forward to that work, our current

6  plan would be to file a motion in the Supreme Court to request

7  instructions on remand to govern further proceedings in order

8  to simplify and expedite the remaining litigation and provide

9  clarity to the process going forward.

10     So as Mr. Gardner said, it's very fluid at present

11 because we are still examining the Supreme Court's decision to

12 see if that option is still available to us.

13         THE COURT:  That's helpful to understand, and I

14 appreciate you adding that.

15     Here's where we are.  And then if either side has a

16 different view, I'll hear that.

17     By Friday at 2 p.m. I want one of two things.  I either

18 want a stipulation, as we've been discussing, indicating that

19 the citizenship question will not appear on the census, or I

20 want a proposed scheduling order for how we're going forward on

21 the equal protection claim that's been remanded to this Court.

22 I want one of those two things by Friday at two o'clock.

23     So I would expect that the parties will have to meet and

24 confer sometime earlier on Friday to determine which of those

25 things you're submitting to me by Friday at two o'clock.  But I

1   want one of those two things by Friday at two o'clock.

2        If, in the case of the scheduling order, the parties are

3   not able to come to an agreement as to what it should look

4   like, you can submit to me competing options, and we'll have a

5   call that afternoon.  I'll be here Friday.  We'll have a call

6   that afternoon where the Court will mike a final decision on

7   how we're proceeding.  But we will, if this is not resolved by

8   Friday at 2 p.m., the equal protection claim in this case is

9   moving forward.

10        Any questions as to that?

11        MR. GARDNER:  Your Honor, this is Mr. Gardner.  The

12  one thing I would request is, given that tomorrow is the Fourth

13  of July and the difficulty in assembling people from all over

14  the place, is it possible that we could do this on Monday?

15        THE COURT:  No.

16        MR. GARDNER:  And again -- okay.

17        THE COURT:  No.  Because timing is an issue.  Timing

18  is an issue, and we've lost a week at this point.  And this

19  isn't anything against anybody on this call.  I've been told

20  different things, and it's becoming increasingly frustrating.

21        If you were Facebook and an attorney for Facebook told me

22  one thing, and then I read a press release from Mark Zuckerberg

23  telling me something else, I would be demanding that Mark

24  Zuckerberg appear in court with you the next time because I

25  would be saying I don't think you speak for your client

 1   anymore.

 2       I think I'm actually being really reasonable here and

 3   just saying I need a final answer by Friday at 2 p.m. or we're

 4   going forward.  That's where we are.  Because we've wasted a

 5   week.  The Fourth Circuit sent this back to me with a promise

 6   from me that I would get it done, the discovery done in 45

 7   days, a hearing, and then a decision, and they sent it back to

 8   me with that promise having been made.  And we've lost seven

 9   days already with the back and forth, which, again, I don't

10   blame anybody on this call for, but that's where we are.

11       So Friday, 2 p.m., we're going forward or we're resolving

12   it.  That's where we are.

13           MR. DUKE:  Your Honor, this is Ben Duke for the

14   Kravitz plaintiffs.  Could we ask what happened to the

15   Government's repeated representations, including to the United

16   States Supreme Court, which the Supreme Court relied on, that

17   June 30th was an absolute deadline and that they needed to have

18   this finalized and to move forward as of that date?  Because

19   what we've now heard from the defendants is that that wasn't

20   true, that they now think that they can even dither over the

21   July 4th weekend and ask for more time to examine this and

22   possibly make a further motion to the Supreme Court for

23   instructions on how to eventually undercut what the Supreme

24   Court has already decided.  It is completely inconsistent with

25   the positions that they've been taking.

1        THE COURT:  I understand that.  I suspect we're not

2   going to get a useful answer to that question, so I'm not sure

3   that I really want to wade into that at this juncture.

4        Any other questions?

5        MR. GARDNER:  Nothing from the Government, Your

6   Honor.

7        THE COURT:  Plaintiffs?

8        MR. DURAISWAMY:  Your Honor, this is Shankar

9   Duraiswamy.  The only thing I would add is that, consistent

10  with Mr. Gardner's prior communications with us, the permanent

11  injunction from this Court remains in effect, the injunction

12  permanently preventing the Government from adding a citizenship

13  question to the 2020 census.  So we agree at least on that

14  point.

15        THE COURT:  And I meant to respond to that.  I made a

16  note and then overlooked it.

17        I don't think there is currently a need to litigate the

18  motion for preliminary injunction because there is at least

19  one, if not more, injunction in place.  So I do agree with

20  that.

21        So I'll look forward to getting something Friday at 2

22  p.m., and then, if necessary, we'll get on the phone after

23  that.

24        (The telephonic conference ended at 3:50 p.m.)

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Cindy S. Davis, Federal Official Court Reporter in and

4    for the United States District Court for the Southern District

5    of Maryland, do hereby certify that I reported, by machine

6    shorthand and computer-aided transcription, in my official

7    capacity the motions hearing proceedings had in the case of

8    Kravitz, et al., versus United States Department of Commerce,

9    et al., case numbers 8:18-cv-01041-GJH and 8:18-cv-01570-GJH,

10   in said court on July 3, 2019.

11         I further certify that the foregoing 14 pages constitute

12   the official transcript of said proceedings, as taken from my

13   electronic notes to the best of my ability.

14         In witness whereof, I have hereto subscribed my name this

15   third day of July 2019.

16

17

18

19

20                    *Cindy S. Davis*

21         _____

22                    CINDY S. DAVIS, RPR
                      FEDERAL OFFICIAL COURT REPORTER

23

24

25