# Exhibit 1

```
                    UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF MARYLAND


ROBYN KRAVITZ, et al.,    )
                          )
         Plaintiffs,      )
                          )
     vs.                  )  Case Number:  8:18-cv-01041-GJH
                          )
UNITED STATES DEPARTMENT  )
OF COMMERCE, et al.,      )
                          )
         Defendants.      )
_____)
                          )
LA UNION DEL PUEBLO       )
ENTERO, et al.,           )
                          )
         Plaintiffs,      )
                          )
     vs.                  )  Case Number:  8:18-cv-01570-GJH
                          )
UNITED STATES DEPARTMENT  )
OF COMMERCE, et al.,      )
                          )
         Defendants.      )
_____)
```

**TRANSCRIPT OF PROCEEDINGS - TELEPHONE CONFERENCE**
**BEFORE THE HONORABLE GEORGE JARROD HAZEL**
**WEDNESDAY, JULY 3, 2019; 3:30 P.M.**
**GREENBELT, MARYLAND**

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

---

**CINDY S. DAVIS, RPR**
FEDERAL OFFICIAL COURT REPORTER
6500 CHERRYWOOD LANE, SUITE 200
GREENBELT, MD  20770

```
 1   FOR THE KRAVITZ PLAINTIFFS:

 2        Shankar Duraiswamy, Esquire
          Benjamin Duke, Esquire
 3        COVINGTON & BURLING, LLP
          1 City Center
 4        850 Tenth Street, N.W.
          Washington, D.C.  20001
 5

 6   FOR THE LUPE PLAINTIFFS:

 7        Denise Hulett, Esquire
          MALDEF
 8        1016 16th Street, N.W., Suite 100
          Washington, D.C.  20036
 9
     FOR THE DEFENDANTS:
10
          Joshua Gardner, Special Counsel
11        Stephen Ehrlich, Special Counsel
          UNITED STATES DEPARTMENT OF JUSTICE
12        Civil Division, Federal Programs Branch
          1100 L Street, N.W.
13        Washington, D.C.  20005

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE COURT: Good afternoon. Who do I have for the LUPE plaintiffs?

MS. HULETT: Denise Hulett.

THE COURT: For the Kravitz plaintiffs?

MR. DURAISWAMY: Shankar Duraiswamy.

THE COURT: And for the Government?

MR. DUKE: And Ben Duke.

MR. GARDNER: For the Government, Josh Gardner and Jody Hunt, Assistant Attorney General for the Civil Division.

THE COURT: Mr. Gardner, I know you're on vacation, and so I hated to interrupt that.

Couple things. One, we do have a court reporter here. It's Ms. Davis, who knows each of your voices well at this point. She does ask that Mr. Duraiswamy speak slowly, and so I'm sure you all will accommodate that. She does know each of your voices at this point, so it's probably not necessary to identify yourselves every time you speak.

So I guess the reason I wanted to have this call, obviously, we had our call -- I guess it was yesterday; feels like a while ago, but I think it was yesterday -- and then this morning I saw a tweet that got my attention. I don't know how many federal judges have Twitter accounts, but I happen to be one of them, and I follow the President, and so I saw a tweet that directly contradicted the position that Mr. Gardner had

shared with me yesterday.

I'll say in that regard I had felt somewhat bad about not just immediately accepting Mr. Gardner's representation and sort of taking some measures to try to pin it down. I think I even indicated yesterday, and I'll indicate again today, that Mr. Gardner and every government attorney who has appeared in this case has been nothing but professional and candid with the Court. And so my attempts to pin him down yesterday were not sort of any reflection on him or what I think of his candor. But then the tweet that I saw, which I suspect we all know the tweet I'm referring to, then caused me to think I hadn't gone far enough in terms of pinning the Government down on where things stand.

So now we have a court reporter here. I'm going to ask, frankly, the same question I asked yesterday to Mr. Gardner. Is the Government going to continue efforts to place a citizenship question on the 2020 census?

MR. GARDNER: Your Honor, this is Mr. Gardner. I want to back up just a step and say that I've been with the United States Department of Justice for 16 years, through multiple Administrations, and I've always endeavored to be as candid as possible with the Court. What I told the Court yesterday was absolutely my best understanding of the state of affairs and, apparently, also the Commerce Department's state of affairs, because you probably saw Secretary Ross issued a

statement very similar to what I told the Court.

