# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, et al.,

                    Plaintiffs,

      v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

                    Defendants.

18-CV-2921 (JMF)

NEW YORK IMMIGRATION
COALITION, et al.,

    Plaintiffs,

    v.

UNITED STATES DEPARTMENT
OF COMMERCE, et al.,

    Defendants.

18-CV-5025 (JMF)
(Consolidated)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMEND JUDGMENT ON REMAND PURSUANT TO RULE 59(E), OR FOR INJUNCTIVE RELIEF PURSUANT TO THE ALL WRITS ACT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 3

BACKGROUND ......................................................................................................... 5

ARGUMENT ............................................................................................................. 10

    I.     THE DEFENDANTS ARE ESTOPPED FROM VIOLATING THE JUNE 30

          DEADLINE. ................................................................................................ 11

    II.    THIS COURT SHOULD AMEND ITS JUDGMENT UNDER RULE 59(E) .... 18

          a.     This Court Retains Jurisdiction to Amend Its Judgment .......................... 18

          b.     Defendants' Abandonment of the June 30 Deadline Meets Rule 59(e)'s

               Manifest Injustice Requirements. .............................................................. 19

    III.   THE COURT SHOULD EXERCISE AUTHORITY UNDER THE ALL WRITS

          ACT TO PROTECT ITS JURISDICTION. ......................................................... 21

CONCLUSION.......................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashmore v. CGI Grp.*, 923 F.3d 260 (2d Cir. 2019) .....................................................17

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)...................................................10, 18

*Chan v. Reno*, 932 F. Supp. 535 (S.D.N.Y. 1996).........................................................19

*Clark v. All Acquisition, LLC*, 886 F.3d 261 (2d Cir. 2018)........................................16

*Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346 (D. Minn. 1993)..............................................................................................................19

*Dep't of Commerce v. New York*, No. 18-966, 2019 WL 2619473 (U.S. June 27, 2019) ................................................................................................. *passim*

*Epperson v. Entertainment Express, Inc.*, 242 F.3d 100 (2d Cir. 2001)........................18

*Findley v. Laughead (In re Johns Manville Corp.)*, 27 F.3d 48 (2d Cir. 1994) ...........................22

*F.T.C. v. Dean Foods*, 384 U.S. 597 (1966) .................................................................23

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)...........................10, 18

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)......................11

*Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944)................................................18

*In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011) ......................................14

*In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160 (11th Cir. 2011) .........................19

*Intellivision v. Microsoft Corp.*, 484 F. App'x 616 (2d Cir. 2012).........................11, 21

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004)...............................22

*Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999) ..................10

*Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333 (D. Del. 1995)..............19

*Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48 (D.D.C. 2013).........19, 21

*New Hampshire v. Maine*, 532 U.S. 742 (2001).................................................. *passim*

*Pegram v. Herdrich*, 530 U.S. 211 (2000)......................................................................15

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011)........................11, 15, 19, 21

*South Carolina Coastal Conservation League v. Ross*, No. 18-cv-3326, 2019 WL 259116 (D.S.C. Jan. 18, 2019)................................................................................23

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977)......................................................22

## Rules & Statutes

28 U.S.C. § 1651..................................................................................... *passim*

Fed. R. Civ. P. 59(e) ................................................................................. *passim*

## Other Authorities

36 Corpus Juris Secundum § 28 (2019).........................................................................22

## INTRODUCTION

After more than a full year of representing—to this Court, and other federal courts including the Supreme Court—that census questionnaires needed to be finalized by June 30, 2019, and that no changes to the forms can be made after that date, Defendants have now reversed themselves, indicating on July 3 they are "performing . . . analyses . . . to include the citizenship question on the 2020 Decennial Census."  Docket No. 613.  In addition to deceiving the judiciary and the public and putting the success of the 2020 Census in jeopardy, Defendants' efforts to prolong uncertainty and drag out this matter are sowing confusion and exacerbating fear among immigrant communities, and directly injuring the Plaintiffs' efforts to mobilize participation in the Census.  As Defendants have acknowledged, this uncertainty comes by direct order of the President, who made clear on July 1 his intent to weaponize the census as a mechanism "to find out if somebody is a citizen as opposed to an illegal."  The White House, Remarks by President Trump at Signing of H.R. 3041 (July 1, 2019), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-h-r-3401/.[1] As Plaintiffs warned at the outset of this case, "the longer Defendants' decision to add a citizenship question on the 2020 Census stands, the more challenging it will be to conduct meaningful outreach in these communities to counteract this deterrent effect and resulting harms."  Docket No. 103 at 5.

---

[1] These statements come in the course of a series of high profile anti-Latino immigrant initiatives, including threatening mass deportation of "millions of illegal aliens" and promotion of inhumane conditions in detention camps.  Donald Trump (@realdonaldtrump), Twitter (June 17, 2019, 9:20pm), https://twitter.com/realDonaldTrump/status/1140791400658870274; *see* Donald Trump (@realdonaldtrump), Twitter (July 2, 10:33pm) ("If Illegal Immigrants are unhappy with the conditions in the quickly built or refitted detention centers, just tell them not to come.  All problems solved!"), https://twitter.com/realDonaldTrump/status/1146514575048790019.

