## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

                Plaintiffs,

       v.

UNITED STATES DEPARTMENT OF
   COMMERCE, *et al.*,

                Defendants.

No. 18-cv-02921

## DEFENDANTS' SUR-REPLY IN OPPOSITION
## TO NYIC PLAINTIFFS' MOTION FOR SANCTIONS

Dated:  November 22, 2019

JOSEPH H. HUNT
Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Telephone:  (202) 514-3358
Fax:         (202) 616-8470
E-mail:     james.gilligan@usdoj.gov

*Counsel for Defendants*

**INTRODUCTION**

Plaintiffs' motion for sanctions rests on two premises. The first is the allegation, itself the outgrowth of speculation and innuendo, that Dr. Thomas Hofeller played a "central role" in the preparation of the December 12, 2017, Department of Justice ("DOJ") request to the Census Bureau to reinstate a citizenship question on the 2020 Census (the "Gary Letter"). *See* NYIC Pls.' Sur-Reply in Supp. of Mot. for Sanctions, ECF No. 665 ("Pls.' Surreply") at 1. The second is the equally unsupported accusation that Defendants suppressed relevant evidence in order to cover up Hofeller's alleged involvement. *See id.* Both claims, for which Plaintiffs have presented no genuine evidence, have already been debunked. *See generally* Defs.' Opp. to NYIC Pls.' Mot. for Sanctions, ECF No. 648 ("Defs.' Opp.").

Plaintiffs now rely on several text-message exchanges, recently produced by Mark Neuman to the United States House of Representatives Committee on Oversight and Reform, as supposed evidence both of Hofeller's participation in the preparation of the Gary Letter, and of efforts by Defendants to conceal Hofeller's claimed "role." As discussed below, these text messages demonstrate nothing of the kind, and are further proof only of Plaintiffs' willingness to leap to unsubstantiated conclusions to promote a false narrative of litigation misconduct by their opponents.

**ARGUMENT**

**A. Plaintiffs Still Have Adduced No Evidence That Defendants or Gore Intentionally Withheld Relevant Evidence.**

Plaintiffs contend that an October 6, 2017, text message between Neuman and then-Acting Assistant Attorney General for Civil Rights John Gore "definitively shows" that Defendants misrepresented "how the VRA pretext was relayed from Hofeller through Neuman to Gore," and that "Gore did not, as testified in this case, write the initial draft of the DOJ request letter[.]" Pls.' Surreply at 3; *see generally id.* at 2-4. The text message offers no support for such claims.

The record establishes that when Neuman met with Gore in October 2017, he provided Gore a hard copy of a proposed letter to be sent from DOJ to the Census Bureau requesting reinstatement of a citizenship question (the "Neuman Letter").  *See* NYIC Pls.' Mot. for Sanctions, ECF 635, at 10; Defendants' Exhibit 2, ECF No. 648-1, ("Defs.' Exh.").[1]  Contrary to Plaintiffs' relentless but unsupported characterization, the Neuman Letter was not a first draft of the Gary Letter prepared by Gore.  As Defendants have already observed, the two letters bear no resemblance to one another in content or form, *compare* Defs.' Exh. 2 to Defs.' Exh. 3; following Gore's one and only meeting with Neuman, Gore deposited the Neuman Letter in a file folder, and did not rely on or even refer to it in preparing the Gary Letter; and Gore consulted neither Neuman nor Hofeller (nor Hofeller's 2015 redistricting study) in drafting the Gary Letter.  *See* Defs.' Opp. at 5-6, 9-10; Decl. of John Gore, Defs.' Exh. 6, ¶¶ 8-16.  There is no hidden connection between Hofeller and DOJ's request to the Census Bureau to reinstate the citizenship question.

