UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>UNITED STATES DEPARTMENT OF<br>    COMMERCE, *et al.*,<br><br>                              Defendants. | No. 18-cv-02921 |

## NOTICE OF ERRATA

Filed herewith is a corrected copy of Defendants' Sur-Reply in Opposition to NYIC

Plaintiffs' Motion for Sanctions, ECF No. 667, with the "DRAFT" placeholder removed from the

signature line.

Dated:  November 22, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General


 */s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Telephone:    (202) 514-3358
Fax:              (202) 616-8470
E-mail:         james.gilligan@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | No. 18-cv-02921 |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | |
| Defendants. | |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO NYIC PLAINTIFFS' MOTION FOR SANCTIONS

Dated:  November 22, 2019

JOSEPH H. HUNT
Assistant Attorney General

JAMES J. GILLIGAN
Special Litigation Counsel

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Telephone:  (202) 514-3358
Fax:             (202) 616-8470
E-mail:        james.gilligan@usdoj.gov

*Counsel for Defendants*

## INTRODUCTION

Plaintiffs' motion for sanctions rests on two premises. The first is the allegation, itself the outgrowth of speculation and innuendo, that Dr. Thomas Hofeller played a "central role" in the preparation of the December 12, 2017, Department of Justice ("DOJ") request to the Census Bureau to reinstate a citizenship question on the 2020 Census (the "Gary Letter"). *See* NYIC Pls.' Sur-Reply in Supp. of Mot. for Sanctions, ECF No. 665 ("Pls.' Surreply") at 1. The second is the equally unsupported accusation that Defendants suppressed relevant evidence in order to cover up Hofeller's alleged involvement. *See id.* Both claims, for which Plaintiffs have presented no genuine evidence, have already been debunked. *See generally* Defs.' Opp. to NYIC Pls.' Mot. for Sanctions, ECF No. 648 ("Defs.' Opp.").

Plaintiffs now rely on several text-message exchanges, recently produced by Mark Neuman to the United States House of Representatives Committee on Oversight and Reform, as supposed evidence both of Hofeller's participation in the preparation of the Gary Letter, and of efforts by Defendants to conceal Hofeller's claimed "role." As discussed below, these text messages demonstrate nothing of the kind, and are further proof only of Plaintiffs' willingness to leap to unsubstantiated conclusions to promote a false narrative of litigation misconduct by their opponents.

## ARGUMENT

### A. Plaintiffs Still Have Adduced No Evidence That Defendants or Gore Intentionally Withheld Relevant Evidence.

Plaintiffs contend that an October 6, 2017, text message between Neuman and then-Acting Assistant Attorney General for Civil Rights John Gore "definitively shows" that Defendants misrepresented "how the VRA pretext was relayed from Hofeller through Neuman to Gore," and that "Gore did not, as testified in this case, write the initial draft of the DOJ request letter[.]" Pls.' Surreply at 3; *see generally id.* at 2-4. The text message offers no support for such claims.

The record establishes that when Neuman met with Gore in October 2017, he provided Gore a hard copy of a proposed letter to be sent from DOJ to the Census Bureau requesting reinstatement of a citizenship question (the "Neuman Letter").  *See* NYIC Pls.' Mot. for Sanctions, ECF 635, at 10; Defendants' Exhibit 2, ECF No. 648-1, ("Defs.' Exh.").[1]  Contrary to Plaintiffs' relentless but unsupported characterization, the Neuman Letter was not a first draft of the Gary Letter prepared by Gore.  As Defendants have already observed, the two letters bear no resemblance to one another in content or form, *compare* Defs.' Exh. 2 to Defs.' Exh. 3; following Gore's one and only meeting with Neuman, Gore deposited the Neuman Letter in a file folder, and did not rely on or even refer to it in preparing the Gary Letter; and Gore consulted neither Neuman nor Hofeller (nor Hofeller's 2015 redistricting study) in drafting the Gary Letter.  *See* Defs.' Opp. at 5-6, 9-10; Decl. of John Gore, Defs.' Exh. 6, ¶¶ 8-16.  There is no hidden connection between Hofeller and DOJ's request to the Census Bureau to reinstate the citizenship question.

The October 6, 2017, text message produced by Neuman changes none of these facts.  All it apparently reveals is that shortly before meeting with Gore in October 2017, Neuman texted an electronic version of the Neuman Letter to Gore, a version that was nearly identical to the hard-copy version he also provided to Gore, shortly thereafter, when they met face to face.[2]  It does not show that Gore relied on the electronic version of Neuman's draft in "writ[ing] the initial draft of the [Gary] [L]etter," as Plaintiffs claim, Pls.' Surreply at 3, any more than the mere existence of the hard copy shows that Gore made use of that version.  But just so the record remains clear, Gore affirms, in a supplemental declaration filed herewith, that "[t]he texted version of the Neuman Letter, like the hard-

---

[1] Plaintiffs continue to maintain, falsely, that Defendants "first improperly withheld" the Neuman Letter and then "belatedly disclosed" it in the midst of a "90,000 page document dump." Pls.' Surreply at 2-3.  Defendants have already rebutted these misrepresentations of the record. *See* Defs.' Opp. at 6 & n.1.  Plaintiffs offer no facts to justify their continued mischaracterization of these events.

