December 3, 2019

The Honorable Jesse M. Furman
Thurgood Marshall U.S. Courthouse
U.S. District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

      RE:    Motion for Leave to File Sur-reply in Support of Sanctions in
                 *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman:

      The New York Immigration Coalition Plaintiffs ("NYIC Plaintiffs") respectfully submit this letter pursuant to the Court's Order dated November 26, 2019, ECF 670.

      Defendants' Letter to Plaintiffs dated November 25, 2019 ("Defendants' Letter") and the accompanying newly-produced documents, *see* ECF 669-1, establish four critical points.

      1. Defendants have acknowledged that their document productions may still be incomplete as of today, more than one year after the end of trial. *See id.* at 2 (acknowledging possibility that, beyond latest untimely-disclosed documents, "other documents were similarly inadvertently omitted from production"). While the Federal Rules governing discovery "do not require perfection," Defs.' Sur-Reply in Opp. to Sanctions ("Defs.' Surreply"), ECF 667, at 6, they certainly impose "'a heightened duty of candor.'" *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 571 (S.D.N.Y. 2019) (quoting *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, No. 10-cv-2618, 2011 WL 3471508, at *7 (E.D.N.Y. Aug. 5, 2011)). This is not Defendants' first omission. Far from it.

      2. Defendants neither affirmatively disclosed their previously-discovered omissions nor willingly corrected them. Rather, Plaintiffs' motion for sanctions directly challenged the completeness of the productions from the custodians who are the subject of these untimely productions, while Defendants repeatedly insisted that these challenges were without merit, and only belatedly produced such materials.[1] Defendants' "aggressively willful . . . repeated representations of full production" over Plaintiffs' "repeated demonstrations of incomplete compliance" constitute evidence of sanctionable bad faith. *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 221-22 (S.D.N.Y. 2003).

      And Defendants now admit that several recently-discovered documents were, in fact, located on personal devices. Defs.' Surreply, ECF 667, at 3 (Gore), 5 (Davidson). This contradicts Defendants' previous assurances during discovery that searches of "personal devices or accounts" were unnecessary because "no custodians ha[d] responsive documents or communications that were not also present in their government email addresses." Ex. G, Email

---

[1] *See, e.g.*, NYIC Pls.' Mot. for Sanctions, ECF 635 & NYIC Pls.' Surreply in Support of Sanctions, ECF 665 (challenging completeness of productions from current Census Bureau Chief of Staff Christa Jones, Acting Assistant Attorney General for Civil Rights John Gore, and Commerce General Counsel Peter Davidson).

1

from Stephen Ehrlich, Aug. 10, 2018. *See also* Ex. H, Email from Kate Bailey, Aug. 15, 2018 (affirming "DOC employees are instructed to copy or forward to government email addresses any government communications sent or received from personal email addresses").[2] In light of Defendants' apparent misinformation to their own counsel (and to the Court), Defendants' current assertion that no other relevant documents exist on their custodians' personal devices, *see* Defs.' Surreply, ECF 667, at 3, 5, is not sufficient.

3. Defendants' belated production of documents from Christa Jones indicate that she played a larger role preparing Secretary Ross's decisional memo than previously understood. As noted in the motion for sanctions, Census Bureau Chief Scientist John Abowd testified that Jones "communicated" the Census Bureau's "suggestions" regarding a draft of Secretary Ross's Decisional Memorandum to Commerce. *See* Ex. 27 to Pls.' Mot. for Sanctions, ECF 635-1, at 172-73. While Defendants previously maintained that "[n]o evidence supports the claim that relevant communications of Christa Jones are absent from the administrative record," Defs.' Opp. Br., ECF 648, at 14, that was incorrect. The latest documents reflect that Jones received the draft memo directly from then-Commerce Deputy General Counsel (now Commerce Chief of Staff) Michael Walsh via email on March 25, 2018. *See* ECF 669-1 at 26. And while Dr. Abowd testified he believed that there "were no e-mail correspondences" regarding the Bureau's suggestions, Ex. 27 to Pls.' Mem. in Support of Sanctions, ECF 635-1, at 172-73, Jones in fact e-mailed comments (redacted on the basis of deliberative privilege) directly to Walsh on March 26, 2018. *See* ECF 669-1 at 20. Walsh then forwarded those comments to James Uthmeier in the Commerce General Counsel's office. *See* ECF 669-1 at 1.

*None* of these documents (listed as nos. 1, 8, and 11 on Defendants' latest Privilege Log, *see* ECF 669-1 at 3-4) were previously produced or even logged in this litigation despite being in the possession of multiple custodians, including Jones, Walsh, and Uthmeier. Because Jones has acknowledged she had many conversations about the citizenship question with Thomas Hofeller and his business partner Dale Oldham, *see* Pls.' Surreply, ECF 665, at 2, her participation in this critical phase of drafting of the Decisional Memo is of significant interest in determining the true decisionmaking process and formulation of the VRA rationale.

