

**U.S. Department of Justice**

Civil Division
Federal Programs Branch

*P.O. Box 883*
*Washington, D.C.  20044*

---

James J. Gilligan                                                                                          Telephone:  (202) 514-3358
Special Litigation Counsel                                                                        E-mail:  james.gilligan@usdoj.gov

December 12, 2019

**<u>FILED BY ECF</u>**

Hon. Jesse M. Furman
United States District Judge
United States District Court for the
   Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York  10007

      Re:    *State of New York v. U.S. Dep't of Commerce*, No. 18-cv-2921 (JMF)

Dear Judge Furman:

      Pursuant to Rules 3A and 3D of the Court's Individual Rules and Practices in Civil Cases, Defendants respectfully request leave to file this letter in response to the December 3, 2019, letters filed by the NYIC Plaintiffs and the State Plaintiffs, ECF No. 673 ("NYIC Pls.' Letter") and ECF No. 672 ("State Pls.' Letter"), respectively.

      The Court's Order of November 26, 2019, ECF No. 670, directed the Plaintiffs to file "letter[s] indicating their views on whether Defendants' letter of November 25, 2019[,]" ECF No. 669-1 ("Defs.' Letter"), ". . . has any bearing on the pending motion for sanctions."  The NYIC Plaintiffs have responded with a letter describing the e-mails disclosed with Defendants' November 25 letter as "critical documents that connect the dots between [Defendants'] contrived VRA rationale . . . and a discriminatory scheme to facilitate the exclusion of noncitizens altogether from the redistricting process for the benefit of Republicans and Non-Hispanic Whites[.]"  NYIC Pls.' Letter at 3 (internal quotation marks and citations omitted).  That is not a remotely fair characterization of these documents.

      As Defendants explained in their November 25 letter, the recently discovered documents from the government account of career Census Bureau employee Christa Jones are either e-mail chains largely duplicative of others already included in the administrative record, non-substantive e-mails forwarding documents already included in the administrative record (or privileged drafts thereof), or privileged e-mails attaching drafts of Secretary Ross's decision memorandum. *See* Defs.' Letter at 1-2.  They contain

Hon. Jesse M. Furman
December 12, 2019
Page 2

no new information pertaining to issues raised by the NYIC Plaintiffs' sur-reply in support of their pending motion for sanctions, *see id.* at 1, or, for that matter, new information pertaining to Plaintiffs' sanctions motion at all. The NYIC Plaintiffs do not show otherwise.

The most the NYIC Plaintiffs can say *factually* about the contents of these e-mails is that they show that Ms. Jones "received a copy of the Secretary's draft decision memo" from then-Commerce Deputy General Counsel Michael Walsh on March 25, 2018, and that she "e-mailed comments . . . directly [back] to Walsh on March 26, 2018." NYIC Pls.' Letter at 2. On the basis of this one e-mail exchange, the NYIC Plaintiffs assert that Ms. Jones "played a larger role preparing Secretary Ross's decisional memo than previously understood[,]" *id.* at 2, and that "she play[ed] a significant role in reviewing" the memo, *id.* at 3. But these documents show nothing of the kind.

It has long been a matter of record that Ms. Jones served as an intermediary for the transmission of comments on drafts of the Secretary's decision memo from Census Bureau Chief Scientist Dr. John Abowd and his colleagues to officials at the Commerce Department. Dr. Abowd testified to this fact during his August 15, 2018, deposition (relevant excerpts attached as Defendants' Exhibit 32). Moreover, Ms. Jones has already laid to rest Plaintiffs' speculation that she played a key role in preparing either the Secretary's memo or comments thereon. As she states in her declaration submitted in support of Defendants' opposition to Plaintiffs' sanctions motion,

> During the time Secretary Ross and his staff were drafting his March 2018 decision memorandum, I was responsible for collecting comments on those drafts from employees of the Census Bureau, such as Dr. Ron Jarmin, Dr. John Abowd, and Enrique Lamas, and transmitting them to the Commerce Department. I was neither a primary drafter nor contributor of comments to the Secretary's March 2018 decision memorandum and did not play a central role in preparing that memorandum.

Decl. of Christa Jones, Defs.' Exh. 16 ("Jones Decl."), ¶ 5. The NYIC Plaintiffs cite not one line of text in any of Ms. Jones' newly disclosed e-mails or the attachments that contradicts this testimony.

