December 27, 2019

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

RE: Plaintiffs' Statement of Position Regarding Defendants' Discovery of Unproduced Materials in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman,

Pursuant to the Court's December 20, 2019 Order (ECF No. 677), Plaintiffs submit this statement of position regarding Defendants' December 19, 2019 disclosure regarding their failure to produce over 2,000 documents during the course of this litigation. The Parties met and conferred over the timing and the extent of Defendants' proposed supplemental production on December 24 and 26. Unfortunately, the Defendants are not prepared to address these deficiencies in a timely or appropriate manner. Moreover, Defendants have failed to provide an adequate explanation for these deficiencies, which involve a significant number of documents.

At the conclusion of the December 26 call, the Parties agreed that they were at impasse, and should file their positions separately.

*Background*: The documents at issue concern materials that should have been produced as part of the Administrative Record, and in any event, should have been produced by the Defendants in discovery, pursuant to the Court's July 5, 2018 Order (ECF No. 199) *affirmed Dep't of Commerce v, New York*, 139 S.Ct. 2551, 2574 (2019). Pursuant to that order, Defendants were to complete supplementation of the Administrative Record by July 23, 2018 (subsequently extended to July 26). Defendants produced approximately 600 documents on July 23 and an additional 120 documents on July 26. Following review of these materials, plaintiffs filed a motion to compel on August 13, 2018, noting that there were "conspicuous omissions from the Administrative Record, which includes notable omissions regarding Defendants' communications with third parties." ECF No. 237 (the "Fourth Motion"). In response, the Defendants produced declarations from Mr. Uthmeier and a senior career Commerce litigation counsel attesting to the completeness of the production, and identifying the 22 custodians searched and the search terms used. ECF Nos. 253 & 254. On August 31, 2018, Plaintiffs filed a follow up motion to compel noting "the Defendants failed to conduct reasonable searches designed to elicit information about partisan or discriminatory motive" and "failed to search all proper custodians." ECF No. 293 (the "Fifth Motion").

Following a further meet and confer during which Defendants agreed to conduct supplemental searches to complete the Administrative Record (ECF No. 301), the parties negotiated certain specific supplemental searches. *See* Exs. 1, 2 & 3. While the agreed upon search terms included Mr. Neuman's name, as well as other concepts relevant to the sanctions motion (e.g., apportionment, districting, redistricting), they did not include the names of Dr.

Hofeller, Mr. Oldham, their firm, or their clients, whose roles were unknown (at least to Plaintiffs) at the time Defendants agreed to supplement.

While it has been clear for some time that Defendants failed to produce materials related to Mr. Neuman and Dr. Hofeller's role in the genesis of the citizenship question, prior to the Defendants' December 19, 2019 letter, Plaintiffs were not aware that there were wholesale deficiencies in Defendants efforts to collect or process documents. Rather, Defendants minimized the issue contending only that "some relevant documents may have fallen through the cracks," denied that there were "broad[] shortcomings in Defendants' search for or production of responsive materials," and stated that "a wholesale re-evaluation of the Government's discovery effort is also unwarranted." ECF No. 674.

It is now clear that Defendants understated the extent of the issue -- 480 emails and 1,600 attachments cannot simply "fall through the cracks." And their subsequent response indicates that they are not planning to address the deficiency expediently.

- In their December 19 letter, Defendants proposed to begin producing the materials on January 31 and complete production by February 28, 2020. This represents review and production (measured from December 19) of fewer than 30 documents per day.
- During the meet and confer process, Defendants first proposed producing the 460 emails only (i.e., no attachments) to be completed by January 24, 2020. This represents review and production (again measured from December 19) of approximately 13 documents per day.
- After Plaintiffs proposed that Defendants prioritize the production of the emails and attachments for priority custodians by January 10, 2020 (with the rest to follow), Defendants offered to produce the 257 emails (with no attachments) for Secretary Ross, Messrs. Comstock, Davidson, Uthmeier, Walsh, and Ms. Teramoto by that date. This represents review and production (again measured from December 19) of fewer than 12 documents per day.

Plaintiffs made clear on both the December 24 and 26 calls that this timing and pace was not acceptable. On the December 26 call, defense counsel declined to provide a schedule for producing the balance of the materials beyond the priority emails. Defense counsel also declined to propose search terms to narrow the scope of materials that need to be reviewed.

As of this filing, the Defendants have not produced a single additional document, not even the documents that reference Mr. Neuman.

1. *Defendants' Proposed Timing of Production is Unacceptable*: In response to the Court's December 20 Order, Defendants have not made any effort to accelerate their production; rather, they have proposed to produce fewer documents at a slower pace than what was proposed in the December 19, 2019 letter.

