March 2, 2020

The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

   RE: NYIC Plaintiffs' Statement of Position re: Defendants' Newly Produced Materials
      in *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (JMF)

Dear Judge Furman,

   Pursuant to the Court's January 2, 2020 Order (ECF No. 682), the NYIC Plaintiffs submit this summary regarding how Defendants' failure to produce materials during the course of the litigation affects the pending motion for sanctions.  As detailed below, the recent productions strengthen the grounds for sanctions that were presented in ECF No. 635, and merit the following additional relief: (i) because the same lawyers (*i.e.*, Uthmeier, Davidson, and Deputy General Counsel Michael Walsh) who were responsible for developing and executing the false rationale for the citizenship question were also responsible for directing the Commerce Department's defense of this litigation, Defendants should provide a full explanation as to how such widespread production deficiencies occurred and who is responsible, and (ii) Walsh, Deputy Chief of Staff Earl Comstock, and Deputy Secretary Karen Dunn Kelley should all provide declarations regarding their actions and knowledge concerning the Defendants' efforts to comply with its duties to produce the Administrative Record and under the discovery rules.

   The recent productions bear on the motion for sanctions due to the large volume of materials improperly withheld.  Contrary to Defendants' statement that only "some relevant documents [that] may have fallen through the cracks" and their denial of "broad[] shortcomings in Defendants' search for or production of responsive materials," ECF No. 674, these new documents underscore that Defendants fell woefully short in complying with their obligations. Defendants have not explained their prior assertions that there was no basis to suggest significant deficiencies in their productions, *see, e.g.,* ECF Nos. 648, 667, 674, nor have they explained the apparent inaccuracies in the declarations submitted attesting to the completeness of the Administrative Record ("AR"), *see* ECF No. 635 Exs. 11-16, 26, 27.

   Certain of the recently produced documents were highly relevant to the dispute and shed considerable light on issues of critical public importance, including the efforts of senior Commerce officials to monitor and potentially interfere in Census Bureau determinations in contravention of the APA.  *See generally Tummino v. Torti*, 603 F.Supp.2d 519 (E.D.N.Y. 2009). While Plaintiffs cannot say these documents would have been outcome determinative (because Plaintiffs already prevailed), they certainly would have been material to how Plaintiffs litigated and tried this case.  The balance of this letter addresses some of the more significant issues.

   1. *The Sheer Magnitude of the Production Issues Warrants Sanctions*: Since the Court's January 2 Order, Defendants have produced or logged over 1,400 additional documents, 136 of which have been withheld in their entirety and 424 of which have been produced with some redactions.  For context, the entire AR consisted of only 900 documents, and the entire

production from Commerce and Census (inclusive of the AR) was about 6,500 documents. The recently produced documents make up around 20% of the entire production. These major omissions are more than a few documents falling "through the cracks."

The documents at issue include many documents that should have been produced as part of the AR or at least in response to the Court's July 5, 2018 Order (ECF No. 199), *aff'd Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2574 (2019). Throughout this litigation, Plaintiffs continued to push Defendants about what appeared to be obvious deficiencies in their productions. Following Defendants' production of the AR in July 2018, Plaintiffs filed a motion to compel on August 13, 2018, detailing "conspicuous omissions" including "notable omissions regarding Defendants' communications with third parties." ECF No. 237. In response, Defendants produced declarations from Uthmeier and a senior career Commerce litigation counsel attesting to the completeness of the production, and identifying the 22 custodians searched and the search terms used. ECF Nos. 253 & 254.

On August 31, 2018, Plaintiffs filed a follow-up motion to compel based on Defendants' failure "to conduct reasonable searches designed to elicit information about partisan or discriminatory motive" and "to search all proper custodians." ECF No. 293. To resolve this Motion, Defendants agreed to conduct supplemental searches to complete the AR (ECF No. 301), and the parties negotiated certain supplemental searches. *See* ECF No. 678 Exs. 1, 2 & 3. In spite of this agreement, Defendants' recent productions confirm their discovery responses were still significantly incomplete. Based on Plaintiffs' review, the overwhelming majority of the documents produced since the Court's January 2 Order should have been produced as part of the AR; and the balance are responsive to discovery requests and should have been produced. In addition, Defendants are still withholding a substantial number of newly "discovered" documents without properly or timely identifying a basis to withhold them.