The tweet this morning was the first I had heard of the President's position on this issue, just like the plaintiffs and Your Honor.  I do not have a deeper understanding of what that means at this juncture other than what the President has tweeted.  But, obviously, as you can imagine, I am doing my absolute best to figure out what's going on.

I can tell you that I have confirmed that the Census Bureau is continuing with the process of printing the questionnaire without a citizenship question, and that process has not stopped.

THE COURT:  All right.  I'll hear from either plaintiffs' counsel.  Mr. Duraiswamy, I'll start with you if you have any comments.

MR. DURAISWAMY:  Your Honor, I think it underscores, obviously, the need for a stipulated order, as we talked about yesterday, that makes clear not only that the Government is printing the questionnaire for the 2020 census without a citizenship question but that there will be no further effort to inquire about citizenship status as part of the 2020 census in any manner.  We prepared a draft stipulated order that we're prepared to send to the Government along those lines.

I think it also suggests that we may need a further provision of that order that makes clear that the defendants will not communicate to the public anything to the contrary

1  suggesting that the 2020 census is inquiring about citizenship
2  status.  And, further, that they will counter, publicly counter
3  any such misinformation that comes from government officials.
4  So we are working on a stipulated order to that effect.
5      Given Mr. Gardner's own uncertainty, it's not clear to me
6  if the Government is saying we will continue with the process
7  of working out the stipulated order, that they're prepared to
8  move forward with that, or if they're saying that they need to
9  revisit this.
10     THE COURT:  Let me ask before I get Ms. Hulett's
11 perspective.  As to your second point that there should be some
12 requirement that they not say anything to the contrary, what
13 would be the authority, what would be the basis for me to issue
14 that order?  Obviously, if they're willing to stipulate to that
15 in an order they agree to.  But let's assume for the sake of
16 argument that they're not.  What would be the basis for me to
17 order them not to -- and I assume you're including the
18 President of the United States in what you're suggesting -- not
19 to make any statements contrary to the order that they're not
20 going to include the question?
21     MR. DURAISWAMY:  Well, we have included in our
22 complaint, I think both in the Kravitz complaint and in the
23 LUPE complaint, as part of our request for relief not just an
24 injunction but any such relief as is necessary in the interest
25 of justice.  Given the way in which this has developed and

1  given the inconsistent statements that we're hearing from the
2  Justice Department and the Commerce Department, on the one
3  hand, and from the President on the other hand, we think that
4  to effectuate the relief that we've sought, which is an
5  injunction barring the inquiring of citizenship status on the
6  2020 census, this is the kind of relief that's necessary.  And
7  it's appropriate and within the power of the Court.
8           MS. HULETT:  Your Honor, if I may add something.
9  This is Denise Hulett.
10          THE COURT:  Sure.
11          MS. HULETT:  The President's tweet has some of the
12 same effects that the addition of the question would in the
13 first place and some of the same effects on the 18-month battle
14 that was just waged over the citizenship question.  It leaves
15 the immigrant communities to believe that the Government is
16 still after information that could endanger them.  If you add
17 that to the interview that the President did, sharing that his
18 reason for wanting the citizenship question on the form was so
19 that the Government could distinguish between citizens and
20 illegal aliens and how nonsensical that is, it has the effect
21 of leading the public to believe that the Census is not only
22 after that information but is willing to violate some of the
23 provinces of protection that our plaintiff organizations have
24 been trying to reassure communities about.
25          So we strongly believe that we're going to need some

1  affirmative commitment, whether it's through a stipulation or
2  by order of this Court, an affirmative commitment from the
3  Government to counter misinformation wherever in the Government
4  that it comes from, a commitment that they will respond quickly
5  and comprehensively to that kind of misinformation.
6          Today is a good example.  There was no response from the
7  Commerce Department, that I know of, to counteract the position
8  that was expressed either in a tweet or in an interview, and
9  that's going to cause the same kinds of harm and injury and --
10         THE COURT:  Let me -- I'm sorry.  I didn't mean to
11 cut you off.  I apologize.  Go ahead.
12         MS. HULETT:  I was just going to add that if the
13 Government is not prepared at this point to say that they will
14 be negotiating quickly over this, we think that we would have
15 to make a request to reinstate our preliminary injunction
16 motion and to move forward with a scheduling order on discovery
17 because the injury at this point is ongoing.