The Defendants used the June 30 deadline to argue successfully to this Court, the Second Circuit, and the Supreme Court to expedite the matter.  These actions prejudiced Plaintiffs by condensing the time to litigate the case—which, among other harms, required Plaintiffs to forego discovery they firmly believed would support their claims for relief, including under the Fifth Amendment's equal protection guarantee.  *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 671 (S.D.N.Y. 2019) (noting that "Plaintiffs could have carried their burden [to show discriminatory purpose] had they had access to sworn testimony from Secretary Ross himself, . . . [b]ut Plaintiffs were denied the opportunity to depose Secretary Ross because the Supreme Court stayed this Court's Order authorizing such a deposition . . . [and] [i]n light of the urgency of these proceedings, Plaintiffs decided to press ahead to trial rather than waiting to see if the Supreme Court eventually lifts the stay.").  The Defendants then used the pressure of the expedited schedule in tandem with dilatory and obstructionist discovery tactics to conceal material evidence about the origin and true purpose of the citizenship question from coming to light.[2]  Defendants invoked the June 2019 deadline to bypass standard appellate review. Defendants cited the June 2019 deadline as an exigent circumstance in demanding condensed briefing and argument schedules before the Supreme Court.  Defendants also cited the June 2019 deadline in urging the Supreme Court to consider the Enumeration Clause issue, notwithstanding Plaintiffs' decision not to appeal the judgment on that claim.

In light of the pattern of representations about the June 30 deadline, Defendants should be estopped from arguing that they have more time to add a question.  In order to prevent manifest injustice, before remanding the case to the Department of Commerce, this Court should amend

---

[2] As ordered by the Court, these matters will be discussed in the NYIC Plaintiffs' forthcoming Motion for Sanctions.  Docket No. 605.

its judgment under Rule 59(e) to prohibit Defendants from modifying the 2020 Decennial

Census questionnaire now that their June 30 deadline has passed, and order any other relief the

Court believes is appropriate.  In the alternative, the Court should exercise its authority under the

All Writs Act, 28 U.S.C. § 1651 to protect its jurisdiction by enjoining Defendants from taking

any steps that would contravene this Court's January 15, 2019 judgment.  Docket No. 575.

Defendants are now apparently attempting to contrive some new rationale for adding a

citizenship question to the 2020 Decennial Census, *see* Docket No. 613; *see also Kravitz v. U.S.

Dep't of Commerce*, No. 18-cv-1041, Docket No. 187, at 2–3 (D. Md.), despite repeatedly

assuring this Court for over a year that enforcing the Voting Rights Act was the sole purpose of

the question.  *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 569–72.

(S.D.N.Y. 2019).  If Defendants take some new final agency action adding a citizenship

question, Plaintiffs anticipate challenging such action on any number of fronts.   But the exercise

in which Defendants are now engaging is pointless because their prior representations to federal

judiciary preclude them from now adding a citizenship question whatever the rationale and

whatever the procedural mechanism.  This Court should simply hold now that Defendants are

permanently enjoined from adding the question based on their prior representations to this court

and others.

## BACKGROUND

From the inception of this litigation, Defendants represented to this Court that this case

required "expeditious resolution" and the Census Bureau must "begin printing the 2020 census

questionnaire" by June 2019.  *See, e.g.*, Docket No. 103; Docket No. 540 at 3.  The Court

repeatedly asked Defendants about the timing.  The Court expressly relied on Defendants'

representations about the deadline in setting aggressive discovery, trial, and briefing schedules.

5

As the Court held in its decision, "time is of the essence because the Census Bureau needs to finalize the 2020 questionnaire by June of this year."  *New York*, 351 F. Supp. 3d at 517; *see also id.* at 626–27 ("According to Defendants themselves, the Census Bureau 'need[s] to begin printing the 2020 census questionnaire' in June 2019").

Defendants continued to emphasize the importance of the June deadline in appellate proceedings.  In its request that the Supreme Court grant certiorari before judgment (*i.e.*, grant certiorari before the Second Circuit could consider the appeal), the Defendants wrote that "the Census Bureau must finalize the census forms by the end of June 2019 to print them on time for the 2020 decennial census."  Pet. For a Writ of Certiorari Before Judgment, No. 18-966 (U.S. Jan. 25, 2019) at 28; *see also id.* at 13–14 ("the government must finalize the decennial census questionnaire for printing by the end of June 2019"), 16 ("the June 2019 deadline for finalizing the census form").  On the same day, in requesting that the Supreme Court expedite consideration of its petition, the Defendants similarly represented that "the census forms must be finalized for printing by the end of June 2019."  Petitioners' Mot. for Expedited Consideration of the Petition for a Writ of Certiorari Before Judgment and for Expedited Merits Briefing and Oral Argument, No. 18-966 (U.S. Jan. 25, 2019) at 5; *see also id.* at 4 ("the questions presented must be resolved before the endo of June 2019, so that the decennial census questionnaires can be printed on time").  At Defendants' urging, the Supreme Court granted expedited consideration and granted certiorari before judgment, cutting Plaintiffs' standard time to file an opposition. Order, No. 18-966, (U.S. Feb. 15, 2019).

After the Defendants submitted their Supreme Court merits brief, Defendants urged the Supreme Court to add a question presented to address the Northern District of California's finding that adding a citizenship question violated the Enumeration Clause, again emphasizing

the "June 2019 deadline to finalize the decennial census questionnaire."  Ltr. from Solicitor

General to Scott S. Harris, No. 18-966 (U.S. March 11, 2019), at 1.  The Supreme Court granted

this request and ordered Plaintiffs to address the Enumeration Clause in their briefs.  Order, No.

18-966 (U.S. March 15, 2019).