The October 6, 2017, text message produced by Neuman changes none of these facts.  All it apparently reveals is that shortly before meeting with Gore in October 2017, Neuman texted an electronic version of the Neuman Letter to Gore, a version that was nearly identical to the hard-copy version he also provided to Gore, shortly thereafter, when they met face to face.[2]  It does not show that Gore relied on the electronic version of Neuman's draft in "writ[ing] the initial draft of the [Gary] [L]etter," as Plaintiffs claim, Pls.' Surreply at 3, any more than the mere existence of the hard copy shows that Gore made use of that version.  But just so the record remains clear, Gore affirms, in a supplemental declaration filed herewith, that "[t]he texted version of the Neuman Letter, like the hard-

---

[1] Plaintiffs continue to maintain, falsely, that Defendants "first improperly withheld" the Neuman Letter and then "belatedly disclosed" it in the midst of a "90,000 page document dump."  Pls.' Surreply at 2-3.  Defendants have already rebutted these misrepresentations of the record.  *See* Defs.' Opp. at 6 & n.1.  Plaintiffs offer no facts to justify their continued mischaracterization of these events.

[2] The electronic version of the Neuman Letter, Pls.' Surreply Exh. C, is addressed to a different Census Bureau official than the hard-copy version, and includes citations to two court decisions, and a quotation from one of them, that are not included in the hard copy.  Their contents are otherwise identical.  *Compare id. to* Defs.' Exh. 2.

copy version, was not a draft of the Gary Letter," and that he "did not consult, refer to, or rely upon the texted version of the Neuman Letter in drafting the Gary Letter."  Second Decl. of John Gore (filed herewith as Defendants' Exhibit 28) ¶¶ 7-8; *see also id.* ¶ 10.

Gore also affirms that during the litigation of this case he had no recollection of receiving the electronic version of the Neuman Letter, or of a text exchange with Neuman, and has no such recollection now.  *Id.* ¶¶ 4-6.  A search of text messages on his personal cell phone (conducted after he reviewed Plaintiffs' surreply) confirms that he did receive an October 6, 2017, text from Neuman attaching a draft of the Neuman letter.  *Id.* ¶ 5.  But that review revealed no other text-message chains on his personal phone concerning the Census.  *Id.*  Thus, contrary to Plaintiffs' accusations, *see* Pls.' Surreply at 3, Gore's deposition testimony regarding his use of personal text messaging to conduct Government business was accurate to the best of his recollection at the time.

In short, the October 6, 2017, text message reveals nothing new about the actual process by which the Gary Letter was prepared, or its source material.  It lends no support to Plaintiffs' persistent but baseless suspicions of a connection between Hofeller (or his study) and the Gary Letter.  Nor does it provide a basis on which to charge (must less to conclude) that Defendants, having produced the hard-copy version of the Neuman Letter, nevertheless intentionally withheld the electronic (and nearly identical) version of that letter, or any other evidence, in discovery.

### B.  Neuman's August 30, 2017, E-Mail Exchange With Hofeller Reveals No Role Played by Hofeller in the Preparation of the Gary Letter.

Plaintiffs next cite an August 30, 2017, text-message exchange between Neuman and Hofeller that they describe as "confirm[ation] that Hofeller played an even bigger part in Defendants' scheme than previously was understood," and as "further proof that Defendants improperly withheld pertinent information[.]"  Pls.' Surreply at 1; *see generally id.* at 1-2.  These claims, too, lack support.

In the first text, Pls.' Surreply Exh. A, Neuman attached an excerpt from what would later become the Neuman Letter, stating to Hofeller, "Please make certain that this language is correct.

3

Dale doesn't return my calls." ("Dale" evidently is a reference to Hofeller's then-business associate, Dale Oldham.)  Later that day Hofeller responded, "Mark:  Dale just read it, and says it is fine as written." *Id.*, Exh. B.  Thus, Plaintiffs get it wrong from the start when they describe this exchange as evidence that Neuman sought and received Hofeller's "affirmation" of language used in the Neuman Letter.  Pls.' Surreply at 1.  Neuman plainly was seeking and ultimately obtained *Oldham's* "affirmation."