[2] The electronic version of the Neuman Letter, Pls.' Surreply Exh. C, is addressed to a different Census Bureau official than the hard-copy version, and includes citations to two court decisions, and a quotation from one of them, that are not included in the hard copy.  Their contents are otherwise identical. *Compare id. to* Defs.' Exh. 2.

copy version, was not a draft of the Gary Letter," and that he "did not consult, refer to, or rely upon the texted version of the Neuman Letter in drafting the Gary Letter." Second Decl. of John Gore (filed herewith as Defendants' Exhibit 28) ¶¶ 7-8; *see also id.* ¶ 10.

Gore also affirms that during the litigation of this case he had no recollection of receiving the electronic version of the Neuman Letter, or of a text exchange with Neuman, and has no such recollection now. *Id.* ¶¶ 4-6. A search of text messages on his personal cell phone (conducted after he reviewed Plaintiffs' surreply) confirms that he did receive an October 6, 2017, text from Neuman attaching a draft of the Neuman letter. *Id.* ¶ 5. But that review revealed no other text-message chains on his personal phone concerning the Census. *Id.* Thus, contrary to Plaintiffs' accusations, *see* Pls.' Surreply at 3, Gore's deposition testimony regarding his use of personal text messaging to conduct Government business was accurate to the best of his recollection at the time.

In short, the October 6, 2017, text message reveals nothing new about the actual process by which the Gary Letter was prepared, or its source material. It lends no support to Plaintiffs' persistent but baseless suspicions of a connection between Hofeller (or his study) and the Gary Letter. Nor does it provide a basis on which to charge (must less to conclude) that Defendants, having produced the hard-copy version of the Neuman Letter, nevertheless intentionally withheld the electronic (and nearly identical) version of that letter, or any other evidence, in discovery.

## B. Neuman's August 30, 2017, E-Mail Exchange With Hofeller Reveals No Role Played by Hofeller in the Preparation of the Gary Letter.

Plaintiffs next cite an August 30, 2017, text-message exchange between Neuman and Hofeller that they describe as "confirm[ation] that Hofeller played an even bigger part in Defendants' scheme than previously was understood," and as "further proof that Defendants improperly withheld pertinent information[.]" Pls.' Surreply at 1; *see generally id.* at 1-2. These claims, too, lack support.

In the first text, Pls.' Surreply Exh. A, Neuman attached an excerpt from what would later become the Neuman Letter, stating to Hofeller, "Please make certain that this language is correct.

Dale doesn't return my calls." ("Dale" evidently is a reference to Hofeller's then-business associate, Dale Oldham.)  Later that day Hofeller responded, "Mark:  Dale just read it, and says it is fine as written."  *Id.*, Exh. B.  Thus, Plaintiffs get it wrong from the start when they describe this exchange as evidence that Neuman sought and received Hofeller's "affirmation" of language used in the Neuman Letter.  Pls.' Surreply at 1.  Neuman plainly was seeking and ultimately obtained *Oldham's* "affirmation."

That observation merely underscores, however, the extent to which Plaintiffs' claims rely on mischaracterizations of the record.  The fundamental point remains that regardless of the genesis of the Neuman Letter, Gore did not rely on it *at all* when drafting the Gary Letter.  *See supra* at 2-3.  Thus, even if Hofeller had, in fact, blessed the language included in the Neuman Letter, he still would have played no part, much less an "essential role," Pls.' Surreply at 2, in the preparation of DOJ's request for reinstatement of a citizenship question.

Another point bears (re-)emphasis here.  Neuman's failure, for whatever reason, to produce documents in this case that he later provided to the Oversight Committee is not evidence that "Defendants [have] improperly withheld pertinent information."  Pls.' Surreply at 1.  As Defendants have explained, when Plaintiffs issued a subpoena to Neuman, it was he and his counsel who collected and reviewed documents in his possession for responsive information, and determined which should be produced.  *See* Defs.' Opp. at 25.  Defendants' counsel merely reviewed Neuman's intended production for documents protected from disclosure by governmental privileges (and identified the Neuman documents withheld on that basis).  *Id.* at 26.  Defendants cannot be faulted for Neuman's failure, if any, to produce documents that he should have disclosed in response to Plaintiffs' subpoena.

### C.  Neuman's Text Messages With Davidson Reveal No New Information, Nor Suggest That Defendants Improperly Withheld Evidence.