As requested in the Motion for Sanctions, the Court should compel production of all documents reflecting Jones' participation in the drafting over Defendants' assertion of deliberative process (and any other) privilege. *See generally* ECF 635, at 28-30 & Exs. 46 & 47.[3]

---

[2] Exhibits to NYIC Plaintiffs' initial motion for sanctions are designated sequentially by number, from Exhibits 1 to 49. *See* ECF 635-1 to 635-5. Exhibits to Plaintiffs' Reply Brief are designated numerically by number, starting from Reply Exhibits 1 through 3. *See* Reply Exhibits, ECF 654-1 to 654-3. Exhibits to NYIC Plaintiffs' Surreply and this Letter are designated sequentially by letter, from Exhibits A to H. *See* ECF 665-1 to 665-6, and attached Exhibits G and H.

[3] NYIC Plaintiffs are submitting with this letter an updated version of Exhibit 46 to reflect Defendants' latest production of additional Jones documents (which will be referred to as Exhibit 46A).

4. It is notable that each of the documents that Defendants conveniently claim "were inadvertently not produced in discovery," Defs.' Letter, ECF 669-1, at 1, bears directly on Defendants' actual reasons for adding a citizenship question to the Census:

- First, documents referenced in NYIC Plaintiffs' original Motion for an Order to Show Cause indicated that Defendants' VRA rationale was concocted by the preeminent gerrymandering expert Dr. Hofeller, and that Defendants' true purpose in adding a citizenship question was the opposite of what they publicly claimed—*i.e.*, not to protect voting rights but to facilitate gerrymandering strategies "advantageous to Republicans and Non-Hispanic Whites," NYIC Pls.' Letter Motion for an Order to Show Cause, ECF 595, at 1-2;

- Second, subsequently-discovered documents in Hofeller's possession revealed that Hofeller had a long-standing relationship with: (1) Mark Neuman, Secretary Ross's "trusted advisor" on census issues, who "act[ed] analogously to an agency employee," Defs.' Opp. to Mot. to Compel Neuman Documents, ECF 451, at 3; and (2) Jones, with whom Hofeller discussed the citizenship question on multiple occasions, *see* NYIC Pls.' Mot. for Sanctions, ECF 635, at 6;

- Third, documents from Mark Neuman, referenced in NYIC Plaintiffs' Surreply, revealed that Neuman obtained sign-off from Hofeller and Oldham on a draft DOJ letter requesting the citizenship question, which he then texted to the acting head of the Civil Rights Division, John Gore; and that following his meeting with Gore, Neuman texted the Commerce Department General Counsel Peter Davidson, *see* Pls.' Surreply, ECF 665, at 2-4;

- Defendants' latest production of documents from Jones shows that she played a significant role in reviewing Secretary Ross's decisional memo, including sending comments to senior Commerce Department personnel that were in the possession of multiple custodians, but were never produced or logged, *see supra*.

This is important context for Defendants' arguments about the number of pages that they actually produced. *See* Defs.' Surreply, ECF 667, at 7. While Defendants produced tens of thousands of pages of documents, they also happened to "inadvertently" omit critical documents that connect the dots between their "contrived" VRA rationale, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019), and a discriminatory scheme to facilitate the exclusion of noncitizens altogether from the redistricting process for the benefit of "Republicans and Non-Hispanic Whites," Ex. 6 to Pls.' Mot. for Sanctions at 9, ECF 635-1. Each time Defendants have been caught concealing these highly relevant documents, they have assured Plaintiffs and the Court that these were isolated mistakes and there are no other similar undisclosed documents lurking.

At a minimum, Defendants' latest disclosures and their telling refusal to assure that all relevant documents have now been disclosed warrant a full, court-ordered accounting of Defendants' search protocols, including: a comprehensive list of custodians searched; all accounts and devices searched (including personal devices); all search procedures and terms used for each custodian and account/device; the dates on which the searches were conducted; and

production of all litigation hold notices and document collection certifications. Defendants' accounting should also include a report as to why responsive documents were not produced in a timely manner; why relevant documents were omitted from production; and who was responsible for these failures.

      For the reasons set forth in this letter, and in Plaintiffs' previous submissions, this Court should order sanctions of Defendants and Mark Neuman.

      Respectfully submitted,

      AMERICAN CIVIL LIBERTIES UNION
      ARNOLD & PORTER KAYE SCHOLER LLP

      By: */s/ Dale E. Ho*

Dale E. Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org
*Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).*

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

      Attorneys for the *NYIC* Plaintiffs