The NYIC Plaintiffs nevertheless argue that Ms. Jones' so-called "participation" in the drafting of the Secretary's memo is of "significant interest" because she has acknowledged having "many conversations about the citizenship question with Thomas Hofeller and his business partner Dale Oldham[.]" NYIC Pls.' Letter at 2. For this proposition they cite their own sur-reply, ECF No. 665 ("Pls.' Sur-reply"), which in turn cites to a November 12, 2019, memorandum by the Acting Chair of the House Committee on Oversight and Reform, *id.*, Exh. E. That memorandum merely discusses (i) the same e-mail correspondence between Ms. Jones and Dr. Hofeller already cited by Plaintiffs in support of their sanctions motion, which, as Defendants have shown, have nothing to do with redistricting, or the census, *see* Pls.' Surreply Exh. E at 12; NYIC Pls.'

Mot for Sanctions, ECF No. 635, at 14; Defs.' Opp. to NYIC Pls.' Mot. for Sanctions, ECF No. 648, at 14-15, and (ii) a transcribed Committee interview of Ms. Jones, in which she confirmed the same facts already stated in her declaration, that between January 2017 and his death in 2018 she had no discussions with Dr. Hofeller concerning reinstatement of a citizenship question, either orally or in writing, and had never seen or heard of Dr. Hofeller's 2015 study prior to press reports about it earlier this year.  *See* Pls.' Sur-reply Exh. E at 12; Jones Decl. ¶¶ 2-3.  According to the Committee memorandum, Ms. Jones also acknowledged that she knew Dr. Hofeller's business associate, Dale Oldham, and that "for many years he had advocated for a citizenship question for purposes of redistricting and apportionment," but she also reiterated "that she was not involved in efforts at the Department of Commerce to add a citizenship question to the 2020 Census," and was concerned by the efforts to do so (a fact disregarded by the NYIC Plaintiffs). Pls.' Sur-reply Exh. E at 12-13.  *See also* Jones Decl. ¶ 6 (expressing her view that reinstatement of a citizenship question "was not advisable").

Again, the NYIC Plaintiffs point to nothing contained in any of the documents identified in Defendants' November 25 letter that calls these facts into question.  These documents offer no basis for concluding that Defendants have intentionally withheld relevant evidence, and no support for imposing sanctions on any ground.  In particular, they furnish no justification for the extreme and unwarranted relief of compelling the production of documents over which Defendants have validly asserted the deliberative-process privilege.  *See* NYIC Pls.' Letter at 2.

The State Plaintiffs' request for a wholesale re-evaluation of the Government's discovery efforts is also unwarranted.  The State Plaintiffs (who did not join the pending sanctions motion) maintain that the disclosures in in Defendants' November 25 letter indicate that there may have been "broader shortcomings in Defendants' search for or production of responsive records," supporting "discovery-related relief" to ascertain the extent of the presumed "shortcomings."  *See generally* State Pls.' Letter.  The NYIC Plaintiffs go so far as to accuse Defendants of providing "misinformation to their own counsel" about the existence of potentially discoverable documents.  NYIC Pls.' Letter at 1-2.  Neither is the case.  Plaintiffs identify nothing in the newly discovered documents to suggest that Defendants intentionally withheld these or any other relevant records during the litigation of this case.  They offer no explanation as to why Defendants would have intentionally omitted these documents while producing many far more significant records that Plaintiffs successfully relied on to prevail at trial, and on appeal.  Nor can there be any valid suggestion that Defendants failed to take their discovery obligations seriously, or that they did not take "proper and reasonable steps" to locate relevant information, *see* State Pls.' Letter at 2, when, as noted in Defendants' November 25 correspondence, these documents were identified as potentially responsive, collected, and loaded into counsels' document-review platform for inspection by Justice Department attorneys.[1]

---

[1] It also bears mentioning that Plaintiffs first raised issues concerning the scope and reasonableness of Defendants' production efforts long ago, in August 2018.  *See* Pls.'