Pursuant to the Court's July 5, 2018 Order, these documents should have all been produced by July 26, 2018. And at the latest, these materials should have been produced following the Parties' September 2018 negotiations over supplementation.

In both the December 19 letter and during the meet and confer, Defendants cited the "demands on the time and resources of Defendants and their counsel in other pressing litigation." ECF No. 676. They did not support that assertion with declarations, and they did not provide specifics during the meet and confer. More importantly, other litigation demands is not an appropriate justification for delay. And these materials may bear directly on the pending question of sanctions for discovery misconduct. Defendants have shown that they can dedicate resources to meet this Court's deadlines; for example, in response to the July 5, 2018 Order, the Defendants were able to produce almost 600 documents in 18 days. The Court should order production of the materials forthwith.

Finally, to the extent the Defendants claim that delay is necessary to complete a privilege review, the pending motion for sanctions challenges many of Defendants' prior privilege assertions. Courts in this district regularly conclude that a party has waived any assertions of privilege – including governmental privileges like deliberative process – by failing to comply with deadlines for asserting and justifying those assertions. *See, e.g.*, *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167–68 (S.D.N.Y. 2014) (holding that "the SEC waived its privilege protections by failing to produce in a timely manner a privilege log that complied with the applicable rules") (citing cases); *FG Hemisphere Assocs., L.L.C. v. Republique du Congo*, No. 01-CV-8700 (SAS) (HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) ("As other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.") (citing cases).

2. *Defendants' Failure to Produce is Significant and Bears Directly on the NYIC Plaintiffs' Pending Motion for Sanctions*: To put the quantum of recently identified documents in context (2,062 documents of which 480 are emails), the total Administrative Record in this case was approximately 900 documents, and Defendants' total production was approximately 5,000 documents. In other words, the documents withheld amount to approximately 40 percent of the volume of the total documents the Defendants produced in the case.

This production also bears directly on the motion for sanctions for at least three reasons. First, in response to the motion for sanctions, Defendants have repeatedly asserted that there was no basis to suggest significant deficiencies in their productions. *See, e.g.*, ECF Nos. 648, 667, 674. Defendants have repeatedly submitted declarations attesting to the completeness of the Administrative Record, including in opposition to the sanctions motion. ECF Nos. 635 Exs. 11-16, 26 & 27. These include declarations from custodians whose productions may very well have been incomplete, including Messrs. Davidson, Comstock, Uthmeier, and Ms. Jones. Messrs. Davidson and Uthmeier made specific representations about the completeness of their productions. *See* ECF No. 654 at 6-9 & 654-1. Their failure to produce all documents related to the Administrative Record speaks to their candor, which is a central issue in the request for sanctions.

Second, Defendants have already acknowledged that certain of the documents reference Mr. Neuman. Defendants efforts throughout the litigation to conceal and then minimize Mr. Neuman's role is a central issue in the sanctions motion. ECF No. 635. Those efforts apparently

continue to this day. Defendants should be ordered to produce the materials referencing Mr. Neuman immediately.

Third, Defendants have indicated that they may assert privilege, including deliberative process privilege over many of the new documents. Defendants' assertion of privilege over similar documents is a critical element of relief sought in the sanctions motion. ECF No. 635 at 28-31 & Exs. 42-49. Completion of review and Defendants' identification of any further materials withheld for privilege (to the extent any privilege over such documents is not waived) is important to ensuring that the Court has the full picture of the contested privilege assertions and to afford NYC Plaintiffs complete relief.

It is important to emphasize that the search terms that resulted in the documents at issue are not coextensive with the discovery that NYIC Plaintiffs requested in the motion for sanctions. For example, the search terms do not include terms designed to capture communication with or references to Dr. Hofeller, Mr. Oldham, their firm, or their clients. Accordingly, it is hardly remarkable that Defendants report that "none of the e-mails or their attachments contain the names 'Hofeller' or 'Oldham' . . ." ECF No. 676. For reasons previously cited in the motion for sanctions, discovery in their role is warranted and should be authorized.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION

By: /s/ John A. Freedman

Dale Ho
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 549-2693
dho@aclu.org

Sarah Brannon[+]**
American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.

Andrew Bauer
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-7669
Andrew.Bauer@arnoldporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001-3743
(202) 942-5000
John.Freedman@arnoldporter.com

New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org

+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(3).

Attorneys for *NYIC* Plaintiffs

LETITIA JAMES
*Attorney General of the State of New York*

By: *<u>/s/ Matthew Colangelo</u>*
Matthew Colangelo
*Chief Counsel for Federal Initiatives*
Elena Goldstein
*Deputy Bureau Chief, Civil Rights Bureau*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-6057
Matthew.Colangelo@ag.ny.gov

Attorneys for *State of New York* Plaintiffs[1]

[1] Plaintiff El Paso County, Texas, does not join this letter.