Defendants have still failed to adequately explain such widespread deficiencies and identify who bears responsibility. Given that the same lawyers who directed the Commerce Department's defense of this litigation were also responsible for developing and executing the false rationale for the citizenship question (*i.e.*, Uthmeier, Walsh, and Davidson), answering these questions is important. In this regard, Davidson and Uthmeier made specific representations about the completeness of the Defendants' productions. *See* ECF No. 654 at 6-9 & 654-1 Ex. 11 ¶ 14 & Ex. 26 ¶11. Defendants' failure to produce these documents during the litigation speaks to their candor—a central issue in the sanctions request.

2. *Defendants' Failure to Produce the Census Bureau's Comments on the March 26 Memo*: Among the new materials produced are correspondence in which senior Commerce officials conducted their only solicitation of comments from the Census Bureau on Secretary Ross' March 26 decisional memorandum. Commerce produced two cover emails (attached as Exs. 1-A&B), while continuing to withhold the underlying comments provided by the Census Bureau. *See* Exs. 2 (log of withheld Uthmier documents entry 25652) & 3 (log of withheld Jones documents entry 26481). These emails appear to reflect the only effort by Commerce officials to

solicit views of the Census Bureau on Ross's decisional memo, and reflect that Christa Jones transmitted the Census Bureau's comments to the Commerce Department.  Ex. 1-A.[1]

Plaintiffs did not know that such documents existed until the post-litigation production. During discovery, Defendants led Plaintiffs to believe that the Census Bureau comments on the draft no longer existed or were never memorialized in writing.  At Dr. Abowd's August 15, 2018 deposition, he testified about that Commerce gave the Census Bureau one opportunity to review the decision memorandum, and that they conveyed their comments through Christa Jones. Ex. 4 (Abowd Dep. at 172-79).  Dr. Abowd did not remember if there was a written document memorializing their feedback, nor did Dr. Jarmin during his deposition.  *See id.*; Ex. 5 (Jarmin Dep. at 166-72).  During Abowd's deposition, Plaintiffs noted on the record that the Census Bureau comments on the March 26 memo had not been produced and were not identified on Defendants' log and asked Defendants to produce the materials.  *Id*. at 179.  No such material was every provided to Plaintiffs.

The concealment of these documents made Plaintiffs' litigation and trial presentation more difficult.[2]  These documents provide strong evidence of the "improper political influence" Commerce officials exercised over the process and the timing of these emails raises serious questions about whether Commerce actually or adequately considered the Census Bureau's comments prior to release of the Ross memo.  In particular, the email indicates that the Census Bureau's comments were not solicited until the afternoon of March 26, and were received at 6:39 pm on March 26; this timing which raises questions as to whether Commerce actually accounted for and addressed the Census Bureau's views.  The attachments to these two emails, COM_DIS00026481 and 25652, should be produced now.

3.  *Uthmeier's Additional Production Deficiencies*: The 2020 productions and logs reflect at least five additional drafts of the March 26 memorandum involving Uthmeier, including the earliest known draft, which he sent to himself on March 16, 2018, and a subsequent draft he emailed to himself on March 23. Exs. 6-A&B & Ex. 2 (entries 25712 & 25708).  Uthmeier also sent drafts to Comstock and Walsh on March 22, Ex. 6-C&D & Ex 2 (entries 25698 & 25710), and to Comstock and Dunn Kelley on March 24.  Ex. 6-E & Ex. 2 (entry 26452).  These documents are notable for at least two reasons.