18         THE COURT:  Let me make a couple of comments, and
19 then I'll turn back to Mr. Gardner to get his thoughts.
20         I assume, although maybe I'm wrong about this, that the
21 parties aren't suggesting I can enjoin the President of the
22 United States from tweeting things.  Maybe you are suggesting
23 that.  But I will say my initial reaction to that is to have
24 some concern.
25         But what I perhaps am taking you to suggest is that there

1   could be an order -- and I'm not saying I agree to this; I'm
2   just trying to tee up the issue for Mr. Gardner to respond --
3   that there could be a mechanism by which I order -- and, again,
4   I'm not saying I'm inclined to do this -- the Census Bureau or
5   the Department of Commerce to take whatever steps are necessary
6   to counteract any such message, which, again, I this is an odd
7   place for the judiciary to be.
8          But I'll at least hear what Mr. Gardner's initial take
9   is, understanding you're still unclear yourself, it seems, on
10  the primary question as to whether or not any of this is going
11  to end up being necessary.  I am at least curious as to your
12  initial response to those secondary suggestions from
13  plaintiffs.
14             MR. GARDNER:  Sure, Your Honor.  To back up, this is
15  a very fluid situation which we are trying to get our arms
16  around and, obviously, once we get more information, we will
17  communicate that immediately to the Court and the parties.
18         I do want to address a preliminary issue though, and that
19  is that the current status quo is that plaintiffs are fully
20  protected.  The Supreme Court vacated the March decision which
21  was the basis for the inclusion of the citizenship question.
22  So that final-agency action has been enjoined, and there is no
23  current additional final-agency action out there to enjoin or
24  to even challenge.
25         I recognize this is a fluid situation and perhaps that

might change, but we're just not there yet, and I can't possibly predict at this juncture what exactly is going to happen. I think the process by which we have been sort of operating for the past week, while it may be inconvenient for the Court, and I apologize about that, is to maintain consistent contact so we can keep updating the Court and the parties as to the state of affairs.

But as of now, the basis for the citizenship question is firmly enjoined, vacated, and does not exist. If there is a different decision in the future, plaintiffs obviously would have every opportunity to file an amended complaint, file a PI or whatever other processes they think are appropriate. But I think the current fluidity of the state of play suggests the status quo is we need to see how these things develop.

And at that juncture, Your Honor, if you have additional questions, I can turn it over to AAG Hunt.

MR. HUNT: Your Honor, this is Joseph Hunt, Assistant Attorney General for the Civil Division. If I might just add my thoughts to what Mr. Gardner just said.

THE COURT: Sure.

MR. HUNT: We at the Department of Justice have been instructed to examine whether there is a path forward, consistent with the Supreme Court's decision, that would allow us to include the citizenship question on the census. We think there may be a legally available path under the Supreme Court's

1  decision.  We're examining that, looking at near-term options
2  to see whether that's viable and possible.
3       And so to the extent we can identify an option for that
4  to work, if we continue to examine the decision and believe
5  that we have a viable path forward to that work, our current
6  plan would be to file a motion in the Supreme Court to request
7  instructions on remand to govern further proceedings in order
8  to simplify and expedite the remaining litigation and provide
9  clarity to the process going forward.
10      So as Mr. Gardner said, it's very fluid at present
11 because we are still examining the Supreme Court's decision to
12 see if that option is still available to us.
13           THE COURT:  That's helpful to understand, and I
14 appreciate you adding that.
15      Here's where we are.  And then if either side has a
16 different view, I'll hear that.
17      By Friday at 2 p.m. I want one of two things.  I either
18 want a stipulation, as we've been discussing, indicating that
19 the citizenship question will not appear on the census, or I
20 want a proposed scheduling order for how we're going forward on
21 the equal protection claim that's been remanded to this Court.
22 I want one of those two things by Friday at two o'clock.
23      So I would expect that the parties will have to meet and
24 confer sometime earlier on Friday to determine which of those
25 things you're submitting to me by Friday at two o'clock.  But I

```
 1  want one of those two things by Friday at two o'clock.
 2          If, in the case of the scheduling order, the parties are
 3  not able to come to an agreement as to what it should look
 4  like, you can submit to me competing options, and we'll have a
 5  call that afternoon.  I'll be here Friday.  We'll have a call
 6  that afternoon where the Court will mike a final decision on
 7  how we're proceeding.  But we will, if this is not resolved by
 8  Friday at 2 p.m., the equal protection claim in this case is
 9  moving forward.