   While the matter was pending with the Supreme Court, Defendants again emphasized the

June 30 deadline – writing as recently as June 20 that it agreed with this Court that "the Census

Bureau needs to finalize the 2020 questionnaire by June of this year."  Pet. Opp. to NYIC

Respondents' Mot, for Limited Remand, No. 18-966 (U.S. June 20, 2019), at 19.   Five days

later, the Defendants told the Supreme Court that "the Census Bureau needs to finalize the 2020

questionnaire by June of this year," and any changes after June "would impair the Census

Bureau's ability to timely administer the 2020 census."  Ltr. from Solicitor General to Scott S.

Harris, No. 18-966 (U.S. June 25, 2019), at 1 (internal quotation marks and citation omitted).

   On June 27, the Supreme Court issued its decision in this case, affirming in part and

reversing in part.  *See generally Dep't of Commerce v. New York*, No. 18-966, 2019 WL

2619473 (U.S. June 27, 2019).  In its decision, in observing it had granted Defendants' petition

for certiorari before judgment, the Court adopted Defendants' representation that the "census

questionnaire needed to be finalized for printing by the end of June 2019."  *Id.* at *7.  In

affirming this Court's judgment that Secretary Ross's decision to add a citizenship question must

be set aside and remanded because it rested on a pretextual basis, the Supreme Court found that

his "sole stated reason—seems to have been contrived."  *Id.* at *16.  Based on this finding, the

Supreme Court affirmed this Court's vacatur and remanded.  *Id.*

   On June 27, in the hours following the decision, Defendants informed Plaintiffs in the

Maryland action (*Kravitz v. U.S. Dep't of Commerce*, No. 18-cv-1041 (D. Md.)), of their "view

[] that the injunctions in both New York and this case are still in place, and we have no plans to challenge them or seek to have them vacated."  Docket No. 610-1.  Following this representation, however, President Trump made at least three statements suggesting that he had ordered Defendants to look into adding the question, including delaying the census.[3]

Plaintiffs contacted Defendants on July 1 to confirm that, as they had previously represented to this Court, they had finalized the Census on June 30 without the citizenship question.  Docket No. 610-3, at 2.  On the afternoon of July 2, Defendants responded that they "can confirm that the decision has been made to print the 2020 Decennial Census questionnaire without a citizenship question, and that the printer has been instructed to begin the printing process."  Docket No. 610-3, at 1.  Later that day, Secretary Ross issued a statement affirming that the "Census Bureau has started the process of printing the decennial questionnaires without the question" and that his "focus . . . is to conduct a complete and accurate census."  Gregg Re, DOJ says citizenship question being dropped from 2020 Census: NY attorney general's office,

---

[3] *See* Donald Trump (@realdonaldtrump), Twitter (June 27, 2019, 1:37pm) ("Seems totally ridiculous that our government, and indeed Country, cannot ask a basic question of Citizenship in a very expensive, detailed and important Census, in this case for 2020. I have asked the lawyers if they can delay the Census, no matter how long . . . .") https://twitter.com/realDonaldTrump/status/1144298731887628288; Twitter (July 2, 10:33pm) ("A very sad time for America when the Supreme Court of the United States won't allow a question of "Is this person a Citizen of the United States?" to be asked on the #2020 Census! Going on for a long time. I have asked the Department of Commerce and the Department of Justice [ . . .] to do whatever is necessary to bring this most vital of questions, and this very important case, to a successful conclusion. USA! USA! USA!!"). https://twitter.com/realDonaldTrump/status/1146245460035850241; The White House, Remarks by President Trump at Signing of H.R. 3041 (July 1, 2019) ("Q Will you be delaying the census for the Supreme Court ruling on the census question? THE PRESIDENT:  Yeah, we're looking at that.").

FOX News (July 2, 2019), https://www.foxnews.com/politics/doj-says-citizenship-question-being-dropped-from-2020-census-ny-attorney-generals-office.

On July 3 at 11:06 am, President Trump tweeted that "[n]ews Reports about the Department of Commerce dropping its quest to put the Citizenship Question on the Census is incorrect or, to state it differently, FAKE! We are absolutely moving forward, as we must, because of the importance of the answer to this question."[4]

In the wake of this remarkable statement, this Court and Judge Hazel ordered Defendants to explain their position.  Docket No. 611.  In a telephonic conference in the *Kravitz* case on the afternoon of July 3, counsel for Defendants represented as follows:

> We at the Department of Justice have been instructed to examine whether there is a path forward, consistent with the Supreme Court's decision, that would allow us to include the citizenship question on the census. We think there may be a legally available path under the Supreme Court's decision. We're examining that, looking at near-term options to see whether that's viable and possible.
>
> And so to the extent we can identify an option for that to work, if we continue to examine the decision and believe that we have a viable path forward to that work, our current plan would be to file a motion in the Supreme Court to request instructions on remand to govern further proceedings in order to simplify and expedite the remaining litigation and provide clarity to the process going forward.
>
> So as Mr. Gardner said, it's very fluid at present because we are still examining the Supreme Court's decision to see if that option is still available to us.

Docket No. 612-1 at 10-11. Later that day, the Defendants reported that they:

> have now been asked to reevaluate all available options following the Supreme Court's decision and whether the Supreme Court's decision would allow for a new decision to include the citizenship question on the 2020 Decennial Census. The agencies are currently performing the analysis requested. . . .  In the event that the Commerce Department adopts a new rationale for including the

---

[4] See Donald Trump (@realdonaldtrump), Twitter (July 3, 2019, 11:06am), https://twitter.com/realDonaldTrump/status/1146435093491277824.