That observation merely underscores, however, the extent to which Plaintiffs' claims rely on mischaracterizations of the record.  The fundamental point remains that regardless of the genesis of the Neuman Letter, Gore did not rely on it *at all* when drafting the Gary Letter.  *See supra* at 2-3.  Thus, even if Hofeller had, in fact, blessed the language included in the Neuman Letter, he still would have played no part, much less an "essential role," Pls.' Surreply at 2, in the preparation of DOJ's request for reinstatement of a citizenship question.

Another point bears (re-)emphasis here.  Neuman's failure, for whatever reason, to produce documents in this case that he later provided to the Oversight Committee is not evidence that "Defendants [have] improperly withheld pertinent information."  Pls.' Surreply at 1.  As Defendants have explained, when Plaintiffs issued a subpoena to Neuman, it was he and his counsel who collected and reviewed documents in his possession for responsive information, and determined which should be produced.  *See* Defs.' Opp. at 25.  Defendants' counsel merely reviewed Neuman's intended production for documents protected from disclosure by governmental privileges (and identified the Neuman documents withheld on that basis).  *Id.* at 26.  Defendants cannot be faulted for Neuman's failure, if any, to produce documents that he should have disclosed in response to Plaintiffs' subpoena.

### C.  Neuman's Text Messages With Davidson Reveal No New Information, Nor Suggest That Defendants Improperly Withheld Evidence.

Finally, Plaintiffs identify two text messages that Peter Davidson, then the Department of Commerce General Counsel, sent to Neuman in October 2017.  In the first, on October 7, Davidson wrote, "Hey Mark . . . sorry I missed your call . . . I will try you tomorrow," and in the second, on

October 8, "Thx  He appreciated the update and your help."  Pls.' Surreply Exh. D.  Plaintiffs point

to these vague messages as evidence that Defendants intentionally concealed communications

showing that "Neuman gave a readout [of his meeting with Gore] to Davidson, who discussed it with

Secretary Ross."  *Id.* at 4.  This accusation of misconduct is also baseless.

Defendants included in the Administrative Record a much more express e-mail exchange

between Davidson and Secretary Ross concerning Neuman's "readout."  On October 8, 2017,

Davidson wrote, "I'm on the phone with Mark Neuman right now . . . he is giving me a readout of

his meeting last week.  I can give you an update via phone if you like[.]"  Defendants' Exhibit 29 (filed

herewith).  Secretary Ross then responded, "Please call me[,]" to which Davidson replied, "Will do."

*Id.*  This information should not come as news to Plaintiffs.  They introduced these e-mails at trial as

Plaintiffs' Exhibit 52, *see id.*, and cited them in their proposed findings of fact, Pls.' Proposed Post-

Trial Findings of Fact, ECF No. 545, ¶¶ 448-49 (relevant excerpts filed herewith as Defendants'

Exhibit 30).  No reasonable claim can be made that a failure to produce Davidson's insubstantial text

messages with Neuman reflects an effort to conceal communications with the Secretary, when those

communications are documented in much greater detail in e-mails that Defendants, in fact, disclosed.

That is all the more so considering Mr. Davidson's supplemental declaration, filed herewith.

There he affirms that he has no recollection of the text messages with Neuman, nor did he recall them

during discovery in this case, or when he prepared his August 1, 2019, declaration in support of

Defendants' opposition to Plaintiffs' sanctions motion.  Supp. Decl. of Peter Davidson (filed herewith

as Defendants' Exhibit 31) ("Davidson Supp.  Decl.") ¶ 3.  In addition, a search of Davidson's

personal cell phone shows that, apart from a version of this text-message string with Neuman that

includes an additional January 5, 2018, exchange, Davidson neither sent nor received additional text

messages with Neuman specifically, or concerning the 2020 Census generally.[3]

---

[3]  By the same token, the failure to produce the text messages concerning Neuman's "readout" of
his meeting with Gore does not "raise[ ] substantial questions about Davidson's averment," in his
prior declaration, "that he 'was unaware' that Neuman 'had in his possession'" the Neuman Letter.