Finally, Plaintiffs identify two text messages that Peter Davidson, then the Department of Commerce General Counsel, sent to Neuman in October 2017.  In the first, on October 7, Davidson wrote, "Hey Mark . . . sorry I missed your call . . . I will try you tomorrow," and in the second, on

October 8, "Thx  He appreciated the update and your help."  Pls.' Surreply Exh. D.  Plaintiffs point to these vague messages as evidence that Defendants intentionally concealed communications showing that "Neuman gave a readout [of his meeting with Gore] to Davidson, who discussed it with Secretary Ross."  *Id.* at 4.  This accusation of misconduct is also baseless.

Defendants included in the Administrative Record a much more express e-mail exchange between Davidson and Secretary Ross concerning Neuman's "readout."  On October 8, 2017, Davidson wrote, "I'm on the phone with Mark Neuman right now . . . he is giving me a readout of his meeting last week.  I can give you an update via phone if you like[.]"  Defendants' Exhibit 29 (filed herewith).  Secretary Ross then responded, "Please call me[,]" to which Davidson replied, "Will do." *Id.*  This information should not come as news to Plaintiffs.  They introduced these e-mails at trial as Plaintiffs' Exhibit 52, *see id.*, and cited them in their proposed findings of fact, Pls.' Proposed Post-Trial Findings of Fact, ECF No. 545, ¶¶ 448-49 (relevant excerpts filed herewith as Defendants' Exhibit 30).  No reasonable claim can be made that a failure to produce Davidson's insubstantial text messages with Neuman reflects an effort to conceal communications with the Secretary, when those communications are documented in much greater detail in e-mails that Defendants, in fact, disclosed.

That is all the more so considering Mr. Davidson's supplemental declaration, filed herewith. There he affirms that he has no recollection of the text messages with Neuman, nor did he recall them during discovery in this case, or when he prepared his August 1, 2019, declaration in support of Defendants' opposition to Plaintiffs' sanctions motion.  Supp. Decl. of Peter Davidson (filed herewith as Defendants' Exhibit 31) ("Davidson Supp.  Decl.") ¶ 3.  In addition, a search of Davidson's personal cell phone shows that, apart from a version of this text-message string with Neuman that includes an additional January 5, 2018, exchange, Davidson neither sent nor received additional text messages with Neuman specifically, or concerning the 2020 Census generally.[3]

---

[3]  By the same token, the failure to produce the text messages concerning Neuman's "readout" of his meeting with Gore does not "raise[ ] substantial questions about Davidson's averment," in his prior declaration, "that he 'was unaware' that Neuman 'had in his possession'" the Neuman Letter.

At most, Neuman's production of the text-message chains cited by Plaintiffs suggests that Defendants' discovery searches in this case may not have been perfect, but the "Federal Rules of Civil Procedure do not require perfection." *Freedman v. Weatherford Int'l, Ltd.*, 2014 WL 4547039 at *3 (S.D.N.Y. Sept. 12, 2014). Rather, a party's search for documents responsive to an opponent's discovery requests must be reasonable and proportionate to the needs of the case. *See Lopez v. Don Herring, Ltd.*, 327 F.R.D. 567, 578 (N.D. Tex. 2018); *Reinsdorf v. Skechers USA, Inc.*, 296 F.R.D. 604, 614-15 (C.D. Cal. 2013). Where Defendants assembled a 13,000-page administrative record; the Commerce Department produced 24,000 pages of documents in discovery; and DOJ produced an additional 130,000 pages of documents (on the basis of which Plaintiffs prevailed in the litigation), Neuman's production of three additional text-message strings does not call the reasonableness of the Government's good-faith search efforts into doubt. *See Freedman*, 2014 WL 4547039 at *3 (finding it "unsurprising," considering the size of defendant's production, "that some relevant documents may have fallen through the cracks").

\*      \*      \*

Plaintiffs' sur-reply reconfirms that their allegations of misconduct rest on mischaracterizations of the evidence—most notably, their repeated and false insistence that the Neuman Letter is a "first draft" of the Gary Letter. The actual, objective evidence in the record makes clear that Defendants did not conceal Hofeller's role in crafting DOJ's formal request to reinstate the citizenship question, for the simple reason that Hofeller had no such role. No amount of innuendo and speculation can change that simple truth.

## CONCLUSION

Plaintiffs' motion for sanctions should be denied.

---

Pls.' Surreply at 4-5 (quoting April 1, 2019, Davidson declaration). As Davidson re-affirms, he has "no recollection of ever discussing the Neuman letter with Mr. Neuman, whether following his meeting with Mr. Gore, or otherwise." Davidson Supp. Decl. ¶¶ 4-5.

Dated:  November 22, 2019

JOSEPH H. HUNT
Assistant Attorney General


/s/  *James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044

Telephone:    (202) 514-3358
Fax:               (202) 616-8470
E-mail:          james.gilligan@usdoj.gov

*Counsel for Defendants*