Hon. Jesse M. Furman
December 12, 2019
Page 4

      Since the discovery of these documents, Defendants have attempted to ascertain why, having been collected, the documents were not thereupon produced.  *See* Defs.' Letter at 1.  Regrettably, Defendants have been unable to discover the cause—whether human error or a technical snafu.  But what is known is that in this case and two other related actions, Defendants and their counsel produced over 150,000 pages of documents from multiple media and numerous custodians on an extremely tight timetable, while simultaneously compiling an immense administrative record, responding to hundreds of requests for admission and interrogatories, and participating in numerous fact and expert depositions.  It is "unsurprising," therefore, that "some relevant documents may have fallen through the cracks" in the process.  *See* Defs.' Sur-Reply in Opp. to NYIC Pls.' Mot. for Sanctions, ECF No. 667, at 6 (quoting *Freedman v. Weatherford Int'l, Ltd.*, 2014 WL 4547039, at *3 (S.D.N.Y. Sept. 12, 2014)).

      Defendants regret that these documents were not produced earlier.  But they have no bearing on the NYIC Plaintiffs' request for sanctions, which for all the reasons Defendants have given should be denied.

                                          Respectfully submitted,

                                          JOSEPH H. HUNT
                                          Assistant Attorney General

                                           */s/ James J. Gilligan*
                                          JAMES J. GILLIGAN
                                          Special Litigation Counsel
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          P.O. Box 883
                                          Washington, D.C. 20044

                                          Telephone:   (202) 514-3358
                                          E-mail:        james.gilligan@usdoj.gov

                                          *Counsel for Defendants*

Enclosure

cc:  All counsel of record (via ECF)

---

Fifth Ltr. Mot. to Compel, ECF No. 293.  These issues were resolved by the parties through negotiations that led to the production of significant additional materials by Defendants.  Plaintiffs should not be allowed to continue to resurrect meritless complaints about the adequacy of Defendants' efforts, *see* State Pls.' Letter at 2; NYIC Pls.' Letter at 1, that have already been addressed and have since been overtaken by events, including Plaintiffs' victory on the merits.

**EXHIBIT 32**

```
                                                        Page 1
 1            UNITED STATES DISTRICT COURT
 2           SOUTHERN DISTRICT OF NEW YORK
 3    ---------------------------------------
      NEW YORK IMMIGRATION COALITION, ET AL.,
 4
                     Plaintiffs,
 5          vs.         Case No.  1:18-CF-05025-JMF
 6    UNITED STATES DEPARTMENT OF COMMERCE, ET AL.,
 7                   Defendants.
      ---------------------------------------
 8
 9                   Washington, D.C.
10                   Wednesday, August 15, 2018
11    Deposition of:
12                   DR. JOHN ABOWD
13    called for oral examination by counsel for
14    Plaintiffs, pursuant to notice, at the office of
15    Arnold & Porter, 601 Massachusetts Avenue NW,
16    Washington, D.C., before KAREN LYNN JORGENSON,
17    RPR, CSR, CCR of Capital Reporting Company,
18    beginning at 9:08 a.m., when were present on
19    behalf of the respective parties:
20
21
22
```

Page 172

1  original memo using the word burden and us
2  pointing out that the word burden had a very
3  technical meaning in the survey world that wasn't
4  supported by his statements. So he changed to
5  imposition -- this is my recollection -- so in any
6  event, I don't know what the technical definition
7  of the imposition is.
8       If I translate it to burden, then I don't
9  agree with either -- either sentence. So I think
10 the Secretary was trying to express an overall
11 judgment about the consequences of the questions
12 for these two subpopulations, but I can't go any
13 further than that in interpreting his words for
14 you.
15    Q  Were the comments that you and your
16 colleagues provided on this memo, was that done in
17 writing?
18    A  There were no email correspondences.
19 There was no one on the phone, that I recall. The
20 answers were -- the suggestions were communicated
21 back by Ron and Christa. I think primarily by
22 Christa Jones. I don't know what -- what she used

Page 173

1  to do that.
2      Q   And who else participated with you in --
3  among the census team in providing the comments?
4      A   So in the room or on the phone,
5  Enrique Lamas, Ron Jarmin, Christa Jones, myself.
6  I believe that Al Fontenot, F-O-N-T-E-N-O-T, the
7  associate director for the 2020 census was there
8  all day or most of the day.  And Tori Velkoff was
9  on the phone and sometimes in the room.  I think
10 she was usually in the room.  And our various
11 staff members we called if we needed a
12 clarification on a statistic that we had not
13 previously supplied the Secretary.
14     Q   And were you discussing this directly
15 with anybody from Commerce --
16     A   No.
17     Q   -- or was it --
18     A   Sorry.
19     Q   -- Christa was the intermediary?
20     A   To the best of my knowledge, Christa was
21 the intermediary.
22     Q   Just on the observations about census