First, the sanctions motion explained Uthmeier's role in developing the pretextual justification for the citizenship question – starting with his authorship of the August 11, 2017 memorandum and his interactions with Neuman and Gore.  Throughout this litigation, Plaintiffs sought production of drafts of and documents related to Uthmeier's role in the process.  *See, e.g.*, ECF No. 349.  Had the extent of Uthmeier's role not only as the principal drafter of Secretary Ross' memorandum but also in sharing and soliciting comments from senior political Commerce

---

[1] The pending motion for sanctions includes a request that the documents Defendants have withheld reflecting Jones's involvement in the March 26 memorandum should be compelled based, among other things, on her long association with Dr. Hofeller.  ECF No. 634 at 28-31 & Exs. 46-47.

[2] Plaintiffs would have certainly challenged Defendants' assertion of privileges concerning the Census Bureau comments, given that these documents (i) do not appear to qualify for privilege because they related to the preparation of a document that was intended for public dissemination and was not intended to be maintained in confidence, and (ii) under the balancing test, they would not have qualified for deliberative privilege because of their central importance to the case and they were generated after Secretary Ross had made his "final decision."

officials been known, this information would have strengthened Plaintiffs' argument for compelling disclosure of the other materials.

Second, the sanctions motion details the questions Plaintiffs raised concerning the completeness of Uthmeier's document production and his August 15, 2018, and August 2, 2019 declarations. ECF Nos. 88, 648-1 Ex. 11. Contrary to the assertions in these declarations, the recent productions contain additional Uthmeier materials that were not produced during the litigation. Ex. 2. Certain of these documents could have been of significant public interest in demonstrating how Commerce officials manipulated the process. As an example, Uthmeier drafted a "communications package" and talking points about the decision, Exs. 7-A & Ex. 2 (entry 25656)—work that appears related to information intended to be publicly disseminated, and accordingly was not intended to be maintained in confidence and cannot be withheld on basis of privilege. *See, e.g., United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958). New documents also suggest that Uthmeier may have had a greater role than previously realized in drafting the responses to the Q&A that the Census Bureau career staff purportedly drafted. *See, e.g.,* Ex. 7-B & Ex. 2 (entry 25705). Other documents concern Uthmeier's role at other critical points in the timeline, including those concerning his drafting of the August 11, 2017 memorandum concerning a rationale for the citizenship question, *e.g.,* Ex. 7-C & Ex. 2 (entry 26422), and his communications following the September [6,] 2017 "all hands" meeting, *see* Ex. 7-D. These documents demonstrate that Uthmeier's document productions were woefully incomplete, and his attestations to the contrary are demonstrably false. These documents all tend to establish the depth of the Commerce's influence over the Census Bureau's analysis. For the reasons cited in the sanctions motion and this letter, Plaintiffs are also seeking to compel production of these documents, and are submitting an updated schedule of Uthmeier's documents to replace Exhibit 42 to the sanctions motion. Ex. 11.

4.  *The Recent Productions Raise Significant New Questions About the Conduct of Comstock, Walsh, and Dunn Kelley*:  The new productions include materials from three individuals who continue to serve the Commerce Department in senior roles -- Comstock and Walsh and Dunn Kelley.[3]  The production deficiencies from these individuals remain unexplained.  These are some examples of deficiencies in their productions.

a.  Christa Jones sent the comments from the Census Bureaus about the March 26th memorandum to Walsh, Ex. 1-A, who in turn sent the document to Comstock, Uthmeier, and Dunn Kelley, Ex.1-B.  Similarly, the recent productions reflect that Uthmeier also sent drafts of the March 26 memo to Comstock and Walsh on March 22, Exs. 6-C&D, and a draft to Comstock and Dunn Kelley on March 24. Ex. 6-E.  Notably not one of these individuals –Jones, Uthmeier, Walsh, Comstock, or Dunn Kelley – produced or logged any of these documents in the litigation.

b.  The recent productions include additional materials for Comstock, Dunn Kelley and Walsh, particularly around the development of the March 26 memorandum and the drafting of documents related to "Alternative D" (*see, e.g.*, PX-132 (AR9812)), reflecting that senior Commerce appointees were closely monitoring and potentially editing critical Census Bureau

---

[3] There are press reports that Comstock resigned today effective March 6.  If accurate, he joins (i) Gore who resigned from DOJ on August 9, 2019 -- shortly before the sanctions reply brief (ECF No. 654) was filed and (ii) Davidson, who started a new job on August 12.

analysis evaluating the impact of adding a citizenship question. *See* Exs. 8-A&B. This, too, raises the specter of improper political interference.