10          Any questions as to that?
11          MR. GARDNER:  Your Honor, this is Mr. Gardner.  The
12  one thing I would request is, given that tomorrow is the Fourth
13  of July and the difficulty in assembling people from all over
14  the place, is it possible that we could do this on Monday?
15          THE COURT:  No.
16          MR. GARDNER:  And again -- okay.
17          THE COURT:  No.  Because timing is an issue.  Timing
18  is an issue, and we've lost a week at this point.  And this
19  isn't anything against anybody on this call.  I've been told
20  different things, and it's becoming increasingly frustrating.
21          If you were Facebook and an attorney for Facebook told me
22  one thing, and then I read a press release from Mark Zuckerberg
23  telling me something else, I would be demanding that Mark
24  Zuckerberg appear in court with you the next time because I
25  would be saying I don't think you speak for your client
```

1  anymore.

2          I think I'm actually being really reasonable here and
3  just saying I need a final answer by Friday at 2 p.m. or we're
4  going forward.  That's where we are.  Because we've wasted a
5  week.  The Fourth Circuit sent this back to me with a promise
6  from me that I would get it done, the discovery done in 45
7  days, a hearing, and then a decision, and they sent it back to
8  me with that promise having been made.  And we've lost seven
9  days already with the back and forth, which, again, I don't
10 blame anybody on this call for, but that's where we are.

11         So Friday, 2 p.m., we're going forward or we're resolving
12 it.  That's where we are.

13              MR. DUKE:  Your Honor, this is Ben Duke for the
14 Kravitz plaintiffs.  Could we ask what happened to the
15 Government's repeated representations, including to the United
16 States Supreme Court, which the Supreme Court relied on, that
17 June 30th was an absolute deadline and that they needed to have
18 this finalized and to move forward as of that date?  Because
19 what we've now heard from the defendants is that that wasn't
20 true, that they now think that they can even dither over the
21 July 4th weekend and ask for more time to examine this and
22 possibly make a further motion to the Supreme Court for
23 instructions on how to eventually undercut what the Supreme
24 Court has already decided.  It is completely inconsistent with
25 the positions that they've been taking.

```
 1            THE COURT:  I understand that.  I suspect we're not
 2   going to get a useful answer to that question, so I'm not sure
 3   that I really want to wade into that at this juncture.
 4         Any other questions?
 5            MR. GARDNER:  Nothing from the Government, Your
 6   Honor.
 7            THE COURT:  Plaintiffs?
 8            MR. DURAISWAMY:  Your Honor, this is Shankar
 9   Duraiswamy.  The only thing I would add is that, consistent
10   with Mr. Gardner's prior communications with us, the permanent
11   injunction from this Court remains in effect, the injunction
12   permanently preventing the Government from adding a citizenship
13   question to the 2020 census.  So we agree at least on that
14   point.
15            THE COURT:  And I meant to respond to that.  I made a
16   note and then overlooked it.
17        I don't think there is currently a need to litigate the
18   motion for preliminary injunction because there is at least
19   one, if not more, injunction in place.  So I do agree with
20   that.
21        So I'll look forward to getting something Friday at 2
22   p.m., and then, if necessary, we'll get on the phone after
23   that.
24            (The telephonic conference ended at 3:50 p.m.)
25
```

1               CERTIFICATE OF OFFICIAL REPORTER

2

3       I, Cindy S. Davis, Federal Official Court Reporter in and

4  for the United States District Court for the Southern District

5  of Maryland, do hereby certify that I reported, by machine

6  shorthand and computer-aided transcription, in my official

7  capacity the motions hearing proceedings had in the case of

8  Kravitz, et al., versus United States Department of Commerce,

9  et al., case numbers 8:18-cv-01041-GJH and 8:18-cv-01570-GJH,

10 in said court on July 3, 2019.

11      I further certify that the foregoing 14 pages constitute

12 the official transcript of said proceedings, as taken from my

13 electronic notes to the best of my ability.

14      In witness whereof, I have hereto subscribed my name this

15 third day of July 2019.

16

17

18

19

20                         *Cindy S. Davis*

21                         _____
                           **CINDY S. DAVIS, RPR**
22                         **FEDERAL OFFICIAL COURT REPORTER**

23

24

25