> citizenship question on the 2020 Decennial Census consistent with the decision of
> the Supreme Court, the Government will immediately notify this Court. . . .

Docket No. 613.  In neither of their July 3 statements did Defendants acknowledge or otherwise

address the June 30 deadline.

## ARGUMENT

The Court should apply the doctrine of judicial estoppel to hold Defendants accountable

for their repeated and unequivocal representations that the Census Bureau must finalize the 2020

Census questionnaire by the end of June 30, 2019, and to prohibit Defendants from concocting a

new basis to add a citizenship question to this Decennial Census.  Defendants' perpetuation of

uncertainty over the status of the questionnaire is unacceptable: by their own admission, this

delay is imperiling the Defendants' ability to conduct the 2020 census.  Moreover, this

uncertainty (which is being perpetuated in tandem with a torrent of anti-immigrant rhetoric from

the administration) is harming Plaintiffs by frustrating their efforts to promote participation in

the 2020 census.  Such outrageous conduct must stop.

Under its inherent authority to "manage [its] own affairs so as to achieve the orderly and

expeditious disposition of cases," *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186

(2017), as well to ensure candor to the tribunal, the Court has many mechanisms available to stop

misconduct by litigants.  *See Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991)*; see also Klein*

*v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999) (referring to judicial

estoppel as "one arrow in the quiver of sanctions at a court's disposal," each of which are

designed to "protect the integrity of the court's processes")*.*  One such mechanism is to amend

the judgment under Rule 59(e) to make clear that, consistent with the Defendants' repeated

representations about the deadline, the 2020 census questionnaire was finalized on June 30,

2019, and that no further changes made be made after that date.  Another is to grant injunctive relief under the All Writs Act, 28 U.S.C. § 1651.

## I.     THE DEFENDANTS ARE ESTOPPED FROM VIOLATING THE JUNE 30 DEADLINE.

The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).  Judicial estoppel "is primarily concerned with protecting the judicial process," *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011), and thus is "designed to prevent improper use of judicial machinery" and may be "invoked by a court at its discretion," *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (quotation marks omitted).  Among other things, the doctrine "bar[s] the assertion of inconsistent positions in the same litigation . . ." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).

Judicial estoppel applies where: (1) the party's position is "clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage . . . if not estopped." *New Hampshire*, 532 U.S. at 750–51 (internal quotation marks omitted).  All three factors apply here with force.

*First*, for over a year, Defendants steadfastly and "repeatedly explained" to this Court (and many others) that "the Census Bureau needs to finalize the 2020 questionnaire by June of this year," and any changes after June "would impair the Census Bureau's ability to timely administer the 2020 census." *See, e.g.*, Ltr. from Solicitor General to Scott S. Harris, No. 18-966 (U.S. June 25, 2019), at 1.  Defendants pressed that position to this Court, the U.S. District Court

11

for the District of Maryland, the Second Circuit, the Fourth Circuit, and Supreme Court

consistently and unequivocally.

From the earliest stages of this case, the Defendants repeatedly emphasized that time was

of the essence.  They expressly represented to this Court that the Census Bureau must "begin

printing the 2020 census questionnaire" by June 2019.  Docket No. 540 at 3.  This Court relied

on such representations in setting schedules, and in the decision.  *See, e.g.*, *New York*, 351 F.

Supp. 3d. at 517 ("time is of the essence because the Census Bureau needs to finalize the 2020

questionnaire by June of this year"); *see also id.* at 626–627 ("According to Defendants

themselves, the Census Bureau "need[s] to begin printing the 2020 census questionnaire" in June

2019.").

Defendants also repeatedly asserted this deadline to the Supreme Court in seeking

expedited review of this Court's decision, shortening Plaintiffs' briefing time, adding an

additional issue for the Supreme Court to review, and opposing remand (as recently as two

weeks ago):

- "**The government must finalize the census questionnaire by the end of June 2019** to enable it to be printed on time." Petitioners' Response to Respondents' Motion to Dismiss the Petition as Improvidently Granted, *Dep't of Commerce v. U.S. Dist. Ct. for S. Dist. of N.Y.*, No. 18-557, at 15 (U.S. Jan. 22, 2019); *see also id.* at 18 ("in light of the district court's entry of final judgment and the need to resolve the form of the census questionnaire by the end of June 2019, it no longer makes sense to have parallel proceedings in this Court and the lower courts.").

- "The district court also correctly recognized that 'time is of the essence' because **the government must finalize the decennial census questionnaire for printing by the end of June 2019** *(citation omitted).*"  Pet. For a Writ of Certiorari Before Judgment, *Dep't of Commerce v. State of N.Y.*, 18-966 (U.S. Jan. 25, 2019) at 13-14.

- "[T]he Census Bureau **must finalize the census forms by the end of June 2019** to print them on time for the 2020 decennial census." *Id.* at 28.

- "Expedited consideration of the government's petition for a writ of certiorari before judgment is warranted because . . . **the questions presented must be resolved before the end of June 2019**, so that the decennial census questionnaires can be printed on time for the 2020 census" Petitioners' Mot. for Expedited Consideration of the Petition for a Writ of Certiorari Before Judgment and for Expedited Merits Briefing and Oral Argument, *Dep't of Commerce v. State of N.Y.*, No. 18-966 (U.S. Jan. 25, 2019) at 5.