At most, Neuman's production of the text-message chains cited by Plaintiffs suggests that Defendants' discovery searches in this case may not have been perfect, but the "Federal Rules of Civil Procedure do not require perfection." *Freedman v. Weatherford Int'l, Ltd.*, 2014 WL 4547039 at *3 (S.D.N.Y. Sept. 12, 2014). Rather, a party's search for documents responsive to an opponent's discovery requests must be reasonable and proportionate to the needs of the case. *See Lopez v. Don Herring, Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018); *Reinsdorf v. Skechers USA, Inc.*, 296 F.R.D. 604, 614-15 (C.D. Cal. 2013). Where Defendants assembled a 13,000-page administrative record; the Commerce Department produced 24,000 pages of documents in discovery; and DOJ produced an additional 130,000 pages of documents (on the basis of which Plaintiffs prevailed in the litigation), Neuman's production of three additional text-message strings does not call the reasonableness of the Government's good-faith search efforts into doubt. *See Freedman*, 2014 WL 4547039 at *3 (finding it "unsurprising," considering the size of defendant's production, "that some relevant documents may have fallen through the cracks").

*     *     *

Plaintiffs' sur-reply reconfirms that their allegations of misconduct rest on mischaracterizations of the evidence—most notably, their repeated and false insistence that the Neuman Letter is a "first draft" of the Gary Letter. The actual, objective evidence in the record makes clear that Defendants did not conceal Hofeller's role in crafting DOJ's formal request to reinstate the citizenship question, for the simple reason that Hofeller had no such role. No amount of innuendo and speculation can change that simple truth.

## CONCLUSION

Plaintiffs' motion for sanctions should be denied.

---

Pls.' Surreply at 4-5 (quoting April 1, 2019, Davidson declaration). As Davidson re-affirms, he has "no recollection of ever discussing the Neuman letter with Mr. Neuman, whether following his meeting with Mr. Gore, or otherwise." Davidson Supp. Decl. ¶¶ 4-5.

Dated:  November 22, 2019

JOSEPH H. HUNT
Assistant Attorney General


 _/s/_  **_DRAFT_**
JAMES J. GILLIGAN
Special Litigation Counsel

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Telephone:   (202) 514-3358
Fax:            (202) 616-8470
E-mail:         james.gilligan@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK, *et al.*,

                    Plaintiffs,

          v.                                              No. 18-cv-02921

UNITED STATES DEPARTMENT OF
    COMMERCE, *et al.*,

                    Defendants.

**DEFENDANTS' SUR-REPLY IN OPPOSITION**
**TO NYIC PLAINTIFFS' MOTION FOR SANCTIONS**

**EXHIBIT INDEX**

28.    Second Declaration of John Gore

29.    Plaintiffs' Trial Exhibit PX-052

30.    Plaintiffs' Joint Proposed Post-Trial Findings of Fact (excerpt)

31.    Supplemental Declaration of Peter Davidson

**EXHIBIT 28**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>Defendants. | 18-CV-2921 (JMF) |

## <u>SECOND DECLARATION OF JOHN GORE</u>

I, John Gore, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I was the Principal Deputy Assistant Attorney General in the Civil Rights Division at the U.S. Department of Justice, a position I held from July 28, 2017 to November 5, 2019. I served as the Acting Assistant Attorney General for the Civil Rights Division from July 28, 2017 to November 5, 2018. As the Acting Assistant Attorney General, I was the senior management official of the Civil Rights Division. As a part of my official duties, I was responsible for the overall supervision of the Division's enforcement of the federal statutes and regulations that fall within the Division's purview, including the Voting Rights Act of 1965.

2. The following statements are based upon my personal knowledge. These statements are provided in support of the Defendants' response to the sur-reply filed by the New York Immigration Coalition ("NYIC") in the above-captioned case concerning their motion for sanctions. I previously submitted a declaration dated August 2, 2019 in support of Defendants' opposition to NYIC's motion for sanctions.

3.   As I have previously testified, I prepared the December 12, 2017, letter to the Census Bureau from Arthur E. Gary, General Counsel of the Department of Justice's Justice Management Division, requesting that a citizenship question be reinstated on the 2020 decennial census questionnaire ("the Gary Letter").