Both Comstock and Dunn Kelley during their depositions recalled almost no details about their involvement in either of these documents. For example, Comstock was evasive in answering questions about the March 1 memorandum, contending that the version in the Administrative Record was a draft and failing to recall any substantive exchanges. Ex. 9. In response to a request from Plaintiffs that any other drafts of the memo be produced, Comstock and Walsh (who attended the deposition) allowed the Department of Justice attorney to represent that Defendants had "produced what we have"—a representation that is demonstrably false in light of the recent productions which show that Comstock received an unproduced draft of the March 1 memorandum on February 21. *Id.*; *see also* Ex. 10.

As noted in the sanctions reply, Comstock did not attest to the completeness of his or the Commerce Department's production in his August 9 declaration, *see* ECF No. 648-1 Exs. 27 & 654-1, and neither Walsh nor Dunn Kelley have submitted declarations explaining the deficiencies in their productions. All three witnesses should explain why critical documents they received were not produced and explain the deficiencies in the Commerce productions.

5. *Additional Relief Warranted Because of the Defendants' Conduct*: For the reasons discussed above, Defendants should fully explain who bears responsibility for these production deficiencies, including sworn statements from Comstock, Walsh, and Dunn Kelley. In addition, the public interest and transparency support compelling disclosure of documents previously withheld as privileged. *See* ECF No. 635-5 Exs. 42-49. The sanctions motion specifically focused on the roles of Jones and Uthmeier, and Defendants have now identified additional materials withheld from both of them, including materials about Jones's role in drafting the March 26 decisional memorandum. *See* ECF No. 635 at 33, Ex. 46. Plaintiffs are submitting here updated schedules related to Uthmeier and Jones to replace those provides with the sanctions motion,(ECF 635-5 Exs. 42&46), as Exhibits 11 & 12.

In conducting its review, the Court should consider that none of the withheld documents were identified on a timely privilege log. Courts in this district regularly conclude that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege." *FG Hemisphere Assocs., L.L.C. v. Republique du Congo*, No. 01-CV-8700 (SAS) (HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005); *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167–68 (S.D.N.Y. 2014) (collecting cases). All of these documents should be produced unredacted.

It also bears emphasis that the documents at issue were produced based on search terms that Plaintiffs proposed in August 2018 and are not coextensive with the discovery that NYIC Plaintiffs requested in the pending motion for sanctions. At the time Plaintiffs suggested these terms, they did not know or understand Dr. Hofeller's significance or the full extent of Neuman's role in the genesis of the citizenship question, and accordingly, the search terms do not include terms designed to capture communications with or references to Hofeller, Oldham, their firm, or their clients. For reasons previously cited in the motion for sanctions, discovery in their role is warranted and should be authorized.

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP
AMERICAN CIVIL LIBERTIES UNION


By:   /s/ John A. Freedman


| | |
|---|---|
| Dale Ho | Andrew Bauer |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 125 Broad St. | 250 West 55th Street |
| New York, NY 10004 | New York, NY 10019-9710 |
| (212) 549-2693 | (212) 836-7669 |
| dho@aclu.org | Andrew.Bauer@arnoldporter.com |
| | |
| Sarah Brannon[+][**] | John A. Freedman |
| American Civil Liberties Union Foundation | Arnold & Porter Kaye Scholer LLP |
| 915 15th Street, NW | 601 Massachusetts Avenue, N.W. |
| Washington, DC 20005-2313 | Washington, DC 20001-3743 |
| 202-675-2337 | (202) 942-5000 |
| sbrannon@aclu.org | John.Freedman@arnoldporter.com |

Perry M. Grossman
New York Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
(212) 607-3300 601
pgrossman@nyclu.org


+ admitted pro hac vice
** Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R.
49(c)(3).

Attorneys for *NYIC* Plaintiffs, 18-CV-5025