- "[B]ecause **the census forms must be finalized for printing by the end of June 2019**, there is unlikely to be sufficient time to obtain full review of the district court's judgment both in the court of appeals and in this Court by that deadline. Accordingly, certiorari before judgment is, as a practical matter, the only way to protect-this Court's plenary review of the district court's rulings." *Id.* at 4.

- "[T]he ordinary briefing schedules prescribed by Rules 15 and 25 of this Court would not allow the case to be considered and decided this Term—as it must be to resolve the questions presented before **the June 2019 deadline**. Accordingly, the government respectfully requests that the Court order expedited briefing." *Id.* at 5.

- "In light of **the June 2019 deadline to finalize the decennial census questionnaire**, we respectfully suggest that the most orderly path forward would be for this Court to hold the forthcoming California petition and address the Enumeration Clause claim in its disposition of this case." Ltr. from Solicitor General to Scott S. Harris, *Dep't of Commerce v. State of N.Y.*, No. 18-966 (U.S. March 11, 2019), at 1.

- "The district court thus correctly found that for all practical purposes, 'the Census Bureau **needs to finalize the 2020 questionnaire by June** of this year.'" Defs.' Opp. to Pls.' Mot. for Remand, *Dep't of Commerce v. State of N.Y.*, No. 18-966 (U.S. June 20, 2019), at 19.

- "As the government has repeatedly explained, the Census Bureau needs to finalize the 2020 questionnaire by June of this year, and **changes to the paper questionnaire after June of 2019 * * * would impair the Census Bureau's ability to timely administer the 2020 census**," Ltr. from Solicitor General to Scott S. Harris, *Dep't of Commerce v. State of N.Y.*, No. 18-966 (U.S. June 25, 2019), at 1 (internal citations & quotation marks omitted).[5]

---

[5] Defendants made similar representations to other courts in recent weeks, often to stave off attempts at discovery concerning newly disclosed evidence or to evade a more fulsome review of the record by additional courts:

- "In light of **the June 2019 deadline for the finalizing the census questionnaire**, the government petitioned for certiorari before judgment from the district court's decision

13

Those inflexible factual assertions "cannot be reconciled" with the position Defendants now take. *See In re Adelphia Recovery Trust*, 634 F.3d 678, 698 (2d Cir. 2011). Contending on July 3 that they have the ability to "develop a new rationale" and can "perform[] analysis . . . to include the citizenship question on the 2020 Decennial Census," Docket No. 613, is directly contradictory and clearly inconsistent with the Defendants' repeated and inflexible insistence that the questionnaire had to be finalized by June 30, 2019.

*Second*, Defendants plainly "succeeded in persuading" the courts to accept that the June 30 deadline was an unbreakable deadline. *New Hampshire*, 532 U.S. at 750. Citing the Defendants' representations, this Court held that "time is of the essence because the Census Bureau needs to finalize the 2020 questionnaire by June of this year." Docket No. 574 at 10; *see also id.* at 191 ("According to Defendants themselves, the Census Bureau 'need[s] to begin printing the 2020 census questionnaire' in June 2019.") (citing Docket No. 540, at 3). In doing so, Defendants pushed this Court to advance this litigation at breakneck pace, prejudicing Plaintiffs' ability to conduct all necessary discovery, including but not limited to abandoning the

---

shortly after it was issued and also moved the Supreme Court to expedite briefing and oral argument." Br. for Defs., *La Union Del Pueblo Entero v. Ross*, No. 19-1425, at 10 (4th Cir. June 19, 2019);

- "[Plaintiffs' request for relief] is unfair both on its own terms and because it would effectively foreclose Defendants from appealing this Court's ruling before **the June 30, 2019 deadline for finalizing census questionnaires**." Defs.' Opp. to Pls.' Rule 60(b)(2) Mot., *Kravitz v. Dep't of Commerce*, No. 8:18-cv-1041-GJH, Docket No. 166 (D. Md.) at 4.

- "Accordingly, holding this petition pending resolution of No. 18-966 and disposing of it as appropriate thereafter would be the most efficient way to definitively resolve the important issues in this case by **the June 2019 deadline for finalizing the 2020 decennial census questionnaires**." Pet. for Cert. before Judgment, *Ross v. California*, No. 18-1214, at 11 (U.S. Mar. 18, 2019).

14

appeal of this Court's order compelling the deposition of Secretary Ross. *New York*, 351 F. Supp. 3d at 671.

Similarly, the Supreme Court repeatedly granted Defendants the relief they sought – including granting certiorari before judgment, compressing Plaintiffs' briefing schedule, and ordering the Enumeration Clause question be addressed, expressly because the Defendants emphasized the June 30 deadline. As the Supreme Court wrote, it took the rare step of granting review before judgment because Defendants not only presented "an issue of imperative public importance," but also represented that "*the census questionnaire needed to be finalized for printing by the end of June 2019*." *Dep't of Commerce*, 2019 WL 2619473, at *7 (emphasis added).

Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). That alone prevents Defendants from now asserting that they may continue to modify the questionnaire.