4.   During my deposition in this case, I was asked whether I "sometimes use[d] . . . personal . . . text messages . . . to communicate about" Department of Justice work.  I responded that "I don't think I have used it for DOJ work, now that I think about it."  My response accurately reflected my thoughts and recollection:  neither during the document collection or my deposition in this case, nor at the time I submitted my prior declaration, did I recall ever having sent or received text messages concerning official government business on my personal phone.

5.   After reviewing NYIC's sur-reply, I reviewed all of my text messages on my personal phone from January 2017 through the present to determine whether I had sent or received any text messages related to my work on the Department of Justice's request to reinstate a citizenship question on the decennial census questionnaire.  There is only one text-message chain related to that matter on my personal phone, and it appears to be a version of the October 6, 2017, text-message chain that Mark Neuman submitted to the House Oversight Committee.  The chain I have contains a message, apparently from Mr. Neuman, stating "I am sitting inside the café SE corner," to which I responded, "On my way."  The exchange appears to have occurred just prior to my October 2017 meeting with Mr. Neuman.  The chain I have also contains a draft version, from Mr. Neuman, of a proposed letter that he also provided to me in hard copy ("the Neuman Letter"), but it does not contain the pictures of the other Census documents that appear in the chain that NYIC submitted to this Court.  Neither the chain I have nor the chain NYIC submitted to the Court has time stamps for the individual text messages.

6.  I had no recollection of this text-message chain or the texted version of the Neuman Letter during the document collection or my deposition, or when I submitted my prior declaration in this case.  Reviewing this text-message chain and the texted version of the Neuman Letter does not refresh my recollection that I received them, and I have no recollection of ever reading them.

7.  The texted version of the Neuman Letter, like the hard-copy version, was not a draft of the Gary Letter.

8.  As with the hard-copy version of the Neuman Letter, I did not consult, refer to, or rely upon the texted version of the Neuman Letter in drafting the Gary Letter.

9.  As with the hard-copy version of the Neuman Letter, I have no personal knowledge regarding who authored, reviewed, commented on, or contributed to the texted version of the Neuman Letter.

10. Nothing in the texted version of the Neuman Letter or in NYIC's motion for sanctions, reply, or sur-reply affects, much less alters, my prior testimony regarding the preparation of the Gary Letter.  I prepared the Gary Letter.  In doing so, I did not rely upon any version of the Neuman Letter, any other information provided to me by Mr. Neuman, or anything communicated to me by anyone at the Department of Commerce, the White House, or the Department of Homeland Security.  I have never met, communicated with, or spoken to Dr. Thomas Hofeller.  I first became aware of Dr. Hofeller's purported views on reinstatement of a citizenship question and the purported 2015 Hofeller study on May 30, 2019—more than 17 months after the Gary Letter was sent—when I reviewed NYIC's motion for an order to show cause and accompanying press reports.  I did not consult, refer to, or rely upon anything related to Dr. Hofeller, his purported views on the reinstatement of a citizenship question, or the purported 2015 Hofeller study in preparing the Gary Letter.

I declare under penalty of perjury that the foregoing is true and correct.


Washington, DC
November 22, 2019

John Gore

**EXHIBIT 29**

**From**:            ▮▮▮▮▮▮@doc.gov      ▮▮▮▮▮▮@doc.gov]
**Sent**:            10/8/2017 10:54:41 PM
**To**:              Wilbur Ross ▮▮▮▮▮▮▮▮
**Subject**:         Re: Letter from DoJ.


Will do...wrapping up my call now.