Judicial estoppel also forecloses a party from "asserting a 'factual position clearly inconsistent' with a position . . . 'adopted by the [district] court in some manner.'" *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997)). The numerous ways in which Defendants' professed urgency shaped the litigation before this Court can hardly be overstated. As will be discussed in the NYIC Plaintiffs' forthcoming motion for sanctions, it is now apparent that Defendants, for tactical advantage, pressed an expedited schedule while engaging in dilatory and obstructionist discovery tactics to conceal damning evidence that the purpose of adding the citizenship question was not to promote voting rights, but to harm Latino communities. But beyond these issues, this

15

Court repeatedly operated on Defendants' assertion that "time was of the essence" in holding

Plaintiffs to strict deadlines.  *See, e.g.*, Docket No. 345, at 12 ("[T]he October 12, 2018 discovery

deadline is rapidly approaching and Defendants themselves have acknowledged that time is of

the essence"); Docket No. 405, at 13 ("It would be hard enough for that normally lengthy process

to run its course by next May or June—when the census questionnaires are apparently scheduled

to be printed"); *New York*, 351 F. Supp. 3d at 517 (the Court considered it "critical to make a

comprehensive record," in part, because "time is of the essence because the Census Bureau needs

to finalize the 2020 questionnaire by June of this year"); *id.* at 627 (concluding "dismissing the

case as unripe . . . would almost certainly preclude Plaintiffs from obtaining a final ruling on

their claims" due to June 2019 print deadline); *id.* at 675 (noting Plaintiffs' request for vacatur

without remand "has some merit, if only because . . . it is doubtful that Defendants could cure the

[identified] problems [] by June").

    *Third*, Defendants would derive an unfair advantage from being allowed to change their

position now under "the particular factual circumstances of [this] case."  *Clark v. All Acquisition,*

*LLC*, 886 F.3d 261, 268 (2d Cir. 2018) (quoting *New Hampshire*, 532 U.S. at 751).  Defendants

litigated this case asserting a single rationale for the addition of a citizenship question – that it

was "necessary to provide a complete and accurate data in response to the DOJ request . . . to

provide census block level citizenship voting age population" to promote "more effective

enforcement" of the Voting Rights Act.  Docket No. 173 at 1313 (Mem. from Wilbur Ross to

Karen Dunn Kelley (March 26, 2018)).   In affirming this Court's injunction, the Supreme Court

has now ruled that reason was a "contrived" pretext.  *Dep't of Commerce*, 2019 WL 2619473, at

*14–*17.  Following this Court's January 15, 2019 decision, Defendants certainly could have

complied with the Court's order, accepted the remand, and determined whether there was any

other basis to support the question.  Why the Defendants failed to do so may not be clear, but it is a question only they can answer.

What is clear is that Defendants are out of time for a "do over."  Defendants' "heads I win, tails we'll see" approach undermines confidence in both their ability to conduct the 2020 Census and public confidence in the courts and the rule of law.  This is the core purpose of judicial estoppel: "because the doctrine is primarily concerned with protecting the judicial process, relief is granted . . . when the risk of inconsistent results with its impact on judicial integrity is certain."  *Ashmore v. CGI Grp.*, 923 F.3d 260, 272 (2d Cir. 2019).

Indeed, it would be an utter abuse of "the judicial machinery" and an affront "the integrity of the judicial process" for Defendants to be permitted to go back on their prior representations to numerous federal courts regarding the deadline for finalizing the Census.  *New Hampshire*, 532 U.S. at 749–50 (internal quotation marks omitted).  Despite their previous representations as to the immutable nature of the June 30 deadline, Defendants may now claim that they have conjured up exceptional resources that could facilitate fresh changes to the census questionnaire moving forward.  If so, it makes no difference if their prior representations as to the June 30 deadline were simply untrue at the time, or whether Defendants failed to conduct adequate diligence before making such unequivocal statements—this Court and others relied on Defendants' assertions, and Defendants cannot be permitted to suddenly reverse course now.  If any ordinary litigant engaged in such conduct, sanctions would be the minimum relief provided.  And Defendants are no ordinary litigants.  They are agencies of the United States Government represented by the United States Department of Justice.  The public interest demands that they act with the upmost integrity and be held to the highest of standards.  The Supreme Court found that Defendants misled Congress and the American public regarding their reasons for adding the

17

citizenship question, and it now appears they are saying that they misled the courts as well.
Enough is enough.

As Defendants repeatedly emphasized, there is a strong public interest in this case being
over.  To conclude otherwise would allow Defendants to further sow confusion among
immigrant communities and the public.  Plaintiffs need to turn their energy and attention to
mobilizing participation in the Census.  As the Supreme Court held, it is time to end the
"distraction."  *Dep't of Commerce*, 2019 WL 2619473, at *16.

## II.   THIS COURT SHOULD AMEND ITS JUDGMENT UNDER RULE 59(E)

### a.  This Court Retains Jurisdiction to Amend Its Judgment

As Defendants have recognized, this Court's injunction "remains in place to protect the
interests of Plaintiffs in this matter."  Docket No. 613, at 1.  This Court has inherent authority to
"manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."
*Haeger*, 137 S.Ct. at 1186.  This includes a "federal court's inherent power to enforce its
judgments."  *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 105 (2d Cir. 2001) (citing
*Peacock v. Thomas*, 516 U.S. 349, 354 (1996)).  "It has long been understood that certain
implied powers must necessarily result to our Courts of justice from the nature of their institution
. . . Courts of justice are universally acknowledged to be vested, by their very creation, with
power to impose . . . submission to their lawful mandates."  *Chambers*, 501 U.S. at 43 (internal
citations, quotation marks, and brackets omitted).  "In cases where courts have exercised the
power, the relief granted has taken several forms [including] altering the terms of the judgment."
*Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238 (1944), overruled in part on other grounds,
*Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18–19 & n.2 (1976) (per curiam).
Accordingly, this Court has jurisdiction to alter its judgment under Rule 59(e).