Sent from my iPhone

> On Oct 8, 2017, at 6:51 PM, Wilbur Ross ◄▮▮▮▮▮▮▮► wrote:
>
> Please call me at ▮▮▮▮▮▮    WLR
>
> Sent from my iPad
>
>> On Oct 8, 2017, at 6:47 PM, Davidson, Peter (Federal) ◄▮▮▮▮▮doc.gov> wrote:
>>
>> I'm on the phone with Mark Neumann right now...he is giving me a readout of his meeting last week. I
can give you an update via phone if you'd like...
>>
>> Sent from my iPhone
>>
>>> On Oct 8, 2017, at 2:56 PM, Wilbur Ross ▮▮▮▮▮▮▮▮ wrote:
>>>
>>> What is its status? WLR
>>>
>>> Sent from my iPad

0002482

**PX-052**

**EXHIBIT 30**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., | |
| Plaintiffs, | |
| v. | 18-CV-2921 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |
| THE NEW YORK IMMIGRANT COALITION et al., | |
| Plaintiffs, | |
| v. | 18-CV-5025 (JMF) |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |

## PLAINTIFFS' JOINT PROPOSED POST-TRIAL FINDINGS OF FACT

439.    On September 19, 2017, Secretary Ross sent an email with the subject "Census" advising
Peter Davidson that "Wendy and I spoke with the AG yesterday.  Please follow up so we can
resolve this issue today." PX-57 (AR).

440.    Ms. Teramoto testified that she has no recollection of this event. Teramoto Dep. at 84.

441.    On September 22, 2017, Mr. Uthmeier reached out to Mr. Gore. Gore Dep. at 117-18
(objection).

442.    Mr. Gore returned Mr. Uthmeier's call, on or about September 22, 2017, and they
discussed the addition of a citizenship question to the 2020 Census. Gore Dep. at 118, 119.

443.    Mr. Uthmeier has no experience as counsel in VRA cases, litigating Section 2 redistricting
cases involving the use of CVAP data, or otherwise assessing the reliability of CVAP data used
in VRA litigation. Gore Dep. at 117-118.

444.    After their call, Mr. Gore was also provided Mr. Uthmeier's August 11 memorandum
discussing addition of a citizenship question. Gore Dep. at 118.

445.    With the August 11 memorandum, Mr. Gore also received a handwritten note from Mr.
Uthmeier.  Gore Dep. at 118–119. This handwritten note from Uthmeier to Gore contained
information that DOJ considered in drafting the final letter requesting a citizenship question. *Id.*
at 123-24.  Defendants have withheld this note on the basis of privilege.

446.    Mr. Gore responded to that note in a discussion with Mr. Uthmeier and Mr. Davidson,
purportedly to provide legal advice in anticipation of litigation.  Gore Dep. at 120-124.

447.    DOJ relied, in part, on Mr. Uthmeier's input in reaching its decision to send the December
12, 2017 letter to the Census Bureau.  Gore Dep. at 123-124

448.    On Sunday October 8, Secretary Ross sent an email to Mr. Davidson with the subject line
"Letter from DOJ" and asking "what is its status." PX-52 (AR).

449.  Mr. Davidson responded "I'm on the phone with Mark Neuman right now . . . he is giving me a readout of his meeting last week." PX-52 (AR).

450.  The following day, on October 9 (Columbus Day), Secretary Ross issued a press release applauding Trump Administration programs to "swiftly return illegal entrants" and to "stop sanctuary cities, asylum abuse and chain immigration." PX-479.

451.  Also on October 9, Mr. Willard sent Undersecretary Kelley an email about a citizenship question stating "1) must come from DOJ, 2) court cases you can hang your hat on, 3) every census since 1880, except 2000." PX-148 (R) (AR).

452.  In October of 2017, AAAG Gore, John Zadrozny of the White House Domestic Policy Council, along with Rachael Tucker, Mr. Hamilton, and others from DOJ participating in a conference call to discuss the addition of a citizenship question to the Census without the participation of any Commerce Department or Census Bureau personnel.  Gore Dep. at 409–12.

453.  During the autumn of 2017, Mr. Gore also discussed a citizenship question with Mr. Neuman with the understanding that he was advising the Department of Commerce and Census Bureau on the issue.  Gore Dep. at 438.

454.  On or about November 1, 2017, Mr. Gore wrote the initial draft of the letter from DOJ to Census Bureau requesting the inclusion of a citizenship question on the 2020 Decennial Census. Gore Dep. at 126–127 (objection).