18

### b.  Defendants' Abandonment of the June 30 Deadline Meets Rule 59(e)'s Manifest Injustice Requirements.

Rule 59(e) allows a court to alter or amend judgment based on "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation & internal quotation marks omitted).   The component that applies here, manifest injustice, requires showing:  "(1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015). While a court "must balance the policy of hearing a claim on the merits against the desire to achieve finality of judgment," here, granting relief furthers *both* policy interests. *Chan v. Reno*, 932 F. Supp. 535, 539 (S.D.N.Y. 1996).

Courts have repeatedly found manifest justice in situations where, as here, "'improper actions of counsel have affected the outcome of the case.'" *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346, 1347–48 (D. Minn. 1993) (quoting *Adams v. James*, 526 F. Supp. 80, 86 (M.D. Ala. 1981)); *see also Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1378 (D. Del. 1995) (granting Rule 59(e) motion to increase damages based on "manifest injustice" when Defendants' representations produced inaccurate calculations that the court relied upon).   Similarly, courts have amended judgment based on estoppel principles in preparation for a remand.  *See, e.g.*, *In re MDL-1824 Tri-State Water Rights Litig.*, 644 F.3d 1160, 1202 (11th Cir. 2011) (affirming in part district court's application of collateral estoppel principles in guiding its remand to agency).

19

Here, amendment of the Court's judgment is necessary and proper to prevent the manifest injustice of allowing Defendants to continue "to reevaluate . . . options" or to "perform[] analysis" "to include the citizenship question on the 2020 Decennial Census."  Docket No. 613.

*First*, if accepted, Defendants' new position that they can change the questionnaire after the June 30 deadline significantly prejudices Plaintiffs.  As explained above, both Plaintiffs and this Court agreed to an extremely accelerated schedule in this case, forgoing review by the Second Circuit altogether, in order to accommodate the need for Census Bureau to finalize the questionnaire by the end of June 2019.  After Defendants succeeded in convincing both this Court and the Supreme Court to expedite this matter and that vacatur and remand of this decision was necessary, Defendants now seek to reap the benefits of their pretext by attempting to conjure an entirely new reason to add the question.

As this Court found and as the Supreme Court affirmed, Plaintiffs would suffer discernable and serious injuries should a citizenship question go forward.  *See Dep't of Commerce*, 2019 WL 2619473, at *7.  The Supreme Court's recognition that the census questionnaire must be finalized by June 30, 2019, relieved Plaintiffs of many of their injuries, because the forms have been finalized and are now being printed without a citizenship question. Allowing Defendants to contradict their previous position and attempt to add a citizenship question on the 2020 questionnaire would thus re-impose those substantial injuries on Plaintiffs, to their prejudice.

*Second*, the Defendants' efforts to foster confusion and uncertainty about the final form of the question are directly injuring the Plaintiffs' efforts to mobilize participation in the Census. As this Court held already, the government's efforts to add a citizenship question to the 2020 decennial census have already injured the NGO Plaintiffs in this case because they have been

required to divert "precious resources." "The NGO Plaintiffs — NYIC, MRNY, ADC/ADCRI, and CASA — have already diverted significant resources from their organizational missions and other priorities to address the effects of a citizenship question. Each of the NGO Plaintiffs is deeply committed to a laudable mission of increasing political participation, promoting civic engagement, and advancing the interests of immigrant communities, especially immigrant communities of color." 351 F. Supp. 3d at 600.

*Third*, allowing Defendants to proceed on remand to attempt to add a citizenship question to the 2020 Decennial Census questionnaire would be "fundamentally unfair in light of governing law." *Mohammadi*, 947 F. Supp. 2d at 78. This matter was litigated and resolved before the Supreme Court on the premise that the June 30 deadline was firm. The Court's decision is settled, governing law. Judicial estoppel is intended to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749; *see also Republic of Ecuador*, 638 F.3d at 397; *Intellivision*, 484 F. App'x at 619. Because allowing Defendants to make further modifications to the questionnaire at this time violates repeated representations that the questionnaire had to be locked down by June 30, allowing Defendants to proceed would harm the integrity of the judicial process. It would also be fundamentally unfair under governing law and, when combined with its extreme prejudice to Plaintiffs, would create manifest injustice.

## III.   THE COURT SHOULD EXERCISE AUTHORITY UNDER THE ALL WRITS ACT TO PROTECT ITS JURISDICTION.

In the alternative, Plaintiffs seek relief under the All Writs Act, 28 U.S.C. § 1651, to protect the Court's jurisdiction in this matter.

21

The All Writs Act permits a federal court to issue any writ, including an injunction, that is necessary to safeguard the court's jurisdiction.  *See* 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").  The All Writs Act is a "codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have."  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citing *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.")).