455.  On Wednesday, November 1, 2017, Mr. Gore emailed Chris Herren, Chief of DOJ's Voting Section, and copied Ben Aguiñaga. Gore Dep. at 126 (objection); PX-211.

456.  The subject of the email was: "Confidential & Close Hold: Draft Letter." Gore Dep. at 126 (objection). Gore testified that he intended that Herren could not share the draft letter without Gore's approval.  Gore Dep. at 130.

EXHIBIT 31

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, *et al.*,

      Plaintiffs,

          v.

UNITED STATES DEPARTMENT OF
COMMERCE, *et al.*,

      Defendants.

18-CV-2921 (JMF)

## SUPPLEMENTAL DECLARATION OF PETER DAVIDSON

I, Peter Davidson, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I was the General Counsel of the United States Department of Commerce, a position I held from August 2017 to August 2019. As General Counsel, I was the legal advisor to the Secretary of Commerce and the Department's Chief Legal Officer.

2. The following statements are based upon my personal knowledge. I submit this supplemental declaration in support of Defendants' response to the sur-reply filed by the New York Immigration Coalition ("NYIC") in the above-captioned case concerning their motion for sanctions. I previously submitted a declaration dated August 1, 2019, in support of Defendants' opposition to NYIC's motion for sanctions.

3. I have reviewed NYIC's November 15, 2019, sur-reply filed in this case. That brief cites to a text-message chain between myself and A. Mark Neuman that includes three texts dated October 7 and 8, 2017, and January 3, 2018. I have no recollection of the text messages in this chain and did not have a recollection of these text messages at the time of discovery in this case or

at the time I prepared my August 1, 2019 declaration. Nor did I have any recollection of sending or receiving any other text messages with him at the time of discovery in this case or at the time I prepared my August 1, 2019 declaration. After reviewing NYIC's sur-reply, I conducted a search of the text messages on my personal phone during the period of my employment with the Department of Commerce to determine whether I had sent or received any text messages related to my work on the 2020 Census. I found only one text-message chain related to that matter on my personal phone, and it appears to be a version of the text-message chain in Attachment A of NYIC's Sur-reply. The version on my phone includes an exchange of messages on January 5, 2018, that are not included in the version filed with NYIC's sur-reply. True and correct copies of these January 5, 2018, messages are attached to this declaration. Reviewing this text-message chain on my phone still does not refresh my recollection that I sent or received these texts.

4. According to Plaintiffs' sur-reply, the October 7 and 8, 2017, text messages between myself and Mr. Neuman purportedly reflect a "readout" he gave me of his October 2017 meeting with John Gore, then Acting Assistant Attorney General for Civil Rights. I have no recollection of that "readout" from Mr. Neuman, or of briefing Secretary Ross about it thereafter.

5. As I stated in my prior declaration, I have no recollection of ever discussing the Neuman Letter with Mr. Neuman, whether following his meeting with Mr. Gore, or otherwise.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Alexandria, VA
November 22, 2019

Peter Davidson

2

Text of Dec. 2017
DOJ letter to
Census

documentcloud.org

I found this publicly available link on HUFFPOST.

Ok. Thanks.

Jan 5, 2018, 7:05 PM

Do you know the exact number of the fall off in response percentage for the citizenship question compared to other ACS questions?



**Mark** ›

Jan 5, 2018, 7:05 PM

> Do you know the exact number of the fall off in response percentage for the citizenship question compared to other ACS questions?

Jan 5, 2018, 8:16 PM

I know that Census is supposed to be responding to that, but I am told that in the ACS the drop off is something between 4 and 6 percent.  But there will be a more exact data set known

  iMessage 

      



**Mark** >

Jan 5, 2018, 8:16 PM

I know that Census is supposed to be responding to that, but I am told that in the ACS the drop off is something between 4 and 6 percent.  But there will be a more exact data set known soon.

There is also DECENNIAL CENSUS response rates related to citizenship ( long form data )  from the 2000 Census.

Thanks

iMessage