Issuance of an injunction is among the "writs necessary or appropriate" in aid of a federal court's jurisdiction.  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977); *see also, e.g.*, *Findley v. Laughead (In re Johns Manville Corp.)*, 27 F.3d 48, 49 (2d Cir. 1994); *see generally* 36 Corpus Juris Secundum § 28 (2019) ("The power conferred upon the federal courts by the All Writs Act includes the power to issue injunctions.").  The Court's injunctive authority under the All Writs Act is extremely broad: "Regarding pending proceedings, a court may enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'"  *Klay*, 376 F.3d at 1102 (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

It has long been established that district courts can both issue all orders necessary to enforce orders it has previously entered, *see N.Y. Tel. Co.*, 434 U.S. at 172 ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained"), and enjoin federal agency

22

activity that would otherwise hinder the court's ability to determine the lawfulness of challenged conduct. *See F.T.C. v. Dean Foods*, 384 U.S. 597, 604–05 (1966) (describing "traditional power to issue injunctions to preserve the status quo while administrative proceedings are in progress and prevent impairment of the effective exercise of appellate jurisdiction."). Thus, for example, in *South Carolina Coastal Conservation League v. Ross*, No. 18-cv-3326, 2019 WL 259116, (D.S.C. Jan. 18, 2019), the district court enjoined the U.S. Department of Commerce from issuing permits for offshore seismic testing in order to preserve the court's ability to hear a statutory challenge to the issuance of those permits brought by states, local governments, and environmental groups. *Id.* at *2–4.

Here, Defendants' actions in response to the Supreme Court's opinion affirming in part this Court's judgment have created a risk to the Court's jurisdiction and to the Court's ability to effectuate that judgment. Defendants have notified the Court that—notwithstanding their many representations to this Court and the Supreme Court that this case had to be resolved by June 2019, as described above—they are now considering whether to "adopt[] a new rationale for including the citizenship question on the 2020 Decennial Census." Docket No. 613. And although counsel for Defendants represented to the Court that the 2020 Decennial Census questionnaire was now being printed without a citizenship question, and that no action would be taken in contravention of the Court's prior orders, *id.* at 1, the events of this week make clear that counsel concededly is not fully apprised of the federal government's conduct, *see, e.g.*, Docket No. 612-1, at 4–5. Even apart from this extraordinary circumstance, counsel's representations regarding an agency's conduct do not carry the same force as injunctive relief prohibiting Defendants from contravening this Court's judgment by altering the status quo. *See, e.g.*, Order Denying Motion to Continue, *New York v. U.S. Dep't of Health & Human Servs.*, No. 19-CV-

23

4676 (PAE), Docket No. 82 (S.D.N.Y. June 27, 2019) (denying defendants' motion to continue preliminary injunction proceedings on the basis of defense counsel's representations alone that the agency would not enforce the challenged regulation); *City & Cty. of San Francisco v. Azar*, No. C 19-2405 WHA, Docket No. 54 (N.D. Cal. June 27, 2019) (same).

Given the imminent threat to the Court's jurisdiction created by Defendants' unilateral conduct, Plaintiffs request that the Court enter an order under the All Writs Act to preserve its jurisdiction and protect its ability to enforce its judgment.

## CONCLUSION

Granting relief under Rule 59(e) based on judicial estoppel is warranted and necessary to stop the Defendants' shenanigans.  The Court should therefore amend its judgment prior to remanding in accordance with Plaintiffs' attached proposed order, and order any further appropriate relief.  In the alternative, the Court should act under the All Writs Act, 28 U.S.C. § 1651, to protect its jurisdiction and to grant Plaintiffs relief.

DATE: July 5, 2019                           Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION
NEW YORK CIVIL LIBERTIES UNION

By: */s/         Dale Ho*

Dale Ho
Adriel Cepeda Derieux
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon+*
Davin Rosborough
Ceridwen Cherry
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia;
practice limited pursuant to D.C. App. R.
49(c)(3).

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
R. Stanton Jones+
David P. Gersch
Elisabeth S. Theodore+
Daniel F. Jacobson+
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

+ admitted pro hac vice

Attorneys for the *NYIC* Plaintiffs

25

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Matthew Colangelo*
Matthew Colangelo, *Chief Counsel for Federal Initiatives*
Elena Goldstein, *Acting Bureau Chief, Civil Rights Bureau*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
matthew.colangelo@ag.ny.gov

Attorneys for the *State of New York* Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | 18-CV-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |
| NEW YORK IMMIGRATION COALITION, et al., | |
| Plaintiffs, | 18-CV-5025 (JMF) (Consolidated) |
| v. | |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

## [PROPOSED] ORDER

This matter comes before the Court on Plaintiff's Motion to Alter or Amend the Judgment. For the reasons set forth below and in the Court's separate Opinion, the Motion is GRANTED.

Having considered all of the materials and arguments that have been submitted in connection with this motion, IT IS HEREBY ORDERED THAT, this Court's January 15, 2019 Final Judgment, Order of Vacatur and Permanent Injunction is altered or amended as follows, consistent with June 27, 2019 opinion of the Supreme Court of the United States:

The March 26, 2018 decision of the Secretary of Commerce to add a question concerning citizenship status to the 2020 decennial census questionnaire is VACATED, and the matter is

REMANDED to the Secretary for further action not inconsistent with this Court's Orders and the Supreme Court's June 27, 2019 Opinion in this matter; and

Defendants, including the Secretary of Commerce in his Official Capacity, the Director of the Census in his official capacity, and any successors to those offices, together with their agents, servants, employees, attorneys, and other persons who are in active concert or participation with the foregoing, *see* Fed. R. Civ. P. 65(d)(2), are PERMANENTLY ENJOINED and ESTOPPED from altering the 2020 decennial census questionnaire or otherwise delaying the process of printing the 2020 decennial census questionnaire after June 30, 2019, for the purpose of including a citizenship question.

SO ORDERED.

Dated: July __, 2019

_____
JESSE M. FURMAN
United States District Judge